# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**ZEN JV, LLC,** *et al.*,<br><br>                Debtors. | Chapter 11<br><br>Case No. 25-11195 (JKS)<br><br>(Jointly Administered)<br><br>Sale Hearing Date: July 24, 2025 at 1:00 PM<br>Cure Objection Date: July 14, 2025 at 4:00 PM<br>Sale Objection Date: July 16, 2025 at 4:00 PM<br><br>Docket Nos. 28 & 82 |

## ORACLE'S LIMITED OBJECTION TO AND RESERVATION OF RIGHTS REGARDING DEBTORS' SALE MOTION AND RELATED NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Oracle America, Inc. ("Oracle"), a creditor and contract counter-party in the above-captioned Jointly Administered Chapter 11 case, submits this limited objection and reservation of rights ("Rights Reservation") regarding both the: (1) *Motion of Debtors for Entry of Orders (I) Authorizing and Approving (A) The Bidding Procedures For Sale of the Debtors' Assets Free and Clear, (B) The Scheduling of an Auction and Sale Hearing, (D) Notice and Procedures For the Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) The Designation of Stalking Horse Bidders, and (F) The Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Authorizing Designation of Stalking Horse Bidders, and (III) Granting Related Relief* [Dkt. No. 28] ("Sale Motion"); and (2) *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Dkt. No. 82] ("Assumption Notice"), filed by Zen JV, LLC, et al. ("Debtors").

### I.    INTRODUCTION

1.    In connection with the Sale Motion, the Debtors seek Bankruptcy Court authority to, among other things, assume and assign certain executory contracts between the Debtors and

Oracle. Oracle objects to, and reserves its rights regarding, the proposed assumption and assignment for several reasons.

2. First, the targeted Oracle agreements are, or pertain to, one or more licenses of intellectual property which are not assignable absent Oracle's consent pursuant to both the underlying license agreements and applicable law.

3. Second, the Assumption Notice does not provide a complete description of the contracts identified and lacks relevant information, precluding identification of the targeted agreements. Debtors list of the potentially targeted Oracle agreements may include expired contracts, which may not be executory. Therefore, until Oracle has a better understanding of the contracts potentially to be assumed and assigned, Oracle is unable to confirm the cure amount.

4. Third, at present, no adequate assurance information has been provided for the Stalking Horse Bidders (defined below) and the Stalking Horse Bidders may not be the ultimate purchaser/assignee. Therefore, Oracle is unable to determine whether the successful bidders will be capable of performing under the terms of the contracts which the Debtors seek to assume and assign.

5. Finally, the Stalking Horse APAS (defined below) each contemplate a buyer and seller transition services agreement which may call for the unauthorized shared use of Oracle's licenses, in a manner which is not permitted by Oracle's agreements. Oracle objects to any unauthorized shared use of its licenses.

6. Accordingly, Oracle requests that the Court deny the Debtors' request for authority to assume and assign, transfer, or share use of, any Oracle agreement without Oracle's consent.

## II.   FACTUAL BACKGROUND

7. The Debtors filed the above captioned cases on June 24, 2025. The Debtors continue to operate as debtors in possession.

8. On June 25, 2025, the Debtors filed the Sale Motion seeking Court authority to sell substantially all of the Debtors' assets. The Sale Motion identifies three stalking horse bidders (1) Valnet US, Inc. ("**Valnet**") for the purchase of substantially all assets of the Debtors' Monster Media Properties business; (2) Valsoft Corporation, Inc. ("**Valsoft**") for the purchase of the Debtors' Monster Government Services business; and (3) JobGet, Inc. ("**JobGet**", together with Valnet and Valsoft, the "**Stalking Horse Bidders**") for the purchase of the Debtors' CareerBuilder + Monster job board business ("**Job Board Business**").

9. Attached as Exhibit 2(a), 2(b) and 2(c) to the Sale Motion are the Asset Purchase Agreements between the Debtors and the Stalking Horse Bidders ("**Stalking Horse APAS**"). Each of the Stalking Horse APAS contemplates entry into a Seller Transition Services Agreement and a Buyer Transition Services Agreement (collectively "TSAS"), which will include certain post-closing services between the Debtors and each of the Stalking Horse Bidders, as well as certain transition services between and among the Stalking Horse Bidders. The Stalking Horse APAS state in part:

> Transition Services. From and after the date hereof, the Seller, the Buyer and each Third-Party Buyer shall negotiate in good faith a Transition Services Agreements whereby:
>
> (a) the applicable Third-Party Buyer shall provide to the Buyer, with respect to the Business, (i) a license for no less than twenty-four (24) months to use the Job-Board Technology in substantially the same manner used in the Business as of Closing, (ii) information technology services (including maintenance and updates in the ordinary course of business) that were provided by the Seller or its Affiliates with respect to the Business prior to Closing and are necessary to permit the Buyer to operate the products and services of the Business in substantially the same manner as operated as of Closing (but for the avoidance of doubt, not including any back office, corporate or administrative services) for no less than twelve (12) months, and (iii) any services that are necessary to transfer to the Buyer in full force and effect the FedRAMP Authorization until such authorization is fully transferred, in each case for fees equal to the provider's cost of providing the service without any mark-up (the "Seller Transition Services"), and
>
> (b) the Buyer shall provide to the applicable Third-Party Buyer, with respect to the business of the Seller acquired by such Third-Party Buyer, information technology services (including maintenance and updates in the ordinary course of business) that were provided by the Seller or its Affiliates with respect to the business acquired by the applicable Third-Party Buyer prior to Closing

3

and are necessary to permit the applicable Third-Party Buyer to operate the products and services of the such acquired business in substantially the same manner as operated as of Closing (but for the avoidance of doubt, not including any back office, corporate or administrative services) for fees equal to the Buyer's cost of providing the service without any mark-up (the "Buyer Transition Services").

*See*, JobGet and Valsoft APA at §7.19 and Valnet APA at §7.18.

10. It is unclear which services will be provided during the post-closing period as a result of the TSAS. Therefore, Oracle reserves all rights in the event any provision in the Stalking Horse APAS, including the TSAS, purports to authorize the shared use of Oracle's licensed software, whether post-closing, or at any other time. Oracle also reserves all rights regarding any subsequent asset purchase agreement which proposes to include transitional or shared use, and which involves an as yet unknown buyer(s).

11. On July 3, 2025, the Debtors filed the Assumption Notice which identifies several agreements between Monster Worldwide, Inc. and Oracle ("Oracle Agreements"), designated for assumption and assignment in connection with the Job Board Business sale. The stated cure for the Oracle Agreements is $317,124, described as follows.

| Contract Counterparty | Debtor Party | Cure | Contract Date | Agreement Description |
|---|---|---|---|---|
| Oracle America, Inc. | Monster Worldwide, Inc. | $317,124 | 6/5/2025 | Purchase Order |
| Oracle America, Inc. | Monster Worldwide, Inc | $0.00 | 2/29/2024 | Purchase Order – Oracle Paas and Iaas |
| Oracle America, Inc. | Monster Worldwide, Inc | $0.00 | | Purchase Order - Hyperion |
| Oracle America, Inc. | Monster Worldwide, Inc | $0.00 | | Purchase Order Program Technical Support Services (EBS) SSN 3387747 |

4

### III. ARGUMENT

### A. Debtors May Not Assume And Assign The Oracle Agreements Absent Oracle's Consent Because The Oracle Agreements May Pertain To One Or More Licenses Of Intellectual Property.

12. Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

13. Federal law makes non-exclusive patent licenses non-assignable absent consent of the licensor. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *see also In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

14. Oracle's agreements are, or pertain to, non-exclusive licenses of copyrighted software. Therefore, pursuant to Bankruptcy Code section 365, the Debtors may not assume and assign any Oracle agreement without Oracle's consent. For the reasons discussed herein, Oracle does not consent to the Debtors' proposed assumption and assignment of the Oracle Agreements at this time.

### B. The Debtors Have Not Adequately Identified The Oracle Agreements To Be Assumed and Assigned.

15. The Assumption Notice does not provide sufficient information for Oracle to determine which contracts are at issue. If Oracle is correctly interpreting the Assumption Notice, some of the contracts may have expired. However, without more specific information, Oracle is unable to determine whether it is evaluating the same agreements. For clarity, the Assumption Notice should also identify the underlying support renewal and master agreement. Because the support agreements and master agreements relate to the underlying license agreements as part of substantially the same transactions, they constitute integrated contracts which may not be separately assumed and assigned – if that is the Debtors' intent. *See, e.g., In re Interstate Bakeries Corporation*, 751 F.3d 955, 961-2 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008). An executory contract must be assumed in its entirety and "[c]orrespondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract." *In re Taylor-Wharton Int'l LLC*, 2010 WL 4862723, at *3 (Bankr. D. Del. Nov. 23, 2010) (citing *In re Exide Tech.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006)). Under California law,[1] made applicable by the Oracle Agreements, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642

16. In order to clarify which Oracle contracts the Debtors hope to assume and assign, Oracle requests that the Debtors specify the targeted contracts' (1) identification or contract number; (2) date; (3) associated support renewals; and (4) governing license agreement. This

---

[1] *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB), 2013 WL 2663193, at *3 (Bankr. S.D.N.Y. June 13, 2013) ("State law governs the question whether an agreement is divisible or indivisible for the purposes of assumption and rejection under Bankruptcy Code § 365.")

information will enable Oracle to evaluate whether the Oracle Agreements are assignable, supported, expired, or in default, and, if in payment default, the appropriate cure amount. Additionally, the information will allow Oracle to assess whether Oracle may accept performance from an entity other than the Debtors. Oracle reserves its right to be heard on this issue until after the Oracle Agreements the Debtors seek to assume and assign are identified with greater specificity.

### C. The Debtors May Not Have Provided The Correct Cure Amount.

17. Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1). The Debtors have identified a cure amount of $317,124 for one of the Oracle Agreements. However, since the Debtors have failed to provide a clear and complete description of the contracts they seek to assume and assign, Oracle is unable to determine whether the cure amount is accurate. In addition, if the Debtors wish to assume and assign any expired agreements, Oracle would need to determine whether reinstatement is available and, if so, whether reinstatement fees would be due. Therefore, Oracle reserves its right to be heard further regarding the cure until after the contracts the Debtors seek to assume and assign are identified with enough specificity to allow Oracle to determine the corresponding cure amount

### D. The Debtors Have Not Provided Adequate Assurance of Future Performance By the Assignee.

18. Before assuming and assigning any executory contract, the Debtors must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1). As of the date of this Rights Reservation, no adequate assurance information regarding the Stalking Horse Bidders has been

provided, the sale remains subject to overbid, and the Stalking Horse Bidders may not be the successful bidders[2].

19. To satisfy Bankruptcy Code section 365(b), Oracle requests that the Debtors provide the following information: (1) financial bona fides; (2) confirmation that the purchasers are not an Oracle competitor; and (3) confirmation that the ultimate assignee will (a) execute an Oracle Assignment Agreement and related documentation which identifies with specificity the Oracle executory contract(s) to be assigned; and, if appropriate (b) enter into an Oracle Master License Agreement. Absent these assurances, Oracle cannot determine the proposed assignees' creditworthiness, suitability as an Oracle customer, or ability to adequately perform under the terms of the Oracle Agreements. Until the information described above is provided, the Debtors have not complied with the requirements of section 365(b)(1)(C).

### E. The Oracle Agreements Do Not Authorize Simultaneous Use By The Debtors and the Stalking Horse Bidders.

20. The Stalking Horse APAS contemplate that certain transition services may be provided via TSAS. To date, neither the TSAS nor their schedules have been filed with the Court. These omissions preclude Oracle from determining how, or if, its contracts will be affected.

21. Simultaneous use of, and access to, Oracle's licensed software may exceed the scope of the permitted uses under the Oracle Agreements. Such usage would potentially result in an unauthorized "splitting" of the licenses between the Debtors and the Stalking Horse Bidders. Oracle objects to the extent that any transitional or shared use arrangement purports to grant to both the Debtors and one or more of the Stalking Horse Bidders the right to shared use of the Oracle licenses beyond the licenses' terms. Oracle reserves all rights regarding any transitional

---

[2] Oracle is aware that counterparties have until one day prior to the sale hearing in which to file an objection to adequate assurance. However, in order to save duplicate filings, Oracle incorporates its objection to adequate assurance in this Rights Reservation.

use, including under any final Asset Purchase Agreement(s) or Transitional Services Agreement(s), pending Oracle's further review of the same.

## IV. CONCLUSION

22. For the reasons set forth above, Oracle respectfully requests that the Court deny the Debtors' request for authority to assume and assign, transfer or share use of the Oracle Agreements, or any Oracle agreement. Oracle reserves its right to be heard further on all issues set forth herein.

Dated: July 14, 2025
Wilmington, Delaware

**MARGOLIS EDELSTEIN**

By:   /s/ James E. Huggett
      James E. Huggett, Esq. (#3956)
300 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 888-1112
E-mail: jhuggett@margolisedelstein.com

Mark F. Magnozzi, Esq.
Benjamin Rachelson, Esq.
**THE MAGNOZZI LAW FIRM P.C.**
23 Green Street, Suite 302
Huntington, New York 11743
Telephone: (631) 923-2858
E-mail: mmagnozzi@magnozzilaw.com

Shawn M. Christianson, Esq.
**BUCHALTER, A Professional Corporation**
425 Market Street, Suite 2900
San Francisco, California 94105-2491
Telephone:  (415) 227-0900
Facsimile:  (415) 227-0770
E-mail: schristianson@buchalter.com

Peggy Bruggman, Esq.
Benjamin Wheeler, Esq.
**ORACLE AMERICA, INC.**
500 Oracle Parkway
Redwood City, California 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114

**Attorneys for Oracle America, Inc.**