**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------- x

In re:

ZEN JV, LLC, *et al.*,[1]

Debtors.

---------------------------------------------------------- x

: Chapter 11
:
: Case No. 25-11195 (JKS)
:
: (Jointly Administered)
:
: **Hearing Date: August 21, 2025 at 1:00 p.m. ET**
: **Objection Deadline: July 28, 2025 at 4:00 p.m. ET**

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE
EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP
AS FINANCIAL ADVISOR FOR THE DEBTORS
EFFECTIVE AS OF THE PETITION DATE**

Zen JV, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this application (this "**Application**").

**RELIEF REQUESTED**

1.      By this Application, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"): (i) authorizing the Debtors to retain and employ AlixPartners, LLP ("**AlixPartners**") as financial advisor for the Debtors pursuant to the terms of the engagement letter by and among the Debtors and AlixPartners, dated as of May 31, 2025 (the "**Engagement Letter**"), a copy of which is attached hereto as **Exhibit B** and (ii) granting related relief, in each instance effective as of the Petition Date (as defined below).  In support of

---

[1]      The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are:  Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions, LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508).  The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

this Application, the Debtors submit the declaration of Randall Eisenberg, a Partner and Managing Director of AlixPartners, LLP (the "**Eisenberg Declaration**"), attached hereto as **Exhibit C**.

## JURISDICTION AND VENUE

2.          The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.          The statutory and legal predicates for the relief requested herein are sections 327(a), 330, and 1107(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

4.          Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Application if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Background

5.          On June 24, 2025 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2

6.      No trustee or examiner has been appointed in the Chapter 11 Cases.  On June 30, 2025, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (the "**Creditors' Committee**").  *See* Docket No. 65.

7.      The Debtors' Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b)

8.      The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in detail in the *Declaration of Michael Suhadja, Chief Financial Officer, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 36] (the "**First Day Declaration**"), filed on the June 26, 2025 and incorporated by reference herein.[2]

## ALIXPARTNERS' QUALIFICATIONS

9.      AlixPartners is an internationally recognized restructuring and turnaround firm with substantial experience in providing financial advisory services and has an excellent reputation for its work in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.  In light of the size and complexity of these Chapter 11 Cases, the Debtors require a qualified and experienced financial advisor with the resources, capabilities, and experience of AlixPartners to assist them in taking steps that are crucial to the success of these Chapter 11 Cases.  AlixPartners performs critical services that complement the services provided by the Debtors' other professionals.

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

10.     AlixPartners has assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to these Chapter 11 Cases.  AlixPartners' professionals have provided restructuring or crisis management services in numerous large cases, including recent filings in this district.  *See, e.g.*, *In re Danimer Scientific, Inc.*, No. 25-10518 (MFW) (Bankr. D. Del. May 5, 2025); *In re Liberated Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Mar. 4, 2025); In *re Big Lots, Inc.*, No. 24-11967 (JKS) (Bankr. D. Del. Oct. 21, 2024); *In re Silvergate Capital Corp.*, No. 24-12158 (KBO) (Bankr. D. Del. Oct. 10, 2024); *In re DermTech Inc.*, No. 24-11378 (JTD) (Bankr. D. Del. July 15, 2024); *In re NanoString Techs., Inc.*, No. 24-10160 (CTG) (Bankr. D. Del. Mar. 13, 2024); *In re Cano Health, Inc.*, No. 24-10164 (KBO) (Bankr. D. Del. Mar. 5, 2024); *In re Mallinckrodt plc*, No. 23-11258 (JTD) (Bankr. D. Del. Oct. 2, 2023); *In re KDC Agribusiness LLC*, No. 23-10786 (CTG) (Bankr. D. Del. Jul. 18, 2023); *In re Clovis Oncology, Inc.*, No. 22-11292 (JKS) (Bankr. D. Del. Jan. 20, 2023); *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. Jan. 20, 2023); *In re Phoenix Services Topco, LLC*, No. 22-10906 (MFW) (Bankr. D. Del. Oct. 25, 2022);  *In re Kabbage Inc. d/b/a KServicing*, No. 22-10951 (CTG) (Bankr. D. Del. Oct. 21, 20220; *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Oct. 7, 2022); *In re MD Helicopters, Inc.,* No. 22-10263 (KBO) (Bankr. D. Del. Apr. 25, 2022); *In re Alto Maipo Delaware LLC*, No. 21-11507 (KBO) (Bankr. D. Del. Dec. 16, 2021); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Dec. 8, 2021); *In re Alpha Latam Mgmt., LLC*, No. 21-11109 (JKS) (Bankr. D. Del. Sept. 15, 2021); *In re Nine Point Energy, LLC*, No. 21-10570 (MFW) (Bankr. D. Del. Apr. 20, 2021); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Apr. 13, 2021); *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Nov. 19, 2020); *In re RGN-*

4

*Grp. Holdings, LLC*, No. 20-11961 (BLS) (Bankr. D. Del. Sept. 15, 2020); *In re Skillsoft Corp.*, No. 20-11532 (MFW) (Bankr. D. Del. July 23, 2020).

11.    In addition to AlixPartners' experience and reputation for providing financial advisory services in large, complex chapter 11 cases, since May 2025, AlixPartners has performed significant prepetition work for the Debtors.  As a result, AlixPartners has acquired significant knowledge of the Debtors and their businesses, and familiarity with the Debtors' financial affairs, debt structure, operations, and related matters.  Likewise, in providing prepetition services to the Debtors, AlixPartners' professionals have worked closely with the Debtors' management and their other advisors.  Accordingly, AlixPartners has experience, expertise, and specifically relevant knowledge regarding the Debtors that will assist it in providing effective and efficient services in these Chapter 11 Cases.  The Debtors submit that the retention of AlixPartners on the terms and conditions set forth herein is necessary and appropriate, in the best interest of the Debtors, their estates, and all parties in interest, and should be granted in all respects.

12.    If the Application is approved, the individuals working on this matter (the "**AlixPartners Personnel**"), all with substantial expertise in the areas discussed above, will continue to provide necessary services to the Debtors.  Such personnel will work closely with the Debtors' management and other professionals throughout the reorganization process.  By virtue of the expertise of its restructuring personnel and the significant prepetition work that AlixPartners performed for the Debtors, AlixPartners is well-qualified to provide services to and represent the Debtors' interests in these Chapter 11 Cases.

## SERVICES TO BE PROVIDED

13.    Prior to the Petition Date, the Debtors and AlixPartners entered into the Engagement Letter, which governs the relationship between them.  The terms and conditions of

5

the Engagement Letter were negotiated between the Debtors and AlixPartners and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Subject to further order of the Court, AlixPartners may provide the services described in the Engagement Letter and as set forth in this Application, as AlixPartners and the Debtors shall deem appropriate and feasible in order to advise the Debtors in the course of these Chapter 11 Cases, including, but not limited to, the following:

- Assist with the preparation of the plan of reorganization and disclosure statement, including relevant supporting exhibits.

- Assist with treasury activities, including developing short-term cash flow forecasting, and monitoring overall liquidity including disbursements.

- Prepare documents such as the statements of financial affairs, schedules of assets and liabilities, potential preference analysis, claims analysis, monthly operating reports, and other reporting that may be required by the Court, or to support emergence.

- Negotiate and/or communicate with outside constituents, including the preparation of materials and maintenance of a data room to support diligence requests.

- Claims management and claims reconciliation.

- Provide testimony during these Chapter 11 Cases as required.

- Assist in the identification of executory contracts and unexpired leases and the performing of cost/benefit evaluations with respect to the assumption or rejection of each as necessary.

- Provide assistance with implementation and tracking of Court orders.

- Assist in developing accounting and operating procedures to segregate prepetition and postpetition business transactions, and to track payments of prepetition obligations against the various motions.

- Assist with plan distribution activities.

- Support as needed the sales process and closing.

- Provide assistance with implementing vendor management programs to maintain vendor support.

- Provide assistance to management in connection with development of business plans, and such other related forecasts, as may be required.

- Assist management and its other professionals in sourcing, negotiating and implementing any financing, including DIP and exit financing facilities, in conjunction with a plan of reorganization and the overall restructuring.

- Assist in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers, to the extent necessary.

- Conduct eDiscovery, document review and forensic data services required in conjunction with any document requests or other discovery.

- Render such other restructuring and general business consulting or such other assistance for the Debtors or the Debtors' subsidiaries and affiliates as the Debtors' management or counsel may request, that are not duplicative of services provided by other professionals retained in these Chapter 11 Cases.

14.     Such financial advisory services are necessary to the Debtors' restructuring efforts and in the ongoing operation and management of the Debtors' businesses while subject to chapter 11 of the Bankruptcy Code.

## NO DUPLICATION OF SERVICES

15.     AlixPartners understands that the Debtors may retain additional professionals during the term of its engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.  The financial advisory services provided by AlixPartners will complement, and not duplicate, the services rendered by any other professional retained in these Chapter 11 Cases.

## FEE AND EXPENSE STRUCTURE

16.     AlixPartners' decision to accept this engagement to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it

7

incurs in accordance with its customary billing practices, as set forth in <u>Schedule 1</u> of the Engagement Letter (the "**Fee and Expense Structure**").

17.     AlixPartners' current standard hourly rates, subject to periodic adjustments, are as follows:

| Title | Hourly Rate |
|---|---|
| Partner/ Partner & Managing Director | $1,225 – $1,540 |
| Senior Vice President/ Director | $850 – $1,150 |
| Vice President/ Consultant/ Analyst | $250 – $835 |

18.     AlixPartners generally reviews and revises its billing rates semi-annually. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates become effective.

19.     To the extent the Debtors request services related to electronic discovery and data collection, certain monthly hosting fees and consulting fees will apply.

20.     To the extent AlixPartners uses the services of independent contractors (the "**Contractors**") in these Chapter 11 Cases, AlixPartners shall:  (a) pass through the cost of such Contractors to the Debtors at the same rate that AlixPartners pays the Contractors; (b) seek reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflict checks as required for AlixPartners; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

21.     In addition to compensation for services rendered by the AlixPartners Personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses incurred in

8

connection with these Chapter 11 Cases, including but not limited to transportation costs, lodging, and meals.

22.     AlixPartners intends to apply for compensation for services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* (Appendix A to 28 C.F.R. § 58), applicable provisions of the Bankruptcy Code, including sections 330 and 331, the Bankruptcy Rules, the Local Rules, and any other further orders of the Court, both in connection with this Application and the interim and final fee applications to be filed by AlixPartners in these Chapter 11 Cases.

23.     AlixPartners will maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in these Chapter 11 Cases.  Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Debtors. AlixPartners' applications for compensation of fees and reimbursement of expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter and any procedures established by the Court, pursuant to an interim compensation order or otherwise.

24.     AlixPartners often works for compensation that includes hourly-based fees and performance-based, contingent-incentive compensation earned upon achieving meaningful results. AlixPartners does not currently request a success fee in connection with these Chapter 11 Cases.

25.     AlixPartners received an initial retainer in the amount of $250,000 from the Debtors (the "**Retainer**").  According to AlixPartners' books and records, during the 90-day period prior

9

to the Petition Date, the Debtors paid AlixPartners $858,375.00 in aggregate for professional services performed and expenses incurred, including advanced payments and the Retainer.

26.     Any balance of the Retainer will constitute an evergreen retainer as security for post-petition services and expenses.  An evergreen retainer is appropriate in these Chapter 11 Cases.  First, evergreen retainer agreements reflect normal business terms in the marketplace.  *See In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("[I]t is not disputed that the taking of evergreen retainers is a practice now common in the marketplace …. [T]he practice in this district has been engaged in since at least the early 1990's …."). Second, AlixPartners and the Debtors are sophisticated business entities that have negotiated the Retainer at arm's length.  As such, the Debtors respectfully request that approval of the proposed evergreen retainer is warranted.

27.     Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior, and subsequent to, the Petition Date, AlixPartners may have incurred fees and reimbursable expenses related to the prepetition period which remain unpaid. Approval is sought from the Court for AlixPartners to apply the Retainer and advanced payments to any such unpaid amounts.  Upon entry of an order approving the relief requested herein, AlixPartners will apply the Retainer and advanced payments to any unpaid amounts, and the Debtors will not owe AlixPartners any sums for prepetition services.

**THE FEE AND EXPENSE STRUCTURE IS APPROPRIATE AND REASONABLE AND SHOULD BE APPROVED UNDER SECTION 327 OF THE BANKRUPTCY CODE**

28.     Without the relief requested herein, the Debtors would be deprived of the assistance of a qualified financial advisor, which would disadvantage the Debtors and parties in interest.  If the Debtors are forced to engage a new financial advisor, the Debtors' restructuring efforts would

10

be slowed as any such new advisor is provided with the necessary background to provide adequate

services.  Moreover, comparable financial advisors would likely require similar compensation.

29.     To the best of the Debtors' knowledge, there is no agreement or understanding

between AlixPartners and any nonaffiliated person or entity for sharing compensation received, or

to be received, for services rendered in connection with the Debtors' Chapter 11 Cases.  The Fee

and Expense Structure is consistent with and typical of compensation arrangements entered into

by AlixPartners and other comparable firms that render similar services.  The Fee and Expense

Structure is reasonable, market-based, and designed to compensate AlixPartners fairly for its work

and to cover fixed and routine expenses.  Thus, the Fee and Expense Structure is fair and

reasonable under the standards set forth in section 327 of the Bankruptcy Code.

## ALIXPARTNERS' DISINTERESTEDNESS

30.     To the best of the Debtors' knowledge and except to the extent disclosed herein and

in the Eisenberg Declaration, AlixPartners: (a) is a "disinterested person" (within the meaning of

section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code

and supplemented by section 1107(b) of the Bankruptcy Code) and does not hold or represent an

interest materially adverse to the Debtors' estates, (b) has no connection to the Debtors, their

creditors, or other parties in interest in these Chapter 11 Cases, or the attorneys or accountants of

the foregoing, or the U.S. Trustee, or any person employed in the Office of the U.S. Trustee, and

(c) does not hold any interest adverse to the Debtors' estates.

31.     As set forth in further detail in the Eisenberg Declaration, AlixPartners has certain

connections with creditors, equity security holders, and other parties in interest in these Chapter

11 Cases.  AlixPartners does not believe that any of these connections represent an interest

11

materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these Chapter 11 Cases.

32.     In the event that AlixPartners learns of additional connections not reflected in the Eisenberg Declaration, AlixPartners will use reasonable efforts to promptly file a supplemental declaration.

### INDEMNIFICATION PROVISIONS

33.     The Engagement Letter contains standard indemnification language with respect to AlixPartners' services including, without limitation, an agreement by the Debtors to indemnify AlixPartners and its affiliates, partners, directors, officers, employees and agents (each, an "**AlixPartners Party**" and collectively, the "**AlixPartners Parties**") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Engagement Letter, except to the extent caused by gross negligence, bad faith, willful misconduct, or fraud of any AlixPartners Party.

34.     The Debtors and AlixPartners believe that the indemnification provisions contained in the Engagement Letter, as may be amended in the Proposed Order, are customary and reasonable for AlixPartners and comparable firms providing financial advisory services, and as would be modified pursuant to the foregoing limitations, reflect the qualifications and limitations on indemnification provisions that are customary in this district. *See, e.g., In re Virgin Orbit Holdings, Inc.*, No. 23-10405 (KBO) (Bankr. D. Del. May 18, 2023) (approving similar modified indemnification provisions for the retention and employment of Alvarez & Marsal North America, LLC); *In re Clovis Oncology, Inc.*, No. 22-11292 (JKS) (Bankr. D. Del. Jan. 19, 2023) (approving similar modified indemnification provisions for the retention and employment of AlixPartners); *In re Phoenix Services TopCo, LLC.*, No. 22-10906 (MFW) (Bankr. D. Del. Oct. 25, 2022) (same);

12

*In re Kabbage, Inc.*, No. 22-10951 (CTG) (Bankr. D. Del. Oct. 21, 2022) (same); *In re TNT Crane & Rigging, Inc.*, No. 20-11982 (BLS) (Bankr. D. Del. Sept. 18, 2020) (approving similar modified indemnification provisions for the retention and employment of FTI Consulting, Inc.); *In re VIVUS, Inc.*, No. 20-11779 (LSS) (Bankr. D. Del. Aug. 24, 2020) (approving similar modified indemnification provisions for the retention and employment of Ernst & Young LLP); *In re Lucky Brand Dungarees, LLC*, No. 20-11768 (CSS) (Bankr. D. Del. July 29, 2020) (approving similar modified indemnification provisions for the retention and employment of Houlihan Lokey Capital, Inc.).

35.    Moreover, the terms and conditions of the indemnification provisions were negotiated by the Debtors and AlixPartners at arm's length and in good faith.  The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of AlixPartners' proposed retention, are reasonable and in the best interest of the Debtors, their estates, and all parties in interest in light of the fact that the Debtors require AlixPartners' services to ensure the success of these Chapter 11 Cases.  Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions as set forth in the Engagement Letter, as may be amended by the Proposed Order.

## **BASIS FOR RELIEF**

36.    Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

> 11 U.S.C. § 327(a).

37.    Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

38.     The Debtors respectfully submit that section 327 of the Bankruptcy Code permits them to hire a professional firm like AlixPartners to undertake an advisory role in these Chapter 11 Cases.  Furthermore, the requirements set forth by Bankruptcy Rule 2014 are satisfied by this Application.  The retention of AlixPartners as financial advisor in these Chapter 11 Cases is in the best interest of the Debtors, their estates, and all parties in interest.

## NOTICE

39.     Notice of this Application will be provided to (a) the U.S. Trustee; (b) Cole Schotz P.C., as proposed counsel to the Creditors' Committee; (c) Norton Rose Fulbright US LLP and Young Conaway Stargatt & Taylor LLP, as counsel to the DIP Lender; (d) Seward & Kissel LLP, as counsel to the Prepetition Term Loan Agent; (e) Schulte Roth & Zabel LLP, as counsel to the Required Prepetition Term Loan Lenders; (f) Jones Day, as counsel to the Prepetition Noteholders (g) the Internal Revenue Service; (h) the state attorneys general for states in which the Debtors conduct business; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, under the circumstances, no other or further notice is required.

## No Prior Request

40.     No prior request for the relief sought herein has been made to the Court or any other court.

14

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: July 14, 2025

ZEN JV, LLC, *et al.*

*/s/ Michael Suhajda*

Michael Suhajda
Chief Financial Officer