## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

In re:                                                 :     Chapter 11
                                                       :
ZEN JV, LLC, et al.,[1]                                :     Case No. 25-11195 (JKS)
                                                       :
            Debtors.                                   :     (Jointly Administered)
                                                       :
                                                       :     **Hearing Date: August 21, 2025 at 1:00 p.m. ET**
                                                       :     **Objection Deadline: July 28, 2025 at 4:00 p.m. ET**

------------------------------------------------------------ X

### APPLICATION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF PJT PARTNERS LP AS INVESTMENT BANKER TO THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE, (II) WAIVING CERTAIN INFORMATION REQUIREMENTS PURSUANT TO LOCAL RULE 2016-2, AND (III) GRANTING RELATED RELIEF

Zen JV, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this application (this "**Application**"):

### RELIEF REQUESTED

1.     By this Application, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"): (i) authorizing the employment and retention of PJT Partners LP ("**PJT**") as investment banker for the Debtors, effective as of June 24, 2025 (the "**Petition Date**"), in accordance with the terms and conditions of that certain engagement letter dated as of June 24, 2025 (the "**Engagement Letter**"), attached hereto as

---

[1]   The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are: Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions, LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508). The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

**Exhibit B**, (ii) approving the terms of PJT's employment, including the proposed compensation arrangements and the indemnification provisions set forth in the Engagement Letter, as modified by the Proposed Order, under section 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), (iii) modifying the time-keeping requirements of Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") and the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (Appendix A to 28 C.F.R. § 58) (the "**U.S. Trustee Guidelines**") established by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") in connection with PJT's proposed engagement, and (iv) granting related relief. In support of this Application, the Debtors rely on and incorporate by reference the *Declaration of Avi Robbins in Support of the Application of Debtors for Entry of an Order (I) Authorizing the Retention and Employment of PJT Partners LP as Investment Banker to the Debtors and Debtors in Possession Effective as of the Petition Date, (II) Waiving Certain Information Requirements Pursuant to Local Rule 2016-2, and (III) Granting Related Relief* (the "**Robbins Declaration**"), attached hereto as **Exhibit C** and incorporated herein by reference.

<u>**JURISDICTION AND VENUE**</u>

2.      The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief requested herein are sections 105, 363, and 365 of the Bankruptcy Code, Rules 2002, 6004, 6006, 9006, and 9007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 6004-1.

4.      Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Application if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

5.      On the Petition Date, the Debtors commenced with the Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      No trustee or examiner has been appointed in the Chapter 11 Cases.  On June 30, 2025, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (the "**Creditors' Committee**").  *See* Docket No. 65.

7.      The Debtors' Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

8.      The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in detail in the *Declaration of Michael Suhajda, Chief Financial Officer, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 36] (the "**First Day Declaration**"), filed on the June 26, 2025 and incorporated by reference herein.[2]

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

## PJT'S QUALIFICATIONS

9.      As detailed in the Robbins Declaration, PJT is one of the industry's leading advisors to companies and creditors in a variety of complex restructurings and bankruptcies.  PJT was spun off from The Blackstone Group L.P. ("**Blackstone**"), effective October 1, 2015.  Upon the consummation of the spinoff, Blackstone's Restructuring and Reorganization advisory group became a part of PJT, and Blackstone's restructuring professionals became employees of PJT.  The former Blackstone restructuring professionals, in their capacity as PJT employees, have been conducting business and providing their clients with the same high-quality restructuring services that Blackstone had itself provided since the formation of its restructuring advisory practice approximately 33 years ago.  PJT professionals have extensive experience working with financially troubled companies in complex financial restructurings.  Since 1991, PJT professionals have advised on several hundred distressed situations, both in and out of court.

10.      The partners and members of PJT have assisted and advised in numerous chapter 11 cases.  In particular, they have provided services to debtors, creditors' committees, and other constituencies in numerous chapter 11 cases, including, among others:  AbitibiBowater Inc.; Aegean Marine Petroleum Network Inc.; Adelphia Communications Corporation; Apex Silver Mines Ltd.; Arch Coal, Inc.; Ascent Resources Marcellus Holdings, LLC; Caesars Entertainment Operating Corporation; Cengage Learning, Inc CHC Group Ltd.; Cineworld Group plc; Cumulus Media Inc.; Delta Air Lines, Inc.; Edison Mission Energy; Energy Future Holdings Corporation; Energy & Exploration Partners, Inc.; Endo International plc; Enron Corporation; EP Energy Corporation; Envision Healthcare; General Motors Corporation; Genesis Care Pty Limited; Global Crossing Ltd.; Houghton Mifflin Harcourt Publishing Company; Wesco Aircraft Holdings, Inc. (Incora); iHeartMedia, Inc.; Intelsat S.A.; J. Crew Group, Inc.; LightSquared Inc.; Los Angeles Dodgers LLC; Merisant Worldwide, Inc.; Mirant Corp.; Natura &Co. (Avon Products);

4

Pennsylvania Real Estate Investment Trust; Purdue Pharma; Ruby Pipeline, L.L.C.; Samson Resources Corporation; SemGroup; TerreStar Networks Inc.; Trident Holding Company, LLC; Tribune Company; VER Technologies Holdco LLC; Verso Corporation; Walter Energy, Inc.; Westinghouse Electric Company LLC; W.R. Grace & Co.; WeWork Inc.; and Windstream Holdings, Inc.  In addition, the restructuring group has provided general restructuring advice to major companies such as Brightspeed, Clearwire Corporation, Del Monte Foods, Ford Motor Company, The Goodyear Tire & Rubber Company, and Xerox Corporation.

11.    The Debtors have selected PJT as their investment banker based upon the foregoing experience and, among other things:  (a) the Debtors' need to retain a skilled investment banking firm to provide advice with respect to the Debtors' restructuring and M&A activities; (b) PJT's extensive experience and excellent reputation in providing investment banking services (including restructuring and M&A services) in complex chapter 11 cases such as these, as well as extensive out-of-court M&A experience; and (c) PJT's extensive knowledge of the Debtors, as described more fully below.  In light of the size and nature of these chapter 11 cases, PJT's resources, capabilities, and experience are crucial to the Debtors' successful restructuring.  An experienced investment banker such as PJT fulfills a critical need that complements the services provided by the Debtors' other restructuring professionals.  For these reasons, the Debtors require PJT's services in these chapter 11 cases.

12.    On or around April 4, 2025, the Debtors initially retained PJT as their investment banker in connection with a potential the sale of the Debtors' Monster Government Solutions business and/or the Debtors' Monster Media Properties business.[3]  Such engagement has been amended pursuant to the Engagement Letter to include a sale of all or any portion of the assets of

---

[3]    PJT also was previously retained by CareerBuilder, LLC to provide financial advisory services in connection with the company's combination with Monster Worldwide, Inc. in September 2024.

the Debtors including the sale of any business segments, in whole or in part, of the Debtors. To date, PJT has engaged in extensive due diligence of the Debtors' businesses, including their operations, assets, capital structure, and contractual arrangements. PJT has also engaged in extensive discussions and negotiations with the most interested and likely buyers of each of the Debtors' assets, has developed a good understanding of their respective interest levels and has negotiated stalking horse bids for the Debtors' assets. Throughout this period of advising the Debtors, PJT has become familiar with the Debtors' capital structure, and business operations, stalking horse bidders and other potential auction participants.

13.     During PJT's representation of the Debtors, it has, among other things, provided advice on potential sale transactions and has participated in negotiations among the Debtors and potential bidders for the Debtors' assets. PJT also assisted the Debtors and its counsel in connection with (a) reviewing the terms, conditions, and potential impact of various stalking horse bids, (b) the negotiation of the terms of the Debtors' DIP financing and (c) negotiations with the Debtors' pre-petition lenders. In addition, PJT has met with the Debtors' board of directors on numerous occasions throughout its engagement to discuss and advise on the above matters.

14.     As a result of the work performed by PJT on behalf of the Debtors both pre- and postpetition, PJT has acquired significant knowledge of the Debtors' financial affairs, capital structure, business operations, assets, and key stakeholders, as well as the drivers of the Debtors' financial performance, business model and operations. Likewise, in providing services to the Debtors, PJT's professionals have worked closely with the Debtors' personnel, board, and other advisors. If the Application is approved, several of PJT's professionals, all with substantial expertise in the areas discussed above, will continue to provide services to the Debtors and will work closely with the Debtors' personnel and other professionals throughout the sale process.

Accordingly, as a result of PJT's representation of the Debtors prior to and after the commencement of these chapter 11 cases and PJT's extensive experience representing chapter 11 debtors, PJT is well-qualified to provide these services and represent the Debtors during these chapter 11 cases.

15.     Indeed, if the Debtors were required to retain an investment banker other than PJT in connection with these chapter 11 cases, the Debtors, their estates, and other parties in interest would be unduly prejudiced by the time and expense necessary to familiarize another investment banker with the intricacies of the Debtors, their key stakeholders, their business operations and likely auction participants.

## SERVICES PROVIDED BY PJT

16.     The terms and conditions of the Engagement Letter[4] were the result of significant discussions and negotiations between PJT and the Debtors, and they reflect the parties' mutual agreement as to the substantial efforts that will be required by PJT in respect of this engagement. The employment of PJT also is necessary to enable the Debtors to execute their duties as debtors in possession and to realize their reorganization efforts.

17.     Subject to further order of the Court, and consistent with the terms of the Engagement Letter, PJT's anticipated services in these chapter 11 cases, to the extent necessary, appropriate, feasible, and as may be requested by the Debtors, include the following:

    a.     assist in the evaluation of the Company's businesses and prospects;

    b.     assist in the evaluation of the Company's long-term business plan and related financial projections;

---

[4]     The summary of the Engagement Letter in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter. To the extent there is any discrepancy between the summary contained in this Application and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall govern.

c.      assist in the development of financial data and presentations to the Company's Board of Directors, various creditors, potential buyers and other third parties;

d.      analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;[5]

e.      provide strategic advice with regard to a Restructuring (including a Sale Transaction);

f.      participate in negotiations among the Company and its creditors, suppliers, potential buyers and other interested parties;

g.      assist the Company in preparing marketing materials in conjunction with a possible Sale Transaction;

h.      assist the Company in identifying potential buyers or parties in interest to a Sale Transaction and assist in the due diligence process;

i.      assist and advise the Company concerning the terms and conditions of any Sale Transaction;

j.      provide expert witness testimony concerning any of the subjects encompassed by the other investment banking services listed herein; and

k.      provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a transaction similar to a potential Restructuring, as requested and mutually agreed.

## **PROFESSIONAL COMPENSATION**

18.    PJT's decision to advise and assist the Debtors in connection with these chapter 11 cases is subject to its ability to be retained in accordance with the terms of the Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code.

---

[5]    As used in the Engagement Letter, the term "**Restructuring**" means (i) any restructuring, reorganization (whether or not pursuant to chapter 11 of the Bankruptcy Code ("**Chapter 11**")) and/or recapitalization of the Debtors affecting any of its existing or potential debt obligations or other claims against the Debtors, including, without limitation, senior debt, junior debt, trade claims, general unsecured claims, and preferred stock (collectively, the "**Obligations**"), and/or (ii) a sale or other disposition of any material assets and/or equity of the Debtors (with any transaction described in the foregoing clause (ii) being referred to herein as a "**Sale Transaction**"), and/or (iii) any complete or partial repurchase, refinancing, extension or repayment by the Debtors of any of the Obligations.

19.    In consideration of the services to be provided by PJT, and as more fully described in the Engagement Letter, subject to the Court's approval, the Debtors and PJT have agreed that PJT shall, in respect of its services, be compensated under the following fee structure (the "**Fee Structure**"):

    a.    a fee (the "**Restructuring Fee**") equal to (a) $3,000,000, earned and payable in cash upon consummation of a Restructuring (which, for the avoidance of doubt, could be a Sale Transaction) (provided that such $3,000,000 may only be earned and payable once regardless of how many Sale Transactions are consummated), plus (b) an additional amount equal to 5% of the Transaction Value[6] in excess of the Transaction Value initially offered by a stalking horse bidder pursuant to an asset purchase (or similar) agreement in connection with any Sale Transaction, earned and payable in cash upon the consummation of such Sale Transaction.  Except as otherwise provided herein, a Restructuring (including, without limitation, a Sale Transaction) shall be deemed to have been consummated upon the consummation of a Chapter 11 plan, section 363 sale and/or any other Restructuring pursuant to an order of the Bankruptcy Court or other applicable court; and

    b.    ***Expense Reimbursements***:  In addition to the fees described above, the Debtors agree to reimburse PJT for all reasonable and documented out-of-pocket expenses incurred during PJT's engagement, including, but

---

[6]    As used in the Engagement Letter, "**Transaction Value**" means the gross value of all cash, securities and other properties paid or payable, directly or indirectly, in one transaction or in a series or combination of transactions, in connection with the Sale Transaction or a transaction related thereto (including, without limitation, amounts paid (A) pursuant to covenants not to compete or similar arrangements and (B) to holders of any warrants, stock purchase rights, convertible securities or similar rights and to holders of any options or stock appreciation rights, whether or not vested). Transaction Value shall also include (i) (I) in the case of the sale, exchange or purchase of the Debtors' equity securities the principal amount of any indebtedness for borrowed money, preferred stock obligations, any pension liabilities, capital leases, guarantees and any other long-term liabilities as set forth on the most recent consolidated balance sheet of the Debtors prior to the consummation of such sale, exchange or purchase or (II) in the case of a sale or disposition of assets by the Debtors the principal amount of any indebtedness for borrowed money, preferred stock obligations, any pension liabilities, capital leases, guarantees and any other long-term liabilities indirectly or directly assumed or acquired, and (ii) any indebtedness for borrowed money, preferred stock obligations, any pension liabilities, capital leases, guarantees and any other long-term liabilities that are or otherwise repaid or retired, in connection with or in anticipation of the Sale Transaction. Transaction Value shall also include the aggregate amount of any extraordinary dividend or distribution made by the Debtors from the date hereof until the closing of the Sale Transaction. Transaction Value shall be reduced by any cash or cash equivalents transferred to, or retained by, the acquirer in the Restructuring. Transaction Value shall include all amounts paid into escrow and all contingent payments payable in connection with the Sale Transaction, with fees on amounts paid into escrow to be payable upon the disbursements of such amounts from such escrow and fees on contingent payments to be payable when such contingent payments are made.  If the Transaction Value to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such Transaction Value is paid.

not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable and documented fees and expenses of PJT's outside counsel (without the requirement that the retention of such counsel be approved by the court in any bankruptcy case), and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses. Further, in connection with the reimbursement, contribution and indemnification provisions set forth in the Engagement Letter and <u>Attachment A</u> to the Engagement Letter (the "**Indemnity Agreement**"), which is incorporated therein by reference and addressed further below, the Debtors agree to reimburse each PJT Party, for its reasonable legal and other expenses (including the cost of any investigation and preparation) as they are incurred in connection with any matter in any way relating to or referred to in the Engagement Letter or arising out of the matters contemplated by the Engagement Letter (including, without limitation, in enforcing the Engagement Letter), subject to certain exceptions, limitations, and requirements set forth in the Indemnity Agreement.

20.    PJT will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases. However, because (a) it is not the general practice of investment banking firms such as PJT to keep detailed time records similar to those customarily kept by attorneys, (b) PJT does not ordinarily keep time records on a "project category" basis, and (c) PJT's compensation consist solely of contingency based fees (namely the Transaction Fees), the Debtors respectfully request that PJT's investment banking professionals be required to maintain records (in summary format) of the services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in half-hour increments), and the identity of the professionals who provided those services. PJT will present such records to the Court in its fee application(s). Moreover, the Debtors respectfully request that PJT's professionals not be required to keep time records on a "project category" basis, that its non-investment banking professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that it not be required to provide or conform to any schedule of hourly rates. To the

extent that PJT would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, or other applicable procedures and orders of the Court, the Debtors respectfully request that the Court waive such requirements.

21.    The Debtors believe the Fee Structure is consistent with, and typical of, compensation arrangements entered into by PJT and other comparable firms in connection with the rendering of similar services under similar circumstances, both in and out of bankruptcy proceedings.  The Debtors also believe that the Fee Structure is very reasonable given that it is comprised entirely of contingency based fees, which are tied to the occurrence of certain transactions contemplated by the Debtors and PJT in the Engagement Letter.  In determining the Fee Structure and the reasonableness of such compensation, the Debtors compared PJT's fee proposal to comparable precedents.  After such comparison, followed by discussions and arm's-length negotiations, the Debtors believe that the Fee Structure is in fact reasonable, market-based, and designed to compensate PJT fairly for its work.

22.    The Debtors request to pay PJT's fees and to reimburse PJT for its reasonable costs and expenses as provided in the Engagement Letter, including, but not limited to, in-sourced document production costs, travel costs, meals, and the fees, disbursements, and other charges of PJT's legal counsel (without the need for such legal counsel to be retained as a professional in these chapter 11 cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).  In the event that PJT seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to this Application and the Engagement Letter, PJT will include the invoices and supporting time records for the attorneys' fees and expenses in PJT's own applications, both interim and final, and these invoices and time records

shall be subject to the U.S. Trustee Guidelines and the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.  PJT will not seek reimbursement of fees of its counsel incurred in defending any of PJT's fee applications in these chapter 11 cases.

23.    PJT's strategic and financial expertise, as well as its capital markets knowledge, financing skills, mergers and acquisitions experience, and restructuring capabilities, some or all of which has and will be required by the Debtors during the term of PJT's engagement, were important factors to the Debtors in determining the Fee Structure.  The Debtors believe that the ultimate benefits of PJT's services hereunder cannot be measured by reference to the number of hours to be expended by PJT's professionals in the performance of such services.  The Debtors and PJT agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort would be required of PJT and in light of the fact that (a) such commitment could have and may still foreclose other opportunities for PJT and (b) the actual time and commitment required of PJT and its professionals to perform the restructuring services may vary substantially from week to week and month to month creating "peak load issues" for PJT.

24.    During the ninety (90)-day period before the Petition Date, the Debtors did not make any payments to PJT.  As of the Petition Date, the Debtors were current on their obligations to PJT under the Engagement Letter.

## **INDEMNIFICATION**[7]

25.    As part of the overall compensation payable to PJT under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification, contribution, and

---

[7]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Engagement Letter.

reimbursement obligations, set forth in the Indemnity Agreement.  The Indemnity Agreement provides that the Debtors will indemnify and hold harmless the PJT Parties from and against Losses incurred by a PJT Party in connection with PJT's engagement, except for any Losses to the extent such Losses resulted primarily from the gross negligence, bad faith, fraud or willful misconduct of such PJT Party.  The Debtors will reimburse such PJT Party for its reasonable legal and other expenses (including the cost of any investigation and preparation) as such expenses are incurred by such PJT Party in connection therewith.

26.    The Engagement Letter's indemnification and contribution provisions were fully negotiated by the Debtors and PJT at arm's length and in good faith.  The Debtors believe that the indemnification provisions in the Engagement Letter are appropriate and reasonable for investment banking engagements in chapter 11 cases and reflect the qualifications and limitations on indemnification provisions that are customary in the industry as previously determined in this District and other jurisdictions.  As such, the Debtors believe that the indemnification provisions described in the Indemnity Agreement are appropriate under the circumstances and should be approved, subject to the modifications set forth in the Proposed Order.

## NO DUPLICATION OF SERVICES

27.    The services of PJT will complement and not duplicate the services rendered by any other professional retained in these chapter 11 cases.  PJT understands that the Debtors have retained and may retain additional professionals during the term of the engagement and agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.  PJT is providing distinct and specific investment banking services as set forth in the Engagement Letter, and such services are not expected to duplicate those to be provided by any other consultants, legal advisors, or financial advisor.

13

## **PJT'S DISINTERESTEDNESS**

28.     PJT has reviewed the list of parties in interest provided by the Debtors.  To the best of the Debtors' knowledge, information, and belief, and except to the extent disclosed herein or in the Robbins Declaration, PJT:   (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest materially adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors, or related parties, except as disclosed in the Robbins Declaration.

29.     Given the large number of parties in interest in these chapter 11 cases, despite the efforts to identify and disclose PJT's relationships with parties in interest in these chapter 11 cases, PJT is unable to state with absolute certainty that every client relationship or other connection has been disclosed in the Robbins Declaration.  PJT will make continued inquiries following the filing of this Application, on a periodic basis, with additional disclosures to the Court if necessary or otherwise appropriate.

30.     The Debtors are informed that PJT will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than principals and employees of PJT, to the extent permitted by section 504 of the Bankruptcy Code.

## **BASIS FOR RELIEF REQUESTED**

## I.     **The Debtors Should Be Permitted to Retain and Employ PJT in Accordance with the Terms of the Engagement Letter Pursuant to Sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code.**

31.     The Debtors seek approval of the retention and employment of PJT under sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code.  Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable

terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or

percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Section 327(a) of the

Bankruptcy Code, in turn, authorizes a debtor in possession to employ professionals that "do not

hold or represent an interest adverse to the estate, and that are disinterested persons."  11 U.S.C.

§ 327(a).  Section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for

employment under section 327 of the Bankruptcy Code by a debtor in possession solely because

of such person's employment by or representation of the debtor before the commencement of the

case."  11 U.S.C. § 1107(b).

32.     Section 328 of the Bankruptcy Code permits the compensation of professionals,

including financial advisors, on more flexible terms that reflect the nature of their services and

market conditions.  As the U.S. Court of Appeals for the Fifth Circuit recognized in *Donaldson*

*Lufkin & Jenrette Secs. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th

Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to
> work for bankruptcy estates where their compensation would be
> subject to the uncertainties of what a judge thought the work was
> worth after it had been done.  That uncertainty continues under the
> present § 330 of the Bankruptcy Code, which provides that the court
> award to professional consultants "reasonable compensation" based
> on relevant factors of time and comparable costs, etc.  Under present
> § 328 the professional may avoid that uncertainty by obtaining court
> approval of compensation agreed to with the trustee (or debtor or
> committee).

123 F.3d at 862 (footnote omitted).

33.     Additionally, Bankruptcy Rule 2016 and Local Rule 2016-2 require retained

professionals to submit applications for payment of compensation in chapter 11 cases.  Local

Rule 2016-2(d) also requires retained professionals to submit detailed time entries that set forth,

among other things, a detailed description of each activity performed, the amount of time spent on

the activity (in tenth of an hour increments), the subject matter of the activity and the parties involved with the activity at issue.  Local Rule 2016-2(h), however, allows a retained professional to request a waiver of these requirements for cause.

34.    The Court's approval of the Debtors' retention of PJT in accordance with the terms and conditions of the Engagement Letter is warranted.  First, as discussed above and in the Robbins Declaration, PJT satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code.[8]  PJT has already committed a significant amount of time and effort with respect to these chapter 11 cases.  The Debtors require PJT to continue to assist with the Debtors' negotiations, as necessary, to provide expert advice and testimony regarding financial matters related to the proposed transactions, and to enable the Debtors to discharge their duties as debtors under the Bankruptcy Code.  PJT has extensive experience and an excellent reputation in providing high-quality investment banking services to debtors and creditors in bankruptcy reorganizations, mergers and acquisitions, and other restructurings.  PJT has become familiar with the Debtors' business operations, capital structure, financing documents, and other material information and is able to assist the Debtors in their sale efforts.  The Debtors believe that PJT is well-qualified to provide its services to the Debtors in a cost-effective, efficient, and timely manner.  Furthermore, as detailed herein and in the Robbins Declaration, PJT does not hold or represent an interest adverse to the Debtors' estates and is disinterested.

---

[8]    Bankruptcy Rule 2014(a) requires that an application must be made for retention of professionals pursuant to section 327 of Bankruptcy Code.  Under Bankruptcy Rule 2014(a), such application must "state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."  Additionally, the application "shall be accompanied by a verified statement of the person to be employed setting forth the person's connections" to the parties in interest list.  Fed. R. Bankr. P. 2014.  Here, Bankruptcy Rule 2014 is satisfied by the contents of this Application and the Robbins Declaration attached hereto.

RLF1 33268903v.1

35.     In addition, the Debtors believe that the Fee Structure is market-based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.   The Fee Structure reflects PJT's commitment to the variable level of time and effort necessary to perform the restructuring and investment banking services, PJT's particular expertise, and the market prices for PJT's services for engagements of this nature both out of court and in a chapter 11 context.  Indeed, the Debtors believe that the Fee Structure appropriately reflects:  (a) the nature and scope of services to be provided by PJT; (b) PJT's substantial experience with respect to investment banking services; (c) the fee structures typically utilized by PJT and other leading investment bankers that do not bill their clients on an hourly basis; and (d) indemnification provisions typically utilized by PJT in restructuring transactions of this size.

36.     Notwithstanding the foregoing, under the Proposed Order, the U.S. Trustee retains all rights to object to PJT's fee application (including expense reimbursement) pursuant to section 330 of the Bankruptcy Code.

37.     As set forth above, and notwithstanding approval of the Engagement Letter under section 328 of the Bankruptcy Code, PJT intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, with certain limited modifications requested herein.

38.     The Debtors request that the requirements of Local Rule 2016-2(d) and the U.S. Trustee Guidelines be tailored to appropriately reflect PJT's engagement and its compensation structure.   PJT has requested, under section 328(a) of the Bankruptcy Code,

payment of its fees on a contingency basis.  Additionally, it is not the general practice of investment

banking firms to keep detailed time records similar to those customarily kept by attorneys.  As

discussed above, however, PJT's investment banking personnel will keep summary time records

in half-hour increments describing their daily activities and the identity of persons who performed

such tasks.  Apart from the time recording practices described above, however, PJT's personnel

do not maintain their time records on a "project category" basis.  As such, the Debtors request

modification of the requirements pursuant to Local Rule 2016-2(h).

39.     Courts in this jurisdiction have approved relief similar to that requested in this

Application.  *See e.g.*, *In re WW International Inc.*, No. 25-10829 (CTG) (Bankr. D. Del May 29,

2025) (authorizing retention of PJT as investment banker to the debtors); *In re First Mode*

*Holdings, Inc.*, No. 24-1274 (KBO) (Bankr. D. Del. Feb. 3, 2025) (same); *In re Vyaire Medical,*

*Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. July 30, 2024) (same); *In re Pennsylvania Real Estate*

*Investment Trust*, No. 23-11974 (KBO) (Bankr. D. Del. January 5, 2024) (same); *In re Starry*

*Group Holdings, Inc.*, No. 23-10219 (KBO) (Bankr. D. Del. March 20, 2023) (same);*In re Akorn,*

*Inc.*, No. 20-11177 (KBO) (Bankr. D. Del. June 23, 2020) (same); *In re High Ridge Brands Co.*,

No. 19-12689 (BLS) (Bankr. D. Del. Jan. 24, 2020) (same); *In re Anna Holdings, Inc.*, No.

19-12551 (CSS) (Bankr. D. Del. Jan. 7, 2020) (same); *In re PES Holdings, LLC*, No. 19-11626

(LSS) (Bankr. D. Del. August 20, 2019) (same); *In re VER Tech. Holdco LLC*, No. 18-10834 (KG)

(Bankr. D. Del. June 4, 2018) (same).

## II.     The Indemnification and Contribution Terms of the Engagement Letter Are Appropriate.

40.     The indemnification provisions in the Engagement Letter, as modified by the

Proposed Order, were fully negotiated between the Debtors and PJT at arm's length.  The Debtors

and PJT believe that the indemnification provisions in the Engagement Letter are customary and

reasonable for financial advisory engagements both out-of-court and in chapter 11 cases, including investment banking engagements. *See United Artists Theatre Co. v. Walton* (*In re United Artists Theatre Co.*), 315 F.3d 217, 234 (3d Cir. 2003) (finding indemnification agreement between debtor and financial advisor reasonable under section 328 of the Bankruptcy Code). The Debtors seek approval of the modified indemnification provisions consistent with other orders of the Court where PJT has been retained. *See*, *e.g.*, *In re WW International Inc.*, No. 25-10829 (CTG) (Bankr. D. Del May 29, 2025); *In re First Mode Holdings, Inc.*, No. 24-1274 (KBO) (Bankr. D. Del. Feb. 3, 2025); *In re Vyaire Medical, Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. July 30, 2024); *In re Pennsylvania Real Estate Investment Trust*, No. 23-11974 (KBO) (Bankr. D. Del. January 5, 2024); *In re Starry Group Holdings, Inc.*, No. 23-10219 (KBO) (Bankr. D. Del. March 20, 2023); *In re Akorn, Inc.*, No. 20-11177 (KBO) (Bankr. D. Del. June 23, 2020); *In re High Ridge Brands Co.*, No. 19-12689 (BLS) (Bankr. D. Del. Jan. 24, 2020); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Jan. 7, 2020); *In re PES Holdings, LLC*, No. 19-11626 (LSS) (Bankr. D. Del. August 20, 2019); *In re VER Tech. Holdco LLC*, No. 18-10834 (KG) (Bankr. D. Del. June 4, 2018).

41.     Accordingly, the Debtors respectfully submit that the terms of the Engagement Letter, as modified by the Proposed Order, are reasonable and customary and should be approved in these chapter 11 cases.

### III.   The Debtors Should Be Permitted to Retain and Employ PJT Effective as of the Petition Date.

42.     The Debtors also believe that employment of PJT effective as of the Petition Date is warranted under the circumstances of these chapter 11 cases. PJT has provided, and will continue to provide, valuable services to the Debtors regarding the contemplated restructuring transactions. *See, e.g.*, *In re Arkansas Co. Inc.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he

bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power." (collecting cases)); *see also* Local Rule 2014-1(b) ("If the retention motion is granted, the retention shall be effective as of the date the motion was filed, unless the Court orders otherwise.").

43.     Courts routinely grant retroactive relief in this jurisdiction.  *See, e.g.*, *In re WW International Inc.*, No. 25-10829 (CTG) (Bankr. D. Del May 29, 2025); *In re First Mode Holdings, Inc.*, No. 24-1274 (KBO) (Bankr. D. Del. Feb. 3, 2025); *In re Vyaire Medical, Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. July 30, 2024); *In re Pennsylvania Real Estate Investment Trust*, No. 23-11974 (KBO) (Bankr. D. Del. January 5, 2024); *In re Starry Group Holdings, Inc.*, No. 23-10219 (KBO) (Bankr. D. Del. March 20, 2023); *In re Akorn, Inc.*, No. 20-11177 (KBO) (Bankr. D. Del. June 23, 2020); *In re High Ridge Brands Co.*, No. 19-12689 (BLS) (Bankr. D. Del. Jan. 24, 2020); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Jan. 7, 2020); *In re VER Tech. Holdco LLC*, No. 18-10834 (KG) (Bankr. D. Del. June 4, 2018); *In re PES Holdings, LLC*, No. 19-11626 (LSS) (Bankr. D. Del. August 20, 2019).

## IV.    Retention of PJT Is Critical to the Debtors' Restructuring Efforts.

44.     The Debtors submit that the retention of PJT is in the best interests of all parties in interest in these chapter 11 cases.  PJT is a preeminent investment banking firm that is intimately familiar with the Debtors' business and their capital structure, as well as the likely and potential auction participants and stalking horse bidders.  Denial of the relief requested herein will deprive the Debtors of the assistance of uniquely qualified investment banking professionals who have significant historic knowledge of the Debtors' business and operations.  Indeed, if the Debtors were forced to engage a new investment banker who lacks a thorough understanding of the Debtors' business and the initiatives that have been implemented over the course of PJT's extensive engagement, such change would mandate the commitment of significant resources to

educate a replacement.  As discussed above, based on services performed to date, PJT has been integral to preparing the Debtors for these chapter 11 cases and will be a critical part of the auction process designed to maximize value for stakeholders.

45.     Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules to support entry of an order authorizing the Debtors to retain and employ PJT in these chapter 11 cases on the terms described herein and in the Engagement Letter.

## NOTICE

46.     Notice of this Application will be provided to (a) the U.S. Trustee; (b) Cole Schotz P.C., as proposed counsel to the Creditors' Committee; (c) Norton Rose Fulbright US LLP and Young Conaway Stargatt & Taylor LLP, as counsel to the DIP Lender; (d) Seward & Kissel LLP, as counsel to the Prepetition Term Loan Agent; (e) Schulte Roth & Zabel LLP, as counsel to the Required Prepetition Term Loan Lenders; (f) Jones Day, as counsel to the Prepetition Noteholders; (g) the Internal Revenue Service; (h) the state attorneys general for states in which the Debtors conduct business; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, under the circumstances, no other or further notice is required.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: July 14, 2025                               ZEN JV, LLC, *et al.*

                                                   */s/ Michael Suhajda*
                                                   Michael Suhajda
                                                   Chief Financial Officer

RLF1 33268903v.1