**Exhibit B**

**Engagement Letter**

**PJT Partners** 

As of June 24, 2025

Candace M. Arthur
Partner
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020

Dear Ms. Arthur:

This letter confirms the understanding and agreement (the "**Agreement**") between PJT Partners LP ("**PJT Partners**") and Latham & Watkins LLP ("**Counsel**"), as counsel to Zen JV, LLC ("**Zen JV, LLC**" and, collectively, together with its direct and indirect subsidiaries, the "**Company**"), regarding the retention of PJT Partners on an exclusive basis by Counsel effective as of April 4, 2025 (the "**Effective Date**") as its investment banker for the purposes set forth herein. Reference is hereby made to that certain engagement letter, dated April 4, 2025, by and among PJT Partners and the Company (the "**Prior Agreement**").  The Prior Agreement is hereby amended, superseded and replaced in its entirety by this Agreement.

Under this Agreement, PJT Partners will provide investment banking services to Counsel, on behalf of the Company, in connection with a possible Restructuring (as defined below) and will assist Counsel, on behalf of the Company, in analyzing, structuring, negotiating and effecting the Restructuring pursuant to the terms and conditions of this Agreement.  As used in this Agreement, the term  "**Restructuring**" shall mean (i) any restructuring, reorganization (whether or not pursuant to chapter 11 of the United States Bankruptcy Code ("**Chapter 11**")) and/or recapitalization of the Company affecting any of its existing or potential debt obligations or other claims against the Company, including, without limitation, senior debt, junior debt, trade claims, general unsecured claims, and preferred stock (collectively, the "**Obligations**"), and/or (ii) a sale or other disposition of any material assets and/or equity of the Company (with any transaction described in the foregoing clause (ii) being referred to herein as a "**Sale Transaction**"), and/or (iii) any complete or partial repurchase, refinancing, extension or repayment by the Company of any of the Obligations.

The investment banking services to be rendered by PJT Partners may, if appropriate and at the request of Counsel, include the following:

    (a)    assist in the evaluation of the Company's businesses and prospects;

    (b)    assist in the evaluation of the Company's long-term business plan and related financial projections;

    (c)    assist in the development of financial data and presentations to the Company's Board of Directors, various creditors, potential buyers and other third parties;

    (d)    analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;

    (e)    provide strategic advice with regard to a Restructuring (including a Sale Transaction);

    (f)    participate in negotiations among the Company and its creditors, suppliers, potential buyers and other interested parties;

Zen JV, LLC
As of June 24, 2025

    (g)    assist the Company in preparing marketing materials in conjunction with a possible Sale Transaction;

    (h)    assist the Company in identifying potential buyers or parties in interest to a Sale Transaction and assist in the due diligence process;

    (i)    assist and advise the Company concerning the terms and conditions of any Sale Transaction;

    (j)    provide expert witness testimony concerning any of the subjects encompassed by the other investment banking services listed herein; and

    (k)    provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a transaction similar to a potential Restructuring, as requested and mutually agreed.

Notwithstanding anything contained in this Agreement to the contrary, PJT Partners shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity. PJT Partners makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Restructuring. PJT Partners is retained under this Agreement solely to provide advice regarding the Restructuring, and is not being retained to provide "crisis management" or any legal, tax, accounting or actuarial advice. It is understood and agreed that nothing contained herein shall constitute a commitment, express or implied, on the part of PJT Partners to underwrite, purchase or place any securities, in a financing or otherwise.

It is agreed that the Company will pay the following fees and expenses to PJT Partners for its investment banking services (all fees and expenses payable to PJT Partners pursuant to this Agreement shall be payable solely by the Company; Counsel shall have no obligation to pay PJT Partners' fees or expenses):

    (i)    a fee (the "**Restructuring Fee**") equal to (a) $3,000,000, earned and payable in cash upon consummation of a Restructuring (which, for the avoidance of doubt, could be a Sale Transaction) (provided that such $3,000,000 may only be earned and payable once regardless of how many Sale Transactions are consummated), plus (b) an additional amount equal to 5% of the Transaction Value (as defined below) in excess of the Transaction Value initially offered by a stalking horse bidder pursuant to an asset purchase (or similar) agreement in connection with any Sale Transaction, earned and payable in cash upon the consummation of such Sale Transaction. Except as otherwise provided herein, a Restructuring (including, without limitation, a Sale Transaction) shall be deemed to have been consummated upon the consummation of a Chapter 11 plan, section 363 sale and/or any other Restructuring pursuant to an order of the Bankruptcy Court or other applicable court; and

    (ii)    reimbursement of all reasonable and documented out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of PJT Partners' counsel (without the requirement that the retention of such counsel be approved by the court in any bankruptcy case) and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

    In this Agreement, "**Transaction Value**" means the gross value of all cash, securities and other properties paid or payable, directly or indirectly, in one transaction or in a series or combination of transactions, in connection with the Sale Transaction or a transaction related thereto (including, without limitation, amounts paid (A) pursuant to covenants not to compete or similar arrangements and (B) to holders of any warrants, stock purchase rights, convertible securities or similar rights and to holders of any options or stock appreciation rights, whether or not vested). Transaction Value shall also include (i) (I) in the case of the sale, exchange or purchase of the Company's equity securities the principal amount of any indebtedness for borrowed money,

>preferred stock obligations, any pension liabilities, capital leases, guarantees and any other long-term liabilities as set forth on the most recent consolidated balance sheet of the Company prior to the consummation of such sale, exchange or purchase or (II) in the case of a sale or disposition of assets by the Company the principal amount of any indebtedness for borrowed money, preferred stock obligations, any pension liabilities, capital leases, guarantees and any other long-term liabilities indirectly or directly assumed or acquired, and (ii) any indebtedness for borrowed money, preferred stock obligations, any pension liabilities, capital leases, guarantees and any other long-term liabilities that are or otherwise repaid or retired, in connection with or in anticipation of the Sale Transaction. Transaction Value shall also include the aggregate amount of any extraordinary dividend or distribution made by the Company from the date hereof until the closing of the Sale Transaction. Transaction Value shall be reduced by any cash or cash equivalents transferred to, or retained by, the acquirer in the Restructuring. Transaction Value shall include all amounts paid into escrow and all contingent payments payable in connection with the Sale Transaction, with fees on amounts paid into escrow to be payable upon the disbursements of such amounts from such escrow and fees on contingent payments to be payable when such contingent payments are made. If the Transaction Value to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such Transaction Value is paid.
>
>In this Agreement, the value of any securities (whether debt or equity) or other property paid or payable as part of the Transaction Value shall be determined as follows: (1) the value of securities that are freely tradable in an established public market will be determined on the basis of the last market closing price prior to the public announcement of the Sale Transaction; and (2) the value of securities that are not freely tradable or have no established public market or, if the Transaction Value utilized consists of property other than securities, the value of such other property shall be the fair market value thereof as mutually agreed by the parties hereto.

Notwithstanding anything to the contrary contained in this Agreement, in no event shall Counsel or any affiliate, attorney, partner, member, or employee thereof be liable in any capacity for any amounts or other obligations in connection with this engagement or this Agreement, including, without limitation, any invoices, fees, expenses, costs, or indemnities under this engagement or this Agreement.

PJT Partners will direct all communications and notices regarding financial matters, including billing, to the contacts designated by the Company on Schedule I (the "**Company Financial Matters Contacts**"). Please note that invoices will be provided by PJT Partners and will only be sent from the email address pjtaccountingus@pjtpartners.com and that any invoices in excess of $500,000 will be provided to the Company Financial Matters Contacts in an encrypted form or other secure manner and subject to an authentication process. Payments to PJT Partners shall be made pursuant to the wire instructions set forth on the invoices. Any notices and communications regarding financial matters, including billing, from the Company shall be directed to one of the PJT Partners financial matters contacts set forth on Schedule I.

All amounts herein are stated in U.S. dollars and all payments under this Agreement shall be paid in immediately available funds in U.S. dollars, free and clear of any tax, assessment or other governmental charge (with appropriate gross-up for withholding taxes). If any amount to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted in U.S. dollars at the prevailing exchange rate on the date such amount is paid.

In the event that the Company is or becomes a debtor under Chapter 11, the Company shall use its best efforts to promptly apply to the bankruptcy court having jurisdiction over the Chapter 11 case or cases (the "**Bankruptcy Court**") for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of (A) this Agreement, including the attached expense, indemnity and limitation of liability agreement attached hereto as Attachment A (the

**Zen JV, LLC**
As of June 24, 2025

"**Indemnity Agreement**") , and (B) PJT Partners' retention by the Company under the terms of this Agreement and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code.  The Company shall supply PJT Partners with a draft of such application and any proposed order authorizing PJT Partners' retention sufficiently in advance of the filing of such application and proposed order to enable PJT Partners and its counsel to review and comment thereon.

PJT Partners shall have no obligation to provide any services under this Agreement in the event that the Company becomes a debtor under Chapter 11 unless PJT Partners' retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by a final order entered by the Bankruptcy Court that is no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to PJT Partners in all respects.

The Company will use its commercially reasonable efforts to ensure that PJT Partners' post-petition compensation, expense reimbursements and payment received or payable pursuant to the provisions of the Indemnity Agreement shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code.  Following entry of an order authorizing PJT Partners' retention, the Company will assist PJT Partners in preparing, filing and serving fee statements, interim fee applications, and a final fee application.  The Company will support PJT Partners' fee applications that are consistent with this Agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Company will pay promptly the fees and expenses of PJT Partners, in each case, which are both (i) owed pursuant to this Agreement and (ii) approved by the Bankruptcy Court in accordance with the orders of the Bankruptcy Court.

PJT Partners acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, PJT Partners' fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders; provided, however, that, to the extent time records are required, PJT Partners will keep them in one-half hour increments and, provided further, that PJT Partners shall not be required to maintain receipts for expenses in amounts less than $75.  In the event that the Company becomes a debtor under Chapter 11 and PJT Partners' engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of PJT Partners hereunder as promptly as practicable in accordance with the terms hereof, subject to any applicable orders of the Bankruptcy Court.  Prior to commencing a Chapter 11 case, the Company shall pay all invoiced amounts to PJT Partners in immediately available funds by wire transfer.

With respect to PJT Partners' retention under sections 327 and 328 of the Bankruptcy Code, the Company acknowledges and agrees that PJT Partners' restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of PJT Partners' engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of PJT Partners' services hereunder could not be measured merely by reference to the number of hours to be expended by PJT Partners' professionals in the performance of such services.  The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of PJT Partners and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for PJT Partners and that the actual time and commitment required of PJT Partners and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm.  In addition, given the numerous issues which PJT Partners may be required to address in the performance of its services hereunder, PJT Partners' commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for PJT Partners' services for engagements of this nature in an out-of-court context, the Company agrees that the fee arrangements hereunder (including the Restructuring Fee) are reasonable under the standards set forth in 11 U.S.C. Section 328(a).

The advisory services and compensation arrangement set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by PJT Partners at the request of Counsel or

Zen JV, LLC
As of June 24, 2025

the Company, including the arranging of debt or equity capital, issuing fairness opinions, acting as dealer-manager in respect of an exchange or any other specific services not set forth in this Agreement.  The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between PJT Partners and the appropriate party.

PJT Partners acknowledges that it has agreed to maintain the confidentiality of material non-public information provided to it in connection with this engagement by or at the request of the Company under and pursuant to the confidentiality and non-use terms of that certain confidentiality agreement dated as of April 4, 2025 (the "**Confidentiality Agreement**").  For the avoidance of doubt, PJT Partners may provide nonpublic Information (as defined below) to prospective transaction parties as contemplated by this Agreement, subject to such parties executing appropriate confidentiality agreements with the Company.

The Company will furnish or cause to be furnished to PJT Partners such information as PJT Partners reasonably believes appropriate to its assignment (all such information so furnished being the "**Information**").  The Company further agrees that it will provide PJT Partners with reasonable access to the Company and its directors, officers, employees, accountants, counsel and other advisers. To the best of the Company's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading at the time and in the circumstances under which such statements were made.  During the term of the engagement, the Company shall make reasonable efforts to inform PJT Partners promptly upon becoming aware of any material developments relating to the Company which the Company reasonably expects may impact on the proposed Restructuring or if the Company becomes aware that any Information provided to PJT Partners is, or has become, untrue, unfair, inaccurate or misleading in any material way.  Furthermore, the Company warrants and undertakes to PJT Partners that, in respect of all Information supplied by the Company, the Company has not obtained any such Information other than by lawful means and that disclosure to PJT Partners will not breach any agreement or duty of confidentiality owed to third parties.  The Company recognizes and confirms that PJT Partners (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in connection with its assignment.

In the event that the Information belonging to the Company is stored electronically on PJT Partners' computer systems, PJT Partners shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons not acting on its behalf, provided that PJT Partners exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's information that it exercises with regard to its own most sensitive proprietary information.

PJT Partners acknowledges and agrees that the work product produced by PJT Partners pursuant to this Agreement is for the purpose of facilitating the rendering by Counsel of legal advice to the Company and constitutes attorney work product, and that any communication to Counsel, including, without limitation, any correspondence, analyses, reports and related materials that PJT Partners prepares, constitutes confidential and privileged communications and PJT Partners will not disclose the same or any of the Information to any other person except as requested by Counsel.

Except as required by applicable law, any advice to be provided by PJT Partners under this Agreement shall not be disclosed publicly or made available to third parties (other than the Company's other professional advisors or, if appropriate in the Company's judgment, in any filings in a Chapter 11 proceeding) without the prior written consent of PJT Partners.  In the event disclosure is required by subpoena or court order, the Company will provide PJT Partners with reasonable advance notice and permit PJT Partners to comments on the form and content of the disclosure.  All services, advice and information and reports provided by PJT Partners to the Company or Counsel in connection with this assignment shall be for the sole benefit of the Company and Counsel and shall not be relied upon by any other person.

The Company acknowledges and agrees that PJT Partners will provide its investment banking services exclusively to Counsel on behalf of the members of the Board of Directors (or any special committee thereof) and senior management of the Company and not to the Company's shareholders or other constituencies. The Board of Directors and senior management will make all decisions for the Company regarding whether and how the Company will pursue a Restructuring and on what terms and by what process. In so doing, the Board of Directors (or any special committee thereof) and senior management will also obtain the advice of the Company's legal, tax and other business advisors and consider such other factors which they consider appropriate before exercising their independent business judgment in respect of a Restructuring. The Company and Counsel further acknowledge and agree that PJT Partners has been retained to act solely as investment banker to Counsel on behalf of the Company and does not in such capacity act as a fiduciary or agent for the Company or any other person. PJT Partners shall act as an independent contractor and any duties of PJT Partners arising out of its engagement pursuant to this Agreement shall be owed solely to the Company. Following the public announcement of a Restructuring, PJT Partners may, at its own expense, place tombstones on its marketing materials, including its website, disclosing PJT Partners' participation with respect only to such consummated Restructuring; provided that such tombstones will include only publicly available information. The Company agrees that PJT Partners may use the Company's logo in any such tombstones. In any press release or other public announcement made by the Company regarding the Restructuring that references the services hereunder, the Company shall include a mutually acceptable reference to PJT Partners LP unless otherwise directed by PJT Partners.

In consideration of PJT Partners' agreement to provide investment banking services to Counsel in connection with this Agreement, it is agreed that the Company will indemnify PJT Partners and its agents, representatives, members and employees pursuant to the Indemnity Agreement. The Indemnity Agreement is an integral part of this Agreement and the terms thereof are incorporated by reference herein. PJT Partners acknowledges Counsel has no obligation to indemnify PJT Partners.

PJT Partners' engagement hereunder commenced on the Effective Date and will continue until the earlier of the effective date of a Chapter 11 plan, dismissal, or conversion of the Chapter 11 cases or five (5) business days after either Counsel or PJT Partners shall have notified the other party in writing of the termination of this Agreement; termination for Cause by either party will occur immediately following such written notice. Notwithstanding the foregoing, (a) the provisions relating to the payment of fees and expenses accrued through the date of termination, the status of PJT Partners as an independent contractor, the limitation as to whom PJT Partners shall owe any duties, and any other provision of this Agreement that, by its terms, survives termination, will survive any such termination, (b) any such termination shall not affect the Company's obligations under the Indemnity Agreement or PJT Partners' confidentiality obligations pursuant to the Confidentiality Agreement. Without limiting the foregoing, PJT Partners shall be entitled to the Restructuring Fees, as applicable, in the event that, at any time prior to the expiration of 12 months following the written termination of this Agreement (the "**Tail Period**") either (i) a Restructuring is consummated or (ii) a definitive agreement (excluding, for the avoidance of doubt, any non-binding term sheets, letters of intent or similar documents) (a "**Definitive Agreement**") with respect to a Restructuring is executed and any Restructuring is thereafter consummated. Notwithstanding anything to the contrary herein, no Restructuring Fees shall be payable to PJT Partners during the Tail Period after termination of this Agreement with respect to a Restructuring in the event that PJT Partners is terminated for Cause. As used herein, "**Cause**" shall mean a final judicial determination of the commitment of fraud, gross negligence, bad faith, willful misconduct or material breach of this Agreement which, if curable, is not cured within a reasonable period of time after notification by the Company, by PJT Partners in performing the services that are the subject of this Agreement.

The Company represents that neither it nor any of its affiliates under common control, nor, to the knowledge of the Company, any of their respective directors or officers, is an individual or entity ("**Person**") that is, or is owned or controlled by a Person that is: (i) a Person with whom dealings are prohibited or restricted under U.S. economic sanctions (including those administered or enforced by the U.S. Department of Treasury's Office of Foreign Assets Control and the U.S. Department of State) or under sanctions imposed by the United Nations Security Council, Canada, the European Union, or member countries of the European Union; (ii) a Person that is the subject to anti-

**Zen JV, LLC**
As of June 24, 2025

money laundering prohibitions, restrictions, or sanctions specifically imposed on such Person by the United States, Canada, the European Union, member countries of the European Union, or any other relevant jurisdiction; or (iii) to the knowledge of the Company, not in compliance in all material respects with all applicable anti-money laundering laws and Sanctions laws.

The Company should be aware that PJT Partners and/or its affiliates may be providing or may in the future provide financial or other services to other parties with conflicting interests. Consistent with PJT Partners' policy to hold in confidence the affairs of its clients, PJT Partners will not use confidential information obtained from the Company except in connection with PJT Partners' services to, and PJT Partners' relationship with, the Company, nor will PJT Partners use on the Company's behalf or have any obligation to disclose or otherwise have any liability with respect to any confidential information obtained from any other client. Notwithstanding anything to the contrary provided elsewhere herein, the Company expressly acknowledges and agrees that so long as PJT Partners complies with the restrictions on use and disclosure contained in Confidentiality Agreement, none of the provisions of this Agreement shall in any way restrict PJT Partners from being engaged or mandated by any third party, or otherwise participating or assisting with any transaction involving any other party, other than a transaction that is the subject of this Agreement prior to the termination of this Agreement.

Zen JV, LLC hereby represents and warrants that (a) it is duly authorized to execute and deliver this Agreement for and on behalf of each of its direct and indirect subsidiaries and (b) the execution and delivery of this Agreement and the performance of the obligations of Zen JV, LLC and each of its direct and indirect subsidiaries under this Agreement has been duly authorized and this Agreement constitutes a valid and legal agreement binding on each such party and enforceable in accordance with its terms.

This Agreement (including the Indemnity Agreement) and the Confidentiality Agreement embody the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof, including the Prior Agreement. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect or impair such provision or the remaining provisions of this Agreement in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement and any dispute or claim that may arise out of this Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Each of the Company and Counsel hereby agrees that any action or proceeding brought by the Company and/or Counsel against PJT Partners based hereon or arising out of PJT Partners' engagement hereunder, shall be brought and maintained by the Company and/or Counsel exclusively in the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York; provided, if the Company commences a Chapter 11 case, all legal proceedings pertaining to this engagement arising after such case is commenced may be brought in the Bankruptcy Court handling such case. Each of the Company and Counsel irrevocably submits to the jurisdiction of the courts of the State of New York located in the City and County of New York and the United States District Court for the Southern District of New York and appellate courts from any thereof for the purpose of any action or proceeding based hereon or arising out of PJT Partners' engagement hereunder and irrevocably agrees to be bound by any judgment rendered thereby in connection with such action or proceedings. Each of the Company and Counsel hereby irrevocably waives, to the fullest extent permitted by law, any objection it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agrees not to plead or claim the same.

**Notices**. Any notices required or permitted to be given hereunder by either party hereto to the other will be given in writing (i) by personal delivery, email or facsimile transmission, (ii) by nationally-recognized overnight delivery company or (iii) by prepaid first class, registered or certified mail, postage prepaid, in each case addressed to the other party hereto as set forth on <u>Schedule I</u> (or to such other address as the other party hereto may request in writing by notice given pursuant to this section). Notices will be deemed received on the earliest of: (a) if

**Zen JV, LLC**
As of June 24, 2025

personally delivered, emailed or sent via facsimile, the same day; (b) if sent by overnight delivery company, on the second working day after the day it was sent; or (c) if sent by mail, when actually received.

This Agreement may be executed, including by electronic signature, in one or more counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument. A facsimile of a signed copy of this Agreement or other copy made by reliable mechanical means or an electronic signature may be relied upon as an original.

[SIGNATURE PAGE FOLLOWS]