**Exhibit C**

**Robbins Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------ x
In re:                                      :    Chapter 11
                                            :
ZEN JV, LLC, et al.,¹                       :    Case No. 25-11195 (JKS)
                                            :
            Debtors.                        :    (Jointly Administered)
                                            :
------------------------------------------------------------ x
```

**DECLARATION OF AVI ROBBINS IN**
**SUPPORT OF THE APPLICATION OF DEBTORS FOR**
**ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND**
**EMPLOYMENT OF PJT PARTNERS LP AS INVESTMENT BANKER TO**
**THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE**
**PETITION DATE, (II) WAIVING CERTAIN INFORMATION REQUIREMENTS**
**PURSUANT TO LOCAL RULE 2016-2, AND (III) GRANTING RELATED RELIEF**

I, Avram Robbins, being duly sworn, state the following under penalty of perjury:

1.      I am a Partner at PJT Partners LP ("**PJT**").  I am duly authorized to make this declaration (the "**Declaration**") on behalf of PJT and submit this Declaration in accordance with sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") and rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") in connection with the application (the "**Application**") of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), seek an order approving the retention of PJT as their investment banker, pursuant to sections 327 and 328(a) of the Bankruptcy Code, effective as of the Petition Date.[2]

---

[1]     The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are: Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions, LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508). The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Application or the Engagement Letter, as applicable.

2.      Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge of PJT's engagement with the Debtors, my discussions with other members of the PJT team and the Debtors' other advisors, my review of relevant documents, and/or my opinion based upon my experience.  If called to testify, I could and would testify to each of the statements set forth herein based on such personal knowledge, discussions, review of documents, and/or opinion.   To the extent that any information disclosed herein requires subsequent amendment or modification upon PJT's completion of further analysis or as additional creditor information becomes available to it, one or more supplemental declarations will be submitted to the court reflecting the same.

## PJT'S QUALIFICATIONS

3.      I believe that PJT and the professionals it employs are uniquely qualified to advise the Debtors in the matters for which PJT is proposed to be employed.

4.      PJT is one of the leading advisors to companies and creditors in restructurings and bankruptcies.   PJT was spun off from The Blackstone Group L.P. ("**Blackstone**") effective October 1, 2015.   Upon the consummation of the spinoff, Blackstone's restructuring and reorganization advisory group became a part of PJT, and Blackstone's restructuring professionals became employees of PJT.  The former Blackstone restructuring professionals, in their capacity as PJT employees, have been providing their clients with the same high-quality restructuring services that Blackstone had itself provided since the formation of its restructuring advisory practice approximately 34 years ago.   PJT professionals have extensive experience working with financially troubled companies in complex financial restructurings.  Since 1991, PJT professionals have advised on several hundred distressed situations, both in and out of court.

2

5.      The partners and members of PJT have assisted and advised in numerous chapter 11 cases.  In particular, the partners and members of PJT's RSSG have provided services to debtors, creditors' committees, and other constituencies in numerous chapter 11 cases, including, among others:  AbitibiBowater Inc.; Aegean Marine Petroleum Network Inc.; Adelphia Communications Corporation; Apex Silver Mines Ltd.; Arch Coal, Inc.; Ascent Resources Marcellus Holdings, LLC; Caesars Entertainment Operating Corporation; Cengage Learning, Inc CHC Group Ltd.; Cineworld Group plc; Cumulus Media Inc.; Delta Air Lines, Inc.; Edison Mission Energy; Energy Future Holdings Corporation; Energy & Exploration Partners, Inc.; Endo International plc; Enron Corporation; EP Energy Corporation; Envision Healthcare; General Motors Corporation; Genesis Care Pty Limited; Global Crossing Ltd.; Houghton Mifflin Harcourt Publishing Company; Wesco Aircraft Holdings, Inc. (Incora); iHeartMedia, Inc.; Intelsat S.A.; J. Crew Group, Inc.; LightSquared Inc.; Los Angeles Dodgers LLC; Merisant Worldwide, Inc.; Mirant Corp.; Natura &Co. (Avon Products); Pennsylvania Real Estate Investment Trust; Purdue Pharma; Ruby Pipeline, L.L.C.; Samson Resources Corporation; SemGroup; TerreStar Networks Inc.; Trident Holding Company, LLC; Tribune Company; VER Technologies Holdco LLC; Verso Corporation; Walter Energy, Inc.; Westinghouse Electric Company LLC; W.R. Grace & Co.; WeWork Inc.; and Windstream Holdings, Inc.  In addition, the restructuring group has provided general restructuring advice to major companies such as Brightspeed, Clearwire Corporation, Del Monte Foods, Ford Motor Company, The Goodyear Tire & Rubber Company, and Xerox Corporation.

6.      On or around April 4, 2025, the Debtors initially retained PJT as their investment banker in connection with a potential the sale of the Debtors' Monster Government Solutions business and/or the Debtors' Monster Media Properties business.[3]  Such engagement has been

---

[3]      PJT also was previously retained by CareerBuilder, LLC to provide financial advisory services in connection with the company's combination with Monster Worldwide, Inc. in September 2024.

amended pursuant to the Engagement Letter to include a sale of all or any portion of the assets of the Debtors including the sale of any business segments, in whole or in part, of the Debtors. To date, PJT has engaged in extensive due diligence of the Debtors' businesses, including their operations, assets, capital structure, and contractual arrangements. PJT has also engaged in extensive discussions and negotiations with the most interested and likely buyers of each of the Debtors' assets, has developed a good understanding of their respective interest levels and has negotiated stalking horse bids for the Debtors' assets. Throughout this period of advising the Debtors, PJT has become familiar with the Debtors' capital structure, and business operations, stalking horse bidders and other potential auction participants.

7.      During PJT's representation of the Debtors, it has, among other things, provided advice on potential sale transactions and has participated in negotiations among the Debtors and potential bidders for the Debtors' assets. PJT also assisted the Debtors and its counsel in connection with (a) reviewing the terms, conditions, and potential impact of various stalking horse bids, (b) the negotiation of the terms of the Debtors' DIP financing and (c) negotiations with the Debtors' pre-petition lenders. In addition, PJT has met with the Debtors' board of directors on numerous occasions throughout its engagement to discuss and advise on the above matters.

8.      As a result of the work performed by PJT on behalf of the Debtors both pre- and postpetition, PJT has acquired significant knowledge of the Debtors' financial affairs, capital structure, business operations, assets, and key stakeholders, as well as the drivers of the Debtors' financial performance, business model and operations. Likewise, in providing services to the Debtors, PJT's professionals have worked closely with the Debtors' personnel, board, and other advisors. If the Application is approved, several of PJT's professionals, all with substantial expertise in the areas discussed above, will continue to provide services to the Debtors and will

work closely with the Debtors' personnel and other professionals throughout the sale process. Accordingly, as a result of PJT's representation of the Debtors prior to and after the commencement of these chapter 11 cases and PJT's extensive experience representing chapter 11 debtors, PJT is well-qualified to provide these services and represent the Debtors during these chapter 11 cases.

### SERVICES PROVIDED BY PJT

9.      Subject to further order of the Court, and consistent with the terms of the Engagement Letter,[4] PJT's anticipated services in these chapter 11 cases, to the extent necessary, appropriate, feasible and as may be requested by the Debtors, including the following:

e.      assist in the evaluation of the Company's businesses and prospects;

f.      assist in the evaluation of the Company's long-term business plan and related financial projections;

g.      assist in the development of financial data and presentations to the Company's Board of Directors, various creditors, potential buyers and other third parties;

h.      analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;[5]

i.      provide strategic advice with regard to a Restructuring (including a Sale Transaction);

j.      participate in negotiations among the Company and its creditors, suppliers, potential buyers and other interested parties;

---

[4]    The summary of the Engagement Letter contained herein is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the summary contained herein and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall govern.

[5]    As used in the Engagement Letter, the term "**Restructuring**" means (i) any restructuring, reorganization (whether or not pursuant to chapter 11 of the United States Bankruptcy Code ("**Chapter 11**")) and/or recapitalization of the Debtors affecting any of its existing or potential debt obligations or other claims against the Debtors, including, without limitation, senior debt, junior debt, trade claims, general unsecured claims, and preferred stock (collectively, the "**Obligations**"), and/or (ii) a sale or other disposition of any material assets and/or equity of the Debtors (with any transaction described in the foregoing clause (ii) being referred to herein as a "**Sale Transaction**"),  and/or (iii) any complete or partial repurchase, refinancing, extension or repayment by the Debtors of any of the Obligations.

k.    assist the Company in preparing marketing materials in conjunction with a possible Sale Transaction;

l.    assist the Company in identifying potential buyers or parties in interest to a Sale Transaction and assist in the due diligence process;

m.    assist and advise the Company concerning the terms and conditions of any Sale Transaction;

n.    provide expert witness testimony concerning any of the subjects encompassed by the other investment banking services listed herein; and

o.    provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a transaction similar to a potential Restructuring, as requested and mutually agreed.

## **PROFESSIONAL COMPENSATION**

10.    PJT's decision to advise and assist the Debtors in connection with the chapter 11 cases is subject to its ability to be retained in accordance with the terms of the Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code.

11.    In consideration of the services to be provided by PJT, and as more fully described in the Engagement Letter, subject to the Court's approval, the Debtors and PJT have agreed that PJT shall, in respect of its services, be compensated under the Fee Structure.

12.    PJT intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, including any order approving the Application and consistent with the proposed compensation set forth in the Engagement Letter.

13.    PJT will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases.  However, because:  (a) it is not the general practice of investment banking firms such as PJT to keep detailed

6

time records similar to those customarily kept by attorneys; (b) PJT does not ordinarily keep time records on a "project category" basis; and (c) PJT's compensation is based solely on a contingency fee basis, the Debtors are requesting that PJT's investment banking professionals be required to maintain records (in summary format) of the services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in half-hour increments), and the identity of the professionals who provided those services. PJT will present such records to the Court in its fee application(s). Moreover, the Debtors are requesting that PJT's professionals not be required to keep time records on a "project category" basis, that its non-investment banking professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that it not be required to provide or conform to any schedule of hourly rates. To the extent that PJT would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, or other applicable procedures and orders of the Court, the Debtors respectfully request that the Court waive such requirements.

14.     I believe the Fee Structure is consistent with, and typical of, compensation arrangements entered into by PJT and other comparable firms in connection with the rendering of similar services under similar circumstances, both in and out of bankruptcy proceedings. I also believe that the Fee Structure is very reasonable given that it is comprised entirely of contingency based fees, which are tied to the occurrence of certain transactions contemplated by the Debtors and PJT in the Engagement Letter. After discussions and arm's-length negotiations with the Debtors, I believe that the Fee Structure is in fact reasonable, market-based, and designed to compensate PJT fairly for its work.

15.     I understand that PJT's strategic and financial expertise, as well as its capital markets knowledge, financing skills, mergers and acquisitions experience, and restructuring capabilities, some or all of which has and will be required by the Debtors during the term of PJT's engagement, were important factors to the Debtors in determining the Fee Structure.  I believe that the ultimate benefits of PJT's services hereunder cannot be measured by reference to the number of hours to be expended by PJT's professionals in the performance of such services.  The Debtors and PJT agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort would be required of PJT and in light of the fact that (a) such commitment could have and may still foreclose other opportunities for PJT and (b) the actual time and commitment required of PJT and its professionals to perform the restructuring services may vary substantially from week to week and month to month creating "peak load issues" for PJT.

16.     During the ninety (90)-day period before the Petition Date, the Debtors did not make any payments to PJT.  As of the Petition Date, the Debtors were current on their obligations to PJT under the Engagement Letter.

## **INDEMNIFICATION**

17.     As part of the overall compensation payable to PJT under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification, contribution, and reimbursement obligations, set forth in the Indemnity Agreement.  The Indemnity Agreement provides that the Debtors will indemnify and hold harmless the PJT Parties from and against Losses incurred by a PJT Party in connection with PJT's engagement, except for any Losses to the extent such Losses resulted primarily from the gross negligence, bad faith, fraud or willful misconduct of such PJT Party.  The Debtors will reimburse such PJT Party for its reasonable legal and other expenses (including the cost of any investigation and preparation) as such expenses are incurred by such PJT Party in connection therewith.

8

18.     I believe that the provisions set forth in the Indemnity Agreement are customary and reasonable terms of consideration for investment bankers such as PJT in connection with chapter 11 cases.  PJT negotiated the Engagement Letter, including the provisions of the Indemnity Agreement, with the Debtors at arm's length.

## NO DUPLICATION OF SERVICES

19.     The services of PJT are intended to complement and not duplicate the services rendered by any other professional retained in these chapter 11 cases.  PJT understands that the Debtors have retained and may retain additional professionals during the term of the engagement and agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## PJT'S DISINTERESTEDNESS

20.     In anticipation of this representation, Debtors' counsel provided PJT with a list of potential parties in interest (the "**PII**") in these chapter 11 cases (the "**PII List**").  A copy of the PII List is attached hereto as **Schedule 1**.

21.     My understanding from discussion with PJT's legal and compliance personnel is that, as part of PJT's conflicts management program (the "**Conflicts Management Program**"), PJT maintains information pertaining to (a) every active matter on which PJT is currently engaged, (b) the entities represented by PJT in such engagements, (c) the material parties involved in each current matter (inclusive of adverse and related parties, as identified to PJT by the prospective client and/or its counsel in the case of a restructuring advisory assignment), and (d) the professional at PJT that is knowledgeable about the matter.  I understand that, as part of any conflict review undertaken, this information, including information on closed assignments, is also incorporated into the review.  It is the policy of PJT that no new matter may be accepted or opened within the firm without completing and submitting to those charged with administering the

9

Conflicts Management Program the information necessary to check such matter for conflicts.  The scope of the review is a function of the completeness and accuracy of the information submitted by the PJT professional opening a new matter.

22.     My understanding is that (a) as part of the Conflicts Management Program, PJT reviews the business activity of all entities under the control of PJT Partners, Inc., the publicly traded company that is the ultimate parent company of PJT and all of its affiliates, (b) the Conflicts Management Program utilizes a database that stores the details of all such business activity, including the names of all PJT clients (past and present) and the search methodology utilized by the database is key word based, (c) results are reviewed for relevance by PJT personnel trained to evaluate situations for potential conflicts and, in this case as in all cases where PJT represents a debtor, any and all potential connections to the PII are identified by such personnel, and (d) all proposed and actual business activity to be undertaken is subject to the foregoing review process to evaluate potential conflicts.

23.     PJT's legal and compliance department has undertaken a review of the PII to determine possible connections relating to the Debtors (the "**Conflict Check**") and such results for the Conflicts Check are disclosed on **Schedule 2** attached hereto. Subject to the foregoing limitations and the disclosures set forth in **Schedule 2**, no material connections have been found.

24.     Certain of the PIIs or their affiliates may hold a passive equity interest (*i.e.*, less than 20%) in certain of the entities to whom PJT and/or its affiliates have provided in the past or continue to provide advisory services.  My understanding is that PJT does not routinely track or maintain such information but is not aware of any such engagement that is related to the Debtors or these chapter 11 cases or, by virtue of which, the interests of the Debtors or their estates are adversely affected.

25.     Partners and/or employees of PJT or its affiliates may, from time to time, directly or indirectly hold equity and/or debt in certain of the PII.  However, to the best of my knowledge based on information provided by PJT's legal and compliance department, none of PJT, its affiliates, or any partner or employee of PJT or its affiliates currently holds (other than potentially through mutual funds, ETFs or professionally managed discretionary accounts) any interest in any debt or equity securities of the Debtors.

26.     Moreover, my understanding is that the Conflicts Management Program searched all PJT affiliates, and, to the best of my knowledge, information, and belief, all connections between PJT's affiliates and the PIIs are disclosed herein.

27.     Based on the results of the Conflict Check, to the best of my knowledge, neither I, PJT, nor any partner or employee thereof, insofar as PJT's legal and compliance department has been able to ascertain, is an insider of the Debtors, nor has any connection with the Debtors, their creditors, or other parties in interest, except as otherwise described herein.

28.     PJT does not believe that its involvement with any of the parties included in the PII List will adversely affect the Debtors in any way.  PJT does not believe that any potential relationship it may have with any of the PII would interfere with or impair PJT's representation of the Debtors.

29.     PJT and certain of its partners and employees may have in the past represented, may currently represent, and may in the future represent, entities that may be on the PII List or may otherwise be parties in interest in these chapter 11 cases in connection with matters unrelated (except as otherwise disclosed herein) to the Debtors and these chapter 11 cases.

30.     As part of its diverse practice, PJT appears in numerous cases, proceedings, and transactions involving many different professionals, including attorneys, accountants, investment

bankers, and financial consultants, some of which may represent claimants and parties in interest in these chapter 11 cases. In addition, PJT has in the past, is currently and will likely in the future be working with or against other professionals involved in these chapter 11 cases in matters unrelated to these chapter 11 cases, including certain professionals that are PII. Further, PJT and its affiliates engage attorneys and other service providers from time to time to provide legal advice and/or other services to PJT and/or its affiliates, and certain of such service providers may be PII.

31.      Based on my current knowledge of the professionals, vendors, and other parties involved in these chapter 11 cases, and to the best of my knowledge based on information provided by PJT's legal and compliance department, none of these business relations constitute interests materially adverse to the Debtors or their estate, and none are in connection with these chapter 11 cases.

32.      To the best of my knowledge based on information provided by PJT's legal and compliance department, except as disclosed herein: (a) PJT has no material connection with the Debtors or their estates, the Debtors' creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any other party with an actual or potential interest in the chapter 11 cases or their respective attorneys or accountants; (b) PJT (and PJT's professionals) are not direct creditors, equity security holders, or insiders of the Debtors; (c) neither PJT nor any of its professionals is or was, within two (2) years of the date of the Debtors' filing of these chapter 11 cases, a director, officer, or employee of the Debtors; and (d) neither PJT nor its professionals holds or represents an interest materially adverse to the Debtors, their estates, or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason. Accordingly, I believe that PJT is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, as modified by

section 1107(b) of the Bankruptcy Code, and PJT's employment is permissible under sections 327(a) and 328(a) of the Bankruptcy Code.

33.     PJT has performed reasonable due diligence for possible conflicts with the PII in these chapter 11 cases.  The following is a list of the categories that PJT has searched with respect to the PII:

- Agents

- Banks

- Bankruptcy Professionals

- Delaware Court Personnel

- Delaware United States Trustee's Office

- Debtors

- Directors and Officers

- Equity

- Litigation Parties

- Letter of Credit Beneficiary/Guarantor

- Non-Debtors

- Other Parties

- Real Estate Lease Counterparties

- Seller Note Counterparty

- Term Loan Lenders

- Top Unsecured Creditors

34.     The PII List provided to PJT by the Debtors may change during the pendency of these chapter 11 cases.  Should PJT learn that a relationship with any of the PII should be disclosed in the future, a supplemental declaration with such disclosure will be promptly filed.

13

35.     Given the large number of parties in interest in these chapter 11 cases, despite the efforts to identify and disclose PJT's relationships with the PII, I am unable to state with absolute certainty that every client relationship or other connection has been disclosed in this Declaration. PJT, therefore, will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new material facts or relationships are discovered or arise, PJT will promptly file a supplemental declaration with the Court.

*[Remainder of page left intentionally blank]*

14

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 14, 2025                                  Respectfully submitted,

                                                      */s/ Avram Robbins*
                                                      Avram Robbins

15

## **Schedule 1**

List of Potential Parties in Interest

**Agents**

Wilmington Trust, National Association

**Banks**

Bank of America

**Benefits**

| | |
|---|---|
| ADP Inc | Eyemed |
| Calm.Com Inc | Guardian |
| Cigna Group | Lincoln National Life Ins Co |
| Concur Technologies, Inc. | Metlife |
| Delta Dental of California | Schwab Retirement Plan Services |
| Delta Dental of Il | Telus Health (Us) Ltd |
| Empower Trust Company, LLC | United Healthcare Services Inc |

**Bankruptcy Professionals**

| | |
|---|---|
| AlixPartners | PJT Partners LP |
| Latham & Watkins LLP | Richards, Layton & Finger, P.A. |
| Omni Agent Solutions, Inc. | |

**Delaware Court Personnel**

| | |
|---|---|
| Al Lugano | Judge Mary F. Walrath |
| Amanda Hrycak | Judge Thomas M. Horan |
| Annamarie Martino | Laura Haney |
| Cacia Batts | Laurie Capp |
| Chief Judge Karen B. Owens | Lora Johnson |
| Claire Brady | Marquietta Lopez |
| Danielle Gadson | Nickita Barksdale |
| Demitra Yeager | Nikki Washington |
| Jill Walker | Paula Subda |
| Judge Brendan L. Shannon | Rachel Bello |
| Judge Craig T. Goldblatt | Stephen Grant |
| Judge J. Kate Stickles | Todd Kirk |
| Judge John T. Dorsey | Una O'boyle |
| Judge Laurie Selber Silverstein | Xavier Hurt |

**Delaware UST's office**

| | |
|---|---|
| Benjamin Hackman | Dion Wynn |
| Christine Green | Edith A. Serrano |

Elizabeth Thomas
Hannah M. McCollum
Hawa Konde
Holly Dice
James R. O'Malley
Jane Leamy
Jonathan Lipshie
Jonathan Nyaku
Joseph Cudia
Joseph McMahon

Lauren Attix
Linda Casey
Linda Richenderfer
Malcolm M. Bates
Michael Girello
Nyanquoi Jones
Richard Schepacarter
Shakima L. Dortch
Timothy J. Fox, Jr.

## Debtors

Camaro Acquisition LLC
CareerBuilder France Holding, LLC
CareerBuilder Government Solutions, LLC
CareerBuilder, LLC
Fastweb, LLC

Luceo Solutions, LLC
Military Advantage LLC
Monster Government Solutions LLC
Monster Worldwide LLC
Zen, JV, LLC

## Direct and Indirect Equity Holders

2584172 Ontario Inc.
AP Special Sits Camaro Holdings, LLC
Apollo Global Management, Inc.
Apollo Special Situations Fund, L.P.

Camaro Holdings, LLC
Ontario Teacher's Pension Plan
Randstad N.V.

## Directors and Officers

Ahern Dull
Anna Phillips
Daniel Silvers
Fiona van Lede
Gregory Binder
Jarnail Badwal
Jeff Furman
Kenneth Shea

Mark Pacioni
Maxwell David
Michael Suhajda
Rebecca Henderson
Sam Gallagher
Sheri Davis
Stef Leijdekkers

## Insurers

ACE American Insurance Company
Allianz Global Risks US Insurance Co.
Allied World National Assurance Company
American International Companies (AIG)
Aon UK Limited
Arch Insurance Company
AXIS Insurance Company

Berkley Insurance Company
Berkley Professional Liability
Chubb National Ins Co
Federal Insurance Company
Hartford Insurance Group
Hiscox Insurance Company Inc.
Illinois National Insurance Co

Lexington Insurance Company
Liberty International Underwriters
Liberty Surplus Insurance Corporation
Lloyd's Syndicate No. 3000
National Union Fire Ins Co of Pittsburgh

Risk Specialists Companies Ins Agcy,Inc.
Twin City Fire Insurance Company
XL Professional
XL Specialty Insurance Co
Zurich American Ins Co

**Litigation**

Jobget, Inc.
S Risius Ross, Llc

The New York City Commission on Human Rights

**LOC Beneficiary**

Dell Financial Services LLC

**LOC Guarantor**

Bank of America

**Non-Debtors**

CareerBuilder Brasil Atividades de Internete e Participacoes LTDA.
CareerBuilder Canada Co
CareerBuilder com India Private Limited
CareerBuilder Information Technology (Shanghai) Co., Ltd
CareerBuilder International Holdings B.V.
CareerBuilder ProfilSoft Dutch Holdings B.V.
CareerBuilder Romania S.R.L.
CareerBuilder UK Holdings Limited
CB Solutions Pty Ltd
Monster Belgium nv
Monster Luxembourg SA
Monster Technologies Malaysia Sdn. Bhd

Monster Worldwide Austria GmbH
Monster Worldwide Canada Operations Inc.
Monster Worldwide CZ s.r.o.
Monster Worldwide Germany GmbH
Monster Worldwide International Holding bv
Monster Worldwide Ireland Ltd
Monster Worldwide Italia Srl
Monster Worldwide Limited
Monster Worldwide Netherlands bv
Monster Worldwide S.L.
Monster Worldwide SAS
Monster Worldwide Sweden AB
Monster Worldwide Switzerland AG
Monster.com Asia Pacific Ltd.

**Other Parties**

Blue Torch Capital
HIG Capital LLC
JMB Capital Partners Lending, LLC
Norton Rose Fulbright US LLP

Paul Hastings
Valnet
Valsoft
Young Conaway Stargatt & Taylor, LLP

**RE Lease**

622 Building Company LLC (Cohen Bros)
Equinix, INC
Iron Mountain Data Centers LLC

Onni 200 LaSalle Limited Partnership
TMG 8280 Greensboro LLC
VEF V Atlanta office Two, LLC

**Seller Note**

Randstad MWW Inc.

**Tax Authorities**

Alabama Department of Revenue
Alaska Department of Revenue
Arizona Department of Revenue
California Franchise Tax Board
City of Philadelphia Department of Finance
Colorado Department of Revenue
Connecticut Department of Revenue
Delaware Division of Revenue
Department of the Treasury Internal
Revenue Service Center
District of Columbia Department of
Revenue
Florida Department of Revenue
Georgia Department of Revenue
Hawaii Department of Revenue
Idaho Department of Revenue
Illinois Department of Revenue
Indiana Department of Revenue
Iowa Department of Revenue
Kansas Department of Revenue
Kentucky Department of Revenue
Louisiana Department of Revenue

Maryland Department of Revenue
Massachusetts Department of Revenue
Minnesota Department of Revenue
Mississippi Department of Revenue
Missouri Department of Revenue
Nebraska Department of Revenue
New Hampshire Department of Revenue
New Jersey Department of Revenue
New York City Department of Finance
New York Department of Revenue
North Carolina Department of Revenue
Oklahoma Department of Revenue
Oregon Department of Revenue
Pennsylvania Department of Revenue
Philadelphia Department of
Revenue
South Carolina Department of Revenue
Tennessee Department of Revenue
Texas Department of Revenue
Utah Department of Revenue
Virginia Department of Revenue
Wisconsin Department of Revenue

**Term Loan Lenders**

Arbour Lane
ArrowMark
Canaras
Cerberus
Constitution Capital
Crescent Capital
Ellington
Fortinbras Enterprise
FourSixThree
InvestCorp
Morgan Stanley

Nassau
OFS
Par Four / Benefit Street
Saratoga Partners
Zais Group

**Top Unsecured Creditors**

Acoustic LP
Adworks Ltd
Ahead Inc
Aimwel B.V.
Akin Gump Strauss Hauer & Feld
Amplitude Inc
Appcast Inc
Appian Corporation
Brazen Technologies Inc
Camelot Communications Ltd
Daymark Solutions Inc
Equinix Inc
Everlong Media LLC
Getty Images Inc
Google LLC
Ikokas Technologies Private Ltd
Iron Mountain Inc
Jobcase Inc
Jobget Inc
Jobverse Inc.

Joveo Inc
Microsoft Online Inc
Morgan Lewis & Bockius LLP
Nexxt Inc
Okta Inc
Oracle America Inc
Pwc Us Tax LLP
Quality Technology Services
Rackspace Us Inc
Recruitics Inc
Salesforce.Com Inc
Secureit Consulting Group Inc
Skadden, Arps, Slate, Meagher & Flom
Talroo Inc
Tanzilli Sociedade De Advogado
Textkernel BV
Vedder Price PC
Velaro Inc
Verinext Corp
Winston & Strawn LLP

**UCC Lien Search**

Dell Financial Services L,L,C.
Greatamerica Financial Services
Corporation
Randstad MWW Solutions Inc., As
Collateral Agent

Verinext Capital, LLC
Wells Fargo Financial Leasing, Inc.
Wilmington Trust, National Association, As
Collateral Agent

**Schedule 2**

**(Schedule of Potential Parties in Interest
As to Which PJT Has a Connection)**

PJT (and/or its financial advisory affiliates) has been engaged within the last three years, is currently engaged by, or has another connection to, the following PIIs (or one or more of their affiliates, as the case may be) in matters unrelated to these Chapter 11 Cases (including where one of the PII was only a member of an official or an ad hoc creditor committee or an equity committee):

a.　　An individual with whom PJT has an ongoing consultancy arrangement is a senior advisor to AlixPartners, one of the PII.  Such consultant is not part of the PJT team representing the Debtors in these Chapter 11 Cases.

b.　　PJT was previously engaged to provide financial advisory services to an ad hoc group of noteholders and the indenture trustee in connection with the chapter 11 case of SVB Financial Group.  The members of such group included Apollo Global Management, Inc. ("Apollo") and an affiliate of Bank of America, each of which is a PII.

c.　　PJT was previously engaged to provide financial advisory services to a group of lenders to a certain company in a confidential matter. The members of such group included an affiliate of Apollo and an affiliate of Benefit Street, each of which is a PII.

d.　　PJT was previously engaged to provide financial advisory services to a group of lenders to a certain company in a confidential matter. The members of such group included Apollo and an affiliate of Benefit Street, each of which is a PII.

e.　　PJT has been engaged to provide financial advisory services to a group of lenders to a certain company in a confidential matter. The members of such group include Apollo and an affiliate of Benefit Street, each of which is a PII.

f.　　PJT was previously engaged to provide financial advisory services a group of lenders to a certain company in a confidential matter. The members of such group included Apollo and Morgan Stanley, each of which is a PII.

g.　　PJT was previously engaged to provide financial advisory services a group of lenders to a certain company in a confidential matter. The members of such group included Apollo, Benefit Street, and an affiliate of Crescent Capital, each of which is a PII.

h.　　In addition, with respect to Apollo, which is a PII:

(i)　　PJT has in the past and continues to provide financial advisory services to groups of lenders to certain companies in several

confidential matters. The members of such groups include Apollo or an affiliate of Apollo.

PJT was previously engaged to provide financial advisory services to certain affiliates of Apollo in several confidential matters. In addition, PJT has in the past and continues to provide financial advisory services to certain companies in unrelated confidential matters where Apollo or an affiliate thereof is the owner (in whole or in part) of the equity of each such company.

(ii)     An affiliate of PJT was previously engaged to provide financial advisory services to an affiliate of Apollo in a confidential matter.

(iii)    PJT was previously engaged to provide financial advisory services to an affiliate of Apollo in connection with the chapter 11 case of Scandinavian Airlines.

(iv)    An individual with whom PJT has an ongoing consultancy arrangement is a consultant to Apollo. Such consultant is not part of the PJT team representing the Debtors in these Chapter 11 Cases.

(v)     PJT was previously engaged to provide financial advisory services to Phoenix Services International LLC in connection with its chapter 11 case. An affiliate of Apollo was the equity holder of such company.

(vi)    An affiliate of PJT has been engaged to provide financial advisory services to two separate groups of lenders to certain companies in two separate confidential matters.  The members of each such group include an affiliate of Apollo.

(vii)   PJT was previously engaged to provide financial advisory services to a group of lenders to a certain company in a confidential matter. The members of such group included an affiliate of Apollo, one of the PII.

(viii)  An employee of PJT who was a member of the PJT deal team providing services to the Debtors but left PJT on July 5, 2025, following the completion of PJT's two-year analyst program, has accepted a position at Apollo beginning thereafter.

2

i.      PJT was previously engaged to provide financial advisory services to a group of lenders to a certain company in a confidential matter. The members of such group included ArrowMark, Benefit Street, Canaras Capital Management LLC, Crescent Capital, InvestCorp Holdings B.S.C, and Morgan Stanley, each of which is a PII.

j.      PJT maintains a banking relationship with Bank of America, one of the PII.

k.      PJT has been engaged to provide advisory services to an affiliate of Bank of America, one of the PII, in a confidential matter.

l.      PJT was previously engaged to provide financial advisory services to a group of lenders to a certain company in a confidential matter. The members of such group included Bank of America and an affiliate of Crescent Capital, each of which is a PII.

m.      PJT was previously engaged to provide financial advisory services to two separate groups of lenders of certain companies in two separate confidential matters. The members of each such group included Benefit Street, one of the PII.

n.      PJT has been engaged to provide financial advisory services to a group of lenders to a certain company in a confidential matter.  The members of such group include an affiliate of Benefit Street, one of the PII.

o.      PJT was previously engaged to provide financial advisory services to an affiliate of Benefit Street, one of the PII, in a confidential matter.

p.      PJT was previously engaged to provide financial advisory services to an ad hoc group of lenders to a certain company in a confidential matter. The members of such ad hoc group included an affiliate of Benefit Street and Morgan Stanley, each of which is a PII.

q.      PJT was previously engaged to provide financial advisory services to a group of lenders to a certain company in a confidential matter. The members of such group included Benefit Street and an affiliate of InvestCorp Holdings B.S.C, each of which is a PII.

r.      An affiliate of PJT has been engaged to provide financial advisory services to a group of lenders of a certain company in a confidential matter. The members of such group include an affiliate of Benefit Street and Morgan Stanley, each of which is a PII.

s.      PJT was previously engaged to provide financial advisory services to Cerberus Capital Management, L.P. ("Cerberus"), one of the PII, in a confidential matter.

t.      PJT was previously engaged to provide financial advisory services to a group of lenders to a certain company in a confidential matter. The members of such group included Cerberus and an affiliate of Morgan Stanley, each of which is a PII.

3

u.   PJT has been engaged to provide financial advisory services to an affiliate of Crescent Capital, one of the PII, in a confidential matter.

v.   PJT has been engaged to provide advisory services to an affiliate of Dell Financial Services LLC, one of the PII, in a confidential matter.

w.   PJT was previously engaged to provide financial advisory services to a group of lenders to a certain company in a confidential matter. The members of such group included certain affiliates of Ellington Management Group, L.L.C., one of the PII.

x.   An affiliate of PJT has been engaged to provide financial advisory services to a group of lenders to a certain company in a confidential matter. The members of such group include Ellington Management Group, L.L.C., one of the PII.

y.   PJT was previously engaged to provide advisory services to Google LLC, one of the PII, in a confidential matter.

z.   PJT was previously engaged to provide financial advisory services to HIG Capital LLC, one of the PII, in two separate confidential matters.

aa.   An affiliate of PJT has been engaged to provide financial advisory services to an affiliate of HIG Capital LLC, one of the PII, in a confidential matter.

bb.   An affiliate of PJT has been engaged to provide financial advisory services to a group of lenders to a certain company in a confidential matter.  The members of such group previously included Morgan Stanley, one of the PII.

cc.   PJT has been engaged to provide financial advisory services to certain affiliates of Morgan Stanley, one of the PII, in two separate confidential matters, one of which is closed.

dd.   PJT was previously engaged to provide financial advisory services to a group of lenders to a certain company in a confidential matter.  The members of such group included Morgan Stanley, one of the PII.

ee.   PJT was previously engaged to provide financial advisory services to an affiliate of Morgan Stanley, one of the PII, in two separate confidential matters.

ff.   PJT was previously engaged to provide financial advisory services to a group of lenders to a certain company in a confidential matter. The members of such group included an affiliate of Morgan Stanley, one of the PII.

gg.   The father of one of PJT's employees is Chairman of the Supervisory Body of an affiliate of Morgan Stanley, one of the PII.  Such employee is not part of the PJT team representing the Debtors in these chapter 11 cases.

4

hh.     An affiliate of PJT has been engaged to provide financial advisory services to a certain company in a confidential matter. Ontario Teacher's Pension Plan, one of the PII, is an equity holder in such company.

ii.     PJT was previously engaged to provide financial advisory services to an affiliate of Rackspace US Inc., one of the PII, in a confidential matter.

jj.     PJT was previously engaged to provide financial advisory services to Salesforce.com Inc., one of the PII, in a confidential matter.

kk.     PJT has been engaged to provide advisory services to Salesforce.com Inc., one of the PII, in a confidential matter.

5