**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Zen JV, LLC, *et al.*, [1]<br><br>　　　　　　Debtors. | Chapter 11<br><br>Case No. 25-11195 (JKS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 82** |

**OBJECTION OF SALESFORCE, INC. TO THE POTENTIAL ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND RESERVATION OF RIGHTS**

Salesforce, Inc. (fka salesforce.com, inc.) and its affiliates and subsidiaries (collectively, "Salesforce") by and through their undersigned counsel, hereby files its objection and reservation of rights (the "Assumption Objection")[2] to the assumption and assignment of any executory contract to which Salesforce and any of the Debtors are counterparties including, without limitation: (A) the Salesforce Contract,[3] (B) the Cure Notice Contracts,[4] (C) the Additional

---

[1] The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are: Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding LLC (9339); and Military Advantage LLC (9508). The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

[2] Defined Terms used in this Assumption Objection, but which are not specifically defined herein, shall have the meanings ascribed to them in the *Declaration of Kevin Ramirez in Support of the Objection of the Objection of Salesforce, Inc. to the Potential Assumption of Certain Executory Contracts, and Reservation of Rights* (the "Ramirez Declaration") filed concurrently herewith.

[3] The "Salesforce Contract" includes any and all executory contracts identified on Exhibit "A" attached to the Ramirez Declaration as the executory contract(s) that the Debtors (and/or a duly authorized representative of the Debtors' estate) potentially may assume, or assume and assign, pursuant to 11 U.S.C. §§365 and 1123.

[4] The "Cure Notice Contracts" includes any and all executory contracts to which Salesforce is a counterparty and that are included on any notice or schedule identifying executory contracts that potentially may be assumed by the Debtors (and/or a duly authorized representative of the Debtors' estate) pursuant to (1) any motion, (2) any plan of reorganization, or (3) any order pursuant to 11 U.S.C. §§365 and 1123 or other authority under Title 11 of the United States Code.

Salesforce Contracts,[5] and (D) the Excluded Contracts[6] (collectively, the "<u>Aggregate Salesforce Contracts</u>"), pursuant to, or in conjunction with, (A) one or more sales of the Debtors' assets (the "<u>Sales</u>"), (B) the Cure Notice[7] filed by the Debtors applicable to the assumption (or assumption and assignment) of any of the Aggregate Salesforce Contracts, (C) any motion otherwise filed in the Bankruptcy Cases seeking entry of an order approving and authorizing assumption and/or assignment of the any of the Aggregate Salesforce Contracts (an "<u>Assumption Motion</u>"), and/or (D) any plan(s) of reorganization (each a "<u>Plan</u>" and collectively, the "<u>Plans</u>") unless the relief requested in this Assumption Objection is granted.

Further, Salesforce contends that, pursuant to the Salesforce Contract, it currently provides an integrated package of Salesforce Services[8] to the Debtors.   Accordingly, if the purchaser of the Debtors' assets (through any Sale, an Assumption Motion or Plan) desires to enjoy all the Salesforce Services currently utilized by the Debtors, Salesforce contends that all the agreements and orders that constitute the Salesforce Contract must be assumed and assigned.[9]

### <u>RELIEF REQUESTED</u>

Salesforce seeks entry of an order protecting its rights and interests that includes the following provisions and relief:

---

[5] The Additional Salesforce Contracts includes any and all executory contracts (1) to which Salesforce is a counterparty and that (2) are not identified on Exhibit "A" to the Ramirez Declaration as a Salesforce Contract or (3) the Debtors (and/or a duly authorized representative of the Debtors' estate) have not identified as (i) an Assumption Notice Contract or (4) any other executory contract that potentially may be assumed pursuant to (a) any motion, (b) any plan of reorganization, or (c) any order pursuant to 11 U.S.C. §§365 and 1123 or other authority under Title 11 of the United States Code.

[6] The "Excluded Contracts" includes any and all executory contract(s) (1) to which Salesforce is a counterparty and that (2) potentially may be assumed by the Debtors (and/or a duly authorized representative of the Debtors' estate) pursuant to (i) any motion, (ii) any plan of reorganization, or (iii) any order pursuant to 11 U.S.C. §§365 and 1123 or other authority under Title 11 of the United States Code, and (3) are not identified as (i) an Salesforce Contract, (ii) an Assumption Notice Contract or (iii) an Additional Salesforce Contract.

[7] *See, Notice of Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [D.I. 82].

[8] *See* Ramirez Declaration at ¶2.

[9] *See* Ramirez Declaration at ¶9 and Exhibit "A" attached thereto for identification of the Salesforce Services and related Salesforce Contract.

A.    Entry of findings of fact stating that: (1) the Salesforce Contract includes several related agreements that, taken together, provide the Debtors with a comprehensive set of services and these agreements constitute an integrated executory contract for purposes of assumption and assignment of such contract pursuant to 11 U.S.C. §§365 and 1123(b)(2); and (2) the Salesforce Contract constitutes an executory contract subject to assumption.

B.    Entry of findings of fact stating that: an aggregate monetary default (the "Salesforce Cure Amount") exists pursuant to the Salesforce Contract, which includes (i) not less than **$373,753.29** that is due and owing, but unpaid, as of July 15, 2025 (the "Current Monetary Default"), (ii) such further monetary default amounts (the "Future Monetary Default") that may accrue from and after July 15, 2025 through the date the assumption of the Salesforce Contract becomes effective (the "Effective Assumption Date") and (iii) any and all monetary defaults (collectively, the "Additional Salesforce Contract Monetary Default") that may accrue through the Effective Assumption Date, but which remain unpaid as of that date, with respect to any and all of the Aggregate Salesforce Contracts that are assumed (or assumed and assigned) pursuant to the Sale, an Assumption Motion, the Cure Notice, any Revised Cure Notice and/or a Plan.

C.    The requirement that, as a condition of approving and authorizing the assumption of the any executory contracts to which Salesforce is a counterparty (including, without limitation, any of the Aggregate Salesforce Contracts), the Debtors shall: (1) provide Salesforce with specific information identifying any and all such contracts that may be assumed, or assumed and assigned, pursuant to the Sale, the Cure Notice, a Revised Cure Notice, an Assumption Motion and/or a Plan; (2) serve Salesforce with a Revised Cure Notice identifying (i) all executory contracts that the Debtors seek to assume and/or assign (including, without limitation, all Aggregate Salesforce Contracts) and (ii) the specific monetary defaults the Debtors contend must be cured with respect

-3-

to each executory contract that the Debtors seek to assume, or to assume and to assign, and (iii) the aggregate monetary default(s) (including, without limitation, the Salesforce Cure Amount) that it contends must be cured with respect to each such executory contract as of the Effective Assumption Date;

D.      The requirement that, if any executory contract to which Salesforce is a counterparty (including, without limitation, any of the Aggregate Salesforce Contracts) is assumed and, thereafter, the Debtors seek entry of an order authorizing and approving the assignment of such contract, the Debtors shall (1) identify the prospective assignee (the "Assignee") of each executory contract to be assumed and assigned who will be obligated to perform all terms and conditions of each such assigned contract and (2) not later than ten (10) business days prior to the initial hearing set to consider approval of the assignment of the such executory contracts, *provide* Salesforce with information demonstrating adequate assurance of the ability of the Assignee to perform all terms and conditions of each executory contract that the Debtors seek to assign (including, without limitation, payment of the Salesforce Cure Amount, all extension period fees (if any), all renewal contract fees (if any) and any and all other amounts that will come due in conjunction with such executory contracts);

E.      The requirement that, in the event that any executory contract to which Salesforce is a counterparty that has been identified by the Debtors on the Cure Notice or a Revised Cure Notice, or through a communication with the Debtor, as an executory contract that is not to be assumed or is to be rejected (a "Rejected Contract"), the Court may enter one of the following:

(1)      an order (a "Termination Order") (a) authorizing the Debtors and Salesforce to stipulate to termination of the automatic stay imposed by 11 U.S.C. §362 (the "Stay") as it pertains to each such Rejected Contract, (b) authorizing Salesforce to terminate, at its discretion,

50401552v.2

each Rejected Contract immediately, (c) terminating Salesforce's obligations to provide Salesforce Services to the Debtors (including all Transition Services as defined and referenced in subparagraph G, below), as of the date the Rejected Contract is terminated, (d) reserving Salesforce's rights to payment for services provided to the Debtor (including, but not limited to, Transition Services as defined in sub-paragraph F, below) prior to termination of each specific contract and the bankruptcy estate's rights to contest such payments and (e) all such relief shall be effective without further order of the Court; or

(2)    an order (a "Rejection Order") (a) approving the rejection of executory contracts identified by the Debtors, (b) specifying the date such rejection shall be effective (the "Effective Rejection Date"), (c) terminating the Stay as it pertains to each such executory contract and authorizing Salesforce to terminate each rejected executory contract, without further order of the Court; (d) terminating all Salesforce obligations to provide Salesforce Services to the Debtors (including any Transition Services as defined in subparagraph G, below), from and after the Effective Rejection Date; (e) reserving Salesforce's rights to payment for services provided to the Debtor prior to termination of each specific contract and the bankruptcy estate's rights to contest such payments; (f) authorizing all such relief shall be effective on the Effective Rejection Date without: (i) Salesforce being required to file a separate motion seeking termination of the Stay, or (ii) the Court entering any other order terminating the Stay or other orders;

F.    The requirement that, pursuant 11 U.S.C. §§503 and 507, the Debtors and their respective bankruptcy estates (collectively, the "Bankruptcy Estates") shall be obligated to pay all amounts due with respect to all services and/or goods (the "Salesforce Administrative Expense") provided to the Bankruptcy Estates from and after the Petition Date through, as applicable, (1) the Effective Assumption Date or (2) the Effective Rejection Date.

G.     The requirement that, in the event (1) the Debtors sell, convey and/or transfer some or all of their assets and/or business operation(s) (a "Transaction") to any third party (a "Buyer") pursuant to a sale order, an order confirming a plan of reorganization or any other order entered by the Court and (2) the Debtor and/or the Buyer request that Salesforce Services (the "Transition Services") be provided to the Debtors, their Bankruptcy Estates and/or the Buyer subsequent to approval of a Transaction, (3) the Court shall enter an order (a "Transition Services Order") (i) approving an agreement governing the scope of, and amounts due with respect to, the Transition Services (a "Transition Services Agreement") and specifying whether the Debtor, its bankruptcy estates or the Buyer is obligated to pay all amounts that become due and owing (the "Transition Services Claim") with respect to the Transition Services and (ii) providing that if the Transition Services Claim is not paid according to the terms of the Transition Services Agreement, (a) Salesforce retains its rights to seek payment of such claim pursuant to 11 U.S.C. §503 and 507 and (b) to assert a right to payment of all amounts due with respect to any and all services and/or goods (*i.e.*, a Salesforce Administrative Expense) provided to the Bankruptcy Estates from and after the Petition Date through the latter of, as applicable, (c) the Effective Assumption Date,  (d) in the event the Salesforce Contract is rejected, through the Effective Rejection Date or (e) termination of the Transition Services Agreement;

H.     Approval of the Reservation of Rights (as set forth in this Assumption Objection); and

I.     Granting such other relief as may be just and proper under the facts and circumstances of the Bankruptcy Cases.

 This Assumption Objection is based on the matters set forth herein, the Ramirez Declaration filed in support hereof, the files and the records in this case, and such other and further evidence as may be submitted at or before the trial on this matter.

Salesforce requests that the Court take judicial notice of the pleadings filed in this case and the facts set forth in the Court's orders, findings of fact and conclusions of law pursuant to Rule 201 of the Federal Rules of Evidence (as incorporated by Rule 9017 of the Federal Rules of Bankruptcy Procedure).

## BACKGROUND

1.      Salesforce is a Delaware corporation, and, among other activities, it provides on-demand customer relationship management, software application services and related services (collectively, the "Salesforce Services") to Salesforce's business customers (individually, a "Salesforce Customer" and, collectively, "Salesforce Customers").  *See* Ramirez Declaration at ¶2.

2.      Salesforce provides the Salesforce Services pursuant to the agreements and orders identified on Exhibit "A" attached hereto (collectively, the "Salesforce Contract") and Exhibit "A" is incorporated by referenced herein as if fully set forth.  *See* Ramirez Declaration at ¶3.

## THE SALESFORCE CONTRACT

3.      The Debtors entered into those certain order forms (the "Order Forms") which are identified on the Cure Amount Summary (attached to the Ramirez Declaration as "Exhibit A") with Salesforce that are governed by a certain *Master Subscription Agreement* (the "MSA" and, together with the Order Forms, constitute the Salesforce Contract).[10]  *See* Ramirez Declaration at ¶8.

4.      Pursuant to the Salesforce Contract: (i) the Debtors ordered certain Salesforce Services and became obligated to pay in full the aggregate amounts due pursuant to this contract with respect to such services; (ii) Salesforce became obligated to provide Salesforce Services to the Debtors; (iii) Salesforce have provided such services to the Debtors; and (iv) the Debtors accepted and utilized Salesforce Services provided pursuant to the Salesforce Contract.  *See* Ramirez Declaration at ¶9.

---

[10]      Due to the confidentiality provisions of the MSA, a copy of the Salesforce Contract and related invoices (the "Invoices") are not attached to the Ramirez Declaration.   However, subject to appropriate non-disclosure protections, a copy of the Salesforce Contract and the Invoices will be made available by request.

-7-

BANKRUPTCY CASE

5.        On June 24, 2025 (the "Petition Date"): (A) Zen JV, LLC and the other Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court") and, thereby, commenced their individual cases under chapter 11 (collectively, the "Bankruptcy Cases"); and (B) on June 25, 2024, the Court entered its order directing the joint administration of the Bankruptcy Cases (but not substantively consolidated consolidating such cases).[11]

6.        On June 25, 2025, the Debtors filed their motion (the "Bidding Procedures Motion")[12] seeking entry of an order approving and authorizing, among other things: (A) certain procedures governing the Sale(s) of substantially all of the Debtors' assets; and (B) certain procedures governing the assumption and assignment of executory contracts and unexpired leases.

7.        On July 8, 2025, the Court entered its order (the "Bidding Procedures Order") granting the relief requested in the Bidding Procedures Motion.[13]

8.        On July 3, 2025, pursuant to the Bidding Procedures Order, the Debtors filed a notice (the "Cure Notice")[14], which identifies: (i) certain executory contracts that potentially may be assumed pursuant to the Sale(s) of the Debtors' assets, including executory contracts to which Salesforce is the counterparty (i.e. the Cure Notice Contracts), and (ii) the proposed cure amount that must be cured as a condition of the assumption of the Cure Notice Contracts.

---

[11]        *See, Order Directing Joint Administration of Related Chapter 11 Cases* [D.I. 49].

[12]        *See Motion of Debtors for Entry of Orders (I) Authorizing and Approving (A) the Bidding Procedures for Sale of the Debtors' Assets Free and Clear, (B) the Scheduling of an Auction and Sale Hearing, (C) the Form and Manner of Notice of Sales, Auctions, and Sale Hearings, (D) the Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) the Designation of Stalking Horse Bidders, and (F) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Authorizing Designation of Stalking Horse Bidders, and (III) Granting Related Relief* [D.I. 28].

[13]        *See Order (I) Authorizing and Approving (A) the Bidding Procedures for Sale of the Debtors' Assets Free and Clear, (B) the Scheduling of an Auction and Sale Hearing, (C) the Form and Manner of Notice of Sales, Auctions, and Sale Hearings, (D) the Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) the Designation of Stalking Horse Bidders, and (F) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Authorizing Designation of Stalking Horse Bidders, and (III) Granting Related Relief* [D.I. 110].

[14]        *Notice of Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [D.I. 82].

9.      The Debtors listed the Cure Notice Contracts as follows:

| Contract Counterparty | Debtor | Cure | Agreement Name / Description | Contract Date |
|---|---|---|---|---|
| Salesforce, Inc. | Military Advantage, Inc. | $- | Order Form | 8/1/2024 |
| Salesforce, Inc. | Monster Government Solutions, LLC | $- | Purchase Order | 3/25/2025 |
| Salesforce, Inc. | Zen JV, LLC | $- | Salesforce Core Contract | 1/31/2025 |
| Salesforce, Inc. | Monster Worldwide, LLC | $- | Salesforce Marketing Cloud Mobile Messages Contract | 5/28/2025 |
| Salesforce, Inc. | CareerBuilder, LLC | $- | Salesforce-Pardot 30 Day Extension Contract | 6/16/2025 |
| Salesforce, Inc. | CareerBuilder, LLC | $- | Salesforce Tableau Contract | 12/29/2023 |

*See* Ramirez Declaration at ¶13.

10.     The Cure Notice states that any objection to the**:** (i) the proposed assumption and assignment, (ii) the lack of adequate assurance of future performance of the Stalking Horse Bidder, or (iii) the Cure Cost proposed with respect thereto, must be filed with the Court on or before 4:00 p.m. (ET) on July 14, 2025 (the "Assumption Objection Deadline"). *See* Ramirez Declaration at ¶14.

11.     On July 11, 2025, counsel for the Debtors agreed to extend the Assumption Objection Deadline for Salesforce until July 15, 2025 (the "Revised Assumption Objection Deadline").

12.     Salesforce understands that, pursuant to the Cure Notice, the Cure Notice Contracts (which may be part of or one of the contracts included in the Salesforce Contract) has been designated for assumption (or assumption and assignment) pursuant to Sale Motion and/or the Plan.  *See* Ramirez Declaration at ¶16.

**THE CURE AMOUNT**

13.     Based upon its review of its books and records that are pertinent to the Debtors' account, Salesforce contends that: (A) the executory contracts identified on the Cure Notice[15] (*i.e.*, the Cure Notice Contracts) as executory contracts that may be assumed, or assumed and assigned, does not match the description of the Salesforce Contract as listed on Salesforce's records; (B) the

---

[15] *See* Cure Notice.

Salesforce Contract is correctly identified on Exhibit "A", the <u>Cure Amount Summary</u>, attached to the Ramirez Declaration; and (C) as of the date of this Assumption Objection, Salesforce's records show that the Debtors have failed to pay all fees due and owing pursuant to the Salesforce Contract in an amount of not less than **$373,753.29** and such amount must be paid by the Debtors as a condition of the assumption of the Salesforce Contract. *See* Ramirez Declaration at ¶16.

14.     Additionally, if the Salesforce Contract is assumed in connection with the Sale, or an Assumption Motion, approximately **$6,163,527.05** in additional monies (the "<u>Future Payments</u>") will become due and owing after such assumption pursuant to the terms of the Salesforce Contract. *See* Ramirez Declaration, Exhibit A.

15.     Further, if any or all of Additional Salesforce Contracts and/or any or all of Excluded Contracts are assumed (or assumed and assigned) by the Debtors, it is possible that monetary defaults may exist with respect to such contracts and, accordingly, additional monies may be due and owing (*i.e.*, in addition to the amounts listed on Exhibit "A" to Ramirez Declaration and the Cure Notice) to cure the monetary defaults pertaining to such contracts. Consequently, if any Additional Contracts and/or Excluded Contracts, ultimately, are identified for assumption (or assumption and assignment), the amount of any additional monetary defaults will have to be determined, and any additional Cure Amounts will have to be paid as a condition of the assumption (or assumption and assignment) of such contracts pursuant to 11 U.S.C. §365.

## <u>GROUNDS FOR THE RELIEF REQUESTED</u>

### <u>The Salesforce Contract Constitutes an Integrated Contract<br>That Must Be Assumed in Its Entirety</u>

16.     Pursuant to the United States Bankruptcy Code, a debtor-in-possession has the power, with court approval, to assume or reject any executory contract or unexpired lease. 11 U.S.C. §365(b)(1)(A). As a practical matter, a commercial relationship often includes several agreements that, taken together, constitute an integrated contract. Therefore, a threshold issue for the Court in determining whether to approve the assumption of any executory contract is to identify the agreements that constitute the "executory contract" at issue. *Lewis Bros. Bakeries, Inc. v.*

-10-

*Interstate Brands Corp. (In re Interstate Bakeries Corp.),* 751 F.3d 955, 961 (8th Cir. 2014) (To determine the applicability of this provision, the Court "must first identify what constitutes the agreements at issue.").

17.    "Courts which have analyzed the issue of severability [of several agreements] look to the state law governing the agreement in order to determine whether an agreement is divisible for § 365 assumption and rejection purposes." *In re Cafeteria Operators, L.P.*, 299 B.R. at 388-389 (applying Texas law) *citing Stewart Title Guar. Co.,* 83 F.3d at 739 (applying Texas law); *accord, In re New York Skyline, Inc.*, 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) (applying New York state law) ("It is well-settled that state law governs whether the agreements are separate or indivisible for purposes of §365.").    Here, the MSA (and, hence the Salesforce Contract) are governed by California law.

18.    Bankruptcy Courts, in determining whether a series of agreements constitute an integrated contract or separate contracts, the intention of the parties is the first and foremost factor considered by a court. *See e.g., Pirinate Consulting Corp, LLC v. C.R. Meyer & Sons, Co. (In re Newpage Corporatio*n), 2017 WL 571478 (Bankr. Del., Feb. 13, 2017); *In re Buffets Holdings, Inc.*, 387 B.R. 115, 120 (Bankr. D. Del. 2008).    *Cf. Fuentes v. TMCSF, Inc.*, 26 Cal. App. 5th 541, 548 (2018) (*citing Goodman v. Severin*, 274 Cal.App.2d 885, 895 (1969).    This determination is made by analyzing the plain language of the agreements between the parties.    *Carlisle Corp. v. Uresco Const. Materials, Inc*., 823 F. Supp. 271, 274 (M.D. Pa. 1993.

19.    Further, where multiple agreements are intended to comprise one contract or transaction, a party may not sever them for purposes of assumption or rejection. *Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.),* 538 B.R. 225, 233-37 (D. Del. 2015) (Multiple writings can form one uniform agreement).    "[A]ll of the contracts that comprise an integrated agreement must be either assumed or rejected, since they all make up one contract." *In re LG Philips Displays USA, Inc.,* No. 06–10245(BLS), 2006 WL 1748671, at *4 (Bankr. D. Del. June 21, 2006); *accord In re Buffets Holdings, Inc.,* 387 B.R. 115, 120 (Bankr. D. Del. 2008) (holding that two master leases incorporating twenty-one individual leases in twelve

-11-

states were integrated, signed for the purpose of bundling and monetizing existing leases, were integrated with their subsidiary leases, and each lease group had to be assumed or rejected in its entirety).

20.     Here, the terms and conditions applicable to the Salesforce Services that are subject to the Salesforce Orders are set forth in the *Master Subscription Agreement* (*i.e.,* the MSA), and, as noted, the MSA together with the Salesforce Orders, constitute the Salesforce Contract.  The Salesforce Contract (by the terms of the MSA) provides that California law is the governing law of the Salesforce Contract.[16]

21.     Salesforce submits that the Debtors and Salesforce intended the Salesforce Contract – consisting of the Salesforce Orders and the MSA – to provide a range of specific Salesforce Services and functionality that, taken together, comprise a comprehensive business solution.  This integrated business solution is embodied in the Salesforce Contract by providing an integrated on-demand customer relationship management and software application package for the Debtors.

22.     Salesforce submits that the Debtors intended to create an integrated business solution by contracting for a comprehensive set of services and software applications by entering into all of the Orders and the MSA that comprise the Salesforce Contract.

## All Defaults Under an Assumed Contract Must Be Cured

23.     Where (as in the case before the Court) a debtor has defaulted on an executory contract, the Bankruptcy Code prohibits the debtor from assuming the contract unless the debtor:

> (A)   cures, or provides adequate assurance that the [debtor] will promptly cure, such default . . . .
>
> (B)   compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

---

[16]     Each of the Orders constituting the Salesforce Contract are governed by the terms of an applicable MSA. *See* Ramirez Declaration at ¶8.  The "Governing Law" sections of the MSA applicable to the Salesforce Contract specify California law as the applicable law governing the Salesforce Contract.  [*See* §12.9 of the MSA]. As previously noted, due to the confidentiality provisions of the Salesforce Contract, these agreements have not been filed with the Court but Salesforce will make such agreements available subject to appropriate non-disclosure agreements and/or Court orders.

      (C)   provides adequate assurance of future performance under such
              contract or lease.

*See* 11 U.S.C. §365(b)(1)(A).

24.      "Once an assumption order is entered, the creditor must perform in accordance with the terms of the assumed agreements. . .  In other words, the debtor must cure all defaults, assure future performance, and make the other contracting party whole before it may be permitted to assume the agreement.".  *In re Kiwi Intern. Air Lines, Inc*., 344 F.3d 311, 318 (3rd Cir. 2003) (emphasis added); *cf. In re Columbia Gas System Inc.,* 50 F.3d 233, 238–39 (3d Cir.1995) ("the Bankruptcy Code provides that the cost of performing the debtor's obligations is an administrative expense of the estate. . . .").

25.      Here, Salesforce's books and records show that (A) the Debtors have failed to pay all fees due and owing pursuant to the Salesforce Contract, and (B) as of the date of this Assumption Objection, an amount not less than **$373,753.29** is due and owing, but unpaid, pursuant to the Salesforce Contract.  *See* Ramirez Declaration, Exhibit "A."

26.      Further, if the Salesforce Contract is assumed, not less than an aggregate amount of **$6,163,527.05** (*i.e.,* the Future Payments) will become due and owing pursuant to the Salesforce Contract.  *See* Ramirez Declaration, Exhibit "A."

27.      In the event that any Additional Salesforce Contracts and/or any Excluded Contracts are assumed, additional monetary defaults may exist with respect to such contracts and such amounts will have to be cured as a condition of the assumption, or assumption and assignment, of such contracts.   Accordingly, Salesforce reserves the right to amend this Assumption Objection to address these Additional Salesforce Contracts and all related monetary defaults.

### The Salesforce Contract is Not Properly Identified

28.      Salesforce objects to the assumption of the Salesforce Contract (and any Additional Salesforce Contract and/or Excluded Contract) for the reasons set forth below unless the Court

-13-

enters an Order protecting Salesforce's interests by granting the relief sought by this Assumption Objection (and the Reservation of Rights set forth hereinafter).

29.    Salesforce submits that, although the Cure Notice identifies several proposed executory contracts for assumption, none of the identifying information listed in the Cure Notice can be reconciled against Salesforce's own books and records and, therefore, Salesforce cannot determine definitively whether the Salesforce Contract identified includes all Order Forms and related MSA that, collectively, constitute the Salesforce Contract.

30.    Accordingly, Salesforce submits that the Court should require the Debtors to file a Revised Cure Notice identifying with specificity all executory contracts to which Salesforce is a counterparty (including all Order Forms and MSAs) that it may intend to assume and assign pursuant to the Bidding Procedures Motion, the Bidding Procedures Order, the Cure Notice and/or in conjunction with any Sale or Transaction approved by the Court.  Salesforce submits that the Debtors and any Buyer should be able to properly identify the executory contracts to be assumed and assigned by filing a Revised Cure Notice.   More specifically, as of the date of this Assumption Objection, Salesforce submits that the Salesforce Contract may be-identified accurately by using the Order Form numbers and other identifying information as shown on Exhibit "A", attached hereto and incorporated herein by this reference.

## Assignment of the Executory Contract and Unexpired Lease

31.    The Bankruptcy Code permits assignment of an unexpired executory contract or unexpired lease only if (A) the debtor in possession or trustee assumes the contract or lease in accordance with 11 U.S.C. §365(b)(1) and (B) the assignee provides adequate assurance of future performance of such contract or lease, regardless of whether there has been a default in such contract or lease.  *See* 11 U.S.C. §365(f)(1), (2)(A) and (B); *In re Fleming Companies, Inc*., 499 F.3d 300, 305 (3d Cir. 2007) (assignment denied where the prospective assignee cannot perform a material and significant term of the agreement).  Determining whether an assignee has provided adequate assurance of its ability to perform the contract in the future "must be determined by

50401552v.2

consideration of the facts of the proposed assumption." *In re Fleming Companies, Inc.,* 499 F.3d at 307.   Adequate assurance of future performance must be provided before an assignment may be authorized even if the executory contract at issue is not in default (*e.g.*, a monetary default has been cured as a condition of assumption pursuant to 11 U.S.C. §365(b)(1)).   *Id.*, 499 F.3d at 305).

32.     The non-debtor counterparty to the executory contract that may be assumed and assigned (such as Salesforce) is entitled to notice of the identity of the actual assignee and to demand adequate assurance of future performance by that specific assignee.  *In re Golden Books Family Entertainment, Inc.*, 269 B.R. 300 (Bankr. D. Del. 2001).

33.     Accordingly, to the extent that the Debtors decide to assign the Salesforce Contract to any third party, Salesforce reserves its right to object to the assignment pursuant to 11 U.S.C. §365(f)(1), (2)(A) and (B).

**RESERVATION OF RIGHTS**

34.     Salesforce does not object to assumption of the Salesforce Contract *per se*, *provided that* any order authorizing the assumption of the Salesforce Contract (an "Assumption Order") includes the provisions and relief requested by the Assumption Objection.

35.     With respect to any and all other executory contracts and/or unexpired leases to which it is a counterparty (individually, an "Excluded Contract" and, collectively, the "Excluded Contracts") other than the Salesforce Contract (as identified in this Assumption Objection), Salesforce hereby expressly reserves (the "Reservation of Rights") all rights, interests, claims, counterclaims, rights of setoff and recoupment and/or defenses pertaining to any or all Excluded Contracts including, without limitation, (a) the right to object to the assumption and/or assignment by the Debtors of any such Excluded Contract, (b) the right to payment of all monetary defaults and the cure of all non-monetary defaults that exist with respect to each such Excluded Contract, (c) the right to assert any cure costs due and owing with respect to any Additional Salesforce Orders and/or Additional Salesforce Contract(s) that hereinafter are designated for assumption and assignment by the Debtors, and/or (d) the right to have the assignment of any such Excluded Contract specifically conditioned on the Court finding, based on competent evidence, that the actual assignee of such contract is capable of performing

-15-

all terms and conditions of such Excluded Contract including, without limitation, payment of all amounts that will come due and owing subsequent to any such assignment.

WHEREFORE, if the Court determines to approve assumption of the Salesforce Contract pursuant to any Assumption Motions (as defined in this Assumption Objection), Salesforce requests entry of an Assumption Order protecting Salesforce's rights and interests by including the following findings of facts and relief:

Salesforce seeks entry of the Assumption Order protecting its rights and interests that includes the following provisions and relief:

A.      Entry of findings of fact stating that: (1) the Salesforce Contract includes several related agreements that, taken together, provide the Debtors with a comprehensive set of services and these agreements constitute an integrated executory contract for purposes of assumption and assignment of such contract pursuant to 11 U.S.C. §§365 and 1123(b)(2); and (2) the Salesforce Contract constitutes an executory contract subject to assumption.

B.       Entry of findings of fact stating that: the Salesforce Cure Amount exists pursuant to the Salesforce Contract, which includes (i) not less than **$373,753.29** that is due and owing, but unpaid, as of July 15, 2025, (ii) any Future Monetary Default that may accrue from and after July 15, 2025 through the Effective Assumption Date and (iii) any and all monetary defaults that may accrue through the Effective Assumption Date, but which remain unpaid as of that date, with respect to any and all of the Aggregate Salesforce Contracts that are assumed (or assumed and assigned) pursuant to the Sale, an Assumption Motion, the Cure Notice, any Revised Cure Notice and/or a Plan.

C.      The requirement that, as a condition of approving and authorizing the assumption of the any executory contracts to which Salesforce is a counterparty (including, without limitation, any of the Aggregate Salesforce Contracts), the Debtors shall: (1) provide Salesforce with specific

-16-

information identifying any and all such contracts that may be assumed, or assumed and assigned, pursuant to the Sale, the Cure Notice, a Revised Cure Notice, an Assumption Motion and/or a Plan; (2) serve Salesforce with a Revised Cure Notice identifying (i) all executory contracts that the Debtors seek to assume and/or assign (including, without limitation, all Aggregate Salesforce Contracts) and (ii) the specific monetary defaults the Debtors contend must be cured with respect to each executory contract that the Debtors seek to assume, or to assume and to assign, and (iii) the aggregate monetary default(s) (including, without limitation, the Salesforce Cure Amount) that it contends must be cured with respect to each such executory contract as of the Effective Assumption Date;

D.      The requirement that, if any executory contract to which Salesforce is a counterparty (including, without limitation, any of the Aggregate Salesforce Contracts) is assumed and, thereafter, the Debtors seek entry of an order authorizing and approving the assignment of such contract, the Debtors shall (1) identify the prospective assignee (the "Assignee") of each executory contract to be assumed and assigned who will be obligated to perform all terms and conditions of each such assigned contract and (2) not later than ten (10) business days prior to the initial hearing set to consider approval of the assignment of the such executory contracts, *provide* Salesforce with information demonstrating adequate assurance of the ability of the Assignee to perform all terms and conditions of each executory contract that the Debtors seek to assign (including, without limitation, payment of the Salesforce Cure Amount, all extension period fees (if any), all renewal contract fees (if any) and any and all other amounts that will come due in conjunction with such executory contracts);

E.      The requirement that, in the event that any executory contract to which Salesforce is a counterparty that has been identified by the Debtors on the Cure Notice or a Revised Cure

Notice, or through a communication with the Debtor, as an executory contract that is not to be assumed or is to be rejected, the Court may enter one of the following:

(1)    a Termination Order (a) authorizing the Debtors and Salesforce to stipulate to termination of the automatic stay imposed by 11 U.S.C. §362 as it pertains to each such Rejected Contract, (b) authorizing Salesforce to terminate, at its discretion, each Rejected Contract immediately, (c) terminating Salesforce's obligations to provide Salesforce Services to the Debtors (including all Transition Services as defined and referenced in subparagraph G, below), as of the date the Rejected Contract is terminated, (d) reserving Salesforce's rights to payment for services provided to the Debtor (including, but not limited to, Transition Services as defined in sub-paragraph F, below) prior to termination of each specific contract and the bankruptcy estate's rights to contest such payments and (e) all such relief shall be effective without further order of the Court; or

(2)    a Rejection Order (a) approving the rejection of executory contracts identified by the Debtors, (b) specifying the date such rejection shall be effective (the "Effective Rejection Date"), (c) terminating the Stay as it pertains to each such executory contract and authorizing Salesforce to terminate each rejected executory contract, without further order of the Court; (d) terminating all Salesforce obligations to provide Salesforce Services to the Debtors (including any Transition Services as defined in subparagraph G, below), from and after the Effective Rejection Date; (e) reserving Salesforce's rights to payment for services provided to the Debtor prior to termination of each specific contract and the bankruptcy estate's rights to contest such payments; (f) authorizing all such relief shall be effective on the Effective Rejection Date without: (i) Salesforce being required to file a separate motion seeking termination of the Stay, or (ii) the Court entering any other order terminating the Stay or other orders;

F.      The requirement that, pursuant 11 U.S.C. §§503 and 507, the Debtors and their respective bankruptcy estates shall be obligated to pay all amounts due with respect to all services and/or goods provided to the Bankruptcy Estates from and after the Petition Date through, as applicable, (1) the Effective Assumption Date or (2) the Effective Rejection Date.

G.      The requirement that, in the event (1) the Debtors sell, convey and/or transfer some or all of their assets and/or business operation(s) to any third party pursuant to a sale order, an order confirming a plan of reorganization or any other order entered by the Court and (2) the Debtor and/or the Buyer request that Transition Services be provided to the Debtors, their Bankruptcy Estates and/or the Buyer subsequent to approval of a Transaction, (3) the Court shall enter an order (i) approving an agreement governing the scope of, and amounts due with respect to, the Transition Services and specifying whether the Debtor, its bankruptcy estates or the Buyer is obligated to pay all amounts that become due and owing with respect to the Transition Services and (ii) providing that if the Transition Services Claim is not paid according to the terms of the Transition Services Agreement, (a) Salesforce retains its rights to seek payment of such claim pursuant to 11 U.S.C. §503 and 507 and (b) to assert a right to payment of all amounts due with respect to any and all services and/or goods (*i.e.*, a Salesforce Administrative Expense) provided to the Bankruptcy Estates from and after the Petition Date through the latter of, as applicable, (c) the Effective Assumption Date,  (d) in the event the Salesforce Contract is rejected, through the Effective Rejection Date or (e) termination of the Transition Services Agreement;

H.      Approval of the Reservation of Rights (as set forth in this Assumption Objection); and

I.      Granting such other relief as may be just and proper under the facts and circumstances of the Bankruptcy Cases.

-19-

Dated: July 15, 2025

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

*/s/ Michael Ingrassia*
Michael Ingrassia (No. 7068)
600 North King Street, Suite 800
Wilmington, DE 19801
Phone: 302-467-4503
Fax:    302-467-4550
Email:
ingrassiam@whiteandwilliams.com

-and-

**BIALSON, BERGEN & SCHWAB, PC**
Gaye N. Heck, Esq.
Shelby K. Nace, Esq.
830 Menlo Avenue, Suite 201
Menlo Park, CA 94025
Telephone: (650) 857-9500
Fax: (650) 494-2738
E-mail: Gheck@bbslaw.com
Email: Snace@bbslaw.com

*Attorneys for Creditor Salesforce, Inc.*

50401552v.2