**Exhibit B**

**Schrock Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
---------------------------------------------------- x
                                                     :
In re:                                               :   Chapter 11
                                                     :
ZEN JV, LLC, et al.,¹                                :   Case No. 25-11195 (JKS)
                                                     :
    Debtors.                                         :   (Jointly Administered)
                                                     :
---------------------------------------------------- x
```

**DECLARATION OF RAY C. SCHROCK AND
DISCLOSURE STATEMENT OF LATHAM & WATKINS LLP**

I, Ray C. Schrock, declare as follows:

1.      I am a partner in the law firm of Latham & Watkins LLP ("**Latham**"), an international law firm with offices across the United States, Europe, and Asia.  I am admitted in, practicing in, and a member in good standing of the state bars of New York and Illinois, and there are no disciplinary proceedings pending against me.  I am over the age of eighteen, am authorized to submit this Declaration, and am competent to testify on the matters contained herein.

2.      I submit this Declaration to provide disclosure in connection with the *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Latham & Watkins LLP as Bankruptcy Counsel Effective as of the Petition Date* (the "**Application**"),² by which the above-captioned debtors and debtors-in-possession (together, the "**Debtors**") seek authority to employ and retain Latham as bankruptcy counsel, effective as of the Petition Date.

---

¹   The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are:  Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions, LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508).  The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

²   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

3.     Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by other Latham professionals or paraprofessionals or learned from my review of relevant documents.  To the extent any information disclosed herein requires amendment or modification as additional information becomes available to Latham, a supplemental declaration will be submitted to this Court reflecting such amended or modified information.

## LATHAM'S QUALIFICATIONS

4.     The Debtors seek to retain Latham because of Latham's recognized expertise and extensive experience and knowledge practicing before bankruptcy courts in large and complex chapter 11 cases and because of Latham's knowledge of the Debtors' business and financial affairs.

5.     Latham and its partners have represented numerous debtors in their bankruptcy matters, including 2U, Inc., Allen Systems Group, Inc., Alta Mesa Resources, Inc., Audacy, Inc., Barretts Minerals, Inc., Chaparral Energy, Inc., Dayton Superior Corporation, DNIB Unwind, Inc. (f/k/a BIND Therapeutics, Inc.), DocuData Solutions, Emerge Energy Services LP, Enduro Resource Partners LLC, First Mode Holdings, Global Eagle Entertainment Inc., GNC Holdings, Inc., Hexion Holdings LLC, Hi-Crush Inc., IG Design Group Americas, Illinois Power Generating Company, Imerys Talc America, Inc., JOANN Inc., Libbey Glass Inc., Lincoln Power, L.L.C., Lonestar Resources US Inc., Lucky Brand Dungarees, LLC, Lumileds Holding B.V., Mallinckrodt plc, MLCJR LLC, Monitronics International, Inc., Nine Point Energy Holdings, Inc., Pacific Drilling S.A., Paddock Enterprises, LLC, Panda Temple Power, LLC, Rentech WP U.S. Inc., Robertshaw US Holding Corp., Sable Permian Resources, LLC, Sienna Biopharmaceuticals, Inc., Starry Group Holdings, Inc., Stone Energy Corporation, Sundance Energy Inc., Superior Energy

Services, Inc., The Container Store Group, Inc., Virgin Orbit Holdings, Inc., Vital Pharmaceuticals, Inc., Weatherford International plc., and Wolfspeed, Inc.

6.     I am one of the principal Latham attorneys working on this engagement. I have extensive experience in corporate restructurings and have represented debtors, asset purchasers, bank groups, secured lenders, unsecured creditors, and other parties in both in-court and out-of-court restructurings, and in related litigation. Other professionals and paraprofessionals in Latham's insolvency practice and in other practice areas, many of whom also have extensive experience in corporate restructurings generally and debtor representations in chapter 11 cases specifically, will participate in the representation of the Debtors in the Chapter 11 Cases.

7.     Moreover, since May 2025, the Debtors and Latham have worked together closely in an effort to respond to the Debtors' financial circumstances, including by engaging in negotiations with the Debtors' major creditors and potential strategic partners concerning the Debtors' restructuring options, negotiating purchase agreements in connection with the sale of the Debtors' assets, securing debtor-in-possession financing, and by assisting the Debtors in all aspects of preparing the Chapter 11 Cases. As a result, Latham possesses valuable knowledge of the Debtors' business affairs and capital structure and has gained insight into many of the intricacies and unique challenges that might arise and that the Debtors need to navigate during the Chapter 11 Cases.

8.     Accordingly, I believe that Latham is both well-qualified and uniquely able to represent the Debtors in the Chapter 11 Cases and that such representation will contribute greatly to the efficient administration of the estates, thereby minimizing expense to the estates and facilitating the progress of the Chapter 11 Cases.

## SERVICES TO BE PROVIDED

9.      The Debtors desire to employ Latham because of, among other reasons, the nature of the legal services that will be required in connection with the Chapter 11 Cases.  To engage alternative counsel at this stage of the Debtors' cases would be tremendously disruptive and would derail the accelerated timeline necessary for a successful sale process.

10.     Consistent with the Engagement Letter, a copy of which is attached as Exhibit 1 hereto, Latham expects to provide, without limitation, the following legal services:

a.      advise the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

b.      advise and consult on the conduct of the Chapter 11 Cases, including all of the legal and administrative requirements of operating in chapter 11;

c.      advise the Debtors and take all necessary action to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors' interests in negotiations concerning litigation in which the Debtors are involved;

d.      analyze proofs of claim filed against the Debtors and object to such claims as necessary;

e.      represent the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

f.      attend meetings and negotiate with representatives of creditors, interest holders, and other parties in interest;

g.      analyze executory contracts and unexpired leases and potential assumptions, assignments, or rejections of such contracts and leases;

h.      prepare pleadings in connection with the Chapter 11 Cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

i.      advise the Debtors in connection with any potential sale of assets;

j.      take necessary action on behalf of the Debtors to obtain approval of a disclosure statement and confirmation of a chapter 11 plan;

k.    appear before this Court or any appellate courts to protect the interests of the Debtors' estates before those courts;

l.    advise on corporate, litigation, finance, tax, employee benefits, and other legal matters; and

m.    perform all other necessary legal services for the Debtors in connection with the Chapter 11 Cases.

11.    I understand that, concurrently with the filing of the Application, the Debtors filed an application to retain Richards, Layton & Finger, P.A. ("**RLF**") as their bankruptcy counsel and conflicts counsel.  Because Latham and RLF will have distinct and well-defined roles, each counsel will not duplicate the services the other provides to the Debtors.  Latham will coordinate with RLF and any other counsel the Debtors retain in the Chapter 11 Cases to ensure that the legal services each firm provides to the Debtors are not duplicative.

12.    The Debtors also have filed or intend to file applications to employ (a) PJT Partners, as investment banker; (b) AlixPartners, as financial advisor; and (c) Omni Agent Solutions as claims and noticing agent and as administrative advisor in the Chapter 11 Cases.  Latham intends to monitor carefully the efforts of these and any other professionals the Debtors retain in the Chapter 11 Cases and coordinate with such professionals to delineate clearly their respective duties in order to prevent duplication of effort, whenever possible.

## PROFESSIONAL COMPENSATION

13.    Latham intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, the Local Rules, and any procedures and orders of the Court.

14.    Latham operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the

firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

Latham's current hourly rates for matters related to the Chapter 11 Cases range as follows:

| Billing Category | Rates |
|---|---|
| Partners | $1,680 to $2,650 |
| Counsel | $1,595 to $2,070 |
| Associates | $835 to $1,635 |
| Professional Staff | $255 to $980 |
| Paralegals | $355 to $755 |

15. The principal professionals designated to represent the Debtors and their current standard hourly rates are as follows:[3]

| | |
|---|---|
| Ray C. Schrock | $2,550 |
| Candace M. Arthur | $2,095 |
| Binyomin Kaplan | $1,980 |
| Jonathan Gordon | $1,635 |

16. Latham's hourly rates are designed to compensate Latham fairly for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned and are subject to periodic adjustments to reflect economic and other conditions (which adjustments will be reflected in the first Latham fee application following such adjustments).[4]

17. Consistent with the Engagement Letter and Latham's policy with respect to its other clients, Latham will continue to charge the Debtors for all services provided and for other charges and disbursements incurred in the rendition of services. It is Latham's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client.

---

[3]  For the avoidance of doubt, the list of professionals in this paragraph 15 is not exclusive; additional Latham personnel are expected to render services in connection with this engagement.

[4]  Latham's billing rates are usually revised annually, on or around January 1 of each year, as is customary with Latham's policies. Accordingly, Latham's billing rates will increase on January 1, 2026. As set forth in the Order, Latham will provide ten business-days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and will file any such notice with the Court.

RLF1 33353099v.1

It is also Latham's policy to charge its clients only the amount actually incurred by Latham in connection with such items. These charges and disbursements include (without limitation) costs for photocopying, electronic data management services, including scanning and document imaging, travel, travel-related expenses, business meals, computerized research, messengers, couriers, postage, witness fees, and other fees related to trials and hearings. Latham professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices, and Latham will continue to charge for overtime secretarial charges that arise out of business necessity. Latham will charge the Debtors $0.10 per page for standard duplication in accordance with the Local Rules.

18.     No promises have been received by Latham, or any partner, counsel, or associate thereof, as to payment or compensation in connection with the Chapter 11 Cases other than in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Except for sharing arrangements among Latham, its affiliated law practice entities, and their respective members, in accordance with sections 329 and 504 of the Bankruptcy Code and Bankruptcy Rule 2016(b), Latham has not entered into any agreements, express or implied, with any other party in interest, including the Debtors, any creditor, or any attorney for such party in interest in the Chapter 11 Cases for (a) the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest or its attorneys for services rendered in connection therewith, (b) payment of such compensation from the assets of the estates in excess of the compensation allowed by this Court pursuant to the applicable provisions of the Bankruptcy Code, or (c) payment of compensation in connection with the Chapter 11 Cases other than in accordance with the applicable provisions of the Bankruptcy Code.

## STATEMENT PURSUANT TO THE U.S. TRUSTEE GUIDELINES

19.    Latham will make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the U.S. Trustee Guidelines, both in connection with this Application and with any fee applications filed by Latham in the Chapter 11 Cases.

20.    The following is provided in response to the request for additional information set forth in Paragraph D.1 of the U.S. Trustee Guidelines:

a.    **Question**: Did Latham agree to any variations from, or alternatives to, Latham's standard billing arrangements for this engagement?

**Answer**: No.

b.    **Question**: Do any of the Latham professionals in this engagement vary their rate based on the geographic location of the Debtors' chapter 11 cases?

**Answer**: No.

c.    **Question**: If Latham has represented the Debtors in the 12 months prepetition, disclose Latham's billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition.  If Latham's billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

**Answer**:  Latham's current hourly rates for services rendered on behalf of the Debtors are set forth above.  Since January 1 of this year, Latham used the following rates for services rendered on behalf of the Debtors: $1,875 to $2,750 for partners; $1,775 to $2,325 for counsel; $975 to $1,760 for associates; $650 to $675 for paralegals; and $600 for professional staff.  All material financial terms have remained unchanged since such prepetition period, except (i) the rates for certain lawyers advising the Debtors in these Chapter 11 Cases will be limited by the applicable rate ranges set forth in paragraph 14 above and (ii) for a postpetition 50% discount for non-working travel time.  In 2024, Latham agreed to a special discount to its rates on a one-time basis for non-restructuring work.

    d.    **Question**: Have the Debtors approved Latham's budget and staffing plan and, if so, for what budget period?

    **Answer**: Latham, in conjunction with the Debtors, is developing a prospective budget and staffing plan for the Chapter 11 Cases.

## COMPENSATION RECEIVED BY LATHAM FROM THE DEBTORS

21.    During the 90-day period to the Petition Date, Latham received payments and advances (such advances, "**Fee Advances**") in the aggregate amount of $1.85 million for services to be performed and expenses to be incurred, including in preparation for the commencement of the Chapter 11 Cases.  After the Petition Date, Latham completed a reconciliation of the prepetition fees and expenses actually incurred against the funds received by Latham prior to the Petition Date. Latham's fees for prepetition services rendered and expenses incurred exhausted any available Fee Advance credit balance such that the balance of the Fee Advance is $0 and no further amounts are due and owing.[5]  Accordingly, Latham is not a creditor of the Debtors.

| Transaction | Invoice Date | Payment Date | Amount Invoiced | Payment Type | Amount Paid | Fee Advance Balance |
|---|---|---|---|---|---|---|
| Invoice | 5/29/2025 | | $250,000.00 | Fee Advance | | $0.00 |
| Advance Payment | | 6/6/2025 | | Fee Advance | $250,000.00 | $250,000.00 |
| Invoice | 6/10/2025 | | $400,000.00 | Fee Advance | | $250,000.00 |
| Advance Payment | | 6/12/2025 | | Fee Advance | $400,000.00 | $650,000.00 |
| Invoice | 6/16/2025 | | $600,000.00 | Fee Advance | | $650,000.00 |
| Invoice | 6/17/2025 | 6/17/2025 | $338,460.72 | Fee Advance Application | $338,460.72 | $311,539.28 |
| Advance Payment | | 6/18/2025 | | Fee Advance | $600,000.00 | $911,539.28 |

---

[5]    Latham provided a credit accommodation for certain prepetition services provided to the Debtors.

| Invoice | 6/18/2025 | 6/18/2025 | $899,405.00 | Fee Advance Application | $899,405.00 | $12,134.28 |
| Invoice | 6/19/2025 | | $600,000.00 | Fee Advance | | $12,134.28 |
| Advance Payment | | 6/20/2025 | | Fee Advance | $600,000.00 | $612,134.28 |
| Invoice | 7/9/2025 | 7/9/2025 | $612,134.28 | Fee Advance Application | $612,134.28 | $0.00 |

## **DISINTERESTEDNESS**

22.     In preparing this Declaration, I used a set of procedures developed by Latham to ensure compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules regarding the retention of professionals by a debtor under the Bankruptcy Code (the "**Firm Disclosure Procedures**").  Pursuant to the Firm Disclosure Procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this Declaration and to ascertain Latham's connection to such parties:

a.     The following comprehensive list (the "**Retention Checklist**") of the types of entities that may have contacts with the Debtors was developed through discussions with the Latham attorneys who have provided services to the Debtors and in consultation with the advisors to and senior management of the Debtors:

(i)     Debtors, Subsidiaries and Affiliated Entities
(ii)    Current & Former Directors and Officers
(iii)   Direct and Indirect Equity Holders
(iv)    Term Loan Lender
(v)     Noteholders
(vi)    Litigants
(vii)   Professionals
(viii)  Agents
(ix)    Tax Authorities
(x)     Insurers
(xi)    Landlords
(xii)   Ordinary Course Professionals
(xiii)  Banks
(xiv)   Benefits Providers and Administrators

10

(xv)     Parties Subject to UCC Lien Searches
(xvi)    Top 30 Unsecured Creditors
(xvii)   Letters of Credit Beneficiaries and Guarantors
(xviii)  United States Bankruptcy Judges in the District of Delaware
(xix)    Office of the United States Trustee for the District of Delaware
(xx)     Other Parties

b.      Latham obtained information responsive to the Retention Checklist through several inquiries of the Debtors' senior management and advisors and review of documents provided by the Debtors to Latham.  Latham then used that information, together with other information identified by Latham, to compile a list of the names of entities that may be parties in interest in the Chapter 11 Cases (the "**Potential Parties in Interest**"), as set forth on Appendix 1 hereto.[6]   The information listed on Appendix 1 may have changed without my knowledge and may change during the pendency of the Chapter 11 Cases.  Latham will update this Declaration, as described below, when Latham becomes aware of new material information.

c.      Latham maintains a master client database as part of its conflict clearance and billing records. The master client database includes the names of the entities for which any attorney time charges have been billed since the database was first created (the "**Client Database**"). The Client Database includes the names of all current and former clients, the names of the parties who are or were related or adverse to such current and former clients, and the names of the Latham personnel who are or were responsible for current or former matters for such clients.  Latham policy is that no new matter may be accepted or opened within Latham without completing and submitting to those charged with maintaining the conflict clearance system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the name of the matter, adverse parties, and, in some cases, parties related to the client or to an adverse party. Accordingly, the database is updated for every new matter undertaken by Latham. The accuracy of the system is a function of the completeness and accuracy of the information submitted by the attorney opening a new matter.

d.      Latham compared the names of each of the Potential Parties in Interest to client matters in the Client Database for which professional time was recorded during the three years prior to the Petition Date and compiled a list of any matches generated by the comparison (the "**Client Match List**"). The Client Match List is set forth on Appendix 2 hereto.[7]

---

[6]   The entities included on the list of Potential Parties in Interest (and the categories contained therein) were provided by the Debtors to Latham for purposes of a conflict check only and should not be relied upon by any party as a list of creditors or for any other purpose.

[7]   As referenced in Appendix 2, the term "Current Client" refers to an entity listed as a client in Latham's Client Database for whom time has been recorded in the past 12 months and Latham has at least one open matter.  The

  e.  Using information in the Client Database concerning entities on the Client Match List and making general and, if applicable, specific inquiries of Latham personnel, Latham verified that it does not represent and has not represented any entity on the Client Match List in connection with the Debtors or the Chapter 11 Cases, except as otherwise disclosed in this Declaration.

  f.  In addition, a general inquiry was sent by email to all Latham attorneys to determine whether any such individuals or any members of their households (i) own or owned any debt or equity securities of the Debtors; (ii) hold or held any claim against or interest adverse to the Debtors; (iii) represent or represented a client in a matter adverse to the Debtors; (iv) are or were officers, directors, or employees of the Debtors; (v) are related to or have any connections to Bankruptcy Judges in the District of Delaware; or (vi) are related to or have any connections to anyone working in the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**").

  23.  Latham compiled responses to the foregoing inquiries for the purpose of preparing this Declaration. Responses to the inquiry described in subparagraph (f) above indicate that, as of the Petition Date and except as described below, no Latham attorneys or members of their household: (a) own or owned any debt or equity securities of the Debtors;[8] (b) hold or held any claim against or interest adverse to the Debtors; (c) represent or represented a client in a matter adverse to the Debtors; (d) are or were officers, directors, or employees of the Debtors; (e) are related to or have any connections to Bankruptcy Judges in the District of Delaware; or (f) are related to or have any connections to anyone working in the Office of the U.S. Trustee.

  24.  Of the entities listed on <u>Appendix 2</u>, only Apollo Global Management, Inc. ("**AGMI**") represented more than 1% of Latham's total client billings for the twelve-month period ending June 30, 2025 (on a consolidated basis, with other AGMI-related entities).[9] AGMI (on a

---

 term "Former Client" refers to an entity listed as a client in Latham's Client Database for whom time has been recorded in the past three years. Latham does not disclose connections if time was recorded more than three years before the Petition Date.

[8] Certain Latham attorneys or members of the households of Latham attorneys may unknowingly hold interests in the Debtors in blind, discretionary accounts, exchange-traded funds, or mutual funds.

[9] According to Latham's records as of July 4, 2025. Latham will provide the exact percentage of total client billings that this entity represents to the U.S. Trustee on a confidential basis upon request.

consolidated basis), however, does not represent more than 2.0% of Latham's total client billings for such twelve-month period.

25.     Latham will not represent the Debtors in an adversary proceeding commenced against any client of Latham unless Latham has an applicable waiver on file or first receives a waiver from such entity allowing Latham to commence such an action.  To the extent that a waiver does not exist or is not obtained from such entity and it is necessary for the Debtors to commence an adversary proceeding against that entity, the Debtors will employ RLF or retain separate conflicts counsel to represent them in that particular matter.  In addition, Latham will not represent any client on any matter adverse to the Debtors or their estates while retained as the Debtors' counsel in the Chapter 11 Cases.

26.     Latham will periodically review its files during the pendency of the Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any relevant facts or relationships are discovered or arise, Latham will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration as required by Bankruptcy Rule 2014(a).  In that regard, Latham intends to disclose clients in the capacity that they first appear in a conflicts search.  For example, if a client has already been disclosed in this Declaration in one capacity (*e.g.*, a bank), and the client appears in a subsequent conflicts search in a different capacity (*e.g.*, a bondholder), then Latham does not intend to disclose the same client again in supplemental declarations, unless the circumstances are such in the latter capacity that additional disclosure is required.

27.     Except as set forth herein, and based upon the information available to me, neither I, nor Latham, nor any partner or associate thereof, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates.  Based on the foregoing and to

the best of my knowledge, I believe that: (a) Latham is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code; and (b) Latham has no connection to the Debtors, their creditors, or their related parties except as may be disclosed in this Declaration (as supplemented from time-to-time).   The proposed engagement of Latham is not prohibited by or improper under Bankruptcy Rule 5002(a).

## SPECIFIC DISCLOSURES

28.     As specifically set forth below and in <u>Appendix 2</u>, Latham represents or has represented certain of the Debtors' lenders, equity security holders, professionals, or other Potential Parties in Interest in matters unrelated to the Debtors and the Chapter 11 Cases.  Except as set forth below, none of the representations or relationships described herein is adverse to the interests of the Debtors or their estates.  Moreover, pursuant to section 327(c) of the Bankruptcy Code, Latham is not disqualified from acting as the Debtors' counsel merely because it represents or has represented the Debtors' creditors, equity security holders, professionals, or other Potential Parties in Interest in matters unrelated to the Debtors or the Chapter 11 Cases.  I do not believe that Latham's current and prior representations described herein preclude Latham from being a disinterested party under the Bankruptcy Code.

### Former Representations Adverse to the Debtors

29.     Latham provided corporate transactional advice (primarily related to antitrust advice) to CareerBuilder, LLC in connection with its 2004 merger with Monster Worldwide LLC and related Debtors (the "**2024 Merger**").  Latham's representation in these matters was wholly unrelated to the Chapter 11 Cases and concluded in September 2024 when the merger was completed.

30.     Latham represented Talent Inc. in connection with a potential acquisition of certain assets from Monster Worldwide LLC and related Debtors.  Latham's representation in these

matters was wholly unrelated to the Chapter 11 Cases and concluded in approximately April 2024. Such representation did not result in any transaction. Latham continues to represent Talent Inc. in matters unrelated to the Debtors.

31.     Latham represented Accurate Background LLC in connection with its acquisition of the Debtors' former CareerBuilder Employment Screening business. Latham's representation in these matters was wholly unrelated to the Chapter 11 Cases and concluded in March 2020, when the transaction closed. Latham continues to represent Accurate Background LLC in matters unrelated to the Debtors.

32.     Latham represented Cayla Ventures, Inc. in connection with a potential acquisition of certain assets from Monster Worldwide LLC and related Debtors. Latham's representation in these matters was wholly unrelated to the Chapter 11 Cases and concluded in approximately 2017. To the best of my knowledge, such representation did not result in any transaction, and Latham does not currently represent Cayla Ventures, Inc. in any matters.

33.     Latham represented Recruit Holdings, Inc. and its subsidiary Indeed, Inc. in connection with a potential acquisition of CareerBuilder, LLC and related Debtors. Latham's representation in these matters was wholly unrelated to the Chapter 11 Cases and concluded prepetition in approximately 2021. Such representation did not result in any transaction. Latham continues to represent Recruit Holdings, Inc. and Indeed, Inc. in matters unrelated to the Debtors.

34.     Latham represented Platinum Equity in connection with a potential acquisition of CareerBuilder, LLC and related Debtors. Latham's representation in these matters was wholly unrelated to the Chapter 11 Cases and concluded in approximately 2017. Such representation did not result in any transaction. Latham continues to represent Platinum Equity in matters unrelated to the Debtors.

35.     Other than the matters described above, Latham has not represented any party in connection with any matter adverse to the Debtors or related to the Chapter 11 Cases, and Latham will not represent any party in any such matter while retained as the Debtors' restructuring counsel. For the avoidance of doubt, Latham does not currently represent any party in any matter adverse to the Debtors.  I do not believe that Latham's past or current representations, including those specifically addressed above, preclude Latham from being a disinterested party under the Bankruptcy Code.

## Relationships with Significant Lenders

36.     Latham currently represents or formerly represented certain of the Debtors' term loan lenders and/or certain of their affiliates.  Specifically, Latham currently represents, or in the past has represented, ArrowMark; Cerberus; Constitution Capital; Crescent Capital; Ellington; Morgan Stanley; Nassau; Saratoga Partners; Wilmington Trust, National Association; and/or certain of their affiliates (collectively, the "**Lenders**") in a number of different matters unrelated to the Debtors or the Chapter 11 Cases.  The Lenders are prepetition lenders to the Debtors or an agent under the Debtors' prepetition credit facilities.  Latham has not represented and will not represent the Lenders in connection with any matter in the Chapter 11 Cases.

37.     I do not believe that Latham's past or current representation of the Lenders in matters unrelated to the Debtors or the Chapter 11 Cases precludes Latham from being a disinterested party under the Bankruptcy Code.  In the event that the Debtors and any of the Lenders become directly adverse to one another in an adversary proceeding in the Chapter 11 Cases, the Debtors will employ conflicts counsel to handle the matter as necessary.

## Relationships with Significant Prepetition Direct or Indirect Equity Holders

38.     Latham currently represents or formerly represented certain of the Debtors' significant direct or indirect prepetition equity holders and/or certain of their affiliates.

16

Specifically, Latham currently represents, or in the past has represented, the following direct or indirect equity holders of the Debtors' fifty-one percent equity holder Camaro Holdings, LLC: AGMI; Apollo Special Situations Fund, L.P.; Ontario Teacher's Pension Plan; and/or certain of their affiliates (collectively, the "**Equity Holders**") in a number of different matters unrelated to the Debtors and the Chapter 11 Cases.  Latham was introduced to the Debtors by AGMI, which ultimately resulted in Latham providing corporate advice to CareerBuilder, LLC (an AGMI portfolio company) in the 2024 Merger and Latham's representation of the Debtors in connection with these Chapter 11 Cases.  Latham has not represented and will not represent the Equity Holders in connection with any matter related to the Chapter 11 Cases.

39.     I do not believe that Latham's past or current representation of the Equity Holders in the foregoing matters precludes Latham from being a disinterested party under the Bankruptcy Code.  In the event that the Debtors and any of the Equity Holders become directly adverse to one another in an adversary proceeding in the Chapter 11 Cases, the Debtors will employ conflicts counsel to handle the matter as necessary.

### Connections to Officers and Directors

40.     Anna Phillips, Daniel Silvers, and Kenneth Shea, who currently serve as independent board members of Zen JV, LLC, serve, have served, or may in the future serve from time to time, in various management, consulting, trustee, and/or director capacities of other active or inactive Latham clients in matters wholly unrelated to the Chapter 11 Cases.  In addition, as previously discussed, Latham represents AGMI (and certain of its portfolio companies) in matters unrelated to these Chapter 11 Cases, and AGMI-related personnel may serve, have served, or may in the future serve in various management, consulting, trustee, and/or director capacities of such portfolio companies.   I do not believe Latham's current or prior representations of clients for

which the Debtors' board members serve or served in management and/or director capacities precludes Latham from meeting the disinterestedness standard under the Bankruptcy Code.

## Relationships with Significant Creditors

41.     Latham currently represents or formerly represented certain of the Debtors' significant prepetition creditors or/or certain of their affiliates.  Specifically, Latham currently represents or in the past has represented Amplitude Inc; Appian Corporation; Microsoft Online Inc; Okta Inc; Oracle America Inc; Rackspace US Inc; and, Salesforce.com Inc in a number of different matters unrelated to the Debtors or the Chapter 11 Cases.  I do not believe that Latham's past or current representations described in this paragraph preclude Latham from being a disinterested party under the Bankruptcy Code.  In the event that the Debtors and any such creditor become directly adverse to one another in an adversary proceeding in the Chapter 11 Cases, the Debtors will employ conflicts counsel to handle the matter as necessary.

## Relationships with Buyers

42.     Latham currently represents or formerly represented Valsoft Corporation Inc. (one of the Debtors' stalking horse bidders) and other potential entities that have submitted to the Debtors or their advisors indications of interest or bids, or otherwise participated in the Debtors' marketing and sale processes of the Debtors' assets, in a number of different matters unrelated to the Chapter 11 Cases.  Because of the confidential nature of such participation, the applicable entities are not identified on the Disclosure Schedule.  Except as disclosed herein, such matters were not adverse to the Debtors.  Latham does not currently represent any such entities in any matters related to the Debtors, their affiliates, these chapter 11 cases, or a sale of any of the Debtors' assets.  Upon request of the Court or the U.S. Trustee, Latham will provide to such parties the names of such entities and disclose the nature of Latham's connection therewith, in the same

RLF1 33353099v.1

manner and form as the identifications and disclosures contained in the Disclosure Schedule, on a confidential basis.  I do not believe that Latham's past or current representations described in this paragraph preclude Latham from being a disinterested party under the Bankruptcy Code.  Latham does not and will not represent any of these parties in connection with the Chapter 11 Cases.

### Other Connections to Potential Parties in Interest

43.     Certain insurance companies pay the legal bills of Latham clients.  Some of these insurance companies may be involved in the Chapter 11 Cases.  None of these insurance companies, however, is a Latham client as a result of the fact that it pays legal fees on behalf of a client of Latham.

44.     Certain of the parties in interest in the Chapter 11 Cases may be, or previously may have been, members of ad hoc or official creditors' committees represented by Latham in matters unrelated to the Chapter 11 Cases.  In such instances, Latham represented only the committee or group, and did not represent the creditors in their individual capacities, and no attorney client relationship exists or existed between Latham and such parties in interest unless specifically noted.  Latham does not and will not represent any of these parties in connection with the Chapter 11 Cases.

45.     Latham may have represented, and may currently represent, entities that hold or may in the future hold certain of the Debtors' debt in beneficial accounts on behalf of unidentified parties.  Because distressed debt is actively traded in commercial markets, Latham may be unaware of the actual holder of such debt at any given moment.  Latham also represents numerous entities in unrelated matters that may buy and/or sell distressed debt, claims, or equity interests of chapter 11 debtors.  Moreover, from time to time, Latham is engaged by various entities that buy and/or sell distressed debt to analyze the capital structure of a distressed company based on a

19

review of publicly available information. Latham does not undertake such reviews after it has been engaged to represent any such company, including the Debtors, and does not view any public debt review as an adverse representation to the Debtors. Similarly, as a large, international firm, Latham may represent creditors and/or investors of or parties interested in investing in one or more parties in interest in these cases. Latham does not believe these relationships represent interests adverse to the estate.

46.     Certain of the Debtors and their non-debtor affiliates or other entities associated with the Debtors may be creditors of entities that Latham currently represents or has represented in bankruptcy proceedings or post-effective date claims processes. Similarly, certain parties in interest in the Chapter 11 Cases may be current or former Latham restructuring clients. Latham will not represent the Debtors, the Debtors' non-debtor affiliates, or other entities associated with the Debtors in any matter related to other Latham clients' bankruptcy proceedings. Nor will Latham represent any of its other restructuring clients against the Debtors in any of its other clients' restructuring matters. Latham's other chapter 11 representations are unrelated to the Chapter 11 Cases and the Debtors. I do not believe these representations preclude Latham from meeting the disinterestedness standard under the Bankruptcy Code.

## Relationships with Other Professionals

47.     From time to time, Latham has referred work to other professionals to be retained in the Chapter 11 Cases, and certain such professionals have referred work to Latham. Also, as part of its practice, Latham appears in cases, proceedings, and transactions involving many different attorneys, accountants, financial consultants, and investment bankers, some of whom now or may in the future represent claimants and other parties in interest in these cases. Latham has not represented, and will not represent, any such parties in relation to the Debtors or their Chapter

11 Cases.  Latham does not have any relationship with any such attorneys, accountants, financial consultants, or investment bankers that would be adverse to the Debtors or their estates.

48.     Latham currently represents or formerly represented certain of the Debtors' other professionals in a number of different matters unrelated to the Debtors and the Chapter 11 Cases. I do not believe that Latham's past or current representation of these other professionals in matters unrelated to the Debtors or the Chapter 11 Cases preclude Latham from being a disinterested party under the Bankruptcy Code.  In the event that the Debtors and any of the applicable professionals become directly adverse to one another in an adversary proceeding in the Chapter 11 Cases, the Debtors will employ conflicts counsel to handle the matter as necessary.

### Latham Connections with the Office of the United States Trustee for Delaware and Judges for the United States Bankruptcy Court for the District of Delaware (and Key Staff Members)

49.     Certain Latham attorneys and/or personnel (or members of their immediate families):  (a) previously worked at other law firms, in government services, or for other employers; (b) have participated and may participate in legal activities; (c) had and have affiliations through law school, conferences, bar, employment, or other organizations; and/or (d) may have social interactions or friendships, in each case, involving (x) Judges and/or key staff members of the United States Bankruptcy Court for the District of Delaware or (y) attorneys or key staff members of the Office of the United States Trustee for the District of Delaware.  As part of its standard hiring practices, from time to time, Latham conducts interviews and may make offers of employment to staff members of the United States Bankruptcy Court for the District of Delaware, including law clerks.

50.     I do not believe that the foregoing connections preclude Latham from meeting the disinterestedness standard under the Bankruptcy Code.

### Latham Attorney Investments

51.     From time to time, Latham partners, counsel, associates, and employees, or members of the households of the foregoing, personally invest in mutual funds, exchange-traded funds, retirement funds, private equity funds, venture capital funds, hedge funds, fund of funds, and other types of investment funds (the "**Investment Funds**"), through which such individuals indirectly acquire an interest in debt or equity securities of many companies, one of which may be one of the Debtors, their creditors, or other parties in interest in the Chapter 11 Cases, often without Latham's knowledge.  Each such person generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security.  The Investment Funds are generally operated as a blind pool, meaning that when such persons make an investment in an Investment Fund, he, she, or they do not know what securities the blind pool Investment Fund will purchase or sell and have no control over such purchases or sales.

52.     From time to time one or more Latham partners voluntarily choose to form an entity (a "**Passive-Intermediary Entity**") to invest in one or more Investment Funds or, in certain instances, directly in private companies.  Such Passive-Intermediary Entity is comprised only of persons who were Latham partners or retired partners at the time of the Passive-Intermediary Entity's formation (although some may later become former Latham partners), and participation in such a Passive-Intermediary Entity is wholly voluntary and only a portion of Latham's partners choose to participate.  Latham itself does not invest in the Passive-Intermediary Entity.  The Passive-Intermediary Entity generally owns substantially less than one percent of any underlying Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security.  Each

22

Investment Fund in which a Passive-Intermediary Entity invests is operated as a blind pool, so that the Passive-Intermediary Entity does not know what securities the blind pool Investment Funds will purchase or sell, and has no control over such purchases or sales. The Passive-Intermediary Entities commonly receive periodic statements and communications from the underlying Investment Funds. The Latham partners participating in the Passive Intermediary may or may not know the identity of the Investment Fund's underlying investments or the identity of the securities purchased, sold, or held by the Investment Fund.

53.     Certain of the Passive-Intermediary Entities may make a direct investment into a private company. It is my understanding that no Passive-Intermediary Entity has made any direct investment into the Debtors or otherwise purchased any debt or equity security of the Debtors. In addition, as discussed above, the Firm Disclosure Procedures involve sending a general inquiry to all Latham attorneys to determine whether any such individuals or any members of their households own or owned any debt or equity securities of the Debtors or hold or held any claim against or interest adverse to the Debtors, among other things. Thus far, no response to this general inquiry has disclosed the ownership of any debt or equity securities of the Debtors or the holding of any claim against or interest adverse to the Debtors.

54.     From time to time, Latham partners, counsel, associates, and employees personally directly acquire a debt or equity security of a company, which may be (or become) one of the Debtors, their creditors, or other parties in interest in the Chapter 11 Cases. Latham has a long-standing policy prohibiting attorneys and employees from using material non-public information that may come to their attention in the course of their work, so that all Latham attorneys and employees are barred from trading in securities with respect to which they possess material non-public information.

## OTHER INVESTIGATION AND DISCLOSURE MATTERS

55.    Latham's investigation and research of the Potential Parties in Interest has thus far failed to eliminate the possibility that Potential Parties in Interest other than those listed on **Appendix 2** hereto may be current or former clients of Latham because: (a) the names of the Potential Parties in Interest are similar to, but not identical to, current or former Latham clients; or (b) the names of the Potential Parties in Interest are common names that appeared on our conflict search results, but do not appear to be the same individuals or entities that are parties in interest herein.

56.    Although Latham has undertaken, and continues to undertake, extensive efforts to identify connections with the Debtors and other Potential Parties in Interest, it is possible that connections with some Potential Parties in Interest have not yet been identified.  Should Latham, through its continuing efforts, learn of any new connections of the nature discussed herein, Latham will so advise the Court in a timely manner as soon as reasonably practicable.

57.    Latham will not, while employed by the Debtors, represent any other entity having an adverse interest to the Debtors with respect to matters upon which the Debtors seek to retain Latham during the pendency of the Chapter 11 Cases.

58.    Insofar as I have been able to ascertain, I know of no conflict of interest that would preclude Latham's representation of the Debtors in the Chapter 11 Cases.

59.    The foregoing constitutes the statement of Latham pursuant to sections 327(a), 329, and 504 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016(b).

*[Signature page follows]*

Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information and belief, and after reasonable inquiry, I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 24, 2025
New York, New York

/s/ Ray C. Schrock
Ray C. Schrock

## Exhibit 1

**Engagement Letter**

Ray C. Schrock
Direct Dial: +1.212.906.1285
Ray.Schrock@lw.com

1271 Avenue of the Americas
New York, New York  10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

**LATHAM & WATKINS** LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

May 22, 2025

Zen JV, LLC
200 N. LaSalle St., Suite 900
Chicago, IL 60601
Attn: Jeffrey Furman

   Re:  Engagement Letter

Dear Mr. Furman:

   We are pleased to welcome Zen JV, LLC (together with its direct and indirect subsidiaries, "Zen JV" or "Client") as a client of Latham & Watkins LLP (hereinafter referred to as "Latham" or the "Firm").  This letter will confirm our discussions regarding your engagement of our firm.

## I.  <u>LEGAL SERVICES.</u>

   You have asked us to represent you in connection with exploring, developing and implementing strategic restructuring related alternatives, including out-of-court transactions and/or in-court proceedings, to address Zen JV's indebtedness and other liabilities (collectively, the "Restructuring Services").

   If we agree to provide additional services beyond those described above, our work will be governed by this letter unless superseded by another written agreement.  Our representation is limited to the specific services that we agree to undertake.

## II.  <u>IDENTITY OF THE CLIENT.</u>

   Our client(s) in these matters will be solely Zen JV and, upon conflicts clearance should you request we represent them, any of its parent, subsidiary or affiliate entities or constituents identified to us in conjunction with these matters, or any such entity directly or indirectly controlled by Zen JV as a result of these matters (the "Zen JV Clients"). In addition to Zen JV, LLC the Zen JV Clients identified to us to date are identified on <u>Exhibit A</u> of this engagement letter.

   We do not represent and will not be deemed to have an attorney-client relationship with, nor owe professional duties to, any other of Zen JV Clients' current or future parents, subsidiaries, shareholders, members, joint venture partners, employees, directors, management venturers or other affiliates or constituents solely on account of our representation of the Zen JV Clients under this engagement letter. This means that we may act adverse to such entities to the same extent as would be permissible if we were not engaged to represent the Zen JV Clients.  We are distinguishing between the entities and persons who are and are not our clients so that it is clearly

LATHAM&WATKINS LLP

understood to whom our various duties as attorneys are owed. If we subsequently agree to represent any additional clients after performing a conflicts check, the terms in this engagement letter (including, but not limited to terms governing conflicts of interest and arbitration of disputes) will apply to that representation unless we enter into a separate written agreement with such additional clients.

Because of the extraterritorial reach of Anti-Money Laundering laws in certain jurisdictions where Latham practices, we may need to collect identity-verification documentation. We will seek to collect any required documentation from publicly-available sources, but may request documentation directly from you.

We provide information to clients and others about our experience in particular areas. In this context it is helpful to be able to identify particular clients and matters. Of course, we would not publicize your matters in a manner that could harm your interests, and even where a matter is publicly known, we would not publicize it if you ask us not to do so. We agree to seek your prior written consent to our using in our marketing materials (such as pitches, website biographies, representative client lists, league tables, etc.) your name and logo in describing publicly known and non-sensitive matters we have handled for you, *provided*, *however*, that such consent will be deemed given to the extent no response is received upon at least five business days' notice and the content is limited to noting that we represented you in connection with the company's strategic restructuring efforts. In the event of a public in-court restructuring process the notice requirement in the preceding sentence will be deemed satisfied and consent for use in the marketing materials as described above shall be considered obtained.

## III.   ROLES OF ATTORNEY AND CLIENT.

Our responsibilities under this agreement are to provide legal services, and to provide statements to you that clearly state the basis for our fees and charges.

We will not disclose any confidential information of yours to any other client, even where that information might have some bearing on their interests. Likewise, we will not disclose the confidences of any other client to you, even where that information might have some bearing on your interests, and you agree that we are under no obligation to do so.

You agree to keep us informed of developments related to this representation and to pay our statements in a timely manner.

Latham will also check for conflicts of interest on an ongoing basis to ensure we are meeting our ethical obligations. The existence of a conflict depends on the parties involved in a specific matter, and therefore our engagement is contingent upon a formal clearing of conflicts after all interested parties are identified to us. Latham is able to search for conflicts via the firm's conflicts database each time a new party becomes involved, or a new matter begins. To allow us to conduct a conflicts check, you represent that you have identified or will identify to us all persons and entities that are or may become involved in the matters we handle for you, whether affiliated with you or not.  We are relying on you to provide us with the names that are potentially relevant

**LATHAM&WATKINS** LLP

to this matter and any future matter in which we are engaged. We cannot identify conflicts in relation to individuals or entities whose names we have not searched.

During the course of this engagement, we may express opinions or beliefs to you about the effectiveness of various courses of action or about the results that might be anticipated. Such statements are expressions of opinion only, and should not be construed as promises or guarantees.

Please also be aware that Latham has internal ethics and professional responsibility counsel, who advise Latham attorneys regarding their ethical, professional and legal duties. From time to time, the attorneys working on your matter may consult these lawyers at no cost to you. You acknowledge that any such consultation is protected by Latham's own attorney-client privilege, not subject to discovery, and is property of the firm and is not part of the Client File as defined in Section IV of this letter.

Certain laws (for example, those relating to money laundering and tax fraud) give power to authorities such as the police or tax authorities to inspect client information and take copies of documents. In addition, in specific circumstances, these laws compel us to report information to the authorities even in the absence of a request. It is possible that, at any time, we may be requested by these authorities to provide them with access to documents held by our firm, or to attend interviews with them in connection with the work we have done for you. In the unlikely event that such a situation arises, we shall comply with the request only to the extent that we believe we are bound by law to do so and, insofar as it is practicable, shall notify you of the request or the sharing of information. As part of our service to you, we will do our best to protect your interests in those circumstances. We reserve the right to disclose any information to our professional indemnity insurers, advisers or bankers in connection with the operation of our client account.

## IV.   CLIENT FILES AND RETENTION.

In the course of your representation, we shall maintain a file in which we may store correspondence, agreements, governmental filings, prospectuses, disclosures, pleadings, deposition transcripts, exhibits, physical evidence, expert reports, and other items reasonably necessary to your representation ("Client File"), which shall be and remain your property. Our internal communications, preliminary drafts, notes, and mental impressions ("Latham Materials") shall be and remain our property and shall not be considered part of your Client File. Upon completion of a specific project, your original Client File for that project shall be available to you. We will be entitled to make copies if we choose, and such copies shall be and remain our property. You also agree at the conclusion of the project (whether or not you take possession of the Client File) to take possession of any and all original contracts, wills, stock certificates, and other such important documents that may be in the Client File and we shall have no further responsibility with regard to such documents.

If you do not take possession of the Client File at the conclusion of the project, we will store such file for you for at least seven years. If you do not take possession of the Client File by the conclusion of the seven-year period, you relinquish ownership of it and agree that it shall become our sole property and we may dispose of it. In addition, in the event we are holding files of yours for other matters, you agree that after a seven-year period they shall become our sole

LATHAM&WATKINS LLP

property and we may dispose of them. You agree that we may enact and implement reasonable retention policies for Latham Materials and that we also have discretion to destroy such materials.

We will retain copyright and knowhow in all documents we draft during the course of our work for you, but we grant you a royalty free license to use the documents for your purposes.

## V.    CONFLICTS OF INTEREST.

You will have our complete loyalty with respect to any matter in which you engage our firm.  While we are representing you in a matter, including the matter that is described in this letter, we will have no other role in that matter for another party without your consent.

As you are aware, we currently represent Apollo Global Management Inc., Apollo Global Management, Inc. ("AGM"), Apollo Asset Management, Inc. ("AAM") and AAM's subsidiaries (together with AGM, "Apollo Management"), and each investment fund managed by Apollo Management (collectively, "Apollo Funds", and together with Apollo Management, "Apollo"), certain of which holds an interest in Zen JV, in matters unrelated to its interests in Zen JV, and unrelated to the Restructuring Services (the "Apollo Matters"). As we discussed, there is a possibility that actual or potential adversity of interests could arise between Zen JV and Apollo. By entering into this engagement, you agree that (i) we may represent Apollo and any of its affiliates on any existing and future matters (including matters adverse to Zen JV), whether or not substantially related to matters for which we represent Zen JV, (ii) you consent to, and waive any conflict or other objection with respect to, our representation of Apollo and any of its affiliates in connection with any and all matters in which we currently represent, or in the future may represent, Apollo or any of its affiliates and (iii) we may, in our sole discretion and at any time up notice to you, terminate our representation of Zen JV and continue our representation of Apollo or any of its affiliates in connection with any matter (including any dispute and/or litigation between Apollo or any of its affiliates and Zen JV).

Prospective Waiver of Conflicts for Unrelated Matters

Latham is an international law firm with numerous attorneys and offices in many countries, serving clients in many different areas of law and industries, who may now or in the future operate in the same lines of business as you. It is possible that during the time we are representing you, some of our current or future clients may ask us to represent them in matters in which you are involved as another party. Both our own prudent business conduct, and the interests of our other clients, call for us to seek to retain the ability to accept matters for all of our clients.  We would rely on this prospective waiver only for matters where we are confident that we have not obtained any confidential information that would give our other client an advantage in the adverse matter.

By entering into this agreement, you consent in advance to our acceptance of matters adverse to any Zen JV Client (whether such matters are currently pending or arise in the future), provided the matters are not substantially related to any matters we are handling or have handled for you, including the following types of matters:

**LATHAM & WATKINS** LLP

- Litigation, arbitration, mediation, or any other form of dispute resolution or other controversy matters;

- Transactional matters; and

- Any bankruptcy, regulatory, administrative, legislative or rulemaking proceeding.

By entering into this agreement, you consent in advance to such adverse representations. Thus, for example, you agree that we would be able to take on a new representation of a current or future client in a lawsuit in which any Zen JV Client is an adverse party at the same time that we are representing the Zen JV Clients, provided the adverse matter is not substantially related to any matters we are handling or have handled for you. This prospective waiver includes the assertion of any cross-claims or counter-claims adverse to the Zen JV Client. Under the terms of this prospective waiver, we would also be able to represent a current or future client in a transactional matter across the table from any Zen JV Client at the same time that we are representing the Zen JV Clients, provided the adverse matter is not substantially related to any matters we are handling or have handled for you.

When taking on a matter adverse to any Zen JV Client, we agree to establish an ethics wall in accordance with our standard firm procedures, whereby those timekeepers representing the relevant Zen JV Client may not concurrently work on the adverse matter, and those timekeepers working on the adverse matter will be denied access to the relevant Zen JV Client files in our document management system.

<u>Waiver for Trees in M&A & Related Matters</u>

In the event that we represent you in a transactional matter, now or in the future, you agree that, in a matter where you are, or may be, competing with one or more other bidders or financers in an M&A matter or related financing, to allow our firm, with separate teams (commonly referred to as "trees") that do not share information about the related matters (except as may be agreed in respect of any particular subject such as shared regulatory, tax, and antitrust diligence) to represent other competing bidders and financing sources for other bidders. We will not accept an engagement from another client in the situations described above unless we believe that our representation of that other client will not have an adverse effect on the exercise of our independent professional judgment on your behalf in the matters in which we represent you.

<u>Waiver for Unrelated Representation of Counterparties</u>

By entering into this agreement you agree that we may maintain a separate attorney-client relationship, in other matters not substantially related to our work for you, with persons or entities who are adverse to you in matters we handle for you (including adversaries in the matters described in this letter), and we may continue any such attorney-client relationships in which we are currently engaged. Thus, for example, if we represent you in an intellectual property matter adverse to party A, we may represent party A in an unrelated employee benefits matter.

LATHAM&WATKINS LLP

You should feel completely free to consult other counsel concerning the contents of this Section V and we encourage you to do so. By signing this letter, you acknowledge that you have had an opportunity to consult with other counsel if you so desire, and provide your informed consent to the adverse representations described above.

## VI. RATES, FEES AND CHARGES.

Our fees are based primarily on the amount of time spent by our lawyers, paralegals and other professionals on your behalf. Each lawyer, paralegal and other professional assigned to this matter will have individual hourly billing rates, and the applicable rate multiplied by the number of hours spent, measured in tenths of an hour, will be the initial basis for determining our fee.

In general, our attorneys' 2025 billing rates will range from $835 per hour to $2,850 per hour, depending upon the seniority and expertise of the attorney involved. For paralegal and other professional time, our 2025 rates will range from $305 to $1,550 per hour.

In addition to fees, you agree to pay for disbursements and other charges. These will include such items as use of fee-based research databases (90% of the third-party vendor rate or 1.25 times our volume-discounted cost depending on vendor); couriers and air freight (1.10 times our volume-discounted cost); messengers (at third-party vendor rate); client-specific work by staff; staff overtime and meals (as defined by federal or local law); transportation (where dictated by safety reasons, and which may include a transaction fee); word processing; postage, at cost; supplies (for large volume only); and other reasonable costs and expenses. For disbursements over $5,000, we may ask that billings be sent directly to you or that advances be provided.

In the event we are compelled to testify or respond to a subpoena or other legal process in relation to a matter we have handled for you, you agree that we are entitled to be reimbursed for our time in doing so at our then-current rate, and for our expenses reasonably incurred, even if our attorney-client relationship with you is terminated at that time.

When our personnel travel, we generally utilize business class for international flights. Through a third-party travel management company, in-house travel services are provided for our U.S. offices. A ticketing fee of $30 will be charged for fares up to $300, and $75 will be charged for fares over $300. There are no additional charges for changes to reservations or for reimbursement of unused tickets. Our personnel bill for travel time, but if they work on another matter while traveling for you, you will not be billed for that time.

We intend to provide statements to you on a monthly basis. They will show our time logged in tenth-of-an-hour increments and will separate fees from disbursements and other charges. Payment of our statements is due promptly upon receipt. Our rates are based on our receiving payment within thirty (30) days.

We may choose to terminate our relationship with you, subject to any applicable ethics rules, in the event that our fees are not paid in accordance with the terms of this engagement letter or other agreement.

LATHAM&WATKINS LLP

You have agreed to deposit $250,000 with us as an advance toward our fees and charges. We will apply this advance toward our fees and charges as they are billed. Any unused portion after our services are concluded will be returned to you. Generally, we will apply this advance toward our fees and charges as they are billed, but you authorize us to do so at any time to the extent services have been rendered and fees incurred on your behalf. Concurrently, you are to make an additional payment to us to restore the advance to its initial level. Funds designated as an advance payment retainer when paid become property of the firm to be deposited in the firm's operating account rather than in a trust account.

Our billing rates and charges are usually revised annually, but we reserve the right to revise them at other times. Following any such revision, our new rates and charges will be applied to your account, and this letter constitutes written notice to you of our right to make such revisions.

Any funds that you deposit with us as an advance against our fees and charges will be treated as property of the firm. Any unused portion of such advance after our services are concluded will be returned to you.

From time to time, you may request estimates of the fees and charges that we anticipate incurring on your behalf. These estimates are subject to unforeseen circumstances and are by their nature inexact. While we may provide estimates for your general planning purposes, such estimates are subordinate to our regular billing procedures, absent an express written agreement to the contrary.

The fees and charges we bill to you are your responsibility whether or not a court awards attorneys' fees against an opposing party. Courts frequently award attorneys' fees which are, in the court's opinion, reasonable under the applicable statutes, but which are less than the amounts we have reasonably billed to you. In such cases, you must pay us our actual fees and charges even though the court awards less.

The parties to a transaction or a dispute may agree, or a court may order, that another party is to pay some or all of our fees or charges. Such an agreement or order will not affect your own obligation to pay our fees and charges, nor are we to be obligated to enforce such an agreement or order. Any amounts actually received by us from another party on your account will, of course, be credited against the fees and charges incurred by you.

Notwithstanding the foregoing, given Zen JV's status as a portfolio company of Apollo, we will abide by the terms of Apollo's Outside Counsel Manual (as amended from time to time), other than as it relates to the treatment of fees and expenses and the frequency of billing statements. The terms of this engagement letter as it relates to fees and expenses shall govern the Restructuring Services in all respects.

## VII.    DATA PROTECTION & COMMERCIAL COMMUNICATIONS BY EMAIL.

In order to provide legal services and maintain our business relationship, the firm may use personal information about you and other individuals at your organization. Details of how we use

LATHAM&WATKINS LLP

this information are set out in our Client and Third Party Privacy Notice which can be found on our website at www.lw.com/privacy.

To the extent that you share with us information about California residents that comprises "personal information" for purposes of the California Consumer Privacy Act and implementing regulations ("CCPA") in connection with our provision of services covered by this letter, and neither §§ 1798.140(ad)(2)[1] nor §§ 1798.145(c)-(e)[2] of the CCPA apply, we shall be a service provider and only collect, retain, use and disclose such information for the purpose of providing the services covered by this letter, or as otherwise permitted by the CCPA. To the extent this paragraph applies, you will provide notice to such California individuals that you may disclose such information to service providers such as Latham.

We have made a commitment through our Binding Corporate Rules to apply a consistent standard across the firm when collecting, using and managing personal information. If you have any questions about how we use your personal information or wish to exercise your rights, please contact the Global Data Protection Officer at DataPrivacy@lw.com.

We constantly attempt to improve our service, and monitor developments in the law and practice. Periodically we may send information about this, including brochures and press releases and invitations to seminars or talks, if we believe that they may be of interest to you. You agree that we may send information of this kind by email to you and others at your organization with whom we have contact. You can opt out at any time.

## VIII.   ARBITRATION OF DISPUTES.

Any controversy or claim, whether in tort, contract or otherwise, arising out of or relating to the relationship between any Zen JV Client, its affiliates or successors (the "Client Arbitration Parties") and Latham, its affiliated partnerships, attorneys or staff or any of their successors (the "Latham Arbitration Parties") or the services provided or the fees charged by the Latham Arbitration Parties pursuant to this engagement letter or otherwise to the Client Arbitration Parties shall be finally resolved by arbitration in accordance with the International Institute for Conflict Prevention and Resolution Rules for Non-Administered Arbitration ("CPR Rules"). By agreeing to arbitrate, the parties are agreeing to waive their right to a jury trial. This arbitration clause and any arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. The seat of the arbitration shall be New York, New York, but any hearings may be held in, and to the extent state law is applicable the arbitrators shall apply the substantive law of, the state in which the Latham office is located whose attorneys spent the most amount of time on the matter in dispute.

---

[1] i.e., the CCPA's other exceptions to sale, namely: direction by the individual to share, sharing to alert the recipient that the individual has opted out of selling, and sharing as an asset that is part of merger, acquisition, bankruptcy or other business transaction.

[2] i.e., the CCPA's exclusion of any information: collected as part of a clinical trial; bearing on an individual's credit; processed by financial institutions to provide financial services pursuant to the GLBA; or comprising identifiable health information governed by HIPAA.

LATHAM&WATKINS LLP

Any issue concerning the location of the arbitration, the extent to which any dispute is subject to arbitration, or the applicability, interpretation, or enforceability of this agreement shall be resolved by all of the arbitrators.  All aspects of the arbitration shall be treated as confidential, and neither the parties nor the arbitrators may disclose the existence, content or results of the arbitration, except as necessary to comply with insurance, legal or regulatory requirements. Any party that discloses any information about the arbitration under the preceding sentence, or makes any filing in any court related to a dispute covered by this clause, shall take all lawful steps to ensure confidential treatment, including without limitation filing under seal.

The arbitration panel shall be entitled to award any damages provided for under the state law that is controlling.

## IX.    LIMITED LIABILITY PARTNERSHIP.

Latham is a limited liability partnership (LLP).  Similar to the corporate form of business organization, the LLP form generally limits the liability of the individual partners of the firm to the capital they have invested in the firm for claims arising from services performed by the firm. Our form of organization as an LLP will not diminish the ability to recover damages from the firm or from any individuals who directly caused the loss.

Because of legal requirements in those countries, work done out of our firm's offices in England, France, Italy, Hong Kong, Japan, and Singapore will be carried out through affiliated partnerships registered locally. Latham operates in Israel through a limited liability company, in South Korea as a Foreign Legal Consultant Office, and in Saudi Arabia through a limited liability company. These distinctions will not impact on the provision of legal services by our firm, although invoices may be issued to you through an affiliate.

## X.    ENTIRE AGREEMENT AND MISCELLANEOUS.

You and we understand that this letter constitutes the entire agreement pertaining to the engagement of Latham, and that it shall not be modified by any policies, procedures, guidelines or correspondence from you or your representative unless agreed to in writing by Latham, notwithstanding anything we may be required to acknowledge in order to use your electronic billing software now or in the future.

All parties signing this letter represent and warrant that they are fully authorized to enter into this agreement, and in the case of signatories agreeing on behalf of organizations, to bind the organization or organizations to the terms in this letter.

The words "execution," "execute", "signed," "signature," and words of like import in or related to this Engagement Letter and/or any document to be signed in connection with this Engagement Letter and the transactions contemplated hereby shall be deemed to include electronic signatures, the electronic matching of assignment terms and contract formations on electronic platforms approved by Latham, or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature or the use of a paper-based recordkeeping system, as the case may be, to the extent and as provided for in

**LATHAM&WATKINS** LLP

any applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act.

Either party can terminate the attorney-client relationship on this matter by notice to the other party. Otherwise, our relationship with you will be deemed concluded when we have completed our agreed-upon services, except that for the avoidance of doubt, your obligations for fees and charges shall survive. In addition, and without limiting the preceding sentence, in the event we have performed no work on your behalf for six consecutive months, you agree that our attorney-client relationship with you will have been terminated.

## XI.    APPROVAL AND RETURN OF LETTER.

If this letter meets with your approval, please sign and return the enclosed copy. Please also make your advance of $250,000. If we do not receive a signed copy, this Engagement Letter shall be deemed accepted upon your engagement of Latham to perform any services related to the matter described herein or any future matters. By accepting services from Latham, you acknowledge and agree to the terms and conditions set forth in this Engagement Letter.

We look forward to working with you.

Sincerely,

Signed by:

*Ray C. Schrock*

69DF9ADDFEC945F…

Ray C. Schrock

of LATHAM & WATKINS LLP

LATHAM&WATKINS LLP

### Approval of Engagement

Zen JV, on behalf of itself and the Zen JV Clients, agrees to the terms of the enclosed letter, effective as of the date on which Latham & Watkins LLP first provided services to the Zen JV Clients.

By signing this letter, the Zen JV Clients acknowledge that the Zen JV Clients have been afforded the full opportunity to review it and to seek the advice of independent counsel, and either have in fact consulted with such independent counsel or have chosen not to do so.

BY SIGNING THIS LETTER, THE ZEN JV CLIENTS AGREE TO HAVE ANY ISSUE ARISING OUT OF OR RELATING TO THE SERVICES OF THE LATHAM ARBITRATION PARTIES (INCLUDING ANY CLAIM FOR PROFESSIONAL LIABILITY) DECIDED IN ARBITRATION AND THE ZEN JV CLIENTS GIVE UP THEIR RIGHT TO A JURY OR COURT TRIAL AND ACKNOWLEDGE THE ARBITRATION PROVISION IN SECTION VIII ABOVE.

Date:  May 22, 2025.

Zen JV, LLC _____,

a Delaware limited liability company

DocuSigned by:

By: _____
*Jeffrey Furman*
40507B9CC1084CC...

Name: Jeffrey Furman
Title:   Chief Executive Officer
          CareerBuilder + Monster

LATHAM&WATKINS LLP

**Exhibit A**

**Zen JV Clients**

1. CareerBuilder France Holding LLC
2. CareerBuilder Information Technology (Shanghai) Co., Ltd
3. CareerBuilder Government Solutions, LLC
4. Luceo Solutions, LLC
5. CareerBuilder ProfilSoft Dutch Holdings B.V.
6. CareerBuilder UK Holdings Limited
7. CareerBuilder International Holdings B.V.
8. CareerBuilder Brasil Atividades de Internete e Participações LTDA
9. CB Solutions Pty Ltd
10. CareerBuilder Canada Co.
11. CareerBuilder, LLC
12. CareerBuilder RMNA S.R.L.
13. CareerBuilder.com India Private Limited
14. Monster Worldwide International Holding bv
15. Monster Worldwide Limited
16. Monster Worldwide Canada Operations Inc.
17. Monster Worldwide CZ s.r.o
18. Monster Worldwide Germany GmbH
19. Monster Luxembourg SA
20. Monster Worldwide Ireland Ltd
21. Monster Worldwide S.L.
22. Monster Worldwide Switzerland AG
23. Monster Worldwide Austria GmbH
24. Monster Worldwide SAS
25. Monster Belgium nv
26. Monster Worldwide Sweden AB
27. Monster Worldwide Netherlands bv
28. Monster Worldwide Italia Srl
29. Monster Technologies Malaysia Sdn.Bhd.
30. Monster Worldwide Holdings Limited
31. Monster Asia Pacific Ltd.
32. Monster Worldwide, LLC
33. Monster Government Solutions, LLC
34. Military Advantage, LLC
35. Fastweb, LLC

## Appendix 1

## Potential Parties in Interest List[1]

### Agents

Wilmington Trust, National Association

### Banks

Bank of America

### Bankruptcy Professionals

AlixPartners                          PJT Partners LP
Latham & Watkins LLP                  Richards, Layton & Finger, P.A.
Omni Agent Solutions, Inc.

### Benefits

ADP Inc                               Eyemed
Calm.Com Inc                          Guardian
Cigna Group                           Lincoln National Life Ins Co
Concur Technologies, Inc.             Metlife
Delta Dental of California            Schwab Retirement Plan Services
Delta Dental of Il                    Telus Health (Us) Ltd
Empower Trust Company, LLC            United Healthcare Services Inc

### Delaware Court Personnel

Al Lugano                             Judge John T. Dorsey
Amanda Hrycak                         Judge Laurie Selber Silverstein
Annamarie Martino                     Judge Mary F. Walrath
Cacia Batts                           Judge Thomas M. Horan
Chief Judge Karen B. Owens            Laura Haney
Claire Brady                          Laurie Capp
Danielle Gadson                       Lora Johnson
Demitra Yeager                        Marquietta Lopez
Jill Walker                           Nickita Barksdale
Judge Brendan L. Shannon              Nikki Washington
Judge Craig T. Goldblatt              Paula Subda
Judge J. Kate Stickles                Rachel Bello

---

[1] This list (and the categories contained herein) are for purposes of a conflicts check only and should not be relied upon by any party as a list of creditors or for any other purpose. As listing a party once allows our conflicts specialists to run a check on such party, we have attempted to remove duplicate entries where possible. Accordingly, a party that otherwise would fall under multiple categories is likely to be listed under only one category.

| | |
|---|---|
| Stephen Grant | Una O'boyle |
| Todd Kirk | Xavier Hurt |

**Delaware UST's Office**

| | |
|---|---|
| Benjamin Hackman | Joseph Cudia |
| Christine Green | Joseph McMahon |
| Dion Wynn | Lauren Attix |
| Edith A. Serrano | Linda Casey |
| Elizabeth Thomas | Linda Richenderfer |
| Hannah M. McCollum | Malcolm M. Bates |
| Hawa Konde | Michael Girello |
| Holly Dice | Nyanquoi Jones |
| James R. O'Malley | Richard Schepacarter |
| Jane Leamy | Shakima L. Dortch |
| Jonathan Lipshie | Timothy J. Fox, Jr. |
| Jonathan Nyaku | |

**Debtors**

| | |
|---|---|
| Camaro Acquisition LLC | Luceo Solutions, LLC |
| CareerBuilder France Holding, LLC | Military Advantage LLC |
| CareerBuilder Government Solutions, LLC | Monster Government Solutions LLC |
| CareerBuilder, LLC | Monster Worldwide LLC |
| Fastweb, LLC | Zen, JV, LLC |

**Direct and Indirect Equity Holders**

| | |
|---|---|
| 2584172 Ontario Inc. | Camaro Holdings, LLC |
| AP Special Sits Camaro Holdings, LLC | Ontario Teacher's Pension Plan |
| Apollo Global Management, Inc. | Randstad N.V. |
| Apollo Special Situations Fund, L.P. | |

**Directors and Officers**

| | |
|---|---|
| Ahern Dull | Mark Pacioni |
| Anna Phillips | Maxwell David |
| Daniel Silvers | Michael Suhajda |
| Fiona van Lede | Rebecca Henderson |
| Gregory Binder | Sam Gallagher |
| Jarnail Badwal | Sheri Davis |
| Jeff Furman | Stef Leijdekkers |
| Kenneth Shea | |

**Insurers**

ACE American Insurance Company
Allianz Global Risks US Insurance Co.
Allied World National Assurance Company
American International Companies (AIG)
Aon UK Limited
Arch Insurance Company
AXIS Insurance Company
Berkley Insurance Company
Berkley Professional Liability
Chubb National Ins Co
Federal Insurance Company
Hartford Insurance Group

Hiscox Insurance Company Inc.
Illinois National Insurance Co
Lexington Insurance Company
Liberty International Underwriters
Liberty Surplus Insurance Corporation
Lloyd's Syndicate No. 3000
National Union Fire Ins Co of Pittsburgh
Risk Specialists Companies Ins Agcy, Inc.
Twin City Fire Insurance Company
XL Professional
XL Specialty Insurance Co
Zurich American Ins Co

**Litigation**

Jobget, Inc.
Stout Risius Ross, LLC

The New York City Commission on Human
Rights

**LOC Beneficiary**

Dell Financial Services LLC

**LOC Guarantor**

Bank of America

**Non-Debtors**

CareerBuilder Brasil Atividades de Internete
e Participacoes LTDA.
CareerBuilder Canada Co
CareerBuilder com India Private Limited
CareerBuilder Information Technology
(Shanghai) Co., Ltd
CareerBuilder International Holdings B.V.
CareerBuilder ProfilSoft Dutch Holdings
B.V.
CareerBuilder Romania S.R.L.
CareerBuilder UK Holdings Limited
CB Solutions Pty Ltd
Monster Belgium nv
Monster Luxembourg SA
Monster Technologies Malaysia Sdn. Bhd

Monster Worldwide Austria GmbH
Monster Worldwide Canada Operations Inc.
Monster Worldwide CZ s.r.o.
Monster Worldwide Germany GmbH
Monster Worldwide International Holding
bv
Monster Worldwide Ireland Ltd
Monster Worldwide Italia Srl
Monster Worldwide Limited
Monster Worldwide Netherlands bv
Monster Worldwide S.L.
Monster Worldwide SAS
Monster Worldwide Sweden AB
Monster Worldwide Switzerland AG
Monster.com Asia Pacific Ltd.

3

**Other Parties**

Blue Torch Capital                          Paul Hastings
HIG Capital LLC                            Valnet
JMB Capital Partners Lending, LLC          Valsoft
Norton Rose Fulbright US LLP               Young Conaway Stargatt & Taylor, LLP

**RE Lease**

622 Building Company LLC (Cohen Bros)      Onni 200 LaSalle Limited Partnership
Equinix, INC                               TMG 8280 Greensboro LLC
Iron Mountain Data Centers LLC             VEF V Atlanta office Two, LLC

**Seller Note**

Randstad MWW Inc.

**Tax Authorities**

Alabama Department of Revenue              Maryland Department of Revenue
Alaska Department of Revenue               Massachusetts Department of Revenue
Arizona Department of Revenue              Minnesota Department of Revenue
California Franchise Tax Board             Mississippi Department of Revenue
City of Philadelphia Department of Finance Missouri Department of Revenue
Colorado Department of Revenue             Nebraska Department of Revenue
Connecticut Department of Revenue          New Hampshire Department of Revenue
Delaware Division of Revenue               New Jersey Department of Revenue
Department of the Treasury Internal        New York City Department of Finance
Revenue Service Center                     New York Department of Revenue
District of Columbia Department of         North Carolina Department of Revenue
Revenue                                    Oklahoma Department of Revenue
Florida Department of Revenue              Oregon Department of Revenue
Georgia Department of Revenue              Pennsylvania Department of Revenue
Hawaii Department of Revenue               Philadelphia Department of
Idaho Department of Revenue                Revenue
Illinois Department of Revenue             South Carolina Department of Revenue
Indiana Department of Revenue              Tennessee Department of Revenue
Iowa Department of Revenue                 Texas Department of Revenue
Kansas Department of Revenue               Utah Department of Revenue
Kentucky Department of Revenue             Virginia Department of Revenue
Louisiana Department of Revenue            Wisconsin Department of Revenue

**Term Loan Lenders**

Arbour Lane                                ArrowMark

4

Canaras

Cerberus

Constitution Capital

Crescent Capital

Ellington

Fortinbras Enterprise

FourSixThree

InvestCorp

Morgan Stanley

Nassau

OFS

Par Four / Benefit Street

Saratoga Partners

Zais Group

## **Top Unsecured Creditors**

Acoustic LP

Adworks Ltd

Ahead Inc

Aimwel B.V.

Akin Gump Strauss Hauer & Feld

Amplitude Inc

Appcast Inc

Appian Corporation

Brazen Technologies Inc

Camelot Communications Ltd

Daymark Solutions Inc

Equinix Inc

Everlong Media LLC

Getty Images Inc

Google LLC

Ikokas Technologies Private Ltd

Iron Mountain Inc

Jobcase Inc

Jobget Inc

Jobverse Inc.

Joveo Inc

Microsoft Online Inc

Morgan Lewis & Bockius LLP

Nexxt Inc

Okta Inc

Oracle America Inc

Pwc Us Tax LLP

Quality Technology Services

Rackspace Us Inc

Recruitics Inc

Salesforce.Com Inc

Secureit Consulting Group Inc

Skadden Arps Slate Meagher Flom

Talroo Inc

Tanzilli Sociedade De Advogado

Textkernel BV

Vedder Price PC

Velaro Inc

Verinext Corp

Winston & Strawn LLP

## **UCC Lien Search**

Dell Financial Services L,L,C.

Greatamerica Financial Services
Corporation

Randstad MWW Solutions Inc., As
Collateral Agent

Verinext Capital, LLC

Wells Fargo Financial Leasing, Inc.

Wilmington Trust, National Association, As
Collateral Agent

RLF1 33353099v.1

**Appendix 2**

**Client Match List**

**Client Match List**

| Matched Entity | Relationship to Debtors | Relationship to Latham[1] |
|---|---|---|
| Wilmington Trust, N.A. | Agents | Current client. |
| Bank of America | Banks | Current client. |
| AlixPartners | BK Professionals | Current client. |
| Omni Agent Solutions, Inc. | BK Professionals | Current client. |
| PJT Partners LP | BK Professionals | Current client. |
| Apollo Global Management, Inc. | Direct or Indirect Equityholder | Current client. |
| Apollo Special Situations Fund, L.P. | Direct or Indirect Equityholder | Current client. |
| Ontario Teacher's Pension Plan | Direct or Indirect Equityholder | Current client. |
| Bank of America | LOC Guarantor | Current client. |
| Blue Torch Capital | Other Parties | Current client. |
| Valsoft | Other Parties | Current client. |
| Onni 200 LaSalle Limited Partnership | RE Lease | Former client. |
| ArrowMark | Term Loan Lenders | Current client. |
| Cerberus | Term Loan Lenders | Current client. |
| Constitution Capital | Term Loan Lenders | Current client. |
| Crescent Capital | Term Loan Lenders | Current client. |
| Ellington | Term Loan Lenders | Current client. |
| Morgan Stanley | Term Loan Lenders | Current client. |
| Nassau | Term Loan Lenders | Current client. |
| Saratoga Partners | Term Loan Lenders | Former client. |
| Amplitude Inc. | Top Unsecured Creditors | Current client. |
| Appian Corporation | Top Unsecured Creditors | Current client. |
| Microsoft Online Inc. | Top Unsecured Creditors | Current client. |
| Okta Inc. | Top Unsecured Creditors | Current client. |
| Oracle America Inc. | Top Unsecured Creditors | Current client. |
| Rackspace US Inc. | Top Unsecured Creditors | Former client. |
| Salesforce.com Inc. | Top Unsecured Creditors | Current client. |

---

[1] The term "**Current Client**" refers to an entity listed as a client in Latham's Client Database for whom time has been recorded in the past 12 months and Latham has at least one open matter.  The term "**Former Client**" refers to an entity listed as a client in Latham's Client Database for whom time has been recorded in the past three years.  Latham does not disclose connections if time was recorded more than three years before the Petition Date.

2