**EXHIBIT 2**

**Sherrill-Lubinski, LLC & Eti-Net Inc. (Partner One Capital)**
**Proposed Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------- x
                                                         :
In re:                                                   :    Chapter 11
                                                         :
ZEN JV, LLC, *et al.*,[1]                                :    Case No. 25-11195 (JKS)
                                                         :
                    Debtors.                             :    (Jointly Administered)
                                                         :
                                                         :    **Re: Docket Nos. 28, 110, 194**
-------------------------------------------------------- x

**ORDER (I) AUTHORIZING AND APPROVING THE DEBTORS'
ENTRY INTO AN ASSET PURCHASE AGREEMENT WITH
SHERRILL-LUBINSKI, LLC AND ETI-NET INC.,
(II) AUTHORIZING THE SALE OF THE PURCHASED ASSETS FREE AND
CLEAR OF ALL LIENS, ENCUMBRANCES, CLAIMS AND INTERESTS, (III)
APPROVING THE ASSUMPTION AND ASSIGNMENT OF THE SELECTED
ASSIGNED CONTRACTS, AND (IV) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 28] (the "**Motion**"),[2] of the above-captioned debtors and

debtors in possession (collectively, the "**Debtors**") for entry of an order (this "**Order**"), among

other things, (a) authorizing and approving the Debtors' entry into and performance under the

Purchase Agreement (as defined below) with the Buyer (as defined below), (b) authorizing the

Sale Transactions (as defined below), free and clear of any Encumbrances (as defined below), (c)

authorizing and approving the assumption and assignment of the Assumed Agreements and

Assumed Real Property Leases in connection with the Sale Transactions, and (d) granting related

relief; and this Court having previously entered the *Order (I) Authorizing and Approving (A) the*

---

[1]    The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are:  Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions, LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508).  The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion or the Purchase Agreement (as defined below), as applicable.

*Bidding Procedures for Sale of the Debtors' Assets Free and Clear, (B) the Scheduling of an Auction and Sale Hearing, (C) the Form and Manner of Notice of Sales, Auctions, and Sale Hearings, (D) the Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) the Designation of Stalking Horse Bidders, and (F) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Authorizing Designation of Stalking Horse Bidders, and (III) Granting Related Relief* [Docket No. 110] (the "**Bidding Procedures Order**"), authorizing and approving, among other things, Bidding Procedures for the Purchased Assets; and the Auction having been held from July 17, 2025 through July 19, 2025 for the Purchased Assets, including the Purchased Assets, in accordance with the Bidding Procedures Order; and the Debtors having executed that certain *Asset Purchase Agreement* dated as of July 27, 2025 (the "**Purchase Agreement**"), by and among Zen JV, LLC, Monster Government Solutions, LLC, as sellers and Sherrill-Lubinski, LLC and ETI-NET Inc., as Buyers (collectively, the "**Buyer**"), a copy of which is attached hereto as **Exhibit 1**, contemplating the Sale of the Purchased Assets identified therein (the "**Sale Transaction**") free and clear of any Encumbrances, the assumption and assignment to the Buyer of the Assumed Agreements and the Assumed Real Property Leases; and the Debtors having filed the *Notice of (I) Auction Transcript and (II) Successful and Backup Bids* [Docket No. 194] (the "**Notice of Successful Bids**"), announcing that, in accordance with the Bidding Procedures Order and after consultation with the Consultation Parties, the Debtors decided, in their reasonable business judgment, to designate the Buyer as the highest or otherwise best bidder for the Purchased Assets pursuant to the Purchase Agreement following the Auction; and this Court having conducted a hearing on July 28, 2025, to consider approval of the Sale Transaction (the "**Sale Hearing**") in accordance with the Bidding Procedures Order; and this Court having reviewed and considered (i) the Motion and the exhibits

thereto, (ii) the Bidding Procedures Order, (iii) the Purchase Agreement, (iv) the *Declaration of James Lilly in Support of the Debtors' Sales* (the "**PJT Declaration**"), (v) the results of the Auction, (vi) the objections and other responses to approval of the Sale Transaction, and (vii) the arguments and representations of counsel made, and the evidence proffered or adduced at, the Sale Hearing; and all parties in interest having been heard or having had the opportunity to be heard regarding the Sale Transaction and the relief requested in the Motion and provided in this Order; and due and sufficient notice of the Sale Hearing and the relief sought therein having been given under the particular circumstances of the Chapter 11 Cases (as defined herein) and in accordance with the Bidding Procedures Order; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion and provided in this Order is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion, the PJT Declaration, and at the Sale Hearing, establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**[3]

A.    **Jurisdiction and Venue.** This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Chapter 11 Cases is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. All findings of fact and conclusions of law announced by this Court at the Sale Hearing are hereby incorporated to the extent not inconsistent herewith.

B.      **Statutory and Legal Predicates.** The statutory and legal predicates for the relief

requested in the Motion are sections 105, 363, and 365 of the Bankruptcy Code. Such relief is also

warranted pursuant to Bankruptcy Rules 2002, 6004, 6006, and 9006 and Local Rules 2002-1 and

6004-1.

C.      **Final Order.** This Order is intended to constitute a final and appealable order

within the meaning of 28 U.S.C. § 158(a). Time is of the essence in closing the Sale referenced

herein; the Debtors and Buyer intend to close the Sale as soon as practicable, and there is no just

reason for delay in implementing this Order. The Sale must be approved and consummated

promptly to preserve the viability of the business in the hands of Buyer as a going concern, and to

maximize the value for the Debtors, their estates, their creditors, and all other parties in interest.

Accordingly, there is cause to lift the stays contemplated by Rules 6004(h) and 6006(d) of the

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and to the extent necessary, to

treat this Order as a final judgment for purposes of Bankruptcy Rule 9014 and Rule 54(b) of the

Federal Rules of Civil Procedure, as made applicable under Bankruptcy Rule 7054.

D.      **Notice.** On June 24, 2025 (the "**Petition Date**"), the Debtors commenced with the

Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code in the

United States Bankruptcy Court for the District of Delaware (this "**Court**"). The Debtors are

authorized to continue operating their business and managing their properties as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner

has been appointed in the Chapter 11 Cases.

E.      On July 2, 2025, the Office of the United States Trustee for the District of Delaware

(the "**U.S. Trustee**") appointed [Docket No. 65] the official committee of unsecured creditors (the

"**Committee**") pursuant to section 1102 of the Bankruptcy Code.

F.      The Debtors gave due and proper notice of the proposed Sale, Auction, and Sale Hearing on July 8, 2025 [Docket No. 111] (the "**Sale Notice**"). The Sale Notice constituted good, sufficient, and appropriate notice of the Sale under the particular circumstances, and no further notice need be given with respect to the proposed Sale. As provided by the Sale Notice, a reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities. Other parties interested in bidding on the Purchased Assets were provided, pursuant to the Bidding Procedures Order, sufficient information to make an informed judgment on whether to bid.

G.      As evidenced by the affidavits of service [Docket Nos. 68, 117, 118, 136, 148, 176, 187, 190, and 195] previously filed with this Court, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and sufficient notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Assumption and Assignment Procedures, the Purchase Agreement, this Order, the Notice of Successful Bids, and the Sale Transaction has been provided in accordance with sections 102(1), 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008, and 9014, and Local Rules 2002-1 and 6004-1. The Debtors have complied with all obligations to provide notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Assumption and Assignment Procedures, the Purchase Agreement, this Order, the Notice of Successful Bids, and the Sale Transaction as required by the Bidding Procedures Order. The aforementioned notices are good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures Order, the Assumption and Assignment Procedures, the Auction, the Sale Hearing, the Purchase Agreement, this Order, the Notice of Successful Bids, or the Sale Transaction is or shall be required.

H.    A reasonable opportunity to object or be heard regarding the relief requested in the Motion and provided in this Order was afforded to all parties in interest including, without limitation, the following: (i) all persons known or reasonably believed to have asserted an interest in the Purchased Assets; (ii) the Non-Debtor Counterparties to the Assigned Contracts; (iii) the Attorneys General in the States where the Purchased Assets are located; (iv) all federal, state, and local taxing authorities in the State(s) where the Purchased Assets are located; (v) all parties that have asserted Liens against the Purchased Assets; (vi) all parties included on the Debtors' consolidated creditor matrix and all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002; (vii) counsel to the DIP Lender (as defined in the DIP Order); and (viii) the Office of the United States Trustee for the District of Delaware.

I.    **Compliance with the Bidding Procedures Order.** As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtors have complied in all material respects with the Bidding Procedures Order. The Debtors and their professionals have adequately and appropriately marketed the Purchased Assets in compliance with the Bidding Procedures and the Bidding Procedures Order, and in accordance with the Debtors' fiduciary duties. Based upon the record of these proceedings, creditors, other parties in interest, and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Purchased Assets.

J.    The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair, and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Purchased Assets. The Debtors conducted the sale process without collusion and in accordance with the Bidding Procedures.

RLF1 33350561v.1
4929-5215-1382.12

K.    The Buyer is the designated Successful Bidder, and the Purchase Agreement is designated the Successful Bid for the Purchased Assets enumerated therein in accordance with the Bidding Procedures Order.

L.    The Purchase Agreement, including the form and total consideration to be realized by the Debtors under the Purchase Agreement, (a) constitutes the highest or otherwise best offer received by the Debtors for the Purchased Assets; and (b) is fair and reasonable.

M.    **Business Judgment.** The Debtors' determination that the consideration provided by the Buyer under the Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets is reasonable and constitutes a valid and sound exercise of the Debtors' business judgment.

N.    The Debtors have demonstrated good, sufficient and sound business reasons and justifications for entering into the Sale Transaction and the performance of their obligations under the Purchase Agreement, including, but not limited to, the fact that (a) the consideration provided by the Buyer under the Purchase Agreement will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative, including a separate liquidation of the Purchased Assets; and (b) unless the Sale Transaction is concluded expeditiously as provided for in the Motion and pursuant to the Purchase Agreement, creditor recoveries will be diminished.

O.    **Notice of Assumption and Assignment.** On July 3, 2025, the Debtors filed the *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. 82] (the "**Initial Cure Notice**"). On July 11, 2025, the Debtors filed the *Supplemental Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. 123] (the "**Supplemental Cure Notice**"). On July 14, 2025, the

7

Debtors filed the *Amended Supplemental Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. 129] (the "**Amended Cure Notice**," together with the Initial Cure Notice and the Supplemental Cure Notice, the "**Cure Notices**") which identified the Executory Contracts and Unexpired Leases that may be assumed and assigned as part of the Sale Transaction. On July 16, 2025, the Debtor filed a *Notice of Amendment to Contracts Schedule of Potentially Assigned Contracts* [Docket No. 186], which modified the Cure Payments associated with certain of the Executory Contracts and Unexpired Leases.

P.      With respect to each of the Selected Assigned Contracts (as defined in the Cure Notices), the Debtors have met all requirements of sections 365(a) and (b) of the Bankruptcy Code. Further, in compliance with the requirements of sections 365(b) and 365(f) of the Bankruptcy Code, Buyer has provided adequate assurance of future performance under the Selected Assigned Contracts to the extent that any such assurance is required and not waived by the counterparties to such Selected Assigned Contract; *provided* that the Buyer shall have complied with the requirements set forth in Section 2.5 of the Purchase Agreement. Accordingly, the Selected Assigned Contracts may be assumed by the Debtors and assigned to Buyer as provided for in the Purchase Agreement and this Order. Furthermore, with respect to the subsequent assumption and assignment of the Selected Assigned Contracts pursuant to Section 2.5 of the Purchase Agreement, the procedures contained herein will satisfy section 365(b) and (f) the Bankruptcy Code for any subsequent assumption and assignment.

Q.      **Good Faith.** The sale process engaged in by the Debtors and the Buyer, including, without limitation, the Auction, which was conducted in accordance with the Bidding Procedures and the Bidding Procedures Order, and the negotiation of the Purchase Agreement was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties in interest.

8

Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the Sale Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

R.      The Debtors and the Buyer have complied, in good faith, in all respects with the Bidding Procedures Order and the Bidding Procedures. The Debtors and the Buyer each actively participated in the bidding process and in the Auction, and each acted in good faith and without collusion or fraud of any kind. The Buyer submitted its bid to competitive bidding in accordance with the Bidding Procedures and was designated the Successful Bidder for the Purchased Assets in accordance with the Bidding Procedures and the Bidding Procedures Order.

S.      The Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision in respect of the Sale Transaction and each term of the Purchase Agreement (and any ancillary documents executed in connection therewith) and each term of this Order, and otherwise has proceeded in good faith in all respects in connection with this proceeding. Neither the Debtors nor the Buyer has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code. The Debtors were free to deal with any other party interested in buying or selling some or all of the Purchased Assets on behalf of the Debtors' estates. The protections afforded by Bankruptcy Code section 363(m) are integral to the Sale Transaction and the Buyer and would not consummate the Sale Transaction without such protections.

T.      The form and total consideration to be realized by the Debtors under the Purchase Agreement constitutes fair value, fair, full, and adequate consideration, reasonably equivalent value, and reasonable market value for the Purchased Assets.

RLF1 33350561v.1
4929-5215-1382.12

U.       **Title in the Purchased Assets**.  The Purchased Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Debtors are the sole and lawful owners of the Purchased Assets.

V.       **Buyer is Not an Insider.** Neither the Buyer nor any of its affiliates, officers, directors, managers, shareholders, members or any of their respective successors or assigns is an "insider" of the Debtors, as that term is defined under section 101(31) of the Bankruptcy Code. No common identity of directors, managers, controlling shareholders, or members exists between the Debtors and the Buyer.

W.       **No Fraudulent Transfer.** The consideration provided by the Buyer for the Purchased Assets pursuant to the Purchase Agreement (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Purchased Assets, (c) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other practical available alternative, and (d) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession, and the District of Columbia.

X.       The Purchase Agreement was not entered into, and neither the Debtors nor the Buyer has entered into the Purchase Agreement or propose to consummate the Sale Transaction, for the purpose of (a) escaping liability for any of the Debtors' debts, or (b) hindering, delaying or defrauding the Debtors' present or future creditors, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

RLF1 33350561v.1
4929-5215-1382.12

Y.      **Free and Clear.** The transfer of the Purchased Assets to the Buyer will be a legal,

valid, and effective transfer of the Purchased Assets, and will vest the Buyer with all right, title, and

interest of the Debtors in the Purchased Assets free and clear of all claims (including, without

limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including

section 101(5) thereof), Excluded Liabilities (as defined in the Purchase Agreement), liens

(including, without limitation, any statutory, mechanic's, builders, materialmen's or similar lien on

real and/or personal property and any and all "liens" as that term is defined and used in the

Bankruptcy Code, including section 101(37) thereof), liabilities, interests, rights, and encumbrances

relating to, accruing, or arising any time prior to the Closing Date, including, without limitation, the

following: all mortgages, restrictions (including, without limitation, any restriction on the use,

voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of

ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses,

sublicenses, options, deeds of trust, security interests, equity interests, conditional sale rights or

other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights,

offsets (except for offsets exercised prior to the Petition Date), contract rights, rights of setoff

(except for setoffs exercised prior to the Petition Date), rights of recovery, reimbursement rights,

contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims,

to the greatest degree allowed by applicable law environmental rights and claims (including, without

limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights

and claims, tax claims, regulatory violations by any governmental entity, decrees of any court (other

than this Court) or foreign or domestic governmental entity, charges of any kind or nature, debts

arising in any way in connection with any agreements, acts, or failures to act, reclamation claims,

obligation claims, demands, guaranties, option rights or claims, rights, contractual or other

commitment rights and claims, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, senior or subordinated, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor or transferee liability or related theories (all of the foregoing, but excluding Assumed Liabilities and the Permitted Encumbrances, collectively being referred to in this Order as "**Encumbrances**").

Z.      The Debtors may sell and assign the Purchase Assets free and clear of all Encumbrances, as applicable, because with respect to each creditor asserting an Encumbrance, one or more of the standards set forth in section 363(f)(1)-(5) have been satisfied. Those holders of Encumbrances who did not object or who withdrew their objections to the Motion are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Encumbrances who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Encumbrances, if any, attach to the proceeds of the Sale ultimately attributable to the Purchased Assets in which such holders allege an Encumbrance in the same order of priority, with the same validity, force, and effect that such holder had prior to such Sale, and subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

AA.     The Debtors, to the extent permitted by applicable law, may transfer the Purchased Assets free and clear of all Encumbrances, including, without limitation, rights or claims based

on any successor or transferee liability, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

BB.    The Debtors have, to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code.

CC.    The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction, if (a) the transfer of the Purchased Assets were not free and clear of all Encumbrances, or (b) the Buyer would, or in the future could, be liable for or subject to any such Encumbrances.

DD.    The Buyer will not consummate the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction, unless this Court expressly orders that none of the Buyer, its respective affiliates, its respective present or contemplated members or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff (except for setoffs exercised prior to the Petition Date), or otherwise, directly or indirectly, any Encumbrances.

EE.    Not transferring the Purchased Assets free and clear of all Encumbrances would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Purchased Assets other than pursuant to a transfer that is free and clear of all Encumbrances would be of substantially less benefit to the Debtors' estates. Buyer would not have entered into the Purchase Agreement to acquire the Purchased Assets, and would exercise its right to terminate the Purchase Agreement, if the sale of the Purchased Assets were to be transferred to it other than free and clear of all Encumbrances.  A sale of the Purchased Assets other than one free and clear of all Encumbrances would adversely impact the Debtors' estates, and would yield substantially

13

less value for the Debtors' estates, with less certainty than the Sale.  Therefore, the Sale contemplated in the Purchase Agreement is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

FF.    As a result of any action taken in connection with the Purchase Agreement, the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction, or the transfer or operation of the Purchased Assets, (a) neither the Buyer nor any of its affiliates shall be deemed to be a mere continuation of any of Debtors or their estates, nor shall there be deemed to be a continuity or common identity between the Buyer, any of the Debtors, or any of their respective affiliates, or any continuity of enterprise between the Buyer, any of the Debtors, or any of their respective affiliates; (b) neither the Buyer nor any of its affiliates shall be deemed to be holding themselves out to the public as a continuation of any of the Debtors; and (c) neither the Buyer nor any of its affiliates are to be deemed a successor to any of the Debtors or their estates and none of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction amounts to a consolidation, merger, or *de facto* merger of the Buyer or any of its affiliates with or into any of the Debtors.

GG.    Without limiting the generality of the foregoing, and other than as may be set forth in the Purchase Agreement, none of the Buyer, its affiliates, the present or contemplated members or shareholders of the Buyer, and its affiliates, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff (except for setoffs exercised prior to the Petition Date), or otherwise, directly or indirectly, any Encumbrances relating to any U.S. federal, state or local income tax liabilities, that the Debtors may incur in connection with consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction, or that the Debtors

14

have otherwise incurred prior to the consummation of the transactions contemplated by the Purchase Agreement.

HH.    **Validity of Transfer.** The consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) thereof, and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Purchase Agreement.

II.    The Purchase Agreement has been duly and validly executed and delivered by the Debtors and, subject to the terms of the Purchase Agreement, shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with its terms. The Purchase Agreement, the Sale Transaction, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 7 or chapter 11 trustee appointed in these Chapter 11 Cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other person.

JJ.    **Compelling Circumstances for an Immediate Sale.** To maximize the value of the Purchased Assets, it is essential that the transactions contemplated by the Purchase Agreement occur within the time constraints set forth therein. Time is of the essence in consummating the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

KK.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of

15

the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction. The transactions contemplated by the Purchase Agreement neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan for the Debtors, and therefore, do not constitute a *sub rosa* plan.

LL. **Assumption, Assignment and/or Transfer of the Assumed Agreements or Assumed Real Property Leases**. The Debtors have demonstrated (a) that it is an exercise of their sound business judgment to assume and assign the Assumed Agreements or Assumed Real Property Leases to the Buyer, in connection with the consummation of the Sale Transaction and (b) that the assumption and assignment of the Assumed Agreements or Assumed Real Property Leases to the Buyer is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. The Assumed Agreements or Assumed Real Property Leases being assigned to the Buyer is an integral part of the Purchased Assets being purchased by the Buyer and, accordingly, such assumption, assignment and cure of any defaults under the Assumed Agreements or Assumed Real Property Leases are reasonable and enhance the value of the Debtors' estates. Each and every provision of the documents governing the Purchased Assets or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any of the Purchased Assets, if any, has been or will be satisfied or are otherwise unenforceable under section 365 of the Bankruptcy Code. Any non-Debtor counterparty to an Assumed Agreement or Assumed Real Property Lease that has not filed with the Court an objection to such assumption and assignment in accordance with the terms of the Motion is deemed to have consented to such assumption and assignment.

16

MM.    To the extent necessary or required by applicable law, the Debtors have or will have as of the Closing: (a) cured, or provided adequate assurance of cure, of any default existing prior to the Closing with respect to the Assumed Agreements or Assumed Real Property Leases, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (b) provided compensation, or adequate assurance of compensation, to any party for any actual pecuniary loss to such party resulting from such default, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.

NN.    The promise of the Buyer to perform the obligations first arising under the Assumed Agreements or Assumed Real Property Leases after the assumption and assignment to the Buyer constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the counterparty to the Assumed Agreement or Assumed Real Property Lease.

OO.    **Consumer Privacy.** The Buyer satisfies and shall comply with the following "qualified buyer" criteria: (a) the Buyer operates in a line of business that is substantially similar to the Debtor; (b) the Buyer will be Debtor's successor-in-interest as to the Personal Information (as defined in the Purchase Agreement) acquired from the Debtor; (c) the Buyer will not disclose, sell, or transfer Personal Information acquired from Debtor to any third party in a manner inconsistent with the relevant Debtor's privacy policy in effect as of the Closing Date, without obtaining consent from the individual to whom the Personal Information relates; (d) the Buyer will be responsible for any violation of the relevant Debtor's privacy policy that occurs following the Closing Date.

PP.    Following entry of this Order, Debtor shall (a) provide a notice via email to relevant consumers regarding the change of control over their Personal Information and advising them of

RLF1 33350561v.1
4929-5215-1382.12

the rights that may be available to them under applicable U.S. state privacy laws, and (b) post a similar notice on the relevant Debtor websites and mobile applications.  Buyer shall not be responsible for the content or delivery of such notices.

QQ.    To the extent reasonably feasible and required by applicable non-Bankruptcy law, Buyer and Debtor agree to reasonably cooperate with respect to maintaining records with respect to consumer requests for a period of twenty-four (24) months following the entry of this Order.

RR.    Following entry of this Order, the Buyer shall file with this Court a statement under oath that it has complied with the conditions imposed to protect Personal Information, including that the Buyer reasonably believes it satisfies the "qualified buyer" criteria set forth above as of the Closing Date.

SS.    The legal and factual bases set forth in the Motion and presented at the Sale Hearing establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Motion is granted as provided herein, and entry into and performance under, and in respect of, the Purchase Agreement attached hereto as **Exhibit 1** and the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction, is authorized and approved.

2.    Any objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice. All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief granted herein, including for purposes of sections 363(f)(2), 365(c)(1), and 365(e)(2) of the Bankruptcy Code.

18

A. **Approval of the Purchase Agreement**

3.      The Debtors are authorized to enter into the Purchase Agreement (and all ancillary documents), all of the terms and conditions thereof, and all of the transactions contemplated therein including, without limitation, any amendment to the Purchase Agreement that the Debtors and the Buyer determine is necessary or desirable to ensure the Sale related to Buyer is consummated in accordance with the Purchase Agreement, and the Debtors are authorized to make such modifications to supplements reasonably acceptable to the Debtors and Buyer to any bill of sale or other document or instrument executed or to be executed in connection with the transactions. The consummation of the transactions is hereby authorized under sections 363(b) and 365 of the Bankruptcy Code.

4.      The Debtors and their respective officers, employees and agents are authorized to take any and all actions necessary, appropriate or reasonable to perform, consummate, implement and close the Sale Transaction, including, without limitation, (a) the sale to the Buyer of all Purchased Assets, in accordance with the terms and conditions set forth in the Purchase Agreement and this Order, and (b) execution, acknowledgment and delivery of such deeds, assignments, conveyances and other assurance, documents and instruments of transfer and any action for purposes of assigning, transferring, granting, conveying and confirming to the Buyer, or reducing to possession, the Purchased Assets, all without further order of this Court. The Debtors are further authorized to pay, without further order of this Court, whether before, at or after the Closing Date, any expenses or costs that are required to be paid by the Debtors under the Purchase Agreement, this Order, or the Bidding Procedures Order, in order to consummate the Sale Transaction or perform their obligations under the Purchase Agreement.

5.     All persons and entities, including, without limitation, the Debtors, the Debtors' estates, any and all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trustees, trade creditors, and any other creditors (any or affiliate, agent, successor, or assign of any of the foregoing) who may or do hold claims or other Encumbrances against the Debtors or the Purchased Assets, arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation or ownership of the Purchased Assets by the Debtors prior to the Closing Date, or the Sale Transaction, are hereby prohibited, forever barred and estopped from asserting or pursuing such claims or other Encumbrances against the Buyer, its affiliates, successors, assigns, or property, or the Purchased Assets, including, without limitation, taking any of the following actions with respect to any claims or other Encumbrances: (a) commencing or continuing in any manner any action, whether at law or in equity, in any judicial, administrative, arbitral, or any other proceeding, against the Buyer, its affiliates, successors, assigns, Purchased Assets (including the Purchased Assets), and/or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, its affiliates, successors, assigns, Purchased Assets (including the Purchased Assets), and/or properties; (c) creating, perfecting, or enforcing any claim or other Encumbrance against the Buyer, its affiliates, any of their respective successors, assigns, Purchased Assets (including the Purchased Assets), and/or properties; (d) asserting a claim or other Encumbrance as a setoff (except for setoffs exercised prior to the Petition Date), or right of subrogation, of any kind against any obligation due against the Buyer, its affiliates or any of their respective successors or assigns; or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order, the Purchase Agreement, or the agreements or actions contemplated or taken in respect

20

thereof, including the Debtors' ability to transfer the Purchased Assets to the Buyer in accordance with the terms of this Order and the Purchase Agreement. No such Person shall assert or pursue any such claim or other Encumbrance against the Buyer or its affiliates, successors or assigns.

6.      The sale of the Purchased Assets to the Buyer under the Purchase Agreement constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and laws of all applicable jurisdictions, including, without limitation, the laws of each jurisdiction in which the Purchased Assets are located, and the sale of the Purchased Assets to the Buyer may not be avoided under any statutory or common law fraudulent conveyance and fraudulent transfer theories whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

**B.      Transfer of the Purchased Assets Free and Clear**

7.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be sold free and clear of all Encumbrances, with all such Encumbrances to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect which they now have as against the Purchased Assets, subject to any rights, claims, and defenses the Debtors, the Debtors' estates or any trustee for any Debtor, or any statutory committee or any party (to the extent any such rights, claims, and defenses exist), as applicable, may possess with respect thereto; *provided*, *however*, that setoff rights will be extinguished to the extent there is no longer mutuality after the consummation of the Sale Transaction, except for setoffs exercised prior to the Petition Date.

8.      On the Closing Date, all of the Debtors' right, title and interest in and to, and possession of, the Purchased Assets shall be immediately vested in the Buyer pursuant to sections

RLF1 33350561v.1
4929-5215-1382.12

105(a), 363(b), and 363(f) of the Bankruptcy Code free and clear of any and all Encumbrances. Such transfer shall constitute a legal, valid, binding and effective transfer of, and shall vest the Buyer with, all of the Debtors' right, title and interest in and to, and possession of the Purchased Assets. All person or entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets are authorized to surrender possession of the Purchased Assets to the Buyer on the Closing Date or at such time thereafter as the Buyer may request.

9.       This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction.

10.      Except as otherwise expressly provided in the Purchase Agreement or this Order, all persons and entities (and their respective successors and assigns), including, but not limited to, any and all debt security holders, equity security holders, affiliates, foreign, federal, state and local governmental, tax and regulatory authorities, lenders, customers, vendors, employees, former employees, trade creditors, litigation claimants and other creditors holding claims or other Encumbrances against the Debtors or the Purchased Assets arising under or out of, in connection with, or in any way relating to, the Debtors, the Debtors' predecessors or affiliates, the Purchased Assets, the ownership, sale or operation of the Purchased Assets prior to Closing Date or the

transfer of the Purchased Assets to the Buyer, are hereby forever barred and estopped from asserting or prosecuting any cause of action or any process or other act or seeking to collect, offset (except for offsets exercised prior to the Petition Date), or recover on account of any claims or other Encumbrances against the Buyer, its successors or assigns, their property or the Purchased Assets. Following the Closing Date, no holder of any claim shall interfere with the Buyer's title to or use and enjoyment of the Purchased Assets based on or related to any such Claim, or based on any action or omission of any Debtor, including any action or omission of any Debtor in these Chapter 11 Cases.

11.    The Debtors are authorized to execute such documents as may be necessary to release any Encumbrances of any kind against the Purchased Assets as such Encumbrances may have been recorded or may otherwise exist. If any person or entity that has filed financing statements, mechanic's liens, *lis pendens* or other documents or agreements evidencing Encumbrances against or in the Purchased Assets shall not have delivered to the Debtors prior to the Closing Date of the Sale Transaction, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction, releases of all Encumbrances that such person or entity has with respect to the Purchased Assets, (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets; (b) the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all such Encumbrances against the Buyer and the applicable Purchased Assets; (c) the Debtors' creditors and the holders of any Encumbrances are authorized to execute such documents and take all other actions as may be necessary to terminate, discharge or release their Encumbrances in the

23

Purchased Assets; and (d) the Buyer may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction and releases of all such Encumbrances with respect to the Purchased Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office, and such agencies, departments and offices are authorized to accept this Order for filing or recording. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of Encumbrances shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

12.    To the maximum extent permitted under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, authorized to be transferred to the Buyer with respect to the Purchased Assets as of the Closing Date. To the extent the Buyer cannot operate under any such license, permit, registration and governmental authorization or approval in accordance with the previous sentence, then to the maximum extent permitted under applicable law, such licenses, permits, registrations and governmental authorizations and approvals shall be in effect while the Buyer, with assistance from the Debtors (and at the Buyer's sole cost and expense), works promptly and diligently to apply for and secure all necessary government approvals for new issuance of such licenses, permits, registrations and governmental authorizations and approvals to the Buyer.

RLF1 33350561v.1
4929-5215-1382.12

13.     No governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale Transaction to the extent that any such action by a governmental unit or any representative thereof would violate section 525 of the Bankruptcy Code

C.     **No Successor Liability**

14.     Upon the Closing Date, except as provided in the Purchase Agreement, the entry of this Order and the approval of the terms of the Purchase Agreement shall mean that the Buyer (and any of its affiliates, successors, or assigns), as a result of any action taken in connection with the Purchase Agreement, the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction, or the transfer or operation of the Purchased Assets, shall not be deemed to: (a) be a legal successor or successor employer to any Debtor (including with respect to any health or benefit plans), or otherwise be deemed a successor to any Debtor, and shall instead be, and be deemed to be, a new employer with respect to all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (b) have, *de facto*, or otherwise, merged or consolidated or de facto merged with or into any Debtor; or (c) be an alter ego or a mere continuation or substantial continuation of any Debtor or the enterprise of any Debtor, including, in the case of each of (a)-(c), without limitation, (i) within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.) ("**WARN**"), to the greatest degree allowed by applicable law the Comprehensive Environmental Response Compensation and Liability Act ("**CERCLA**"),

25

the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age

Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973

(as amended), the National Labor Relations Act, 29 U.S.C. § 151, et seq. or (ii) in respect of (1) to

the greatest degree allowed by applicable law any environmental liabilities, debts, claims or

obligations arising from conditions first existing on or prior to the Closing Date (including, without

limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes),

which may be asserted on any basis, including, without limitation, under CERCLA, (2) any

liabilities, penalties, costs, debts or obligations of or required to be paid by the Debtors for any

taxes of any kind for any period, labor, employment, or other law, rule or regulation (including,

without limitation, filing requirements under any such laws, rules or regulations), or (3) any

products liability law or doctrine with respect to the Debtors' liability under such law, rule or

regulation or doctrine.

15.     Without limiting the generality of the foregoing, and except as otherwise provided

in the Purchase Agreement and this Order, neither the Buyer nor any of its affiliates shall have any

responsibility for any (a) liability or other obligation of the Debtors related to the Purchased Assets,

or (b) claims against the Debtors or any of their predecessors or affiliates. By virtue of the Buyer's

purchase of the Purchased Assets, neither the Buyer nor any of its affiliates shall have any liability

whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses

or operations or any of the Debtors' (or its predecessors' or affiliates') obligations based, in whole

or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or

character, or based upon any theory of antitrust, to the greatest degree allowed by applicable law

environmental (including, but not limited to CERCLA), successor or transferee liability, de facto

merger or substantial continuity, labor and employment (including, but not limited to, WARN) or

26

products liability law, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of the Debtors' employment agreements or health or benefit plans, any settlement or injunction or any liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing Date (collectively, with the potential claims set forth in paragraph 14 "**Successor Liability**"). The Buyer would not have acquired the Purchased Assets but for the foregoing protections against Successor or Transferee Liability.

D.      **Assumption and Assignment of Assumed Agreements and Assumed Real Property Leases.**

16.     Subject to paragraph 38, notwithstanding any provision of any contract governing the Purchased Assets, including any Assumed Agreement or Assumed Real Property Lease to be assumed and assigned to the Buyer as of the Closing pursuant to section 365(f) of the Bankruptcy Code or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Purchased Assets, including any Assumed Agreements or Assumed Real Property Leases, at the Closing, the Debtors shall, in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code, (i) assign the Purchased Assets to the Buyer and (ii) assume and assign the Assumed Agreements or Assumed Real Property Leases to the Buyer as of the Closing, in each case, which assignments shall take place on and be effective as of the Closing or such other date after the Closing Date, subject to the terms of the Purchase Agreement, this Order, the Bidding Procedures Order, or as otherwise provided by a separate order of this Court.

17.     To the fullest extent permitted by the Bankruptcy Code, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the counterparty to an Assumed Agreement or Assumed Real Property Lease is forever barred from raising or asserting against Buyer any assignment fee,

27

rent acceleration, rent increase on account of assignment, default, breach, claim, pecuniary loss, or condition to assignment, arising under or related to an Assumed Agreement or Assumed Real Property Lease, existing as of the date that such an Assumed Agreement or Assumed Real Property Lease is assumed, assigned and sold or arising by reason of the Closing. Notwithstanding any term of any Assumed Agreement or Assumed Real Property Lease to the contrary, any extension or renewal options or other rights contained in such an Assumed Agreement or Assumed Real Property Lease that purport to be personal only to, or exercisable only by, the Debtors, a named entity, or an entity operating under a specific trade name, may, in each case, be freely exercised to their full extent by the Buyer subject to the other applicable terms of the an Assumed Agreement or Assumed Real Property Lease.

E.    **Assumption, Assignment, and Rejection Procedures.**

18.    From and after the date of the Purchase Agreement until five (5) Business Days prior to the Closing, the Buyer may, in its sole discretion, designate any Contract of any Selling Entity as an Assumed Agreement or Assumed Real Property Lease, as applicable, or remove any such Contract from Section 2.1(c) or Section 2.1(d) of the Seller Disclosure Schedule, respectively, such that it is not an Assumed Agreement or Assumed Real Property Lease, in each case by providing written notice of such designation or removal to the Seller (the "**Contract Notice**"), in which case Section 2.1(c) or Section 2.1(d) of the Seller Disclosure Schedule, as applicable, shall automatically be deemed to be amended to include or remove, as applicable, such Contract as an Assumed Agreement or an Assumed Real Property Lease, in each case, without any adjustment to the Purchase Price (other than any Cure Payment).

19.    In the case of any amendment by the Buyer of Section 2.1(c) or Section 2.1(d) of the Seller Disclosure Schedule pursuant to Section 2.5(b) of the Purchase Agreement, within three

(3) business days of the Debtors' receipt of a Contract Notice, the Seller shall give notice (the "**Supplemental Contract Notice**") to the other parties to any Contract to which such amendment relates of the removal or addition of such Contract from Section 2.1(c) or Section 2.1(d) of the Seller Disclosure Schedule as applicable. A counterparty to a Contract that is assumed and assigned pursuant to Section 2.5(b) of the Purchase Agreement may only object to assumption and assignment of the Contract if the Contract was not previously included on the Cure Notices. If the Contract was not previously included on the Cure Notices, the deadline to object to any Cure Payment or to assumption and assignment on any basis is the date that is 10 days after service of the Supplemental Contract Notice. For the avoidance of doubt, a Contract that is the subject of a properly filed objection may not be assumed and assigned until the objection is resolved or otherwise overruled by the Court.

20.    The Debtors are hereby authorized in accordance with section 365 of the Bankruptcy Code and the procedures set forth in this Order and in the Purchase Agreement to assume and assign the Selected Assigned Contracts to Buyer free and clear of all Liens, and to execute and deliver to Buyer such documents or other instruments as may be necessary to assign and transfer the Selected Assigned Contracts to Buyer as provided in the Purchase Agreement. Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Selected Assigned Contracts assumed and assigned in accordance with the procedures set forth in the Purchase Agreement and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from further liability with respect to Selected Assigned Contracts.

21.    Payment of the Cure Payments (as set forth in the Purchase Agreement and in the amount agreed to by the parties or provided in an order of this Court) shall be in full satisfaction and cure of any and all defaults under the Selected Assigned Contracts, whether monetary or non-

29

  
monetary. Each non-Debtor party to a Selected Assigned Contract is forever barred and estopped from asserting against the Debtors or Buyer, their successors or assigns, or the property of any of them, any default existing as of the date of the Sale Hearing if such default was not timely raised or asserted prior to or at the Sale Hearing. Except as expressly set forth herein, to the extent a counterparty to a Selected Assigned Contract failed to timely object to the Cure Payments prior to the Sale Hearing, such Cure Payments have been and shall be deemed to be fully determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Payments and/or the assumption and assignment of the Selected Assigned Contract at any time. Notwithstanding anything to the contrary in this Order, a counterparty to an Selected Assigned Contract shall not be barred from seeking additional Cure Payments on account of any monetary defaults occurring between the Contract Objection Deadline and the assumption of such Contract; *provided* that the Debtors' and Buyer's right to object to any such request are fully reserved and preserved; *provided*, *however*, that any such request shall be asserted no later than seven (7) days after the Debtors file and serve a notice of the Closing of the Sale Transaction (the "Extended Cure Objection Deadline"); *provided*, *further*, if no such request is made by the Extended Cure Objection Deadline, all such Cure Payments on account of any defaults occurring between the Contract Objection Deadline and the assumption of such Contract shall be deemed to be fully determined and any such counterparty shall be barred from challenging, objecting to, or denying the validity and finality of the Cure Payments and/or the assumption and assignment of the Selected Assigned Contract at any time.

22.    Upon the Debtors' assignment of Selected Assigned Contracts to Buyer, no default shall exist under any Selected Assigned Contracts, and no counterparty to any Selected Assigned Contract shall be permitted to declare a default by any Debtor or Buyer, or otherwise take action

against Buyer, as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Selected Assigned Contract. Any provision in a Selected Assigned Contract that prohibits or conditions the assignment or sublease of such Selected Assigned Contract or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect, but only in connection with the assumptions and assignments authorized by this Order. The failure of the Debtors or Buyer to enforce at any time one or more terms or conditions of any Selected Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' or Buyer's rights to enforce every term and condition of the Selected Assigned Contract.

23.     Promptly after the Closing Date, the Debtors shall file with the Court a notice indicating the Sale Transaction has closed, and such notice shall contain a complete list of all Selected Assigned Contracts assigned to Buyer.

F.     **Good Faith; Arm's Length Sale**

24.     The Purchase Agreement has been negotiated and executed, and the transactions contemplated thereby, including, without limitation, the Sale Transaction, are and have been undertaken, by the Debtors, the Buyer and their respective representatives at arm's length, without collusion and in "good faith," as such term is defined in section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction or any term of the Purchase Agreement, and shall not permit the unwinding of the Sale Transaction. The Buyer is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections under section 363(m) of the Bankruptcy Code.

25.     Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the transactions contemplated thereby, including, without limitation, the Sale Transaction, to be avoided, or for costs, or damages or costs to be imposed, under section 363(n) of the Bankruptcy Code. The consideration provided by the Buyer for the Purchased Assets under the Purchase Agreement is fair and reasonable, and the Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

### G.     **Related Relief**

26.     Notwithstanding anything to the contrary in this Order or the Purchase Agreement, no Contract between the Debtor and Oracle America, Inc.,  ("Oracle") will be assumed and/or assigned without (1) Oracle's prior written consent; (2) cure of any default under such contract; (3) the provision to Oracle of satisfactory adequate assurance of future performance by the assignee; and (4) execution by the Debtor or its successor and the assignee of mutually agreeable assignment documentation in a final form to be negotiated after entry of this Order.  In addition, no provision of this Order or the Transition Services Agreement shall authorize (1) the transfer of any Oracle license agreement to any third party; or (2) use of any Oracle license agreement that is inconsistent with the relevant license grant including, but not limited to, exceeding the number of authorized users, shared use or license splitting, absent Oracle's express prior written consent.

27.     Pursuant to the DIP Orders and the Bidding Procedures Order, all cash proceeds generated from the Sale of the Purchased Assets shall be paid to the DIP Lender upon closing of the Sale Transaction for permanent application against any outstanding DIP Obligations until such time as all DIP Obligations have been paid in full in cash in accordance with the terms of the DIP Orders and DIP Documents.

28.     In connection with the Sale Transaction and pursuant to the Purchase Agreement, the Buyer and the Debtors shall enter into a transition services agreement in the form attached to

RLF1 33350561v.1
4929-5215-1382.12

this Order as **Exhibit 2** pursuant to which, effective as of the Closing, the Buyer and the Debtors may provide certain services to each other for a transitional period following the Closing (the "**Transition Services Agreement**"). The Buyer and the Debtors are hereby authorized to execute and deliver the Transition Services Agreement and any additional documentation contemplated by the Purchase Agreement or in furtherance of the Sale, and to perform all such other and further acts as may be required in connection with the negotiation, execution, and performance of the Purchase Agreement, any ancillary documents or the Transition Services Agreement, including providing transition services and making any applicable payments without further order of the Court.

29.    Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction contemplated by the Purchase Agreement.

30.    No governmental unit may revoke or suspend any right, license, copyright, patent, trademark or other permission relating to the use of the Purchased Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the sale of the Purchased Assets to the extent that any such action by a governmental unit would violate section 525 of the Bankruptcy Code.

31.    Except as expressly provided in the Purchase Agreement, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any Purchased Assets or liabilities not constituting an Asset.

32.     No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions with the Debtors that are approved by this Order, including, without limitation, the Purchase Agreement and the Sale Transaction.

33.     The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors (whether known or unknown), Buyer, and their respective affiliates, successors, and assigns, and any affected third parties, including, without limitation, all Persons asserting Liens (collectively, the "**Bound Parties**"), notwithstanding any subsequent appointment of any trustee, examiner, or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary under any chapter of the Bankruptcy Code or any other law with respect to any of the Bound Parties, and all such terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary, and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner, receiver, party, entity, or other fiduciary. The provisions of this Order and the terms and provisions of the Purchase Agreement, shall survive the entry of any order that may be entered confirming or consummating any chapter 11 plan of the Debtors or converting these chapter 11 cases to cases under chapter 7, and the terms and provisions of the Purchase Agreement, as well as the rights and interests granted pursuant to this Order and Purchase Agreement shall continue in these or any superseding cases and shall be binding upon the Bound Parties and their respective successors and permitted assigns including, without limitation, any trustee, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are

34

proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized and directed to (i) operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of the Purchase Agreement and this Order and (ii) perform under the Purchase Agreement and this Order without the need for further order of the Court.

34.    Buyer is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Order, the Sale Transaction, and any issues related to or otherwise connected to the Sale Transaction and the Purchase Agreement.

35.    Notwithstanding anything to the contrary herein, except as set forth in the Purchase Agreement or the Transition Services Agreement, the Debtors and any other party to the Transition Services Agreement shall make commercially reasonable efforts to only provide Personal Information (as defined in the Purchase Agreement) to Buyer that is directly related to the Purchased Assets. In the event any data not directly related to the Purchased Assets is shared with Buyer, the Debtors and the other parties to the Transition Services Agreement agree that Buyer may delete such data and is not responsible for the Debtors' compliance with any Privacy Laws (as defined in the Purchase Agreement) or any other requirements related to the retention of such records with respect to such data and the Buyer is not assuming any obligations of the Debtors as related thereto.

36.    Subject to and upon the Closing, the Debtors hereby waive any and all actions related to, and hereby release Buyer, and their respective property, from any and all claims and causes of action relating to the Sale Transaction, whether known or unknown, now existing or hereafter arising, asserted or unasserted, mature or inchoate, contingent or non contingent, liquidated or unliquidated, material or non-material, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise, except to the extent arising under, or

35

specifically assumed or established under the Purchase Agreement, this Order or any of the Transaction Documents.

**H.**    **Provisions regarding Employees**

37.    Buyer agrees that notwithstanding Section 7.8 of the Purchase Agreement, the list of Employees of the Selling Entities to whom Buyer will offer at-will employment effective as of the Closing Date shall include substantially all of the Employees of the Selling Entities whose employment with the Selling Entities is primarily related to the MGS Business and such offers of employment shall be on terms substantially similar to the existing terms of employment of such Employees by the Selling Entities.

**I.**    **Provisions Regarding the United States.**

38.    Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale contemplated by the Asset Purchase Agreement.  Notwithstanding any provision to the contrary in this Order, the Purchase Agreement, or any other document related to the Sale Transaction, nothing shall: (i) release, nullify, preclude or enjoin the enforcement of any police or regulatory power or any liability that any entity would be subject to as the owner, lessor, lessee or operator of property that such entity owns, operates or leases after the date of entry of this Order; (ii) affect the United States' rights and defenses of (a) recoupment, or (b) setoff as to the Debtors; (iii) confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (iii) authorize the assumption, assignment, sale or other transfer of any federal (a) grants, (b) grant funds, (c) contracts, (d) agreements, (e) awards, (f) task orders, (g) property, (h) intellectual property, (i) patents, (j) leases, (k) certifications, (l) applications, (m)

36

registrations, (n) billing numbers, (o) national provider identifiers, (p) provider transaction access numbers, (q) licenses, (r) permits, (s) covenants, (t) inventory, (u) guarantees, (v) indemnifications, (w) data, (x) records, or (y) any other interests belonging to the United States (collectively, "**Federal Interests**") without compliance by the Debtors and the Buyer with all terms of the Federal Interests and with all applicable non-bankruptcy law; (iv) be interpreted to set cure amounts or to require the United States to novate, approve or otherwise consent to the sale, assumption, assignment or other transfer of any Federal Interests; (v) waive, alter or otherwise limit the United States' property rights; or (vi) expand the scope of 11 U.S.C.§ 525. In the event of an inconsistency or conflict between any provision of the Purchase Agreement and any provision of this Order, as to the United States, the provisions of this Order and federal law shall govern.

39.     This Court retains jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction.

40.     The Purchase Agreement, the Transition Service Agreement, and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court; provided, that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates; provided, further, that, any materially modified Purchase Agreement shall be filed with the Court and any material modification, amendment, or supplement shall

RLF1 33350561v.1
4929-5215-1382.12

require the consent of all persons or entities affected thereby or be approved by this Court upon further notice and hearing.

41.     This Order is intended to constitute a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly: (a) the terms of this Order shall be immediately effective and enforceable upon its entry and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply; (b) the Debtors are not subject to any stay of this Order or in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Debtors and the Buyer may, each in its discretion and without further delay, take any action and perform any act authorized under this Order.

42.     The provisions of this Order are non-severable and mutually dependent.

43.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

RLF1 33350561v.1
4929-5215-1382.12

## <u>Exhibit 1</u>

**APA**

*[see Docket No. 194-3]*

**Exhibit 2**

**TSA**

*[see Docket No. 210]*

**EXHIBIT 2-A**

**Sherrill-Lubinski, LLC & Eti-Net Inc. (Partner One Capital)**
**Blackline Proposed Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------- x
                                                    :
In re:                                              :   Chapter 11
                                                    :
ZEN JV, LLC, et al.,¹                               :   Case No. 25-11195 (JKS)
                                                    :
            Debtors.                                :   (Jointly Administered)
                                                    :
                                                    :   Re: Docket Nos. 28, 110, 194
-------------------------------------------------- x
```

**ORDER (I) AUTHORIZING AND APPROVING THE DEBTORS'**
**ENTRY INTO AN ASSET PURCHASE AGREEMENT WITH**
**SHERRILL-LUBINSKI, LLC AND ETI-NET INC.,**
**(II) AUTHORIZING THE SALE OF THE PURCHASED ASSETS FREE AND**
**CLEAR OF ALL LIENS, ENCUMBRANCES, CLAIMS AND INTERESTS, (III)**
**APPROVING THE ASSUMPTION AND ASSIGNMENT OF THE SELECTED**
**ASSIGNED CONTRACTS, AND (IV) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 28] (the "**Motion**"),² of the above-captioned debtors and

debtors in possession (collectively, the "**Debtors**") for entry of an order (this "**Order**"), among

other things, (a) authorizing and approving the Debtors' entry into and performance under the

Purchase Agreement (as defined below) with the Buyer (as defined below), (b) authorizing the

Sale Transactions (as defined below), free and clear of any Encumbrances (as defined below), (c)

authorizing and approving the assumption and assignment of the Assumed Agreements and

Assumed Real Property Leases in connection with the Sale Transactions, and (d) granting related

relief; and this Court having previously entered the *Order (I) Authorizing and Approving (A) the*

---

¹ The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are:  Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions, LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508).  The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

² Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion or the Purchase Agreement (as defined below), as applicable.

*Bidding Procedures for Sale of the Debtors' Assets Free and Clear, (B) the Scheduling of an Auction and Sale Hearing, (C) the Form and Manner of Notice of Sales, Auctions, and Sale Hearings, (D) the Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) the Designation of Stalking Horse Bidders, and (F) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Authorizing Designation of Stalking Horse Bidders, and (III) Granting Related Relief* [Docket No. 110] (the "**Bidding Procedures Order**"), authorizing and approving, among other things, Bidding Procedures for the Purchased Assets; and the Auction having been held from July 17, 2025 through July 19, 2025 for the Purchased Assets, including the Purchased Assets, in accordance with the Bidding Procedures Order; and the Debtors having executed that certain *Asset Purchase Agreement* dated as of July 27, 2025 (the "**Purchase Agreement**"), by and among Zen JV, LLC, Monster Government Solutions, LLC, as sellers and Sherrill-Lubinski, LLC and ETI-NET Inc., as Buyers (collectively, the "**Buyer**"), a copy of which is attached hereto as **Exhibit 1**, contemplating the Sale of the Purchased Assets identified therein (the "**Sale Transaction**") free and clear of any Encumbrances, the assumption and assignment to the Buyer of the Assumed Agreements and the Assumed Real Property Leases; and the Debtors having filed the *Notice of (I) Auction Transcript and (II) Successful and Backup Bids* [Docket No. 194] (the "**Notice of Successful Bids**"), announcing that, in accordance with the Bidding Procedures Order and after consultation with the Consultation Parties, the Debtors decided, in their reasonable business judgment, to designate the Buyer as the highest or otherwise best bidder for the Purchased Assets pursuant to the Purchase Agreement following the Auction; and this Court having conducted a hearing on July 28, 2025, to consider approval of the Sale Transaction (the "**Sale Hearing**") in accordance with the Bidding Procedures Order; and this Court having reviewed and considered (i) the Motion and the exhibits

2

thereto, (ii) the Bidding Procedures Order, (iii) the Purchase Agreement, (iv) the *Declaration of James Lilly in Support of the Debtors' Sales* (the "**PJT Declaration**"), (v) the results of the Auction, (vi) the objections and other responses to approval of the Sale Transaction, and (vii) the arguments and representations of counsel made, and the evidence proffered or adduced at, the Sale Hearing; and all parties in interest having been heard or having had the opportunity to be heard regarding the Sale Transaction and the relief requested in the Motion and provided in this Order; and due and sufficient notice of the Sale Hearing and the relief sought therein having been given under the particular circumstances of the Chapter 11 Cases (as defined herein) and in accordance with the Bidding Procedures Order; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion and provided in this Order is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion, the PJT Declaration, and at the Sale Hearing, establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**[3]

A.    **Jurisdiction and Venue.** This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Chapter 11 Cases is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. All findings of fact and conclusions of law announced by this Court at the Sale Hearing are hereby incorporated to the extent not inconsistent herewith.

B.      **Statutory and Legal Predicates.** The statutory and legal predicates for the relief requested in the Motion are sections 105, 363, and 365 of the Bankruptcy Code. Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6004, 6006, and 9006 and Local Rules 2002-1 and 6004-1.

C.      **Final Order.** This Order is intended to constitute a final and appealable order within the meaning of 28 U.S.C. § 158(a). Time is of the essence in closing the Sale referenced herein; the Debtors and Buyer intend to close the Sale as soon as practicable, and there is no just reason for delay in implementing this Order. The Sale must be approved and consummated promptly to preserve the viability of the business in the hands of Buyer as a going concern, and to maximize the value for the Debtors, their estates, their creditors, and all other parties in interest. Accordingly, there is cause to lift the stays contemplated by Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and to the extent necessary, to treat this Order as a final judgment for purposes of Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable under Bankruptcy Rule 7054.

D.      **Notice.** On June 24, 2025 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "**Court**"). The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

E.      On July 2, 2025, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed [Docket No. 65] the official committee of unsecured creditors (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code.

4

F.     The Debtors gave due and proper notice of the proposed Sale, Auction, and Sale Hearing on July 8, 2025 [Docket No. 111] (the "**Sale Notice**"). The Sale Notice constituted good, sufficient, and appropriate notice of the Sale under the particular circumstances, and no further notice need be given with respect to the proposed Sale. As provided by the Sale Notice, a reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities. Other parties interested in bidding on the Purchased Assets were provided, pursuant to the Bidding Procedures Order, sufficient information to make an informed judgment on whether to bid.

G.     As evidenced by the affidavits of service [Docket Nos. 68, 117, 118, 136, 148, 176, 187, 190, and 195] previously filed with this Court, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and sufficient notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Assumption and Assignment Procedures, the Purchase Agreement, this Order, the Notice of Successful Bids, and the Sale Transaction has been provided in accordance with sections 102(1), 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008, and 9014, and Local Rules 2002-1 and 6004-1. The Debtors have complied with all obligations to provide notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Assumption and Assignment Procedures, the Purchase Agreement, this Order, the Notice of Successful Bids, and the Sale Transaction as required by the Bidding Procedures Order. The aforementioned notices are good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures Order, the Assumption and Assignment Procedures, the Auction, the Sale Hearing, the Purchase Agreement, this Order, the Notice of Successful Bids, or the Sale Transaction is or shall be required.

RLF1 33350561v.1
4929-5215-1382.12

H.        A reasonable opportunity to object or be heard regarding the relief requested in the Motion and provided in this Order was afforded to all parties in interest including, without limitation, the following: (i) all persons known or reasonably believed to have asserted an interest in the Purchased Assets; (ii) the Non-Debtor Counterparties to the Assigned Contracts; (iii) the Attorneys General in the States where the Purchased Assets are located; (iv) all federal, state, and local taxing authorities in the State(s) where the Purchased Assets are located; (v) all parties that have asserted Liens against the Purchased Assets; (vi) all parties included on the Debtors' consolidated creditor matrix and all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002; (vii) counsel to the DIP Lender (as defined in the DIP Order); and (viii) the Office of the United States Trustee for the District of Delaware.

I.        **Compliance with the Bidding Procedures Order.** As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtors have complied in all material respects with the Bidding Procedures Order. The Debtors and their professionals have adequately and appropriately marketed the Purchased Assets in compliance with the Bidding Procedures and the Bidding Procedures Order, and in accordance with the Debtors' fiduciary duties. Based upon the record of these proceedings, creditors, other parties in interest, and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Purchased Assets.

J.        The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair, and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Purchased Assets. The Debtors conducted the sale process without collusion and in accordance with the Bidding Procedures.

6

K.      The Buyer is the designated Successful Bidder, and the Purchase Agreement is designated the Successful Bid for the Purchased Assets enumerated therein in accordance with the Bidding Procedures Order.

L.      The Purchase Agreement, including the form and total consideration to be realized by the Debtors under the Purchase Agreement, (a) constitutes the highest or otherwise best offer received by the Debtors for the Purchased Assets; and (b) is fair and reasonable.

M.      **Business Judgment.** The Debtors' determination that the consideration provided by the Buyer under the Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets is reasonable and constitutes a valid and sound exercise of the Debtors' business judgment.

N.      The Debtors have demonstrated good, sufficient and sound business reasons and justifications for entering into the Sale Transaction and the performance of their obligations under the Purchase Agreement, including, but not limited to, the fact that (a) the consideration provided by the Buyer under the Purchase Agreement will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative, including a separate liquidation of the Purchased Assets; and (b) unless the Sale Transaction is concluded expeditiously as provided for in the Motion and pursuant to the Purchase Agreement, creditor recoveries will be diminished.

O.      **Notice of Assumption and Assignment.** On July 3, 2025, the Debtors filed the *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. 82] (the "**Initial Cure Notice**"). On July 11, 2025, the Debtors filed the *Supplemental Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. 123] (the "**Supplemental Cure Notice**"). On July 14, 2025, the

7

Debtors filed the *Amended Supplemental Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. 129] (the "**Amended Cure Notice**," together with the Initial Cure Notice and the Supplemental Cure Notice, the "**Cure Notices**") which identified the Executory Contracts and Unexpired Leases that may be assumed and assigned as part of the Sale Transaction. On July 16, 2025, the Debtor filed a *Notice of Amendment to Contracts Schedule of Potentially Assigned Contracts* [Docket No. 186], which modified the Cure Payments associated with certain of the Executory Contracts and Unexpired Leases.

P.    With respect to each of the Selected Assigned Contracts (as defined in the Cure Notices), the Debtors have met all requirements of sections 365(a) and (b) of the Bankruptcy Code. Further, in compliance with the requirements of sections 365(b) and 365(f) of the Bankruptcy Code, Buyer has provided adequate assurance of future performance under the Selected Assigned Contracts to the extent that any such assurance is required and not waived by the counterparties to such Selected Assigned Contract; *provided* that the Buyer shall have complied with the requirements set forth in Section 2.5 of the Purchase Agreement. Accordingly, the Selected Assigned Contracts may be assumed by the Debtors and assigned to Buyer as provided for in the Purchase Agreement and this Order. Furthermore, with respect to the subsequent assumption and assignment of the Selected Assigned Contracts pursuant to Section 2.5 of the Purchase Agreement, the procedures contained herein will satisfy section 365(b) and (f) the Bankruptcy Code for any subsequent assumption and assignment.

Q.    **Good Faith.** The sale process engaged in by the Debtors and the Buyer, including, without limitation, the Auction, which was conducted in accordance with the Bidding Procedures and the Bidding Procedures Order, and the negotiation of the Purchase Agreement was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties in interest.

8

Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the Sale Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

R.     The Debtors and the Buyer have complied, in good faith, in all respects with the Bidding Procedures Order and the Bidding Procedures. The Debtors and the Buyer each actively participated in the bidding process and in the Auction, and each acted in good faith and without collusion or fraud of any kind. The Buyer submitted its bid to competitive bidding in accordance with the Bidding Procedures and was designated the Successful Bidder for the Purchased Assets in accordance with the Bidding Procedures and the Bidding Procedures Order.

S.     The Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision in respect of the Sale Transaction and each term of the Purchase Agreement (and any ancillary documents executed in connection therewith) and each term of this Order, and otherwise has proceeded in good faith in all respects in connection with this proceeding. Neither the Debtors nor the Buyer has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code. The Debtors were free to deal with any other party interested in buying or selling some or all of the Purchased Assets on behalf of the Debtors' estates. The protections afforded by Bankruptcy Code section 363(m) are integral to the Sale Transaction and the Buyer and would not consummate the Sale Transaction without such protections.

T.     The form and total consideration to be realized by the Debtors under the Purchase Agreement constitutes fair value, fair, full, and adequate consideration, reasonably equivalent value, and reasonable market value for the Purchased Assets.

RLF1 33350561v.1
4929-5215-1382.12

U.      **Title in the Purchased Assets**.  The Purchased Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Debtors are the sole and lawful owners of the Purchased Assets.

V.      **Buyer is Not an Insider.** Neither the Buyer nor any of its affiliates, officers, directors, managers, shareholders, members or any of their respective successors or assigns is an "insider" of the Debtors, as that term is defined under section 101(31) of the Bankruptcy Code. No common identity of directors, managers, controlling shareholders, or members exists between the Debtors and the Buyer.

W.      **No Fraudulent Transfer.** The consideration provided by the Buyer for the Purchased Assets pursuant to the Purchase Agreement (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Purchased Assets, (c) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other practical available alternative, and (d) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession, and the District of Columbia.

X.      The Purchase Agreement was not entered into, and neither the Debtors nor the Buyer has entered into the Purchase Agreement or propose to consummate the Sale Transaction, for the purpose of (a) escaping liability for any of the Debtors' debts, or (b) hindering, delaying or defrauding the Debtors' present or future creditors, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

10

Y.      **Free and Clear.** The transfer of the Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets, and will vest the Buyer with all right, title, and interest of the Debtors in the Purchased Assets free and clear of all claims (including, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof), Excluded Liabilities (as defined in the Purchase Agreement), liens (including, without limitation, any statutory, mechanic's, builders, materialmen's or similar lien on real and/or personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof), liabilities, interests, rights, and encumbrances relating to, accruing, or arising any time prior to the Closing Date, including, without limitation, the following: all mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, sublicenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, offsets (except for offsets exercised prior to the Petition Date), contract rights, rights of setoff (except for setoffs exercised prior to the Petition Date), rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, to the greatest degree allowed by applicable law environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, regulatory violations by any governmental entity, decrees of any court (other than this Court) or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other

11

commitment rights and claims, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, senior or subordinated, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor or transferee liability or related theories (all of the foregoing, but excluding Assumed Liabilities and the Permitted Encumbrances, collectively being referred to in this Order as "**Encumbrances**").

Z.      The Debtors may sell and assign the Purchase Assets free and clear of all Encumbrances, as applicable, because with respect to each creditor asserting an Encumbrance, one or more of the standards set forth in section 363(f)(1)-(5) have been satisfied. Those holders of Encumbrances who did not object or who withdrew their objections to the Motion are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Encumbrances who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Encumbrances, if any, attach to the proceeds of the Sale ultimately attributable to the Purchased Assets in which such holders allege an Encumbrance in the same order of priority, with the same validity, force, and effect that such holder had prior to such Sale, and subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

AA.     The Debtors, to the extent permitted by applicable law, may transfer the Purchased Assets free and clear of all Encumbrances, including, without limitation, rights or claims based

on any successor or transferee liability, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

BB.    The Debtors have, to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code.

CC.    The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction, if (a) the transfer of the Purchased Assets were not free and clear of all Encumbrances, or (b) the Buyer would, or in the future could, be liable for or subject to any such Encumbrances.

DD.    The Buyer will not consummate the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction, unless this Court expressly orders that none of the Buyer, its respective affiliates, its respective present or contemplated members or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff (except for setoffs exercised prior to the Petition Date), or otherwise, directly or indirectly, any Encumbrances.

EE.    Not transferring the Purchased Assets free and clear of all Encumbrances would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Purchased Assets other than pursuant to a transfer that is free and clear of all Encumbrances would be of substantially less benefit to the Debtors' estates. Buyer would not have entered into the Purchase Agreement to acquire the Purchased Assets, and would exercise its right to terminate the Purchase Agreement, if the sale of the Purchased Assets were to be transferred to it other than free and clear of all Encumbrances.  A sale of the Purchased Assets other than one free and clear of all Encumbrances would adversely impact the Debtors' estates, and would yield substantially

13

less value for the Debtors' estates, with less certainty than the Sale. Therefore, the Sale contemplated in the Purchase Agreement is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

FF. As a result of any action taken in connection with the Purchase Agreement, the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction, or the transfer or operation of the Purchased Assets, (a) neither the Buyer nor any of its affiliates shall be deemed to be a mere continuation of any of Debtors or their estates, nor shall there be deemed to be a continuity or common identity between the Buyer, any of the Debtors, or any of their respective affiliates, or any continuity of enterprise between the Buyer, any of the Debtors, or any of their respective affiliates; (b) neither the Buyer nor any of its affiliates shall be deemed to be holding themselves out to the public as a continuation of any of the Debtors; and (c) neither the Buyer nor any of its affiliates are to be deemed a successor to any of the Debtors or their estates and none of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction amounts to a consolidation, merger, or *de facto* merger of the Buyer or any of its affiliates with or into any of the Debtors.

GG. Without limiting the generality of the foregoing, and other than as may be set forth in the Purchase Agreement, none of the Buyer, its affiliates, the present or contemplated members or shareholders of the Buyer, and its affiliates, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff (except for setoffs exercised prior to the Petition Date), or otherwise, directly or indirectly, any Encumbrances relating to any U.S. federal, state or local income tax liabilities, that the Debtors may incur in connection with consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction, or that the Debtors

14

have otherwise incurred prior to the consummation of the transactions contemplated by the Purchase Agreement.

HH.    **Validity of Transfer.** The consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) thereof, and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Purchase Agreement.

II.    The Purchase Agreement has been duly and validly executed and delivered by the Debtors and, subject to the terms of the Purchase Agreement, shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with its terms. The Purchase Agreement, the Sale Transaction, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 7 or chapter 11 trustee appointed in these Chapter 11 Cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other person.

JJ.    **Compelling Circumstances for an Immediate Sale.** To maximize the value of the Purchased Assets, it is essential that the transactions contemplated by the Purchase Agreement occur within the time constraints set forth therein. Time is of the essence in consummating the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

KK.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of

15

the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction. The transactions contemplated by the Purchase Agreement neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan for the Debtors, and therefore, do not constitute a *sub rosa* plan.

LL.     **Assumption, Assignment and/or Transfer of the Assumed Agreements or Assumed Real Property Leases**. The Debtors have demonstrated (a) that it is an exercise of their sound business judgment to assume and assign the Assumed Agreements or Assumed Real Property Leases to the Buyer, in connection with the consummation of the Sale Transaction and (b) that the assumption and assignment of the Assumed Agreements or Assumed Real Property Leases to the Buyer is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. The Assumed Agreements or Assumed Real Property Leases being assigned to the Buyer is an integral part of the Purchased Assets being purchased by the Buyer and, accordingly, such assumption, assignment and cure of any defaults under the Assumed Agreements or Assumed Real Property Leases are reasonable and enhance the value of the Debtors' estates. Each and every provision of the documents governing the Purchased Assets or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any of the Purchased Assets, if any, has been or will be satisfied or are otherwise unenforceable under section 365 of the Bankruptcy Code. Any non-Debtor counterparty to an Assumed Agreement or Assumed Real Property Lease that has not filed with the Court an objection to such assumption and assignment in accordance with the terms of the Motion is deemed to have consented to such assumption and assignment.

16

MM.    To the extent necessary or required by applicable law, the Debtors have or will have as of the Closing: (a) cured, or provided adequate assurance of cure, of any default existing prior to the Closing with respect to the Assumed Agreements or Assumed Real Property Leases, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (b) provided compensation, or adequate assurance of compensation, to any party for any actual pecuniary loss to such party resulting from such default, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.

NN.    The promise of the Buyer to perform the obligations first arising under the Assumed Agreements or Assumed Real Property Leases after the assumption and assignment to the Buyer constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the counterparty to the Assumed Agreement or Assumed Real Property Lease.

OO.    **Consumer Privacy.** The Buyer satisfies and shall comply with the following "qualified buyer" criteria: (a) the Buyer operates in a line of business that is substantially similar to the Debtor; (b) the Buyer will be Debtor's successor-in-interest as to the Personal Information (as defined in the Purchase Agreement) acquired from the Debtor; (c) the Buyer will not disclose, sell, or transfer Personal Information acquired from Debtor to any third party in a manner inconsistent with the relevant Debtor's privacy policy in effect as of the Closing Date, without obtaining consent from the individual to whom the Personal Information relates; (d) the Buyer will be responsible for any violation of the relevant Debtor's privacy policy that occurs following the Closing Date.

PP.    Following entry of this Order, Debtor shall (a) provide a notice via email to relevant consumers regarding the change of control over their Personal Information and advising them of

17

the rights that may be available to them under applicable U.S. state privacy laws, and (b) post a similar notice on the relevant Debtor websites and mobile applications. Buyer shall not be responsible for the content or delivery of such notices.

QQ.     To the extent reasonably feasible and required by applicable non-Bankruptcy law, Buyer and Debtor agree to reasonably cooperate with respect to maintaining records with respect to consumer requests for a period of twenty-four (24) months following the entry of this Order.

RR.     Following entry of this Order, the Buyer shall file with this Court a statement under oath that it has complied with the conditions imposed to protect Personal Information, including that the Buyer reasonably believes it satisfies the "qualified buyer" criteria set forth above as of the Closing Date.

SS.     The legal and factual bases set forth in the Motion and presented at the Sale Hearing establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     The Motion is granted as provided herein, and entry into and performance under, and in respect of, the Purchase Agreement attached hereto as **Exhibit 1** and the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction, is authorized and approved.

2.     Any objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice. All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief granted herein, including for purposes of sections 363(f)(2), 365(c)(1), and 365(e)(2) of the Bankruptcy Code.

18

### A.    <u>Approval of the Purchase Agreement</u>

3.      The Debtors are authorized to enter into the Purchase Agreement (and all ancillary documents), all of the terms and conditions thereof, and all of the transactions contemplated therein including, without limitation, any amendment to the Purchase Agreement that the Debtors and the Buyer determine is necessary or desirable to ensure the Sale related to Buyer is consummated in accordance with the Purchase Agreement, and the Debtors are authorized to make such modifications to supplements reasonably acceptable to the Debtors and Buyer to any bill of sale or other document or instrument executed or to be executed in connection with the transactions. The consummation of the transactions is hereby authorized under sections 363(b) and 365 of the Bankruptcy Code.

4.      The Debtors and their respective officers, employees and agents are authorized to take any and all actions necessary, appropriate or reasonable to perform, consummate, implement and close the Sale Transaction, including, without limitation, (a) the sale to the Buyer of all Purchased Assets, in accordance with the terms and conditions set forth in the Purchase Agreement and this Order, and (b) execution, acknowledgment and delivery of such deeds, assignments, conveyances and other assurance, documents and instruments of transfer and any action for purposes of assigning, transferring, granting, conveying and confirming to the Buyer, or reducing to possession, the Purchased Assets, all without further order of this Court. The Debtors are further authorized to pay, without further order of this Court, whether before, at or after the Closing Date, any expenses or costs that are required to be paid by the Debtors under the Purchase Agreement, this Order, or the Bidding Procedures Order, in order to consummate the Sale Transaction or perform their obligations under the Purchase Agreement.

5.       All persons and entities, including, without limitation, the Debtors, the Debtors' estates, any and all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trustees, trade creditors, and any other creditors (any or affiliate, agent, successor, or assign of any of the foregoing) who may or do hold claims or other Encumbrances against the Debtors or the Purchased Assets, arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation or ownership of the Purchased Assets by the Debtors prior to the Closing Date, or the Sale Transaction, are hereby prohibited, forever barred and estopped from asserting or pursuing such claims or other Encumbrances against the Buyer, its affiliates, successors, assigns, or property, or the Purchased Assets, including, without limitation, taking any of the following actions with respect to any claims or other Encumbrances: (a) commencing or continuing in any manner any action, whether at law or in equity, in any judicial, administrative, arbitral, or any other proceeding, against the Buyer, its affiliates, successors, assigns, Purchased Assets (including the Purchased Assets), and/or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, its affiliates, successors, assigns, Purchased Assets (including the Purchased Assets), and/or properties; (c) creating, perfecting, or enforcing any claim or other Encumbrance against the Buyer, its affiliates, any of their respective successors, assigns, Purchased Assets (including the Purchased Assets), and/or properties; (d) asserting a claim or other Encumbrance as a setoff (except for setoffs exercised prior to the Petition Date), or right of subrogation, of any kind against any obligation due against the Buyer, its affiliates or any of their respective successors or assigns; or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order, the Purchase Agreement, or the agreements or actions contemplated or taken in respect

20

thereof, including the Debtors' ability to transfer the Purchased Assets to the Buyer in accordance with the terms of this Order and the Purchase Agreement. No such Person shall assert or pursue any such claim or other Encumbrance against the Buyer or its affiliates, successors or assigns.

6.     The sale of the Purchased Assets to the Buyer under the Purchase Agreement constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and laws of all applicable jurisdictions, including, without limitation, the laws of each jurisdiction in which the Purchased Assets are located, and the sale of the Purchased Assets to the Buyer may not be avoided under any statutory or common law fraudulent conveyance and fraudulent transfer theories whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

**B.     Transfer of the Purchased Assets Free and Clear**

7.     Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be sold free and clear of all Encumbrances, with all such Encumbrances to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect which they now have as against the Purchased Assets, subject to any ~~claims~~rights, claims, and defenses the Debtors, the Debtors' estates or any trustee for any Debtor, or any statutory committee or any party (to the extent any such rights, claims, and defenses exist), as applicable, may possess with respect thereto; *provided*, *however*, that setoff rights will be extinguished to the extent there is no longer mutuality after the consummation of the Sale Transaction, except for setoffs exercised prior to the Petition Date.

8.     On the Closing Date, all of the Debtors' right, title and interest in and to, and possession of, the Purchased Assets shall be immediately vested in the Buyer pursuant to sections

105(a), 363(b), and 363(f) of the Bankruptcy Code free and clear of any and all Encumbrances. Such transfer shall constitute a legal, valid, binding and effective transfer of, and shall vest the Buyer with, all of the Debtors' right, title and interest in and to, and possession of the Purchased Assets. All person or entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets are authorized to surrender possession of the Purchased Assets to the Buyer on the Closing Date or at such time thereafter as the Buyer may request.

9.      This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction.

10.      Except as otherwise expressly provided in the Purchase Agreement or this Order, all persons and entities (and their respective successors and assigns), including, but not limited to, any and all debt security holders, equity security holders, affiliates, foreign, federal, state and local governmental, tax and regulatory authorities, lenders, customers, vendors, employees, former employees, trade creditors, litigation claimants and other creditors holding claims or other Encumbrances against the Debtors or the Purchased Assets arising under or out of, in connection with, or in any way relating to, the Debtors, the Debtors' predecessors or affiliates, the Purchased Assets, the ownership, sale or operation of the Purchased Assets prior to Closing Date or the

RLF1 33350561v.1
4929-5215-1382.12

transfer of the Purchased Assets to the Buyer, are hereby forever barred and estopped from asserting or prosecuting any cause of action or any process or other act or seeking to collect, offset (except for offsets exercised prior to the Petition Date), or recover on account of any claims or other Encumbrances against the Buyer, its successors or assigns, their property or the Purchased Assets. Following the Closing Date, no holder of any claim shall interfere with the Buyer's title to or use and enjoyment of the Purchased Assets based on or related to any such Claim, or based on any action or omission of any Debtor, including any action or omission of any Debtor in these Chapter 11 Cases.

11.    The Debtors are authorized to execute such documents as may be necessary to release any Encumbrances of any kind against the Purchased Assets as such Encumbrances may have been recorded or may otherwise exist. If any person or entity that has filed financing statements, mechanic's liens, *lis pendens* or other documents or agreements evidencing Encumbrances against or in the Purchased Assets shall not have delivered to the Debtors prior to the Closing Date of the Sale Transaction, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction, releases of all Encumbrances that such person or entity has with respect to the Purchased Assets, (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets; (b) the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all such Encumbrances against the Buyer and the applicable Purchased Assets; (c) the Debtors' creditors and the holders of any Encumbrances are authorized to execute such documents and take all other actions as may be necessary to terminate, discharge or release their Encumbrances in the

23

Purchased Assets; and (d) the Buyer may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction and releases of all such Encumbrances with respect to the Purchased Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office, and such agencies, departments and offices are authorized to accept this Order for filing or recording. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of Encumbrances shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

12.     To the maximum extent permitted under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, authorized to be transferred to the Buyer with respect to the Purchased Assets as of the Closing Date. To the extent the Buyer cannot operate under any such license, permit, registration and governmental authorization or approval in accordance with the previous sentence, then to the maximum extent permitted under applicable law, such licenses, permits, registrations and governmental authorizations and approvals shall be in effect while the Buyer, with assistance from the Debtors (and at the Buyer's sole cost and expense), works promptly and diligently to apply for and secure all necessary government approvals for new issuance of such licenses, permits, registrations and governmental authorizations and approvals to the Buyer.

RLF1 33350561v.1
4929-5215-1382.12

13. No governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale Transaction to the extent that any such action by a governmental unit or any representative thereof would violate section 525 of the Bankruptcy Code

### C.    **No Successor Liability**

14. Upon the Closing Date, except as provided in the Purchase Agreement, the entry of this Order and the approval of the terms of the Purchase Agreement shall mean that the Buyer (and any of its affiliates, successors, or assigns), as a result of any action taken in connection with the Purchase Agreement, the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction, or the transfer or operation of the Purchased Assets, shall not be deemed to: (a) be a legal successor or successor employer to any Debtor (including with respect to any health or benefit plans), or otherwise be deemed a successor to any Debtor, and shall instead be, and be deemed to be, a new employer with respect to all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (b) have, *de facto*, or otherwise, merged or consolidated or de facto merged with or into any Debtor; or (c) be an alter ego or a mere continuation or substantial continuation of any Debtor or the enterprise of any Debtor, including, in the case of each of (a)-(c), without limitation, (i) within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.) ("**WARN**"), to the greatest degree allowed by applicable law the Comprehensive Environmental Response Compensation and Liability Act ("**CERCLA**"),

25

the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age

Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973

(as amended), the National Labor Relations Act, 29 U.S.C. § 151, et seq. or (ii) in respect of (1) to

the greatest degree allowed by applicable law any environmental liabilities, debts, claims or

obligations arising from conditions first existing on or prior to the Closing Date (including, without

limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes),

which may be asserted on any basis, including, without limitation, under CERCLA, (2) any

liabilities, penalties, costs, debts or obligations of or required to be paid by the Debtors for any

taxes of any kind for any period, labor, employment, or other law, rule or regulation (including,

without limitation, filing requirements under any such laws, rules or regulations), or (3) any

products liability law or doctrine with respect to the Debtors' liability under such law, rule or

regulation or doctrine.

15.    Without limiting the generality of the foregoing, and except as otherwise provided

in the Purchase Agreement and this Order, neither the Buyer nor any of its affiliates shall have any

responsibility for any (a) liability or other obligation of the Debtors related to the Purchased Assets,

or (b) claims against the Debtors or any of their predecessors or affiliates. By virtue of the Buyer's

purchase of the Purchased Assets, neither the Buyer nor any of its affiliates shall have any liability

whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses

or operations or any of the Debtors' (or its predecessors' or affiliates') obligations based, in whole

or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or

character, or based upon any theory of antitrust, to the greatest degree allowed by applicable law

environmental (including, but not limited to CERCLA), successor or transferee liability, de facto

merger or substantial continuity, labor and employment (including, but not limited to, WARN) or

26

products liability law, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of the Debtors' employment agreements or health or benefit plans, any settlement or injunction or any liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing Date (collectively, with the potential claims set forth in paragraph 14 "**Successor Liability**"). The Buyer would not have acquired the Purchased Assets but for the foregoing protections against Successor or Transferee Liability.

> D.    **Assumption and Assignment of Assumed Agreements and Assumed Real Property Leases.**

16.    ~~Notwithstanding~~Subject to paragraph 38, notwithstanding any provision of any contract governing the Purchased Assets, including any Assumed Agreement or Assumed Real Property Lease to be assumed and assigned to the Buyer as of the Closing pursuant to section 365(f) of the Bankruptcy Code or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Purchased Assets, including any Assumed Agreements or Assumed Real Property Leases, at the Closing, the Debtors shall, in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code, (i) assign the Purchased Assets to the Buyer and (ii) assume and assign the Assumed Agreements or Assumed Real Property Leases to the Buyer as of the Closing, in each case, which assignments shall take place on and be effective as of the Closing or such other date after the Closing Date, subject to the terms of the Purchase Agreement, this Order, the Bidding Procedures Order, or as otherwise provided by a separate order of this Court.

17.    To the fullest extent permitted by the Bankruptcy Code, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the counterparty to an Assumed Agreement or Assumed Real Property Lease is forever barred from raising or asserting against Buyer any assignment fee,

rent acceleration, rent increase on account of assignment, default, breach, claim, pecuniary loss, or condition to assignment, arising under or related to an Assumed Agreement or Assumed Real Property Lease, existing as of the date that such an Assumed Agreement or Assumed Real Property Lease is assumed, assigned and sold or arising by reason of the Closing. Notwithstanding any term of any Assumed Agreement or Assumed Real Property Lease to the contrary, any extension or renewal options or other rights contained in such an Assumed Agreement or Assumed Real Property Lease that purport to be personal only to, or exercisable only by, the Debtors, a named entity, or an entity operating under a specific trade name, may, in each case, be freely exercised to their full extent by the Buyer subject to the other applicable terms of the an Assumed Agreement or Assumed Real Property Lease.

**E.      Assumption, Assignment, and Rejection Procedures.**

18.      From and after the date of the Purchase Agreement until five (5) Business Days prior to the Closing, the Buyer may, in its sole discretion, designate any Contract of any Selling Entity as an Assumed Agreement or Assumed Real Property Lease, as applicable, or remove any such Contract from Section 2.1(c) or Section 2.1(d) of the Seller Disclosure Schedule, respectively, such that it is not an Assumed Agreement or Assumed Real Property Lease, in each case by providing written notice of such designation or removal to the Seller (the "**Contract Notice**"), in which case Section 2.1(c) or Section 2.1(d) of the Seller Disclosure Schedule, as applicable, shall automatically be deemed to be amended to include or remove, as applicable, such Contract as an Assumed Agreement or an Assumed Real Property Lease, in each case, without any adjustment to the Purchase Price (other than any Cure Payment).

19.      In the case of any amendment by the Buyer of Section 2.1(c) or Section 2.1(d) of the Seller Disclosure Schedule pursuant to Section 2.5(b) of the Purchase Agreement, within three

(3) business days of the Debtors' receipt of a Contract Notice, the Seller shall give notice (the "**Supplemental Contract Notice**") to the other parties to any Contract to which such amendment relates of the removal or addition of such Contract from Section 2.1(c) or Section 2.1(d) of the Seller Disclosure Schedule as applicable.   A counterparty to a Contract that is assumed and assigned pursuant to Section 2.5(b) of the Purchase Agreement may only object to assumption and assignment of the Contract if the Contract was not previously included on the Cure Notices.  If the Contract was not previously included on the Cure Notices, the deadline to object to any Cure Payment or to assumption and assignment on any basis is the date that is 10 days after service of the Supplemental Contract Notice. For the avoidance of doubt, a Contract that is the subject of a properly filed objection, may not be assumed and assigned until the objection is resolved or otherwise overruled by the Court.

20.    The Debtors are hereby authorized in accordance with section 365 of the Bankruptcy Code and the procedures set forth in this Order and in the Purchase Agreement to assume and assign the Selected Assigned Contracts to Buyer free and clear of all Liens, and to execute and deliver to Buyer such documents or other instruments as may be necessary to assign and transfer the Selected Assigned Contracts to Buyer as provided in the Purchase Agreement. Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Selected Assigned Contracts assumed and assigned in accordance with the procedures set forth in the Purchase Agreement and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from further liability with respect to Selected Assigned Contracts.

21.    Payment of the Cure Payments (as set forth in the Purchase Agreement and in the amount agreed to by the parties or provided in an order of this Court) shall be in full satisfaction and cure of any and all defaults under the Selected Assigned Contracts, whether monetary or non-

monetary. Each non-Debtor party to a Selected Assigned Contract is forever barred and estopped from asserting against the Debtors or Buyer, their successors or assigns, or the property of any of them, any default existing as of the date of the Sale Hearing if such default was not timely raised or asserted prior to or at the Sale Hearing. Except as expressly set forth herein, to the extent a counterparty to a Selected Assigned Contract failed to timely object to the Cure Payments prior to the Sale Hearing, such Cure Payments have been and shall be deemed to be fully determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Payments and/or the assumption and assignment of the Selected Assigned Contract at any time. Notwithstanding anything to the contrary in this Order, a counterparty to an Selected Assigned Contract shall not be barred from seeking additional Cure Payments on account of any monetary defaults occurring between the Contract Objection Deadline and the assumption of such Contract; *provided* that the Debtors' and Buyer's right to object to any such request are fully reserved and preserved; *provided*, *however*, that any such request shall be asserted no later than seven (7) days after the Debtors file and serve a notice of the Closing of the Sale Transaction (the "Extended Cure Objection Deadline"); *provided*, *further*, if no such request is made by the Extended Cure Objection Deadline, all such Cure Payments on account of any defaults occurring between the Contract Objection Deadline and the assumption of such Contract shall be deemed to be fully determined and any such counterparty shall be barred from challenging, objecting to, or denying the validity and finality of the Cure Payments and/or the assumption and assignment of the Selected Assigned Contract at any time.

22.     Upon the Debtors' assignment of Selected Assigned Contracts to Buyer, no default shall exist under any Selected Assigned Contracts, and no counterparty to any Selected Assigned Contract shall be permitted to declare a default by any Debtor or Buyer, or otherwise take action

RLF1 33350561v.1
4929-5215-1382.12

against Buyer, as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Selected Assigned Contract. Any provision in a Selected Assigned Contract that prohibits or conditions the assignment or sublease of such Selected Assigned Contract or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect, but only in connection with the assumptions and assignments authorized by this Order. The failure of the Debtors or Buyer to enforce at any time one or more terms or conditions of any Selected Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' or Buyer's rights to enforce every term and condition of the Selected Assigned Contract.

23.     Promptly after the Closing Date, the Debtors shall file with the Court a notice indicating the Sale Transaction has closed, and such notice shall contain a complete list of all Selected Assigned Contracts assigned to Buyer.

**F.     Good Faith; Arm's Length Sale**

24.     23. The Purchase Agreement has been negotiated and executed, and the transactions contemplated thereby, including, without limitation, the Sale Transaction, are and have been undertaken by the Debtors, the Buyer and their respective representatives at arm's length, without collusion and in "good faith," as such term is defined in section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction or any term of the Purchase Agreement, and shall not permit the unwinding of the Sale Transaction. The Buyer is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections under section 363(m) of the Bankruptcy Code.

31

25.  ~~24.~~ Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the transactions contemplated thereby, including, without limitation, the Sale Transaction, to be avoided, or for costs, or damages or costs to be imposed, under section 363(n) of the Bankruptcy Code. The consideration provided by the Buyer for the Purchased Assets under the Purchase Agreement is fair and reasonable, and the Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

**G.**   **Related Relief**

26.  Notwithstanding anything to the contrary in this Order or the Purchase Agreement, no Contract between the Debtor and Oracle America, Inc.,  ("Oracle") will be assumed and/or assigned without (1) Oracle's prior written consent; (2) cure of any default under such contract; (3) the provision to Oracle of satisfactory adequate assurance of future performance by the assignee; and (4) execution by the Debtor or its successor and the assignee of mutually agreeable assignment documentation in a final form to be negotiated after entry of this Order.  In addition, no provision of this Order or the Transition Services Agreement shall authorize (1) the transfer of any Oracle license agreement to any third party; or (2) use of any Oracle license agreement that is inconsistent with the relevant license grant including, but not limited to, exceeding the number of authorized users, shared use or license splitting, absent Oracle's express prior written consent.

27.  ~~25.~~ Pursuant to the DIP Orders and the Bidding Procedures Order, all cash proceeds generated from the Sale of the Purchased Assets shall be paid to the DIP Lender upon closing of the Sale Transaction for permanent application against any outstanding DIP Obligations until such time as all DIP Obligations have been paid in full in cash in accordance with the terms of the DIP Orders and DIP Documents.

28.  ~~26.~~ In connection with the Sale Transaction and pursuant to the Purchase Agreement, the Buyer and the Debtors shall enter into a transition services agreement in the form

attached to this Order as **Exhibit 2** pursuant to which, effective as of the Closing, the Buyer and the Debtors may provide certain services to each other for a transitional period following the Closing (the "**Transition Services Agreement**"). The Buyer and the Debtors are hereby authorized to execute and deliver the Transition Services Agreement and any additional documentation contemplated by the Purchase Agreement or in furtherance of the Sale, and to perform all such other and further acts as may be required in connection with the negotiation, execution, and performance of the Purchase Agreement, any ancillary documents or the ~~Transaction~~Transition Services Agreement, including providing transition services and making any applicable payments without further order of the Court.

29.    ~~27.~~ Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction contemplated by the Purchase Agreement.

30.    ~~28.~~ No governmental unit may revoke or suspend any right, license, copyright, patent, trademark or other permission relating to the use of the Purchased Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the sale of the Purchased Assets to the extent that any such action by a governmental unit would violate section 525 of the Bankruptcy Code.

31.    ~~29.~~ Except as expressly provided in the Purchase Agreement, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any Purchased Assets or liabilities not constituting an Asset.

33

32.    30. No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions with the Debtors that are approved by this Order, including, without limitation, the Purchase Agreement and the Sale Transaction.

33.    31. The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors (whether known or unknown), Buyer, and their respective affiliates, successors, and assigns, and any affected third parties, including, without limitation, all Persons asserting Liens (collectively, the "**Bound Parties**"), notwithstanding any subsequent appointment of any trustee, examiner, or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary under any chapter of the Bankruptcy Code or any other law with respect to any of the Bound Parties, and all such terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary, and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner, receiver, party, entity, or other fiduciary. The provisions of this Order and the terms and provisions of the Purchase Agreement, shall survive the entry of any order that may be entered confirming or consummating any chapter 11 plan of the Debtors or converting these chapter 11 cases to cases under chapter 7, and the terms and provisions of the Purchase Agreement, as well as the rights and interests granted pursuant to this Order and Purchase Agreement shall continue in these or any superseding cases and shall be binding upon the Bound Parties and their respective successors and permitted assigns including, without limitation, any trustee, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are

34

proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized and directed to (i) operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of the Purchase Agreement and this Order and (ii) perform under the Purchase Agreement and this Order without the need for further order of the Court.

34.    32. Buyer is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Order, the Sale Transaction, and any issues related to or otherwise connected to the Sale Transaction and the Purchase Agreement.

35.    Notwithstanding anything to the contrary herein, except as set forth in the Purchase Agreement or the Transition Services Agreement, the Debtors and any other party to the Transition Services Agreement shall make commercially reasonable efforts to only provide Personal Information (as defined in the Purchase Agreement) to Buyer that is directly related to the Purchased Assets. In the event any data not directly related to the Purchased Assets is shared with Buyer, the Debtors and the other parties to the Transition Services Agreement agree that Buyer may delete such data and is not responsible for the Debtors' compliance with any Privacy Laws (as defined in the Purchase Agreement) or any other requirements related to the retention of such records with respect to such data and the Buyer is not assuming any obligations of the Debtors as related thereto.

36.    33. Subject to and upon the Closing, the Debtors hereby waive any and all actions related to, and hereby release Buyer, and their respective property, from any and all claims and causes of action relating to the Sale Transaction, whether known or unknown, now existing or hereafter arising, asserted or unasserted, mature or inchoate, contingent or non contingent, liquidated or unliquidated, material or non-material, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise, except to the extent arising under, or

35

specifically assumed or established under the Purchase Agreement, this Order or any of the Transaction Documents.

### H.   **Provisions regarding Employees**

~~34. As of the date of Closing, the Buyer shall use its commercially reasonable best efforts to offer employment to all or substantially all of the employees working directly on the Purchased Assets immediately prior to Closing.~~

37.   Buyer agrees that notwithstanding Section 7.8 of the Purchase Agreement, the list of Employees of the Selling Entities to whom Buyer will offer at-will employment effective as of the Closing Date shall include substantially all of the Employees of the Selling Entities whose employment with the Selling Entities is primarily related to the MGS Business and such offers of employment shall be on terms substantially similar to the existing terms of employment of such Employees by the Selling Entities.

### I.   **Provisions Regarding the United States.**

38.   ~~35.~~ Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale contemplated by the Asset Purchase Agreement. Notwithstanding any provision to the contrary in this Order, the Purchase Agreement, or any other document related to the Sale Transaction, nothing shall: (i) release, nullify, preclude or enjoin the enforcement of any police or regulatory power or any liability that any entity would be subject to as the owner, lessor, lessee or operator of property that such entity owns, operates or leases after the date of entry of this Order; (ii) affect the United States' rights and defenses of (a) recoupment, or (b) setoff as to the Debtors; (iii) confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the

36

United States Code); (iii) authorize the assumption, assignment, sale or other transfer of any federal (a) grants, (b) grant funds, (c) contracts, (d) agreements, (e) awards, (f) task orders, (g) property, (h) intellectual property, (i) patents, (j) leases, (k) certifications, (l) applications, (m) registrations, (n) billing numbers, (o) national provider identifiers, (p) provider transaction access numbers, (q) licenses, (r) permits, (s) covenants, (t) inventory, (u) guarantees, (v) indemnifications, (w) data, (x) records, or (y) any other interests belonging to the United States (collectively, "**Federal Interests**") without compliance by the Debtors and the Buyer with all terms of the Federal Interests and with all applicable non-bankruptcy law; (iv) be interpreted to set cure amounts or to require the United States to novate, approve or otherwise consent to the sale, assumption, assignment or other transfer of any Federal Interests; (v) waive, alter or otherwise limit the United States' property rights; or (vi) expand the scope of 11 U.S.C.§ 525. In the event of an inconsistency or conflict between any provision of the Purchase Agreement and any provision of this Order, as to the United States, the provisions of this Order and federal law shall govern.

39.    36. This Court retains jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction.

40.    37. The Purchase Agreement, the Transition Service Agreement, and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court;

provided, that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates; provided, further, that, any materially modified Purchase Agreement shall be filed with the Court and any material modification, amendment, or supplement shall require the consent of all persons or entities affected thereby or be approved by this Court upon further notice and hearing.

41.     38.  This Order is intended to constitute a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly: (a) the terms of this Order shall be immediately effective and enforceable upon its entry and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply; (b) the Debtors are not subject to any stay of this Order or in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Debtors and the Buyer may, each in its discretion and without further delay, take any action and perform any act authorized under this Order.

42.     39.  The provisions of this Order are non-severable and mutually dependent.

43.     40.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

RLF1 33350561v.1
4929-5215-1382.12

## Exhibit 1

**APA**

*[to be filed see Docket No. 194-3]*

**<u>Exhibit 2</u>**

**TSA**

*[see Docket No. ~~194-3~~<u>210</u>]*