# EXHIBIT 2

**Blackline**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
:
In re: : Chapter 11
:
ZEN JV, LLC, *et al.*,[1] : Case No. 25-11195 (JKS)
:
Debtors. : (Jointly Administered)
:
: **Re: Docket Nos. 28, 110, 194**
---------------------------------------------------------- x

### ORDER (I) AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO AN ASSET PURCHASE AGREEMENT WITH SHERRILL-LUBINSKI, LLC AND ETI-NET INC., (II) AUTHORIZING THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, ENCUMBRANCES, CLAIMS AND INTERESTS, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF THE SELECTED ASSIGNED CONTRACTS, AND (IV) GRANTING RELATED RELIEF

Upon the motion [Docket No. 28] (the "**Motion**"),[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for entry of an order (this "**Order**"), among other things, (a) authorizing and approving the Debtors' entry into and performance under the Purchase Agreement (as defined below) with the Buyer (as defined below), (b) authorizing the Sale Transactions (as defined below), free and clear of any Encumbrances (as defined below), (c) authorizing and approving the assumption and assignment of the Assumed Agreements and Assumed Real Property Leases in connection with the Sale Transactions, and (d) granting related relief; and this Court having previously entered the *Order (I) Authorizing and Approving (A) the*

---

[1] The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are: Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions, LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508). The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion or the Purchase Agreement (as defined below), as applicable.

15. Without limiting the generality of the foregoing, and except as otherwise provided in the Purchase Agreement and this Order, neither the Buyer nor any of its affiliates shall have any responsibility for any (a) liability or other obligation of the Debtors related to the Purchased Assets, or (b) claims against the Debtors or any of their predecessors or affiliates. By virtue of the Buyer's purchase of the Purchased Assets, neither the Buyer nor any of its affiliates shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or its predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, to the greatest degree allowed by applicable law environmental (including, but not limited to CERCLA), successor or transferee liability, de facto merger or substantial continuity, labor and employment (including, but not limited to, WARN) or products liability law, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of the Debtors' employment agreements or health or benefit plans, any settlement or injunction or any liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing Date (collectively, with the potential claims set forth in paragraph 14 "**Successor Liability**"). The Buyer would not have acquired the Purchased Assets but for the foregoing protections against Successor or Transferee Liability.

D. **Assumption and Assignment of Assumed Agreements and Assumed Real Property Leases.**

16. Subject to paragraph ~~38~~39, notwithstanding any provision of any contract governing the Purchased Assets, including any Assumed Agreement or Assumed Real Property

27

26. Notwithstanding anything to the contrary in this Order or the Purchase Agreement, no Contract between the Debtor and Oracle America, Inc., ("**Oracle**") will be assumed and/or assigned without (1) Oracle's prior written consent; (2) cure of any default under such contract; (3) the provision to Oracle of satisfactory adequate assurance of future performance by the assignee; and (4) execution by the Debtor or its successor and the assignee of mutually agreeable assignment documentation in a final form to be negotiated after entry of this Order. In addition, no provision of this Order or the Transition Services Agreement shall authorize (1) the transfer of any Oracle license agreement to any third party; or (2) use of any Oracle license agreement that is inconsistent with the relevant license grant including, but not limited to, exceeding the number of authorized users, shared use or license splitting, absent Oracle's express prior written consent.

27. To the extent this paragraph 27 conflicts with this Order or the Purchase Agreement, this paragraph 27 controls. None of the Debtors' owned or leased property in a data center owned, controlled, or operated by Equinix, Inc. or its affiliates (an "**Equinix Data Center**") are Purchased Assets unless and until the applicable executory contract between the Debtors and Equinix with respect to such data center is assumed and assigned to the Buyer in connection with the Sale Transaction, unless otherwise agreed by such parties in writing or ordered by the Court.

28. ~~27.~~ Pursuant to the DIP Orders and the Bidding Procedures Order, all cash proceeds generated from the Sale of the Purchased Assets shall be paid to the DIP Lender upon closing of the Sale Transaction for permanent application against any outstanding DIP Obligations until such time as all DIP Obligations have been paid in full in cash in accordance with the terms of the DIP Orders and DIP Documents.

29. ~~28.~~ In connection with the Sale Transaction and pursuant to the Purchase Agreement, the Buyer and the Debtors shall enter into a transition services agreement in the form attached to this Order as **Exhibit 2** pursuant to which, effective as of the Closing, the Buyer and

the Debtors may provide certain services to each other for a transitional period following the Closing (the "**Transition Services Agreement**"). The Buyer and the Debtors are hereby authorized to execute and deliver the Transition Services Agreement and any additional documentation contemplated by the Purchase Agreement or in furtherance of the Sale, and to perform all such other and further acts as may be required in connection with the negotiation, execution, and performance of the Purchase Agreement, any ancillary documents or the Transition Services Agreement, including providing transition services and making any applicable payments without further order of the Court.

30. ~~29.~~ Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction contemplated by the Purchase Agreement.

31. ~~30.~~ No governmental unit may revoke or suspend any right, license, copyright, patent, trademark or other permission relating to the use of the Purchased Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the sale of the Purchased Assets to the extent that any such action by a governmental unit would violate section 525 of the Bankruptcy Code.

32. ~~31.~~ Except as expressly provided in the Purchase Agreement, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any Purchased Assets or liabilities not constituting an Asset.

33.    ~~32.~~ No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions with the Debtors that are approved by this Order, including, without limitation, the Purchase Agreement and the Sale Transaction.

34.    ~~33.~~ The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors (whether known or unknown), Buyer, and their respective affiliates, successors, and assigns, and any affected third parties, including, without limitation, all Persons asserting Liens (collectively, the "**Bound Parties**"), notwithstanding any subsequent appointment of any trustee, examiner, or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary under any chapter of the Bankruptcy Code or any other law with respect to any of the Bound Parties, and all such terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary, and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner, receiver, party, entity, or other fiduciary. The provisions of this Order and the terms and provisions of the Purchase Agreement, shall survive the entry of any order that may be entered confirming or consummating any chapter 11 plan of the Debtors or converting these chapter 11 cases to cases under chapter 7, and the terms and provisions of the Purchase Agreement, as well as the rights and interests granted pursuant to this Order and Purchase Agreement shall continue in these or any superseding cases and shall be binding upon the Bound Parties and their respective successors and permitted assigns including, without limitation, any trustee, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed for the Debtors under any provision of the Bankruptcy

35

Code, whether the Debtors are proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized and directed to (i) operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of the Purchase Agreement and this Order and (ii) perform under the Purchase Agreement and this Order without the need for further order of the Court.

35. ~~34.~~ Buyer is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Order, the Sale Transaction, and any issues related to or otherwise connected to the Sale Transaction and the Purchase Agreement.

36. ~~35.~~ Notwithstanding anything to the contrary herein, except as set forth in the Purchase Agreement or the Transition Services Agreement, the Debtors and any other party to the Transition Services Agreement shall make commercially reasonable efforts to only provide Personal Information (as defined in the Purchase Agreement) to Buyer that is directly related to the Purchased Assets. In the event any data not directly related to the Purchased Assets is shared with Buyer, the Debtors and the other parties to the Transition Services Agreement agree that Buyer may delete such data and is not responsible for the Debtors' compliance with any Privacy Laws (as defined in the Purchase Agreement) or any other requirements related to the retention of such records with respect to such data and the Buyer is not assuming any obligations of the Debtors as related thereto.

37. ~~36.~~ Subject to and upon the Closing, the Debtors hereby waive any and all actions related to, and hereby release Buyer, and their respective property, from any and all claims and causes of action relating to the Sale Transaction, whether known or unknown, now existing or hereafter arising, asserted or unasserted, mature or inchoate, contingent or non contingent, liquidated or unliquidated, material or non-material, disputed or undisputed, and whether

imposed by agreement, understanding, law, equity, or otherwise, except to the extent arising under, or specifically assumed or established under the Purchase Agreement, this Order or any of the Transaction Documents.

### H. Provisions regarding Employees

38. ~~37.~~ Buyer agrees that notwithstanding Section 7.8 of the Purchase Agreement, the list of Employees of the Selling Entities to whom Buyer will offer at-will employment effective as of the Closing Date shall include substantially all of the Employees of the Selling Entities whose employment with the Selling Entities is primarily related to the MGS Business and such offers of employment shall be on terms substantially similar to the existing terms of employment of such Employees by the Selling Entities.

### I. Provisions Regarding the United States.

39. ~~38.~~ Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale contemplated by the Asset Purchase Agreement.  Notwithstanding any provision to the contrary in this Order, the Purchase Agreement, or any other document related to the Sale Transaction, nothing shall: (i) release, nullify, preclude or enjoin the enforcement of any police or regulatory power or any liability that any entity would be subject to as the owner, lessor, lessee or operator of property that such entity owns, operates or leases after the date of entry of this Order; (ii) affect the United States' rights and defenses of (a) recoupment, or (b) setoff as to the Debtors; (iii) confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (~~iii~~iv) authorize the assumption, assignment, sale or other transfer of any federal (a) grants, (b) grant funds, (c) contracts, (d) agreements, (e) awards,

(f) task orders, (g) property, (h) intellectual property, (i) patents, (j) leases, (k) certifications, (l) applications, (m) registrations, (n) billing numbers, (o) national provider identifiers, (p) provider transaction access numbers, (q) licenses, (r) permits, (s) covenants, (t) inventory, (u) guarantees, (v) indemnifications, (w) data, (x) records, or (y) any other interests belonging to the United States (collectively, "**Federal Interests**") without compliance by the Debtors and the Buyer with all terms of the Federal Interests and with all applicable non-bankruptcy law; (~~iv~~v) be interpreted to set cure amounts or to require the United States to novate, approve or otherwise consent to the sale, assumption, assignment or other transfer of any Federal Interests; (~~v~~vi) waive, alter or otherwise limit the United States' property rights; or (~~vi~~vii) expand the scope of 11 U.S.C.§ 525. In the event of an inconsistency or conflict between any provision of the Purchase Agreement and any provision of this Order, as to the United States, the provisions of this Order and federal law shall govern.

40.    ~~39.~~ This Court retains jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction.

41.    ~~40.~~ The Purchase Agreement, the Transition Service Agreement, and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court; provided, that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates; provided, further, that, any materially modified Purchase

Agreement shall be filed with the Court and any material modification, amendment, or supplement shall require the consent of all persons or entities affected thereby or be approved by this Court upon further notice and hearing.

42. ~~41.~~ This Order is intended to constitute a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly: (a) the terms of this Order shall be immediately effective and enforceable upon its entry and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply; (b) the Debtors are not subject to any stay of this Order or in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Debtors and the Buyer may, each in its discretion and without further delay, take any action and perform any act authorized under this Order.

43. ~~42.~~ The provisions of this Order are non-severable and mutually dependent.

44. ~~43.~~ All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

**Exhibit 1**

**APA**

~~*[see Docket No. 194-3]*~~

**Exhibit 2**

**Form** TSA

*[see Docket No. 210]*