**<u>Exhibit 2</u>**

**Blackline**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------  x
                                                    :   Chapter 11
In re:                                              :
                                                    :   Case No. 25-11195 (JKS)
ZEN JV, LLC, et al.,¹                               :
                                                    :   (Jointly Administered)
            Debtors.                                :
                                                    :   Docket Ref. Nos. 31, 56
-------------------------------------------------  x
```

**FINAL ORDER (A) AUTHORIZING DEBTORS TO (I) OBTAIN
POSTPETITION FINANCING AND (II) USE CASH COLLATERAL,
(B) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, (C) GRANTING ADEQUATE PROTECTION,
(D) MODIFYING AUTOMATIC STAY, AND (E) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**") of the debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of Bankruptcy Procedure (the "**Local Rules**") promulgated by the United States Bankruptcy Court for the District of Delaware (the "**Court**"), seeking entry of a final order (this "**Final Order**"), among other things:

(a)   authorizing the Debtors to obtain postpetition financing on a senior secured superpriority basis, on the terms and conditions set forth herein and the term sheet attached as **Exhibit 1** to the Interim Order (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "**DIP Term Sheet**"), by and among Zen JV, LLC (the "**Borrower**"), each of the other Debtors as secured guarantors with respect to

---

¹   The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are:  Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions, LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508).  The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

the outstanding DIP Obligations (as defined below) (collectively, the "**Guarantors**" and, together with the Borrower, the "**DIP Loan Parties**"), and JMB Capital Partners Lending, LLC (the "**DIP Lender**"), comprised of a senior secured superpriority debtor-in-possession term loan facility in an aggregate principal amount of up to $20.0 million, *plus* applicable fees and premiums (the "**DIP Facility**"; and the commitments thereunder, the "**DIP Commitments**" and, the term loans extended thereunder, the "**DIP Loans**"), pursuant to which (i) up to $12.5 million of the DIP Commitments (the "**Interim DIP Loans**") were available upon the entry of the Interim Order (as defined below) and (ii) up to the DIP Commitments *less* amount(s) drawn under the Interim DIP Loans (the "**Subsequent DIP Loans**" and, together with the Interim DIP Loans, the "**DIP Borrowings**" and, each, a "**DIP Borrowing**") shall be available upon the entry of this Final Order, in each case solely upon compliance with the Interim Order or Final Order (as applicable), the Approved Budget (as defined below) (subject to Permitted Variances (as defined below)), and the DIP Term Sheet;

(b)     authorizing the Borrower to incur, and the Guarantors to jointly and severally, irrevocably, and unconditionally, guarantee, on a superpriority basis, the Payment in Full of all DIP Obligations in accordance with this Final Order and the DIP Term Sheet;

(c)     authorizing the DIP Loan Parties to:  (i) execute, deliver, and perform under the DIP Term Sheet, and to perform all such other and further acts as may be required in connection therewith; (ii) incur all loans, advances, extensions of credit and financial accommodations, and pay all principal, interest, premiums or similar amounts, fees (including, without limitation, the Upfront Fee and the Exit Fee (in each case under and as defined in the DIP Term Sheet)), costs, expenses, charges, indemnification and reimbursement obligations (whether contingent or absolute), and all other obligations or amounts, whether or not such obligations arose before or after the Petition Date (as defined below), whenever the same shall become due, whether at stated maturity, by mandatory prepayment, declaration, acceleration, or otherwise, in each case, in accordance with the DIP Term Sheet and this Final Order (collectively, the "**DIP Obligations**"); and (iii) perform such other and further acts as may be necessary, required, or desirable to implement and effectuate the terms of this Final Order, the DIP Term Sheet, and the transactions contemplated thereunder;

(d)     authorizing the DIP Loan Parties to grant to the DIP Lender the DIP Liens (as defined below) in all DIP Collateral (as defined below), as set forth in this Final Order, subject to the Carve Out (as defined below), and subject to the relative priorities set forth in this Final Order and **Exhibit 1** attached to the Interim Order;

(e)     authorizing the DIP Loan Parties to grant to the DIP Lender, allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code, as well as liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, and priming liens pursuant to section 364(d) of the Bankruptcy Code, as further described herein (including in **Exhibit 1** to the Interim Order), on

2

all DIP Collateral and all proceeds thereof (including Avoidance Action Proceeds (as defined below)), including, without limitation, all property constituting "Cash Collateral" as defined in section 363(a) of the Bankruptcy Code (including, without limitation, all cash and cash equivalents and other amounts from time to time on deposit or maintained by the Debtors in any deposit or securities account or accounts as of the Petition Date and any cash or cash equivalents received by the Debtors after the Petition Date as proceeds of the Prepetition Collateral (as defined below)) against each of the DIP Loan Parties, on a joint and several basis, in respect of all DIP Obligations, subject to the Carve Out and other priorities, as set forth in this Final Order;

(f)     authorizing the DIP Loan Parties to use the proceeds of the DIP Facility, the DIP Collateral and the Prepetition Collateral, including Cash Collateral (as defined below), in accordance with the terms and conditions set forth in this Final Order and the DIP Term Sheet, and strictly in accordance with the Approved Budget, subject to any variances expressly permitted under the DIP Term Sheet (the "**Permitted Variances**");

(g)     granting adequate protection, as and to the extent set forth herein, to the Prepetition Secured Parties (as defined below) to protect against any Diminution in Value (as defined below) of their respective Prepetition Liens (as defined below) in the Prepetition Collateral (including Cash Collateral), and authorizing the Debtors to make non-refundable and irrevocable adequate protection payments as contemplated in the DIP Orders;

(h)     modifying or vacating the automatic stay imposed by section 362 of the Bankruptcy Code or otherwise, to the extent necessary, required, or desirable to implement and effectuate the terms and provisions of this Final Order and the DIP Term Sheet, as set forth herein or therein, waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Final Order and providing for the immediate effectiveness of this Final Order;

(i)     approving certain stipulations, waivers, and releases by the Debtors with respect to, *inter alia*, (i) the DIP Lender, the DIP Term Sheet, the DIP Liens, and the DIP Obligations, (ii) subject to paragraph 24 hereof, the Prepetition Secured Parties, the Prepetition Loan Documents, the Prepetition Liens, and the Prepetition Secured Obligations (each as defined below);

(j)     approving the DIP Loan Parties' waiver of the right to surcharge the DIP Collateral as to the DIP Lender pursuant to section 506(c) of the Bankruptcy Code or otherwise, in each case, upon the terms set forth herein;

(k)     approving the Debtors' waiver of the equitable doctrine of "marshaling" and other similar doctrines with respect to the DIP Collateral as to the DIP Lender upon the terms set forth in this Final Order; and

RLF1 33359654v.1RLF1 33372441v.1

(l)     authorizing and directing the Debtors to make non-refundable, irrevocable, and final payments on account of the principal, interest, fees (including, the Upfront Fee and the Exit Fee, in each case under and as defined in the DIP Term Sheet), expenses and other amounts payable under the DIP Term Sheet, each as applicable, as such become due and payable, all to the extent provided in, and in accordance with, this Final Order and the DIP Term Sheet.

The Court, having considered the Motion, the DIP Term Sheet, the exhibits attached thereto, the declarations filed in support thereof [Docket Nos. 32, 36], the evidence submitted and arguments proffered or adduced at the interim hearing held before this Court on June 26, 2025 (the "**Interim Hearing**") and the final hearing held before this Court on July 28, 2025 (the "**Final Hearing**"), and upon the record of the Chapter 11 Cases; and the Court having entered an interim order approving, among other things, the Debtors' entry into the DIP Facility on an interim basis [Docket No. 56] (the "**Interim Order**"); and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing and the Final Hearing established just cause for the relief granted herein; and it appearing to the Court that granting the relief requested in the Motion is fair and reasonable, represents a sound exercise of the Debtors' business judgment, and is necessary for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]**

A.      *Petition Date*.  On June 24, 2025 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing these Chapter 11 Cases.

B.      *Debtors-in-Possession*.   The Debtors continue to manage and operate their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C.      *Committee Formation*.  On July 2, 2025, the Office of the United States Trustee (the "**U.S. Trustee**") appointed an official statutory committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "**Official Committee**").

D.      *Interim Order*.  On June 27, 2025, the Court entered the Interim Order, pursuant to which the Debtors were authorized to, among other things, obtain financing from the DIP Lender on an interim basis in accordance with the terms of the Interim Order and the DIP Term Sheet.

E.      *Jurisdiction and Venue*.  This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  This Court's consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent with Article III of the United States Constitution.  Venue for these Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief set forth herein are

---

[2]      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

5

sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy

Rules 2002, 4001, 6003, 6004, 9013 and 9014, and Local Rules 2002-1, 4001-2 and 9013-1.

F.      *Debtors' Stipulations, Releases, and Acknowledgements Regarding DIP Lender*.

In requesting the DIP Facility, and in exchange for and as a material inducement to the DIP Lender

to provide the DIP Facility, the Debtors, for themselves, their estates, and all representatives of

such estates, admit, stipulate, acknowledge, and agree as follows:

(a)      <u>No Control</u>.  The DIP Lender does not control the Debtors or their properties
or operations, has authority to determine the manner in which any of the Debtors' operations
are conducted, or is a control person or insider (as defined in the Bankruptcy Code) of the
Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in
connection with, related to, or arising from this Final Order, the DIP Facility, the DIP Liens,
the DIP Superpriority Claims (as defined below), the DIP Collateral, the DIP Obligations,
the DIP Term Sheet, or the transactions contemplated thereunder or hereunder.

(b)      <u>No Claims, Defenses, or Causes of Action</u>.  As of the date hereof, there exist
no claims, defenses, or any other Cause of Action[3] of any nature or description whatsoever
that may be asserted by the Debtors, their respective estates, predecessors, successors, and
assigns, against the DIP Lender or its current, former and future affiliates, subsidiaries,
funds or managed accounts, officers, directors, managers, members, equity holders,
partners, principals, employees, representatives, agents, attorneys, advisors, consultants,
and other professionals, and the predecessors in interest, successors, and assigns of each of
the foregoing (collectively, the "**Representatives**"), in their capacities as such, in each case,
arising from, in connection with, or related to this Final Order, the DIP Facility, the DIP
Liens, the DIP Superpriority Claims, the DIP Collateral, the DIP Obligations, the DIP Term
Sheet, or the transactions contemplated thereunder or hereunder.

(c)      <u>Releases</u>.  Effective as of the of entry of the Interim Order, the Debtors, on
behalf of themselves and their respective estates, to the maximum extent permitted by
applicable law, hereby absolutely, unconditionally, and irrevocably release and forever
discharge and acquit the DIP Lender and its Representatives (in their capacities as such) of
and from any and all Causes of Action that the Debtors, their estates, predecessors,

---

[3]      The term "**Cause of Action**" means any action, cause of action, claim, counter-claim, cross-claim, defense,
account, objection, challenge, offset, setoff, demand, liability, responsibility, dispute, remedy, indebtedness,
obligation, guaranty, right, interest, indemnity, assertion, allegation, suit, controversy, proceeding, loss, damage,
injury, reimbursement obligation, attorneys' fees, costs, expenses or judgments of every type, whether known or
unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, accrued or unaccrued,
liquidated or unliquidated, fixed or contingent, pending or threatened, whether assertable directly or derivatively,
including, without limitation, all legal and equitable theories of recovery, arising under the Bankruptcy Code or
applicable non-bankruptcy law, whether local, state of federal U.S. or foreign common law, statute, law, rule,
regulation, or by contract, of every nature or description whatsoever.

RLF1 33359654v.1RLF1 33372441v.1

successors and assigns at any time had, now have or that their successors and assigns may have against the DIP Lender and its Representatives for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time prior to the date of this Final Order, in each case, arising under, in connection with, or related to this Final Order, the DIP Facility, the DIP Liens, the DIP Superpriority Claims, the DIP Collateral, the DIP Obligations, the DIP Term Sheet, or the transactions contemplated thereunder or hereunder, including, without limitation, (i) any claim or Cause of Action seeking avoidance, whether under chapter 5 of the Bankruptcy Code, any applicable Uniform Voidable Transfer Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or other similar state statute, common law, or otherwise ("**Avoidance Actions**"), (ii) any so-called "lender liability" or equitable subordination claims or defenses, (iii) any claims or Causes of Action arising under the Bankruptcy Code, (iv) any claims or Causes of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), reclassification, disgorgement, disallowance, impairment, marshaling, surcharge, recovery, or any other challenge arising under the Bankruptcy Code or applicable non-bankruptcy law with respect to this Final Order, the DIP Facility, the DIP Liens, the DIP Superpriority Claims, the DIP Collateral, the DIP Obligations, the DIP Term Sheet, or the transactions contemplated thereunder or hereunder, or (v) any claim or Cause of Action with respect to the validity, enforceability, extent, amount, perfection, or priority of the DIP Facility, the DIP Liens, the DIP Superpriority Claims, the DIP Collateral, the DIP Obligations, the DIP Term Sheet, or the transactions contemplated thereunder or hereunder; provided, however, that nothing contained in this subparagraph (c) shall relieve the DIP Lender from fulfilling any of its commitments under, and in accordance with, the DIP Term Sheet.

(d)    Cash Collateral. Any and all of the DIP Loan Parties' cash, whether existing on the Petition Date or thereafter, wherever located (including, without limitation, all cash, cash equivalents and other amounts on deposit or maintained by the DIP Loan Parties in any accounts with any depositary institution), whether as DIP Collateral or original Prepetition Collateral, arising from the sale or other disposition of DIP Collateral or Prepetition Collateral, or proceeds of other DIP Collateral or Prepetition Collateral, or cash, rents, income, offspring, products, proceeds or profits generated from the DIP Collateral or Prepetition Collateral, constitutes "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code of the DIP Lender (the "**DIP Loan Cash Collateral**").

G.    *Debtors' Stipulations, Releases, and Acknowledgements Regarding Prepetition Secured Parties*. In requesting the DIP Facility and the use of Cash Collateral, and in exchange for and as a material inducement to the DIP Lender to provide the DIP Facility, and in exchange for and in recognition of the priming of the Prepetition Liens and the consent (and/or deemed consent) of the Prepetition Secured Parties to the use of their Cash Collateral, the Debtors, for themselves, their estates, and all representatives of such estates, admit, stipulate, acknowledge,

and agree as follows (subject to paragraph 24 of this Final Order) (collectively, the admissions, stipulations, and acknowledgments and agreements set forth in this paragraph G, the "**Stipulations**"):

(a)    Prepetition Term Loan Facility.

(i)    *Prepetition Term Loan Credit Agreement*.  Pursuant to that certain *Amended and Restated First Lien Credit Agreement*, dated as of April 19, 2023, as amended by that certain *Amendment No. 1 to Amended and Restated Credit Agreement*, dated as of March 26, 2024, as further amended by that certain *Amendment No. 2 to Amended and Restated Credit Agreement*, dated as of April 29, 2024, as further amended by that certain *Amendment No. 3 to Amended and Restated Credit Agreement*, dated as of May 30, 2024, as further amended by that certain *Amendment No. 4 to Amended and Restated Credit Agreement*, dated as of June 28, 2024, as further amended by that certain *Resignation, Waiver, Amendment and Appointment Agreement*, dated as of October 11, 2024, as further amended by that certain *Amendment No. 6 to Amended and Restated Credit Agreement*, dated as of February 24, 2025, as further amended by that certain *Amendment No. 7 to Amended and Restated Credit Agreement*, dated as of March 31, 2025, and as further amended by that certain *Amendment No. 8 to Amended and Restated Credit Agreement*, dated as of April 29, 2025 (as it may be further amended, restated, amended and restated, supplemented, or otherwise modified prior to the Petition Date in accordance with the terms thereof, the "**Prepetition Term Loan Credit Agreement**" and, together with all other agreements, guarantees, pledge, collateral and security documents, control agreements, instruments, certificates, notes, and other documents executed, recorded, and/or delivered in connection therewith, including, without limitation, the Loan Documents (as defined in the Prepetition Term Loan Credit Agreement), collectively, the "**Prepetition Term Loan Documents**"), by and among CareerBuilder, LLC, as borrower (the "**Prepetition Term Loan Borrower**"), Camaro Acquisition, LLC, as a guarantor (the "**Prepetition Term Loan Holdings**"), certain subsidiaries of the Prepetition Term Loan Borrower, as guarantors (together with the Prepetition Term Loan Holdings, the "**Prepetition Term Loan Guarantors**" and, together with the Prepetition Term Loan Holdings and the Prepetition Term Loan Borrower, collectively, the "**Prepetition Term Loan Parties**"), Wilmington Trust, National Association, as administrative agent and collateral agent (in such capacities, the "**Prepetition Term Loan Agent**"), and the lenders party thereto from time to time (collectively, the "**Prepetition Term Loan Lenders**" and, together with the Prepetition Term Loan Agent, the "**Prepetition Term Loan Secured Parties**"), the Prepetition Term Loan Lenders provided a term loan credit facility (the "**Prepetition Term Loan Facility**" and, the loans thereunder, the "**Prepetition Term Loans**" and the claims thereunder "**Prepetition Term Loan Claims**") to the Prepetition Term Loan Parties.  Pursuant to the Prepetition Term Loan Documents, each of the Prepetition Term Loan Guarantors, among other things, unconditionally and irrevocably guaranteed, on a joint and several basis, the Payment in Full of all of the Prepetition Term Loan Secured Obligations (as defined below).

8

(ii)     *Prepetition Term Loan Secured Obligations*.  As of the Petition Date, the Prepetition Term Loan Parties were justly and lawfully indebted to the Prepetition Term Loan Secured Parties, on a joint and several basis, without defense, claim, counterclaim, challenge, or offset of any kind, in the aggregate amount of not less than $135,177,000 on account of principal amounts (including capitalized interest added thereto) outstanding under the Prepetition Term Loan Facility, *plus* accrued but unpaid interest (including default interest, if applicable) thereon, *plus* all fees, costs, expenses (including attorneys', financial advisors', and other professionals' fees and expenses), charges, disbursements, indemnification and reimbursement obligations (contingent or otherwise), including all Obligations (as defined in the Prepetition Term Loan Credit Agreement) and all other amounts that may be due or owing under the Prepetition Term Loan Documents (collectively, the "**Prepetition Term Loan Secured Obligations**").

(iii)     *Prepetition Term Loan Liens*.  Pursuant to the Prepetition Term Loan Documents, the Prepetition Term Loan Parties granted to the Prepetition Term Loan Agent, for the benefit of itself and the other Prepetition Term Loan Secured Parties, properly perfected continuing liens on and security interests in (collectively, the "**Prepetition Term Loan Liens**") substantially all of the assets of the Prepetition Term Loan Parties, including, without limitation, all "Collateral" (as defined in the Prepetition Term Loan Credit Agreement) (the "**Prepetition Term Loan Collateral**").

(b)     Prepetition Notes.

(i)     *Prepetition Notes*.  Pursuant to (i) that certain *Amended and Restated Senior Secured Note*, dated as of December 27, 2024 (as amended and restated, amended and restated, supplemented, or otherwise modified prior to the Petition Date in accordance with the terms thereof, the "**Prepetition Initial Note**" and, together with all other agreements, guarantees, pledges, collateral and security documents, control agreements, instruments, certificates, notes, and other documents executed, recorded, and/or delivered in connection with the Prepetition Initial Note, including, without limitation, the Note Documents (as defined in the Prepetition Initial Note), collectively, the "**Prepetition Initial Note Documents**"), by and among Zen JV, LLC, as the issuer (the "**Prepetition Notes Issuer**"), the holders party thereto (collectively, the "**Prepetition Initial Note Holders**"), and Randstad MWW Solutions Inc., as collateral agent (the "**Prepetition Initial Note Agent**"), (ii) that certain *Amended and Restated Additional Senior Secured Note*, dated as of February 20, 2025 (as amended, restated, amended and restated, supplemented, or otherwise modified prior to the Petition Date in accordance with the terms thereof, the "**Prepetition Additional Note**" and, together with all other agreements, guarantees, pledges, collateral and security documents, control agreements, instruments, certificates, notes, and other documents executed, recorded, and/or delivered in connection with the Prepetition Additional Note, including, without limitation, the Note Documents (as defined in the Prepetition Additional Note), collectively, the "**Prepetition Additional Note Documents**"), by and among the Prepetition Notes Issuer, the holders party thereto (collectively, the "**Prepetition Additional Note Holders**"), and Randstad MWW Solutions Inc., as collateral agent (the "**Prepetition Additional Note Agent**") and (iii) that certain *Amended and Restated Third Senior Secured Note*, dated as of December 27, 2024 (as amended, restated, amended and restated, supplemented, or

otherwise modified prior to the Petition Date in accordance with the terms thereof, the "**Prepetition Third Note**" and, together with all other agreements, guarantees, pledges, collateral and security documents, control agreements, instruments, certificates, notes, and other documents executed, recorded, and/or delivered in connection with the Prepetition Third Note, including, without limitation, the Note Documents (as defined in the Prepetition Third Note), collectively, the "**Prepetition Third Note Documents**"; the Prepetition Third Note Documents, the Prepetition Additional Note Documents, and the Prepetition Initial Note Documents are referred to herein, collectively, as the "**Prepetition Notes Documents**"; and the Prepetition Initial Note, the Prepetition Additional Note, and the Prepetition Third Note are referred to herein, collectively, as the "**Prepetition Notes**"), by and among the Prepetition Notes Issuer, the holders party thereto (collectively, the "**Prepetition Third Note Holders**" and, together with the Prepetition Initial Note Holders and the Prepetition Additional Note Holders, the "**Prepetition Noteholders**"), and Randstad MWW Solutions Inc., as collateral agent (the "**Prepetition Third Note Agent**" and, in its collective capacity as the Prepetition Initial Note Agent, the Prepetition Additional Note Agent, and the Prepetition Third Note Agent, the "**Prepetition Notes Agent**"), the Prepetition Noteholders provided loans (the "**Prepetition Notes Loans**" and, together with the claims thereunder, "**Prepetition Notes Claims**") to the Prepetition Notes Issuer. Pursuant to the Prepetition Notes Documents, certain subsidiaries of the Prepetition Notes Issuer (the "**Prepetition Notes Guarantors**" and, together with the Prepetition Notes Issuer, collectively, the "**Prepetition Notes Loan Parties**"), among other things, unconditionally and irrevocably guaranteed, on a joint and several basis, the Payment in Full of all of the Prepetition Notes Obligations (as defined below).

(ii)    *Prepetition Notes Obligations*.    As of the Petition Date, the Prepetition Notes Parties were justly and lawfully indebted to the Prepetition Noteholders and the Prepetition Notes Agent (collectively, the "**Prepetition Notes Secured Parties**"), on a joint and several basis, without defense, claim, counterclaim, challenge, or offset of any kind, in the aggregate amount of not less than $226,069,460 on account of principal amounts (including capitalized interest added thereto) outstanding under the Prepetition Notes, *plus* accrued but unpaid interest (including default interest, if applicable) thereon, *plus* all fees, costs, expenses (including attorneys', financial advisors' and other professionals' fees and expenses), charges, disbursements, indemnification and reimbursement obligations (contingent or otherwise), including all "Secured Obligations" (as defined in each Prepetition Note) and all other amounts that may be due or owing under the Prepetition Notes Documents (collectively, the "**Prepetition Notes Obligations**").

(iii)    *Prepetition Notes Liens*.    Pursuant to the Prepetition Notes Documents, the Prepetition Notes Loan Parties granted to the Prepetition Notes Agent, for the benefit of itself and the other Prepetition Notes Secured Parties, properly perfected continuing liens on and security interests in (collectively, the "**Prepetition Notes Liens**") substantially all of the assets of the Prepetition Notes Loan Parties, including, without limitation, all "Collateral" (as defined in each of the Prepetition Notes) (the "**Prepetition Notes Collateral**").

(c)      Certain Definitions.

(i)      "**Adequate Protection Liens**" means the Term Loan Adequate Protection Liens and Notes Adequate Protection Liens, collectively.

(ii)      "**DIP Orders**" means the Interim Order and the Final Order, collectively.

(iii)      "**Prepetition Agents**" means the Prepetition Term Loan Agent and the Prepetition Notes Agent, collectively.

(iv)      "**Prepetition Claims**" means the Prepetition Term Loan Claims and the Prepetition Notes Claims, collectively.

(v)      "**Prepetition Collateral**" means the Prepetition Term Loan Collateral and the Prepetition Notes Collateral, collectively.

(vi)      "**Prepetition Liens**" means the Prepetition Term Loan Liens and the Prepetition Notes Liens, collectively.

(vii)      "**Prepetition Loan Documents**" means the Prepetition Term Loan Documents and the Prepetition Notes Documents, collectively.

(viii)      "**Prepetition Loan Parties**" means the Prepetition Term Loan Parties and the Prepetition Notes Loan Parties, collectively.

(ix)      "**Prepetition Secured Obligations**" means the Prepetition Term Loan Secured Obligations and the Prepetition Notes Obligations, collectively.

(x)      "**Prepetition Secured Parties**" means the Prepetition Term Loan Secured Parties and the Prepetition Notes Secured Parties, collectively.

(d)      Validity and Enforceability of Prepetition Secured Obligations and Prepetition Liens.  As of the Petition Date, (i) the Prepetition Liens in the Prepetition Collateral (A) have been properly recorded and were valid, binding, enforceable, non-avoidable, and fully perfected liens and security interests in the Prepetition Collateral, (B) were granted to or for the benefit of the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or the financial commitments and other financial accommodations or consideration secured or obtained thereby, (C) with respect to the Prepetition Term Loan Liens, are senior with priority over any and all other liens on or security interests in the Prepetition Term Loan Collateral, subject only to liens and security interests that were expressly permitted to be incurred under the Prepetition Term Loan Documents, and (D) with respect to the Prepetition Notes Liens, are senior with priority over any and all other liens on or security interests in the Prepetition Notes Collateral, subject only to liens and security interests that were expressly permitted to be incurred under the Prepetition Notes Documents (solely, in each case of clauses (C) and (D), to the extent such permitted liens and security interests were (1) in existence on the Petition Date, (2) valid, non-avoidable, and properly perfected as of the Petition Date (or were properly perfected subsequent to the Petition Date to the extent permitted by

11

section 546(b) of the Bankruptcy Code), and (3) senior in priority to the applicable Prepetition Liens);[4] (ii) the Prepetition Secured Obligations constitute legal, valid, non-avoidable, and binding obligations of each of the applicable Prepetition Loan Parties, enforceable in accordance with the terms of the applicable Prepetition Loan Documents (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code); (iii) no portion of the Prepetition Liens or the Prepetition Secured Obligations, and no payments made at any time to any of the Prepetition Secured Parties, is subject to any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action, including, without limitation, any Avoidance Action or any claim or Cause of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery, or any other claim or Cause of Action of any nature or description, whether arising under the Bankruptcy Code, applicable non-bankruptcy law, any other domestic or foreign statute, law, rule or regulation or otherwise, in each case, that may be asserted by the Debtors, their respective estates, or any other person or entity; and (iv) the Prepetition Secured Obligations constitute allowed secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code against each of the Prepetition Loan Parties and their respective estates.

(e)    <u>Intercreditor or Subordination Agreements</u>.  Pursuant to section 510(a) of the Bankruptcy Code, any applicable intercreditor or subordination provisions contained in any of the Prepetition Loan Documents (if any), (A) shall remain in full force and effect, (B) continue to govern the relative obligations, priorities, rights, and remedies of the Prepetition Secured Parties with respect to any shared or common Prepetition Collateral, and (C) shall not be deemed to be amended, altered, or modified by the terms of this Final Order except to the extent expressly set forth herein.

(f)    <u>No Claims, Defenses, or Causes of Action</u>.  As of the date hereof, there exist no claims, defenses, or any other Cause of Action of any nature or description whatsoever that may be asserted by the Debtors, their respective estates, predecessors, successors, and assigns, against any of the Prepetition Secured Parties or any of their respective Representatives, in each case, arising from, in connection with, or related to this Final Order, the Prepetition Liens, the Prepetition Secured Obligations, the Prepetition Loan Documents, or the Prepetition Collateral.

(g)    <u>Releases</u>.  Effective as of the date of entry of this Final Order, but subject to paragraph 24 hereof, the Debtors, on behalf of themselves and their respective estates, to the maximum extent permitted by applicable law, hereby absolutely, unconditionally, and

---

[4]    Nothing contained herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien (as defined below) is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing contained herein shall prejudice the rights of any party in interest, including, but not limited to, the Debtors, the DIP Lender, the Prepetition Secured Parties, or the Official Committee, in each case, to the extent such party has standing to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien (subject to the terms of this Final Order).  For the purposes hereof, any alleged claim arising or asserted as a right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) is not a Permitted Prior Lien.

irrevocably release and forever discharge and acquit the Prepetition Secured Parties and each of their respective Representatives (in their capacities as such) of and from any and all Causes of Action that the Debtors, their estates, predecessors, successors, and assigns at any time had, now have, or that their successors and assigns may have against any of the Prepetition Secured Parties and their respective Representatives for or by reason of any act, omission, matter, cause, or thing whatsoever arising at any time prior to the date of this Final Order, in each case, arising under, in connection with, or related to this Final Order, the Prepetition Loan Documents, the Prepetition Liens, the Prepetition Collateral, the Prepetition Secured Obligations, or the transactions contemplated thereunder or hereunder, including, without limitation, (i) Avoidance Actions, (ii) any so-called "lender liability" or equitable subordination claims or defenses, (iii) any claims or Causes of Action arising under the Bankruptcy Code, or (iv) any claims or Causes of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshaling, surcharge, recovery, or any other challenge arising under the Bankruptcy Code or applicable non-bankruptcy law with respect to this Final Order, the Prepetition Loan Documents, the Prepetition Liens, the Prepetition Collateral, the Prepetition Secured Obligations, or the transactions contemplated thereunder or hereunder.

(h)    <u>Cash Collateral</u>.  Any and all of the DIP Loan Parties' cash, whether existing on the Petition Date or thereafter, wherever located (including, without limitation, all cash, cash equivalents, and other amounts on deposit or maintained by the DIP Loan Parties in any accounts with any depositary institution), whether as original Prepetition Collateral, arising from the sale or other disposition of Prepetition Collateral, or proceeds of other Prepetition Collateral, or cash, rents, income, offspring, products, proceeds, or profits generated from the Prepetition Collateral, constitutes "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code of either the Prepetition Term Loan Secured Parties (the "**Term Loan Cash Collateral**") or the Prepetition Notes Secured Parties (the "**Notes Cash Collateral**" and, together with the Term Loan Cash Collateral and the DIP Loan Cash Collateral, the "**Cash Collateral**").

H.    **[Reserved.]**

I.    **Findings Regarding DIP Facility and Use of Cash Collateral.**

(a)    *Good Cause*.  Good and sufficient cause has been shown for the entry of this Final Order.

(b)    *Need for Postpetition Financing and Use of Cash Collateral*.  The Debtors have a critical need to use Cash Collateral and to obtain postpetition financing pursuant to the DIP Facility, in each case, on a final basis, in order to, among other things, permit the orderly continuation and operation of their businesses, maintain business relationships with customers,

13

vendors, and suppliers, make payroll, pay the costs of administering the Chapter 11 Cases, and satisfy other working capital and operational needs of the Debtors, in the case of each of the foregoing, in accordance with and subject to the terms and conditions of this Final Order and the DIP Term Sheet, including the Approved Budget (subject to Permitted Variances). The Debtors' access to sufficient working capital and liquidity through the incurrence of loans and other financial accommodations under the DIP Facility and the use of Cash Collateral is necessary and vital to, among other things, preserve and maximize the values of the Debtors. The Debtors and their estates will be harmed if the financing under the DIP Facility is not obtained pursuant to the terms of this Final Order and, as applicable, the DIP Term Sheet, or if the Debtors are unable to use Cash Collateral. Entry of this Final Order is necessary and appropriate to avoid such harm to the Debtors, their estates, and other parties in interest.

(c)     *No Credit Available on More Favorable Terms*. The Debtors are unable to obtain financing or other financial accommodations from sources other than the DIP Lender on terms more favorable than those provided under the DIP Facility, the DIP Term Sheet, and this Final Order. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Debtors are also unable to obtain adequate secured credit for money borrowed under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without the DIP Loan Parties granting (i) the DIP Liens on all DIP Collateral, (ii) the DIP Superpriority Claims, (iii) the rights, benefits and protections to the DIP Lender, and (iv) the respective Adequate Protection Liens, Adequate Protection Claims (as defined below), and other Adequate Protection Obligations (as defined below) to the Prepetition Secured Parties, in the case of each of the foregoing, upon the terms and conditions set forth in this Final Order and in the DIP Term Sheet. After considering all available

alternatives, the Debtors have properly concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best source of debtor-in-possession financing available to them at this time and is in the best interests of all of their stakeholders.

(d)     *Sale Process*.  The DIP Lender's willingness to make the DIP Loans and the Prepetition Secured Parties' willingness to consent to the use of their respective Cash Collateral (each on the terms and subject to the conditions set forth in the DIP Term Sheet and this Final Order) is predicated upon (i) the Debtors requesting authority to sell all or substantially all of their assets to one or more buyers pursuant to section 363 of the Bankruptcy Code by filing a motion (the "**Sale Motion**") in accordance with the Milestones (as defined below) to approve bidding and sale procedures and the sale of the Debtors' assets, (ii) the satisfactory filing, review, and approval of irrevocable stalking horse bids for those assets described in that certain *Stalking Horse Agreement*, dated as of June 23, 2025, by and among Zen JV, LLC, the other sellers party thereto, and Valnet US Inc., as buyer (the "**MMP Stalking Horse Bid**" and such sale, the "**MMP Sale**"), those assets described in that certain *Stalking Horse Agreement*, dated as of June 23, 2025, by an among Zen JV, LLC, the other sellers party thereto, and ValSoft Corporation, Inc., as buyer (the "**MGS Stalking Horse Bid**" and such sale, the "**MGS Sale**"), and those assets described in that certain *Stalking Horse Agreement*, dated as of June 23, 2025, by and among Zen JV, LLC, the other sellers party thereto, CBM Acquisition, LLC, as buyer, and JobGet Inc., as buyer parent (the "**Job Board Stalking Horse Bid**" and such sale, the "**Job Board Sale**")[5] totaling at least $35.5 million, and on terms otherwise satisfactory to the DIP Lender in its sole discretion, (iii) unless and until the DIP Obligations have been Paid in Full (as defined below), subject to the

---

[5]     The MMP Stalking Horse Bid, the MGS Stalking Horse Bid and the Job Board Stalking Horse Bid are referred to collectively herein as the "**Stalking Horse Bids**."  The MMP Sale, the MGS Sale and the Job Board Sale are referred to collectively herein as the "**Sales**."

RLF1 33359654v.1RLF1 33372441v.1

Adequate Protection afforded to the Prepetition Secured Parties provided herein, the priorities set forth on **Exhibit 1** hereto, and the Carve Out, all cash proceeds derived from such sale of the Debtors' assets shall be immediately paid to the DIP Lender on account of its DIP Obligations, and (iv) the Debtors' adherence to the Milestones as set forth in the DIP Term Sheet.  Absent such arrangements, the DIP Lender and the Prepetition Secured Parties would not have agreed to make the DIP Loans or consented to the use of Cash Collateral as provided in the DIP Term Sheet and this Final Order.

(e)     *Use of Proceeds of DIP Facility and Cash Collateral*.  As a condition to providing the DIP Facility and their consent to the use of Cash Collateral, each of the DIP Lender and the Prepetition Secured Parties (as applicable) requires, and the Debtors have agreed, that all proceeds of the DIP Loans and all Cash Collateral shall be used and/or applied solely for the purposes and in the amounts expressly permitted in the Approved Budget (subject to Permitted Variances), including, without limitation, (i) to pay the costs of administration of the Chapter 11 Cases, (ii) for general corporate and working capital purposes, (iii) to pay adequate protection payments to the extent set forth herein, and (iv) to pay professional fees and expenses in accordance with this Final Order, in the case of (i) through (iii), in accordance with and subject to the terms and conditions of this Final Order and the DIP Term Sheet, including the Approved Budget (subject to Permitted Variances).

(f)     *Adequate Protection*.  Pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code, the Prepetition Secured Parties are, subject to what is permitted by the Bankruptcy Code, entitled to adequate protection against any postpetition diminution in value of the Prepetition Secured Parties' respective liens and interests in their respective Prepetition Collateral (including Cash Collateral) resulting from any diminution in the value of their respective

RLF1 33359654v.1RLF1 33372441v.1

liens or interests in the Prepetition Collateral (collectively, the "**Diminution in Value**"), as set forth in this Final Order and the DIP Term Sheet. Based on the Motion and the evidence filed in support of the Motion, and the record presented to the Court in connection with the Interim Hearing and the Final Hearing, the terms of the adequate protection arrangements and the use of Prepetition Collateral (including Cash Collateral) set forth herein are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the use of Prepetition Collateral (including Cash Collateral).

(g)     *Consents*.

(i)     *Prepetition Term Loan Secured Parties Consent*. The "Required Lenders" under the terms of the Prepetition Term Loan Credit Agreement have consented to the Debtors' use of Prepetition Term Loan Collateral (including Cash Collateral), the DIP Loan Parties' entry into the DIP Facility, the incurrence of the DIP Liens, the DIP Obligations, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims, and the other Adequate Protection Obligations, in each case, in accordance with and subject to the terms and conditions set forth in this Final Order and the DIP Term Sheet, subject to paragraph 10(c) hereof.

(ii)     *Prepetition Notes Secured Parties Consent*. The Prepetition Notes Secured Parties have consented to the Debtors' use of Prepetition Notes Collateral (including Cash Collateral), the DIP Loan Parties' entry into the DIP Facility, the incurrence of the DIP Liens, the DIP Obligations, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims, and the other Adequate Protection Obligations, in each case, in accordance with and subject to the terms and conditions set forth in this Final Order and the DIP Term Sheet, subject to paragraph 10(c) hereof.

(h)     *Limitation on Charging Expenses Against Collateral*. As a material inducement to the DIP Lender's agreement to provide the DIP Facility, and in exchange for the DIP Lender's agreement to subordinate their DIP Liens to the Carve Out and any liens and security interests, other than the Prepetition Liens, that were valid, non-avoidable, and properly perfected as of the Petition Date (or that were properly perfected subsequent to the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) (such liens, "**Permitted Prior Liens**"),

RLF1 33359654v.1RLF1 33372441v.1

(i) the DIP Loan Parties have waived their right to surcharge any costs or expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Lender upon the DIP Collateral, whether pursuant to section 506(c) of the Bankruptcy Code or otherwise and (ii) the DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

(i)      *Proper Exercise of Business Judgment.*  Based on the Motion, the evidence submitted, and the record presented to the Court at the Interim Hearing and the Final Hearing, (i) the terms of the DIP Facility, (ii) the terms of adequate protection granted to the Prepetition Secured Parties hereunder, and (iii) the terms on which the Debtors may continue to use Prepetition Collateral (including Cash Collateral) pursuant to this Final Order, (1) were negotiated in good faith and at arm's length among the Debtors, the DIP Lender, and the Prepetition Secured Parties, (2) are fair, reasonable, and the best available to the Debtors under the circumstances, (3) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and (4) are supported by reasonably equivalent value and fair consideration.  Absent access to the DIP Facility and the ability to continue to use Cash Collateral upon the terms set forth in this Final Order, the DIP Term Sheet, including the Approved Budget (subject to Permitted Variances), the Debtors, their estates, their creditors, and other parties-in-interest will be seriously harmed.

(j)      *Good Faith.*  The DIP Facility and the terms of the DIP Term Sheet, the terms on which the Prepetition Secured Parties have consented to the Debtors' use of their respective Cash Collateral, and this Final Order have been negotiated in good faith and at arm's length among the Debtors, the DIP Lender, the Prepetition Secured Parties, and each of their respective Representatives, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Facility, the DIP Term Sheet, and this Final Order,

RLF1 33359654v.1RLF1 33372441v.1

including, without limitation, all loans, advances, extensions of credit, and other financial accommodations made to and guarantees issued by the Debtors pursuant to the DIP Term Sheet, shall each be deemed to have been extended by the DIP Lender, the Prepetition Secured Parties (as applicable), and each of their respective affiliates, in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by sections 364(e) and/or 363(m) of the Bankruptcy Code, and each of the claims, liens and security interests, rights, remedies, benefits, and protections granted to the DIP Lender and the Prepetition Secured Parties (and each of the successors and assigns thereof) pursuant to this Final Order and the DIP Term Sheet (including, without limitation, all DIP Obligations, DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Adequate Protection Claims, and Adequate Protection Obligations), shall be entitled to the full protection of sections 364(e) and/or 363(m) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

(k)     *Initial Budget*.  The Debtors prepared and delivered to the DIP Lender the initial itemized cash flow forecast set forth on <u>Exhibit 2</u> to the Interim Order (the "**Initial Budget**" and, together with each subsequent approved budget, shall constitute without duplication, the "**Approved Budget**"), reflecting, on a line item, cumulative and aggregate basis, (i) the Debtors' projected cash receipts expected to be collected, and necessary disbursements and expenditures (including debt service costs) expected to be incurred or made, by the Debtors, in each case, for each calendar week during the period from the calendar week ending on the Saturday of the calendar week in which the Petition Date occurs through and including the end of the fifth (5th) calendar week thereafter, (ii) the sum of weekly unused availability under the DIP Facility, *plus* unrestricted cash on hand, (iii) the weekly outstanding principal balance of amounts

19

outstanding under the DIP Facility, and (iv) a professional fee budget with respect to the accrued and anticipated professional fees and expenses to be incurred by each applicable professional advisor during such period (the "**Professional Fee Budget**").  The Initial Budget was approved by the DIP Lender.  The current Approved Budget is attached hereto as **Exhibit 2**.  The Approved Budget is an integral part of this Final Order, and the DIP Lender and the Prepetition Secured Parties have relied and are relying, in part, upon the Debtors' agreement to comply (subject to Permitted Variances) with the Approved Budget, in determining to enter into the DIP Facility and to allow the Debtors' use of proceeds of the DIP Facility and Cash Collateral in accordance with the terms of this Final Order and the DIP Term Sheet.

(l)     *Notice*.   Notice  of  the  Motion  and  the  Final  Hearing  complies  with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and (c), and 9014, and the Local Rules.

(m)     *Good Cause Shown; Best Interest*.  Unless the relief set forth in this Final Order is granted, the Debtors' estates will be harmed.  Consummation of the DIP Facility and the use of Prepetition Collateral (including Cash Collateral) upon the terms set forth in the Interim Order, this Final Order, and the DIP Term Sheet is consistent with the Debtors' exercise of their fiduciary duties and is in the best interests of the Debtors' estates.

**NOW THEREFORE**, based upon the foregoing findings and conclusions, the Motion, the declarations filed in support of the Motion, the evidence adduced at the Interim Hearing and the Final Hearing, and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

RLF1 33359654v.1RLF1 33372441v.1

IT IS HEREBY ORDERED THAT:

1.      *Motion Granted*.  The Motion is hereby granted, on a final basis, upon the terms and conditions set forth in this Final Order and the DIP Term Sheet.  Any objections or other statements with respect to any of the relief set forth in this Final Order that have not been withdrawn, waived, or settled, and all reservations of rights inconsistent with this Final Order, are hereby denied and overruled.  This Final Order shall become effective and enforceable immediately upon its entry.

2.      *Authorization of DIP Facility and DIP Term Sheet.*

(a)      <u>Authorization of DIP Term Sheet</u>.  The Debtors are authorized to enter into the DIP Facility on a final basis.  The Debtors were authorized by the Interim Order and are hereby authorized, on a final basis, to (i) execute, deliver, and perform all of their obligations under the DIP Term Sheet and this Final Order; and (ii) execute, deliver, and perform under any and all other instruments, certificates, agreements, and other documents (including, without limitation, the execution and/or recordation of collateral, pledge and security documents, mortgages and deeds of trust (if applicable), and financing statements), and perform all such other and further acts that, may be necessary, required or desirable for the Debtors to perform their obligations under the DIP Facility, the DIP Term Sheet, the Interim Order, and this Final Order and to implement the transactions contemplated thereunder and hereunder.

(b)      <u>Authorization to Borrow; Use of Cash Collateral</u>.  The Borrower is hereby authorized to borrow, and the Guarantors are hereby authorized to guarantee, on a joint and several basis, up to the principal amount of $20.0 million (*plus* applicable interest, premiums (including, without limitation, the Upfront Fee and the Exit Fee), fees (including professional fees and expenses), costs, expenses, charges, and other amounts payable hereunder and under the DIP Term

Sheet), subject to the terms and conditions (including any payment priorities and any availability limitations and conditions precedent to such DIP Borrowing) set forth in the DIP Term Sheet and this Final Order.  The Debtors were authorized by the Interim Order and are hereby authorized to use the proceeds of all DIP Borrowings under the DIP Facility and all Cash Collateral solely in the manner and for the purposes expressly permitted in the Approved Budget (subject to Permitted Variances), the DIP Term Sheet, and this Final Order.

           (c)    <u>DIP Fees and Expenses; Indemnification</u>.  The Debtors were authorized by the Interim Order and are hereby, on a final basis, authorized and directed to pay, as and when due, any and all (i) fees, premiums, or other payments payable under the DIP Term Sheet (including, without limitation, the Upfront Fee and the Exit Fee), (ii) amounts due (or that may become due) in respect of the indemnification obligations under the DIP Term Sheet, and (iii) costs, expenses, and disbursements of the DIP Lender payable under the DIP Term Sheet and this Final Order, including, without limitation, the reasonable and documented fees and expenses of (A) Norton Rose Fulbright US LLP, as counsel to the DIP Lender, (B) Young Conaway Stargatt & Taylor, LLP, as local counsel to the DIP Lender, and (C) any other accountants, consultants, attorneys, advisors, appraisers, or other professionals that may be retained by the DIP Lender with the consent of the Debtors, such consent not to be unreasonably withheld or delayed (the foregoing subclauses (A)-(C), the "**DIP Lender Advisors**"), in the case of each of the foregoing clauses (i)-(iii), whether or not such payments, premiums, fees, costs, expenses, or other amounts arose before or after the Petition Date and whether or not the transactions contemplated herein or in the DIP Term Sheet are consummated through no fault of the DIP Lender, without the need to file fee or retention applications with the Court, without the need to comply with the U.S. Trustee's fee guidelines, and all such payments, premiums, fees, costs, expenses, and other amounts are hereby

RLF1 33359654v.1RLF1 33372441v.1

approved; <u>provided</u>, that the indemnification under the foregoing clause (ii) is authorized only and any objections with respect to any amounts owed thereunder are hereby reserved.  In the case of the foregoing clause (iii), any invoices submitted for payment may be in summary form only (and shall not be required to contain individual time entries, and may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and shall be promptly paid by the Debtors, on a monthly basis as appropriate, upon receipt of any such invoices, subject to paragraph 11 with respect to fees and expenses incurred after the Interim Closing Date (as defined in the DIP Term Sheet).

3.    *DIP Obligations*.

(a)    Upon execution and delivery of the DIP Term Sheet, the DIP Term Sheet shall constitute valid, binding, enforceable, and non-avoidable obligations of each of the Debtors, and shall be fully enforceable against each of the Debtors, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of the Chapter 11 Cases or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or relating to any of the foregoing and/or upon the dismissal of any of the Chapter 11 Cases or any such successor cases (collectively, the "**Successor Cases**"), in each case, in accordance with the terms of the DIP Term Sheet and this Final Order.

(b)    Upon execution and delivery of the DIP Term Sheet, the DIP Loan Parties shall be jointly and severally liable for all DIP Obligations, including, without limitation, all loans, advances, extensions of credit, financial accommodations, principal, interest, premiums or similar

23

amounts, fees, costs, expenses, charges, indemnification and reimbursement obligations (whether contingent or absolute), and all other obligations or amounts, whether or not such obligations arose before or after the Petition Date, whenever the same shall become due, whether at stated maturity, by required prepayment, declaration, acceleration, demand, or otherwise, in each case, which may now or from time to time be owing by any of the Debtors to the DIP Lender under the DIP Term Sheet or this Final Order.  On the DIP Termination Date (as defined below) (subject to paragraph 20(b) hereof), the DIP Obligations shall be due and payable, without notice or demand, the DIP Commitments shall automatically terminate, and the use of Cash Collateral shall automatically cease.

(c)    All obligations incurred, payments made, and transfers or grants of security and liens set forth in the Interim Order, this Final Order and the DIP Term Sheet by the Debtors are granted to or for the benefit of the Debtors for fair consideration and reasonably equivalent value and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured thereby.  No obligation, payment, transfer, or grant of liens and security interests under this Final Order or the DIP Term Sheet to the DIP Lender or the Prepetition Secured Parties (including, without limitation, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims, or the Adequate Protection Obligations) shall be limited, stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action, including any Avoidance Action or any other claim or Cause of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery, or any

RLF1 33359654v.1RLF1 33372441v.1

other claim or Cause of Action of any nature and description whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise (in each case in accordance with and subject to the fee review procedures set forth in paragraph 11 hereof).

4.     *No Obligation to Extend Credit*.  The DIP Lender shall have no obligation to make any loan or advance under the DIP Term Sheet, unless all of the conditions precedent to the making of such loan or advance by the DIP Lender under the DIP Term Sheet and this Final Order have been satisfied in full (or waived) in accordance with the terms of the DIP Term Sheet and this Final Order, as applicable.  Notwithstanding anything contained in this Final Order or the DIP Term Sheet to the contrary, in no event shall the aggregate principal amount of the DIP Loans available or outstanding under the DIP Term Sheet at any time (after giving effect to all DIP Borrowings previously made or requested) exceed the total DIP Commitments.

5.     *No Duty to Monitor Compliance*.  None of the DIP Lender or the Prepetition Secured Parties shall have any obligation or responsibility to monitor the Debtors' use of DIP Collateral, Prepetition Collateral, or Cash Collateral, and each of the DIP Lender and Prepetition Secured Parties may rely upon the Debtors' representations that the use of DIP Collateral, Prepetition Collateral, and Cash Collateral complies with and is in accordance with the requirements of this Final Order and the DIP Term Sheet.

6.     *DIP Liens.*

(a)     <u>DIP Liens</u>.  Effective as of the  entry of the Interim Order, and without the necessity of the execution, recordation, or filing of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any lockbox or deposit account control agreements or other action to take possession

or control of any DIP Collateral), as security for the prompt and complete payment and performance of all DIP Obligations when due (whether at stated maturity, by acceleration, or otherwise), the DIP Lender is hereby granted valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests (collectively, the "**DIP Liens**") in all DIP Collateral, subject and subordinate to the Carve Out and Permitted Prior Liens, and subject to the relative priorities set forth in paragraph 6(c) and **Exhibit 1** of this Final Order.

(b)    DIP Collateral.  The term "**DIP Collateral**" means all assets and properties of each of the DIP Loan Parties and their estates, of any kind or nature whatsoever, whether tangible or intangible, real, personal, or mixed, whether now owned or consigned by or to, or leased from or to, or hereafter acquired by, or arising in favor of, any of the DIP Loan Parties (including under any trade names, styles, or derivations thereof), whether prior to or after the Petition Date, and wherever located, including, without limitation, (i) all of the DIP Loan Parties' rights, title, and interests in all DIP Collateral (as defined in the DIP Term Sheet) and Prepetition Collateral (including Cash Collateral) and (ii) all money, cash and cash equivalents, all funds in any deposit accounts, securities accounts, commodities accounts, or other accounts (together with any and all money, cash and cash equivalents, instruments, and other property deposited therein or credited thereto from time to time), all accounts receivable and other receivables (including those generated by intercompany transactions), all rights to payment, contracts and contract rights, all instruments, documents and chattel paper, all securities (whether or not marketable), all goods, furniture, machinery, plants, equipment, vehicles, inventory, and fixtures, all real property interests, all interests in leaseholds, all franchise rights, all patents, tradenames, trademarks, copyrights, licenses, and all other intellectual property, all general intangibles, tax or other refunds, or insurance proceeds, all equity interests, capital stock, limited liability company interests,

RLF1 33359654v.1RLF1 33372441v.1

partnership interests, and financial assets, all investment property, all supporting obligations, all letters of credit and letter of credit rights, all commercial tort claims (including, for the avoidance of doubt, any Cause of Action related thereto), all books and records (including, without limitation, customers lists, credit files, computer programs, printouts, and other computer materials and records), and all rents, products, offspring, profits, and proceeds of each of the foregoing and all accessions to, substitutions and replacements for, each of the foregoing, including any and all proceeds of any insurance (including any business interruption and property insurance), indemnity, warranty, or guaranty payable to any DIP Loan Party from time to time with respect to any of the foregoing; provided, that DIP Collateral shall not include Avoidance Actions but shall include all proceeds of and property that is recovered from or becomes unencumbered as a result of, whether by judgment, settlement, or otherwise, Avoidance Actions ("**Avoidance Action Proceeds**").

(c)    Priority of DIP Liens.[6]  The DIP Liens shall have the following ranking and priorities (subject in all cases to the Carve Out and paragraph 10(c) hereof):

(i)    *First Priority Liens on Unencumbered Property*.  Subject to the priorities set forth in **Exhibit 1** attached hereto, pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Liens shall be valid, binding, continuing, enforceable, non-avoidable, fully and automatically perfected first priority liens and security interests in all DIP Collateral that is not subject to Permitted Prior Liens (including, for purposes of this paragraph, Prepetition Liens) including, for the avoidance of doubt Avoidance Action Proceeds (collectively, the "**Unencumbered Property**").

(ii)    *Priming DIP Liens and Junior DIP Liens*.  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, the DIP Liens shall be valid, binding, continuing, enforceable, non-avoidable, fully and automatically perfected liens and security interests in all DIP Collateral (other than as described in subparagraph (c)(i) of this paragraph 6), which DIP Liens (A) shall be subject and subordinate to Permitted Prior Liens, (B) shall be subject to the priorities set forth in **Exhibit 1** attached hereto, and (C) shall be senior to any and all other liens and security interests in the DIP Collateral subject to the Carve Out and to the extent provided in **Exhibit 1** attached hereto, including, without limitation, all liens and security interests in the Prepetition Collateral or any DIP

---

[6]    In the event of any conflict between the terms set forth in this paragraph 6(c) and **Exhibit 1** attached hereto, **Exhibit 1** shall govern.

Collateral that would otherwise constitute Prepetition Collateral (including, without limitation, Adequate Protection Liens and Prepetition Liens in Prepetition Collateral).

(iii)    *DIP Liens Senior to Other Liens*.  Except to the extent expressly permitted hereunder, the DIP Liens and the DIP Superpriority Claims shall not be made subject or subordinate to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases, including any lien, security interest, or claim granted in favor of any federal, state, municipal, or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors, (B) any lien or security interest that is avoided and preserved for the benefit of the DIP Loan Parties and their estates under section 551 of the Bankruptcy Code or otherwise, (C) any intercompany or affiliate claim, lien, or security interest of the DIP Loan Parties or their affiliates, or (D) any other lien, security interest, or claim arising under section 363 or 364 of the Bankruptcy Code granted on or after the date hereof.

(d)    To the fullest extent permitted by the Bankruptcy Code, any provision of any lease, license, contract, or other agreement that requires the consent or approval of one or more landlords, licensors, or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity, or any other person or entity, in order for any Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest, or proceeds thereof or other collateral related thereto, shall have no force or effect with respect to the transactions granting the DIP Liens or the Adequate Protection Liens in any such fee, leasehold, interest, or other collateral, or in the proceeds of any assignment and/or sale thereof by any Debtor in favor of the DIP Lender or the Prepetition Secured Parties in accordance with the DIP Term Sheet and this Final Order.

7.    *DIP Superpriority Claims*.  Pursuant to and to the extent permitted by sections 364(c)(1) and 364(e) of the Bankruptcy Code, the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors in each of their respective Chapter 11 Cases and any Successor Cases on account of the DIP Obligations, with priority over any and all other administrative expense claims and all other claims against the Debtors (other than as set forth on **Exhibit 1** attached hereto), now existing or hereafter arising, of

28

any kind or nature whatsoever, including, without limitation, any adequate protection claims, including the Adequate Protection Claims, and all administrative expense claims of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546, 726, 1113, or 1114 of the Bankruptcy Code, or any other provision of the Bankruptcy Code (the "**DIP Superpriority Claims**").    The DIP Superpriority Claims shall (x) for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and (y) be subject and subordinate to the Carve Out and the relative priorities set forth in **Exhibit 1** attached hereto.  The DIP Superpriority Claims shall be payable by each of the Debtors, on a joint and several basis, and shall have recourse to all DIP Collateral, subject only to the Carve Out and the relative priorities set forth in **Exhibit 1** attached hereto.    The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, including in the event that this Final Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

8.    *Use of DIP Collateral, Prepetition Collateral, and Cash Collateral.*

(a)    The Debtors were authorized by the Interim Order and are hereby authorized to use the proceeds of DIP Loans and all Cash Collateral solely to the extent expressly permitted under the Approved Budget (subject to Permitted Variances) and subject to the terms and conditions set forth in the DIP Term Sheet and this Final Order.  Unless otherwise agreed to by the DIP Lender, except on the terms and conditions of this Final Order and the DIP Term Sheet, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral absent further order of the Court.

(b)    Without the prior written consent of the DIP Lender or order of the Court after notice and a hearing, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose

29

of any portion of the DIP Collateral (or enter into any binding agreement to do so), except as expressly permitted by the DIP Term Sheet.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnation, or otherwise, will be deposited and applied to repay the DIP Obligations as required by this Final Order and the DIP Term Sheet.  The Debtors are authorized and directed, upon the closing of a sale of any of the DIP Collateral, to (subject to the priorities set forth on **Exhibit 1** attached hereto) immediately pay all proceeds of any such sale to the DIP Lender to satisfy the DIP Obligations in accordance with this Final Order and the DIP Term Sheet until the DIP Obligations are Paid in Full,[7] and any order approving the sale of such DIP Collateral shall provide that the sale is conditioned upon such payment of DIP Obligations (except to the extent otherwise agreed in writing by the DIP Lender), in each case subject to the Carve Out and the priorities set forth on **Exhibit 1** attached hereto.  For the avoidance of doubt, notwithstanding anything to the contrary in any other order or agreement (written, verbal, or otherwise), all cash proceeds derived from the sale, transfer, lease, encumbrance, or other disposition of any portion of the DIP Collateral (or entry into any binding agreement to do so) of all or substantially all of the Debtors' assets outside the ordinary course of the business shall be used for the satisfaction of the DIP Obligations until the DIP Obligations have been Paid in Full, and none of the cash proceeds derived from such sale, transfer, lease, encumbrance, or other disposition of such portion of the DIP Collateral (or entry into any binding agreement to do so) may be used for (x) the payment of any fees or expenses of any Professional Persons, subject to the Carve Out or (y) the payment of any fees, expenses, or

---

[7]    The term "**Paid in Full**" or "**Payment in Full**" means the indefeasible payment in full in cash of all DIP Obligations or Prepetition Secured Obligations, as the case may be, other than contingent indemnification and expense reimbursement obligations for which no claim or demand has been asserted, and all commitments thereunder have been terminated or expired.

RLF1 33359654v.1RLF1 33372441v.1

costs of the sale transaction until the DIP Obligations have been Paid in Full. Notwithstanding the foregoing, this paragraph (b) shall be subject to the priorities set forth on **Exhibit 1** attached hereto.

9.     *Budget and Variance Reporting*.  The Debtors shall comply with the budget and variance reporting obligations set forth in the DIP Term Sheet.

10.     *Adequate Protection*.  The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e) and 507 of the Bankruptcy Code, to adequate protection of their respective Prepetition Liens in Prepetition Collateral (including Cash Collateral), as follows (the liens, security interests, payments, and other obligations set forth in this paragraph 10, are collectively referred to herein as the "**Adequate Protection Obligations**"):

(a)     Adequate Protection for Prepetition Term Loan Secured Parties.  The Prepetition Term Loan Secured Parties are hereby granted the following adequate protection of their Prepetition Term Loan Liens in the Prepetition Term Loan Collateral (including Cash Collateral):

(i)     *Term Loan Adequate Protection Claims*.  The Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Lenders, is hereby granted, to the extent and in the amount of any Diminution in Value of the Prepetition Term Loan Liens in the Prepetition Term Loan Collateral (including Cash Collateral), superpriority administrative expense claims contemplated by section 507(b) of the Bankruptcy Code against each of the Debtors that are Prepetition Term Loan Parties in each of their respective Chapter 11 Cases (the "**Term Loan Adequate Protection Claims**"), which shall be payable by each of those Debtors on a joint and several basis. The Term Loan Adequate Protection Claims shall be (1) subject and subordinate to the Carve Out and the DIP Superpriority Claims (in an aggregate amount not to exceed $1 million) and (2) subject to the relative priorities set forth in **Exhibit 1** attached hereto.

(ii)     *Term Loan Adequate Protection Liens*.  The Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Lenders, is hereby granted, effective and automatically perfected as of the Petition Date, and without the necessity of the execution, recordation, or filing of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any lockbox or deposit account control agreement or other action to take possession or control of any DIP Collateral), to the extent and in the amount of any Diminution in Value of the Prepetition Term Loan Liens in the Prepetition Term

31

Loan Collateral, valid, binding, enforceable, and perfected postpetition liens and security interests in all DIP Collateral other than Prepetition Notes Collateral held by Debtors that are Prepetition Term Loan Parties  (the "**Term Loan Adequate Protection Liens**").  The Term Loan Adequate Protection Liens shall be (1) subject and subordinate to the Carve Out, the DIP Liens (in an aggregate amount not to exceed $1 million), and the Permitted Prior Liens and (2) subject to the relative priorities set forth in **Exhibit 1** attached hereto.

(b)     Adequate Protection for Prepetition Noteholders.     The Prepetition Noteholders are hereby granted the following adequate protection of their Prepetition Note Liens in the Prepetition Note Collateral (including Cash Collateral):

(i)     *Notes Adequate Protection Claims*.  The Prepetition Noteholders are hereby granted, to the extent and in the amount of any Diminution in Value of the Prepetition Note Liens in the Prepetition Note Collateral (including Cash Collateral), superpriority administrative expense claims contemplated by section 507(b) of the Bankruptcy Code against each of the Debtors in each of their respective Chapter 11 Cases (the "**Notes Adequate Protection Claims**" and, together with the Term Loan Adequate Protection Claims, the "**Adequate Protection Claims**"), which shall be payable by each of those Debtors that are guarantors of the Prepetition Notes, on a joint and several basis.  The Notes Adequate Protection Claims shall be (1) subject and subordinate to the Carve Out and the DIP Superpriority Claims and (2) subject to the relative priorities set forth in **Exhibit 1** attached hereto.

(ii)     *Notes Adequate Protection Liens*.  The Prepetition Noteholders are hereby granted effective and automatically perfected as of the Petition Date, and without the necessity of the execution, recordation, or filing of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any lockbox or deposit account control agreement or other action to take possession or control of any DIP Collateral), to the extent and in the amount of any Diminution in Value of the Prepetition Note Liens in the Prepetition Note Collateral, valid, binding, enforceable, and perfected postpetition liens and security interests in all DIP Collateral other than Prepetition Term Loan Collateral held by Debtors that are guarantors of the Prepetition Notes (the "**Notes Adequate Protection Liens**").  The Notes Adequate Protection Liens shall be (1) subject and subordinate to the Carve Out, the DIP Liens, and the Permitted Prior Liens and (2) subject to the relative priorities set forth in **Exhibit 1** attached hereto.

(c)     Additional Provisions Regarding Adequate Protection.  In consideration for the consent of the Prepetition Noteholders and the consent of the Required Lenders under the

Prepetition Term Loan Credit Agreement to the use of cash collateral and the DIP Facility, and notwithstanding anything to the contrary herein:

(i)      the Debtors paid to the Prepetition Term Loan Agent, for further distribution to the Prepetition Term Loan Lenders in accordance with the Prepetition Term Loan Documents, the sum of $1 million upon entry of the Interim Order (the "**Consent Fee**").   The Consent Fee shall be used to (x) pay the reasonable fees and expenses (including reasonable counsel fees) of the Term Loan Agent and each Term Loan Lender incurred in connection with these Chapter 11 Cases, including the negotiation, approval and enforcement of the Interim Order and this Final Order and (y) otherwise distributed to the Term Loan Lenders in accordance with the terms of the Prepetition Term Loan Credit Agreement;

(ii)      the DIP Liens and DIP Obligations shall be senior to the Prepetition Term Loan Liens and Prepetition Term Loan Obligations with respect to the Prepetition Term Loan Collateral only to the extent of $1 million (inclusive of any Carve Out applicable to the Prepetition Term Loan Collateral), and the Prepetition Term Loan Liens shall be senior to the DIP Liens with respect to the Prepetition Term Loan Collateral for all amounts in excess of $1 million;

(iii)      the Prepetition Secured Parties and the Debtors agree that, without prejudice to the rights of other parties, 51% of the proceeds from the Job Board Sale (pursuant to the Job Board Stalking Horse Bid or otherwise) shall be allocated to the Prepetition Term Loan Collateral (with the Consent Fee credited against such amount), with the remaining 49% allocated to the Prepetition Notes Collateral; and

(iv)      the Debtors shall not recover (or seek to recover) more than $75,000 of the reasonable and necessary costs of preserving or disposing the Prepetition Term Loan Collateral pursuant to section 506(c) of the Bankruptcy Code, with any amount in excess thereof being waived.

(d)      Notwithstanding anything to the contrary contained herein, no party may seek to enforce, collect upon, or liquidate the Term Loan Adequate Protection Claims, Term Loan Adequate Protection Liens, Notes Adequate Protection Liens, or Notes Adequate Protection Claims until the DIP Obligations have been indefeasibly Paid in Full (or otherwise paid to the extent of their priority entitlement).  In the event the DIP Obligations have not been Paid in Full, each of the Prepetition Note Agent, the Prepetition Noteholders, the Prepetition Term Loan Agent, and the Prepetition Term Loan Lenders agree, pursuant to section 1129(a)(9) of the Bankruptcy Code, that such junior superpriority claims may be paid under any plan of reorganization in any

combination of cash, debt, equity, or other property having a value on the effective date of such plan equal to the value of such claims after taking into account all claims that are senior to, or structurally senior to, such claims.

11.    *Fees and Expenses*.  The invoices with respect to the professional fees and expenses payable under paragraph 2(c) of this Final Order shall not be required to comply with the U.S. Trustee guidelines, nor shall the applicable professionals be required to file fee applications with the Court with respect to any fees or expenses payable hereunder, and all invoices therefor may be in summary form only (and shall not be required to contain individual time entries, and may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and shall, by email, be provided to counsel to the Debtors, counsel to the Official Committee and the U.S. Trustee (the "**Fee Notice Parties**"); provided, however, if no formal objection to payment of the requested fees and expenses is made in writing by any of the Fee Notice Parties within ten calendar days after delivery of such invoices (the "**Fee Objection Period**"), then, upon the expiration of the Fee Objection Period, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors and, in any event, no later than three (3) business days after expiration of the Fee Objection Period; provided, further, however, that if a formal objection is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, the undisputed portion shall promptly be paid by the Debtors, and in any event, no later than three (3) business days after expiration of the Fee Objection Period, and the disputed portion shall only be paid upon resolution

RLF1 33359654v.1RLF1 33372441v.1

of such objection by the applicable parties or by order of the Court. Any hearing on an objection to the payment of any fees, costs, or expenses set forth in a professional fee invoice shall be limited to the reasonableness of the fees, costs, and expenses that are the subject of such objection. Subject to this paragraph 11, none of the adequate protection payments required to be made pursuant to this Final Order shall be subject to claim, counterclaim, challenge, setoff, subordination, recharacterization, defense, avoidance, or disgorgement in the Chapter 11 Cases or any Successor Cases.

12.    *Reservation of Rights*. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the DIP Lender to seek any other or supplemental relief in respect of the Debtors; (b) the rights of the DIP Lender under the DIP Term Sheet, the Bankruptcy Code, or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code; (ii) request dismissal of any of the Chapter 11 Cases, conversion of any or all of the Chapter 11 Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers; or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender or the Prepetition Secured Parties. Notwithstanding anything contained herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors' or any party in interest's right to oppose (on an emergency basis if need be) any of the relief requested in accordance with the immediately preceding sentence, except as expressly set forth in this Final Order.

RLF1 33359654v.1RLF1 33372441v.1

13.     *Amendments*.  Without the need for further notice to or approval of this Court, the Debtors are authorized to execute, deliver, and perform under, one or more amendments, waivers, consents, or other modifications to and under the DIP Term Sheet, in each case, in accordance with the provisions of the DIP Term Sheet governing amendments thereto (and otherwise in form and substance acceptable to the DIP Lender); provided, however, that any amendment that (a) shortens the maturity of the extensions of credit thereunder, (b) increases the aggregate commitments thereunder, (c) increases the rate of interest or any fee payable thereunder, or (d) any other material amendment, waiver, consent, or other modification (each, a "**Material DIP Amendment**") shall be subject to approval of the Court.

14.     *Modification of Automatic Stay*.  The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby vacated and modified, without further notice to or order of this Court, to permit:  (a) the DIP Loan Parties to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Lender may request to assure the perfection and priority of the DIP Liens; (b) the DIP Loan Parties to incur all liabilities and obligations, including all of the DIP Obligations, to the DIP Lender as contemplated under this Final Order and the DIP Term Sheet; (c) the DIP Loan Parties to grant the Adequate Protection Liens and the Adequate Protection Claims, and to perform such acts as the Prepetition Agents may request to assure the perfection and priority of the Adequate Protection Liens; (d) the DIP Loan Parties to incur all liabilities and obligations, including all Adequate Protection Obligations, to the Prepetition Secured Parties as contemplated under this Final Order and the applicable Prepetition Loan Documents; (e) the DIP Loan Parties to pay all amounts required hereunder and under the DIP Term Sheet; (f) the DIP Lender to retain and apply payments made in accordance with the terms of this Final Order and the DIP Term Sheet; (g) subject to paragraph 20(b) of this Final Order, the DIP Lender to exercise,

36

upon the occurrence and during the continuance of any DIP Termination Event (as defined below), all rights and remedies provided for in this Final Order, the DIP Term Sheet, or applicable law; (h) to perform under this Final Order and the DIP Term Sheet, and to take any and all other actions that may be required, necessary, or desirable for the performance by the Debtors under this Final Order and the DIP Term Sheet and the implementation of the transactions contemplated hereunder and thereunder; and (i) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Final Order and the DIP Term Sheet.

15.     *Perfection of DIP Liens and Adequate Protection Liens*.

(a)     This Final Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of all liens and security interests granted hereunder and under the DIP Term Sheet, including, without limitation, the DIP Liens and the Adequate Protection Liens, without the necessity of the execution, recordation, or filing of any pledge, collateral or security agreements, mortgages, deeds of trust, lockbox or control agreements, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any deposit account control agreement or other act to take possession or control of any DIP Collateral), to attach, validate, perfect, or prioritize such liens and security interests, or to entitle the DIP Lender and the Prepetition Secured Parties to the priorities granted herein (each, a "**Perfection Act**") (other than, to the extent applicable, any such filings required under applicable non-U.S. law to attach, validate, perfect or prioritize such liens).

(b)     Without in any way limiting the automatically effective perfection of the liens granted hereunder and the DIP Term Sheet (including, without limitation, the DIP Liens and the Adequate Protection Liens), the DIP Lender and each of the Prepetition Agents, at the direction

37

of the requisite Prepetition Term Loan Lenders or the Prepetition Noteholders, as applicable, were authorized by the Interim Order and are hereby authorized, but not required, in the case of the Prepetition Agents, at the direction of the requisite Prepetition Term Loan Lenders or the Prepetition Noteholders, as applicable, as they may determine for any reason, to execute, file, and record (and to execute in the name of the DIP Loan Parties, as their true and lawful attorneys, with full power of submission, to the maximum extent permitted under applicable law) or otherwise effectuate any Perfection Act or to take any other action in order to attach, validate, perfect, and preserve the liens and security interests granted to them hereunder or under the DIP Term Sheet to otherwise evidence such liens and security interests in all DIP Collateral; provided, however, that, whether or not the DIP Lender or either of the Prepetition Agents determine to execute, file, record, or otherwise effectuate any Perfection Act with respect to any liens or security interests granted hereunder, such liens and security interests shall nonetheless be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to objection, challenge, dispute, avoidance, recharacterization, or subordination as of the entry of the Interim Order.  Upon the request of the DIP Lender, without any further consent of any party, the DIP Lender and the Debtors are authorized and directed to take, execute, deliver, and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Lender to further validate, perfect, preserve, and enforce the DIP Liens.  All such documents will be deemed to have been recorded and filed as of the entry of the Interim Order.

(c)     A certified copy of the Interim Order or this Final Order may be (but need not be) filed with or recorded in filing or recording offices in addition to or in lieu of any security documents, and all filing offices were authorized by the Interim Order and are hereby authorized to accept such certified copies of the Interim Order and this Final Order for filing and/or recording,

RLF1 33359654v.1RLF1 33372441v.1

as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Lender or the Prepetition Agents, at the direction of the requisite Prepetition Term Loan Lenders or the Prepetition Noteholders, as applicable, to take all actions, as applicable, referenced in this paragraph.

16.    *Protection of DIP Lender's Rights*.

(a)    Until the DIP Obligations are Paid in Full (or to the extent of their priority), the Prepetition Secured Parties shall:  (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens or security interests granted to the Prepetition Secured Parties pursuant to the Prepetition Loan Documents or this Final Order or otherwise seek to exercise or enforce any rights or remedies against any DIP Collateral, Prepetition Collateral, or Prepetition Loan Party (as applicable), including, without limitation, any exercise of setoff or recoupment; (ii) be deemed to have consented to any transfer, disposition, sale, or release of liens or claims on, such DIP Collateral or and the proceeds thereof, to the extent such transfer, disposition, sale, or release is authorized hereunder, or under the DIP Term Sheet and the proceeds thereof are applied in accordance with the priorities set forth in this Final Order and **Exhibit 1** attached hereto; (iii) not file any further financing statements, patent filings, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral; (iv) may not credit bid their respective obligations for any of the Debtors' assets pursuant to section 363 of the Bankruptcy Code or otherwise, unless such credit bid provides that the DIP Obligations (or the DIP Obligations having priority with respect to the assets to be sold) will be Paid in Full upon consummation of any sale; and (v) deliver or cause to be delivered, at the Debtors' cost and expense (for which the Prepetition Agents shall be reimbursed upon submission to the Debtors of invoices or billing statements), any

39

termination statements, releases, and/or assignments in favor of the DIP Lender or other documents necessary to effectuate and/or evidence the release, termination, and/or assignment of liens on any portion of DIP Collateral subject to any sale or disposition authorized hereunder or under the DIP Term Sheet.  No Prepetition Secured Party may, directly or indirectly, (1) contest, or support any other Person in contesting, in any proceeding, the extent, validity, attachment, priority, or enforceability of any DIP Lien held by the DIP Lender in the DIP Collateral (or the extent, validity, allowability, or enforceability of any DIP Obligations secured thereby or purported to be secured thereby) or the provisions of the DIP Term Sheet or this Final Order, (2) take any action that would restrain, hinder, limit, delay, or otherwise interfere with the exercise of any rights or remedies by the DIP Lender, or (3) contest, object to, or support any other Person in contesting or objecting to the manner in which the DIP Lender seeks to enforce or collect the DIP Obligations, the DIP Superpriority Claims, or the DIP Liens or any amendment, waiver, or modification of the DIP Term Sheet (including **Exhibit 1** attached hereto).

(b)      To the extent any Prepetition Secured Party has been noted as a secured party on any security document or otherwise has possession of or control with respect to any Prepetition Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Lender, and such Prepetition Secured Party shall comply with the instructions of the DIP Lender with respect to the exercise of such possession or control, subject to the priorities set forth on **Exhibit 1**.

(c)      In the event that the Prepetition Secured Parties or any other person or entity, in each case, that holds a lien on or security interest in DIP Collateral that is junior or otherwise subordinate to the DIP Liens receives any DIP Collateral or proceeds of DIP Collateral,

RLF1 33359654v.1RLF1 33372441v.1

or receives any payment on account of such lien or security interest in the DIP Collateral (whether in connection with the exercise of any right or remedy (including setoff), payment or distribution from the Debtors, mistake, or otherwise), prior to the Payment in Full of all DIP Obligations (or the portion of the DIP Obligations having priority with respect to such payment), such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Lender, and shall immediately turn over all such proceeds on account of DIP Obligations having priority to the DIP Lender in the same form as received, with any necessary endorsements, for application in accordance with the DIP Term Sheet and this Final Order.  The DIP Lender was authorized by the Interim Order and is hereby authorized to make any such endorsement as agent for the Prepetition Agents or any Prepetition Secured Party.  This authorization is coupled with an interest and is irrevocable.

(d)     Except as expressly provided herein or in the DIP Term Sheet, no claim or lien having a priority senior to or *pari passu* with those granted to the DIP Lender or Prepetition Secured Parties by this Final Order shall be granted or permitted while any of the DIP Obligations remain outstanding.  Except as expressly provided in this Final Order or the DIP Term Sheet, each of the DIP Liens and the DIP Superpriority Claims:  (i) shall not be made junior or subordinated to or *pari passu* with (1) any lien, security interest, or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases, whether under section 364(d) of the Bankruptcy Code or otherwise, (2) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, (3) any lien arising after the Petition Date including, without limitation, any lien or security interests granted in favor of any federal, state, municipal, or other domestic or foreign governmental unit (including any regulatory body), commission, board, or court for any liability of the Debtors, or (4) any

RLF1 33359654v.1RLF1 33372441v.1

intercompany or affiliate lien or claim and (ii) shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.

17.    *Maintenance of DIP Collateral*.  Until such time as all DIP Obligations are Paid in Full (or as otherwise agreed in writing by the DIP Lender), the Debtors shall continue to maintain all property, operational, and other insurance as required and as specified in the DIP Term Sheet. Effective as of the entry of the Interim Order, the DIP Lender shall automatically be deemed to be named as additional insured and lender loss payee under each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral (including all property damage and business interruption insurance policies of the Debtors, whether expired, currently in place, or to be put in place in the future), and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, *first*, to the Payment in Full of all DIP Obligations, and *second*, to the payment of the Prepetition Secured Obligations.  Notwithstanding the foregoing, the Debtors and/or the Prepetition Agents shall take any actions reasonably requested by the DIP Lender to have the DIP Lender added as an additional insured and lenders loss payee on each such insurance policy.  The Debtors shall provide notice of entry of this Final Order to the applicable insurers.

18.    *Cash Management*.  Until such time as all DIP Obligations are Paid in Full, the Debtors shall maintain the cash management system in effect as of the Petition Date, as modified by this Final Order and any order of the Court authorizing the continued use of the cash management system that is acceptable to the DIP Lender.  The Debtors shall not open any new deposit or securities account that is not subject to the liens and security interests of each of the DIP Lender (in which case it shall be subject to the lien priorities and other provisions set forth in this Final Order), excluding any Professional Fees Account (as defined below).

19.     *Reporting; Access to Records.*  The Debtors shall provide the DIP Lender and DIP Lender Advisors with all reporting, management calls, access to books and records, and other information required to be provided to the DIP Lender under the DIP Term Sheet.  Without limiting the requirements contained herein or in the DIP Term Sheet, the Debtors shall (a) provide the DIP Lender, counsel to the Prepetition Notes Secured Parties, and the Official Committee (and each of their respective advisors) with (i) all reports, documents, and information required to be delivered under the DIP Term Sheet (contemporaneously when the same is required to be delivered thereunder) and (ii) reasonable access, upon reasonable notice and during regular business hours, to the Debtors' books and records, assets, and properties, for purposes of monitoring the Debtors' businesses and operations and the value of the DIP Collateral and (b) reasonably cooperate and consult with, and provide information reasonably requested by the DIP Lender or the Official Committee (and their respective advisors) concerning the Debtors' businesses, financial condition, properties, business operations, and assets.  Copies of all reports provided by the Debtors to the DIP Lender shall also be provided to the Prepetition Agents.

20.     *DIP Termination Events; Exercise of Remedies.*

(a)     <u>DIP Termination Events</u>.  The occurrence of any of the following shall constitute a "DIP Termination Event" under this Final Order (each a "**<u>DIP Termination Event</u>**" and, the date upon which such DIP Termination Event occurs, the "**<u>DIP Termination Date</u>**"), unless waived in writing by the DIP Lender:

(i)     the occurrence of an "Event of Default" under and as defined in the DIP Term Sheet;

(ii)     the occurrence of the "Maturity Date" under and as defined in the DIP Term Sheet;

(iii)     the entry of this Final Order in form or substance that is not acceptable to the DIP Lender;

RLF1 33359654v.1RLF1 33372441v.1

(iv)    any of the Debtors seeks authorization from the Court for (or the Court enters an order authorizing or approving) any amendment, modification, or extension of this Final Order or the DIP Term Sheet without the prior written consent of the DIP Lender (and no such consent shall be implied by any other action or inaction of any of the DIP Lender);

(v)    the failure of the Debtors to make any payment required under the Interim Order, this Final Order or the DIP Term Sheet to the DIP Lender or the Prepetition Secured Parties as and when due and payable hereunder or thereunder;

(vi)    the failure by any of the Debtors to timely perform or comply in any material respect, with any of the other terms, provisions, conditions, or other obligations under the DIP Orders;

(vii)    the failure of any Milestone to be satisfied;

(viii)    the filing of any application by the Debtors (other than the application for financing provided by a third party which seeks authority to pay all of the DIP Obligations in full upon entry of the order approving such financing) for the approval of (or an order is entered by the Court approving) or the granting by the Court of any claim arising under section 507(b) of the Bankruptcy Code or any other provision of the Bankruptcy Code or any security, mortgage, collateral interest, or other lien in any of the Chapter 11 Cases which is *pari passu* with or senior to the DIP Liens, excluding the liens that are DIP Liens arising under the DIP Orders, or pursuant to any other financing agreement made with the prior written consent of the DIP Lender;

(ix)    the commencement or taking of any action by the Debtors or other authorized person (other than an action permitted by the DIP Orders) against the DIP Lender or any of its agents and employees (1) to subordinate or avoid any liens made in connection with the DIP Orders or (2) in violation of paragraph 25 of the DIP Orders;

(x)    (1) any Debtor files a pleading in any court seeking or supporting an order to revoke, reverse, stay, vacate, amend, supplement, or otherwise modify any DIP Order, or the disallowance of the DIP Obligations, in whole or in part or (2) any provision of the DIP Orders, or any other order of the Bankruptcy Court approving the Debtors' use of Cash Collateral (as defined in the DIP Orders), shall for any reason cease to be valid and binding (without the prior written consent of the DIP Lender);

(xi)    the filing of the Sale Motion or some other motion for approval to sell some or all of the Debtors' assets or to establish bidding procedures for the sale of some or all the Debtors' assets that is not in form and substance acceptable to the DIP Lender in its sole discretion;

(xii)    the filing of a motion seeking approval of a sale under section 363 for one or all of the Debtors business lines (or the designation by the Debtors of any bid, other than the Stalking Horse Bids, as the successful bid) that do not contemplate indefeasible Payment in Full (through sources reasonably acceptable to the DIP Lender) to

the DIP Lender of DIP Obligations and all other amounts outstanding under this DIP Facility or the DIP Orders on the closing of such sale;

(xiii)   the filing with the Court of a plan of reorganization or liquidation in any of the Chapter 11 Cases that does not provide for indefeasible Payment in Full (through sources reasonably acceptable to the DIP Lender) to the DIP Lender of DIP Loans and all other amounts outstanding under this DIP Facility or the DIP Orders on the effective date of such plan;

(xiv)   the appointment in any of the Chapter 11 Cases of a trustee, receiver, examiner, or responsible officer with enlarged powers relating to the operation of the business of any Debtor (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code);

(xv)   the granting of relief from the automatic stay by the Court to any other creditor or party in interest in the Chapter 11 Cases with respect to any portion of the DIP Collateral with a value in excess of $150,000;

(xvi)   the conversion of any of the Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code;

(xvii)   the termination of any of the Debtors' exclusive right to propose a plan of reorganization under chapter 11 of the Bankruptcy Code;

(xviii)  a dismissal of any of the Chapter 11 Cases; or

(xix)   the effective date of a chapter 11 plan of any of the Debtors.

(b)   <u>Remedies Upon DIP Termination Event</u>.  Upon the occurrence and during the continuation of a DIP Termination Event, without further notice to, hearing, or order from the Court, the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the DIP Lender to:  (i) deliver to the Borrower a notice declaring the occurrence of a DIP Termination Event; (ii) declare the termination, reduction, or restriction of the DIP Commitments (to the extent any such commitment remains), whereupon the DIP Commitments shall be terminated, reduced, or restricted; (iii) declare the DIP Obligations then outstanding to be due and payable, without presentment, demand, protest, or other notice of any kind, all of which are hereby expressly waived by the DIP Loan Parties; (iv) declare the reduction or restriction on the DIP Facility or the DIP Term Sheet, whereupon the DIP Facility or

the DIP Term Sheet shall be reduced or restricted; (v) declare the termination, restriction, or revocation of the ability of the Debtors to use Cash Collateral; (vi) charge interest at the default rate under the DIP Facility; (vii) freeze all monies or balances in any deposit accounts of the Debtors; (viii) immediately exercise any and all rights of set-off; (ix) exercise any right or remedy against the DIP Collateral, including, without limitation, the foreclosure on or disposition of DIP Collateral for application towards the DIP Obligations; (x) file a motion seeking Court authority to sell all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code; or (xi) take any other action or exercise any other right or remedy permitted under the DIP Term Sheet, this Final Order, or applicable law; <u>provided</u>, that, in the case of the enforcement of rights against the DIP Collateral pursuant to clauses (v), (viii), (ix), (x) and (xi) of this paragraph 20(b), the DIP Lender shall provide counsel to the Debtors, counsel to the Prepetition Notes Secured Parties, counsel to the Official Committee, and the U.S. Trustee five business days' prior written notice (the "**Remedies Notice**")[8] (which may be provided by email or other electronic means), and during such five business day notice period (the "**Remedies Notice Period**"), the Debtors, the Official Committee, and/or any other party in interest shall be permitted to request an emergency hearing (an "**Emergency Hearing**") before the Court (which request must be made prior to the conclusion of the Remedies Notice Period, and shall seek consideration of such request on an expedited basis); <u>provided</u>, <u>however</u>, that, during the Remedies Notice Period, the Debtors are permitted to use Cash Collateral solely to fund expenses critically necessary to preserve the value of the Debtors' businesses and fund the Carve Out Reserves (as defined below). <u>For the avoidance of doubt, in the case of the</u> enforcement of rights against the DIP Collateral pursuant to clauses

---

[8]    For the avoidance of doubt, the Remedies Notice, or any other notice contemplated under this paragraph 20, may be included in the Carve Out Trigger Notice.

RLF1 33359654v.1RLF1 33372441v.1

(v), (viii), (x), and (xi) of this paragraph 20(b), the Debtors shall be deemed to have granted the DIP Lender standing to pursue such actions.  If an Emergency Hearing is requested to be heard prior to the expiration of the Remedies Notice Period but is scheduled to be heard after the expiration of the Remedies Notice Period by the Court, the Remedies Notice Period shall be automatically extended to the date of such hearing.

(c)    Unless the Court orders otherwise during the Remedies Notice Period, following the expiration of the Remedies Notice Period, without further notice to, hearing, or order from the Court, the automatic stay of section 362 of the Bankruptcy Code shall automatically be vacated and modified for the purposes of permitting the DIP Lender to exercise any and all rights and remedies available to them under this Final Order, the DIP Term Sheet, and applicable law.

21.    *Milestones*.  As a condition to the use of the DIP Facility and Cash Collateral, and as further adequate protection to the DIP Lender, the Debtors and the DIP Lender agree that the DIP Lender is hereby entitled to performance of the following milestones set forth on **Annex A** hereto (or such later date as may be agreed by the DIP Lender, which may be documented by the DIP Lender Advisors via email) (the "**Milestones**"), and for the avoidance of doubt, absent the consent of the DIP Lender or unless otherwise ordered by the Court, the failure of the Debtors to comply with any of the Milestones shall constitute an immediate Event of Default under the DIP Term Sheet and this Final Order and permit the DIP Lender to exercise its rights and remedies provided for in this Final Order and the DIP Term Sheet.

22.    *No Waiver by Failure to Seek Relief*.  The rights and remedies of the DIP Lender and the Prepetition Secured Parties specified herein, are cumulative and not exclusive of any rights or remedies that the DIP Lender or the Prepetition Secured Parties may have under the DIP Term Sheet, the Prepetition Loan Documents, applicable law, or otherwise.  The failure or delay on the

part of the DIP Lender or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the DIP Term Sheet, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of their respective rights hereunder, thereunder, or otherwise.  No delay on the part of any party in the exercise of any right or remedy under this Final Order, the DIP Term Sheet or the Prepetition Loan Documents shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy.  None of the rights or remedies of any party under this Final Order, the DIP Term Sheet and the Prepetition Loan Documents shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the requisite parties under the DIP Term Sheet and the requisite parties under the Prepetition Loan Documents, as applicable.  No consents required hereunder by the DIP Lender or the Prepetition Secured Parties shall be implied by any inaction or acquiescence by the DIP Lender or the Prepetition Secured Parties (as applicable).

23.     *Carve Out.*

(a)     Carve Out.  As used in this Final Order, the term "**Carve Out**" means an amount equal to the sum of:  (i) all unpaid fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate pursuant to 31 U.S.C. § 3717; (ii) all unpaid reasonable fees and expenses up to $10,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) to the extent allowed by this Court at any time, whether by interim order, procedural order, or otherwise (which order has not been vacated or stayed), all accrued and unpaid fees and expenses (in each case, excluding any restructuring, sale, success, or other transaction fee owed to any investment bankers or financial advisors to the DIP Loan Parties or the Committee Professionals (as defined

48

below), when and if earned pursuant to the terms and conditions of an engagement letter approved by this Court in these Chapter 11 Cases); (iv) the fees and expenses of any consumer privacy ombudsman appointed in these Chapter 11 Cases pursuant to section 333 of the Bankruptcy Code (the "**CPOs**"), including any fees and expenses incurred by professionals retained or proposed to be retained by any such consumer privacy ombudsman (the "**CPO Professionals**" and, collectively with the CPOs, the Debtor Professionals, and the Committee Professionals, the "**Professional Persons**") whether allowed by the court prior to or after delivery of a Carve Out Notice (collectively, the "**Allowed Professional Fees**"), incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "**Debtor Professionals**") and the Official Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**") at any time before or on the date of delivery by the DIP Lender of a Carve Out Trigger Notice (as defined below); provided, that the amounts set forth in clauses (iii) and (iv) shall be subject to the aggregate amounts for Professional Persons in the Approved Budget and any limits under the DIP Orders (provided, that for the avoidance of doubt, Professional Persons may carry forward or roll back budgeted but unused disbursements set forth in the Approved Budget for any week for use in any subsequent or prior week(s), as applicable) (the amounts set forth in clauses (i)-(iv) being the "**Pre-Carve Out Trigger Notice Amounts**"); and (v) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $250,000 incurred after the first day following the date of delivery by the DIP Lender of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (v) being the "**Post-Carve Out Trigger Notice Cap**"); provided, however, that nothing herein shall be construed to impair the ability of any party in interest (including the DIP Lender) to object to the fees, expenses,

49

reimbursement, or compensation described in clauses (i) through (v) of this paragraph 23(a) on any grounds.  In the event that Allowed Professional Fees exceed or are expected to exceed the amounts provided in the Approved Budget, the parties will negotiate in good faith (but without further obligation) regarding a proposed amendment to the Approved Budget to address such additional Allowed Professional Fees.  The "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender to counsel to the Debtors, the U.S. Trustee, and counsel to the Official Committee with a copy to counsel to the Prepetition Notes Secured Parties, which notice may be delivered following the occurrence and during the continuation of a DIP Termination Event or failure to meet a Milestone stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    Carve Out Reserves.  From and after the Petition Date, the Debtors shall, on Monday of each week, transfer cash proceeds of the DIP Facility or cash on hand into a segregated account (the "**Professional Fees Account**") in an amount equal to the fees and expenses reflected in the Approved Budget for Professional Persons for that week (provided, that the first such transfer shall also include any such fees and expenses reflected in the Approved Budget for any prior weeks).  The Professional Fees Account, if applicable, shall be held in trust and used solely to satisfy Allowed Professional Fees; provided, that the Debtors' obligations to pay Allowed Professional Fees shall not be limited or be deemed limited to funds held in the Professional Fees Account.  On the day on which a Carve Out Trigger Notice is delivered in accordance with this paragraph 23(b) of the Final Order (the "**Termination Declaration Date**"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash (including Cash Collateral) on hand as of such date, including funds in the Professional Fees Account, if applicable (net of any amounts held on retainer by any Professional Persons), and any available cash thereafter held by

50

any Debtor to fund a reserve (the "**Pre-Carve Out Trigger Notice Reserve**") in an amount equal to the then unpaid amounts of the Pre-Carve Out Trigger Notice Amounts accrued on and prior to the Termination Declaration Date.  Upon the occurrence of a Termination Declaration Date, Professional Persons shall have two (2) business days thereafter (unless otherwise agreed by the parties) to deliver fee statements to the Debtors' Professionals and the DIP Lender that cover such Professional Persons' reasonable good faith estimate of the Allowed Professional Fees incurred by such Professional Persons through and including the Termination Declaration Date.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors as of such date to utilize all cash (including Cash Collateral) on hand as of such date (net of any amounts held on retainer by any Professional Persons) to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Trigger Notice Reserve**" and, together with the Pre-Carve Out Trigger Notice Reserve, the "**Carve Out Reserves**").  The Carve Out Reserves shall be deposited in the Professional Fees Account, to be held in trust, and used solely to satisfy Allowed Professional Fees benefitting from the Carve Out in accordance with the terms hereof until such Allowed Professional Fees are paid in full.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the outstanding obligations set forth in clauses (i) through (iv) of paragraph 23(a) (but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap), until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Lender for application to the DIP Obligations in accordance with the DIP Term Sheet, unless and until the DIP Obligations are Paid in Full.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the outstanding obligations set forth in clause (v) of paragraph 23(a), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Lender for application to the

51

DIP Obligations in accordance with the DIP Term Sheet, unless and until the DIP Obligations are Paid in Full.  Notwithstanding anything to the contrary in this Final Order, (x) disbursements by the Debtors from the Carve Out Reserves shall not constitute loans or indebtedness under the DIP Term Sheet or the Prepetition Loan Documents or otherwise increase or reduce the DIP Obligations or the Prepetition Secured Obligations, (y) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (z) nothing contained herein shall constitute a cap or limitation on the ability of the Professional Persons to assert a claim on account of Allowed Professional Fees that are due and payable by the Debtors.

(c)      <u>Payment of Allowed Professional Fees Prior to Termination Declaration Date</u>.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out on a dollar-for-dollar basis.

(d)      <u>Payment of Carve Out on or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out and the amounts required to fund the Carve Out Reserves on a dollar-for-dollar basis; <u>provided</u>, <u>however</u>, prior to repayment from the Carve Out Reserves, any retainers held by Professional Persons shall be applied to repay the obligations set forth in clauses (iii) through (v) of paragraph 23(a) prior to repayment of such obligations from the Carve Out Reserves, and, concurrent with such repayment

of such obligations using such retainers, the Carve Out shall permanently be reduced on a dollar for dollar basis.[9]

(e)      <u>No Direct Obligation to Pay Allowed Professional Fees</u>.  None of the DIP Lender or the Prepetition Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Final Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

24.      *Effect of Debtors' Stipulations on Third Parties.*

(a)      The Debtors' Stipulations contained in paragraph G of this Final Order shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases) in all circumstances and for all purposes immediately upon entry of this Final Order.  The Debtors' Stipulations shall be binding upon the Official Committee, all other creditors, and all parties-in-interest and each of their respective successors and assigns, in all circumstances and for all purposes, unless (i) the Official Committee or such party-in-interest (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so) obtains requisite standing pursuant to an order of the

---

[9]    For the avoidance of doubt, to the extent any cash collateral comprising Prepetition Term Loan Collateral (including any such cash collateral on which the Prepetition Term Loan Agent holds a Term Loan Adequate Protection Lien) is used to fund any Carve Out Reserve, the $1 million priority afforded to the DIP Obligations and DIP Liens pursuant to paragraph 10(c)(ii) hereof shall be reduced dollar for dollar.

RLF1 33359654v.1RLF1 33372441v.1

Court entered prior to the Challenge Deadline (as defined below) and has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein) (each, a "**Challenge Proceeding**") by no later than the Challenge Deadline, (1) objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens, or the Prepetition Collateral, or otherwise objecting to or challenging any of the admissions, stipulations, findings, or releases included in the Debtors' Stipulations, (2) asserting or prosecuting any so-called "lender liability" claims, Avoidance Actions, or any contest, attack, objection, challenge, defense, claim, counterclaim, or Cause of Action seeking reduction, setoff, offset, recoupment, avoidance, recharacterization, subordination (whether equitable, contractual, or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, or recovery with respect to the Prepetition Liens, the Prepetition Secured Obligations, or the Prepetition Loan Documents, and (3) asserting or prosecuting any other claim or Cause of Action of any nature or description whatsoever, whether arising under the Bankruptcy Code, applicable law, or otherwise, against any of the Prepetition Secured Parties or their Representatives (subclauses (A)-(C), collectively, the "**Challenges**" and, each, a "**Challenge**") and (ii) there is entered a final non-appealable order by a court of competent jurisdiction in favor of the plaintiff sustaining any such timely Challenge in any duly-filed Challenge Proceeding; provided, however, that as to the Debtors, any and all such Challenges are hereby irrevocably waived and relinquished as of the Petition Date; provided, further, however, that any pleadings filed in connection with any Challenge Proceeding, including any motion filed with the Court seeking requisite standing and authority to pursue a Challenge, shall include a draft complaint attached thereto and shall otherwise set forth with specificity the basis for each such

Challenge, and any Challenge not so specified in a Challenge Proceeding timely and properly filed prior to the Challenge Deadline shall be deemed forever, waived, released, and barred.

(b)    If no such Challenge Proceeding is timely and properly filed by the Challenge Deadline, or if the Court does not rule in favor of the plaintiff in any such Challenge Proceeding, then, without further notice or order of the Court, (i) each of the admissions, stipulations, findings, and releases contained in the Debtors' Stipulations shall be binding on all parties-in-interest, including, without limitation, the Official Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), (ii) the Prepetition Secured Obligations shall constitute allowed claims against each of the Debtors in the Chapter 11 Cases and any Successor Cases, and the Prepetition Liens shall be deemed to be legal, valid, non-avoidable, binding, continuing, perfected, and enforceable, as of the Petition Date, against each of the Debtors in the Chapter 11 Cases and any Successor Cases, (iii) the Prepetition Secured Obligations, the Prepetition Liens, and the Prepetition Loan Documents shall not be subject to any other or further Challenge, contest, attack, objection, challenge, defense, claim, counterclaim, reduction, setoff, offset, recoupment, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, or recovery, whether under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise, by the Official Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), and (iv) all Challenges against any of the

55

Prepetition Secured Parties or any of their Representatives (in their capacities as such) shall be deemed forever waived, released, and barred.

(c)    If any such Challenge Proceeding is timely filed by the Challenge Deadline, the Debtors' Stipulations shall nonetheless remain binding and preclusive on the Official Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), except to the extent that any of the admissions, stipulations, findings, or releases contained in the Stipulations were expressly challenged in such Challenge Proceeding (and solely as to the plaintiff party that timely filed such Challenge Proceeding and <u>not</u>, for the avoidance of doubt, any other party-interest).

(d)    The "**<u>Challenge Deadline</u>**" means the date that is the earlier of (i) confirmation of any chapter 11 plan of reorganization in these bankruptcy cases, (ii)(1) as to the Official Committee, ninety (90) calendar days after the appointment of the Official Committee and (2) as to any party in interest with requisite standing other than the Official Committee, one-hundred and five (105) calendar days after the entry of the Interim Order, (iii) as to each of the Prepetition Loan Documents, such later date as has been agreed to, in writing, by the requisite Prepetition Secured Parties, as applicable, under the applicable Prepetition Loan Documents solely with respect to the Challenges pertaining to such Prepetition Loan Document, and (iv) any such later date as has been ordered by the Court, for cause shown, upon a motion filed and served within the time period set forth in clause (ii) of this paragraph 24(d).  Notwithstanding the foregoing, (A) if the Chapter 11 Cases are converted to chapter 7 or a chapter 7 or chapter 11 trustee is appointed or elected prior to the Challenge Deadline, any such trustee shall have until the longer

RLF1 33359654v.1RLF1 33372441v.1

of (x) the Challenge Deadline and (y) fourteen (14) calendar days after their appointment, to commence a Challenge and (B) the filing of a motion seeking standing to file a Challenge before the Challenge Deadline, which attaches a proposed Challenge, shall extend the Challenge Deadline solely with respect to that party until two business days after the Court approves the standing motion, or such other time period ordered by the Court in approving the standing motion.  For the avoidance of doubt, any trustee appointed or elected in the Chapter 11 Cases or any Successor Case(s), until the expiration of the period provided herein for asserting a Challenge, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph 24 (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), shall be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations, and stipulations of the Debtors in this Final Order.

(e)      For the avoidance of doubt, the Debtors' stipulations, waivers, agreements, and releases contained in paragraph F of this Final Order shall not be subject to Challenge, and shall be binding upon the Debtors and their estates, and any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or selected in any of the Chapter 11 Cases or any Successor Cases), the Official Committee, all other creditors and all parties-in-interest, and each of their respective successors and assigns, in all circumstances and for all purposes, immediately upon entry of this Final Order.

(f)      Nothing in this Final Order vests or confers on any person or entity, including the Official Committee, standing or authority to pursue any Challenge belonging to the Debtors or their estates, and all rights to object to any request for such standing are expressly reserved.

25.    *Limitations on Use of DIP Collateral, Cash Collateral, Carve Out, or Other Funds*.
Notwithstanding anything contained in this Final Order or any other order of the Court to the
contrary, no DIP Collateral, Prepetition Collateral, DIP Loans, Cash Collateral, proceeds of any of
the foregoing, any portion of the Carve Out, or any other funds, may be used (nor shall any
professional fees, costs, or expenses be paid or applied in connection therewith) by any of the
Debtors, statutory (including the Official Committee) or any non-statutory committees appointed
or formed in the Chapter 11 Cases, or any other party-in-interest (including without limitation any
chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in
the Chapter 11 Cases or any Successor Cases), directly or indirectly:

(a)    to investigate (including by way of examinations or discovery proceedings,
whether formal or informal), prepare, assert, initiate, assert, commence, support, or
prosecute (or finance the initiation or prosecution of) any claim, counterclaim, cross-claim,
Cause of Action, suit, arbitration, proceeding, application, motion, contested matter,
objection, defense, adversary proceeding, litigation, or other proceeding of any nature or
description (whether for monetary, injunctive, affirmative relief or otherwise) against the
DIP Lender or the Prepetition Secured Parties or their respective Representatives,
including, without limitation, (i) any objection or challenge to the amount, validity,
enforceability, extent, perfection, or priority in the DIP Term Sheet, the DIP Obligations
(including, for the avoidance of doubt, the Upfront Fee and the Exit Fee), the DIP Liens,
the DIP Collateral, the Adequate Protection Liens, the Adequate Protection Claims and the
other Adequate Protection Obligations, the Prepetition Loan Documents, the Prepetition
Secured Obligations, the Prepetition Liens, or the Prepetition Collateral, (ii) any Avoidance
Actions, (iii) any so-called "lender liability" claims, (iv) any claim or Cause of Action
seeking the invalidation, reduction, setoff, offset, recoupment, avoidance,
recharacterization, subordination (whether equitable, contractual or otherwise),
reclassification, disgorgement, disallowance, impairment, marshalling, surcharging or
recovery with respect to the DIP Liens, the DIP Obligations (including, for the avoidance
of doubt, the Upfront Fee and the Exit Fee), the DIP Term Sheet, the DIP Collateral, the
Adequate Protection Liens, the Adequate Protection Claims and the other Adequate
Protection Obligations, the Prepetition Liens, the Prepetition Secured Obligations, the
Prepetition Loan Documents, or the Prepetition Collateral, or (v) any other claim or Cause
of Action of any nature and description whatsoever, whether arising under the Bankruptcy
Code, applicable non-bankruptcy law, any other domestic or foreign statute, law, rule or
regulation, or otherwise, against the DIP Lender or the Prepetition Secured Parties or their
respective Representatives;

(b)    objecting to, appealing, or otherwise challenging this Final Order, the DIP
Facility, the DIP Obligations (including, for the avoidance of doubt, the Upfront Fee and

RLF1 33359654v.1RLF1 33372441v.1

the Exit Fee), the DIP Liens, the DIP Term Sheet, or the transactions contemplated hereunder or thereunder; *provided* that nothing herein shall impair the rights of such parties to object to entry of this Final Order;

(c)     objecting to or seeking to impair, modify, or interfere with any of the rights, remedies, priorities, privileges, protections, or benefits granted to the DIP Lender or the Prepetition Secured Parties under this Final Order or the DIP Term Sheet (other than to contest whether a DIP Termination Event has occurred and is continuing);

(d)     objecting to or seeking to prevent, hinder, interfere with, or otherwise delay the DIP Lender's or the Prepetition Secured Parties' assertion, enforcement, exercise of remedies, or realization upon any DIP Collateral or Prepetition Collateral (as applicable) in accordance with this Final Order, the DIP Term Sheet, or the Prepetition Loan Documents (as applicable) (other than to contest whether a DIP Termination Event has occurred and is continuing);

(e)     seeking or requesting authorization to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to sections 364(c) or (d) of the Bankruptcy Code, or otherwise, unless such financing is sufficient to cause the Payment in Full of all DIP Obligations and Prepetition Secured Obligations contemporaneously with the closing of such financing (or as otherwise agreed in writing by the DIP Lender and the requisite Prepetition Secured Parties, as applicable);

(f)     seeking or requesting authorization to obtain superpriority claims or liens or security interests (other than liens or security interests expressly permitted under the DIP Term Sheet) in any portion of the DIP Collateral that are senior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims, the Prepetition Liens, or the Prepetition Secured Obligations unless all DIP Obligations and Prepetition Secured Obligations have been Paid in Full (or as otherwise agreed in writing by the DIP Lender or the requisite Prepetition Secured Parties, as applicable);

(g)     seeking or requesting to use Cash Collateral or sell or otherwise dispose of DIP Collateral (without the prior written consent of the DIP Lender) other than as provided herein and in the DIP Term Sheet; or

(h)     seeking to pay any amount on account of any claims arising prior to the commencement of these Chapter 11 Cases, unless such payments are agreed to in writing by the DIP Lender (or are otherwise included in the Approved Budget);

provided, however, that no more than $25,000 of the DIP Collateral, Prepetition Collateral, DIP

Loans, Cash Collateral, proceeds of any of the foregoing, any portion of the Carve Out or any other

funds may be used for allowed fees and expenses incurred by the Official Committee prior to the

Challenge Deadline to investigate (but not to litigate, contest, initiate, assert, join, commence,

support or prosecute any claim, Cause of Action or Challenge, including by way of discovery, with

respect to) the validity, enforceability, extent, perfection, or priority of the Prepetition Liens, the Prepetition Secured Obligations, and the Prepetition Loan Documents.

26.    *Limitation on Charging Expenses*.  Except to the extent of the Carve Out or as provided in this Final Order, no costs or expenses of administration of the Chapter 11 Cases or any Successor Cases at any time, including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the DIP Lender or the Prepetition Secured Parties, respectively, upon the DIP Collateral or the Prepetition Collateral, respectively, shall be charged against or recovered from the DIP Collateral as to the DIP Lender, or the Prepetition Collateral as to the Prepetition Secured Parties, whether pursuant to section 506(c) of the Bankruptcy Code, any other legal or equitable doctrine (including unjust enrichment) or otherwise, without the prior written consent of the DIP Lender with respect to the DIP Collateral, or the requisite Prepetition Secured Parties under the Prepetition Loan Documents with respect to the Prepetition Term Loan Collateral, each in their sole discretion, and no such consent shall be implied, directly or indirectly, from anything contained in this Final Order (including, without limitation, consent to the Carve Out or the approval of any budget hereunder) or from any other action, inaction, or acquiescence by the DIP Lender, or any of the Prepetition Secured Parties.

27.    *No Marshaling*.  In no event shall the DIP Lender or Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Prepetition Collateral, or the Prepetition Obligations, and all proceeds of the DIP Collateral shall be received and applied in accordance with this Final Order (including **Exhibit 1** attached hereto) and the DIP Term Sheet.

28.     *Right to Credit Bid*.  The DIP Lender or its designee (which may be an acquisition vehicle formed by the DIP Lender), shall have the unqualified right to credit bid up to the full amount of the applicable priority DIP Obligations in any sale of all or any portion of DIP Collateral (including, for the avoidance of doubt, any asset for which the DIP Collateral is limited to the proceeds thereof as a result of applicable law prohibiting encumbrances from being attached to such asset) subject to and in accordance with the DIP Term Sheet, without the need for further order of the Court authorizing same, whether in a sale under or pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan subject to confirmation under section 1129(b)(2)(A) of the Bankruptcy Code, a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code, or otherwise.  The DIP Lender shall have the absolute right to assign, transfer, sell, or otherwise dispose of its rights to credit bid (subject to this Final Order) to any acquisition vehicle formed in connection with such bid or other designee.

29.     *Binding Effect; Successors and Assigns*.  Immediately upon entry of this Final Order, subject to paragraph 24 of this Final Order, the provisions of the DIP Term Sheet and this Final Order, including all findings and conclusions of law herein, shall be binding upon all parties in interest in the Chapter 11 Cases and any Successor Cases, including without limitation, the DIP Lender, the Prepetition Secured Parties, the Official Committee or any other committee appointed or formed in the Chapter 11 Cases and any Successor Cases, and their respective successors and assigns (including any chapter 11 trustee or chapter 7 trustee or examiner appointed or elected in the Chapter 11 Cases or any Successor Cases, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), and shall inure to the benefit of each of the Debtors, the DIP Lender, and the Prepetition Secured Parties and their respective successors and assigns; <u>provided</u>, for the avoidance of doubt,

that the DIP Lender and the Prepetition Secured Parties shall have no obligation to make any loan, permit the use of DIP Collateral or Prepetition Collateral (including Cash Collateral), or extend any financing to any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of any Debtor in the Chapter 11 Cases or any Successor Cases.

30.  *No Modification of Final Order*.  Until and unless the DIP Obligations and the Prepetition Secured Obligations have been Paid in Full, the Debtors irrevocably waive the right to seek, and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the DIP Lender, (i) any modification, stay, vacatur, or amendment to this Final Order, (ii) the allowance of any claim against any Debtor in the Chapter 11 Cases or any Successor Cases equal or superior to the DIP Superpriority Claims (other than the Carve Out), (iii) the grant of any lien or security interest on any DIP Collateral with priority equal to or superior to the DIP Liens, except as expressly permitted hereunder or under the DIP Term Sheet, or (iv) the entry of any order authorizing the use of DIP Collateral (including Cash Collateral) that is inconsistent with this Final Order or (b) without the prior written consent of the Prepetition Agents, acting at the direction of the requisite Prepetition Term Loan Lenders or the Prepetition Noteholders, as appliable, (i) any modification, stay, vacatur, or amendment to this Final Order that adversely affects the rights, remedies, benefits, or protections of the applicable Prepetition Secured Parties, (ii) the allowance of any claim against any Debtor in the Chapter 11 Cases or any Successor Cases equal or superior to the Adequate Protection Claims (other than the Carve Out and the DIP Superpriority Claims), or (iii) the grant of any lien or security interest on any DIP Collateral or Prepetition Collateral with priority equal to or superior to the Adequate Protection Liens, except as expressly permitted hereunder or under the DIP Term Sheet.

RLF1 33359654v.1RLF1 33372441v.1

31. *Proceeds of Subsequent Financings.*  Without limiting the provisions of the immediately preceding paragraph, if at any time prior to the Payment in Full of all of the DIP Obligations, whether the Debtors, the Debtors' estates, any chapter 11 trustee, chapter 7 trustee or examiner with enlarged powers, or any responsible officer subsequently appointed in any of the Chapter 11 Cases or any Successor Cases, shall obtain credit or incur debt pursuant to sections 364(b), (c), or (d) of the Bankruptcy Code in violation of this Final Order or the DIP Term Sheet, then, unless otherwise agreed in writing by the DIP Lender, all of the cash proceeds derived from such credit or debt intended to refinance the DIP Obligations shall immediately be paid to the DIP Lender on account of its DIP Obligations pursuant to the DIP Term Sheet.

32. *Preservation of Rights Granted Under Final Order.*

(a)    Good Faith Under Section 364(e) of the Bankruptcy Code.  The DIP Lender and the Prepetition Secured Parties have acted in good faith in connection with this Final Order, the DIP Facility, and the DIP Term Sheet, and their reliance on this Final Order is in good faith. Based on the findings set forth in this Final Order and upon the record made at the Interim Hearing and the Final Hearing and during these Chapter 11 Cases, the DIP Lender and the Prepetition Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code. If any or all of the provisions of this Final Order or the DIP Term Sheet are hereafter reversed, modified, vacated, or stayed by a subsequent judgment or order of this Court or any other court, any such reversal, stay, modification, or vacatur shall not affect (i) the validity or enforceability of advances previously made hereunder or under the DIP Term Sheet by the DIP Lender to the Debtors, (ii) the validity or enforceability of any obligation, indebtedness, or liability incurred under this Final Order or the DIP Term Sheet by the Debtors to the DIP Lender, (iii) the validity, enforceability, or perfection of any of the claims, liens, security interests, rights, privileges, or

benefits granted hereunder or under the DIP Term Sheet, or (iv) the payment of any fees, costs, expenses or other amounts, in the case of each of the foregoing, prior to the actual receipt of written notice by the DIP Lender, to be sent as of the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur, any such claim, lien, or security interest, right, privilege, remedy, or benefit shall be governed in all respects by the original provisions of this Final Order and the DIP Term Sheet.

(b)    Survival.  Notwithstanding anything contained herein or in the DIP Term Sheet to the contrary, the terms and provisions of this Final Order and the DIP Term Sheet (including, without limitation, all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits, and protections granted to the DIP Lender and the Prepetition Secured Parties under this Final Order and the DIP Term Sheet), and any actions taken pursuant hereto or thereto, shall survive, shall continue in full force and effect, shall remain binding on all parties-in-interest, and shall be governed by the original provisions of this Final Order and maintain their priorities as set forth in this Final Order, and shall not be modified, impaired, or discharged by entry of any order that may be entered (i) confirming any chapter 11 plan in any of the Chapter 11 Cases, (ii) converting any or all of the Chapter 11 Cases to a case (or cases) under chapter 7 of the Bankruptcy Code, (iii) dismissing any or all of the Chapter 11 Cases, (iv) pursuant to which the Court abstains from hearing any of the Chapter 11 Cases, or (v) approving the sale or disposition of any DIP Collateral (except as expressly permitted in the DIP Term Sheet), in each case, until all of the DIP Obligations, the Adequate Protection Obligations, and the Prepetition Secured Obligations have been Paid in Full (unless the DIP Lender and/or the requisite Prepetition Secured Parties have otherwise agreed in writing in respect of the applicable obligations owed to each of them).

RLF1 33359654v.1RLF1 33372441v.1

(c)     Dismissal/Conversion.  If any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), that (i) all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits, and protections granted to the DIP Lender and the Prepetition Secured Parties hereunder and under the DIP Term Sheet shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations, Adequate Protection Obligations, and Prepetition Secured Obligations have been Paid in Full (and that all such claims, liens and security interests, rights, priorities, privileges, remedies, benefits, and protections, notwithstanding such dismissal or conversion, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal or conversion, for the purposes of enforcing this Final Order, the DIP Term Sheet, and all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits, and protections granted to the DIP Lender and the Prepetition Secured Parties hereunder or thereunder.

33.     *Loss or Damage to Collateral*.  So long as the DIP Lender complies with its obligations under the DIP Term Sheet, (a) the DIP Lender shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person and (b) all risk of loss, damage, or destruction of the DIP Collateral shall be borne solely by the Debtors.

RLF1 33359654v.1RLF1 33372441v.1

34.     *Proofs of Claim*.  The DIP Lender and the Prepetition Secured Parties shall not be required to file proofs of claim or request for payment of administrative expenses in any of the Chapter 11 Cases or any of the Successor Cases in order to assert claims for payment in respect of the DIP Obligations or the Prepetition Secured Obligations.   The Debtors' Stipulations, acknowledgments, and provisions of this Final Order are deemed sufficient to and do constitute timely filed proofs of claim or request for payment of administrative expenses in respect of such claims arising under the DIP Obligations, the Adequate Protection Obligations, and the Prepetition Secured Obligations against each of the applicable Debtors.  Any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or any Successor Chapter 11 Cases shall not apply to the DIP Lender, the Prepetition Secured Parties, the DIP Obligations, or the Prepetition Secured Obligations; provided, however, that, notwithstanding any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the DIP Lender or any of the Prepetition Agents (on behalf of themselves and the applicable Prepetition Secured Parties (as applicable)), in their discretion, may (but are not required to) file (and amend and/or supplement) a proof of claim and/or aggregate proofs of claim in each of the Chapter 11 Cases or any Successor Cases, and any such proof of claim may (but is not required to be) filed as one consolidated master proof of claim in the Debtors' lead Chapter 11 Case against all of the Debtors, which shall be deemed to have been filed against each and every Debtor.  Such consolidated or master proofs of claim shall not be required to attach any instruments, agreements, or other documents evidencing the obligations owing by each of the Debtors to the applicable party, which instruments, agreements, or other documents will be provided upon reasonable written request to the DIP Lender or the applicable Prepetition Agents, as the case may be.  Any proof of claim filed by or on behalf of the DIP Lender or the Prepetition Secured Parties shall be

RLF1 33359654v.1RLF1 33372441v.1

deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons.  The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any parties-in-interest or their respective successors-in-interest.

35.    *Limitation of Liability*.  Nothing in the Interim Order, this Final Order, the DIP Term Sheet, or any documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Secured Parties of any liability for any claim arising from, in connection with, or related to the prepetition or postpetition activities of the Debtors and their respective affiliates in the operation of their businesses, their restructuring efforts, or in connection with the administration of these Chapter 11 Cases.  In determining to make any loan or extension of credit or permit the use of Cash Collateral, under the DIP Term Sheet or the Prepetition Loan Documents, neither the DIP Lender nor the Prepetition Secured Parties shall (a) be deemed to be in control of the operations of the Debtors, (b) owe any fiduciary duty to the Debtors or their creditors, shareholders or estates, or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42, U.S. §§ 9601 et seq., as amended, or any similar federal or state statute).

36.    *Payments Free and Clear*.  Subject to the Carve Out, any and all payments or proceeds remitted to the DIP Lender or, subject to paragraph 24, the Prepetition Secured Parties pursuant to the DIP Term Sheet, the Interim Order, this Final Order, or any subsequent order of this Court, shall be irrevocable (subject, solely in the case of certain professional fees, the fee review procedures set forth in paragraph 11 of this Final Order), received free and clear of any

RLF1 33359654v.1RLF1 33372441v.1

claim, charge, assessment, or other liability, including without limitation, any claim or charge asserted or assessed by, through or on behalf of the Debtors (subject to paragraph 26 hereof) or otherwise.

37.    *Joint and Several Liability*.  Nothing in this Final Order shall be construed to constitute or authorize a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for all obligations (including all DIP Obligations and all Adequate Protection Obligations) under this Final Order and the DIP Term Sheet.

38.    *Third Party Beneficiary*.  Except as expressly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect, or incidental beneficiary.

39.    *Final Order Controls*.  In the event of any conflict or inconsistency between or among the terms or provisions of this Final Order and the DIP Term Sheet, unless such term or provision in this Final Order is phrased in terms of "defined in" or "as set forth in" the DIP Term Sheet, the terms and provisions of this Final Order shall govern and control.

40.    *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable effective as of the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014, any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

41.    *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

RLF1 33359654v.1RLF1 33372441v.1

42.    *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.  When used in this Final Order, the word "including" shall not imply limitation.

43.    *Necessary Action*.  The Debtors are authorized to take any and all such actions as are necessary, required, or appropriate to implement and effectuate the terms of this Final Order, the DIP Term Sheet, and the transactions contemplated hereunder and thereunder.

44.    *Retention of Jurisdiction*.  The Court retains jurisdiction to hear, determine and, if applicable, enforce the terms of any and all matters arising from or related to the DIP Facility, the DIP Term Sheet, and this Final Order, and the Court's jurisdiction shall survive confirmation and consummation of any chapter 11 plan for any of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

45.    *Resolution Among the Debtors, the Official Committee and the Prepetition Secured Parties Regarding Application of Sale Proceeds and Post-Closing Use of Cash Collateral*.  Upon Payment in Full of all DIP Obligations, all rights of the DIP Lender under this Final Order shall cease, and, notwithstanding anything set forth elsewhere in this Final Order, in the Motion or in the Interim Order and any attachments to any of the foregoing to the contrary and without prejudice to the right of the Official Committee or any party to bring a Challenge by the Challenge Deadline, as modified by this paragraph 45, the Debtors, the Official Committee and the Prepetition Secured Parties have agreed as follows:

(a)    Application of Certain Proceeds of Sales.  Upon Payment in Full of the DIP Obligations:

(i)    the Debtors shall deposit the sum of $12,060,160 of proceeds of the Job Board Sale in an interest-bearing account for the benefit of the Prepetition Term Loan Secured Parties (the "**Prepetition Term Loan Reserve**"), and the Debtors shall not use all or any portion of the Prepetition Term Loan Reserve except as may

be agreed by the Prepetition Term Loan Agent or ordered by the Court following a successful Challenge, if any;

(ii)    thereafter, all of the Debtors' Cash Collateral other than the Prepetition Term Loan Reserve shall constitute Notes Cash Collateral; and

(iii)    the Debtors shall deposit the sum of $21,538,799 of proceeds of the Sales in an interest-bearing account for the benefit of the Prepetition Notes Secured Parties (the "**Prepetition Notes Reserve**"), and the Debtors shall not use all or any portion of the Prepetition Notes Reserve except as may be agreed by the Prepetition Notes Secured Parties or ordered by the Court following a successful Challenge, if any.

(b)    <u>Amended Adequate Protection Provisions</u>.  Upon entry of this Final Order:

(i)    all Term Loan Adequate Protection Claims and Term Loan Adequate Protection Liens shall be waived; <u>provided</u>, <u>however</u>, that, for the avoidance of doubt, all rights of the Prepetition Term Loan Secured Parties set forth in paragraph 10(c) of the Interim Order and paragraph 10(c) of this Final Order are preserved;

(ii)    all Notes Adequate Protection Claims and Notes Adequate Protection Liens shall be preserved; <u>provided</u>, <u>however</u>, that (1) no such Notes Adequate Protection Claims and Notes Adequate Protection Liens shall attach to any claims against the Prepetition Notes Secured Parties or their affiliates, including claims against the Debtors' directors and officers; and (2) any diminution in value with respect to such Notes Adequate Protection Claims and Notes Adequate Protection Liens shall be determined under applicable law; and

(iii)    all deficiency claims of all Prepetition Secured Parties, and the rights of all parties in interest (including the Official Committee) to object thereto, shall be preserved.

(c)    <u>Amended Challenge Provisions</u>.  Upon Payment in Full of the DIP Obligations:

(i)    The Official Committee's investigation budget described in paragraph 25 of the Interim Order and paragraph 25 of this Final Order is increased in amount to $75,000.

(ii)    The Challenge Deadline described in paragraph 24(d) of the Interim Order and paragraph 24(d) of this Final Order shall be revised to be the earliest of:

(1)  confirmation of any chapter 11 plan in these bankruptcy cases;

(2)  <u>For the Official Committee,</u> September 10, 2025 (which is the date that is 75 days after entry of the Interim Order) <u>and, as to any party in</u>

interest other than the Official Committee, October 10, 2025 (which is the date that is 105 days after that is entry of the Interim Order), in each case, solely with respect to (A) any Challenge of any kind against the Prepetition Term Loan Secured Parties or the Prepetition Term Loan Liens and (B) any Challenge to the *prima facie* validity or perfection of the Prepetition Notes Liens;

      (3)  October 10, 2025 ~~(which is the date that is 105 days after entry of the Interim Order)~~ with respect to any Challenge against the Prepetition Notes Secured Parties or the Prepetition Notes Liens other than with respect to the *prima facie* validity or perfection of the Prepetition Notes Liens;

      (4)  as to each of the Prepetition Loan Documents, such later date as may be agreed to in writing by the requisite Prepetition Secured Parties, as applicable, under such Prepetition Loan Document solely with respect to any Challenges pertaining to such Prepetition Loan Document; and

      (5)  any later date as may be ordered by the Court, for cause shown, upon a motion filed and served prior to the otherwise-applicable Challenge Deadline set forth in subparagraphs (1) through (4) above.

No party in interest (including the Official Committee) shall be denied standing with respect to any Challenge solely on the basis that the applicable Debtor is a limited liability company.  The Debtors and the Prepetition Notes Secured Parties agree to produce documents responsive to the Official Committee's discovery requests on a rolling basis.  In the event final productions are not substantially completed by August 15, 2025, the Official Committee's rights are preserved to request an extension of the applicable Challenge Deadline consistent with subparagraph (c)(ii)(5) of this paragraph 45.

      (d)  <u>Plan Milestones</u>.  As a condition to the use of Notes Cash Collateral, and as further adequate protection to the Prepetition Notes Secured Parties, the Debtors and the Prepetition Notes Secured Parties agree that the Prepetition Notes Secured Parties are entitled to performance of the milestones set forth below (or by such later date as may be agreed by the Prepetition Notes Secured Parties, which may be documented by counsel to the Prepetition Notes Secured Parties via email) (collectively, the "**Plan Milestones**"):

RLF1 33359654v.1RLF1 33372441v.1

(i)      By August 8, 2025, the Debtors shall have filed an Acceptable Plan[10] and solicitation materials together with a motion requesting the Court's provisional approval of such solicitation materials;

(ii)      By August 21, 2025, the Court shall enter an order provisionally approving the Debtors' solicitation of the Acceptable Plan;

(iii)      By September ~~26~~30, 2025, the Court shall enter an order confirming the Acceptable Plan (the "**Confirmation Order**"); and

(iv)      Within three business days after entry of the Confirmation Order, the effective date shall occur with respect to the Acceptable Plan.

(e)      <u>Post-Sale Budgets</u>.  The Debtors prepared and delivered to the Prepetition Notes Secured Parties, and the Prepetition Notes Secured Parties approved:

(i)      the itemized cash flow forecast set forth on **Exhibit 2** hereto (as such forecast may be amended with the approval of the Prepetition Notes Secured Parties, the "**Post-Sale Approved Budget**"), reflecting, on a line-item, cumulative and aggregate basis the Debtors' projected cash receipts expected to be collected, and necessary disbursements and expenditures expected to be incurred or made, by the Debtors, in each case, for each calendar week during the period from the calendar week beginning Saturday, July 19, 2025 through and including the end of the eleventh (11th) calendar week thereafter (the "**Post-Sale Budget Period**"); and

(ii)      a professional fee budget with respect to the accrued and anticipated professional fees and expenses to be incurred by each applicable professional advisor during such period (the "**Post-Sale Professional Fee Budget**" and, together with the Post-Sale Approved Budget, the "**Post-Sale Budgets**").

The Post-Sale Budgets have been approved by the Prepetition Notes Secured Parties and are an integral part of this Final Order, and the Prepetition Notes Secured Parties have relied and are relying, in part, upon the Debtors' agreement to comply (subject to Permitted Variances, as

---

[10]    "<u>Acceptable Plan</u>" means a chapter 11 plan that:  (a) is acceptable in all respects to the Prepetition Notes Secured Parties; and (b) except as may otherwise be agreed by the Prepetition Term Loan Agent or ordered by the Court (i) provides the Prepetition Term Loan Secured Parties with the Prepetition Term Loan Reserve in full satisfaction of their secured claims, (ii) preserves any unsecured deficiency claims of the Prepetition Term Loan Secured Parties, and (c) provides releases of the Prepetition Term Loan Secured Parties and their representatives and related parties.  The Prepetition Term Loan Agent, on behalf of the Prepetition Term Loan Secured Parties has agreed, subject to the receipt of court-approved solicitation materials, to vote in favor of any Acceptable Plan.

RLF1 33359654v.1RLF1 33372441v.1

applicable) with the Post-Sale Budgets in consenting to allow the Debtors' use of Cash Collateral in accordance with the terms of this Final Order.

(f)    <u>Professional Fees and Expenses.</u>    The Prepetition Notes Secured Parties have agreed to the following with respect to the professional fees and expenses set forth in the Post-Sale Budgets:

(i)    All Debtor Professionals and Committee Professionals are authorized to carry forward or roll back unused amounts for professional fees and expenses from prior or subsequent weeks.

(ii)    Debtor Professionals and, separately, Committee Professionals may by agreement reallocate budgeted but unused amounts for professional fees and expenses among each other.

(iii)    Allowed professional fees and expenses of Committee Professionals shall be capped at the amounts set forth in the Post-Sale Budgets.

(iv)    Any allowed professional fees and expenses of Debtor Professionals exceeding in the aggregate the amounts set forth in the Post-Sale Budgets ("**Debtor Professional Allowed Excess Fees**") shall not, absent consent of the Prepetition Notes Secured Parties, be payable from the Prepetition Notes Reserve (nor shall they, for the avoidance of doubt, be payable from the Prepetition Term Loan Reserve absent the consent of the Prepetition Term Loan Agent). The Prepetition Notes Secured Parties have consented, however, to applicable Debtor Professionals receiving payment on account of any Debtor Professional Allowed Excess Amounts before the Prepetition Notes Secured Parties receive payment on account of any Notes Adequate Protection Claims or Notes Adequate Protection Liens.

(v)    The Debtors' obligation to provide reporting to the Prepetition Notes Secured Parties with respect to the Post-Sale Budgets shall be as described in the DIP Term Sheet in connection with the Debtors' obligation to provide reporting to the DIP Lender with respect to the Approved Budget. The Debtors shall provide the Official Committee with copies of all such reporting.

(vi)    Permitted Variances with respect to disbursements during the Post-Sale Budget Period shall be as set forth in the DIP Term Sheet; <u>provided</u>, <u>however</u>, that the following shall be excluded from variance testing: (1) employee-benefit costs under the Debtors' self-insured healthcare plan; and (2) pass-through costs, including amounts paid under any transition services agreement or otherwise where the Debtors serve as an intermediary.

(g)    <u>Governance of Any Wind-down Trust</u>.  In the event that a wind-down trust (or similar entity) is formed pursuant to a chapter 11 plan, the Debtors, the Official Committee and the Prepetition Notes Secured Parties agree to negotiate in good faith regarding the governance of such trust (or similar entity), including the process by which the trustee (or similar person) shall be selected.

(h)    <u>Amended Carve Out</u>.  The Carve Out shall be revised as follows:

(i)    the Pre-Carve Out Trigger Notice Amounts shall include a reasonable estimate (including a reasonable cushion) of the accrued but unpaid claims of the Debtors' current and former employees under the Debtors' existing health insurance policies that accrued after the Petition Date, including any such claims that have not yet been reported; and

(ii)    the Post-Carve Out Trigger Notice Cap shall be reduced to $100,000.

Following Payment in Full of the DIP Obligations, absent the written consent of the Prepetition Notes Secured Parties or unless otherwise ordered by the Court, the failure of the Debtors to comply with any of the Plan Milestones or the Post-Sale Approved Budget (subject to Permitted Variances) shall authorize the Prepetition Notes Secured Parties to immediately issue to the Debtors a Carve Out Trigger Notice with the consequences set forth herein applied mutatis mutandis.

46.    *Chubb Reservation of Rights*.  For the avoidance of doubt, (a) the Debtors shall not grant liens and/or security interests in any insurance policy issued by ACE American Insurance Company and/or any of its U.S.-based affiliates (collectively, together with each of their predecessors and  successors, and solely in their roles as insurers, "**Chubb**") to any other party, (b) the proceeds of any insurance policy issued by Chubb shall only be considered to be DIP Collateral to the extent such proceeds are paid to the Debtors (as opposed to a third party claimant) pursuant to the terms of any such applicable insurance policy; <u>provided</u>, <u>however</u>, that to the extent

74

a claim arises with respect to the DIP Collateral that is covered by an insurance policy issued by Chubb, the Debtors may pursue such claim for insurance proceeds in accordance with the terms and conditions of the applicable insurance policy and shall turn over to the DIP Lender any insurance proceeds paid to the Debtors pursuant to the terms and conditions of any applicable insurance policy until the DIP Obligations have been Paid in Full (each, a "**Proceed Turnover**"); provided, further, however, that Chubb shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover, and (c) nothing, including the DIP Term Sheet, the Interim Order, and/or this Final Order, alters or modifies the terms and conditions of any insurance policies or related agreements issued by Chubb.

RLF1 33359654v.1RLF1 33372441v.1

## **Annex A**

### **Milestones**

a.  No later than 35 calendar days after the Petition Date:

   o   the Court shall have entered the Final Order, subject to the availability of the Court to conduct a Final Hearing on the DIP Facility;

   o   the Court shall have entered one or more orders approving the winning bid(s) and the ultimate sale of the applicable Acquired Assets, which order or orders shall be in form and substance acceptable to the DIP Lender in its sole discretion; and

   o   the Debtors shall have consummated the sale of the Acquired Assets to one or more Successful Bidders and/or Backup Bidders.

**Exhibit 1**

**(in descending order of priority)**

| Priority | DIP Collateral Comprised of Prepetition Term Loan Collateral | DIP Collateral Comprised of Prepetition Notes Collateral | Unencumbered Property | Superpriority Claims Against Prepetition Notes Loan Parties | Superpriority Claims Against Prepetition Term Loan Parties |
|---|---|---|---|---|---|
| *First* | Carve Out and Permitted Prior Liens | Carve Out and Permitted Prior Liens | Carve Out | Carve Out | DIP Superpriority Claims up to $1 million in the aggregate (inclusive of any Carve Out) and the Carve Out |
| *Second* | DIP Liens and Obligations (inclusive of any Carve Out) up to $1 million in the aggregate | DIP Liens | DIP Liens | DIP Superpriority Claims | Term Loan Adequate Protection Claims |
| *Third* | Prepetition Term Loan Liens | Prepetition Notes Liens | Adequate Protection Liens | Notes Adequate Protection Claims | DIP Superpriority Claims in excess of $1 million Adequate Protection Claims and all other administrative expense claims |
| *Fourth* | Term Loan Adequate Protection Liens | Notes Adequate Protection Liens | | Prepetition Notes Obligations | Prepetition Term Loan Obligations |
| *Fifth* | DIP Liens and Obligations in excess of $1 million | | | | |

**<u>Exhibit 2</u>**

**Post-Sale Approved Budget**

NAI-5001955014v4