# **EXHIBIT 1**

**Engagement Agreement**

Omni 6/18/25 (PHD)

# STANDARD SERVICES AGREEMENT

This Agreement is entered into as of June 18, 2025, between (I) Omni Agent Solutions, Inc ("**Omni**"), and (II) Zen JV, LLC, together with each of its affiliates and subsidiaries listed on **Schedule 1**, annexed hereto (collectively, the "**Companies**").[1] The parties agree as follows:

## Terms and Conditions

I.  SERVICES

(a)  Upon request by the Companies or as may be necessary for Omni to comply with applicable law, governmental regulation, court order or court rule, Omni shall provide the Companies with consulting and administrative services ("**Services**") in connection with the Companies' potential filing of chapter 11 petitions under the Bankruptcy Code (the "**Code**") and during any chapter 11 case(s) which the Companies may initiate. Without limitation, the Services may include any or all of the following: Assisting in the preparation of the Companies' bankruptcy schedules and statements of financial affairs ("**Schedules and SOFA**"), noticing, communication related services, claims management and reconciliation, plan solicitation, balloting and tabulation, contract review, securities, claims analysis, providing confidential online workspaces or data rooms (the publication of which shall not violate the confidentiality provisions of this Agreement), account management, disbursements, automation, and any other service which may be agreed upon by the parties.

(b)  The Companies understand that to assist or enable Omni to provide the Services, Omni will engage in communications with various persons acting on the Companies' behalf (each, a "**Companies Party**").[2] The parties agree that Omni may rely upon the accuracy and completeness of the information provided without any obligation to further verify it, and that the Companies shall be bound by any and all requests, advice, information or direction made.

(c)  The Companies understand that Omni is not being retained to provide any legal or financial advice and that none of Omni's communications with a Companies Party or any other party constitutes legal or financial advice.

II.  RATES

(a)  The Companies agree to pay Omni for all fees, charges and costs for Services provided on their behalf in the amounts set forth in the schedule attached hereto as **Exhibit "A"** (the "**Rate Schedule**"); *provided* that prior to completing any service costing more than $10,000 in the aggregate, Omni shall receive pre-authorization from the Companies or their counsel (email being sufficient). *In addition to the foregoing, Omni has agreed to provide the Companies with (i)*

---

[1] Upon the filing of one or more chapter 11 petitions, the term "**Companies**" shall thereafter mean and include each of the filing parties, in their individual capacities as debtors and debtors in possession, together with any other entities whose chapter 11 cases are jointly administered with the filing parties' case(s). Each of the Companies shall be jointly and severally liable for all fees and costs incurred hereunder.

[2] Unless otherwise agreed upon, a Companies Party includes the Companies' managers, general partners, officers, directors, employees, agents, representatives, counsel, consultants and/or any other party with whom the Companies authorize to engage in a communication with Omni.

Omni 6/18/25 (PHD)

*a $10,000 credit on prepetition fees (contingent upon the filing of at least one of the Companies' chapter 11 cases), and (ii) a ten (10%) percent discount on Omni's standard hourly rates).* Omni reserves the right, upon providing 10 day's prior written notice to the Companies, to amend the Rate Schedule by increasing its hourly rates, unit prices, and any other charges, fees, and costs therein during the term of this Agreement.

(b)     Omni may invoice the Companies monthly for the Services it provided during the preceding calendar month consistent with the applicable Rate Schedule. All invoices are due and payable upon receipt. Notwithstanding anything herein to the contrary, in the event the Companies file one or more chapter 11 petitions, any payment made to Omni will be in accordance with applicable bankruptcy law and orders of the bankruptcy court.

(c)     In the case of a dispute of any portion of an invoice, the Companies shall give written notice to Omni within ten (10) days of receipt of the invoice as to the charges disputed and the basis thereof. The undisputed portion of the invoice will remain due and payable immediately upon receipt. At its sole discretion, Omni may first apply any payment received against the cumulative sum of the late charges then due before it applies any remaining balance to the outstanding principal balance

(d)     Omni may require an advance or direct payment from the Companies of an individual expense, or a group of related expenses, which are expected to exceed $7,500 (*e.g.*, publication notice).

(e)     The Companies shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Companies, notwithstanding how such taxes may be designated, levied, or based. This provision is intended to include sales, use, and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Omni.

(f)     The Companies shall pay to Omni all actual charges (including fees, costs and expenses as set forth in the then effective Rate Structure) related to, arising out of, or resulting from, any error or omission made by the Companies including, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses.

(g)     Upon execution of this Agreement, the Companies shall pay Omni a retainer of $50,000 (the "**Retainer**"). Omni may use the Retainer against all reasonable and documented prepetition fees and expenses. At Omni's discretion, the Retainer may then be applied to the payment of the final invoice from Omni under and pursuant to this Agreement (the "**Final Invoice**"), or to any other invoice. Except with respect to the Final Invoice, upon notice from Omni to the Companies of the application of some or all of the Retainer, the Companies shall replenish the Retainer as promptly as practicable to its original amount. Omni shall return to the Companies any amount of the Retainer that remains following application of the Retainer to the payments of unpaid fees and expenses hereunder.

(h)     Payments to Omni for services rendered under the terms of this Agreement may be remitted using either or both of the following methods:

Omni 6/18/25 (PHD)

      (i)    **Wire Transmission**

           (Omni's wire information will be included on each monthly invoice)

      (ii)    **Check**
           Omni Agent Solutions
           c/o Accounts Receivable
           5955 De Soto Avenue
           Suite 100
           Woodland Hills, CA 91367

III.    RETENTION

      (a)    The Agreement is effective immediately upon its execution by the parties; provided, however, that it shall be subject to, if and when applicable, the terms of any order entered approving the engagement of Omni by the Companies in the Companies' chapter 11 proceeding(s).

      (b)    If the Companies commence one or more chapter 11 cases pursuant to the Code, then as soon as is practicable, but in no event more than thirty (30) days after such case or cases are commenced, the Companies agree to and shall take all necessary actions to obtain bankruptcy court approval to retain Omni as their claims and noticing agent pursuant to 28 U.S.C. § 156(c), and as its administrative agent pursuant to section 327(a) of the Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of any application concerning Omni's retention and any order setting forth its terms are subject to Omni's approval which shall not be unreasonably withheld. Notwithstanding any other provision of this Agreement, if the bankruptcy court does not enter an order approving Omni's retention pursuant to 28 U.S.C. § 156(c) or section 327 of the Code, this Agreement will be terminated effective immediately.

IV.    TERM

      (a)    Except as provided herein, the Agreement will remain in effect until terminated: (a) on a mutually agreed upon date as set forth in a writing executed by both parties; (b) on a date of no less than thirty (30) days from the date written notice is provided by one party to the other; (c) by the Companies for cause ("**Cause**") which, for purposes of this Agreement, shall mean that Omni has acted in bad faith, with gross negligence, or engaged in willful misconduct that results in material harm to the Companies' effort and ability to restructure in their chapter 11 cases; or (d) by Omni upon the Companies' material breach of any term herein. If Omni's engagement has been already approved by the bankruptcy court, then Omni shall continue to perform the Services until the entry of an order by the bankruptcy court, in a form and substance satisfactory to Omni, whose consent will not be unreasonably withheld, providing for the terms and conditions of its discharge, including date of termination.

      (b)    Upon its termination, Omni shall provide the Companies with all materials Omni is required to return to the Companies under the terms of this Agreement as well as all in-process deliverables in their then-current state of completion for Services which Omni provided prior to the effective date of the termination promptly after it has received payment in full of all sums attributable to such Services, including for any Services which have then not yet been invoiced.

Omni 6/18/25 (PHD)

Omni shall coordinate with the Companies and, to the extent applicable, the clerk of the bankruptcy court, to maintain an orderly transfer of record keeping functions, shall provide the necessary staff and assistance required for an orderly transfer, and the Companies agree to pay all sums which may become due in connection therewith. Without limiting the foregoing, upon the Companies' written request made at any time during the term of this Agreement, Omni shall deliver to the Companies and/or the Companies' retained professionals at the Companies' sole expense any or all of the non-proprietary data and records held by Omni pursuant to this Agreement, in the form requested by the Companies.

V.     CONFIDENTIALITY

Omni and the Companies, on behalf of themselves and on behalf of each Companies Party, agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided under this Agreement ("**Confidential Information**"), except if any of such information: (a) is then or thereafter becomes publicly available, other than by breach by the receiving party; (b) is already in the receiving party's possession or known to it and was received from a third party that, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party; (c) was independently developed; (d) is lawfully obtained from a third party who, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party; or (e) is subject to production or revelation pursuant to an order of any court, governmental agency or other regulatory body, arbitrator or subpoena, it may, upon not less than ten (10) calendar days written notice to the other party, release the required information.

VI.    OMNI'S PROPERTY RIGHTS

(a)     The parties understand and agree that any and all software programs or other materials furnished by Omni pursuant to this Agreement or used by Omni to provide the Services during the term of this Agreement ("**Omni's Property**") are Omni's sole and exclusive property. Without limiting the foregoing, Omni's Property includes data processing programs, specifications, applications, routines, documentation, ideas, concepts, know-how or techniques relating to data processing or Omni's performance of Services. Omni reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time of accessibility, types of terminals and other equipment, and the Omni database serving the Companies, so long as any such changes do not materially interfere with ongoing Services provided to the Companies in connection with the Companies' pending bankruptcy cases.

(b)     The Companies acknowledge and agree that regardless of any sums they have been charged or have paid to Omni, the Companies obtain no rights or ownership whatsoever in any of Omni's Property and that their use by the Companies is limited to enabling Omni to provide the Services hereunder.

VII.   BANK ACCOUNTS

At the request of the Companies, Omni is authorized to establish account(s) with financial

Omni 6/18/25 (PHD)

institutions in the name of and/or as agent for the Companies and to manage such account(s), including to facilitate distributions pursuant to a chapter 11 plan or otherwise.

VIII.   COMPANIES' DATA

(a)   Without limiting any other provision of this Agreement, the Companies represent and warrant to Omni that when a Companies Party provides information to Omni (a) the Companies have all necessary authority to disclose it to Omni and that Omni is fully authorized to use it in connection with its performance of the Services; (b) that the information is materially accurate and complete to the best of the Companies' knowledge at the time of such communication(s); and (c) that Omni has no responsibility whatsoever to verify or otherwise independently confirm the accuracy or completeness of any information, programs, data or instructions it is provided including, without limitation, data it receives in connection with the preparation of the Companies' Schedules and SOFAs. The Companies agree that they shall be deemed to have reviewed and approved any and all Schedules and SOFAs which are filed on their behalf.

(b)   Without limiting any other provision of this Agreement, the Companies understand and agree that all data, storage media, programs or other materials which are furnished to Omni on its behalf (the "**Companies' Data**") may be retained by Omni until full payment has been made to Omni for all of its Services and that they shall remain liable to Omni for all fees and expenses thereafter charged by Omni for maintaining, storing or disposing of any or all of it.  Omni agrees that it will dispose of the Companies' Data in a manner requested by or acceptable to the Companies; provided, however, that if Omni has not provided Services to the Companies for a period of ninety (90) days and provides no less than thirty (30) days written notice, Omni may dispose of any or all of the Companies' Data in any commercially reasonable at the Companies' sole expense. The Companies agree to use commercially reasonable efforts to initiate and maintain backup files that would allow the Companies to regenerate or duplicate all programs, data or information which is provided on their behalf to Omni.

(c)   If Omni is retained pursuant to bankruptcy court order, disposal of any of the Companies' Data shall comply with any applicable court orders and rules or clerk's office instructions.

IX.   NO REPRESENTATIONS OR WARRANTIES

Omni makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting its enforceability to the maximum extent compatible with applicable law.

X.   INDEMNIFICATION

(a)   To the fullest extent permitted by applicable law, the Companies shall indemnify and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates,

Omni 6/18/25 (PHD)

consultants, subcontractors and agents (each, an "**Indemnified Party**," and collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of or related to Omni's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b) Omni and the Companies shall provide notice to the other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the services provided under and pursuant to the Agreement.

(c) The Companies' indemnification of Omni hereunder shall exclude Losses resulting from Omni's gross negligence or willful misconduct.

(d) The Companies' indemnification obligations hereunder shall survive the termination of this Agreement.

XI. LIMITATIONS OF LIABILITY

Except as expressly provided herein, Omni's liability to the Companies for any Losses, unless due to Omni's gross negligence or willful misconduct, shall be limited to the total amount paid by the Companies for the portion of the particular specific task or expense of the Service that gave rise to the alleged Loss.  In no event shall Omni's liability to the Companies for any Losses arising out of this Agreement exceed the total amount actually paid to Omni for services provided under and pursuant to this Agreement. Moreover, in no event shall Omni be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the services provided under and pursuant to this Agreement.

XII. GENERAL

(a) Each party acknowledges that authorized person(s) on its behalf have read Agreement, understands it, and agrees to be bound by its terms. Each party further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) Any modification to the Agreement shall be only by a writing duly executed by a Companies Party, on behalf of the Companies, and an officer of Omni.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that either party may assign this Agreement to a wholly-owned subsidiary or affiliate or to an entity which has succeeded

Omni 6/18/25 (PHD)

to all or substantially all of the business or assets of a party without the other party's consent, provided that the assigning party provides adequate assurance of performance by the proposed assignee.

(e) This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

(f) Whenever performance by Omni of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Omni's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

(g) The Companies will use their best efforts to cooperate with Omni at the Companies' facilities if any portion of the Services require Omni's physical presence.

(h) Each party agrees that neither it nor any of its subsidiaries shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of the other party during the term of this Agreement and for a period of six (6) months after termination thereof unless the other party provides prior written consent to such solicitation or retention; provided, however, that the foregoing provisions will not prevent either party from hiring or seeking to hire any such person who responds to general advertising or a general solicitation not targeted to the employees of the other party.

(i) The Companies and Omni are and shall be independent contractors of each other and no agency, partnership, joint venture, or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

(j) The language used in this Agreement will be deemed to be the language chosen by the Companies and Omni to express their mutual intent, and no rule of strict construction will be applied against either party.

(k) In the event that any arbitration legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree that the prevailing party is entitled to be paid all of its reasonable attorneys' fees, court costs, and any other expense reasonably related thereto in the amount which may be set by the court or by an arbitrator, whether in the same action or in a separate action brought for the purpose of establishing such amount, in addition to any other relief to which the prevailing party may be entitled.

(l) The validity, enforceability and performance of this Agreement shall be governed

Omni 6/18/25 (PHD)

by and construed in accordance with the laws of the State of New York.

(m) Any dispute arising out of or relating to this Agreement, or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. There shall be one arbitrator named in accordance with such rules. The arbitration shall be conducted in the English language in New York in accordance with the United States Arbitration Act. Notwithstanding the foregoing, during the pendency of any applicable chapter 11 case(s) of the Companies, any disputes related to this Agreement shall be decided by the bankruptcy court with jurisdiction over the chapter 11 case(s).

(n) Omni reserves the right to make changes in operating procedures, operating systems, programming languages, general purpose library programs, application programs, time periods of accessibility, types of terminals and other equipment, and the Omni database serving the Companies, so long as any such changes do not materially interfere with ongoing Services provided to the Companies in connection with the Companies' pending bankruptcy case(s).

(o) All headings used in this Agreement are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

XIII. NOTICING

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

    If to Omni:    Omni Agent Solutions, Inc.
                           5955 De Soto Avenue
                           Suite 100
                           Woodland Hills, CA 91367
                           Tel: (818) 906-8300
                           Attn: Brian K. Osborne, Pres. & CEO
                           Email: Bosborne@omniagnt.com

    If to the Companies:    Zen JV, LLC, *et al.*
                           200 North LaSalle Street, Suite 900
                           Chicago IL 60601
                           United States
                           Attn:  Jeff Furman
                           Email:  Jeff.Furman@careerbuilder.com

    With a copy to:    LATHAM & WATKINS LLP
                           1271 Avenue of the Americas
                           New York, NY 10020
                           Tel: (212) 906-1287
                           Email: candace.arthur@lw.com; Jonathan.Gordon@lw.com

Omni 6/18/25 (PHD)

Or to such other address as the Party to receive the notice or request so designates by written notice to the other.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement effective as of the date first above written.

**OMNI AGENT SOLUTIONS, INC.**

By: _____
Name:  Paul Deutch
Title:   Executive Vice President

Agreed and accepted this ___ day of June, 2025

**ZEN JV, LLC, *ET AL.***

By: _____
Name: Sheri Davis
Title: General Counsel

Omni 6/18/25 (PHD)

# SCHEDULE
# "1"

**Zen JV, LLC**
**Monster Worldwide LLC**
**Military Advantage, LLC**
**FastWeb, LLC**
**Monster Government Solutions, LLC**
**Camaro Acquisition, LLC**
**CareerBuilder, LLC**
**CareerBuilder France Holding LLC**
**CareerBuilder Government Solutions LLC**
**Luceo Solutions, LLC**

# EXHIBIT

# "A"

# 2025 Rate Sheet

**Analyst** $50 – 75

Analysts perform tasks such as incoming and outgoing mail processing (including returned mail), creditor correspondence, document and file organization, daily docket updates.

**Consultant** $80–$220

Consultants perform and manage various day-to-day activities to meet the specific needs of each client's case. These services include data collection, preparation of the creditor matrix, compilation of the notice/database, preparation of Schedules and SOFA's, processing and review of claims and ballots, maintenance of the official claims register and the processing of claim transfers, managing and maintaining the case website, and document management. In addition, Consultants perform quality assurance checks on all services, oversee noticing and fulfillment, assist with creditor communications, and produce multiple reports claims, ballots, and other requested data. Omni's consultant's each average over five years industry-related experience.

**Senior Consultants** $225 - $275

Senior Consultants are the main points of contact for Omni's clients, their counsel, and other related professionals. Senior Consultants oversee all aspects of case administration, providing industry expertise and strategic administrative support on complex issues. Their responsibilities also include the internal management of Omni's case professionals. Omni's senior consultant's each average over ten years industry-related experience and many are former restructuring or financial industry professionals. If necessary, Omni's executive team will provide additional support in the senior consultant role at the rate range set forth above.

**Solicitation and Securities Consultant** $225 - $250

Solicitation and Securities Consultants assist with the review, tabulation, and auditing of ballots, as well as executing plan solicitations and public securities-related services. In addition, Solicitation and Securities Consultants are available to prepare custom voting and tabulation reports, , as well as reports relating to other corporate securities events including exchange offers and rights subscriptions. The Solicitation and Securities Consultant will also interface with the banks, brokers, nominees, depositories, securities holders and their agents regarding solicitation and corporate events. Solicitation and Securities consultant's average over five years of related experience.

**Director of Solicitation and Securities** $295

The Director of Solicitation and Securities is the lead consultant in the plan solicitation process and any corporate action-related events. The Director oversees and coordinates all aspects of plan voting and solicitation including tabulation verification, and, if and when necessary, will attest to the solicitation process and results. The Director also oversees and advises on public securities notices and related actions including voting, exchange offers, treatment elections, rights subscriptions, distributions, and notices, and will coordinate with the banks, brokers, nominees, depositories, securities holders and their agents to ensure smooth and successful execution of the related processes. Omni's Director of Solicitation and Securities is a former Wall Street executive with over 15 years of relevant securities and finance experience.

**Treasury Services – Including Banking, Escrow Agent and Distribution Services** $150 - $295

Treasury Service Consultants provide banking, escrow agent and distribution services. Omni's banking services include opening, maintaining and closing bank accounts, ACH Payments, balance transfers, monthly statement reconciliation, positive pay management, general administrative management and more. Escrow Agent services include full-service banking, administration and management required to execute various types (Asset Sale, Litigation Settlement, Professional Fees) of financial transactions. Omni's Distribution services include the creation and management of the distribution data, banking services, distribution fulfillment via hard check, wire transfer, ACH or other means, bank statement reconciliations, distribution reporting, coordinate tax reporting, final report and account closing. Omni's Treasury Consultants average 15 years of accounting, banking or financial services experience.

**Technology Consultant** $95 - $175

Technology Consultants provide technical and database support with respect to the onboarding and processing of complex data. Our Consultants also deliver ongoing and customized reporting requirements, assist with variable data mailings and exhibit preparation and provide custom solutions to meet individual case requirements. Omni's Technology Consultants each average at least 15 years experience in the information technology and development industry.



# 2025 Rate Sheet

| Hourly Rates for Standard and Custom Services* | RATE / COST |
|---|---|
| Office Services | $50 - $75.00 per hour |
| Case Administration Services | $80 - $275 per hour |
| Claims Management | $80 - $275 per hour |
| Noticing Services | $80 - $275 per hour |
| Schedules and SOFA Services | $80 - $275 per hour |
| Solicitation Services | $80 - $295 per hour |
| Disbursement/Treasury Services | $150 - $295 per hour |
| Communications Services – Call Center | $75 - $175 per hour |
| Quality Control/Oversight Management | $150 - $275 per hour |
| Senior Management/Consulting Services | $225 - $275 per hour |
| Programming and IT Customization | $95 - $175 per hour |

| Claims Management | RATE / COST |
|---|---|
| Inputting Proofs of Claim | Hourly rates (No per claim charges) |
| Scanning | $.10 per image |
| Remote Internet access for claims management | |
| Setup | No charge |
| Access | No charge |

| Schedules / SoFA | RATE / COST |
|---|---|
| Preparation and updating of schedules and SoFAs | $80.00 - $275.00 per hour |

| Informational Website | RATE / COST |
|---|---|
| Creation, Configuration and Initial Setup | No charge |
| Data Entry / Information Updates | Standard hourly rates apply |
| Programming and Customization | $95 - $175 per hour |
| Debtor Website Hosting | No charge |
| Committee Website Hosting | No charge |
| Shareholder Website Hosting | No charge |
| Scanning | $0.10 per image |

| Public Debt and Equities Securities and/Rights Offerings Services | RATE / COST |
|---|---|
| Noticing Services | Standard hourly rates apply |
| Solicitation, Balloting and Tabulation | Standard hourly rates apply |
| Rights Offerings | Standard hourly rates apply |
| Security Position Identification Reports | Standard hourly rates apply |

| Liquidating / Disbursing Agent | RATE / COST |
|---|---|
| Comply with Plan requirements, preparation of disbursement reports, payout calculations, check generation, bank reconciliations | Standard hourly rates apply |

| Solicitation and Tabulation | RATE / COST |
|---|---|
| Plan and disclosure statement mailings | Quoted prior to printing |
| Ballot tabulation | Standard hourly rates apply |

*Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.



# 2025 Rate Sheet

| Printing and Noticing Services | RATE / COST |
| --- | --- |
| Copy | $.10 per image |
| Document folding and insertion | No charge |
| Labels/Envelope printing | $.035 each |
| MSL E-mail noticing | No charge |
| High Volume or Certified E-mail Noticing | TBD per volume |
| Facsímile Noticing | $.10 per image |
| Postage/Overnight Service | Prevailing rates as required (Advance payment required for postage charges over $10,000) |
| Envelopes | Varies by size |

| Newspaper and Legal Notice Publishing | RATE / COST |
| --- | --- |
| Coordinate and publish legal notice | Quote prior to publishing |

| Call Centers / Dedicated Line | RATE / COST |
| --- | --- |
| Creation, configuration and initial setup | No charge |
| Hosting fee | $50.00 per Month |
| Usage | $.10 per Minute |
| Call center personnel | Standard Hourly Rates |

| UST Reporting Compliance | RATE / COST |
| --- | --- |
| Assist debtors to satisfy jurisdicational requirements, preparation of monthly operating and post-confirmation reports | Standard hourly rates apply |

| Electronic Services, Storage & Security | RATE / COST |
| --- | --- |
| License Fee and System Maintenance | .10 per Record |
| Per image storage | No charge |
| Monthly Encryption Bandwidth and Security Compliance Charges** | .15 per MB |
| Automated Services | .20 per process |

| Virtual Data Rooms | |
| --- | --- |
| | Quote upon request |

| Miscellaneous | RATE / COST |
| --- | --- |
| Telephone charges | At cost |
| Delivery | At cost |
| Archival DVD/CD-Rom | $50.00 per copy |

** Charges relate to secure, bidirectional encryption of web-based documents and telephony, as well as secure storage of case records, documents and related files based on volume