> **THE COMBINED PLAN AND DISCLOSURE STATEMENT**
> **HAS BEEN APPROVED FOR SOLICITATION PURPOSES**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------    x
                                                   :   Chapter 11
In re:                                             :
                                                   :   Case No. 25-11195 (JKS)
ZEN JV, LLC, et al.,¹                              :
                                                   :   (Jointly Administered)
                 Debtors.                          :
                                                   :
----------------------------------------------    x
```

### DEBTORS' AMENDED COMBINED DISCLOSURE STATEMENT
### AND JOINT CHAPTER 11 PLAN OF LIQUIDATION

| **LATHAM & WATKINS LLP** | **RICHARDS, LAYTON & FINGER, P.A.** |
|---|---|
| Ray C. Schrock (admitted *pro hac vice*) | Daniel J. DeFranceschi (No. 2732) |
| Candace M. Arthur (admitted *pro hac vice*) | Zachary I. Shapiro (No. 5103) |
| 1271 Avenue of the Americas | Huiqi Liu (No. 6850) |
| New York, New York 10020 | Clint M. Carlisle (No. 7313) |
| | Colin A. Meehan (No. 7237) |
| - and - | One Rodney Square |
| | 920 North King Street |
| Jonathan C. Gordon (admitted *pro hac vice*) | Wilmington, Delaware 19801 |
| 330 North Wabash Avenue, Suite 2800 | |
| Chicago, Illinois 60611 | |

*Co-Counsel for Debtors and Debtors in Possession*

Dated:  September 4, 2025
        Wilmington, Delaware

---

¹ The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are:  Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions, LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508).  The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................................1

II. DEFINITIONS AND CONSTRUCTION OF TERMS .........................................................1

    A.  Definitions ...................................................................................................................1

    B.  Interpretation; Application of Definitions and Rules of Construction.........................15

III. BACKGROUND AND DISCLOSURES..............................................................................16

    A.  General Background ..................................................................................................16

    B.  Events Leading up to the Chapter 11 Filing ..............................................................18

    C.  The Chapter 11 Cases ...............................................................................................20

    D.  Certain Federal Income Tax Consequences...............................................................26

    E.  Alternate Plans .........................................................................................................26

    F.  Best Interests Test and Liquidation Analysis.............................................................26

    G.  Releases by the Debtors and Holders of Claims ........................................................27

    H.  Certain Risk Factors to be Considered.......................................................................28

IV. TREATMENT OF UNCLASSIFIED CLAIMS ....................................................................29

    A.  Administrative Expense Claims.................................................................................29

    B.  Professional Fee Claims ............................................................................................29

    C.  Priority Tax Claims...................................................................................................29

    D.  Payment of Statutory Fees ........................................................................................30

V. SUMMARY OF TREATMENT OF CLAIMS AND ESTIMATED RECOVERIES .............30

VI. CONFIRMATION AND VOTING PROCEDURES............................................................31

    A.  Confirmation Procedure............................................................................................31

    B.  Bar Dates for Professional Fee Claims .....................................................................35

VII. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS..........................................35

VIII. TREATMENT OF CLAIMS AND EQUITY INTERESTS...............................................36

    A.  Treatment of Claims .................................................................................................36

    B.  Modification of Treatment of Claims and Equity Interests ........................................39

    C.  Cramdown and No Unfair Discrimination.................................................................39

IX. PROVISIONS REGARDING THE LIQUIDATION TRUST................................................39

    A.  Appointment of the Liquidation Trustee....................................................................39

    B.  Creation of the Liquidation Trust .............................................................................40

    C.  Liquidation Trust Beneficiaries ................................................................................40

    D.  Vesting and Transfer of the Liquidation Trust Assets to the Liquidation Trust.........40

E.   Distributions from the Liquidation Trust ...................................................................41

F.   Liquidation Trust Expenses ....................................................................................41

G.   Certain Powers and Duties of the Liquidation Trust and Liquidation Trustee ...........41

H.   United States Federal Income Tax Treatment of the Liquidation Trust for the Liquidation Trust Assets ........................................................................................42

I.   Term of Liquidation Trust ......................................................................................43

J.   Limitation of Liability of the Liquidation Trustee; Indemnification ..........................43

X. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT ..............................................................................................44

A.   Method of Payment.................................................................................................44

B.   Objections to and Resolution of Claims ..................................................................44

C.   Claims Objection Deadline .....................................................................................44

D.   No Distribution Pending Allowance ........................................................................44

E.   Claims Reserve .....................................................................................................44

F.   Distribution After Allowance ..................................................................................45

G.   Adjustments to Claims Without Objection ...............................................................45

H.   Distribution Record Date ........................................................................................45

I.   Delivery of Distributions .......................................................................................45

J.   Unclaimed Distributions ........................................................................................46

K.   *De Minimis* Distributions .......................................................................................46

L.   Setoff....................................................................................................................46

M.   Postpetition Interest ...............................................................................................46

N.   Allocation of Distributions Between Principal and Interest .......................................46

XI. ADDITIONAL MEANS FOR IMPLEMENTATION ...........................................................47

A.   Authority to Act ....................................................................................................47

B.   Effectuating Documents and Further Transactions....................................................47

C.   Release of Liens; Cancellation of Prepetition Term Loan Credit Agreement .............47

D.   Limited Substantive Consolidation .........................................................................48

XII. EXCULPATION, RELEASES AND INJUNCTIONS...........................................................48

A.   Exculpation ...........................................................................................................48

B.   Releases by the Debtors .........................................................................................49

C.   Releases by Holders of Claims ...............................................................................50

D.   Injunctions Relating to Releases..............................................................................50

ii

E. Injunctions to Protect Estate Assets ........................................................................51

XIII. EXECUTORY CONTRACTS ............................................................................................51

A. Assumption and Rejection of Executory Contracts ...................................................51

B. Determination of Cure Disputes and Deemed Consent .............................................52

C. Deadline for Filing Proofs of Claim Relating to Executory Contracts Rejected Pursuant to the Combined Plan and Disclosure Statement .........................................................53

D. Indemnification Obligations .....................................................................................53

E. Insurance Policies ....................................................................................................54

XIV. CONDITIONS PRECEDENT TO AND OCCURRENCE OF CONFIRMATION AND THE EFFECTIVE DATE ...................................................................................................54

A. Conditions Precedent to the Effective Date ..............................................................54

B. Establishing the Effective Date .................................................................................54

C. Effect of Failure of Conditions .................................................................................55

D. Waiver of Conditions to Effective Date ....................................................................55

XV. RETENTION OF JURISDICTION ....................................................................................55

XVI. MISCELLANEOUS PROVISIONS ...................................................................................57

A. Avoidance Actions ...................................................................................................57

B. Termination of Injunctions or Stays .........................................................................57

C. Amendment or Modification of the Combined Plan and Disclosure Statement ..........57

D. Severability ..............................................................................................................57

E. Revocation or Withdrawal of the Combined Plan and Disclosure Statement .............58

F. Immediate Binding Effect .........................................................................................58

G. Notices .....................................................................................................................58

H. Governing Law .........................................................................................................58

I. Withholding and Reporting Requirements .................................................................59

J. Exemption from Transfer Taxes ................................................................................59

K. Headings ..................................................................................................................59

L. Exhibits/Schedules ...................................................................................................60

M. Filing of Additional Documents ...............................................................................60

N. No Admissions ..........................................................................................................60

O. Successors and Assigns.............................................................................................60

P. Reservation of Rights ...............................................................................................60

Q. Implementation ........................................................................................................60

iii

R.  Inconsistency ..................................................................................................60

S.  Dissolution of the Debtors ...............................................................................61

T.  Abandonment of Non-Debtor Equity Interests ...............................................61

U.  Directors, Officers, Managers, Members and Authorized Persons of the Debtors......61

V.  Dissolution of the Committee ..........................................................................61

W. Compromise of Controversies .........................................................................61

X.  Votes Solicited in Good Faith ..........................................................................62

Y.  Request for Expedited Determination of Taxes ..............................................62

iv

**NOTICE**

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE COMBINED PLAN AND DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ON THE DEBTORS OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED PLAN AND DISCLOSURE STATEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, EACH HOLDER OF A CLAIM THAT IS ENTITLED TO VOTE SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THE COMBINED PLAN AND DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL HEREIN.

**THE DEBTORS SUPPORT CONFIRMATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT AND RECOMMEND ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

**THE COMMITTEE HAS ALSO INDEPENDENTLY CONCLUDED THAT THE COMBINED PLAN AND DISCLOSURE STATEMENT IS IN THE BEST INTERESTS OF GENERAL UNSECURED CREDITORS AND URGES SUCH CREDITORS TO VOTE IN FAVOR OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.  A LETTER FROM THE COMMITTEE EXPRESSING ITS SUPPORT FOR THE COMBINED PLAN AND DISCLOSURE STATEMENT IS INCLUDED IN THE SOLICITATION PACKAGE.**

RLF1 33726890v.1

# I. **INTRODUCTION**

Zen JV, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), with the support of the Committee, hereby propose the *Debtors' Amended Combined Disclosure Statement and Joint Plan of Liquidation* (the "**Combined Plan and Disclosure Statement**") pursuant to sections 1125 and 1129 of the Bankruptcy Code.  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an Order of the Bankruptcy Court. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article II.A.

The Combined Plan and Disclosure Statement constitutes a joint liquidating chapter 11 plan for the Debtors and provides for the Distribution of the Debtors' Assets already liquidated or to be liquidated over time to the Holders of Allowed Claims in accordance with the terms of the Combined Plan and Disclosure Statement and the priority of claims provisions of the Bankruptcy Code. This Combined Plan and Disclosure Statement constitutes a separate chapter 11 plan for each Debtor and, unless otherwise set forth herein, the classifications and treatment of Claims and Interests apply to each individual Debtor. Except as otherwise provided by Order of the Bankruptcy Court, Distributions will occur on the Effective Date or as soon thereafter as is practicable and at various intervals thereafter.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article XVI.C of the Combined Plan and Disclosure Statement, the Debtors expressly reserve the right to alter, amend or modify the Combined Plan and Disclosure Statement, including the Plan Supplement, one or more times, before substantial consummation thereof.

# II. **DEFINITIONS AND CONSTRUCTION OF TERMS**

## A. **Definitions**

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:[2]

1. "**Administrative Expense Bar Date**" means the Business Day that is 30 days after the Effective Date, or such other date as approved by Final Order of the Bankruptcy Court, and by which a request for payment of an Administrative Expense Claim (other than a Professional Fee Claim or any Statutory Fees) must be Filed; *provided* that in accordance with the Bar Date Order, Claims arising under section 503(b)(9) of the Bankruptcy Code are required to be filed by the General Bar Date.

2. "**Administrative Expense Claim**" means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code including, without limitation, (a) any actual and necessary costs and expenses

---

[2]    Copies of all filings in the Chapter 11 Cases (as defined herein) can be obtained and viewed free of charge at the following web address: *https://omniagentsolutions.com/CareerBuilderMonster*.

of preserving the Estates, (b) all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, (c) any Statutory Fees, and (d) all Claims arising under section 503(b)(9) of the Bankruptcy Code.

3.      "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

4.      "**AlixPartners**" means AlixPartners, LLP.

5.      "**Allowed**" means, with respect to Claims:  (a) any Claim, proof of which was Filed (or for which Claim, under the Combined Plan and Disclosure Statement, the Bankruptcy Code, or a Final Order of the Bankruptcy Court, a Proof of Claim is not or shall not be required to be Filed); (b) any Claim which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent and for which no Proof of Claim has been Filed; (c) any Claim allowed pursuant to the Combined Plan and Disclosure Statement or a Final Order of the Bankruptcy Court; or (d) any Claim that is allowed by an agreement between the Holder of Such Claim or Interest and the Debtors prior to the Effective Date, or the Liquidating Trustee on or after the Effective Date; *provided* that any Claim described in clauses (a) and (b) shall be considered Allowed only if and to the extent that with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period fixed by the Combined Plan and Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or such objection is interposed and the Claim is subsequently Allowed by a Final Order; *provided*, *further*, that Claims allowed solely for purposes of voting on the Combined Plan and Disclosure Statement pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed" Claims hereunder.

6.      "**Amended Schedules Bar Date**" means the date that is 30 days after service of a notice to an applicable Creditor of an amendment to, or the addition of, its Claim reflected on the Schedules.

7.      "**Assets**" means all of the Debtors' property, rights, and interests that are property of the Estates pursuant to section 541 of the Bankruptcy Code.

8.      "**Assumption Dispute**" means a pending objection relating to assumption of an Executory Contract pursuant to section 365 of the Bankruptcy Code.

9.      "**Assumption Schedule**" means the schedule of Executory Contracts to be assumed by the Debtors and assigned to the Liquidation Trust, if any, pursuant to the Combined Plan and Disclosure Statement, to be filed as part of the Plan Supplement.

10.     "**Auction**" means the auction for the sale of the Debtors' Assets conducted in accordance with Bidding Procedures Order [Docket No. 110] and commenced on July 17, 2025.

11.     "**Avoidance Actions**" means any and all rights to recover or avoid transfers or liens under chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law,

2

including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions.

12.    "**Ballot**" means the ballot on which each Holder of a Claim entitled to vote on the acceptance or rejection of the Combined Plan and Disclosure Statement casts such vote.

13.    "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time.

14.    "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware.

15.    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended from time to time.

16.    "**Bar Date Notice**" means that certain *Notice of Deadlines to File Proofs of Claim* [Docket No. 299] Filed by the Debtors on August 12, 2025.

17.    "**Bar Date Order**" means the Order (I) Establishing a General Bar Date to File Proofs of Claim, (II) Establishing a Bar Date to File Proofs of Claim by Governmental Units, (III) Establishing a Rejection Damages Bar Date, (IV) Establishing an Amended Schedules Bar Date; (V) Approving the Form and Manner for Filing Proofs of Claim, (VI) Approving the Proposed Notices of Bar Dates, (VII) Approving Procedures With Respect to Service of the Proposed Notice of Bar Dates, and (VIII) Granting Related Relief [Docket No. 298].

18.    "**Bar Dates**" means those dates and times defined as the Bar Dates in Article III.C.7.c of the Combined Plan and Disclosure Statement.

19.    "**Bidding Procedures**" has the meaning ascribed to such term in the Bidding Procedures Order.

20.    "**Bidding Procedures Order**" means the Order (I) Authorizing and Approving (A) the Bidding Procedures for Sale of the Debtors' Assets Free and Clear, (B) the Scheduling of an Auction and Sale Hearing, (C) the Form and Manner of Notice of Sales, Auctions, and Sale Hearings, (D) the Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) the Designation of Stalking Horse Bidders, and (F) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Authorizing Designation of Stalking Horse Bidders, and (III) Granting Related Relief [Docket No. 110].

21.    "**Bold**" means BOLD Holdings, LLC and its permitted assignees.

22.    "**Business Day**" means any day other than a Saturday, Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

23.    "**Cash**" means legal tender of the United States of America and equivalents thereof.

24.    "**Cash Collateral**" has the meaning ascribed to such term in the Final DIP Order.

25.    "**Cash Collateral Resolution**" has the meaning ascribed to such term in Article III.C.4.

26.    "**Cash Collateral Resolution Parties**" has the meaning ascribed to such term in Article III.C.4.

27.    "**Cash on Hand**" means Cash, all of which is Notes Cash Collateral, that the Debtors possess or may receive other than the Prepetition Term Loan Reserve and the Prepetition Notes Reserve.

28.    "**Causes of Action**" means any claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counterclaims, offsets, or setoffs of any kind or character whatsoever, in each case whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, under statute, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, federal or state, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

29.    "**Challenge**" has the meaning ascribed to such term in the Final DIP Order.

30.    "**Challenge Deadline**" has the meaning ascribed to such term in the Final DIP Order.

31.    "**Chapter 11 Case**s" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court under the case caption In re Zen JV, LLC, *et al.*, Case No. 25-11195 (JKS).

32.    "**Claim**" has the meaning ascribed to such term in section 101(5) of the Bankruptcy Code.

33.    "**Claims and Noticing Agent**" means Omni, the claims, noticing, and solicitation agent retained by the Debtors in the Chapter 11 Cases pursuant to the *Order (I) Authorizing and Approving the Appointment of Omni Agent Solutions, Inc. as Claims and Noticing Agent and (II) Granting Related Relief* [Docket No. 50] and the *Order Authorizing the Employment and Retention of Omni Agent Solutions, Inc. as Administrative Agent to the Debtors Effective as of the Petition* Date [Docket No. 265].

34.    "**Claims Objection Deadline**" means the first Business Day that is 180 calendar days after the Effective Date or such later date as may be approved by Order of the Bankruptcy Court upon motion of the Liquidation Trustee on behalf of the Liquidation Trust.

4

35.    "**Claims Reserve**" means the reserve established on the Effective Date and funded with Cash on Hand or, if Cash on Hand is insufficient, the Prepetition Notes Reserve, for the payment of all reasonably anticipated Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Other Secured Claims, with the amount of such Reserve being determined by the Debtors in consultation with the Prepetition Notes Secured Parties and the Committee.

36.    "**Class**" means any group of substantially similar Claims or Equity Interests classified by the Combined Plan and Disclosure Statement pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

37.    "**Clerk**" means the clerk of the Bankruptcy Court.

38.    "**Closing Date**" means July 31, 2025.

39.    "**Combined Plan and Disclosure Statement**" means this combined disclosure statement and chapter 11 plan of liquidation including, without limitation, all exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time through the Effective Date.

40.    "**Committee**" means the official committee of unsecured creditors appointed by the U.S. Trustee pursuant to the *Notice of Appointment of Committee of Unsecured* Creditors [Docket No. 65].

41.    "**Committee Professional Fee Cap**" means $2,000,000.

42.    "**Company**" means the Job Board Business, the MGS Business, and the MMP Business.

43.    "**Conditional Approval and Procedures Order**" has the meaning ascribed to such term in Article VI.A.1.

44.    "**Confirmation Date**" means the date on which the Confirmation Order is entered on the Docket.

45.    "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider (i) final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (ii) confirmation of the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

46.    "**Confirmation Hearing Notice**" means that certain notice of Confirmation Hearing as defined in Article VI.A.8 of the Combined Plan and Disclosure Statement.

47.    "**Confirmation Order**" means the Order entered by the Bankruptcy Court confirming the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code.

48.     "**Creditor**" means any Person that is the Holder of a Claim against the Debtors.

49.     "**Cure Amount**" means the payment of Cash by the Debtors, or the distribution of other property (as the parties may agree or the Bankruptcy Court may Order), as necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an Executory Contract of the Debtors and (b) permit the Debtors to assume such Executory Contract pursuant to section 365 of the Bankruptcy Code.

50.     "**Deficiency Claim**" means a General Unsecured Claim for the difference between (a) the aggregate amount of an Allowed Claim and (b) the value received on account of the portion of such Allowed Claim that is an Other Secured Claim, a Prepetition Term Loan Claim, or a Prepetition Notes Claim.

51.     "**DIP Obligations**" has the meaning ascribed to such term in the Final DIP Order.

52.     "**D&O Liability Insurance Policies**" means all insurance policies (including any "tail policy") issued or providing coverage at any time to any of the Debtors or any of their predecessors for current or former directors', officers', managers', and/or employees' liability and all agreements, documents, or instruments relating thereto.

53.     "**Debtors-in-Possession**" means the Debtors in their capacity as debtors-in-possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

54.     "**Disputed**" means with respect to any Claim or Equity Interest, that such Claim or Equity Interest (a) is not yet Allowed; (b) is not Disallowed by the Combined Plan and Disclosure Statement, the Bankruptcy Code, or a Final Order, as applicable; (c) as to which a dispute is being adjudicated by the Bankruptcy Court, including a dispute about the priority or the extent of the secured amount of such claim under section 506(a) of the Bankruptcy Code or otherwise, or another court of competent jurisdiction in accordance with non-bankruptcy law; (d) is or is hereafter listed in the Schedules as contingent, unliquidated, or disputed and for which a Proof of Claim is or has been timely Filed in accordance with the Bar Date Order or the Combined Plan and Disclosure Statement; or (e) is filed after the applicable Bar Date.

55.     "**Distribution**" means any distribution to the Holders of Allowed Claims.

56.     "**Distribution Record Date**" means seven (7) days prior to the Effective Date; *provided*, that (x) with respect to Administrative Expense Claims (other than Professional Fee Claims and Claims arising under section 503(b)(9) of the Bankruptcy Code), the Distribution Record Date shall be the later of seven (7) days prior to the Effective Date and the applicable Administrative Expense Bar Date and (y) with respect to Claims arising from the rejection, as of the Effective Date, of Executory Contracts or Unexpired Leases, the Distribution Record Date shall be the deadline by which the Holders of such Claims must file Proofs of Claim in accordance with Article XIII.C.

57.     "**Docket**" means the docket in the Chapter 11 Cases, including any adversary proceedings commenced therein, maintained by the Clerk.

6

58.     "**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

59.     "**Equity Interests**" means all equity interests in the Debtors including, but not limited to, all issued, unissued, authorized or outstanding shares together with any warrants, options or contract rights to purchase or acquire such interests at any time.

60.     "**Estate(s)**" means the estates of the Debtors created upon the commencement of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

61.     "**Exculpated Parties**" means the following Persons and Entities, each in their respective capacities as such: (a) the Debtors; (b) directors, officers, managers, managing members, and Professionals of the Debtors serving in such capacities at any time between the Petition Date and the Effective Date; and (c) the Committee and its Professionals and members.

62.     "**Executory Contract**" means any Executory Contract as of the Petition Date between the Debtors and any other Person or Entity.

63.     "**File**", "**Filed**", or "**Filing**" means file, filed or filing with the Bankruptcy Court in the Chapter 11 Cases.

64.     "**Final DIP Order**" means the Final Order (A) Authorizing Debtors to (I) Obtain Postpetition Financing and (II) Use Cash Collateral, (B) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (C) Granting Adequate Protection, (D) Modifying Automatic Stay, and (E) Granting Related Relief [D.I. 239]

65.     "**Final Order**" means an Order of the Bankruptcy Court or a Court of competent jurisdiction to hear appeals from the Bankruptcy Court, that has not been reversed, stayed, modified or amended and as to which the time to appeal, to petition for certiorari, or to move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; *provided*, *however*, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order shall not cause such order not to be a Final Order.

66.     "**First Day Declaration**" means the Declaration of Michael Suhajda, Chief Financial Officer, in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 36].

67.     "**First Day Motions**" means those motions and applications described in Article III.C.1 of the Combined Plan and Disclosure Statement.

68.     "**General Bar Date**" means September 15, 2025 at 5:00 p.m. (prevailing Eastern Time), as stated in the Bar Date Notice.

69.     "**General Unsecured Claim**" means any Claim other than an Administrative Expense Claim, Professional Fee Claim, Other Secured Claim, Priority Tax Claim, Other Priority Claim, Prepetition Term Loan Claim, Prepetition Notes Claim, and Intercompany Claim. For the avoidance of doubt, any Deficiency Claim of any Prepetition Secured Party shall not be a General Unsecured Claim but all other Deficiency Claims shall be General Unsecured Claims.

7

70.    "**Global Settlement**" has the meaning ascribed to such term in Article III.C.5.

71.    "**Global Settlement Parties**" has the meaning ascribed to such term in Article III.C.5.

72.    "**Governmental Bar Date**" means December 22, 2025 at 5:00 p.m. (prevailing Eastern Time), as stated in the Bar Date Notice.

73.    "**Governmental Unit**" has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

74.    "**Holder**" means the beneficial holder of any Claim or Equity Interest.

75.    "**Impaired**" means "impaired" as the term is used in sections 1123(a)(4) and 1124 of the Bankruptcy Code.

76.    "**Intercompany Claims**" means Claims held by a Debtor or non-Debtor Affiliate against another Debtor and which do not include any Prepetition Notes Claims or Administrative Expense Claims of the Prepetition Notes Secured Parties or any controlled Affiliate thereof (in each case, regardless of capacity).

77.    "**Interim DIP Order**" means the Interim Order (A) Authorizing Debtors to (I) Obtain Postpetition Financing and (II) Use Cash Collateral, (B) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (C) Granting Adequate Protection, (D) Modifying Automatic Stay, (E) Scheduling Final Hearing, and (F) Granting Related Relief [Docket No. 56].

78.    "**Job Board APA**" means that certain Asset Purchase Agreement, dated as of July 27, 2025, by and among certain of the Debtors and BOLD Holdings LLC.

79.    "**Job Board Business**" means the CareerBuilder + Monster Job Board Business.

80.    "**Job Board Sale**" means the sale of certain of the Debtors' Assets pursuant to the Job Board APA.

81.    "**Lien**" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

82.    "**Liquidation Trust**" means the trust established on the Effective Date in accordance with the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement.

83.    "**Liquidation Trust Agreement**" means the trust agreement establishing the Liquidation Trust, which shall be in form and substance acceptable to the Debtors, the Prepetition Notes Secured Parties and the Committee.

8

84.     "**Liquidation Trust Assets**" means (a) Residual Cash on Hand, if any; (b) the Residual Reserve Amount, if any; and (c) all other Assets as of the Effective Date; *provided*, *however*, that the Purchased Assets, the Professional Fee Reserve, the Prepetition Term Loan Reserve, and the Prepetition Notes Reserve shall not be Liquidation Trust Assets.

85.     "**Liquidation Trust Beneficiaries**" means the Holders of Allowed Prepetition Notes Claims and Allowed General Unsecured Claims entitled to receive Distributions pursuant to the terms of the Combined Plan and Disclosure Statement; *provided* that if Cash on Hand on the Effective Date is sufficient to fund the Reserves and the Reserve Deficiency Payment is not required, then Holders of Allowed Prepetition Notes Claims shall not be Liquidation Trust Beneficiaries.

86.     "**Liquidation Trust Expenses**" means all reasonable and documented fees, expenses, and costs incurred by the Liquidation Trust (including, but not limited to, compensation of the Liquidation Trustee and the reasonable fees and expenses of professionals or other Persons retained by the Liquidation Trustee) in connection with carrying out the duties and responsibilities set forth in the Liquidation Trust Agreement and the Combined Plan and Disclosure Statement.

87.     "**Liquidation Trust Party**" has the meaning ascribed to such term in Article IX.I

88.     "**Liquidation Trust Reserve**" means the reserve in the amount of $2,000,000 established on the Effective Date and funded from Cash on Hand or, if Cash on Hand is insufficient, the Prepetition Notes Reserve, to pay Liquidation Trust Expenses.

89.     "**Liquidation Trustee**" means the trustee appointed pursuant to Article IX.A (or any successor trustee), in his, her, or its capacity as the trustee of the Liquidation Trust.

90.     "**Local Rules**" means the Local Rules of the United States Bankruptcy Court for the District of Delaware, as amended from time to time.

91.     "**MGS APA**" means that certain Asset Purchase Agreement, dated as of July 27, 2025, by and among Zen JV, LLC, Monster Government Solutions, LLC, as sellers and Sherrill-Lubinski, LLC and ETI-NET Inc., as buyers.

92.     "**MGS Business**" means Monster Government Services business.

93.     "**MGS Sale**" means the sale of certain of the Debtors' Assets pursuant to the MGS APA.

94.     "**MGS Sale Order**" means the Order (I) Authorizing and Approving the Debtors' Entry Into an Asset Purchase Agreement With Sherrill-Lubinski, LLC and Eti-Net Inc., (II) Authorizing the Sale of the Purchased Assets Free and Clear of All Liens, Encumbrances, Claims and Interests, (III) Approving the Assumption and Assignment of the Selected Assigned Contracts, and (IV) Granting Related Relief [D.I. 236].

95.     "**MMP APA**" means that certain Asset Purchase Agreement, dated as of July 17, 2025, by and among certain of the Debtors and Valnet US Inc.

9

96.     "**MMP Business**" means Monster Media Properties business.

97.     "**MMP Sale**" means the sale of certain of the Debtors' Assets pursuant to the MMP APA.

98.     "**MMP Sale Order**" means the Order (I) Authorizing and Approving the Debtors' Entry Into an Asset Purchase Agreement with Valnet US, Inc., (II) Authorizing the Sale of the Purchased Assets Free and Clear of All Encumbrances, (III) Approving the Assumption and Assignment of the Selected Assigned Contracts, and (IV) Granting Related Relief [D.I. 237].

99.     "**Non-Debtor Equity Interests**" means, collectively, any Equity Interests held by any Debtor in any Entity that is not a Debtor.

100.    "**Notes Cash Collateral**" has the meaning ascribed to such term in the Final DIP Order.

101.    "**Omni**" means Omni Agent Solutions, Inc.

102.    "**Order**" means an order or judgment of the Bankruptcy Court as entered on the Docket.

103.    "**Other Priority Claim**" means a Claim that is accorded priority in right of payment under section 507 of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

104.    "**Other Secured Claim**" means a Secured Claim that is not a Prepetition Notes Claim or Prepetition Term Loan Claim.

105.    "**PartnerOne**" means Sherrill-Lubinski, LLC & Eti-Net Inc. (Partner One Capital) and its permitted assignees.

106.    "**Person**" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a governmental unit or any agency or subdivision thereof or any other Entity.

107.    "**Petition Date**" means June 24, 2025.

108.    "**PJT**" means PJT Partners LP.

109.    "**Plan Supplement**" means the appendix of schedules and exhibits to the Combined Plan and Disclosure Statement (as may be altered, amended, modified, or supplemented from time to time), containing, among other things, the Assumption Schedule, the Liquidation Trust Agreement, and the identity and compensation of the Liquidation Trustee, to be Filed with the Bankruptcy Court no later than seven days prior to the earlier of (i) the Voting Deadline and (ii) the deadline to object to final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and confirmation of the Combined Plan and Disclosure Statement.

110.  "**Post-Sale Approved Budget**" has the meaning ascribed to such term in the Final DIP Order.

111.  "**Prepetition Additional Note**" means that certain Amended and Restated Additional Senior Secured Note, dated as of February 20, 2025 (as amended, restated, supplemented, or otherwise modified prior to the Petition Date in accordance with the terms thereof).

112.  "**Prepetition Additional Noteholders**" means Holders that are party to the Prepetition Additional Note.

113.  "**Prepetition Initial Note**" means that certain Amended and Restated Senior Secured Note, dated as of December 27, 2024 (as amended, restated, supplemented, or otherwise modified prior to the Petition Date in accordance with the terms thereof).

114.  "**Prepetition Initial Noteholders**" means Holders that are party to the Prepetition Initial Note.

115.  "**Prepetition Loan Documents**" has the meaning ascribed to such term in the Final DIP Order.

116.  "**Prepetition Noteholders**" means the Prepetition Initial Noteholders, the Prepetition Additional Noteholders, and the Prepetition Third Noteholders.

117.  "**Prepetition Notes**" means the Prepetition Initial Note, the Prepetition Additional Note, and the Prepetition Third Note.

118.  "**Prepetition Notes Agent**" means Randstad MWW Solutions Inc.

119.  "**Prepetition Notes Claim**" means the Claims other than Administrative Expense Claims of the Prepetition Notes Secured Parties and any controlled Affiliate thereof (in each case, regardless of capacity), all of which shall be Allowed as of the Effective Date (to the extent not already Allowed under the Final DIP Order), including, but not limited to, the Prepetition Notes Obligations, any Claims arising under the Interim and Final DIP Orders, any Deficiency Claim and any other Claim.

120.  "**Prepetition Notes Collateral**" means the Assets pledged to the Prepetition Notes Agent in connection with the Prepetition Initial Note, the Prepetition Additional Note, and the Prepetition Third Note.

121.  "**Prepetition Notes Guarantors**" means Debtors Monster Worldwide LLC, Military Advantage, LLC, FastWeb, LLC, and Monster Government Solutions, LLC.

122.  "**Prepetition Notes Issuer**" means Debtor Zen JV, LLC.

123.  "**Prepetition Notes Loan Parties**" means the Prepetition Notes Issuer and the Prepetition Notes Guarantors.

124.    **"Prepetition Notes Obligations"** has the meaning ascribed to such term in the Final DIP Order.

125.    **"Prepetition Notes Recovery Amount"** means Cash in the amount of the Prepetition Notes Reserve after the funding of any Reserve Deficiency, if applicable, in accordance with the Global Settlement and Article III.C.6 plus, if any of the Prepetition Notes Reserve is used to fund any Reserve Deficiency, Cash from the Liquidation Trust Assets up to the amount of the Reserve Deficiency Payment in accordance with the Waterfall Recovery in Article III.C.6.

126.    **"Prepetition Notes Reserve"** has the meaning ascribed to such term in Article III.C.4.

127.    **"Prepetition Notes Secured Parties"** means the Prepetition Notes Agent and the Prepetition Noteholders.

128.    **"Prepetition Secured Parties"** means the Prepetition Term Loan Secured Parties and the Prepetition Notes Secured Parties.

129.    **"Prepetition Term Loan Agent"** means Wilmington Trust, National Association.

130.    **"Prepetition Term Loan Borrower"** means Debtor CareerBuilder, LLC.

131.    **"Prepetition Term Loan Claim"** means the Claims of the Prepetition Term Loan Secured Parties, all of which shall be Allowed as of the Effective Date (to the extent not already Allowed under the Final DIP Order), including, but not limited to, the Prepetition Term Loan Secured Obligations, any Claims arising under the Interim and Final DIP Orders, and any Deficiency Claim.

132.    **"Prepetition Term Loan Credit Agreement"** has the meaning ascribed to such term in the Final DIP Order.

133.    **"Prepetition Term Loan Guarantors"** means Camaro Acquisition, LLC, CareerBuilder Government Solutions LLC, Luceo Solutions LLC, and CareerBuilder France Holding LLC.

134.    **"Prepetition Term Loan Lenders"** means the lenders party to the Prepetition Term Loan Credit Agreement.

135.    **"Prepetition Term Loan Parties"** means Prepetition Term Loan Borrower and the Prepetition Term Loan Guarantors.

136.    **"Prepetition Term Loan Reserve"** has the meaning ascribed to such term in Article III.C.4.

137.    **"Prepetition Term Loan Secured Obligations"** has the meaning ascribed to such term in the Final DIP Order.

138.    "**Prepetition Term Loan Secured Parties**" means the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders.

139.    "**Prepetition Third Note**" that certain Amended and Restated Third Senior Secured Note, dated as of December 27, 2024 (as amended, restated, amended and restated, supplemented, or otherwise modified prior to the Petition Date in accordance with the terms thereof).

140.    "**Prepetition Third Noteholders**" means Holders that are party to the Prepetition Third Note.

141.    "**Priority Tax Claim**" means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

142.    "***Pro Rata***" means the proportion that an Allowed Claim in a particular Class bears in relation to the aggregate amount of Allowed Claims in that Class.

143.    "**Professional**" means any professional person employed in the Chapter 11 Cases pursuant to section 327, 328, 363 or 1103 of the Bankruptcy Code or otherwise pursuant to an Order of the Bankruptcy Court.

144.    "**Professional Fee Claim**" means any Claim of a Professional for compensation, indemnification, or reimbursement of costs and expenses incurred on or before the Effective Date pursuant sections 327, 328, 330, 331, 363 503(b), or 1103(a) of the Bankruptcy Code, plus any fees and expenses related to the fee applications of a Professional.

145.    "**Professional Fee Reserve**" means the reserve established on the Effective Date and funded by the Debtors on the Effective Date with Cash on Hand or, if Cash on Hand is insufficient, the Prepetition Notes Reserve, in an amount equal to the total estimated amount of the Professionals' good faith estimates of their actual, unpaid Professional Fee Claims as of the Effective Date (subject to the limitations set forth in the Post-Sale Approved Budget).

146.    "**Proof of Claim**" means a written Proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

147.    "**Purchase Agreements**" means the Job Board APA, the MGS APA, and MMP APA.

148.    "**Purchased Assets**" has the respective meaning ascribed to such term in the applicable Purchase Agreement.

149.    "**Qualified Bid**" has the meaning ascribed to such term in the Bidding Procedures.

150.    "**Qualified Bidder**" has the meaning ascribed to such term in the Bidding Procedures.

151.    "**Rejection Damages Bar Date**" means the deadline to file a Proof of Claim for damages relating to the rejection of an Executory Contract, which, pursuant to the Bar Date Order,

13

is the later of (a) the General Bar Date or Government Bar Date, as applicable, and (b) thirty days after service of any Order authorizing the rejection of such contract or lease.

152. "**Related Parties**" means, with respect to an Entity, each of, and in each case in its capacity as such, such Entity's current and former Affiliates, and such Entity's and such Affiliates' current and former directors, managers, officers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, and Professionals (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), and any such Person's or Entity's respective heirs, executors, estates, and nominees.

153. "**Released Parties**" means each of the following in their capacity as such: (i) the Debtors; (ii) the Prepetition Secured Parties; (iii) each current and former Affiliate of each Entity in clauses (i) and (ii); (iv) the Committee; and (v) the Related Parties of each of the foregoing.

154. "**Releasing Parties**" means each of the following in their capacity as such: (i) the Debtors; (ii) the Prepetition Secured Parties; (iii) the Committee; (iv) each Holder of a Claim who votes to accept the Combined Plan and Disclosure Statement, abstains from voting on the Combined Plan and Disclosure Statement or votes to reject the Combined Plan and Disclosure Statement and, in each case, affirmatively opts in to the releases provided in the Combined Plan and Disclosure Statement; (v) each current and former Affiliate of each Entity in clause (i) through (iv) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Combined Plan and Disclosure Statement under applicable non bankruptcy law; and (vi) each Related Party of each Entity in clause (i) through (iv) for which such Affiliate or Entity is legally entitled to bind such Related Party to the releases contained in the Combined Plan and Disclosure Statement under applicable non bankruptcy law.

155. "**RL&F**" means Richards, Layton & Finger, P.A.

156. "**Reserves**" means (i) the Claims Reserve; (ii) Liquidation Trust Reserve; and (iii) the Professional Fee Reserve.

157. "**Reserve Deficiency**" means the difference between the Cash on Hand on the Effective Date and the amount needed to fully fund the Reserves.

158. "**Reserve Deficiency Payment**" means the amount funded, if any, from the Prepetition Notes Reserve to satisfy the Reserve Deficiency.

159. "**Residual Cash on Hand**" means the Cash on Hand, if any, remaining on the Effective Date after the funding of the Reserves.

160. "**Residual Reserve Amount**" means the amount of Cash remaining in the Reserves, if any, after payment in full in Cash of all Allowed Administrative Expense Claims,

Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims, Allowed Professional Fee Claims, and Liquidation Trust Expenses.

161.    "**Sales**" means the sales of the MGS Business, the MMP Business, and the Job Board Business.

162.    "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors on July 15, 2025 [Docket Nos. 156–175] and any and all amendments and modifications thereto.

163.    "**Secured Claim**" means a Claim, (a) that is secured by a Lien on property in which the Estates have an interest, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, or a Claim that is subject to a valid right of the Creditor of setoff against amounts owed to the Debtors; (b) to the extent of the value of the Holder's interest in the Estates' interest in such property or to the extent of the amount subject to a valid right of setoff, as applicable; and (c) the amount of which (i) is undisputed by the Debtors or (ii) if disputed by the Debtors, such dispute is settled by written agreement between the Debtors or the Liquidation Trustee and the Holder of such Claim or determined, resolved, or adjudicated by Final Order.

164.    "**Successful Bid**" means, as applicable, the Successful Bidder's bid at the Auction.

165.    "**Successful Bidder**" means the Qualified Bidder, as applicable, with the highest or otherwise best offer among the Qualified Bids submitted at the Auction.

166.    "**Unclaimed Distribution Deadline**" means ninety calendar days from the date the Liquidation Trust makes a Distribution of Cash or other property under the Combined Plan and Disclosure Statement to a Holder of an Allowed Claim.

167.    "**Unclaimed Distribution**" means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

168.    "**Unimpaired**" means not Impaired.

169.    "**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

170.    "**Voting Deadline**" means that date and time defined as the voting deadline in Article VI.A.9 of the Combined Plan and Disclosure Statement.

171.    "**Waterfall Recovery**" has the meaning set forth in Article III.C.6.

**B.**    <u>**Interpretation; Application of Definitions and Rules of Construction**</u>

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter.  Unless otherwise specified, all section, article, schedule or exhibit references in the Combined Plan and

Disclosure Statement are to the respective section in, Article of, schedule to, or exhibit to the Combined Plan and Disclosure Statement.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection or clause contained in the Combined Plan and Disclosure Statement.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Combined Plan and Disclosure Statement.  A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.  The headings in the Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions of the Combined Plan and Disclosure Statement.

## III.  BACKGROUND AND DISCLOSURES

On the Petition Date, the Debtors each Filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code commencing these Chapter 11 Cases.  After the Petition Date, the Debtors remained in possession of their Assets and management of their business as Debtors-in-Possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  On July 2, 2025, the U.S. Trustee appointed the Committee.

### A.      General Background

Below is a summary of the Debtors' business, organizational and capital structure, the prepetition marketing and sale efforts, and the events leading to the Debtors' Chapter 11 Cases.[3]  In addition, below is a summary of certain of the key events in the Chapter 11 Cases.

### 1.      The Debtors' Business

For over 25 years, CareerBuilder was a leading global talent marketplace providing innovative solutions to help employers find, hire, and onboard great people, and help job seekers build new skills and progressive careers as the modern world of work changed. For over 30 years, Monster was a global leader in connecting the right people to the right jobs and aimed to make every workplace happier and more productive by transforming the way employers find talent and candidates find careers.

In September of 2024, CareerBuilder and Monster were combined through a series of contribution and sale transactions (the "**Business Combination**") with the intention of creating a single source for employers and job seekers to navigate the talent search/employment landscape. The hallmarks of the two brands, utilizing advanced and proprietary technology to provide employers with the ability to manage and source candidates, job seekers to post resumes and search for employment opportunities, and the forum for both parties to connect, together with the apparent synergies, were a driving force in motivating the companies to combine. The resulting Business Combination brought their respective job-board businesses and other businesses under one roof.

---

[3]    Further information regarding such matters can be found in the First Day Declaration, which is incorporated by reference herein.

16

Prior to the Sales (as described in more detail herein), the Company had three primary businesses:

1.  <u>The MMP Business</u>, which is comprised of www.military.com (which connects service members, military families, and veterans to all the benefits of service) and www.fastweb.com (which provides online resources for paying and preparing for college);

2.  <u>The MGS Business</u>, which provides human capital management software services to state and federal governments; and

3.  <u>The Job Board Business</u>, which provides a talent marketplace connecting employers with job candidates.

## 2.    **Organizational Structure**

Zen JV, LLC ("**Zen**") is the resulting joint venture formed in the Business Combination, which combined Monster, acquired in 2016 by Randstad Holding NV, with CareerBuilder, a portfolio company majority-owned by funds managed by affiliates of Apollo Global Management, Inc. Zen is the ultimate parent of the Company with 51% of the Class A LLC units of Zen held by Camaro Holdings, LLC, and the remaining 49% held by Randstad MWW Inc. Zen directly and indirectly owns the Company's CareerBuilder entities on one side of the corporate enterprise and the Company's Monster entities on the other side.

## 3.    **Prepetition Debt Structure**

As of the Petition Date, the Debtors had approximately $392.5 million in prepetition total debt obligations, which is summarized as follows:

|  | **Approx. Amount Outstanding** | **Maturity Date** |
|---|---|---|
| **CareerBuilder Term Loan Facility** | $135.2 million | July 31, 2026 |
| **Prepetition Notes** | $19.2 million | July 31, 2026 |
|  | $206.9 million | Sept. 16, 2029 |
| *Total Funded Debt* | **$361.3 million** | |
| *General Unsecured Debt* | **$31.2 million** | |
| *Total Debt* | **$392.5 million** | |

a.    <u>Prepetition Term Loan Credit Agreement</u>

Debtor CareerBuilder, LLC is the borrower under the Prepetition Term Loan Credit Agreement and term loan credit facility (the "**Prepetition Term Loan Facility**"), which was set to mature on July 31, 2026, absent the filing of these Chapter 11 Cases. The Prepetition Term Loan Secured Obligations are guaranteed by the Prepetition Term Loan Guarantors and secured by substantially all Assets of the Prepetition Term Loan Parties, subject to customary exceptions. As of May 31, 2025, the amount outstanding under the Prepetition Term Loan Facility is approximately $135.2 million.

17

b.      Prepetition Notes

Zen is the issuer under the Prepetition Notes, which were set to mature on July 31, 2026 and September 16, 2029, absent the filing of these Chapter 11 Cases.  The Prepetition Notes Obligations are guaranteed by the Prepetition Notes Guarantors and are secured by substantially all Assets of the Prepetition Notes Loan Parties, subject to customary exceptions.  As of May 31, 2025, the amount outstanding under the Prepetition Notes is approximately $226.1 million.

**B.      Events Leading up to the Chapter 11 Filing**

As expected, when combining two large standalone companies, time is needed to achieve the necessary synergies. Unfortunately, after the Business Combination, the Company faced significant challenges that made it unable to achieve the various synergies needed to position it to withstand macroeconomic headwinds and resulting liquidity issues. Specifically, the Company faced an uncertain economic environment with reduced corporate hiring and the inability to evolve at the pace necessary to combat the competitive landscape with the rise of job aggregators and AI driven hiring tools. Indeed, the Company operated in a highly competitive market that is technologically complex and requires the ability to adapt quickly to an evolving employment landscape. The industry-specific headwinds led to the Company achieving lower revenues than were needed to sustain the post-Business Combination business plan.  While the Company's performance improved in recent months before the Petition Date, the slower-than-expected turnaround strained the Company's liquidity and required it to explore strategic alternatives.

The operational challenges in combining two companies combined with negative market trends that eroded earnings and liquidity caused the Company to be in urgent need of liquidity a few months after the closing of the Business Combination.  In February 2025, the Company's liquidity forecast reflected an immediate need for a capital infusion to pay for ongoing operations. With limited options for a lending source, particularly due to having limited unencumbered Assets to offer as security interests and timing needs, the Company was able to negotiate receipt of incremental funding of approximately $20 million through additional loans from the Prepetition Additional Noteholders. Importantly, the rescue financing provided the Company with a runway to implement certain strategic alternatives to address its financial distress.

A condition of the February 2025 financing was for the Company to launch a sale process for its non-core Assets. In early April 2025, the Company engaged PJT to conduct an extensive marketing and sale process for the sale of the MMP Business and the MGS Business.  In late May, as the Debtors' liquidity deteriorated and could no longer support an out-of-court sale process, PJT was instructed to solicit interested parties to bid to become a stalking horse in a court-supervised auction pursuant to section 363 of the Bankruptcy Code.  At such time, PJT was also instructed to reach out to potential strategic buyers for the Job Board Business.  In total, prior to the filing of these Chapter 11 Cases, PJT contacted more than 185 potential purchasers regarding the Debtors' three businesses.

***The MMP Business***.  Starting on April 4, 2025, PJT began marketing the MMP Business for sale and contacted 74 potential purchasers, consisting of 23 strategic buyers, 51 financial sponsors, and 1 nonprofit.  Twenty-six of those parties (4 strategics and 22 financial

sponsors) signed a non-disclosure agreement ("**NDA**"). PJT then distributed materials regarding the MMP Business to such parties under NDA on April 18, 2025. In addition to the materials distributed, on April 29, 2025, PJT opened an electronic data room populated with due diligence materials for the MMP Business and distributed a process letter to the interested bidders that set forth a preliminary bid deadline of May 22, 2025. PJT received initial non-binding indications of interests for the MMP Business from one strategic bidder and four financial sponsors.

*The MGS Business*. Also in April 2025, PJT began marketing the MGS Business for sale and contacted 121 potential purchasers, consisting of 39 strategic buyers and 82 financial sponsors. Sixty-two of those parties (16 strategics and 46 financial sponsors) signed an NDA. PJT then distributed materials regarding the MGS Business to such parties under NDA on May 5, 2025. During the week of May 12, 2025, PJT opened an electronic data room populated with due diligence materials for the MGS Business and distributed a process letter to the interested bidders that set forth a preliminary bid deadline of June 4, 2025.

*The Job Board Business*. Starting on May 30, 2025, PJT began marketing the Job Board Business for sale and contacted and solicited interest from 10 potential purchasers. PJT facilitated providing responsive diligence and coordinating calls between the Debtors and the parties that expressed interest. PJT requested that parties submit bids by June 10, 2025.

*Stalking Horse Bids*. PJT received non-binding and preliminary stalking horse bids for the MMP Business (3 stalking horse bids), MGS Business (2 stalking horse bids), and Job Board Business (4 stalking horse bids). Through the second and third weeks of June, PJT and Debtors' counsel continued to support diligence and negotiate stalking horse agreements.

In the end, only three parties submitted offers that met the criteria that the Debtors and their advisors determined necessary, including (a) the form and amount of consideration offered, and (b) deal certainty, including with respect to any conditions placed on the bid and funding ability. Based on this evaluation, the Debtors ultimately agreed to enter into stalking horse purchase agreements with (i) Valnet Inc. ("**Valnet**") for the sale of the MMP Business for $22.5 million in cash, (ii) Valsoft Corporation ("**Valsoft**") for the sale of the MGS Business for $6 million in cash, and (iii) JobGet, Inc. ("**JobGet**") for the sale of the Job Board Business for $7 million in cash, in each case, subject to the terms of such agreements (the "**Stalking Horse Agreements**" or the "**Stalking Horse Bids**").

In addition to the Stalking Horse Agreements, the Debtors were also able to obtain a priming, senior secured Debtor-in-Possession financing facility with JMB Capital Partners Lending, LLC (the "**DIP Lender**") in an amount up to $20 million (the "**JMB DIP Facility**"). In connection with the JMB DIP Facility, the Prepetition Secured Parties reached an agreement (the "**Lender Consent**") with the Debtors and the DIP Lender that provided for the consensual priming of the liens and claims of Prepetition Secured Parties. Without the Lender Consent, and the support of the Debtors' other key stakeholders, it would not have been possible to consummate the Sales and preserve the Debtors' workforce and customer base.

**C.**     **The Chapter 11 Cases**

The following is a brief description of certain material events that have occurred during the Chapter 11 Cases.

**1.**     **First Day Motions and Orders**

On or shortly after the Petition Date, in addition to the voluntary petitions for relief Filed by the Debtors, the Debtors Filed a number of motions and applications seeking certain "first day" relief.  A summary of the relief obtained pursuant to the First Day Motions is set forth below:

- ***Joint Administration Motion***. Pursuant to the *Motion of Debtors for Entry of Order Directing Joint Administration of Related Chapter 11 Cases* [Docket No. 3], the Bankruptcy Court entered an Order [Docket No. 49] authorizing the joint administration of the Debtors' Chapter 11 Cases for procedural purposes only.

- ***Wages Motion.***  Pursuant to the *Motion of Debtors for Entry of Interim and Final Orders (A) Authorizing Payment of Certain Prepetition Workforce Obligations, (B) Authorizing Continuance of Workforce Programs, (C) Authorizing Payment of Withholding and Payroll-Related Taxes, (D) Authorizing Payment of Prepetition Claims Owing to Administrators, and (E) Granting Related Relief* [Docket No. 27], the Bankruptcy Court entered interim and final Orders [Docket Nos. 53 and 202] authorizing the Debtors to pay prepetition wages and compensation, and to maintain and continue workforce programs in the ordinary course.

- ***Cash Management Motion.***  Pursuant to the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Continue Operating Existing Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Waiving Certain Requirements Under Section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines, and (III) Granting Related Relief* [Docket No. 23], the Debtors obtained the entry of interim and final Orders [Docket Nos. 52 and 198] approving the Debtors' continued use of their cash management system.

- ***DIP Financing Motion***.  Pursuant to the *Motion of Debtors for Entry of Interim and Final Orders (A) Authorizing Debtors to (I) Obtain Postpetition Financing and (II) Use Cash Collateral, (B) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (C) Granting Adequate Protection, (D) Modifying Automatic Stay, (E) Scheduling Final Hearing, and (F) Granting Related Relief* [Docket No. 31], the Bankruptcy Court entered an Order granting the relief requested in the DIP Financing Motion on an interim basis by entering the Interim DIP Order on June 27, 2025 [Docket No. 56] and thereafter on a final basis by entering the Final DIP Order on July 29, 2025 [Docket No. 239].

**2.**     **Employment of Professionals and Advisors**

On the Petition Date, the Debtors filed an application [D.I. 4] to retain Omni as Claims and Noticing Agent for the Debtors. On June 27, 2025, the Court entered an order [D.I. 50] approving the Omni retention application.

On July 14, 2025, the Debtors filed applications to retain and employ the following professionals: (1) RL&F, as co-counsel to the Debtors [D.I. 147], which was approved by the Court on August 1, 2025 [D.I. 264]; (2) PJT, as investment banker to the Debtors [D.I. 146], which was approved by the Court on August 1, 2025 [D.I. 262]; and (3) AlixPartners, as financial advisor to the Debtors [D.I. 145], which was approved by the Court on August 1, 2025 [D.I. 263].

On July 15, 2025, the Debtors filed an application to retain and employ Omni, as administrative agent to the Debtors [D.I. 155], which was approved by the Court on August 1, 2025 [D.I. 265], and on July 24, 2025, the Debtors filed an application to retain and employ Latham & Watkins LLP, as bankruptcy counsel to the Debtors [D.I. 207], which was approved by the Court on August 11, 2025 [D.I. 297].

Following the Committee's formation, the Committee filed an application to retain and employ (1) Cole Schotz P.C ("**Cole Schotz**"), as counsel to the Committee [D.I. 203], which was approved by the Court on August 8, 2025 [D.I. 293] and (2) M3 Advisory Partners, LP ("**M3 Partners**") as financial advisor to the Committee [D.I. 204], which was approved by the Court on August 8, 2025 [D.I. 294].

An order establishing procedures for interim compensation and reimbursement of expenses for all retained professionals was also entered on August 1, 2025 [D.I. 258].

3.    **Postpetition Sales of Substantially All of the Debtors' Assets**

After the Petition Date, PJT resolicited all parties that it had contacted as part of its prepetition marketing efforts and received unsolicited inbounds from 26 other parties expressing interest in the MMP, MGS, and/or Job Board Businesses.

The Bidding Procedures Order set a bid deadline of July 15, 2025 (the "**Bid Deadline**").  The Debtors received 9 bids by the Bid Deadline, in addition to the 3 Stalking Horse Bids.  After reviewing the bids and consulting with the advisors to the Committee (the "**Consultation Parties**"), the Debtors determined that all 9 bids were Qualified Bids, resulting in 12 total Qualified Bids.

*Auction.* On July 17, 2025, the Debtors commenced the Auction in accordance with the Bidding Procedures to determine the highest and best bids for the Debtors' Assets. The Auction was held at the New York office of the Debtors' bankruptcy counsel, Latham & Watkins LLP, and also via Zoom. The Auction was attended in person and telephonically by, among others, representatives of the 12 Qualified Bidders and the Consultation Parties (as defined in the Bid Procedures Order).  Over the course of the Auction, the Debtors and their advisors engaged in a variety of discussions with potential bidders in an attempt to obtain the highest and best bids for the Debtors' Assets in an effort to maximize value for the benefit of all stakeholders.

*Successful Bids*. After consultation with the Consultation Parties and in an exercise of their business judgment, the Debtors determined that (i) the $27.25 million bid from Valnet was the Successful Bid with respect to the MMP Business; (ii) the $13,000,079 million bid from PartnerOne was the Successful Bid with respect to the MGS Business; and (iii) the $28.376 million bid from Bold was the Successful Bid with respect to the Job Board Business. The aggregate value of the Successful Bids yielded a total of $67 million (net of the applicable stalking horse bid protections payable), reflecting an incremental $31.7 million more than the aggregate value of the Stalking Horse Bids.

*Sale Orders*. On July 29, 2025, the Bankruptcy Court entered the (i) *Order (I) Authorizing and Approving the Debtors' Entry Into an Asset Purchase Agreement with BOLD Holdings LLC, (II) Authorizing the Sale of the Purchased Assets Free and Clear of All Encumbrances, (III) Approving the Assumption and Assignment of the Selected Assigned Contracts, and (IV) Granting Related Relief* [D.I 235]; (ii) *Order (I) Authorizing and Approving the Debtors' Entry Into an Asset Purchase Agreement with Sherrill-Lubinski, LLC and Eti-Net Inc., (II) Authorizing the Sale of the Purchased Assets Free and Clear of All Liens, Encumbrances, Claims and Interests, (III) Approving the Assumption and Assignment of the Selected Assigned Contracts, and (IV) Granting Related Relief* [D.I 236]; and (iii) *Order (I) Authorizing and Approving the Debtors' Entry Into an Asset Purchase Agreement with Valnet US, Inc., (II) Authorizing the Sale of the Purchased Assets Free and Clear of All Encumbrances, (III) Approving the Assumption and Assignment of the Selected Assigned Contracts, and (IV) Granting Related Relief* [D.I 237].

*Sale Closings*. On July 31, 2025, the Sales closed, and the Debtors filed the (i) *Notice of Closing of Sale of Job Board Business to BOLD Holdings, LLC* [D.I. 266]; (ii) *Notice of Closing of Sale of Monster Media Business to Iron Corp US Inc.* [D.I. 267]; and (iii) *Notice of Closing of Sale of Monster Government Business to Sherrill-Lubinski, LLC And Eti-Net Inc.* [D.I. 269].

4.    **The Cash Collateral Resolution**

The Debtors, the Committee, and the Prepetition Secured Parties (collectively, the "**Cash Collateral Resolution Parties**") engaged in discussions regarding a potential exit path for the Debtors from chapter 11.  As a result of these discussions, the Cash Collateral Resolution Parties reached a settlement regarding the use of Cash Collateral for the remainder of these Chapter 11 Cases (the "**Cash Collateral Resolution**"), which is memorialized in the Final DIP Order.

As more fully set forth in the Final DIP Order, the Cash Collateral Resolution contemplates, among other things, the application of certain proceeds from the Sales. Specifically, upon Payment in Full of the DIP Obligations, the Debtors agreed to (i) deposit the sum of $12,060,160 of proceeds of the Job Board Sale in an interest-bearing account for the benefit of the Prepetition Term Loan Secured Parties (the "**Prepetition Term Loan Reserve**") and (ii) deposit the sum of $21,538,799 of proceeds of the Sales in an interest-bearing account for the benefit of the Prepetition Notes Secured Parties (the "**Prepetition Notes Reserve**"). After the establishment and funding of the foregoing reserves, all of the Debtors' Cash Collateral, other than the Prepetition Term Loan Reserve, constitutes Notes Cash Collateral. Additionally, the Prepetition Notes

Secured Parties agreed on a budget to fund confirmation of a plan of liquidation in these Chapter 11 Cases using the Notes Cash Collateral and the related schedule.

**5.      Global Settlement**

Shortly after the Petition Date, the Committee commenced a thorough investigation into potential Estate Claims and Causes of Action that could be pursued for the benefit of Holders of General Unsecured Claims. That investigation focused on, among other things, (i) claims to challenge the extent, validity, and priority of the prepetition Liens asserted by the Prepetition Secured Parties, (ii) claims to recharacterize the Prepetition Secured Parties' purported Secured Claims as equity, (iii) Claims related to the Business Combination, and (iv) potential Avoidance Actions against certain of the Prepetition Secured Parties related to various intercompany agreements with the Debtors. The Committee's investigation did not reveal any colorable Claims that would, in the Committee's view, materially improve recoveries of Holders of General Unsecured Claims. In light of the foregoing, the Debtors, the Committee, and the Prepetition Secured Parties (collectively, the "**Global Settlement Parties**") engaged in extensive, good-faith and arm's length negotiations regarding the construct of a potential global resolution. Those negotiations ultimately culminated in a settlement (the "**Global Settlement**") between the Global Settlement Parties. The Global Settlement is incorporated in the Combined Plan and Disclosure Statement and provides for materially improved treatment for Holders of General Unsecured Claims than what was provided for in the initial chapter 11 plan filed at Docket No. 305 (the "**Initial Plan**"). Specifically, the Global Settlement effectively caps the Prepetition Term Loan Secured Parties' and the Prepetition Notes Secured Parties' aggregate recoveries at $12,060,160 and $21,538,799, respectively, and preserves all remaining Estate value for the benefit of Holders of General Unsecured Claims. As outlined herein, the Global Settlement provides material value for Holders of General Unsecured Claims. More critically, however, the Global Settlement provides a runway towards confirmation of a consensual chapter 11 plan and payment in full of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims. The resolution also avoids costly litigation that, in the Committee's view, may result in the conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code. The Committee believes conversion would likely yield materially lower recoveries or no recoveries to Holders of General Unsecured Claims, and that the Global Settlement is a superior outcome to conversion of these cases. The Global Settlement contemplates, among other things, the following:

- the Committee's Challenge Deadline with respect to a Challenge against the Prepetition Secured Parties shall expire upon entry of the Conditional Approval and Procedures Order; *provided* that the Committee's Challenge Deadline shall reopen for a period of 7 days beginning on the date that the Bankruptcy Court enters an Order denying confirmation of the Combined Plan and Disclosure Statement;

- Distributions shall be made according to the Waterfall Recovery in Article III.C.6;

- the Reserves shall be funded in full on the Effective Date from Cash on Hand or, to the extent such Cash on Hand is insufficient, the Prepetition Notes Secured Parties shall fund the Reserves from the Prepetition Notes Reserve;

23

- in exchange for, among other things, the consideration being provided pursuant to the Global Settlement, the Released Parties and the Exculpated Parties shall receive the releases and exculpation set forth in Articles XII.A–C of the Combined Plan and Disclosure Statement;

- the Combined Plan and Disclosure Statement shall be in form and substance acceptable to the Debtors, the Committee and the Prepetition Notes Secured Parties and, to the extent set forth in the Final DIP Order, the Prepetition Term Loan Agent (acting at the direction of the requisite Prepetition Term Loan Lenders);

- the Committee shall select the Liquidation Trustee subject to the consent of the Debtors and the Prepetition Notes Secured Parties (not to be unreasonably withheld);

- the Liquidation Trust Agreement shall be in form and substance acceptable to the Debtors, the Committee and the Prepetition Notes Secured Parties; and

- each of the Global Settlement Parties agrees to support confirmation of the Combined Plan and Disclosure Statement, including the treatment provided to such parties therein.

The Global Settlement is an integral component of the Combined Plan and Disclosure Statement and is necessary to achieve a beneficial resolution of the Chapter 11 Cases for all parties in interest. The Combined Plan and Disclosure Statement shall be deemed to constitute a motion pursuant to Bankruptcy Rule 9019, seeking approval of the Global Settlement, and the entry of the Confirmation Order and shall constitute the Bankruptcy Court's (i) approval of such motion and each of the compromises and settlements that comprise the Global Settlement and (ii) finding that the compromises and settlements are fair and equitable, within the range of reasonableness, and in the best interests of the Debtors, their Estates, their Creditors, and other parties-in-interest.

The Debtors and the Committee believe that the Global Settlement represents a fair and reasonable settlement of all issues relating to the Chapter 11 Cases. In particular, the Global Settlement resolves potential litigation among the Global Settlement Parties, provides for the orderly wind down of the Debtors and their Estates, and provides a potential recovery to Class 5 General Unsecured Creditors. Absent the Global Settlement and the agreement by the Prepetition Notes Secured Parties to, among other things, fund the Reserves, it is unlikely that Class 5 General Unsecured Creditors would receive any recovery on account of their Claims. Accordingly, the Debtors and the Committee believe that the Global Settlement is fair, reasonable, and in the best interests of the Debtors' Estates and should be approved.

To the extent necessary, the Debtors and the Committee will demonstrate at the Confirmation Hearing that the Global Settlement meets the applicable standards and should be approved as part of the Combined Plan and Disclosure Statement.

6.    **Waterfall Recovery**

24

On or after the Effective Date, or, solely with respect to General Unsecured Claims, the date such Claim becomes Allowed (or as otherwise set forth in the Combined Plan and Disclosure Statement), and if Cash on Hand on the Effective Date **IS** sufficient to fund the Reserves in full, then the Debtors or the Liquidation Trustee, as applicable shall:

- *First*, fund the Reserves on the Effective Date in full using Cash on Hand;

- *Second*, immediately after funding the Reserves, Distribute the Prepetition Term Loan Reserve to the Prepetition Term Loan Secured Parties in accordance with Article X.I of the Combined Plan and Disclosure Statement;

- *Third*, immediately after funding the Reserves, Distribute the Prepetition Notes Reserve to the Prepetition Notes Agent; and

- *Fourth*, Distribute to Holders of Allowed General Unsecured Claims their *Pro Rata* share of the Liquidation Trust Assets.

On or after the Effective Date, or, solely with respect to General Unsecured Claims, the date such Claim becomes Allowed (or as otherwise set forth in the Combined Plan and Disclosure Statement), and if Cash on Hand on the Effective Date **IS NOT** sufficient to fund the Reserves in full, then the Debtors or the Liquidation Trustee, as applicable shall:

- *First*, fund the Reserves on the Effective Date using Cash on Hand;

- *Second*, fund the Reserve Deficiency from the Prepetition Notes Reserve;

- *Third*, immediately after funding the Reserves, Distribute the Prepetition Term Loan Reserve to the Prepetition Term Loan Secured Parties in accordance with Article X.I of the Combined Plan and Disclosure Statement;

- *Fourth*, immediately after funding the Reserves, Distribute the remaining Cash in the Prepetition Notes Reserve to the Prepetition Notes Agent;

- *Fifth*, Distribute an amount not to exceed the Reserve Deficiency Payment to the Prepetition Notes Agent; and

- *Sixth*, Distribute to Holders of Allowed General Unsecured Claims their *Pro Rata* share of the remaining Liquidation Trust Assets.

For the avoidance of doubt, in no event shall the Prepetition Notes Secured Parties or any controlled Affiliate thereof (in each case, regardless of capacity) or the Prepetition Term Loan Secured Parties receive Distributions that are greater than the amounts in the Prepetition Notes Reserve (prior to the funding of any Reserve Deficiency) or the Prepetition Term Loan Reserve, as applicable.

## 7. Claims Process and Bar Date

### a. Section 341(a) Meeting of Creditors

On July 16, 2025, the U.S. Trustee commenced the meeting of Creditors in the Chapter 11 Cases pursuant to section 341(a) of the Bankruptcy Code.

25

b.      **Schedules and Statements**

The Debtors Filed their Schedules with the Bankruptcy Court on July 16, 2025.

c.      **Bar Dates**

Pursuant to the Bar Date Order, the Bankruptcy Court established (i) September 15, 2025 at 5:00 p.m. (prevailing Eastern Time) as the General Bar Date; (ii) December 22, 2025, at 5:00 p.m. (prevailing Eastern Time) as the Governmental Bar Date; (iii) the Amended Schedules Bar Date as the later of (a) the General Bar Date or the Governmental Bar Date and (b) thirty days after a claimant is served with notice of the applicable amendment or supplement to the Schedules; and (iv) the Rejection Damages Bar Date as the later of (a) the General Bar Date or the Governmental Bar and (b) thirty days after a claimant is served with notice of an Order of the Bankruptcy Court authorizing the Debtors' rejection of the applicable Executory Contract (collectively, the "**Bar Dates**").  Notice of the Bar Dates was served on all potential Creditors of the Debtors' Estates on or before August 19, 2025.

D.      **Certain Federal Income Tax Consequences**

The confirmation and execution of the Combined Plan and Disclosure Statement may have tax consequences to Holders of Claims and Equity Interests.  The Debtors do not offer an opinion as to any federal, state, local or other tax consequences to Holders of Claims and Equity Interests as a result of the confirmation of the Combined Plan and Disclosure Statement.  All Holders of Claims and Equity Interests are urged to consult their own tax advisors with respect to the federal, state, local and foreign tax consequences of the Combined Plan and Disclosure Statement.  The Combined Plan and Disclosure Statement is not intended, and should not be construed, as legal or tax advice to any Creditor, Holder of Equity Interests or other party in interest.

E.      **Alternate Plans**

If the Combined Plan and Disclosure Statement is not confirmed, then the Debtors or any other party in interest could attempt to formulate a different plan.  The additional costs, including, among other amounts, incremental professional fees or asserted substantial contribution claims, all of which would constitute Administrative Expense Claims (subject to allowance thereof), however, may be so significant that one or more parties in interest could request that the Chapter 11 Cases be converted to chapter 7 due to the impact of these increased costs on the Debtors already limited funds. Accordingly, the Debtors believe that the Combined Plan and Disclosure Statement enables Creditors to realize the best return under the circumstances.

F.      **Best Interests Test and Liquidation Analysis**

Section 1129(a)(7) of the Bankruptcy Code requires that each Holder of an Impaired Claim or Equity Interest either (a) accept the Combined Plan and Disclosure Statement or (b) receive or retain under the Combined Plan and Disclosure Statement property of a value, as of the Effective Date, that is not less than the value such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  A hypothetical chapter 7 liquidation analysis is attached to the Combined Plan and Disclosure Statement as <u>Exhibit 1</u>.  Because the majority of

26

the Debtors' Assets have already been liquidated to Cash, the value of any Distributions if the Debtors' Chapter 11 Cases were to be converted to a case under Chapter 7 of the Bankruptcy Code would be less than the value of Distributions under the Combined Plan and Disclosure Statement. This is because conversion of the Chapter 11 Cases to chapter 7 cases would require the appointment of a chapter 7 trustee, and in turn, such chapter 7 trustee's likely retention of new professionals. The "learning curve" that the chapter 7 trustee and new professionals would be faced with comes with potential additional costs to the Estates and with a delay compared to the time of Distributions under the Combined Plan and Disclosure Statement. Furthermore, a chapter 7 trustee would be entitled to statutory fees relating to the Distributions of the already monetized Assets made to Creditors. Accordingly, a portion of the cash currently available for Distribution to Holders of Claims, including unsecured Creditors, would instead be paid to the chapter 7 trustee.

As a result, the Debtors believe that the Estates would have fewer funds to be distributed in a hypothetical chapter 7 liquidation than would be available if the Combined Plan and Disclosure Statement is confirmed, and therefore Holders of Claims in all Impaired Classes will recover less than in the hypothetical chapter 7 case. Accordingly, the Debtors believe that the "best interest" test of section 1129 of the Bankruptcy Code is satisfied.

## G.    Releases by the Debtors and Holders of Claims

The release provisions set forth in Article XII.B and C of the Combined Plan and Disclosure Statement are an integral part of the Combined Plan and Disclosure Statement and the Global Settlement.

In connection with the releases of the Released Parties provided for under the Combined Plan and Disclosure Statement, RL&F, under the oversight of the Strategic Review Committee of the board of Zen, engaged in an investigation of potential claims and Causes of Action of the Debtors, including Avoidance Actions and breach of fiduciary duty claims. Following a review of tens of thousands of documents, legal analysis and the coordinated engagement with advisors from both the Committee and the Debtors, the Debtors believe the granting of the releases is appropriate and justified by the facts and circumstances, including, that they have not identified any Causes of Action to be pursued that negates the appropriateness of the releases and given the valuable consideration being provided pursuant to the Global Settlement. In reaching their determination, the Debtors considered among other things, the probability of success on the merits, the cost to litigate any such claims, the ability to collect on any such claims and that such releases are a cornerstone of the Combined Plan and Disclosure Statement and the Global Settlement. In particular, the Debtors do not believe that the pursuit of any claims and Causes of Action against the Released Parties would result in the Holders of Allowed General Unsecured Claims receiving a recovery that is greater than the recovery currently contemplated under the Global Settlement that is embodied in the Combined Plan and Disclosure Statement. The Debtors will present evidence at the Confirmation Hearing to demonstrate the basis for and propriety of the releases.

Additionally, as discussed in Article III.C.6 and based on the results of the Committee's investigation, the Committee believes the granting of the releases is appropriate and justified by the facts and circumstances of these Chapter 11 Cases.

27

H.      **Certain Risk Factors to be Considered**

Holders of Claims and Equity Interests should read and consider carefully the risk factors below, as well as the other information set forth in the Combined Plan and Disclosure Statement, the documents delivered together with the Combined Plan and Disclosure Statement, and the documents referred to or incorporated by reference in the Combined Plan and Disclosure Statement, before voting to accept or reject the Combined Plan and Disclosure Statement. These factors should not be regarded as constituting the only risks present in connection with the Combined Plan and Disclosure Statement and its implementation.

1.      **Risk Factors that May Affect the Debtors' Ability to Consummate the Combined Plan and Disclosure Statement**

a.      The Debtors May Not Be Able to Secure Confirmation of the Combined Plan and Disclosure Statement

As is described in greater detail in Article VI.A.3 below, section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan. While, as set forth below, the Debtors believe that the Combined Plan and Disclosure Statement complies with or will comply with all such requirements, there can be no guarantee that the Bankruptcy Court will agree.

b.      Risk of Non-Occurrence of the Effective Date

Although the Debtors believe that the Effective Date will occur and may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

c.      Parties May Object to the Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. As is described in greater detail in Article VI.A.4 below, the Debtors believe that the classification of Claims and Equity Interests under the Combined Plan and Disclosure Statement complies with the requirements set forth in the Bankruptcy Code. Nevertheless, there can be no assurance the Bankruptcy Court will reach the same conclusion.

2.      **Risk Factors that May Affect Distributions Under the Combined Plan and Disclosure Statement**

The estimates of Allowed Claims and recoveries for Holders of Allowed Claims set forth in the Combined Plan and Disclosure Statement are based on various assumptions. Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual Allowed amounts of Claims may vary significantly from the estimated Claims contained in the Combined Plan and Disclosure Statement. Moreover, the Debtors cannot determine with any certainty at this time the number or amount of Claims that will ultimately be Allowed. In particular, while the Debtors expect that the Reserves will be sufficient to satisfy the Claims and

28

other amounts payable from such Reserves, there can be no guarantee that such Reserves will be sufficient, particularly given that, as of the anticipated Confirmation Date, the Governmental Bar Date will not have passed and no deadline to assert post-petition Administrative Expense Claims will have been set.  Moreover, not all Bar Dates have passed and the Debtors have not completed an analysis of asserted Claims and thus cannot determine with any certainty at this time the ultimate asserted amount of all Claims, how long it will take the Liquidation Trustee to reconcile such Claims and make Distributions on account of Allowed Claims.  Such differences may materially and adversely affect, among other things, the recoveries to Holders of Allowed Claims under the Combined Plan and Disclosure Statement.

## IV.  TREATMENT OF UNCLASSIFIED CLAIMS

### A.    Administrative Expense Claims

Requests for Administrative Expense Claims must be Filed by no later than the applicable Administrative Expense Bar Date.  On the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Administrative Expense Claim shall receive payment in full in Cash of the Allowed amount of such Claim (as determined by settlement or Final Order of the Bankruptcy Court) or such other treatment as may be agreed upon by such Holder of an Allowed Administrative Expense Claim on the Effective Date.

### B.    Professional Fee Claims

As soon as practicable after the Confirmation Date and not later than the Effective Date, the Debtors shall establish and fund the Professional Fee Reserve.  Funds held in the Professional Fee Reserve shall not be considered property of the Estates or property of the Liquidation Trust.  The Professional Fee Reserve shall be maintained in trust solely for the Professionals and for no other Person until all Professional Fee Claims Allowed by the Bankruptcy Court have been paid in full.  Professional Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by order of the Bankruptcy Court (i) within three Business Days of the date upon which an order relating to any such Allowed Professional Fee Claim is entered or (ii) on such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Fee Claim and the Debtors or the Liquidation Trust, as applicable.  Absent the consent of the Prepetition Notes Secured Parties, in no event shall the aggregate amount of Allowed Professional Fee Claims for the Committee's Professionals exceed the Committee Professional Fee Cap.  To the extent funds held in the Professional Fee Reserve are insufficient to satisfy the amount of Allowed Professional Fee Claims owing to the Debtors' Professionals, such Professionals shall have an Allowed Administrative Expense Claim for any such deficiency, subject to, as applicable and to the extent within the scope of the Post-Sale Approved Budget, the limitations set forth in the Post-Sale Approved Budget. In the event there are amounts remaining in the Professional Fee Reserve after the payment of Allowed Professional Fee Claims such amounts will be subject to the Waterfall Recovery in Article III.C.6.

### C.    Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim, if any, shall receive payment in full in Cash of the Allowed amount of such Claim (as determined by settlement or Final Order of the

29

Bankruptcy Court) on the Effective Date or as soon thereafter as practicable, or other treatment as may be agreed upon by such Holder of an Allowed Priority Tax Claim.

**D.** **Payment of Statutory Fees**

Statutory Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Debtors and the Liquidation Trust shall be jointly and severally liable to pay any and all Statutory Fees when due and payable. The Debtors shall file all monthly operating reports relating to the time period prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, each of the Debtors and the Liquidation Trust shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each of the Debtors and the Liquidation Trust, as applicable, shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Proof of Claim in the cases and shall not be treated as providing any release under the Combined Plan and Disclosure Statement.

## V. SUMMARY OF TREATMENT OF CLAIMS AND ESTIMATED RECOVERIES

The following chart provides a summary of treatment of each Class of Claims and Equity Interests (other than Administrative Expense Claims and Priority Tax Claims) and an estimate of the recoveries of each Class.[4] The treatment provided in this chart is for informational purposes only and is qualified in its entirety by Article VII of the Combined Plan and Disclosure Statement.

| Class | Estimated Allowed Claims and Equity Interests | Treatment / Voting Status | Estimated Distributable Value[5] | Estimated Recovery to Holders of Allowed Claims and Equity Interests[6] |
|---|---|---|---|---|
| Class 1 – Other Priority Claims | $0.3 | Unimpaired / Deemed to Accept | $0.3 | 100% |

---

[4]  The amounts represent estimated Allowed Claims, and do not represent amounts actually asserted by the Creditors in Proofs of Claim or otherwise. The Debtors have not completed their analysis of Claims in the Chapter 11 Cases and objections, if any, to such Claims have not been fully litigated. Therefore, there can be no assurances of the exact amount of the Allowed Claims at this time. Rather, the actual amount of the Allowed Claims may be more or less than estimated.

[5]  The estimated value of distributable Assets is based upon several factors, including, without limitation, the ultimate amount of Allowed Claims that are senior in priority to Allowed General Unsecured Claims and the amount of Liquidation Trust Expenses. Thus, the actual value of distributable Assets may be higher or lower than projected herein.

[6]  The estimated percentage recovery is based upon, among other things, an estimate of the Allowed Claims in the Chapter 11 Cases. As set forth above, the actual amount of the Allowed Claims may be more or less than estimated. Thus, the actual recoveries may be higher or lower than projected herein depending upon, among other things, the amounts and priorities of Claims that are actually Allowed by the Bankruptcy Court.

| Class | Estimated Allowed Claims and Equity Interests | Treatment / Voting Status | Estimated Distributable Value[5] | Estimated Recovery to Holders of Allowed Claims and Equity Interests[6] |
|---|---|---|---|---|
| Class 2 – Other Secured Claims | $0.05 | Unimpaired / Deemed to Accept | $0.05 | 100% |
| Class 3 – Prepetition Term Loan Claims | $135.4 | Impaired / Entitled to Vote | $12.1 | 8.9% |
| Class 4 – Prepetition Notes Claims | $227.5 | Impaired / Entitled to Vote | $21.5 | 9.5% |
| Class 5 – General Unsecured Claims | $30.8 | Impaired / Entitled to Vote | $0.0-$3.0 | 0-9.7% |
| Class 6 – Intercompany Claims | $356 | Impaired / Deemed to Reject | $0.00 | 0% |
| Class 7 – Equity Interests | N/A | Impaired / Deemed to Reject | $0.00 | 0% |

## VI. CONFIRMATION AND VOTING PROCEDURES

### A. Confirmation Procedure

#### 1. Disclosure Statement Hearing

On September 4, 2025, the Bankruptcy Court entered an Order [Docket No. 335] (the "**Conditional Approval and Procedures Order**") conditionally approving the Combined Plan and Disclosure Statement for solicitation purposes only and authorizing the Debtors to solicit the Combined Plan and Disclosure Statement. The Confirmation Hearing has been scheduled for **October 7, 2025 at 1:00 p.m. (prevailing Eastern Time)** to consider (a) final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (b) confirmation of the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned from time to time by the Debtors without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court.

#### 2. Procedure for Objections

Any objection to final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or confirmation of the Combined Plan and Disclosure Statement must be made in writing and Filed with the Bankruptcy Court by no later than **October 1, 2025 at 12:00 p.m. (prevailing Eastern Time)** and be served on the following parties: (a) counsel to the Debtors: (i) Latham & Watkins

31

LLP, (i) 1271 Avenue of the Americas, New York, New York 10020, Attn: Ray C. Schrock (ray.schrock@lw.com) and Candace M. Arthur (candace.arthur@lw.com) and 330 North Wabash Avenue, Suite 2800 Chicago, IL 60611, Attn: Jonathan Gordon (jonathan.gordon@lw.com), and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Daniel J. DeFranceschi (defranceschi@rlf.com) and Zachary I. Shapiro (shapiro@rlf.com); (b) counsel to the Prepetition Term Loan Agent, Seward & Kissel LLP, One Battery Park Plaza, New York, NY 1000, Attn: Ronald A. Hewitt (hewitt@sewkis.com); (c) counsel to the Required Prepetition Term Loan Lenders, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10022, Attn: Adam C. Harris (adam.harris@srz.com); (d) counsel to the Prepetition Noteholders, Jones Day, 1221 Peachtree Street, N.E., Suite 400, Atlanta, Georgia 30361, Attn: Daniel J. Merrett (dmerrett@jonesday.com); (e) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Linda J. Casey (Linda.Casey@usdoj.gov). **Unless an objection is timely Filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.**

### 3.  Requirements for Confirmation

The Bankruptcy Court will confirm the Combined Plan and Disclosure Statement only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code.  Among the requirements for confirmation in the Chapter 11 Cases is that the Combined Plan and Disclosure Statement be:  (i) accepted by all Impaired Classes of Claims and Equity Interests or, if rejected by an Impaired Class, that the Combined Plan and Disclosure Statement "does not discriminate unfairly" against, and is "fair and equitable" with respect to, such Class; and (ii) feasible.  The Bankruptcy Court must also find that:

a.    the Combined Plan and Disclosure Statement has classified Claims and Equity Interests in a permissible manner;

b.    the Combined Plan and Disclosure Statement complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and

c.    the Combined Plan and Disclosure Statement has been proposed in good faith.

The Debtors believe that the Combined Plan and Disclosure Statement complies, or will comply, with all such requirements.

### 4.  Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code requires the Combined Plan and Disclosure Statement to place a Claim or Equity Interest in a particular Class only if such Claim or Equity Interest is substantially similar to the other Claims or Equity Interests in such class.  The Combined Plan and Disclosure Statement creates separate Classes to deal respectively with Secured Claims, General Unsecured Claims and Equity Interests.  The Debtors believe that the Combined Plan and Disclosure Statement's classifications place substantially similar Claims or Equity Interests in the same Class and thus, meet the requirements of section 1122 of the Bankruptcy Code.

5.      **Impaired Claims or Equity Interests**

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes Impaired by the Combined Plan and Disclosure Statement and receiving a payment or Distribution under the Combined Plan and Disclosure Statement may vote on the Combined Plan and Disclosure Statement.  Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be Impaired if the Combined Plan and Disclosure Statement alters the legal, equitable or contractual rights of the Holders of such Claims or Equity Interests treated in such Class.  The Holders of Claims not Impaired by the Combined Plan and Disclosure Statement are deemed to accept the Combined Plan and Disclosure Statement and do not have the right to vote on the Combined Plan and Disclosure Statement.  The Holders of Claims or Equity Interests in any Class which will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote.  Finally, the Holders of Claims or Equity Interests whose Claims or Equity Interests are not classified under the Combined Plan and Disclosure Statement are not entitled to vote on the Combined Plan and Disclosure Statement.

6.      **Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Combined Plan and Disclosure Statement).  Because the Combined Plan and Disclosure Statement proposes a liquidation or other disposition of all of the Debtors' Assets, for purposes of this test, the Debtors have analyzed the ability of the Debtors and Liquidation Trust, as applicable, to meet their respective obligations under the Combined Plan and Disclosure Statement.  Based on the Debtors' analysis to date, the Debtors expect that the Debtors and the Liquidation Trust will have sufficient Assets to accomplish their respective obligations under the Combined Plan and Disclosure Statement.  Specifically, the Debtors believe that the contemplated structure of the Combined Plan and Disclosure Statement, which requires the funding of Reserves from Cash on Hand as of the Effective Date and, to the extent such Cash on Hand is insufficient, the Prepetition Notes Reserve, the Debtors expect that both the Debtors and Liquidation Trust, as applicable, will have sufficient liquidity and/or access to Assets to make any required Distributions and to facilitate an orderly wind-down of the Debtors and the Estates. Therefore, the Debtors believe that the liquidation pursuant to the Combined Plan and Disclosure Statement will meet the feasibility requirements of the Bankruptcy Code.

7.      **Eligibility to Vote on the Combined Plan and Disclosure Statement**

Unless otherwise ordered by the Bankruptcy Court, only Holders of Allowed Claims in Classes 3, 4, and 5 may vote on the Combined Plan and Disclosure Statement.  Further, subject to the tabulation procedures that were approved by the Conditional Approval and Procedures Order, in order to vote on the Combined Plan and Disclosure Statement, you must hold an Allowed Claim in Class 3, 4, and 5 or be the Holder of a Claim that has been temporarily Allowed for voting purposes only pursuant to the approved tabulation procedures or under Bankruptcy Rule 3018(a).

8.      **Confirmation Hearing Notice**

All Holders of Allowed Claims in Classes 3, 4, and 5 will receive (i) notice of the Confirmation Hearing on the Combined Plan and Disclosure Statement (the "**Confirmation Hearing Notice**") (ii) the Confirmation Order; (iii) a QR code that provides electronic access to the Debtors' website page containing the Combined Plan and Disclosure Statement; (iv) a letter from the Committee recommending that the Holders of General Unsecured Claims vote to accept the Combined Plan and Disclosure Statement; and (v) an appropriate Ballot with a pre-addressed stamped return envelope.  All other Creditors and parties in interest not entitled to vote on the Combined Plan and Disclosure Statement will only receive the Confirmation Hearing Notice and the applicable Notice of Non-Voting Status, which includes a QR code that provides electronic access to the Debtors' website page containing the Combined Plan and Disclosure Statement.

9.      **Procedure/Voting Deadlines**

In order for your Ballot to count, you must (1) complete, date, and properly execute the Ballot and (2) properly deliver the Ballot to the Claims and Noticing Agent by either (a) mailing the Ballot to the Claims and Noticing Agent at the following address: Zen JV, LLC  Ballot Processing Center, c/o Omni Agent Solutions 5955 De Soto Ave., Suite 100, Woodland Hills, California 91367; or (b) uploading the Ballot on the Claims and Noticing Agent's website at https://omniagentsolutions.com/CareerBuilderMonster-Ballots.

Ballots sent by e-mail or facsimile transmission are not permitted and will not be counted.

Ballots must be submitted electronically, or the Claims and Noticing Agent must actually receive physical, original Ballots by mail or overnight delivery, on or before **October 1, 2025 at 4:00 p.m. (prevailing Eastern Time)** (the "**Voting Deadline**").  Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, you may not change your vote once a Ballot is submitted electronically or the Claims and Noticing Agent receives your original paper Ballot.

Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, any Ballot that is timely and properly submitted electronically or received physically will be counted and will be deemed to be cast as an acceptance, rejection or abstention, as the case may be, of the Combined Plan and Disclosure Statement.

10.     **Acceptance of the Combined Plan and Disclosure Statement**

As a Creditor, your acceptance of the Combined Plan and Disclosure Statement is important.  In order for the Combined Plan and Disclosure Statement to be accepted by an Impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Combined Plan and Disclosure Statement.  At least one Impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Combined Plan and Disclosure Statement.  The Debtors urge that you vote to accept the Combined Plan and Disclosure Statement.  **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY RETURN THE BALLOT.  PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND, IF NECESSARY, LEGIBLY**

34

**IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.**

> 11.    <u>**Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes**</u>

Any Class of Claims or Equity Interests that does not contain, as of the date of commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Combined Plan and Disclosure Statement for all purposes, including for purposes of determining acceptance of the Combined Plan and Disclosure Statement by such Class under section 1129(a)(8) of the Bankruptcy Code.  If a Class contains Claims or Equity Interests eligible to vote and no Holders of Claims or Equity Interests eligible to vote in such Class vote to accept or reject the Combined Plan and Disclosure Statement, the Holders of such Claims or Equity Interests in such Class shall be deemed to have accepted the Combined Plan and Disclosure Statement pursuant to section 1129(a)(8) of the Bankruptcy Code.

**B.    <u>Bar Dates for Professional Fee Claims</u>**

All requests for compensation or reimbursement of Professionals retained in the Chapter 11 Cases for services performed and expenses incurred prior to the Effective Date shall be Filed and served on: (a) counsel to the Debtors: (i) Latham & Watkins LLP, (i) 1271 Avenue of the Americas, New York, New York 10020, Attn: Ray C. Schrock (ray.schrock@lw.com) and Candace M. Arthur (candace.arthur@lw.com) and 330 North Wabash Avenue, Suite 2800 Chicago, IL 60611, Attn: Jonathan Gordon (jonathan.gordon@lw.com), and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Daniel J. DeFranceschi (defranceschi@rlf.com) and Zachary I. Shapiro (shapiro@rlf.com); (b) counsel to the Prepetition Term Loan Agent, Seward & Kissel LLP, One Battery Park Plaza, New York, NY 1000, Attn: Ronald A. Hewitt (hewitt@sewkis.com); (c) counsel to the Required Prepetition Term Loan Lenders, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10022, Attn: Adam C. Harris (adam.harris@srz.com); (d) counsel to the Prepetition Noteholders, Jones Day, 1221 Peachtree Street, N.E., Suite 400, Atlanta, Georgia 30361, Attn: Daniel J. Merrett (dmerrett@jonesday.com); (e) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Linda J. Casey (Linda.Casey@usdoj.gov); and (f) such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other Order of the Bankruptcy Court, by no later than forty-five days after the Effective Date.

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and Professionals may be employed and paid in the ordinary course of business without any further notice to, or action, Order, or approval of, the Bankruptcy Court.

**VII.    <u>CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS</u>**

Claims and Equity Interests (other than Administrative Expense Claims and Priority Tax Claim) are classified for all purposes, including voting, confirmation and Distribution pursuant to the Combined Plan and Disclosure Statement, as follows:

35

| Class | Type | Status under Plan | Voting Status |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Prepetition Term Loan Claims | Impaired | Entitled to Vote |
| 4 | Prepetition Notes Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Impaired | Deemed to Reject |
| 7 | Equity Interests | Impaired | Deemed to Reject |

## VIII.  TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    Treatment of Claims

#### 1.    Class 1 – Other Priority Claims

##### a.    Classification

Class 1 consists of Other Priority Claims.

##### b.    Treatment

On the Effective Date or as soon thereafter as is reasonably practical, or on the date such Claim becomes an Allowed Other Priority Claim or as soon thereafter as is reasonably practical, each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash of the Allowed amount of such Claim (as determined by settlement or Final Order of the Bankruptcy Court) or such other treatment as may be agreed upon by such Holder and the Debtors.

##### c.    Impairment and Voting

Class 1 is Unimpaired by the Combined Plan and Disclosure Statement.  Holders of Allowed Other Priority Claims are deemed to have accepted the Combined Plan and Disclosure Statement and therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

#### 2.    Class 2 – Other Secured Claims

##### a.    Classification

Class 2 consists of all Other Secured Claims.

RLF1 33726890v.1

b.        **Treatment**

On the Effective Date or as soon thereafter as is reasonably practical, or on the date such Claim becomes an Allowed Other Secured Claim or as soon thereafter as is reasonably practical, each Holder of an Allowed Other Secured Claim shall receive either (a) such treatment as such Holder agrees, or (b) at the Debtors' option (i) payment in full in Cash of the Allowed Amount of such Other Secured Claim (as determined by settlement or Final Order of the Bankruptcy Court), or (ii) treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

c.        **Impairment and Voting**

Class 2 is Unimpaired by the Combined Plan and Disclosure Statement.  Holders of Class 2 Other Secured Claims are deemed to have accepted the Combined Plan and Disclosure Statement and therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

3.        **Class 3 – Prepetition Term Loan Claims**

a.        **Classification**

Class 3 consists of the Prepetition Term Loan Claims.

b.        **Treatment**

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Prepetition Term Loan Claim has agreed to less favorable treatment of such Claim, each such Holder shall receive its *Pro Rata* share of the Cash in the Prepetition Term Loan Reserve pursuant to the Waterfall Recovery.

c.        **Impairment and Voting**

Class 3 is Impaired by the Combined Plan and Disclosure Statement.  Holders of Class 3 Prepetition Term Loan Claims are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

4.        **Class 4 –Prepetition Notes Claims**

a.        **Classification**

Class 4 consists of the Prepetition Notes Claims.

b.        **Treatment**

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Prepetition Notes Claim has agreed to less favorable treatment of such Claim, the Debtors or the Liquidation Trust, as applicable, shall transfer the Prepetition Notes Recovery Amount to the Prepetition Notes Agent for distribution to the Prepetition

37

Noteholders on account of the Prepetition Notes Obligations in accordance with the terms of the Prepetition Notes.

      **c.**      **Impairment and Voting**

Class 4 is Impaired. Holders of Allowed Prepetition Notes Claims in Class 4 are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

**5.**      **Class 5 – General Unsecured Claims**

      **a.**      **Classification**

Class 5 consists of General Unsecured Claims.

      **b.**      **Treatment**

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim has agreed to less favorable treatment of such Claim, each such Holder of an Allowed General Unsecured Claim shall receive its *Pro Rata* share of the Liquidation Trust Assets pursuant to the Waterfall Recovery.

      **c.**      **Impairment and Voting**

Class 5 is Impaired. Allowed General Unsecured Claims in Class 5 are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

**6.**      **Class 6 – Intercompany Claims**

      **a.**      **Classification**

Class 6 consists of the Intercompany Claims.

      **b.**      **Treatment**

On the Effective Date, all Intercompany Claims shall be cancelled and released without any distribution or retention of any property on account of such Intercompany Claims.

      **c.**      **Impairment and Voting**

Class 6 is Impaired. Holders of Intercompany Claims in Class 6 are deemed to have rejected the Combined Plan and Disclosure Statement and therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

**7.**      **Class 7 – Equity Interests**

      **a.**      **Classification**

Class 7 consists of the Equity Interests in the Debtors.

### b. Treatment

On the Effective Date, all Equity Interests in each of the Debtors shall be cancelled and released without any distribution or retention of any property on account of such Equity Interests.

### c. Impairment and Voting

Class 7 is Impaired. Holders of Equity Interests in Class 7 are deemed to have rejected the Combined Plan and Disclosure Statement and therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

## B. Modification of Treatment of Claims and Equity Interests

The Debtors and Liquidation Trust reserve the right to modify the treatment of any Allowed Claim or Equity Interest in any manner adverse only to the Holder of such Claim or Equity Interest at any time after the Effective Date upon the consent of the Holder of the Claim or Equity Interest whose Allowed Claim or Equity Interest, as the case may be, is being adversely affected.

## C. Cramdown and No Unfair Discrimination

In the event that any Impaired Class of Claims or Equity Interests rejects the Combined Plan and Disclosure Statement or is deemed to have rejected the Combined Plan and Disclosure Statement, the Debtors hereby request, without any delay in the occurrence of the Confirmation Hearing or Effective Date, that the Bankruptcy Court confirm the Combined Plan and Disclosure Statement in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Combined Plan and Disclosure Statement shall constitute a motion for such relief.

Confirming the Combined Plan and Disclosure Statement under such a circumstance is what is known as a "cramdown." Among other things, a "cramdown" is appropriate where the Bankruptcy Court finds that such plan does not unfairly discriminate against the objecting classes and is fair and equitable with respect to those objecting classes. A plan unfairly discriminates against a class if another class of equal rank in priority will receive greater value under the plan than the non-accepting class without reasonable justification. A plan is fair and equitable if no claim or interest junior to the objecting class shall receive or retain any claim or interest under the plan.

## IX. PROVISIONS REGARDING THE LIQUIDATION TRUST

## A. Appointment of the Liquidation Trustee

The initial Liquidation Trustee shall be selected by the Committee with the consent of the Debtors and the Prepetition Notes Secured Parties, which consent shall not be unreasonably withheld. The appointment of the Liquidation Trustee shall be approved in the Confirmation Order, and the Liquidation Trustee's duties shall commence as of the Effective Date, unless otherwise specified in the Confirmation Order. The Liquidation Trustee shall not be required to give any

bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. On the Effective Date, all Liquidation Trust Beneficiaries of the Liquidation Trust shall be deemed to have ratified and become bound by the terms and conditions of the Liquidation Trust Agreement. In the event that the Liquidation Trustee resigns or is removed, terminated, or otherwise unable to serve as Liquidation Trustee, then successors shall be appointed as set forth in the Liquidation Trust Agreement. Any successor Liquidation Trustee appointed shall be bound by and comply with the terms of the Combined Plan and Disclosure Statement, the Confirmation Order, and the Liquidation Trust Agreement.

Following the Effective Date, the Liquidation Trustee shall also be, and shall enjoy the powers of, the Debtors' authorized representative for all purposes, including, without limitation, section 1123 of the Bankruptcy Code. No further proof of such power shall be necessary or required.

**B.**      **Creation of the Liquidation Trust**

On the Effective Date, the Liquidation Trustee shall sign the Liquidation Trust Agreement and, in his, her or its capacity as Liquidation Trustee, accept all Liquidation Trust Assets on behalf of the Liquidation Trust Beneficiaries, and be authorized to obtain, collect, seek the turnover of, liquidate, and collect all of the Liquidation Trust Assets not in its possession or control. The Liquidation Trust will then be created and effective without any further action by the Bankruptcy Court or any Person as of the Effective Date. The Liquidation Trust shall be established for the primary purpose of liquidating the Liquidation Trust Assets and making Distributions in accordance with the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Liquidation Trust. The Liquidation Trust shall be the successor-in-interest to the Committee.

**C.**      **Liquidation Trust Beneficiaries**

The Holders Allowed General Unsecured Claims, and if applicable, the Holders of Allowed Prepetition Notes Claims, entitled to Distributions hereunder shall be the Liquidation Trust Beneficiaries and shall be bound by the Liquidation Trust Agreement. The interests of the Liquidation Trust Beneficiaries in the Liquidation Trust shall be uncertificated and transferable in accordance with the terms set forth in the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement.

**D.**      **Vesting and Transfer of the Liquidation Trust Assets to the Liquidation Trust**

The Liquidation Trust shall be funded with the Liquidation Trust Assets. Notwithstanding any prohibition of assignability under non-bankruptcy law, on the Effective Date and periodically thereafter if additional Liquidation Trust Assets become available, the Debtors shall be deemed, subject to the terms of the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement, to have automatically transferred to the Liquidation Trust all of their right, title, and interest in and to all of the Liquidation Trust Assets in accordance with section 1141 of the Bankruptcy Code. All such Liquidation Trust Assets shall automatically vest in the

40

Liquidation Trust free and clear of all Claims, Liens, and other interests, subject only to the Allowed Claims set forth in the Combined Plan and Disclosure Statement and the Liquidation Trust Expenses, as set forth in the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement. Thereupon, the Debtors shall have no interest in or with respect to the Liquidation Trust Assets or the Liquidation Trust.

**E.**     **Distributions from the Liquidation Trust**

Distributions from the Liquidation Trust shall be made in accordance with the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement.

**F.**     **Liquidation Trust Expenses**

The Liquidation Trust Expenses shall be paid from the Liquidation Trust Reserve.

**G.**     **Certain Powers and Duties of the Liquidation Trust and Liquidation Trustee**

**1.**     **General Powers of the Liquidation Trustee**

The Liquidation Trustee shall have, and enjoy the powers of, the Debtors' authorized representative for all purposes and shall have the power and authority to perform the acts described in the Liquidation Trust Agreement (subject to approval by the Bankruptcy Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of the Combined Plan and Disclosure Statement, including without limitation any set forth herein, *provided, however*, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidation Trustee to act as specifically authorized by any other provision of the Combined Plan and Disclosure Statement, the Liquidation Trust Agreement, and/or any applicable law, and to act in such manner as the Liquidation Trustee may deem necessary or appropriate, including, without limitation, to discharge all obligations assumed by the Liquidation Trustee or provided herein, to conserve and protect the Liquidation Trust and the Liquidation Trust Assets, or to confer on the Liquidation Trust Beneficiaries the benefits intended to be conferred upon them by the Combined Plan and Disclosure Statement. The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement and shall include the authority, power, and responsibility to: (a) receive, manage, invest, supervise, and protect Liquidation Trust Assets; (b) pay taxes or other obligations incurred by the Liquidation Trust and the Debtors; (c) issue to employees or other Persons, and/or file with the appropriate Governmental Units, applicable tax and wage returns and forms on behalf of the Liquidation Trust and the Debtors; (d) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution and Distribution of Liquidation Trust Assets; (e) calculate and implement Distributions of Liquidation Trust Assets; (f) investigate, prosecute, compromise, and settle, in accordance with the specific terms of the Liquidation Trust Agreement and without further order of the Bankruptcy Court the Claims and Causes of Action vested in the Liquidation Trust, as set forth in the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement; (g) resolve issues involving Claims and Equity Interests in accordance with the Combined Plan and Disclosure Statement without any further notice to or action, order or approval by the Bankruptcy Court; (h) undertake

all administrative functions of the Chapter 11 Cases, including the payment of Statutory Fees incurred post-Effective Date with respect to distributions from the Liquidation Trust and the ultimate closing of the Chapter 11 Cases and dissolution of the Debtors; and (i) take such other action as may be vested in or assumed by the Liquidation Trustee consistent with the Combined Plan and Disclosure Statement, the Liquidation Trust Agreement, and any applicable Orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Combined Plan and Disclosure Statement.  Notwithstanding anything in the Combined Plan and Disclosure Statement or in the Liquidation Trust Agreement to the contrary, the Liquidation Trustee shall obtain the consent of the Prepetition Notes Secured Parties (which consent shall be given in the sole discretion of the Prepetition Notes Secured Parties) prior to (i) commencing or settling any litigation related to the Prepetition Notes Reserve or (ii) objecting, either formally or informally, to any Professional Fee Claim of any Professional.

##### 2. <u>Books and Records</u>

On the Effective Date, the Liquidation Trust shall: (a) take possession of all books, records, and files of the Debtors and the Estates that were not sold and transferred in connection with the Sales and that relate to the operation and business of the Liquidation Trust; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidation Trustee determines, in accordance with the Liquidation Trust Agreement, that retention of same is no longer necessary or beneficial.  The transfer of any such documents and information will be without waiver of any evidentiary privileges, including, without limitation, the attorney-client privilege, work-product privilege or other privilege or immunity attaching to any such documents or information (whether written or oral), and all such privileges shall vest in the Liquidation Trust. The Combined Plan and Disclosure Statement will be considered a motion pursuant to sections 105 and 363 of the Bankruptcy Code for such relief.

##### 3. <u>Investments of Cash</u>

The Liquidation Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code or in other prudent investments, *provided, however*, that such investments are permitted to be made by a Liquidation Trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

#### H. <u>United States Federal Income Tax Treatment of the Liquidation Trust for the Liquidation Trust Assets</u>

For federal income tax purposes, it is intended that the Liquidation Trust be classified as a "liquidating trust" under Section 301.7701-4 of the Treasury regulations and that the trust be owned by its Liquidation Trust Beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Liquidation Trust Beneficiaries be treated as if they had received a distribution from the Estates of an undivided interest in the Liquidation Trust Assets (to the extent of the value of their respective share in the applicable Assets) and then contributed such interests to the Liquidation Trust, and the Liquidation Trust Beneficiaries will be treated as the grantors and owners thereof.

The Liquidation Trustee shall be responsible for filing all federal, state, and local tax returns for the Liquidation Trust and for the Debtors.  The Liquidation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions made by the Liquidation Trust shall be subject to any such withholding and reporting requirements.  The Liquidation Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder.  Notwithstanding any other provision of the Combined Plan and Disclosure Statement, (a) each Holder of an Allowed Claim that is to receive a Distribution from a Liquidation Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder under the Combined Plan and Disclosure Statement unless and until such Holder has made arrangements satisfactory to the Liquidation Trustee to allow it to comply with its tax withholding and reporting requirements.  Any property to be distributed by the Liquidation Trust shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution to be held by the Liquidation Trustee, as the case may be, until such time as Liquidation Trustee is satisfied with the Holder's arrangements for any withholding tax obligations.

## I.    **Term of Liquidation Trust**

The Liquidation Trust will terminate on the earlier of the: (a) final liquidation, administration, and Distribution of the Liquidation Trust Assets in accordance with the terms of the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement, and its full performance of all other duties and functions as set forth in the Combined Plan and Disclosure Statement or the Liquidation Trust Agreement; and (b) the fifth anniversary of the Effective Date. Notwithstanding the foregoing, multiple fixed term extensions can be obtained so long as Bankruptcy Court approval is obtained within six months before the expiration of the term of the Liquidation Trust and each extended term provided that any further extension would not adversely affect the status of the Liquidation Trust as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations for federal income tax purposes. After (a) the final Distributions pursuant to the Combined Plan and Disclosure Statement, (b) the Filing by or on behalf of the Liquidation Trust of a certification of dissolution with the Bankruptcy Court, and (c) any other action deemed appropriate by the Liquidation Trustees, the Liquidation Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

## J.    **Limitation of Liability of the Liquidation Trustee; Indemnification**

The Liquidation Trust shall indemnify the Liquidation Trustee, its employees, employers, designees or professionals, or any of its duly designated agents or representatives (each, a "**Liquidation Trust Party**") against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that any Liquidation Trust Party may incur or sustain by reason of being or having been a Liquidation Trust Party for performing any functions incidental to such service; *provided, however*, the foregoing shall not relieve any Liquidation Trust Party from liability for bad faith, willful misconduct, reckless disregard of duty,

43

criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney professional and, as required under rule 1.8(h)(1) of the Delaware Lawyers' Rules of Professional Conduct.

## X.  PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT

### A.  Method of Payment

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Combined Plan and Disclosure Statement shall be made by check drawn on a domestic bank or an electronic wire.

### B.  Objections to and Resolution of Claims

Except as set forth in Article IX.G.1 hereof, the Liquidation Trustee shall have the: (i) right to file objections and/or motions to estimate any and all Claims after the Effective Date; (ii) authority to compromise, settle, otherwise resolve or withdraw any objections, without further notice to or action, Order, or approval of the Bankruptcy Court; and (iii) authority to resolve and settle any and all Claims and cause the claims register to be modified to reflect any such resolutions without further notice to or action, Order, or approval of the Bankruptcy Court.

### C.  Claims Objection Deadline

The Liquidation Trustee (subject to the limitations set forth in Article IX.G.1 hereof), and any other party in interest to the extent permitted pursuant to section 502(a) of the Bankruptcy Code, shall file and serve any objection to any Claims, including Administrative Expense Claims, no later than the Claims Objection Deadline; *provided*, *however*, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion and notice by the Liquidation Trustee.

### D.  No Distribution Pending Allowance

Notwithstanding any other provision of the Combined Plan and Disclosure Statement, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by the Combined Plan and Disclosure Statement.

### E.  Claims Reserve

Prior to or on the Effective Date, the Debtors or the Liquidation Trustee, as applicable, shall establish the Claims Reserve.  The amount of the Claims Reserve shall be determined by the Debtors in consultation with the Prepetition Notes Secured Parties and the Committee.  Amounts in the Claims Reserve shall be held in trust for the benefit of Holders of Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, and Other Secured Claims pending determination of such Holder's entitlement thereto.

44

**F.**     **Distribution After Allowance**

Except as provided herein, within the later of (a) seven Business Days after such Claim becomes an Allowed Claim and (b) thirty calendar days after the expiration of the Claims Objection Deadline, or in either such case as soon thereafter as is practicable, the Liquidation Trustee shall distribute all Cash or other property to which a Holder of an Allowed Claim is then entitled.

**G.**     **Adjustments to Claims Without Objection**

After the Effective Date, any Claim that has been paid or satisfied may be marked as satisfied, adjusted or expunged on the register of Claims in the Chapter 11 Cases by the Claims and Noticing Agent at the direction of the Liquidation Trustee upon providing notice to the affected Creditor with an opportunity to object.

**H.**     **Distribution Record Date**

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes.  The Liquidation Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date.  In making any Distribution with respect to any Claim, the Liquidation Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the Proof of Claim Filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that are actually known to the Liquidation Trustee as of the Distribution Record Date.

**I.**     **Delivery of Distributions**

Except as provided herein, Distributions to Holders of Allowed Claims shall be made:  (a) at the addresses set forth on the respective Proofs of Claim Filed by such Holders; (b) at the addresses set forth in any written notices of address changes delivered to the Liquidation Trustee after the date of any related Proof of Claim; or (c) at the address reflected in the Schedules if no Proof of Claim is Filed and the Liquidation Trustee has not received a written notice of a change of address.

If the Distribution to the Holder of any Claim is returned to the Liquidation Trustee as undeliverable, no further Distribution shall be made to such Holder unless and until the Liquidation Trustee is notified in writing of such Holder's then current address.  Undeliverable Distributions shall remain in the possession of the Liquidation Trustee until the earlier of (a) such time as a Distribution becomes deliverable or (b) such undeliverable Distribution becomes an Unclaimed Distribution.

Until such time as an undeliverable Distribution becomes an Unclaimed Distribution, within thirty days after the end of each calendar quarter following the Effective Date, or upon such other interval as the Bankruptcy Court may Order, but in any event no less frequently

45

than annually, the Liquidation Trustee shall make Distributions of all Cash and property that has become deliverable during the preceding quarter.

The Liquidation Trustee shall make reasonable efforts to update or correct contact information for recipients of undeliverable Distributions; *provided*, *however*, nothing contained in the Combined Plan and Disclosure Statement shall require the Liquidation Trustee to locate any Holder or an Allowed Claim.

All Distributions on account of Allowed Prepetition Term Loan Claims shall be made to or at the direction of the Prepetition Term Loan Agent, for further distribution to the Prepetition Term Loan Lenders, in accordance with the Prepetition Term Loan Credit Agreement and the Final DIP Order, and shall be deemed completed when made to or at the direction of the Prepetition Term Loan Agent.

**J.    Unclaimed Distributions**

Any Cash or other property to be Distributed under the Combined Plan and Disclosure Statement shall revert to the Liquidation Trust, as applicable, if it is not claimed by the Entity on or before the Unclaimed Distribution Deadline. If such Cash or other property is not claimed on or before the Unclaimed Distribution Deadline, then the Distribution made to such Entity shall be deemed to be reduced to zero.

**K.    *De Minimis* Distributions**

The Liquidation Trustee shall not distribute cash to the Holder of an Allowed Claim in an Impaired Class if the amount of Cash to be distributed on account of such Claim is less than $50.00 in the aggregate. Any Holder of an Allowed Claim on account of which the amount of Cash to be distributed is less than $50.00 in the aggregate will be forever barred from asserting its Claim for such distribution against the Liquidation Trustee or its property. Any Cash not distributed pursuant to this Article X of the Combined Plan and Disclosure Statement will be the property of the Estates.

**L.    Setoff**

The Debtors or the Liquidation Trustee, as the case may be, each retain the right to reduce any Claim by way of setoff in accordance with the Debtors' books and records.

**M.    Postpetition Interest**

Interest shall not accrue on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date. No prepetition Claim shall be Allowed to the extent it is for postpetition interest or other similar charges, except to the extent permitted for Holders of Secured Claims under section 506(b) of the Bankruptcy Code.

**N.    Allocation of Distributions Between Principal and Interest**

For Distributions in respect of Allowed Claims, to the extent that any such Allowed Claim entitled to a Distribution under the Combined Plan and Disclosure Statement is comprised

RLF1 33726890v.1

of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

## XI.  ADDITIONAL MEANS FOR IMPLEMENTATION

In addition to the provisions set forth elsewhere in the Combined Plan and Disclosure Statement, the following shall constitute additional means for implementation of the Combined Plan and Disclosure Statement:

### A.  Authority to Act

Prior to, on, or after the Effective Date (as appropriate), all matters and actions provided for under the Combined Plan and Disclosure Statement that would otherwise require approval of the members, managers, other owners (direct or indirect), directors and officers of the Debtors shall be deemed to have been authorized and effective in all respects as provided herein and shall be taken without any requirement for further action by such members, managers, other owners (direct or indirect), directors and officers.  The Debtors or the Liquidation Trustee, as applicable, are authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Plan and Disclosure Statement.

### B.  Effectuating Documents and Further Transactions

Upon entry of the Confirmation Order, the Debtors and the Liquidation Trustee, as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, notices, resolutions, programs, and other agreements, instruments, and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, substantially consummate, and/or further evidence the terms and conditions of the Combined Plan and Disclosure Statement and any transactions described in or contemplated by the Combined Plan and Disclosure Statement.  The Debtors or the Liquidation Trustee, as applicable, may, and all Holders of Allowed Claims receiving Distributions under this Combined Plan and Disclosure Statement or as Liquidation Trust Beneficiaries of the Liquidation Trust, at the request or direction of the Debtors or Liquidation Trustee, as applicable, shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Combined Plan and Disclosure Statement.

### C.  Release of Liens; Cancellation of Prepetition Term Loan Credit Agreement

Except as otherwise provided in the Combined Plan and Disclosure Statement, the Confirmation Order, or in any document, instrument, or other agreement created in connection with the Combined Plan and Disclosure Statement, on the Effective Date, all mortgages, deeds of trust, Liens, or other security interests against the property of the Estates shall be released.

On the Effective Date, the Prepetition Term Loan Credit Agreement shall be deemed cancelled, discharged and of no force or effect, except as necessary to (1) allow Holders

47

of Allowed Prepetition Term Loan Claims to receive distributions under the Final DIP Order and the Combined Plan and Disclosure Statement in accordance with the terms of the Prepetition Term Loan Credit Agreement; (2) allow and preserve the rights of the Prepetition Term Loan Agent to make distributions pursuant to the Final DIP Order and the Combined Plan and Disclosure Statement in accordance with the terms of the Prepetition Term Loan Credit Agreement; (3) preserve the rights of the Prepetition Term Loan Agent to compensation, reimbursement, and indemnification obligations as against any property distributable to Holders of Allowed Prepetition Term Loan Claims, including any rights to priority of payment and/or to exercise charging liens, and to enforce its rights, claims, and interests, vis-à-vis any party other than the Debtors; (4) permit the Prepetition Term Loan Agent to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court; and (5) permit the Prepetition Term Loan Agent to perform any functions that are necessary to effectuate the foregoing.

D.     **Limited Substantive Consolidation**

The Combined Plan and Disclosure Statement provides for the limited substantive consolidation of the Debtors' Estates, but solely for the purposes of this Combined Plan and Disclosure Statement, including voting on this Combined Plan and Disclosure Statement by the Holders of Claims and making any Distributions to Holders of Claims. Specifically, on the Effective Date, (i) all Assets and liabilities of the Debtors will, solely for voting and Distribution purposes, be treated as if they were merged, (ii) each Claim against the Debtors will be deemed a single Claim against and a single obligation of the Debtors, (iii) any Claims filed or to be filed in the Chapter 11 Cases will be deemed single Claims against all of the Debtors, (iv) all guarantees of any Debtor of the payment, performance, or collection of obligations of any other Debtor shall be eliminated and canceled, (v) all transfers, disbursements and Distributions on account of Claims made by or on behalf of any of the Debtors' Estates hereunder will be deemed to be made by or on behalf of all of the Debtors' Estates, and (vi) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors. Holders of Allowed Claims entitled to Distributions under this Combined Plan and Disclosure Statement shall be entitled to their share of Assets available for Distribution to such Claim without regard to which Debtor was originally liable for such Claim. Except as set forth herein, such limited substantive consolidation shall not (other than for purposes related to this Combined Plan and Disclosure Statement) affect the legal and corporate structures of the Debtor.

## XII.  EXCULPATION, RELEASES AND INJUNCTIONS

A.     **Exculpation**

**The Exculpated Parties shall not have or incur, and are hereby exculpated from, any claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability to one another or to any Holder of any Claim or Equity Interest, or any other party-in-interest, for any act or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtors, the Chapter 11 Cases, the JMB DIP Facility, the Sales, the negotiation and Filing of the Combined Plan and Disclosure Statement, the Filing of the Chapter 11 Cases, the settlement of Claims or renegotiation of Executory Contracts, the Global Settlement, the treatment of Claims and Equity Interests under the Combined Plan**

48

and Disclosure Statement, the pursuit of confirmation of the Combined Plan and Disclosure Statement, the consummation of the Combined Plan and Disclosure Statement, or the administration of the Combined Plan and Disclosure Statement or the property to be Distributed under the Combined Plan and Disclosure Statement, and the negotiation, formulation, or preparation of any of the foregoing, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place between the Petition Date and the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted willful misconduct or gross negligence.  Nothing herein shall prevent any Exculpated Party from asserting as a defense to any claim of fraud, willful misconduct or gross negligence that they reasonably relied upon the advice of counsel with respect to their duties and responsibilities under the Combined Plan and Disclosure Statement or otherwise.

**B.**     **Releases by the Debtors**

Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Estates, any Person seeking to exercise the rights of the Estates, the Liquidation Trust, any successors to or assigns of the Debtors and any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be deemed to, completely, conclusively, absolutely, unconditionally, irrevocably and forever release, waive, void and extinguish the Released Parties from any claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates, that the Debtors, the Estates or the Liquidation Trust would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, for any act, omission or other occurrence in connection with, relating to, or arising out of, or in any manner arising from, in whole or in part, the Debtors and/or any Affiliate of the Debtors (including, in either case, the management, ownership, or operation thereof), the Estates, the Business Combination, the in- or out-of-court restructuring efforts of the Debtors or any Affiliate thereof, intercompany transactions, the Chapter 11 Cases, the Prepetition Loan Documents, the JMB DIP Facility, the Sales, the negotiation and Filing of the Combined Plan and Disclosure Statement, the Filing of the Chapter 11 Cases, the settlement of Claims or renegotiation of Executory Contracts, the Global Settlement, the treatment of Claims and Equity Interests under the Combined Plan and Disclosure Statement, the pursuit of confirmation of the Combined Plan and Disclosure Statement, the consummation of the Combined Plan and Disclosure Statement, or the administration of the Combined Plan and Disclosure Statement or the property to be distributed under the Combined Plan and Disclosure Statement, and the negotiation, formulation, or preparation of any of the foregoing, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted intentional fraud, willful misconduct, or gross negligence.

49

C.      **Releases by Holders of Claims**[7]

Effective as of the Effective Date, for good and valuable consideration, including the obligations of the Debtors under this Combined Plan and Disclosure Statement and the contributions of the Released Parties to facilitate and implement the Combined Plan and Disclosure Statement, the adequacy of which is hereby confirmed, the Releasing Parties, and each of the Releasing Parties' successors and assigns, shall be deemed to, completely, conclusively, absolutely, unconditionally, irrevocably and forever release, waive, void and extinguish the Released Parties from any claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) for any act, omission or other occurrence in connection with, relating to, or arising out of, or in any manner arising from, in whole or in part, the Debtors and/or any Affiliate of the Debtors (including, in either case, the management, ownership, or operation thereof), the Estates, the Business Combination, the in- or out-of-court restructuring efforts of the Debtors or any Affiliate thereof, intercompany transactions, the Chapter 11 Cases, the Prepetition Loan Documents, the JMB DIP Facility, the Sales, the negotiation and Filing of the Combined Plan and Disclosure Statement, the Filing of the Chapter 11 Cases, the settlement of Claims or renegotiation of Executory Contracts, the Global Settlement, the treatment of Claims and Equity Interests under the Combined Plan and Disclosure Statement, the pursuit of confirmation of the Combined Plan and Disclosure Statement, the consummation of the Combined Plan and Disclosure Statement, or the administration of the Combined Plan and Disclosure Statement or the property to be distributed under the Combined Plan and Disclosure Statement, and the negotiation, formulation, or preparation of any of the foregoing, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted intentional fraud, willful misconduct, or gross negligence.

D.      **Injunctions Relating to Releases**

Effective as of the Effective Date, all Persons that hold, have held or may hold a claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability of any nature whatsoever, that is released pursuant to the Combined Plan and Disclosure Statement, shall be permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such

---

[7]   If you opt-in to the third-party releases in Article XII.C. of  the Combined Plan and Disclosure Statement in accordance with the Conditional Approval and Procedures Order, you shall be a "Releasing Party" under the Combined Plan and Disclosure Statement and, accordingly, are agreeing to provide the third-party release in this Article XII.C.  Opting into the third-party releases is entirely optional and the failure to do so does not affect the Distributions that you may be entitled to under the Combined Plan and Disclosure Statement.

released claims, Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies or liabilities, (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum, (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order, (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any lien, (iv) setting off (except to the extent such setoff was exercised prior to the Petition Date), seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Person released under the Combined Plan and Disclosure Statement, and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Combined Plan and Disclosure Statement or the Confirmation Order.

E.      **Injunctions to Protect Estate Assets**

        Except as expressly otherwise provided in the Combined Plan and Disclosure Statement, including Article XVI.B hereof, or to the extent necessary to enforce the terms and conditions of the Combined Plan and Disclosure Statement, the Confirmation Order or a separate Order of the Bankruptcy Court, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against the Debtors (but solely to the extent such action is brought against the Debtors to directly or indirectly recover upon any Assets of the Estates), the Debtors' Estates, the Liquidation Trust, the Liquidation Trustee or any of their property on account of any such Claims or Equity Interests:  (i) commencing or continuing, in any manner or in any place, any action, Cause of Action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or Order; (iii) creating, perfecting, or enforcing any Lien; (iv) asserting a setoff (except to the extent such setoff was exercised prior to the Petition Date), right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors; and (v) commencing or continuing, in any manner or in any place, any action, Cause of Action or other proceeding that does not comply with or is inconsistent with the provisions of the Combined Plan and Disclosure Statement.

## XIII.  EXECUTORY CONTRACTS

A.      **Assumption and Rejection of Executory Contracts**

        As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court (including the Sale Orders); (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtors on or before the Effective Date; or (iv) is specifically designated as a contract or lease to be assumed on the Assumption Schedule.

51

Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, including assignments to another Debtor, or rejections provided for in the Combined Plan and Disclosure Statement pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each executory contract and unexpired lease assumed pursuant to the Combined Plan and Disclosure Statement shall vest in and be fully enforceable in accordance with its terms, except as modified by the provisions of the Combined Plan and Disclosure Statement, any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment, or applicable law.

**B.** **Determination of Cure Disputes and Deemed Consent**

Any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, as reflected in the applicable cure notice, in Cash on or as soon as reasonably practicable after the Effective Date, subject to the limitations described below, or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors may otherwise agree.

The Debtors shall file, as part of the Plan Supplement, the Assumption Schedule. At least 14 days before the commencement of the Confirmation Hearing, the Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed reflecting the Debtors' intention to assume the contract or lease in connection with the Combined Plan and Disclosure Statement and, where applicable, setting forth the proposed Cure Amount (if any).  Any objection by a counterparty to an Executory Contract to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within ten days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.

Any counterparty to an Executory Contract that fails to object timely to the proposed assumption, assumption and assignment, or Cure Amount (i) shall be deemed to have assented to such assumption, assumption and assignment, or Cure Amount, notwithstanding any provision thereof that purports to (1) prohibit, restrict, or condition the transfer or assignment of such contract or lease or (2) terminate or permit the termination of a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtors under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Combined Plan and Disclosure Statement, and shall forever be barred and enjoined from asserting such objection against the Debtors or terminating or modifying such contract or lease on account of transactions contemplated by the Combined Plan and Disclosure Statement and (ii) shall be forever barred, estopped, and enjoined from challenging the validity of such assumption or assumption and assignment, as applicable, thereafter.

If there is an Assumption Dispute (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to the assumption being effective; *provided*, that, the Debtors may settle any Assumption Dispute without any further notice to, or action by, any party or order of the Bankruptcy Court.

To the extent an Assumption Dispute relates to Cure Amounts, the Debtors may assume and/or assume and assign the applicable Executory Contract prior to the resolution of such Assumption Dispute; *provided*, that, the Debtors reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the Cure Amount by the counterparty to such Executory Contract.

Assumption or assumption and assignment of any Executory Contract pursuant to the Combined Plan and Disclosure Statement or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract at any time before the date that the Debtors assume or assume and assign such Executory Contract.

**C.**     **Deadline for Filing Proofs of Claim Relating to Executory Contracts Rejected Pursuant to the Combined Plan and Disclosure Statement**

If the rejection by the Debtors of an Executory Contract pursuant to the Combined Plan and Disclosure Statement gives rise to a Claim, a Proof of Claim must be submitted to Omni by either (i) filing such Proof of Claim electronically through Omni's website at *https://omniagentsolutions.com/CareerBuilderMonster-Claims*; (ii) mailing the original Proof of Claim by regular mail to Zen JV, LLC Claims Processing, c/o Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills, California 91367; or (iii) delivering such original Proof of Claim by overnight mail or messenger to Zen JV, LLC Claims Processing, c/o Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills, California 91367, by no later than 30 days after service of the notice of the Effective Date. Any Proofs of Claim not Filed and served within such time period will be a Disputed Claim and if disallowed will be forever barred from assertion against the Debtors and their Estates. Unless otherwise Ordered by the Bankruptcy Court, all Claims arising from the rejection of Executory Contracts shall be treated as Class 5 Claims under the Combined Plan and Disclosure Statement.

**D.**     **Indemnification Obligations**

Consistent with applicable law, all indemnification provisions in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, D&O Liability Insurance Policies, or otherwise) for current or former directors, officers, managers and employees of the Debtors, as applicable, shall (i) not be discharged, impaired, or otherwise affected in any way, including by the Combined Plan and Disclosure Statement, the Plan Supplement, or the Confirmation Order; (ii) remain intact, in full force and effect, and irrevocable; (iii) not be limited, reduced, or terminated after the Effective Date; and (iv) survive the effectiveness of the Combined Plan and Disclosure Statement on terms no less favorable to such current and former directors, officers, managers and employees of the Debtors than the indemnification provisions in place prior to the Effective Date irrespective of whether such indemnification obligation is owed for an act or event occurring before, on, or after the Petition Date. All such obligations shall be deemed and treated as Executory Contracts to be assumed by the Liquidation Trust under the Combined Plan and Disclosure Statement and shall

53

continue as obligations of the Liquidation Trust, as applicable.  Notwithstanding the foregoing, all obligations under this Article XIII.D shall be limited solely to recovery available under the Debtors' applicable insurance policies, including D&O Liability Insurance Policies, and neither the Liquidation Trust nor any of its assets (other than the Debtors' insurance policies, including D&O Liability Insurance Policies) shall be liable for any such obligations.

**E.**     **Insurance Policies**

Nothing in the Combined Plan and Disclosure Statement and/or the Confirmation Order alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Debtors' insurance policies, including D&O Liability Insurance Policies, or modifies the coverage or benefits provided thereunder or the terms or conditions thereof or diminishes or impairs the enforceability of such insurance policies.

## XIV.  CONDITIONS PRECEDENT TO AND OCCURRENCE OF CONFIRMATION AND THE EFFECTIVE DATE

**A.**     **Conditions Precedent to the Effective Date**

The following are conditions precedent to the Effective Date that must be satisfied or waived (to the extent they are capable of being waived):

a.     All documents required under the Combined Plan and Disclosure Statement shall have been delivered.

b.     The Confirmation Order shall have been entered by the Bankruptcy Court, and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto.

c.     The Liquidation Trust shall have been formed and the Liquidation Trustee shall have been appointed in accordance with the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement.

d.     The Reserves shall have been established and funded in accordance with the terms of the Combined Plan and Disclosure Statement.

**B.**     **Establishing the Effective Date**

The calendar date to serve as the Effective Date shall be a Business Day of, on or promptly following the satisfaction or waiver of all conditions to the Effective Date, which date will be selected by the Debtors.  On or within two Business Days of the Effective Date, the Debtors shall file and serve a notice of occurrence of the Effective Date.  Such notice shall contain, among other things, the Administrative Expense Bar Date, the deadline by which Professionals must file and serve any Professional Fee Claims and the deadline to file a Proof of Claim relating to damages from the rejection of any Executory Contract pursuant to the terms of the Combined Plan and Disclosure Statement.

C.    **Effect of Failure of Conditions**

If each condition to the Effective Date has not been satisfied or duly waived within 45 days after the Confirmation Date, then upon motion by any party in interest, made before the time that each of the conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order may be vacated by the Bankruptcy Court; *provided*, *however*, that notwithstanding the filing of such motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived by the Debtors before any Order granting such relief becomes a Final Order.  If the Confirmation Order is vacated pursuant to this section, the Combined Plan and Disclosure Statement shall be deemed null and void in all respects and nothing contained herein shall (a) constitute a waiver or release of any Claims by or against the Debtors, or (b) prejudice in any manner the rights of the Debtors.

D.    **Waiver of Conditions to Effective Date**

Each of the conditions to the Effective Date may be waived, in whole or in part, by the Debtors, without notice or an Order of the Bankruptcy Court.

## XV.    **RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, following the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases as is legally permissible, including, without limitation, such jurisdiction as is necessary to ensure that the interests and purposes of the Combined Plan and Disclosure Statement are carried out.  The Bankruptcy Court shall have jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Combined Plan and Disclosure Statement pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

a.    to hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

b.    to enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

c.    to issue such Orders in aid of execution and consummation of the Combined Plan and Disclosure Statement, to the extent authorized by section 1142 of the Bankruptcy Code;

d.    to consider any amendments to or modifications of the Combined Plan and Disclosure Statement, to cure any defect or omission, or reconcile any inconsistency in any Order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

e.    to hear and determine all requests for compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code;

55

f.      to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Combined Plan and Disclosure Statement;

g.      to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors or the Liquidation Trustee on behalf of the Liquidation Trust for an expedited determination of tax under section 505(b) of the Bankruptcy Code);

h.      to hear any other matter not inconsistent with the Bankruptcy Code;

i.      to enter a final decree closing the Chapter 11 Cases;

j.      to ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Combined Plan and Disclosure Statement;

k.      to decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

l.      to issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Combined Plan and Disclosure Statement, except as otherwise provided herein;

m.      to determine any other matters that may arise in connection with or related to the Combined Plan and Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created or implemented in connection with the Combined Plan and Disclosure Statement;

n.      to enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Cases (whether or not the applicable Chapter 11 Cases have been closed);

o.      to resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

p.      to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the General Bar Date, the Governmental Bar Date, the Rejection Damages Bar Date, the Amended Schedules Bar Date, the Administrative Expense Bar Date, and/or the hearing on the approval of the Combined Plan and Disclosure Statement for the purpose of determining whether a Claim, or Equity Interest is discharged and/or enjoined hereunder or for any other purpose; and

56

q.  to resolve any other matter or for any purpose specified in the Combined Plan and Disclosure Statement, the Confirmation Order, or any other document entered into in connection with any of the foregoing.

## XVI. <u>MISCELLANEOUS PROVISIONS</u>

### A.  <u>Avoidance Actions</u>

On the Effective Date, any Avoidance Actions that are not Purchased Assets or released or exculpated under the Combined Plan and Disclosure Statement, shall vest in the Liquidation Trust.  Notwithstanding the foregoing or anything in the Combined Plan and Disclosure Statement to the contrary, no Avoidance Actions against any Entity that is a Released Party or Exculpated Party (regardless of capacity) shall vest in the Liquidation Trust.

### B.  <u>Termination of Injunctions or Stays</u>

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code Sections 105 or 362 or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Combined Plan and Disclosure Statement or the Confirmation Order), shall remain in full force and effect until the Effective Date, at which time the injunctions and stays set forth herein shall take effect.

### C.  <u>Amendment or Modification of the Combined Plan and Disclosure Statement</u>

Except as otherwise specifically set forth herein, the Debtors reserve the right to modify the Combined Plan and Disclosure Statement, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Combined Plan and Disclosure Statement.  Subject to those restrictions on modifications set forth herein and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify the Combined Plan and Disclosure Statement with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify Combined Plan and Disclosure Statement, or remedy any defect or omission, or reconcile any inconsistencies in the Combined Plan and Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Combined Plan and Disclosure Statement.

Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Combined Plan and Disclosure Statement without further Order or approval of the Bankruptcy Court.

### D.  <u>Severability</u>

In the event the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Combined Plan and Disclosure Statement is invalid, void or unenforceable,

such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such Claims or Equity Interest as to which the provision is determined to be invalid, void or unenforceable.  The invalidity, voidability or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Combined Plan and Disclosure Statement.

### E.    Revocation or Withdrawal of the Combined Plan and Disclosure Statement

The Debtors reserve the right to revoke or withdraw the Combined Plan and Disclosure Statement before the Confirmation Date.  If the Debtors revoke or withdraw the Combined Plan and Disclosure Statement before the Confirmation Date, then the Combined Plan and Disclosure Statement shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors.

### F.    Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(a), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Combined Plan and Disclosure Statement and Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidation Trust, any and all the Holders of Claims or Equity Interests (irrespective of whether their Claims or Equity Interests are deemed to have accepted the Combined Plan and Disclosure Statement), all Persons and Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Combined Plan and Disclosure Statement, each Person and Entity acquiring property under the Combined Plan and Disclosure Statement, any and all non-Debtor parties to Executory Contracts with the Debtors, and the respective heirs, executors, administrators, successors or assigns, affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, with respect to the foregoing.

### G.    Notices

All notices, requests and demands to or upon the Debtors, the Liquidation Trust, or the Liquidation Trustee, as applicable, to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as shall be set forth in the notice of Effective Date.

### H.    Governing Law

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Combined Plan and Disclosure Statement provides otherwise, the rights and obligations arising under the Combined Plan and Disclosure Statement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

I.      **Withholding and Reporting Requirements**

In connection with the consummation of the Combined Plan and Disclosure Statement, the Debtors, Liquidation Trust and/or Liquidation Trustee, as applicable, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Combined Plan and Disclosure Statement shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution.  The Debtors, Liquidation Trust and/or Liquidation Trustee, as applicable, have the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to any disbursing party for payment of any such tax obligations. The Debtors, Liquidation Trust and/or Liquidation Trustee, as applicable, may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim complete and return a Form W-8 or W-9, as applicable to each such Holder.  If Debtors, Liquidation Trust and/or Liquidation Trustee, as applicable, makes such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the Debtors and/or Liquidation Trust, as applicable, and any Claim in respect of such Distribution shall be disallowed and forever barred from assertion against the Debtors, their Estates, or their property.

J.      **Exemption from Transfer Taxes**

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection herewith, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection herewith, including the issuance of any stock, any merger agreements, or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated hereunder shall not be subject to any stamp, real estate transfer mortgage recording, or other similar tax.

K.      **Headings**

Headings are used in the Combined Plan and Disclosure Statement for convenience and reference only, and shall not constitute a part of the Combined Plan and Disclosure Statement for any other purpose.

**L.**    **Exhibits/Schedules**

All exhibits and schedules to the Combined Plan and Disclosure Statement, including the Plan Supplement, are incorporated into and are a part of the Combined Plan and Disclosure Statement as if set forth in full herein.

**M.**    **Filing of Additional Documents**

On or before substantial consummation of the Combined Plan and Disclosure Statement, the Debtors shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Plan and Disclosure Statement.

**N.**    **No Admissions**

Notwithstanding anything herein to the contrary, nothing contained in the Combined Plan and Disclosure Statement shall be deemed as an admission by any Person or Entity with respect to any matter set forth herein.

**O.**    **Successors and Assigns**

The rights, benefits and obligations of any Person or Entity named or referred to in the Combined Plan and Disclosure Statement shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

**P.**    **Reservation of Rights**

Except as expressly set forth herein, the Combined Plan and Disclosure Statement shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Combined Plan and Disclosure Statement, any statement or provision contained herein, or the taking of any action by the Debtors with respect to the Combined Plan and Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or Holders of Claims or Equity Interest before the Effective Date.

**Q.**    **Implementation**

The Debtors shall take all steps, and execute all documents, including appropriate releases, necessary to effectuate the provisions contained in the Combined Plan and Disclosure Statement.

**R.**    **Inconsistency**

In the event of any inconsistency among the Combined Plan and Disclosure Statement and any other instrument or document created or executed pursuant to the Combined Plan and Disclosure Statement, the provisions of the Combined Plan and Disclosure Statement shall govern.

**S.**      **Dissolution of the Debtors**

Immediately after the Effective Date, the Liquidation Trustee shall be authorized to take, in its sole and absolute discretion, all actions reasonably necessary to dissolve one or more of the Debtors under applicable laws, including under the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation. Upon the final Distributions, any Debtors that have not been previously dissolved shall be deemed dissolved for all purposes without the necessity for other or further actions to be taken by or on behalf of the Debtors, and the Liquidation Trustees shall be authorized to file any certificate of cancellation or other documents as may be necessary or desirable to terminate the legal existence of the Debtors.

**T.**      **Abandonment of Non-Debtor Equity Interests**

The Debtors do not believe the Non-Debtor Equity Interests have any value to the Estates.

Unless the Confirmation Order provides otherwise, on the Effective Date, the Non-Debtor Equity Interests shall be deemed abandoned pursuant to Section 544 of the Bankruptcy Code without further Order or further notice to any Entity.  The Combined Plan and Disclosure Statement shall constitute a motion for such relief.

**U.**      **Directors, Officers, Managers, Members and Authorized Persons of the Debtors.**

On the Effective Date, each of the Debtors' directors and officers shall be discharged from their duties and terminated automatically without the need for any corporate action or approval and without the need for any corporate filings, and, unless subject to a separate agreement with the Liquidation Trustee, shall have no continuing obligations to the Debtors following the occurrence of the Effective Date.

**V.**      **Dissolution of the Committee**

Upon the occurrence of the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be discharged and released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (i) obligations arising under confidentiality agreements, which shall remain in full force and effect, and (ii) prosecuting applications for payment of fees and reimbursement of expenses of its Professionals or attending to any other issues related to applications for payment of fees and reimbursement of expenses of its Professionals.

**W.**      **Compromise of Controversies**

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Combined Plan and Disclosure Statement, the provisions of the Combined Plan and Disclosure Statement shall constitute a good-faith compromise and settlement of all Claims or controversies resolved pursuant to the Combined Plan and Disclosure Statement and in these Chapter 11 Cases.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or

settlements, and all other compromises and settlements provided for in the Combined Plan and Disclosure Statement and the Chapter 11 Cases, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, their Estates and all Holders of Claims and Equity Interests against the Debtors. Notwithstanding any other provision in the Combined Plan and Disclosure Statement, the settlements are approved among the parties that have agreed to them (among any other party who has expressly entered into a written settlement), and the treatment of Claims and Equity Interests is being afforded pursuant to confirmation of the Combined Plan and Disclosure Statement by satisfying the requirements of Section 1129 of the Bankruptcy Code.

**X.      Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Combined Plan and Disclosure Statement or any previous version of the plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys shall have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Combined Plan and Disclosure Statement or any previous version of the Combined Plan and Disclosure Statement.

**Y.      Request for Expedited Determination of Taxes**

The Debtors, the Liquidation Trust, and/or the Liquidation Trustee, as applicable shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

Dated: September 4, 2025                         ZEN JV, LLC

                                                 By:   /s/ Jeffrey Furman
                                                       Name: Jeffrey Furman
                                                       Title: Chief Executive Officer

62