**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>Zen JV, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-11195 (JKS)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: October 7, 2025 at 4:00 p.m. (ET)**<br>**Hearing Date: November 13, 2025 at 1:00 p.m. (ET)** |

**FIRST AND FINAL APPLICATION OF ALAN CHAPELL, CONSUMER PRIVACY OMBUDSMAN, APPOINTED PURSUANT TO SECTION 332 OF THE BANKRUPTCY CODE FOR APPROVAL AND ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED DURING THE PERIOD FROM JULY 8, 2025 THROUGH AND INCLUDING JULY 28, 2025**

| | |
|---|---|
| Name of Applicant: | Alan Chapell |
| Provided Professional Services to: | U.S. Bankruptcy Court, District of Delaware |
| Date of Retention: | July 8, 2025 |
| Period for which compensation is sought: | July 8, 2025 – July 28, 2025 |
| Amount of Compensation requested: | $30,400.00 |
| Amount of Expense requested: | $      0.00 |

This is a: _____ interim      ___X___ final application

| NAME | POSITION; EXPERIENCE | HOURLY RATE | TOTAL HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|
| Alan Chapell | President, Chapell & Associates, LLC; admitted to practice in NY in 2002 | $800.00 | 38.00 | $30,400.00 |

The total time expended for the preparation of this application is approximately 1.0 hours and the corresponding compensation requested is approximately $ 800.00 (which amount will be included in the final fee application.

---

[1] The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are: Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions, LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508). The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

RLF1 33396061v.3

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Zen JV, LLC, *et al.*,[2] | Case No. 25-11195 (JKS) |
| | (Jointly Administered) |
| Debtors. | Obj. Deadline: October 7, 2025 at 4:00 p.m. (ET)<br>Hearing Date: November 13, 2025 at 1:00 p.m. (ET) |

**FIRST APPLICATION OF ALAN CHAPELL, CONSUMER PRIVACY OMBUDSMAN, APPOINTED PURSUANT TO SECTION 332 OF THE BANKRUPTCY CODE FOR APPROVAL AND ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED DURING THE PERIOD FROM JULY 8, 2025 THROUGH AND INCLUDING JULY 28, 2025**

TO THE HONORABLE J KATE STICKLES
UNITED STATES BANKRUPTCY JUDGE:

Alan Chapell, Consumer Privacy Ombudsman ("Ombudsman"), appointed pursuant to Section 332 of the Bankruptcy Code, hereby submits his application (the "Application") pursuant to 11 U.S.C. § 330, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), this Court's *Order Pursuant to 11 U.S.C. §§ 331, 330, and 105(a) and Fed. R. Bankr. P. 2016 (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, and (II) Granting Related Relief* [Docket No. 258] (the "Interim Compensation Order") and the *United States Trustee Guidelines for Reviewing applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*, effective January 30, 1996 (the "United States Trustee Guidelines") for the allowance of Interim compensation for professional

---

[2] The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are: Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions, LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508). The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

RLF1 33396061v.3

services rendered from July 8, 2025 through and including July 28, 2025 (the "Compensation Period"), and in support thereof, respectfully represents as follows:

## INTRODUCTION

1.     Bankruptcy Filing.  On June 24, 2025 (the "Petition Date"), Zen JV, LLC and its debtor affiliates (the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

2.     Consumer Privacy Ombudsman.  The Consumer Privacy Ombudsman was appointed by the United States Trustee on July 8, 2025 [Docket No. 106].

3.     Jurisdiction.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue of the Debtors' chapter 11 cases (the "Chapter 11 Cases") is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). The statutory predicate for the relief sought herein is section 330 of the Bankruptcy Code.

## APPLICATION

4.     The Ombudsman makes this Interim application for approval and allowance of compensation pursuant to section 330 of the Bankruptcy Code. In particular, he seeks approval of $30,400.00 for legal services rendered in his capacity as Consumer Privacy Ombudsman.

5.     The Ombudsman has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

6.     No promises have been received by the Ombudsman or any member of Chapell & Associates, LLC ("C&A"), his privacy consulting firm, as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

7.     The fees sought by this Application reflect an aggregate of 38.00 hours of time spent by the Ombudsman and recorded in performing his duties as Ombudsman at an hourly rate

of $800.00. The Ombudsman has taken all possible measures to reduce his fees in these cases, given the overall amount of professional fees incurred.

8.     The Ombudsman rendered all services for which compensation is sought solely in connection with these cases, in furtherance of his duties and functions as Ombudsman. Attached hereto as **Exhibit A** are time entry records broken down in tenths of an hour, based upon the United States Trustee Guidelines, setting forth a detailed description of services performed by Mr. Chapell in his capacity as Ombudsman.

9.     C&A maintains computerized records of the time expended in the rendering of professional services required by Mr. Chapell's responsibilities as Ombudsman. These records are maintained in the ordinary course of C&A's practice. For the convenience of the Court and parties in interest, a billing summary for the period from July 8, 2025 to July 28, 2025 is attached as part of the cover sheet, showing that it is the work of only Mr. Chapell for which compensation is sought. The compensation requested herein is based on the customary compensation charged by the Ombudsman for similar services and by comparably skilled practitioners in his field.

10.    C&A also maintains computerized records of all expenses incurred in connection with the performance of professional services. However, no such expenses were incurred in the performance with the professional services performed in this matter.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED

11.    The Ombudsman has performed services related only to the carrying out of his duties as Consumer Privacy Ombudsman.

12.    In his capacity as Ombudsman, Mr. Chapell reviewed multiple legal agreements submitted by attorneys for the Debtors. Mr. Chapell also reviewed the privacy policies of Debtors, and a number of previously published privacy policies of Debtors. Mr. Chapell further sought and obtained additional information about the nature and origin of the personally identifiable

information contained in the assets that the Debtors wished to transfer; reviewed relevant laws relating to the collection and use of personal data; and drafted the report for the Court containing information pertinent to the facts, circumstances and conditions of the proposed transfer by the Debtors of the customer records.

### FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

13. The factors to be considered in awarding attorneys' fees as enumerated in *In re: First Colonial Corp. of America*, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been adopted by most courts.[3] The Ombudsman respectfully submits that the consideration of these factors should result in this Court's allowance of the full compensation sought.

> (A) <u>The Time and Labor Required</u>. The Ombudsman was appointed on July 8, 2025, and had a few weeks to familiarize himself with the facts and circumstances of the case, and research the possible data protection law issues. The situation required a high degree of professional competence and expertise in order for the report to be completed in time for the hearing.
>
> (B) <u>The Novelty and Difficulty of Questions</u>. The case was not particularly novel, but the time crunch leading up to the sale hearing proved challenging.
>
> (C) <u>The Skill Requisite to Perform the Legal Services Properly</u>. In addition to his background of more than twenty (20) years in privacy, the Ombudsman is certified as an Information Privacy Professional by the International

---

[3] *In Re: Nine Assoc., Inc.*, 76 B.R. 943, 945 (S.D.N.Y. 1987). The factors embraced by the Fifth Circuit in *First Colonial* were adopted by the Fifth Circuit's decision in *Johnson V. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), except that *First Colonial* also included the "Spirit of Economy" as a factor, which was expressly rejected by congress in enacting section 330 of the Bankruptcy Code. *Stroock & Stroock & Lavan V. Hillsborough Holdings Corp. (In Re: Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1403 (11th Cir. 1997). The remaining *First Colonial* factors continue to apply to determine the reasonableness of fees awarded under the Bankruptcy Code. 3 COLLIER ON BANKRUPTCY ¶ 330.04(3)(C) (Lawrence P. King, *Et Al.*, Editors, 15th Ed. 1997). In addition, a majority of the *First Colonial* Factors are now codified in 11 U.S.C. § 330(A)(3). *Id.*

      Association of Privacy Professionals ("IAPP").[4] Given the relatively brief time period available in which to research and prepare a report, only someone with significant familiarity with privacy laws and data protection schemes would have been able to complete the report.

(D)  The Preclusion of Other Employment by Applicant Due to Acceptance of the Case. The time spent on this proceeding did preclude other work.

(E)  The Customary Fee. The compensation sought herein is based upon a discount of Mr. Chapell's normal hourly rates for privacy consulting services.

(F)  Whether the Fee Is Fixed or Contingent. C&A charges customary hourly rates for the time expended by its members, and its fees are not outcome-dependent.

(G)  Time Limitations Imposed by Client or Other Circumstances. The Ombudsman had limited time to obtain and review the documents, research and identify the relevant privacy policies for the applicable websites, research and determine the relevant privacy and data protection laws, and prepare his report. This required him to work weekends and at night.

(H)  The Amount Involved and Results Obtained. The United States Bankruptcy Court for the District of Delaware approved the transfer of customer information pursuant to this proceeding.

---

[4]  Certification as an information privacy professional requires passing an exam that covers the "Definitions, Concepts and Applications of U.S. and International Privacy Laws and Information Management Practices as Well as the Privacy Implications of Emerging Technologies. This Includes HIPAA, COPPA, GLBA, APEC Principles, OECD Guidelines, EU Directive, Employee Records Management, Workplace Monitoring, Contingency Planning, Incident Handling, . . . and Other Key Items." *See* Https://Www.Privacyassociation.Org/Index.Php?Option=Com_Content&Task=View&Id=36&Itemid=223.
Once certified, a minimum of thirty (30) credits over a three (3) year period of qualifying continuing privacy education ("CPE") training are required to maintain certification. *See* Https://Www.Privacyassociation.Org/Index.Php?Option=Com_Content&Task=View&Id=18&Itemid=88.

5

(I) <u>The Experience, Reputation and Ability of the Professional</u>. As previously noted, Mr. Chapell has more than twenty (20) years' experience in practicing privacy law and is a Certified Information Privacy Professional. He is recognized widely as a thought leader on issues of privacy and interactive marketing, is a highly sought after speaker on issues of privacy, and has published dozens of articles on subjects relating to privacy and data protection law. Mr. Chapell's experience and expertise enabled him to complete his report in time for the scheduled hearing.

(J) <u>The "Undesirability" of the Case</u>. This appointment was not undesirable.

(K) <u>Nature and Length of Professional Relationship</u>. The statute requires the Consumer Privacy Ombudsman to be "a disinterested person"[5] to ensure an objective and unbiased report be provided to the Court. The Ombudsman has rendered and filed an objective, unbiased report with the Court.

## I. ALLOWANCE OF COMPENSATION

14. The professional services rendered by the Ombudsman required a high degree of professional competence and expertise to address, with skill and dispatch, the complex issues that arose in these cases. The Ombudsman respectfully submits that the services rendered to the Court were performed efficiently, effectively and economically.

15. The allowance of compensation for the services rendered in bankruptcy cases by a Consumer Privacy Ombudsman is expressly provided for in section 330(a)(1) of the Bankruptcy Code.

---

[5] 11 U.S.C. § 332(A).

16. With respect to the level of compensation, section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent part, that the Court may award to a consumer privacy ombudsman, "reasonable compensation for actual, necessary services rendered." Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and expertise in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3).

17. The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals, including Consumer Privacy Ombudsmen, to bankruptcy cases.[6]

18. The total time spent by the Ombudsman during the period of July 8, 2025 through and including July 28, 2025, was 38.00 hours and has a fair market value of $30,400.00. As shown

---

[6] *In Re: Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d Cir. 1994) ("congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts." [Citation and Internal Quotation Marks Omitted]); *In Re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13, 18 (Bankr. S.D.N.Y. 1991) ("Congress' objective on requiring that the market, not the court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists.")

by this Application and supporting exhibits, the Ombudsman's services were rendered economically and without unnecessary duplication of efforts.

## EXPENSES

19. C&A also maintains computerized records of all expenses incurred in connection with the performance of professional services. The expenses incurred during this period and relating to this matter are quite minimal, amounting to $0.00 expenses incurred.

## WAIVER OF MEMORANDUM OF LAW

20. Based upon the supporting authorities contained herein, and because this Application presents no novel issues of law, the Ombudsman respectfully requests that the Court waive the requirement of Local Bankruptcy Rule 9013-1(b) of filing a separate memorandum of law in support of this Application.

## NOTICE

21. The Ombudsman has given notice of this Application to (a) counsel for the Debtors, and (b) the Office of the United States Trustee. The Ombudsman understands other parties in interest will receive notice separately.

## CONCLUSION

WHEREFORE, the Ombudsman respectfully requests the Court to enter an order, substantially in the form attached hereto as **Exhibit B** (a) allowing Alan Chapell Interim compensation for professional services rendered as Consumer Privacy Ombudsman for the period July 8, 2025 through and including July 28, 2025 in the amount of $30,400.00 and (b) such other and further relief as is just.

Dated: September 16, 2025
      New York, New York

                                              /s/ *Alan Chapell*
                                              Alan Chapell
                                              Chapell & Associates, LLC
                                              692 Greenwich Street, #5
                                              New York, NY 10014