**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---

| | | |
|---|---|---|
| ------------------------------------------------------- | x | |
| In re: | : | Chapter 11 |
| | : | |
| ZEN JV, LLC, et al.,[1] | : | Case No. 25-11195 (JKS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | **Obj. Deadline: October 7, 2025 at 4:00 p.m. (ET)** |
| ------------------------------------------------------- | x | **Hearing Date: November 13, 2025 at 1:00 p.m. (ET)** |

---

**SUMMARY SHEET TO THE FIRST AND FINAL FEE**
**APPLICATION OF PJT PARTNERS LP AS INVESTMENT BANKER TO THE**
**DEBTORS AND DEBTORS-IN-POSSESSION FOR ALLOWANCE (AND FINAL**
**APPROVAL) OF COMPENSATION FOR SERVICES RENDERED AND FOR THE**
**REIMBURSEMENT OF ALL ACTUAL AND NECESSARY EXPENSES INCURRED**
**FOR THE PERIOD FROM JUNE 24, 2025 THROUGH AUGUST 19, 2025**

Name of Applicant:                         PJT Partners LP

Authorized to Provide
Professional Services to:                  Debtors

Date of Retention:                         Order entered on August 1, 2025 approving the
                                           retention of PJT Partners LP effective as of June
                                           24, 2025 [Docket No. 262]

Period for which Compensation
And Reimbursement is sought:               June 24, 2025 through August 19, 2025

Amount of Compensation sought
As actual, reasonable, and necessary:      $4,587,300.00

Amount of Expense Reimbursement sought
As actual, reasonable, and necessary:      $778.17

Amount of Cash Payment Sought:             $4,588,078.17

This is a ____ fee statement    ____ interim    _x_ final application

---

[1] The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are: Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions, LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508). The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

**Summary of Professional Hours of Service**

For clarification, PJT does not charge hourly rates to the Debtors, and no hourly rates are associated with professional services rendered.  Below is a summary of the professionals who provided services during the Retention Period (as defined below).

| Professional | Title | Total Hours |
|---|---|---|
| Avram Robbins | Partner | 35.5 |
| James Lilly | Managing Director | 111.0 |
| Wei Wen | Vice President | 61.0 |
| Asher Eddy | Associate | 119.0 |
| Marilia Bagatini | Associate | 75.0 |
| Daniel Armagh | Associate | 66.0 |
| Victoria Geh | Analyst | 23.0 |
| Olivia Schewe | Analyst | 4.5 |
| Nisha Ray | Analyst | 29.5 |
| | **Total** | **524.5** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------- x
In re: : Chapter 11
:
ZEN JV, LLC, et al.,[1] : Case No. 25-11195 (JKS)
:
Debtors. : (Jointly Administered)
:
: **Obj. Deadline: October 7, 2025 at 4:00 p.m. (ET)**
---------------------------------------------------------- x **Hearing Date: November 13, 2025 at 1:00 p.m. (ET)**

**FIRST AND FINAL FEE APPLICATION**
**OF PJT PARTNERS LP AS INVESTMENT BANKER TO THE DEBTORS**
**AND DEBTORS-IN-POSSESSION FOR ALLOWANCE (AND FINAL APPROVAL) OF**
**COMPENSATION FOR SERVICES RENDERED AND FOR THE REIMBURSEMENT**
**OF ALL ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD**
**FROM JUNE 24, 2025 THROUGH AUGUST 19, 2025**

PJT Partners LP ("***PJT***") respectfully represents as follows:

**I. Background**

1. On June 24, 2025 (the "***Petition Date***"), the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended (the "***Bankruptcy Code***"). The Debtors operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On July 8, 2025, this Court entered the *Order (I) Authorizing and Approving (A) the Bidding Procedures for Sale of Debtors' Assets Free and Clear, (B) the Scheduling of an Auction and Sale Hearing, (C) the Form and Manner of Notice of Sales, Auctions, and Sale Hearings, (D) the Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) the Designation of Stalking Horse Bidders, and (F) the*

---

[1] The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are: Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions, LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508). The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

*Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II)*
*Authorizing Designation of Stalking Horse Bidders and (III) Granting Related Relief* [Docket No.
110], (the "**Bidding Procedures Order**"), authorizing and approving, among other things, bidding
procedures for the Debtors' assets.

      3.   On July 14, 2025, the Debtors filed the *Application of Debtors for Entry of an Order*
*(I) Authorizing the Retention and Employment of PJT Partners LP as Investment Banker* to *the*
*Debtors and Debtors in Possession Effective as of the Petition Date, (II) Waiving Certain*
*Information Requirements Pursuant to Local Rule 2016-2, and (III) Granting Related Relief*
[Docket No. 146] (the "**Retention Application**"), pursuant to which the Debtors sought authority
to employ and retain PJT as their investment banker pursuant to the terms of an engagement letter
(the "**Engagement Letter**") dated June 24, 2025.  A copy of the Engagement Letter was attached
to the Retention Application.

      4.   On July 31, 2025, this Court entered the *Order Pursuant to 11 U.S.C. §§ 331, 330,*
*and 105(a) and Fed. R. Bankr. P. 2016 (I) Establishing Procedures for Interim Compensation and*
*Reimbursement of Expenses of Professionals, and (II) Granted Related Relief* [Docket No. 258]
(the "**Compensation Procedures Order**") establishing procedures for interim compensation and
reimbursement of expenses for professionals.

      5.   On August 1, 2025, this Court entered the *Order (I) Authorizing the Retention and*
*Employment of PJT Partners LP as Investment Banker to the Debtors and Debtors in Possession*
*Effective as of the Petition Date, (II) Waiving Certain Information Requirements Pursuant to Local*
*Rule 2016-2, and (III) Granting Related Relief* [Docket No. 262] (the "**Retention Order**")
approving the Retention Application and authorizing the employment and retention of PJT
effective as of the Petition Date, pursuant to the terms of the Engagement Letter.

6. PJT submits this first and final fee application (the "***First and Final Fee Application***") requesting the allowance (and final approval) of PJT's Restructuring Fee (as defined below) earned for investment banking services rendered to the Debtors and the reimbursement of out-of-pocket expenses incurred during the period of June 24, 2025 through August 19, 2025 (the "***Retention Period***").

7. Investment banking services and out-of-pocket expenses for which compensation and reimbursement are sought were rendered and incurred on behalf of the Debtors in accordance with the Retention Order.

## The PJT Engagement[2]

8. Pursuant to the Engagement Letter, PJT was retained to provide the following services to the Debtors:

(a) assist in the evaluation of the Debtors' businesses and prospects;

(b) assist in the evaluation of the Debtors' long-term business plan and related financial projections;

(c) assist in the development of financial data and presentations to the Debtors' Board of Directors, various creditors, potential buyers and other third parties;

(d) analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;[3]

(e) provide strategic advice with regard to a Restructuring (including a Sale Transaction);

(f) participate in negotiations among the Debtors and its creditors, suppliers, potential buyers and other interested parties;

---

[2] Capitalized terms used but not defined herein shall have the meanings provided to them in the Engagement Letter

[3] As used in the Engagement Letter, the term "***Restructuring***" means (i) any restructuring, reorganization (whether or not pursuant to chapter 11 of the Bankruptcy Code ("***Chapter 11***")) and/or recapitalization of the Debtors affecting any of its existing or potential debt obligations or other claims against the Debtors, including, without limitation, senior debt, junior debt, trade claims, general unsecured claims, and preferred stock (collectively, the "***Obligations***"), and/or (ii) a sale or other disposition of any material assets and/or equity of the Debtors (with any transaction described in the foregoing clause (ii) being referred to herein as a "***Sale Transaction***"), and/or (iii) any complete or partial repurchase, refinancing, extension or repayment by the Debtors of any of the Obligations.

(g) assist the Debtors in preparing marketing materials in conjunction with a possible Sale Transaction;

(h) assist the Debtors in identifying potential buyers or parties in interest to a Sale Transaction and assist in the due diligence process;

(i) assist and advise the Debtors concerning the terms and conditions of any Sale Transaction;

(j) provide expert witness testimony concerning any of the subjects encompassed by the other investment banking services listed herein; and

(k) provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a transaction similar to a potential Restructuring, as requested and mutually agreed.

9. Pursuant to the Engagement Letter, as approved by the Retention Order, the Debtors agreed to pay PJT as follows in consideration for the services rendered:[4]

---

[4] This description of PJT's compensation structure is for summary and illustrative purposes only. The terms of the Engagement Letter and the Retention Order shall apply to any such compensation awarded to PJT.

4

(a) **Restructuring Fee**. a fee (the "***Restructuring Fee***") equal to (a) $3,000,000, earned and payable in cash upon consummation of a Restructuring (which, for the avoidance of doubt, could be a Sale Transaction) (provided that such $3,000,000 may only be earned and payable once regardless of how many Sale Transactions are consummated), plus (b) an additional amount equal to 5% of the Transaction Value (as defined below) in excess of the Transaction Value[5] initially offered by a stalking horse bidder pursuant to an asset purchase (or similar) agreement in connection with any Sale Transaction, earned and payable in cash upon the consummation of such Sale Transaction. Except as otherwise provided herein, a Restructuring (including, without limitation, a Sale Transaction) shall be deemed to have been consummated upon the consummation of a Chapter 11 plan, section 363 sale and/or any other Restructuring pursuant to an order of the Bankruptcy Court or other applicable court; and

(b) **Expense Reimbursements**.  In addition to the fees described above, the Debtors agree to reimbursement of all reasonable and documented out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of PJT Partners' counsel (without the requirement that the retention of such counsel be approved by the court in any bankruptcy case) and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

---

[5] Pursuant to the Engagement Letter, "***Transaction Value***" means "the gross value of all cash, securities and other properties paid or payable, directly or indirectly, in one transaction or in a series or combination of transactions, in connection with the Sale Transaction or a transaction related thereto (including, without limitation, amounts paid (A) pursuant to covenants not to compete or similar arrangements and (B) to holders of any warrants, stock purchase rights, convertible securities or similar rights and to holders of any options or stock appreciation rights, whether or not vested). Transaction Value shall also include (i) (I) in the case of the sale, exchange or purchase of the Company's equity securities the principal amount of any indebtedness for borrowed money, preferred stock obligations, any pension liabilities, capital leases, guarantees and any other long-term liabilities as set forth on the most recent consolidated balance sheet of the Company prior to the consummation of such sale, exchange or purchase or (II) in the case of a sale or disposition of assets by the Company the principal amount of any indebtedness for borrowed money, preferred stock obligations, any pension liabilities, capital leases, guarantees and any other long-term liabilities indirectly or directly assumed or acquired, and (ii) any indebtedness for borrowed money, preferred stock obligations, any pension liabilities, capital leases, guarantees and any other long-term liabilities that are or otherwise repaid or retired, in connection with or in anticipation of the Sale Transaction. Transaction Value shall also include the aggregate amount of any extraordinary dividend or distribution made by the Company from the date hereof until the closing of the Sale Transaction. Transaction Value shall be reduced by any cash or cash equivalents transferred to, or retained by, the acquirer in the Restructuring. Transaction Value shall include all amounts paid into escrow and all contingent payments payable in connection with the Sale Transaction, with fees on amounts paid into escrow to be payable upon the disbursements of such amounts from such escrow and fees on contingent payments to be payable when such contingent payments are made. If the Transaction Value to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such Transaction Value is paid. the value of any securities (whether debt or equity) or other property paid or payable as part of the Transaction Value shall be determined as follows: (1) the value of securities that are freely tradable in an established public market will be determined on the basis of the last market closing price prior to the public announcement of the Sale Transaction; and (2) the value of securities that are not freely tradable or have no established public market or, if the Transaction Value utilized consists of property other than securities, the value of such other property shall be the fair market value thereof as mutually agreed by the parties hereto."

## <u>Services Provided by PJT During the Retention Period</u>

10. PJT has rendered professional services to the Debtors as requested and in furtherance of the interests of the Debtors and the Debtors' estates.  The variety and complexity of the issues in the chapter 11 cases and the need to act or respond to such issues on an expedited basis have required the expenditure of substantial time by PJT personnel.  PJT respectfully submits that the professional services that it rendered on behalf of the Debtors were necessary and appropriate, and have directly contributed to the effective administration of this chapter 11 case. The following summary of services rendered during the Retention Period is not intended to be an exhaustive description of the work performed; rather, it is merely an attempt to highlight certain of those areas in which PJT rendered services to the Debtors:

    (a) assisted in the development of financial data and presentations to the Debtors, various creditors, and other third parties, including various stakeholders and their advisors;

    (b) conducted extensive marketing and outreach to third party strategic and financial sponsors;

    (c) supported the diligence of interested parties;

    (d) negotiated, along with the Debtors' counsel, the terms of additional bids from non-stalking horse buyers, including in connection with the Debtors' auction;

    (e) participated in negotiations among the Debtors and their various stakeholders;

    (f) prepared and filed declarations in support of the bidding procedures and DIP financing;

    (g) assisted with the negotiation of DIP financing;

    (h) prepared declarations filed with the court and attended various court hearings;

    (i) conducted the 363 auction along with counsel; and

    (j) assisted counsel with various services, as requested, including related to preparation for court hearings.

## Services Provided by PJT Prior to the Retention Period

11. Given that the Debtors initially retained PJT as their investment banker in connection with a potential sale of the Debtors' assets prior to the Petition Date, in addition to the substantial work performed by PJT during the Retention Period, a significant portion of PJT's work was performed prior to the bankruptcy filing.  So as not to unduly burden the Court, the following is a summary of the services provided by PJT on behalf of the Debtors prior to the chapter 11 filing:

(a) evaluated the Debtors' business plan;

(b) developed financial data and presentations for the Debtors' Board of Directors and various creditors and their advisors;

(c) analyzed the Debtors' financial liquidity and debt capacity, and evaluated alternatives to improve such liquidity, through both the Debtors' Chapter 11 Cases and post-emergence;

(d) prepared marketing materials, due diligence responses, and conducted the pre-petition sale process of the Debtors' two non-core assets;

(e) solicited preliminary indications of interest from potential buyers;

(f) negotiated, along with the Debtors' counsel, the terms of the third-party stalking horse bids;

(g) assisted with the negotiation of DIP financing; and

(h) assisted counsel with various services, as requested, including with respect to the preparation of the Chapter 11 Cases

## The PJT Team

12. The investment banking services set forth above were performed primarily by: Avram Robbins, Partner; James Lilly, Managing Director; Wei Wen, Vice President; Asher Eddy, Associate; Marilia Bagatini, Associate; Daniel Armagh, Associate; Victoria Geh, Analyst; Olivia Schewe, Analyst; and Nisha Ray, Analyst.  Details of the background and experience of the professionals currently employed at PJT are provided in ***Appendix A***.

7

**PJT's Request for Allowance (and Final Approval) of the Restructuring Fee Earned**

13. As set forth in Engagement Letter, as approved by the Retention Order, PJT earned a Restructuring Fee during the Retention Period in the aggregate amount of $4,587,300, and incurred actual and necessary out-of-pocket expenses in the amount of $778.17, in respect of the following sales of the Debtors assets:

- **Sale of Job Board to Bold Holdings LLC:** On July 28, 2025, this Court entered the *Order (I) Authorizing and Approving the Debtors' Entry into an Asset Purchase Agreement with Bold Holdings LLC, (II) Authorizing the Sale of The Purchased Assets Free and Clear of All Encumbrances, (III) Approving the Assumption and Assignment of the Selected Assigned Contracts, and (IV) Granting Related Relief* [Docket No. 235]. This sale was consummated on July 31, 2025.

- **Sale of Monster Government Solutions (MGS) to Sherrill-Lubinski, LLC and Eti-Net Inc.:** On July 28, 2025, this Court entered the *Order (I) Authorizing and Approving the Debtors' Entry into an Asset Purchase Agreement with Sherrill-Lubinski, LLC and Eti-Net Inc., (II) Authorizing the Sale of the Purchased Assets Free and Clear Of All Liens, Encumbrances, Claims and Interests, (III) Approving the Assumption and Assignment of the Selected Assigned Contracts, and (IV) Granting Related Relief* [Docket No. 236]. This sale was consummated on July 31, 2025.

- **Sale of Monster Media Properties (MMP) to Valnet US, Inc.:** On July 29, 2025, this Court entered the *Order (I) Authorizing and Approving the Debtors' Entry into an Asset Purchase Agreement with Valnet US, Inc., (II) Authorizing the Sale of the Purchased Assets Free and Clear of All Encumbrances, (III) Approving the Assumption and Assignment of the Selected Assigned Contracts, and (IV) Granting Related Relief* [Docket No. 237]. This sale was consummated on July 31, 2025.

14. As a consequence of the closing of these sales, in accordance with the Engagement Letter, as approved by the Retention Order, PJT earned a Restructuring Fee equal to (a) $3,000,000, plus (b) an additional amount equal to 5% of the Transaction Value in excess of the Transaction Value initially offered by a stalking horse bidder. The following chart sets forth the Transaction Value offered by the initial stalking horse bidder and the final Transaction Value received by the Debtors in each of these sales.

8

| Asset | Stalking Horse Bid | Final Bid | Net Transaction Value[6] | Excess Amount | 5% Fee Due PJT |
|---|---|---|---|---|---|
| Job Board | $7.0mm | $28.37mm | $27.72mm | $20.72mm | $1.04mm |
| MGS | $6.0mm | $13.00mm | $12.28mm | $6.28mm | $0.31mm |
| MMP | $22.5mm | $27.25mm | $27.25mm | $4.75mm | $0.24mm |
| | | | | | |
| Additional Fee | | | | | $1,587,300.00 |
| Base Fee | | | | | $3,000,000.00 |
| **Total Restructuring Fee** | | | | | **$4,587,300.00** |

15. PJT respectfully requests the allowance and final approval by the Court of the Restructuring Fee earned and out-of-pocket expenses incurred during the Retention Period pursuant to this First and Final Fee Application.

16. An invoice detailing the Restructuring Fee earned during the Retention Period is attached hereto as ***Appendix B***.  A summary of the compensation earned and out of-pocket expenses incurred during the Retention Period is outlined below:

| Retention Period | Fees | Out-of-Pocket Expenses | Amount Due |
|---|---|---|---|
| Restructuring Fee | $4,587,300.00 | $778.17 | **$4,588,078.17** |

17. PJT respectfully submits that the compensation requested for the services rendered by PJT to the Debtors during the Retention Period is fully justified and reasonable based upon (a) the complexity of the issues presented, (b) the skill necessary to perform the financial advisory services properly, (c) the preclusion of other employment, (d) the customary fees charged to clients in non-bankruptcy situations for similar services rendered, (e) time constraints required by the exigencies of the case, and (f) the experience, reputation and ability of the professionals rendering services.

18. PJT respectfully submits that the services it has rendered to the Debtors have been necessary and in the best interests of the Debtors and the Debtors' estates.  PJT respectfully submits

---

[6] The amounts reflected below represents the Transaction Value of each bid after deductions for the payment of any required bid protections to the stalking horse bidder.

9

that under the criteria normally examined in chapter 11 reorganization cases, the compensation requested by PJT is reasonable in light of the work performed by PJT during these chapter 11 cases.

19. The amount of the compensation sought in this First and Final Fee Application and PJT's billing practices are consistent with market practices in a bankruptcy context. PJT has never billed its clients based on the number of hours expended by its professionals. Accordingly, PJT does not have hourly rates for its professionals, and PJT's professionals generally do not maintain detailed time records of the work performed for its clients. However, PJT has maintained contemporaneous time records in this case in one-half hour increments. Time records of the 524.5 hours expended by PJT professionals in providing investment banking services to the Debtors during the Retention Period are provided in ***Appendix C***.

20. A summary of hours expended by PJT professionals during the Retention Period is provided below:

| Hours Expended By Professional | | | |
|---|---|---|---|
| **Professionals** | **June 24 – 30, 2025** | **July 2025** | **August 1 – 19, 2025** | **Total** |
|---|---|---|---|---|
| Avram Robbins | 6.0 | 29.5 | - | 35.5 |
| James Lilly | 17.0 | 90.5 | 3.5 | 111.0 |
| Wei Wen | 14.5 | 45.5 | 1.0 | 61.0 |
| Asher Eddy | 22.0 | 96.0 | 1.0 | 119.0 |
| Marilia Bagatini | 24.5 | 50.5 | - | 75.0 |
| Daniel Armagh | 14.5 | 51.5 | - | 66.0 |
| Victoria Geh | 8.0 | 15.0 | - | 23.0 |
| Olivia Schewe | 4.5 | - | - | 4.5 |
| Nisha Ray | 18.5 | 11.0 | - | 29.5 |
| **Total** | **129.5** | **389.5** | **5.5** | **524.5** |

21. Out-of-pocket expenses incurred by PJT are charged to a client if out-of-pocket expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client. PJT does not factor general overhead expenses into any disbursements charged to its clients in connection with chapter 11 cases. PJT has followed its general internal

policies with respect to out-of-pocket expenses billed as set forth below, with any exceptions specifically explained.  PJT's general internal policies include:

(a)  All cross-country airfare charges are based upon coach class rates.

(b)  With respect to local travel, PJT's general policy enables employees to travel by taxi or, in certain circumstances private car service, to and from meetings while rendering services to a client on a client related matter, for which the client is charged.  Further, and primarily for safety reasons, employees are permitted to charge to a client the cost of transportation home if an employee is required to work past 9:00 p.m. on  weekdays on client specific matters.

(c)  PJT's general policy permits its professionals to charge in-office dinner meals to a client after working 3 hours beyond their regularly scheduled workday if an employee is required to provide services to the client during such dinnertime, and to charge in-office meals on the weekend if an employee is required to provide services to a client on the weekend and spends at least 4 hours working.

(d)  The External Research category of expenses includes charges from outside computer/electronic service companies that supply, for a fee, research and/or financial documents to PJT.  The services provided by these companies primarily consist of the retrieval of financial documents from regulatory agencies and/or retrieval of research that would not otherwise be available to PJT.  The Internal Research category of expenses are the charges for time spent by PJT research staff in operating the computer/electronic terminals related to these computer/electronic service companies.

(e)  The Publishing Services category of expenses includes charges for the production of text-based publications such as research reports and presentations, and printing and binding services.

22. All services for which PJT requests compensation were performed for and on behalf of the Debtors and not on behalf of any other person or stakeholder.

23. No agreement or understanding exists between PJT and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with this proceeding.

## VI. <u>Certificate of Compliance and Waiver</u>

24. The undersigned representative of PJT certifies that PJT has reviewed the requirements of Rule 2016-1 of the Local Rules of the United States Bankruptcy Court for the

District of Delaware (the "***Local Rules***") and that this First and Final Fee Application substantially complies with that Local Rule.  To the extent that this First and Final Fee Application does not comply in all respects with the requirements of Local Rule 2016-1, PJT believes that such deviations are not material and respectfully requests that any such requirement be waived.

### Requested Relief

**WHEREFORE**, PJT requests that the Court:

(a) allow and grant final approval of (i) PJT's Restructuring Fee earned in the amount of $4,587,300, and (ii) the reimbursement of PJT's out-of-pocket expenses in the amount of $778.17, in each case earned or incurred during the Retention Period;

(b) authorize and direct the Debtors to pay PJT's allowed and unpaid fees earned during the Retention Period as follows:

| | |
|---|---:|
| Restructuring Fee | $4,587,300.00 |
| Out-of-Pocket Expenses | 778.17 |
| **Amount Due PJT** | **$4,588,078.17** |

(c) grant such other and further relief as the Court deems just and proper.

Dated: September 9, 2025

PJT Partners LP
Investment Banker to the Debtors


By: /s/ *Aram Robbins*
    Avram Robbins
    Partner
    280 Park Avenue
    New York, NY 10017
    (212) 364-7800