**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ZEN JV, LLC, *et al.*,[1]<br><br>                   Debtors. | Chapter 11<br><br>Case No. 25-11195 (JKS)<br><br>(Jointly Administered)<br><br>**Related Docket No. 325** |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF DEBTORS' AMENDED COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits this statement (this "Statement") in support of the *Debtors' Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 336] (the "Amended Plan").[2] The Committee respectfully states as follows in support of the Amended Plan:

      1.      Shortly after its appointment, the Committee commenced a fulsome investigation into potential estate claims that could be pursued for the benefit of unsecured creditors, including claims against the Prepetition Secured Parties and certain insiders of the Debtors. That investigation primarily focused on, among other things:

           (i)    claims to challenge the extent, validity, and perfection of the liens asserted by (a) the Prepetition Term Loan Lenders in connection with their $135.2 million in Prepetition Term Loan Claims, and (b) the Prepetition

---

[1] The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are: Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508). The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Amended Plan.

     Noteholders in connection with their $226.1 million in Prepetition Notes Claims;

(ii)  claims to avoid certain payments made by the Debtors to the Prepetition Notes Secured Parties on account of certain intercompany services as preferential transfers; and

(iii)  claims related to or arising from the Business Combination.

2.  The Committee's investigation ultimately did not reveal any colorable claims that would, in the Committee's view, materially improve recoveries for general unsecured creditors if litigated. As a result, the Committee engaged the Debtors and the Prepetition Secured Parties in negotiations regarding a consensual resolution of all issues raised by these Chapter 11 Cases. Those negotiations ultimately culminated in a global settlement between the parties (the "<u>Global Settlement</u>") that maximizes potential recoveries for the Debtors' unsecured creditors. The Global Settlement is incorporated in the Amended Plan and provides for materially improved treatment for unsecured creditors than what was provided for in the initial chapter 11 plan filed at Docket No. 305 (the "<u>Initial Plan</u>"), as set forth below:

(i)  <u>GUC Recoveries</u>. General unsecured creditors will now receive their *pro rata* share of the Liquidation Trust Assets, which includes (a) all cash remaining in the Estates on the Effective Date after the funding of the certain reserves established to pay Allowed Professional Fee Claims, Administrative Expense Claims, and Priority Tax Claims, and to fund the administration of the Liquidation Trust (the "<u>Reserves</u>"), (b) all cash remaining in the Reserves after payment in full of the respective Allowed Claims and trust administration expenses, and (c) all other remaining Assets of the Estates as of the Effective Date. Under the Initial Plan, general unsecured creditors were entitled to receive their *pro rata* share of the "GUC Recovery Pool," which was comprised exclusively of any unused amounts of the $2 million budgeted to pay allowed fees of Committee professionals and the $2 million budgeted to fund the administration of the Liquidation Trust.[3]

(ii)  <u>Waiver of Secured Deficiency Claims</u>. The Prepetition Secured Parties have agreed to waive their Deficiency Claims, which were not waived under the Initial Plan. This will effectively cap the Prepetition Term Loan

---

[3] "<u>GUC Recovery Pool</u>" was defined as "the Committee Professional Fee Savings Amount *plus* the Wind-Down Savings Amount." *See* Initial Plan, Art. II(A)(76). *See also* Initial Plan, Art. VII(A)(5)(b).

        Secured Parties' and the Prepetition Notes Secured Parties' aggregate recoveries at $12,060,160 and $21,538,799, respectively,[4] and preserve all remaining Estate value for the benefit of general unsecured creditors.

    (iii)    <u>Administrative and Priority Claim Reserves</u>.  Reserves will be established on the Effective Date for the payment of, among other things, Allowed Administrative Expense Claims and Allowed Priority Tax Claims.  Under the Global Settlement, if the Debtors do not have sufficient cash on hand as of the Effective Date to fund these Reserves, the Prepetition Secured Notes Parties have agreed to fund any shortfall from the $21,538,799 Prepetition Notes Reserve, provided that the Prepetition Secured Notes Parties shall receive first recoveries from the Liquidation Trust Assets until they receive their aggregate $21,538,799 recovery.

3.    The Global Settlement provides superior treatment for general unsecured creditors than what was provided in the Initial Plan.  As set forth in Article V of the Amended Plan, the Debtors now estimate that projected recoveries to Holders of Allowed General Unsecured Claims will be between 0%[5] to 9.7%.  Moreover, the Global Settlement provides a runway towards confirmation of a consensual chapter 11 plan and payment in full of Allowed Administrative Expense Claims.  The resolution also avoids costly litigation that, in the Committee's view, would very likely result in the immediate conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.  The Committee strongly believes conversion would yield materially lower recoveries or no recoveries to general unsecured creditors, and that the Global Settlement represents a far superior outcome to conversion.

4.    In light of the foregoing, the Committee supports the Amended Plan and recommends that general unsecured creditors vote in favor of the Amended Plan.

*[Remainder of Page Intentionally Left Blank]*

---

[4] *See* Amended Plan, Art. V.

[5] The 0% estimate represents the lowest case scenario to account for certain risk factors described more fully in Article III.H of the Amended Plan.

| | |
|---|---|
| Dated: September 24, 2025<br>Wilmington, Delaware | **COLE SCHOTZ P.C.**<br><br>*/s/ Justin R. Alberto*<br>Justin R. Alberto (No. 5126)<br>Melissa M. Hartlipp (No. 7063)<br>Elazar A. Kosman (No. 7077)<br>500 Delaware Avenue, Suite 600<br>Wilmington, DE 19801<br>Tel:   (302) 652-3131<br>Fax:   (302) 652-3117<br>Email: jalberto@coleschotz.com<br>         mhartlipp@coleschotz.com<br>         ekosman@coleschotz.com<br><br>-and-<br><br>Seth Van Aalten (admitted *pro hac vice*)<br>Sarah A. Carnes (admitted *pro hac vice*)<br>1325 Avenue of the Americas, 19th Floor<br>New York, NY 10019<br>Tel:   (212) 752-8000<br>Fax:   (212) 752-8393<br>Email: svanaalten@coleschotz.com<br>         scarnes@coleschotz.com<br><br>*Counsel to the Official Committee of Unsecured Creditors* |