## Exhibit 1

**Changed Pages Only Blackline**

THE COMBINED PLAN AND DISCLOSURE STATEMENT
HAS BEEN APPROVED FOR SOLICITATION PURPOSES

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x

In re:                 :    Chapter 11

                          :

ZEN JV, LLC, *et al.*,[1]         :    Case No. 25-11195 (JKS)

                          :    (Jointly Administered)

       Debtors.            :

                          :

------------------------------------------------------- x

## DEBTORS' SECOND AMENDED COMBINED
## DISCLOSURE STATEMENT AND JOINT
## CHAPTER 11 PLAN OF LIQUIDATION

| | |
|---|---|
| **LATHAM & WATKINS LLP** | **RICHARDS, LAYTON & FINGER, P.A.** |
| Ray C. Schrock (admitted *pro hac vice*) | Daniel J. DeFranceschi (No. 2732) |
| Candace M. Arthur (admitted *pro hac vice*) | Zachary I. Shapiro (No. 5103) |
| 1271 Avenue of the Americas | Huiqi Liu (No. 6850) |
| New York, New York 10020 | Clint M. Carlisle (No. 7313) |
| | Colin A. Meehan (No. 7237) |
| - and - | One Rodney Square |
| | 920 North King Street |
| Jonathan C. Gordon (admitted *pro hac vice*) | Wilmington, Delaware 19801 |
| 330 North Wabash Avenue, Suite 2800 | |
| Chicago, Illinois 60611 | |

*Co-Counsel for Debtors and Debtors in Possession*

Dated: October 3, 2025
       Wilmington, Delaware

---

[1] The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are: Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions, LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508). The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. DEFINITIONS AND CONSTRUCTION OF TERMS ................................................... 1

    A.  Definitions ............................................................................................................... 1

    B.  Interpretation; Application of Definitions and Rules of Construction .............. ~~15~~16

III. BACKGROUND AND DISCLOSURES ......................................................................... 16

    A.  General Background ............................................................................................. 16

    B.  Events Leading up to the Chapter 11 Filing ...................................................... 18

    C.  The Chapter 11 Cases ......................................................................................... 20

    D.  Certain Federal Income Tax Consequences ...................................................... 26

    E.  Alternate Plans ................................................................................................ ~~26~~27

    F.  Best Interests Test and Liquidation Analysis ................................................. ~~26~~27

    G.  Releases by the Debtors and Holders of Claims ............................................... 27

    H.  Certain Risk Factors to be Considered .............................................................. 28

IV. TREATMENT OF UNCLASSIFIED CLAIMS ............................................................. 29

    A.  Administrative Expense Claims .......................................................................... 29

    B.  Professional Fee Claims .................................................................................. ~~29~~30

    C.  Priority Tax Claims .......................................................................................... ~~29~~30

    D.  Payment of Statutory Fees .................................................................................. 30

V. SUMMARY OF TREATMENT OF CLAIMS AND ESTIMATED RECOVERIES ...... ~~30~~31

VI. CONFIRMATION AND VOTING PROCEDURES ..................................................... ~~31~~32

    A.  Confirmation Procedure .................................................................................. ~~31~~32

    B.  Bar Dates for Professional Fee Claims .............................................................. 35

VII. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ............................... ~~35~~36

VIII. TREATMENT OF CLAIMS AND EQUITY INTERESTS ...................................... ~~36~~37

    A.  Treatment of Claims ........................................................................................ ~~36~~37

    B.  Modification of Treatment of Claims and Equity Interests ........................... ~~39~~40

    C.  Cramdown and No Unfair Discrimination ...................................................... ~~39~~40

IX. PROVISIONS REGARDING THE LIQUIDATION TRUST ...................................... ~~39~~40

    A.  Appointment of the Liquidation Trustee ......................................................... ~~39~~40

    B.  Creation of the Liquidation Trust ................................................................... ~~40~~41

    C.  Liquidation Trust Beneficiaries ...................................................................... ~~40~~41

    D.  Vesting and Transfer of the Liquidation Trust Assets to the Liquidation Trust ... ~~40~~41

E.  Distributions from the Liquidation Trust ........................................ 41

F.  Liquidation Trust Expenses ...................................................... 4142

G.  Certain Powers and Duties of the Liquidation Trust and Liquidation Trustee ....... 4142

H.  United States Federal Income Tax Treatment of the Liquidation Trust for the Liquidation Trust Assets ................................................. 4243

I.  Term of Liquidation Trust ..................................................... 4344

J.  Limitation of Liability of the Liquidation Trustee; Indemnification .............. 4344

X. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT ............................................ 4445

A.  Method of Payment ........................................................... 4445

B.  Objections to and Resolution of Claims ......................................... 4445

C.  Claims Objection Deadline .................................................... 4445

D.  No Distribution Pending Allowance ............................................ 4445

E.  Claims Reserve .............................................................. 4445

F.  Distribution After Allowance .................................................. 4546

G.  Adjustments to Claims Without Objection ...................................... 4546

H.  Distribution Record Date ..................................................... 4546

I.  Delivery of Distributions ..................................................... 4546

J.  Unclaimed Distributions ..................................................... 4647

K.  *De Minimis* Distributions ................................................... 4647

L.  Setoff 4647

M.  Postpetition Interest ........................................................ 4647

N.  Allocation of Distributions Between Principal and Interest ....................... 4648

O.  Final Distribution ........................................................... 48

XI. ADDITIONAL MEANS FOR IMPLEMENTATION ................................ 4748

A.  Authority to Act ............................................................ 4748

B.  Effectuating Documents and Further Transactions ............................... 4748

C.  Release of Liens; Cancellation of Prepetition Term Loan Credit Agreement ........ 4749

D.  Limited Substantive Consolidation ............................................ 4849

XII. EXCULPATION, RELEASES AND INJUNCTIONS ............................... 4850

A.  Exculpation ................................................................ 4850

B.  Releases by the Debtors ...................................................... 4950

C.  Releases by Holders of Claims ................................................ 5051

ii

D.  Injunctions Relating to Releases .................................................... ~~50~~52

E.  Injunctions to Protect Estate Assets .............................................. ~~51~~52

XIII. EXECUTORY CONTRACTS .................................................................. ~~51~~53

A.  Assumption and Rejection of Executory Contracts ........................ ~~51~~53

B.  Determination of Cure Disputes and Deemed Consent ................... ~~52~~53

C.  Deadline for Filing Proofs of Claim Relating to Executory Contracts Rejected Pursuant to the Combined Plan and Disclosure Statement ............... ~~53~~54

D.  Indemnification Obligations ........................................................... ~~53~~55

E.  Insurance Policies ......................................................................... ~~54~~55

XIV. CONDITIONS PRECEDENT TO AND OCCURRENCE OF CONFIRMATION AND THE EFFECTIVE DATE ....................................................................... ~~54~~55

A.  Conditions Precedent to the Effective Date .................................... ~~54~~55

B.  Establishing the Effective Date ...................................................... ~~54~~56

C.  Effect of Failure of Conditions ...................................................... ~~55~~56

D.  Waiver of Conditions to Effective Date .......................................... ~~55~~56

XV. RETENTION OF JURISDICTION ............................................................ ~~55~~56

XVI. MISCELLANEOUS PROVISIONS .......................................................... ~~57~~58

A.  Avoidance Actions ......................................................................... ~~57~~58

B.  Termination of Injunctions or Stays ............................................... ~~57~~58

C.  Amendment or Modification of the Combined Plan and Disclosure Statement ... ~~57~~58

D.  Severability .................................................................................... ~~57~~59

E.  Revocation or Withdrawal of the Combined Plan and Disclosure Statement ... ~~58~~59

F.  Immediate Binding Effect ............................................................... ~~58~~59

G.  Notices .......................................................................................... ~~58~~60

H.  Governing Law ............................................................................... ~~58~~60

I.  Withholding and Reporting Requirements ....................................... ~~59~~60

J.  Exemption from Transfer Taxes ...................................................... ~~59~~60

K.  Headings ........................................................................................ ~~59~~61

L.  Exhibits/Schedules ......................................................................... ~~60~~61

M. Filing of Additional Documents ...................................................... ~~60~~61

N.  No Admissions ............................................................................... ~~60~~61

O.  Successors and Assigns .................................................................. ~~60~~61

P.  Reservation of Rights ..................................................................... ~~60~~61

~~RLF1 33726890v.1~~RLF1 33945107v.1

Q.  Implementation .......................................................................................... 6062

R.  Inconsistency ............................................................................................. 6062

S.  Dissolution of the Debtors ......................................................................... 6162

T.  Abandonment of Non-Debtor Equity Interests .......................................... 6162

U.  Directors, Officers, Managers, Members and Authorized Persons of the Debtors. 6162

V.  Dissolution of the Committee .................................................................... 6162

W. Compromise of Controversies ................................................................... 6163

X.  Votes Solicited in Good Faith .................................................................... 6263

Y.  Request for Expedited Determination of Taxes .......................................... 6263

RLF1 33726890v.1RLF1 33945107v.1

**<u>NOTICE</u>**

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE COMBINED PLAN AND DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ON THE DEBTORS OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED PLAN AND DISCLOSURE STATEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, EACH HOLDER OF A CLAIM THAT IS ENTITLED TO VOTE SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THE COMBINED PLAN AND DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL HEREIN.

**THE DEBTORS SUPPORT CONFIRMATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT AND RECOMMEND ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

## I. INTRODUCTION

Zen JV, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), with the support of the Committee, hereby propose the *Debtors' Second Amended Combined Disclosure Statement and Joint Plan of Liquidation* (the "**Combined Plan and Disclosure Statement**") pursuant to sections 1125 and 1129 of the Bankruptcy Code. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an Order of the Bankruptcy Court. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article II.A.

The Combined Plan and Disclosure Statement constitutes a joint liquidating chapter 11 plan for the Debtors and provides for the Distribution of the Debtors' Assets already liquidated or to be liquidated over time to the Holders of Allowed Claims in accordance with the terms of the Combined Plan and Disclosure Statement and the priority of claims provisions of the Bankruptcy Code. This Combined Plan and Disclosure Statement constitutes a separate chapter 11 plan for each Debtor and, unless otherwise set forth herein, the classifications and treatment of Claims and Equity Interests apply to each individual Debtor. Except as otherwise provided by Order of the Bankruptcy Court, Distributions will occur on the Effective Date or as soon thereafter as is practicable and at various intervals thereafter.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article XVI.C of the Combined Plan and Disclosure Statement, the Debtors expressly reserve the right to alter, amend or modify the Combined Plan and Disclosure Statement, including the Plan Supplement, one or more times, before substantial consummation thereof.

## II. DEFINITIONS AND CONSTRUCTION OF TERMS

### A. Definitions

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:[2]

1. "**Administrative Expense Bar Date**" means the Business Day that is 30 days after the Effective Date, or such other date as approved by Final Order of the Bankruptcy Court, and by which a request for payment of an Administrative Expense Claim (other than a Professional Fee Claim or any Statutory Fees) must be Filed; *provided* that in accordance with the Bar Date Order, Claims arising under section 503(b)(9) of the Bankruptcy Code are required to be filed by the General Bar Date.

---

[2]    Copies of all filings in the Chapter 11 Cases (as defined herein) can be obtained and viewed free of charge at the following web address: *https://omniagentsolutions.com/CareerBuilderMonster*.

2.    "**Administrative Expense Claim**" means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code including, without limitation, (a) any actual and necessary costs and expenses of preserving the Estates, (b) all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, (c) any Statutory Fees, and (d) all Claims arising under section 503(b)(9) of the Bankruptcy Code.

3.    "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

4.    "**AlixPartners**" means AlixPartners, LLP.

5.    "**Allowed**" means, with respect to Claims:  (a) any Claim, proof of which was Filed (or for which Claim, under the Combined Plan and Disclosure Statement, the Bankruptcy Code, or a Final Order of the Bankruptcy Court, a Proof of Claim is not or shall not be required to be Filed); (b) any Claim which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent and for which no Proof of Claim has been Filed; (c) any Claim allowed pursuant to the Combined Plan and Disclosure Statement or a Final Order of the Bankruptcy Court; or (d) any Claim that is allowed by an agreement between the Holder of Such Claim or Interest and the Debtors prior to the Effective Date, or the ~~Liquidating~~Liquidation Trustee on or after the Effective Date; *provided* that any Claim described in clauses (a) and (b) shall be considered Allowed only if and to the extent that with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period fixed by the Combined Plan and Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or such objection is interposed and the Claim is subsequently Allowed by a Final Order; *provided*, *further*, that Claims allowed solely for purposes of voting on the Combined Plan and Disclosure Statement pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed" Claims hereunder.

6.    "**Amended Schedules Bar Date**" means the date that is 30 days after service of a notice to an applicable Creditor of an amendment to, or the addition of, its Claim reflected on the Schedules.

7.    "**Assets**" means all of the Debtors' property, rights, and interests that are property of the Estates pursuant to section 541 of the Bankruptcy Code.

8.    "**Assumption Dispute**" means a pending objection relating to assumption of an Executory Contract pursuant to section 365 of the Bankruptcy Code.

9.    "**Assumption Schedule**" means the schedule of Executory Contracts to be assumed by the Debtors and assigned to the Liquidation Trust, if any, pursuant to the Combined Plan and Disclosure Statement, to be filed as part of the Plan Supplement.

10.    "**Auction**" means the auction for the sale of the Debtors' Assets conducted in accordance with Bidding Procedures Order [Docket No. 110] and commenced on July 17, 2025.

RLF1 33726890v.1
RLF1 33945107v.1

Record Date shall be the later of seven (7) days prior to the Effective Date and the applicable Administrative Expense Bar Date and (y) with respect to Claims arising from the rejection, as of the Effective Date, of Executory Contracts or Unexpired Leases, the Distribution Record Date shall be the deadline by which the Holders of such Claims must file Proofs of Claim in accordance with Article XIII.C.

57.     "**Docket**" means the docket in the Chapter 11 Cases, including any adversary proceedings commenced therein, maintained by the Clerk.

58.     "**Effective Date**" means the date that is the first Business Day after the satisfaction or waiver of the conditions precedent to the Effective Date in Article XIV. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

59.     58.  "**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

60.     59.  "**Equity Interests**" means all equity interests in the Debtors including, but not limited to, all issued, unissued, authorized or outstanding shares together with any warrants, options or contract rights to purchase or acquire such interests at any time.

61.     60.  "**Estate(s)**" means the estates of the Debtors created upon the commencement of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

62.     61.  "**Exculpated Parties**" means the following Persons and Entities, each in their respective capacities as such: (a) the Debtors; (b) directors, officers, managers, managing members, and Professionals of the Debtors serving in such capacities at any time between the Petition Date and the Effective Date; and (c) the Committee and its Professionals and members.

63.     62.  "**Executory Contract**" means any Executory Contract as of the Petition Date between the Debtors and any other Person or Entity.

64.     63.  "**File**", "**Filed**", or "**Filing**" means file, filed or filing with the Bankruptcy Court in the Chapter 11 Cases.

65.     64.  "**Final DIP Order**" means the Final Order (A) Authorizing Debtors to (I) Obtain Postpetition Financing and (II) Use Cash Collateral, (B) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (C) Granting Adequate Protection, (D) Modifying Automatic Stay, and (E) Granting Related Relief [D.I. 239]

66.     65.  "**Final Order**" means an Order of the Bankruptcy Court or a Court of competent jurisdiction to hear appeals from the Bankruptcy Court, that has not been reversed, stayed, modified or amended and as to which the time to appeal, to petition for certiorari, or to move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; *provided*, *however*, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any

7

analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order shall not cause such order not to be a Final Order.

67. ~~66.~~ "**First Day Declaration**" means the Declaration of Michael Suhajda, Chief Financial Officer, in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 36].

68. ~~67.~~ "**First Day Motions**" means those motions and applications described in Article III.C.1 of the Combined Plan and Disclosure Statement.

69. ~~68.~~ "**General Bar Date**" means September 15, 2025 at 5:00 p.m. (prevailing Eastern Time), as stated in the Bar Date Notice.

70. ~~69.~~ "**General Unsecured Claim**" means any Claim other than an Administrative Expense Claim, Professional Fee Claim, Other Secured Claim, Priority Tax Claim, Other Priority Claim, Prepetition Term Loan Claim, Prepetition Notes Claim, and Intercompany Claim. For the avoidance of doubt, any Deficiency Claim of any Prepetition Secured Party shall not be a General Unsecured Claim but all other Deficiency Claims shall be General Unsecured Claims.

71. ~~70.~~ "**Global Settlement**" has the meaning ascribed to such term in Article III.C.5.

72. ~~71.~~ "**Global Settlement Parties**" has the meaning ascribed to such term in Article III.C.5.

73. ~~72.~~ "**Governmental Bar Date**" means December 22, 2025 at 5:00 p.m. (prevailing Eastern Time), as stated in the Bar Date Notice.

74. ~~73.~~ "**Governmental Unit**" has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

75. ~~74.~~ "**Holder**" means the beneficial holder of any Claim or Equity Interest.

76. ~~75.~~ "**Impaired**" means "impaired" as the term is used in sections 1123(a)(4) and 1124 of the Bankruptcy Code.

77. ~~76.~~ "**Intercompany Claims**" means Claims held by a Debtor or non-Debtor Affiliate against another Debtor and which do not include any Prepetition Notes Claims or Administrative Expense Claims of the Prepetition Notes Secured Parties or any controlled Affiliate thereof (in each case, regardless of capacity).

78. ~~77.~~ "**Interim DIP Order**" means the Interim Order (A) Authorizing Debtors to (I) Obtain Postpetition Financing and (II) Use Cash Collateral, (B) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (C) Granting Adequate Protection, (D) Modifying Automatic Stay, (E) Scheduling Final Hearing, and (F) Granting Related Relief [Docket No. 56].

79. ~~78.~~ "**Job Board APA**" means that certain Asset Purchase Agreement, dated as of July 27, 2025, by and among certain of the Debtors and BOLD Holdings LLC.

RLF1 33726890v.1
RLF1 33945107v.1

80. 79. "**Job Board Business**" means the CareerBuilder + Monster Job Board Business.

81. 80. "**Job Board Sale**" means the sale of certain of the Debtors' Assets pursuant to the Job Board APA.

82. 81. "**Lien**" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge, or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

83. 82. "**Liquidation Trust**" means the trust established on the Effective Date in accordance with the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement.

84. 83. "**Liquidation Trust Agreement**" means the trust agreement establishing the Liquidation Trust, which shall be in form and substance acceptable to the Debtors, the Prepetition Notes Secured Parties and the Committee.

85. 84. "**Liquidation Trust Assets**" means (a) Residual Cash on Hand, if any; (b) the Residual Reserve Amount, if any; and (c) all other Assets as of the Effective Date; *provided*, *however*, that the Purchased Assets, the Professional Fee Reserve, the Prepetition Term Loan Reserve, and the Prepetition Notes Reserve shall not be Liquidation Trust Assets.

86. 85. "**Liquidation Trust Beneficiaries**" means the Holders of Allowed Prepetition Notes Claims and Allowed General Unsecured Claims entitled to receive Distributions pursuant to the terms of the Combined Plan and Disclosure Statement; *provided* that if Cash on Hand on the Effective Date is sufficient to fund the Reserves and the Reserve Deficiency Payment is not required, then Holders of Allowed Prepetition Notes Claims shall not be Liquidation Trust Beneficiaries.

87. 86. "**Liquidation Trust Expenses**" means (i) all reasonable and documented fees, expenses, and costs incurred by the Liquidation Trust (including, but not limited to, compensation of the Liquidation Trustee and the reasonable fees and expenses of professionals or other Persons retained by the Liquidation Trustee) in connection with carrying out the duties and responsibilities set forth in the Liquidation Trust Agreement and the Combined Plan and Disclosure Statement and (ii) any claim for indemnification of any Liquidation Trust Party and any other party entitled to indemnification, in each case, subject to the terms of the Combined Plan and Disclosure Statement and/or the Liquidation Trust Agreement.

88. 87. "**Liquidation Trust Party**" has the meaning ascribed to such term in Article IX.I

89. 88. "**Liquidation Trust Reserve**" means the reserve in the amount of $2,000,000 established on the Effective Date and funded from Cash on Hand or, if Cash on Hand is insufficient, the Prepetition Notes Reserve, to pay Liquidation Trust Expenses.; *provided* that,

9

after the Liquidation Trustee has reimbursed the Prepetition Notes Agent in full for any Reserve Deficiency Payment made in accordance with the Combined Plan and Disclosure Statement and in the event that amounts held in the Liquidation Trust Reserve are insufficient to pay all Liquidation Trust Expenses, the Liquidation Trustee may, in its sole discretion, set aside additional funds from the Liquidation Trust Assets for the purpose of increasing the amounts held in the Liquidation Trust Reserve.

90. 89. "**Liquidation Trustee**" means the trustee appointed pursuant to Article IX.A (or any successor trustee), in his, her, or its capacity as the trustee of the Liquidation Trust.

91. 90. "**Local Rules**" means the Local Rules of the United States Bankruptcy Court for the District of Delaware, as amended from time to time.

92. 91. "**MGS APA**" means that certain Asset Purchase Agreement, dated as of July 27, 2025, by and among Zen JV, LLC, Monster Government Solutions, LLC, as sellers and Sherrill-Lubinski, LLC and ETI-NET Inc., as buyers.

93. 92. "**MGS Business**" means Monster Government Services business.

94. 93. "**MGS Sale**" means the sale of certain of the Debtors' Assets pursuant to the MGS APA.

95. 94. "**MGS Sale Order**" means the Order (I) Authorizing and Approving the Debtors' Entry Into an Asset Purchase Agreement With Sherrill-Lubinski, LLC and Eti-Net Inc., (II) Authorizing the Sale of the Purchased Assets Free and Clear of All Liens, Encumbrances, Claims and Interests, (III) Approving the Assumption and Assignment of the Selected Assigned Contracts, and (IV) Granting Related Relief [D.I. 236].

96. 95. "**MMP APA**" means that certain Asset Purchase Agreement, dated as of July 17, 2025, by and among certain of the Debtors and Valnet US Inc.

97. 96. "**MMP Business**" means Monster Media Properties business.

98. 97. "**MMP Sale**" means the sale of certain of the Debtors' Assets pursuant to the MMP APA.

99. 98. "**MMP Sale Order**" means the Order (I) Authorizing and Approving the Debtors' Entry Into an Asset Purchase Agreement with Valnet US, Inc., (II) Authorizing the Sale of the Purchased Assets Free and Clear of All Encumbrances, (III) Approving the Assumption and Assignment of the Selected Assigned Contracts, and (IV) Granting Related Relief [D.I. 237].

100. 99. "**Non-Debtor Equity Interests**" means, collectively, any Equity Interests held by any Debtor in any Entity that is not a Debtor.

101. 100. "**Notes Cash Collateral**" has the meaning ascribed to such term in the Final DIP Order.

102. 101. "**Omni**" means Omni Agent Solutions, Inc.

RLF1 33726890v.1
RLF1 33945107v.1

103. ~~102.~~ "**Order**" means an order or judgment of the Bankruptcy Court as entered on the Docket.

104. ~~103.~~ "**Other Priority Claim**" means a Claim that is accorded priority in right of payment under section 507 of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

105. ~~104.~~ "**Other Secured Claim**" means a Secured Claim that is not a Prepetition Notes Claim or Prepetition Term Loan Claim.

106. ~~105.~~ "**PartnerOne**" means Sherrill-Lubinski, LLC & Eti-Net Inc. (Partner One Capital) and its permitted assignees.

107. ~~106.~~ "**Person**" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a ~~governmental unit~~Governmental Unit or any agency or subdivision thereof or any other Entity.

108. ~~107.~~ "**Petition Date**" means June 24, 2025.

109. ~~108.~~ "**PJT**" means PJT Partners LP.

110. ~~109.~~ "**Plan Supplement**" means the appendix of schedules and exhibits to the Combined Plan and Disclosure Statement (as may be altered, amended, modified, or supplemented from time to time), containing, among other things, the Assumption Schedule, the Liquidation Trust Agreement, and the identity and compensation of the Liquidation Trustee, to be Filed with the Bankruptcy Court no later than seven days prior to the earlier of (i) the Voting Deadline and (ii) the deadline to object to final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and confirmation of the Combined Plan and Disclosure Statement.

111. ~~110.~~ "**Post-Sale Approved Budget**" has the meaning ascribed to such term in the Final DIP Order.

112. ~~111.~~ "**Prepetition Additional Note**" means that certain Amended and Restated Additional Senior Secured Note, dated as of February 20, 2025 (as amended, restated, supplemented, or otherwise modified prior to the Petition Date in accordance with the terms thereof).

113. ~~112.~~ "**Prepetition Additional Noteholders**" means Holders that are party to the Prepetition Additional Note.

114. ~~113.~~ "**Prepetition Initial Note**" means that certain Amended and Restated Senior Secured Note, dated as of December 27, 2024 (as amended, restated, supplemented, or otherwise modified prior to the Petition Date in accordance with the terms thereof).

11

115. ~~114.~~ "**Prepetition Initial Noteholders**" means Holders that are party to the Prepetition Initial Note.

116. ~~115.~~ "**Prepetition Loan Documents**" has the meaning ascribed to such term in the Final DIP Order.

117. ~~116.~~ "**Prepetition Noteholders**" means the Prepetition Initial Noteholders, the Prepetition Additional Noteholders, and the Prepetition Third Noteholders.

118. ~~117.~~ "**Prepetition Notes**" means the Prepetition Initial Note, the Prepetition Additional Note, and the Prepetition Third Note.

119. ~~118.~~ "**Prepetition Notes Agent**" means Randstad MWW Solutions Inc.

120. ~~119.~~ "**Prepetition Notes Claim**" means the Claims other than Administrative Expense Claims of the Prepetition Notes Secured Parties and any controlled Affiliate thereof (in each case, regardless of capacity), all of which shall be Allowed as of the Effective Date (to the extent not already Allowed under the Final DIP Order), including, but not limited to, the Prepetition Notes Obligations, any Claims arising under the Interim and Final DIP Orders, any Deficiency Claim and any other Claim.

121. ~~120.~~ "**Prepetition Notes Collateral**" means the Assets pledged to the Prepetition Notes Agent in connection with the Prepetition Initial Note, the Prepetition Additional Note, and the Prepetition Third Note.

122. ~~121.~~ "**Prepetition Notes Guarantors**" means Debtors Monster Worldwide LLC, Military Advantage, LLC, FastWeb, LLC, and Monster Government Solutions, LLC.

123. ~~122.~~ "**Prepetition Notes Issuer**" means Debtor Zen JV, LLC.

124. ~~123.~~ "**Prepetition Notes Loan Parties**" means the Prepetition Notes Issuer and the Prepetition Notes Guarantors.

125. ~~124.~~ "**Prepetition Notes Obligations**" has the meaning ascribed to such term in the Final DIP Order.

126. ~~125.~~ "**Prepetition Notes Recovery Amount**" means Cash in the amount of the Prepetition Notes Reserve after the funding of any Reserve Deficiency, if applicable, in accordance with the Global Settlement and Article III.C.6 plus, if any of the Prepetition Notes Reserve is used to fund any Reserve Deficiency, Cash from the Liquidation Trust Assets up to the amount of the Reserve Deficiency Payment in accordance with the Waterfall Recovery in Article III.C.6.

127. ~~126.~~ "**Prepetition Notes Reserve**" has the meaning ascribed to such term in Article III.C.4.

RLF1 33726890v.1
RLF1 33945107v.1

128.    127. "**Prepetition Notes Secured Parties**" means the Prepetition Notes Agent and the Prepetition Noteholders.

129.    128. "**Prepetition Secured Parties**" means the Prepetition Term Loan Secured Parties and the Prepetition Notes Secured Parties.

130.    129. "**Prepetition Term Loan Agent"** means Wilmington Trust, National Association.

131.    130. "**Prepetition Term Loan Borrower**" means Debtor CareerBuilder, LLC.

132.    131. "**Prepetition Term Loan Claim**" means the Claims of the Prepetition Term Loan Secured Parties, all of which shall be Allowed as of the Effective Date (to the extent not already Allowed under the Final DIP Order), including, but not limited to, the Prepetition Term Loan Secured Obligations, any Claims arising under the Interim and Final DIP Orders, and any Deficiency Claim.

133.    132. "**Prepetition Term Loan Credit Agreement**" has the meaning ascribed to such term in the Final DIP Order.

134.    133. "**Prepetition Term Loan Guarantors**" means Camaro Acquisition, LLC, CareerBuilder Government Solutions LLC, Luceo Solutions LLC, and CareerBuilder France Holding LLC.

135.    134. "**Prepetition Term Loan Lenders**" means the lenders party to the Prepetition Term Loan Credit Agreement.

136.    135. "**Prepetition Term Loan Parties**" means Prepetition Term Loan Borrower and the Prepetition Term Loan Guarantors.

137.    136. "**Prepetition Term Loan Reserve**" has the meaning ascribed to such term in Article III.C.4.

138.    137. "**Prepetition Term Loan Secured Obligations**" has the meaning ascribed to such term in the Final DIP Order.

139.    138. "**Prepetition Term Loan Secured Parties**" means the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders.

140.    139. "**Prepetition Third Note**" that certain Amended and Restated Third Senior Secured Note, dated as of December 27, 2024 (as amended, restated, amended and restated, supplemented, or otherwise modified prior to the Petition Date in accordance with the terms thereof).

141.    140. "**Prepetition Third Noteholders**" means Holders that are party to the Prepetition Third Note.

RLF1 33726890v.1
RLF1 33945107v.1

142. ~~141.~~ "**Priority Tax Claim**" means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

143. ~~142.~~ "***Pro Rata***" means the proportion that an Allowed Claim in a particular Class bears in relation to the aggregate amount of Allowed Claims in that Class.

144. ~~143.~~ "**Professional**" means any professional person employed in the Chapter 11 Cases pursuant to section 327, 328, 363 or 1103 of the Bankruptcy Code or otherwise pursuant to an Order of the Bankruptcy Court.

145. ~~144.~~ "**Professional Fee Claim**" means any Claim of a Professional for compensation, indemnification, or reimbursement of costs and expenses incurred on or before the Effective Date pursuant sections 327, 328, 330, 331, 363 503(b), or 1103(a) of the Bankruptcy Code, plus any fees and expenses related to the fee applications of a Professional.

146. ~~145.~~ "**Professional Fee Reserve**" means the reserve established on the Effective Date and funded by the Debtors on the Effective Date with Cash on Hand or, if Cash on Hand is insufficient, the Prepetition Notes Reserve, in an amount equal to the total estimated amount of the Professionals' good faith estimates of their actual, unpaid Professional Fee Claims as of the Effective Date (subject to the limitations set forth in the Post-Sale Approved Budget).

147. ~~146.~~ "**Proof of Claim**" means a written Proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

148. ~~147.~~ "**Purchase Agreements**" means the Job Board APA, the MGS APA, and MMP APA.

149. ~~148.~~ "**Purchased Assets**" has the respective meaning ascribed to such term in the applicable Purchase Agreement.

150. ~~149.~~ "**Qualified Bid**" has the meaning ascribed to such term in the Bidding Procedures.

151. ~~150.~~ "**Qualified Bidder**" has the meaning ascribed to such term in the Bidding Procedures.

152. ~~151.~~ "**Rejection Damages Bar Date**" means the deadline to file a Proof of Claim for damages relating to the rejection of an Executory Contract, which, pursuant to the Bar Date Order, is the later of (a) the General Bar Date or ~~Government~~Governmental Bar Date, as applicable, and (b) thirty days after service of any Order authorizing the rejection of such contract or lease.

153. ~~152.~~ "**Related Parties**" means, with respect to an Entity, each of, and in each case in its capacity as such, such Entity's current and former Affiliates, and such Entity's and such Affiliates' current and former directors, managers, officers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds,

14

predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, and Professionals (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), and any such Person's or Entity's respective heirs, executors, estates, and nominees.

154. 153. "**Released Parties**" means each of the following in their capacity as such: (i) the Debtors; (ii) the Prepetition Secured Parties; (iii) each current and former Affiliate of each Entity in clauses (i) and (ii); (iv) the Committee; and (v) the Related Parties of each of the foregoing.

155. 154. "**Releasing Parties**" means each of the following in their capacity as such: (i) the Debtors; (ii) the Prepetition Secured Parties; (iii) the Committee; (iv) each Holder of a Claim who votes to accept the Combined Plan and Disclosure Statement, abstains from voting on the Combined Plan and Disclosure Statement or votes to reject the Combined Plan and Disclosure Statement and, in each case, affirmatively opts in to the releases provided in the Combined Plan and Disclosure Statement; (v) each current and former Affiliate of each Entity in clause (i) through (iv) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Combined Plan and Disclosure Statement under applicable non bankruptcy law; and (vi) each Related Party of each Entity in clause (i) through (iv) for which such Affiliate or Entity is legally entitled to bind such Related Party to the releases contained in the Combined Plan and Disclosure Statement under applicable non bankruptcy law.

156. 155. "**RL&F**" means Richards, Layton & Finger, P.A.

157. 156. "**Reserves**" means (i) the Claims Reserve; (ii) Liquidation Trust Reserve; and (iii) the Professional Fee Reserve.

158. 157. "**Reserve Deficiency**" means the difference between the Cash on Hand on the Effective Date and the amount needed to fully fund the Reserves.

159. 158. "**Reserve Deficiency Payment**" means the amount funded, if any, from the Prepetition Notes Reserve to satisfy the Reserve Deficiency.

160. 159. "**Residual Cash on Hand**" means the Cash on Hand, if any, remaining on the Effective Date after the funding of the Reserves.

161. 160. "**Residual Reserve Amount**" means the amount of Cash remaining in the Reserves, if any, after payment in full in Cash of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims, Allowed Professional Fee Claims, and Liquidation Trust Expenses.

162. 161. "**Sales**" means the sales of the MGS Business, the MMP Business, and the Job Board Business.

RLF1 33726890v.1
RLF1 33945107v.1

163. 162. "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors on July 15, 2025 [Docket Nos. 156–175] and any and all amendments and modifications thereto.

164. 163. "**Secured Claim**" means a Claim, (a) that is secured by a Lien on property in which the Estates have an interest, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, or a Claim that is subject to a valid right of the Creditor of setoff against amounts owed to the Debtors; (b) to the extent of the value of the Holder's interest in the Estates' interest in such property or to the extent of the amount subject to a valid right of setoff, as applicable; and (c) the amount of which (i) is undisputed by the Debtors or (ii) if disputed by the Debtors, such dispute is settled by written agreement between the Debtors or the Liquidation Trustee and the Holder of such Claim or determined, resolved, or adjudicated by Final Order.

165. 164. "**Successful Bid**" means, as applicable, the Successful Bidder's bid at the Auction.

166. 165. "**Successful Bidder**" means the Qualified Bidder, as applicable, with the highest or otherwise best offer among the Qualified Bids submitted at the Auction.

167. 166. "**Unclaimed Distribution Deadline**" means ninety calendar days from the date the Liquidation Trust makes a Distribution of Cash or other property under the Combined Plan and Disclosure Statement to a Holder of an Allowed Claim.

168. 167. "**Unclaimed Distribution**" means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

169. 168. "**Unimpaired**" means not Impaired.

170. 169. "**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

171. 170. "**Voting Deadline**" means that date and time defined as the voting deadline in Article VI.A.9 of the Combined Plan and Disclosure Statement.

172. 171. "**Waterfall Recovery**" has the meaning set forth in Article III.C.6.

**B.    Interpretation; Application of Definitions and Rules of Construction**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter.  Unless otherwise specified, all section, article, schedule or exhibit references in the Combined Plan and Disclosure Statement are to the respective section in, Article of, schedule to, or exhibit to the Combined Plan and Disclosure Statement.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection or clause contained in the Combined Plan and

16

Prepetition Notes Reserve (prior to the funding of any Reserve Deficiency) or the Prepetition Term Loan Reserve, as applicable.

      **7.**      **Claims Process and Bar Date**

      **a.**      **Section 341(a) Meeting of Creditors**

On July 16, 2025, the U.S. Trustee commenced the meeting of Creditors in the Chapter 11 Cases pursuant to section 341(a) of the Bankruptcy Code.

      **b.**      **Schedules and Statements**

The Debtors Filed their Schedules with the Bankruptcy Court on July 16, 2025.

      **c.**      **Bar Dates**

Pursuant to the Bar Date Order, the Bankruptcy Court established (i) September 15, 2025 at 5:00 p.m. (prevailing Eastern Time) as the General Bar Date; (ii) December 22, 2025, at 5:00 p.m. (prevailing Eastern Time) as the Governmental Bar Date; (iii) the Amended Schedules Bar Date as the later of (a) the General Bar Date or the Governmental Bar Date and (b) thirty days after a claimant is served with notice of the applicable amendment or supplement to the Schedules; and (iv) the Rejection Damages Bar Date as the later of (a) the General Bar Date or the Governmental Bar Date and (b) thirty days after a claimant is served with notice of an Order of the Bankruptcy Court authorizing the Debtors' rejection of the applicable Executory Contract (collectively, the "**Bar Dates**").  Notice of the Bar Dates was served on all potential Creditors of the Debtors' Estates on or before August 19, 2025.

**D.**      **Certain Federal Income Tax Consequences**

The confirmation and execution of the Combined Plan and Disclosure Statement may have tax consequences to Holders of Claims and Equity Interests.  The Debtors do not offer an opinion as to any federal, state, local or other tax consequences to Holders of Claims and Equity Interests as a result of the confirmation of the Combined Plan and Disclosure Statement. All Holders of Claims and Equity Interests are urged to consult their own tax advisors with respect to the federal, state, local and foreign tax consequences of the Combined Plan and Disclosure Statement.  The Combined Plan and Disclosure Statement is not intended, and should not be construed, as legal or tax advice to any Creditor, Holder of Equity Interests or other party in interest.

**E.**      **Alternate Plans**

If the Combined Plan and Disclosure Statement is not confirmed, then the Debtors or any other party in interest could attempt to formulate a different plan.  The additional costs, including, among other amounts, incremental professional fees or asserted substantial contribution claims, all of which would constitute Administrative Expense Claims (subject to allowance thereof), however, may be so significant that one or more parties in interest could request that the Chapter 11 Cases be converted to chapter 7 due to the impact of these increased

RLF1 33726890v.1
RLF1 33945107v.1

b.      **Treatment**

On the Effective Date or as soon thereafter as is reasonably practical, or on the date such Claim becomes an Allowed Other Priority Claim or as soon thereafter as is reasonably practical, each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash of the Allowed amount of such Claim (as determined by settlement or Final Order of the Bankruptcy Court) or such other treatment as may be agreed upon by such Holder and the Debtors.

c.      **Impairment and Voting**

Class 1 is Unimpaired by the Combined Plan and Disclosure Statement.  Holders of Allowed Other Priority Claims are deemed to have accepted the Combined Plan and Disclosure Statement and therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

2.      **Class 2 – Other Secured Claims**

a.      **Classification**

Class 2 consists of all Other Secured Claims.

b.      **Treatment**

On the Effective Date or as soon thereafter as is reasonably practical, or on the date such Claim becomes an Allowed Other Secured Claim or as soon thereafter as is reasonably practical, each Holder of an Allowed Other Secured Claim shall receive either (a) such treatment as such Holder agrees, or (b) at the Debtors' option, (i) payment in full in Cash of ~~the~~such Holder's Allowed ~~Amount of such~~ Other Secured Claim ~~(as determined by settlement or Final Order of the Bankruptcy Court), or (ii) treatment consistent with the provisions of~~; (ii) the collateral securing such Holder's Allowed Other Secured Claim; or (iii) such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired in accordance with section ~~1129(a)(9)~~1124 of the Bankruptcy Code.

c.      **Impairment and Voting**

Class 2 is Unimpaired by the Combined Plan and Disclosure Statement.  Holders of Class 2 Other Secured Claims are deemed to have accepted the Combined Plan and Disclosure Statement and therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

3.      **Class 3 – Prepetition Term Loan Claims**

a.      **Classification**

Class 3 consists of the Prepetition Term Loan Claims.

38

**B.**    **Creation of the Liquidation Trust**

On the Effective Date, the Liquidation Trustee shall sign the Liquidation Trust Agreement and, in his, her or its capacity as Liquidation Trustee, accept all Liquidation Trust Assets ~~on behalf of the Liquidation Trust Beneficiaries~~, and be authorized to obtain, collect, seek the turnover of, liquidate, and collect all of the Liquidation Trust Assets not in its possession or control.  The Liquidation Trust will then be created and effective without any further action by the Bankruptcy Court or any Person as of the Effective Date.  The Liquidation Trust shall be established for the primary purpose of liquidating the Liquidation Trust Assets and making Distributions in accordance with the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Liquidation Trust.   The Liquidation Trust shall be the successor-in-interest to the Committee.

**C.**    **Liquidation Trust Beneficiaries**

The Holders of Allowed General Unsecured Claims, ~~and if applicable, the Holders of Allowed Prepetition Notes Claims,~~ entitled to Distributions hereunder shall be the Liquidation Trust Beneficiaries and shall be bound by the Liquidation Trust Agreement.  The interests of the Liquidation Trust Beneficiaries in the Liquidation Trust shall be uncertificated and transferable in accordance with the terms set forth in the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement.

**D.**    **Vesting and Transfer of the Liquidation Trust Assets to the Liquidation Trust**

The Liquidation Trust shall be funded with the Liquidation Trust Assets. Notwithstanding any prohibition of assignability under non-bankruptcy law, on the Effective Date and periodically thereafter if additional Liquidation Trust Assets become available, the Debtors shall be deemed, subject to the terms of the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement, to have automatically transferred to the Liquidation Trust all of their right, title, and interest in and to all of the Liquidation Trust Assets in accordance with section 1141 of the Bankruptcy Code.    All such Liquidation Trust Assets shall automatically vest in the Liquidation Trust free and clear of all Claims, Liens, and other interests, subject only to the Allowed Claims set forth in the Combined Plan and Disclosure Statement and the Liquidation Trust Expenses, as set forth in the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement. Thereupon, the Debtors shall have no interest in or with respect to the Liquidation Trust Assets or the Liquidation Trust.

**E.**    **Distributions from the Liquidation Trust**

Distributions from the Liquidation Trust shall be made in accordance with the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement.

RLF1 33726890v.1
RLF1 33945107v.1

F.    **Liquidation Trust Expenses**

The Liquidation Trust Expenses shall be paid from the Liquidation Trust Reserve.

G.    **Certain Powers and Duties of the Liquidation Trust and Liquidation Trustee**

    1.    **General Powers of the Liquidation Trustee**

The Liquidation Trustee shall have, and enjoy the powers of, the Debtors' authorized representative for all purposes and shall have the power and authority to perform the acts described in the Liquidation Trust Agreement (subject to approval by the Bankruptcy Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of the Combined Plan and Disclosure Statement, including without limitation any set forth herein, *provided, however*, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidation Trustee to act as specifically authorized by any other provision of the Combined Plan and Disclosure Statement, the Liquidation Trust Agreement, and/or any applicable law, and to act in such manner as the Liquidation Trustee may deem necessary or appropriate, including, without limitation, to discharge all obligations assumed by the Liquidation Trustee or provided herein, to conserve and protect the Liquidation Trust and the Liquidation Trust Assets, or to confer on the Liquidation Trust Beneficiaries and the Holders of Allowed Claims the benefits intended to be conferred upon them by the Combined Plan and Disclosure Statement.  The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement and shall include the authority, power, and responsibility to: (a) receive, manage, invest, supervise, and protect Liquidation Trust Assets; (b) pay taxes or other obligations incurred by the Liquidation Trust and the Debtors; (c) issue to employees or other Persons, and/or file with the appropriate Governmental Units, applicable tax and wage returns and forms on behalf of the Liquidation Trust and the Debtors; (d) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution and Distribution of Liquidation Trust Assets; (e) calculate and implement Distributions of Liquidation Trust Assets; (f) investigate, prosecute, compromise, and settle, in accordance with the specific terms of the Liquidation Trust Agreement and without further order of the Bankruptcy Court the Claims and Causes of Action vested in the Liquidation Trust, as set forth in the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement; (g) resolve issues involving Claims and Equity Interests in accordance with the Combined Plan and Disclosure Statement without any further notice to or action, order or approval by the Bankruptcy Court; (h) undertake all administrative functions of the Chapter 11 Cases, including the payment of Statutory Fees incurred post-Effective Date with respect to distributions from the Liquidation Trust and the ultimate closing of the Chapter 11 Cases and dissolution of the Debtors; and (i) take such other action as may be vested in or assumed by the Liquidation Trustee consistent with the Combined Plan and Disclosure Statement, the Liquidation Trust Agreement, and any applicable Orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Combined Plan and Disclosure Statement. Notwithstanding anything in the Combined Plan and Disclosure Statement or in the Liquidation Trust Agreement to the contrary, the Liquidation Trustee shall obtain the consent of the Prepetition Notes Secured Parties (which consent shall be given in the sole discretion of the

RLF1 33726890v.1
RLF1 33945107v.1

Prepetition Notes Secured Parties) prior to (i) commencing or settling any litigation related to the Prepetition Notes Reserve or (ii) objecting, either formally or informally, to any Professional Fee Claim of any Professional.

**2.      Books and Records**

On the Effective Date, the Liquidation Trust shall: (a) take possession of all books, records, and files of the Debtors and the Estates that were not sold and transferred in connection with the Sales and that relate to the operation and business of the Liquidation Trust; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidation Trustee determines, in accordance with the Liquidation Trust Agreement, that retention of same is no longer necessary or beneficial.  The transfer of any such documents and information will be without waiver of any evidentiary privileges, including, without limitation, the attorney-client privilege, work-product privilege or other privilege or immunity attaching to any such documents or information (whether written or oral), and all such privileges shall vest in the Liquidation Trust. The Combined Plan and Disclosure Statement will be considered a motion pursuant to sections 105 and 363 of the Bankruptcy Code for such relief.

**3.      Investments of Cash**

The Liquidation Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code or in other prudent investments, *provided, however*, that such investments are permitted to be made by a Liquidation Trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

**H.      United States Federal Income Tax Treatment of the Liquidation Trust for the Liquidation Trust Assets**

For federal income tax purposes, it is intended that the Liquidation Trust be classified as a "liquidating trust" under Section 301.7701-4 of the Treasury regulations and that the trust be owned by its Liquidation Trust Beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Liquidation Trust Beneficiaries be treated as if they had received a distribution from the Estates of an undivided interest in the Liquidation Trust Assets (to the extent of the value of their respective share in the applicable Liquidation Trust Assets) and then contributed such interests to the Liquidation Trust, and the Liquidation Trust Beneficiaries will be treated as the grantors and owners thereof.

The Liquidation Trustee shall be responsible for filing all federal, state, and local tax returns for the Liquidation Trust and for the Debtors.  The Liquidation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions made by the Liquidation Trust shall be subject to any such withholding and reporting requirements.  The Liquidation Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder.  Notwithstanding any other provision of the

44

resolve and settle any and all Claims and cause the claims register to be modified to reflect any such resolutions without further notice to or action, Order, or approval of the Bankruptcy Court.

## C.     Claims Objection Deadline

The Liquidation Trustee (subject to the limitations set forth in Article IX.G.1 hereof), and any other party in interest to the extent permitted pursuant to section 502(a) of the Bankruptcy Code, shall file and serve any objection to any Claims, including Administrative Expense Claims, no later than the Claims Objection Deadline; *provided*, *however*, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion and notice by the Liquidation Trustee.

## D.     No Distribution Pending Allowance

Notwithstanding any other provision of the Combined Plan and Disclosure Statement, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by the Combined Plan and Disclosure Statement.

Solely after the Liquidation Trustee has reimbursed the Prepetition Notes Agent in full for any Reserve Deficiency Payment made in accordance with Article III.C.6 of the Combined Plan and Disclosure Statement, the Liquidation Trustee is authorized to establish one or more Cash reserves for the benefit of Holders of Disputed General Unsecured Claims pending a determination of their entitlement thereto under the terms of the Combined Plan and Disclosure Statement.

## E.     Claims Reserve

Prior to or on the Effective Date, the Debtors or the Liquidation Trustee, as applicable, shall establish the Claims Reserve. The amount of the Claims Reserve shall be determined by the Debtors in consultation with the Prepetition Notes Secured Parties and the Committee. Amounts in the Claims Reserve shall be held in trust for the benefit of Holders of Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, and Other Secured Claims pending determination of such Holder's entitlement thereto.

## F.     Distribution After Allowance

Except as provided herein, within the later of (a) seven Business Days after such Claim becomes an Allowed Claim and (b) thirty calendar days after the expiration of the Claims Objection Deadline, or in either such case as soon thereafter as is practicable, the Liquidation Trustee shall distribute all Cash or other property to which a Holder of an Allowed Claim is then entitled.

## G.     Adjustments to Claims Without Objection

After the Effective Date, any Claim that has been paid or satisfied may be marked as satisfied, adjusted or expunged on the register of Claims in the Chapter 11 Cases by the

RLF1 33726890v.1
RLF1 33945107v.1

and the Final DIP Order, and shall be deemed completed when made to or at the direction of the Prepetition Term Loan Agent.

**J.     Unclaimed Distributions**

Any Cash or other property to be Distributed under the Combined Plan and Disclosure Statement shall revert to the Liquidation Trust, as applicable, if it is not claimed by the Entity on or before the Unclaimed Distribution Deadline. If such Cash or other property is not claimed on or before the Unclaimed Distribution Deadline, then the Distribution made to such Entity shall be deemed to be reduced to zero.

**K.     *De Minimis* Distributions**

The Liquidation Trustee shall not distribute cash to the Holder of an Allowed Claim in an Impaired Class if the amount of Cash to be distributed on account of such Claim is less than $50.00 in the aggregate. Any Holder of an Allowed Claim on account of which the amount of Cash to be distributed is less than $50.00 in the aggregate will be forever barred from asserting its Claim for such distribution against the Liquidation Trustee or its property. Any Cash not distributed pursuant to this Article X of the Combined Plan and Disclosure Statement will be the property of the Estates.

**L.     Setoff**

The Debtors or the Liquidation Trustee, as the case may be, each retain the right to reduce any Claim by way of setoff in accordance with the Debtors' books and records.

**M.     Postpetition Interest**

Interest shall not accrue on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date. No prepetition Claim shall be Allowed to the extent it is for postpetition interest or other similar charges, except to the extent permitted for Holders of Secured Claims under section 506(b) of the Bankruptcy Code.

**N.     Allocation of Distributions Between Principal and Interest**

For Distributions in respect of Allowed Claims, to the extent that any such Allowed Claim entitled to a Distribution under the Combined Plan and Disclosure Statement is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

**O.     Final Distribution**

If the Cash available for the final Distribution is less than the cost to distribute such funds, the Liquidation Trustee may donate such funds to one or more unaffiliated charities of the Liquidation Trustee's choice.

RLF1 33726890v.1
RLF1 33945107v.1

Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify Combined Plan and Disclosure Statement, or remedy any defect or omission, or reconcile any inconsistencies in the Combined Plan and Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Combined Plan and Disclosure Statement.

Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Combined Plan and Disclosure Statement without further Order or approval of the Bankruptcy Court.

**D.    Severability**

In the event the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Combined Plan and Disclosure Statement is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such Claims or Equity Interest as to which the provision is determined to be invalid, void or unenforceable.  The invalidity, voidability or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Combined Plan and Disclosure Statement.

**E.    Revocation or Withdrawal of the Combined Plan and Disclosure Statement**

The Debtors reserve the right to revoke or withdraw the Combined Plan and Disclosure Statement before the Confirmation Date.  If the Debtors revoke or withdraw the Combined Plan and Disclosure Statement before the Confirmation Date, then the Combined Plan and Disclosure Statement shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors.

**F.    Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(a), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Combined Plan and Disclosure Statement and Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidation Trust, any and all the Holders of Claims or Equity Interests (irrespective of whether their Claims or Equity Interests are deemed to have accepted the Combined Plan and Disclosure Statement), all Persons and Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Combined Plan and Disclosure Statement, each Person and Entity acquiring property under the Combined Plan and Disclosure Statement, any and all non-Debtor parties to Executory Contracts with the Debtors, and the respective heirs, executors, administrators, successors or assigns, ~~affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian~~affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any, with respect to the foregoing.

RLF1 33726890v.1
RLF1 33945107v.1

**Q.**     **Implementation**

The Debtors shall take all steps, and execute all documents, including appropriate releases, necessary to effectuate the provisions contained in the Combined Plan and Disclosure Statement.

**R.**     **Inconsistency**

In the event of any inconsistency among the Combined Plan and Disclosure Statement and any other instrument or document created or executed pursuant to the Combined Plan and Disclosure Statement, the provisions of the Combined Plan and Disclosure Statement shall govern.

**S.**     **Dissolution of the Debtors**

Immediately after the Effective Date, the Liquidation Trustee shall be authorized to take, in its sole and absolute discretion, all actions reasonably necessary to dissolve one or more of the Debtors under applicable laws, including under the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation. Upon the final Distributions, any Debtors that have not been previously dissolved shall be deemed dissolved for all purposes without the necessity for other or further actions to be taken by or on behalf of the Debtors, and the Liquidation ~~Trustees~~Trustee shall be authorized to file any certificate of cancellation or other documents as may be necessary or desirable to terminate the legal existence of the Debtors.

**T.**     **Abandonment of Non-Debtor Equity Interests**

The Debtors do not believe the Non-Debtor Equity Interests have any value to the Estates.

Unless the Confirmation Order provides otherwise, on the Effective Date, the Non-Debtor Equity Interests shall be deemed abandoned pursuant to Section 544 of the Bankruptcy Code without further Order or further notice to any Entity. The Combined Plan and Disclosure Statement shall constitute a motion for such relief.

**U.**     **Directors, Officers, Managers, Members and Authorized Persons of the Debtors.**

On the Effective Date, each of the Debtors' directors and officers shall be discharged from their duties and terminated automatically without the need for any corporate action or approval and without the need for any corporate filings, and, unless subject to a separate agreement with the Liquidation Trustee, shall have no continuing obligations to the Debtors following the occurrence of the Effective Date.

RLF1 33726890v.1
RLF1 33945107v.1

**Y.     Request for Expedited Determination of Taxes**

The Debtors, the Liquidation Trust, and/or the Liquidation Trustee, as applicable shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

Dated: ~~September 4~~October 3, 2025        ZEN JV, LLC

By:    */s/ Jeffrey Furman*_____
                Name: Jeffrey Furman
                Title: Chief Executive Officer

RLF1 33726890v.1
RLF1 33945107v.1

**EXHIBIT 1**

**Liquidation Analysis**