## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x

In re:

ZEN JV, LLC, *et al.*,[1]

        Debtors.

------------------------------------------------------- x

    :  Chapter 11

    :

    :  Case No. 25-11195 (JKS)

    :

    :  (Jointly Administered)

    :

    :

**MEMORANDUM OF LAW IN SUPPORT OF (A) FINAL APPROVAL OF
THE DEBTORS' SECOND AMENDED COMBINED DISCLOSURE STATEMENT
AND JOINT CHAPTER 11 PLAN OF LIQUIDATION AND (B) CONFIRMATION
OF THE DEBTORS' SECOND AMENDED COMBINED DISCLOSURE
STATEMENT AND JOINT CHAPTER 11 PLAN OF LIQUIDATION**

**LATHAM & WATKINS LLP**
Ray C. Schrock (admitted *pro hac vice*)
Candace M. Arthur (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020

- and -

Jonathan C. Gordon (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611

**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
Huiqi Liu (No. 6850)
Clint M. Carlisle (No. 7313)
Colin A. Meehan (No. 7237)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

*Co-Counsel for Debtors and Debtors in Possession*

Dated: October 6, 2025
      Wilmington, Delaware

---

[1]    The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are:  Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions, LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508).  The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iv

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ...................................................................................................................3

   I.   PROCEDURAL HISTORY................................................................................................3

   II.  THE SOLICITATION PROCESS AND VOTING RESULTS .........................................6

ARGUMENT ........................................................................................................................8

   I.   THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD BE
      APPROVED ON A FINAL BASIS................................................................................8

      A.   The Combined Plan and Disclosure Statement Contains Adequate Information....... 8

   II.  THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD BE
      CONFIRMED. ...........................................................................................................10

      A.   The Combined Plan and Disclosure Statement Satisfies Each Requirement for
          Confirmation Under Section 1129(a) of the Bankruptcy Code. ......................... 10

          (1)   Section 1129(a)(1) — The Combined Plan and Disclosure
               Statement Complies with the Applicable Provisions of the
               Bankruptcy Code. ................................................................................. 10

               a.   The Combined Plan and Disclosure Statement
                      Satisfies the Classification Requirements of Section
                      1122 of the Bankruptcy Code. ......................................... 11

               b.   The Combined Plan and Disclosure Statement
                      Satisfies Section 1123(a) of the Bankruptcy Code. ......... 13

               c.   The Combined Plan and Disclosure Statement
                      Complies with the Discretionary Provisions of
                      Section 1123(b) of the Bankruptcy Code......................... 16

          (2)   Section 1129(a)(2) — The Debtors Have Complied with the
               Applicable Provisions of Title 11. ......................................................... 18

                a.   The Debtors Complied with Sections 1125 and
                      1126 of the Bankruptcy Code. ......................................... 18

i

(3)    Section 1129(a)(3) — The Combined Plan and Disclosure Statement Has Been Proposed in Good Faith. ......................................... 20

(4)    Section 1129(a)(4) — All Payments to Be Made By the Debtors in Connection With These Cases Are Subject to the Approval of the Court.  22

(5)    Section 1129(a)(5) — The Combined Plan and Disclosure Statement Discloses the Identity of Post-Confirmation Management and the Compensation Structure. ...................................... 23

(6)    Section 1129(a)(6) — The Combined Plan and Disclosure Statement Does Not Provide for Any Rate Change Subject to Regulatory Approval. ................................................................................. 24

(7)    Section 1129(a)(7) — The Combined Plan and Disclosure Statement is in the Best Interests of Creditors. ......................................... 24

(8)    Section 1129(a)(8) — The Combined Plan and Disclosure Statement Has Not Been Accepted By All Classes of Creditors and Equity Interest Holders but Can Nonetheless Be Confirmed. ................. 25

(9)    Section 1129(a)(9) — The Combined Plan and Disclosure Statement Provides for the Payment of Priority Claims. ......................... 26

(10)   Section 1129(a)(10) — The Combined Plan and Disclosure Statement Has Been Accepted By at Least One Impaired, Non-Insider Class. ................................................................................................ 27

(11)   Section 1129(a)(11) — The Combined Plan and Disclosure Statement is Feasible. .............................................................................. 27

(12)   Section 1129(a)(12) — The Combined Plan and Disclosure Statement Provides for the Payment of Fees. .......................................... 29

(13)   Sections 1129(a)(13) Through 1129(a)(16) Are Inapplicable in the Chapter 11 Cases. ............................................................................... 29

B.    Section 1129(b) — The Combined Plan and Disclosure Statement Satisfies the "Cramdown" Requirements for Confirmation. .................................................... 30

(1)    The Combined Plan and Disclosure Statement Does Not Discriminate Unfairly. ............................................................................. 30

(2)    The Plan is Fair and Equitable. ............................................................... 31

C.    Section 1129(c) — The Combined Plan and Disclosure Statement is the Only Plan Filed in this Case. .................................................................................................... 32

ii

D.    Section 1129(d) — The Combined Plan and Disclosure Statement Purpose is
          Consistent with the Bankruptcy Code.................................................................. 32

E.    Section 1129(e) — These Chapter 11 Cases are Not "Small Business Cases," as
          defined in the Bankruptcy Code. ........................................................................ 33

III. THE COMBINED PLAN AND DISCLOSURE STATEMENT'S RELEASE,
     EXCULPATION, AND INJUNCTION PROVISIONS ARE CONSISTENT WITH
     SECTION 1123(b) OF THE BANKRUPTCY CODE. ....................................................33

A.    The Debtor Releases Are Appropriate...................................................... 34

B.    The Third-Party Releases Are Appropriate. ........................................... 39

C.    The Exculpation Provision is Appropriate. ............................................ 41

D.    The Injunction Provision is Appropriate. .............................................. 42

IV. WAIVER OF BANKRUPTCY RULE 3020(e) ............................................................42

V.  Conclusion ........................................................................................................43

RLF1 33952641v.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Abeinsa Holding, Inc.*,
562 B.R. 265 (Bankr. D. Del. 2016) ...................................................................36

*In re Am. Cap. Equip., LLC*,
688 F.3d 145 (3d Cir. 2012).................................................................................27

*In re Armstrong World Induss.*,
348 B.R. 111 (D. Del. 2006) ...........................................................................30, 31

*Azar v. THGH Liquidating LLC (In re THGH Liquidating LLC)*,
No. 19-11589 (JTD), 2020 WL 5409002 (D. Del. Sept. 9, 2020) ..........................20

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
526 U.S. 434 (1999).............................................................................................24

*In re Coram Healthcare Corp.*,
315 B.R. 321 (Bankr. D. Del. 2004) ....................................................................16

*In re Cypresswood Land Partners, I*,
409 B.R. 396 (Bankr. S.D. Tex. 2009) .................................................................24

*In re Eagle-Picher Industries, Inc.*,
203 B.R. 256 (S.D. Ohio 1996) ...........................................................................21

*In re Ferretti*,
128 B.R. 16 (Bankr. D.N.H. 1991) .........................................................................8

*First Am. Bank of New York v. Century Glove, Inc.*,
81 B.R. 274 (D. Del. 1988).......................................................................9, 26, 36

*In re G-1 Holdings Inc.*,
420 B.R. 216 (Bankr. D.N.J. 2009) ......................................................................10

*Harrington v. Purdue Pharma L.P.*,
603 U.S. 204 (2024).............................................................................................39

*In re Indianapolis Downs, LLC*,
486 B.R. 286 (Bankr. D. Del. 2013) ...............................................28, 33, 35, 39

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
987 F.2d 154 (3d Cir. 1993)..................................................................................11

*In re Johns-Manville Corp.*,
68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom.*, *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636 (2d Cir. 1988).....................11, 30

*In re Johns-Manville*,
843 F.2d at 649 .......................................................................................................27, 30

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
337 F.3d 314 (3d Cir. 2003)...............................................................................................8

*Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*,
115 F.3d 650 (9th Cir. 1997) .........................................................................................29

*Matter of Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*,
150 F.3d 503 (5th Cir. 1998*)* ........................................................................................29

*In re Martin*,
91 F.3d 389 (3d Cir. 1996)..............................................................................................17

*In re Master Mortg. Inv. Fund, Inc.*,
168 B.R. 930 (Bankr. W.D. Mo. 1994)........................................................................35, 36

*In re Nutritional Sourcing Corp.*,
398 B.R. 816 (Bankr. D. Del. 2008) ...............................................................................10

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
848 F.2d 414 (3d Cir. 1988)...............................................................................................9

*In re Phoenix Petrol., Co.*,
278 B.R. 385 (Bankr. E.D. Pa. 2001) ...............................................................................8

*In re PPI Enters. (U.S.), Inc.*,
228 B.R. 339 (Bankr. D. Del. 1998), *aff'd sub nom.*, *Solow v. PPI Enters.(U.S.*...................20

*In re PWS Holding Corp.*,
228 F.3d 224 (3d Cir. 2000)........................................................................................34, 41

*In re S B Bldg. Assocs. Ltd. P'ship*,
621 B.R. 330 (Bankr. D.N.J. 2020) ................................................................................28

*In re Smith*,
357 B.R. 60 (Bankr. M.D.N.C. 2006)..............................................................................24

*In re TCI 2 Holdings, LLC*,
428 B.R. 117 (Bankr. D.N.J. 2010) ................................................................................10

*In re Tribune Co.*,
    464 B.R. 126 (Bankr. D. Del. 2011) .......................................................................33

*U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion, Inc.)*,
    426 B.R. 114 (Bankr. D. Del. 2010) ...........................................................32, 34, 39

*In re W.R. Grace & Co.*,
    446 B.R. 96 (Bankr. D. Del. 2011) .......................................................................37

*In re W.R. Grace & Co.*,
    475 B.R. 34 (D. Del. 2012) ...................................................................................27

*In re W.R. Grace & Co.*,
    729 F.3d 311 (3d Cir. 2013) ..................................................................................11

*In re Wash. Mut., Inc.*,
    442 B.R. 314 (Bankr. D. Del. 2011) ...........................................................33, 36, 39

*In re WorldCom Inc.*,
    No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ........30

*In re Zenith Elecs. Corp.*,
    241 B.R. 92 (Bankr. D. Del. 1999) ................................................................ *passim*

**Statutes**

11 U.S.C. 1129(b)(2) ...................................................................................................31

11 U.S.C. §§ 1122 and 1123 ............................................................................10, 11, 18

11 U.S.C. §§ 1123(b)(1)–(3), (6) ................................................................................16

11 U.S.C. § 1125(a) ..............................................................................................8, 10

11 U.S.C. § 1125(b) ..............................................................................................8, 18

11 U.S.C. § 1129(a)(5)(B) ...........................................................................................23

11 U.S.C. § 1129(a)(7)(A)(i)–(ii) ................................................................................24

11 U.S.C. § 1129(b) .................................................................................... *passim*

United States Code title 11 sections 1125, 1126, and 1129, 11 U.S.C. § § 101–
    1532...................................................................................................................1, 18

Bankruptcy Code chapter 11 ......................................................................... *passim*

Bankruptcy Code section 1123(b) ...............................................................................16

RLF1 33952641v.1

Bankruptcy Code section 363 ................................................................................1

Bankruptcy Code section 554 ..............................................................................16

Bankruptcy Code section 1103(c) ........................................................................41

Bankruptcy Code sections 1107(a) and 1108 .........................................................3

Bankruptcy Code section 1114 ............................................................................29

Bankruptcy Code sections 1122, 1123, and 1129 ................................................11

Bankruptcy Code sections 1122 and 1123(a) .......................................................10

Bankruptcy Code section 1122(a) ..................................................................11, 12

Bankruptcy Code section 1123 ..................................................15, 16, 17, 23

Bankruptcy Code section 1123(a) ..................................................................12, 13

Bankruptcy Code section 1123(a)(1) ..............................................................12, 13

Bankruptcy Code section 1123(a)(1)-(3) .............................................................13

Bankruptcy Code section 1123(a)(2) ...................................................................13

Bankruptcy Code section 1123(a)(3) ...................................................................13

Bankruptcy Code section 1123(a)(4) ...................................................................13

Bankruptcy Code section 1123(a)(5) ...................................................................14

Bankruptcy Code section 1123(a)(6) ...................................................................15

Bankruptcy Code section 1123(a)(7) ...................................................................15

Bankruptcy Code section 1123(b) ..................................................................16, 32

Bankruptcy Code section 1123(b)(3)(A) ..............................................................32

Bankruptcy Code section 1125 ...................................................................8, 9, 18

Bankruptcy Code sections 1125 and 1126 ...........................................................18

Bankruptcy Code section 1126 ............................................................................19

Bankruptcy Code section 1129(a) ........................................................................29

Bankruptcy Code section 1129(a)(1) ......................................................10, 11, 18

vii

Bankruptcy Code section 1129(a)(2) ...................................................................................18, 20

Bankruptcy Code section 1129(a)(3) ...................................................................................20, 22

Bankruptcy Code section 1129(a)(4) .........................................................................................22

Bankruptcy Code section 1129(a)(5)(A)(i)–(ii) ...................................................................22, 23

Bankruptcy Code section 1129(a)(6) .........................................................................................23

Bankruptcy Code section 1129(a)(7) ...................................................................................23, 25

Bankruptcy Code section 1129(a)(8) ...................................................................................25, 29

Bankruptcy Code section 1129(a)(9) ...................................................................................25, 26

Bankruptcy Code section 1129(a)(9)(A) ...................................................................................26

Bankruptcy Code section 1129(a)(9)(B) ...................................................................................26

Bankruptcy Code section 1129(a)(9)(C) ...................................................................................26

Bankruptcy Code section 1129(a)(10) .......................................................................................26

Bankruptcy Code sections 1129(a)(10) and 1129(b) .................................................................25

Bankruptcy Code section 1129(a)(11) .................................................................................27, 28

Bankruptcy Code Section 1129(a)(12) .................................................................................28, 29

Bankruptcy Code Section 1129(a)(13) .......................................................................................29

Bankruptcy Code Section 1129(b)(1) ...................................................................................29, 30

Bankruptcy Code section 1129(c) ........................................................................................31, 32

Bankruptcy Code Section 1129(d) .............................................................................................32

Bankruptcy Code section 1129(e) ..............................................................................................32

Securities Act of 1933 section 5 ................................................................................................32

**Other Authorities**

Bankruptcy Rule 1015(b) ..............................................................................................................3

Bankruptcy Rule 3020(e) ...........................................................................................................42

Bankruptcy Rule 9019 ..........................................................................................................16, 17

RLF1 33952641v.1

H.R. Rep. No. 95-595 ................................................................................................................18

S. Rep. No. 95-989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787..................................................9

ix

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") submit this memorandum of law (this "**Memorandum**") in support of (a) final approval of the *Debtors' Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 408] (as may be amended, modified and/or supplemented, the "**Combined Plan and Disclosure Statement**") and (b) confirmation of the Combined Plan and Disclosure Statement pursuant to sections 1125, 1126, and 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**").

In further support of confirmation of the Combined Plan and Disclosure Statement, the Debtors have filed: (A) *the Declaration of Jesse DelConte in Support of Confirmation of the Debtors' Second Amended Combined Disclosure Statement and Joint Plan of Liquidation* [Docket No. 418] (the "**DelConte Declaration**") and (b) *the Amended Declaration of Jeriad R. Paul Regarding the Solicitation and Tabulation of Votes on the Second Amended Joint Chapter 11 Plan of Zen JV, LLC and its Debtor Affiliates* [Docket No. 413] (the "**Voting Declaration**", and together with the DelConte Declaration, the "**Declarations**"). In support of final approval and confirmation of the Combined Plan and Disclosure Statement, the Debtors respectfully state as follows:

## **PRELIMINARY STATEMENT**[2]

1.      The Debtors commenced these Chapter 11 Cases with the primary goal of continuing their prepetition sale process under section 363 of the Bankruptcy Code for a going concern sale of the Debtors' businesses in order to save jobs for hundreds of the Debtors' employees and maximize the value for the Debtors' Estates. During the initial months of these

---

2    A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' Chapter 11 Cases, is set forth in the *Declaration of Michael Suhajda, Chief Financial Officer, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 36] (the "**First Day Declaration**").  Capitalized terms used but not defined in this Memorandum have the meanings ascribed to them in the Combined Plan and Disclosure Statement.

Chapter 11 Cases, the Debtors and their advisers worked tirelessly to engage with potential buyers and ultimately received twelve Qualified Bids. As a result of these efforts, the Debtors were able to complete a competitive sale process and auction involving multiple bidders that resulted in the sale of substantially all of the Debtors' assets to three Successful Bidders: (i) Valnet for the Debtors' MMP Business for $27.25 million; (ii) PartnerOne for the Debtors' MGS Business for $13,000,079 million; and (iii) Bold for the Debtors' Job Board Business for $28.376 million. The aggregate value of the Successful Bids yielded a total of $67 million (net of the applicable stalking horse bid protections payable), reflecting an incremental $31.7 million more than the aggregate value of the Stalking Horse Bids. The Closing Date of all three Sales occurred on July 31, 2025.

2.      Following the Closing Date, the Debtors, the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (the "**Committee**"), the Prepetition Secured Parties, and their respective advisors engaged in extensive, good-faith and arm's length negotiations regarding the construct of a potential global resolution that ultimately culminated in the Global Settlement and a chapter 11 plan that is in the best interests of all of the Debtors' stakeholders. The primary objective of the Global Settlement and the Combined Plan and Disclosure Statement is to establish sufficient reserves for the payment of Allowed Claims, transfer the Debtors' remaining assets to the Liquidation Trust for the benefit of the Liquidation Trust Beneficiaries, and the orderly wind down of the Debtors and their Estates. As described herein and as demonstrated by the Liquidation Analysis, the Debtors do not believe that similar recoveries and benefits would be achievable in a chapter 7 liquidation scenario or under any alternative plan structure.

3.      Lastly, the Combined Plan and Disclosure Statement was accepted by the Voting Classes, and as demonstrated below, the Combined Plan and Disclosure Statement satisfies all

2

applicable requirements of the Bankruptcy Code. Thus, the Combined Plan and Disclosure Statement should be confirmed.

## **BACKGROUND**

## I.   **PROCEDURAL HISTORY**

4.      On June 24, 2025 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No trustee or examiner has been appointed in the Chapter 11 Cases. On July 2, 2025, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Committee. *See* Docket No. 65.

6.      The Debtors' Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

7.      On July 25, 2025, the Debtors filed the *Motion of Debtors for Entry of Order (I) Establishing a General Bar Date to File Proofs of Claim, (II) Establishing a Bar Date to File Proofs of Claim By Governmental Units, (III) Establishing a Rejection Damages Bar Date, (IV) Establishing an Amended Schedules Bar Date, (V) Approving the Form and Manner for Filing Proofs of Claim, (VI) Approving the Proposed Notices of Bar Dates, (VII) Approving Procedures with Respect to Service of the Proposed Notice of Bar Dates, and (VIII) Granting Related Relief* [Docket No. 221] (the "**Bar Date Motion**"), and on August 12, 2025, the Court entered an order [Docket No. 298] (the "**Bar Date Order**") which established September 15, 2025 as the General Bar Date and December 22, 2025 as the Governmental Bar Date (each as defined therein). The Bar Date Order also provided that any Holder of a Claim that fails to timely submit a Proof of

3

Claim before the applicable Bar Date (i) may not be treated as a creditor with respect to such claim for the purposes of voting on the Combined Plan and Disclosure Statement and distribution in these Chapter 11 Cases on account of such claim; and (ii) may be forever barred, estopped, and enjoined from asserting such claim against each of the Debtors, their estates, and their property (or filing a Proof of Claim with respect thereto).

8.      On August 19, 2025, the Debtors filed the Debtors' Combined Disclosure Statement and Joint Plan of Liquidation [Docket No. 305] and the Motion of Debtors for Entry of Order *(A) Conditionally Approving the Combined Plan and Disclosure Statement for Solicitation Purposes Only, (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Combined Plan and Disclosure Statement, (C) Approving the Forms of Ballots and Solicitation Materials, (D) Establishing Voting Record Date, (E) Fixing the Date, Time and Place for the Confirmation Hearing and the Deadline for Filing Objections Thereto, and (F) Approving Related Notice Procedures* [Docket No. 306] (the "**Solicitation Procedures Motion**").

9.      On September 2, 2025, the Debtors filed *Debtors' Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 325], and on September 4, 2025, the Debtors filed the solicitation version of the Combined Plan and Disclosure Statement [Docket No. 336].

10.     On September 3, 2025, the Court held a hearing (the "**Conditional Approval Hearing**") to consider the relief requested in the Solicitation Procedures Motion, and on September 4, 2025, the Court entered an *Order (A) Conditionally Approving the Combined Plan and Disclosure Statement for Solicitation Purposes Only, (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Combined Plan and Disclosure Statement, (C) Approving the Forms of Ballots and Solicitation Materials, (D) Establishing Voting*

4

*Record Date, (E) Fixing the Date, Time and Place for the Confirmation Hearing and the Deadline for Filing Objections Thereto, and (F) Approving Related Notice Procedures* [Docket No. 335] (the "**Conditional Approval and Procedures Order**").

11.     On September 8, 2025, the Debtors caused the Claims and Noticing Agent to serve the Solicitation Packages (as defined in the Solicitation Procedures Motion) in accordance with the terms of the Conditional Approval and Procedures Order.[3] Simultaneously, the *Notice of (I) Conditional Approval of the Combined Plan and Disclosure Statement for Solicitation Purposes Only, (II) Deadline for Casting Votes to Accept or Reject the Combined Plan and Disclosure Statement, and (III) the Hearing to Consider (A) Final Approval of the Combined Plan and Disclosure Statement as Containing Adequate Information and (B) Confirmation of the Combined Plan and Disclosure Statement* [Docket No. 337] (the "**Confirmation Hearing Notice**") was posted to the website maintained by the Claims and Noticing Agent in these Chapter 11 Cases. The Debtors also published the Publication Notice (as defined in the Conditional Approval and Procedures Order) in The New York Times on September 8, 2025, as evidenced by the *Proof of Publication* [Docket No. 405].

12.     On September 24, 2025, the Debtors filed the *Notice of Filing of Plan Supplement in Connection with Debtors' Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 388] (as may be amended, modified and/or supplemented, the "**Plan Supplement**"), which included, among other things, the Liquidation Trust Agreement and the Assumption Schedule specifying contracts to be assumed by the Debtors. On October 3, 2025, the

---

[3]     *See Affidavit of Service* [Docket No. 379].

Debtors filed an amended Plan Supplement [Docket No. 416], which included a revised version of the Assumption Schedule.

13.    Also on October 3, 2025, the Debtors filed the Debtors' *Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 408].

14.    Pursuant to the Conditional Approval and Procedures Order, the deadline (a) to file objections to the Combined Plan and Disclosure Statement was October 1, 2025, at 12:00 p.m., prevailing Eastern Time and (b) for all Holders of Claims entitled to vote on the Combined Plan and Disclosure Statement to cast their ballots was October 1, 2025, at 4:00 p.m., prevailing Eastern Time. The Confirmation Hearing is scheduled for October 7, 2025, at 1:00 p.m., prevailing Eastern Time. On October 3, 2025, the Debtors filed the proposed Confirmation Order [Docket No. 410], which contemplates, among other things, confirmation of the Combined Plan and Disclosure Statement.

## II.    THE SOLICITATION PROCESS AND VOTING RESULTS

15.    Pursuant to the Combined Plan and Disclosure Statement, the Debtors created seven separate classes of Claims and Equity Interests. A chart listing each such class is below:

| Class | Type | Status Under Plan | Voting Status |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Prepetition Term Loan Claims | Impaired | Entitled to Vote |
| 4 | Prepetition Notes Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Impaired | Deemed to Reject |
| 7 | Equity Interests | Impaired | Deemed to Reject |

16.    In accordance with the Conditional Approval and Procedures Order, Holders of Claims in Classes 3, 4, and 5 (the "**Voting Classes**") were entitled to vote on the Combined Plan and Disclosure Statement. Holders of Claims and Equity Interests in Classes 1, 2, 6, and 7 (the "**Non-Voting Classes**") were not entitled to vote because such Claims or Equity Interests are either

6

Case 25-11195-JKS    Doc 419    Filed 10/06/25    Page 17 of 54

Unimpaired or Impaired and not receiving or retaining any property under the Combined Plan and Disclosure Statement.

17.     The voting results, as reflected in the Voting Declaration, are summarized as follows:

| Class | Total Ballots Received | | | |
| | Accept | | Reject | |
| | Number (% of Number Voted) | Amount (% of Amount Voted) | Number (% of Number Voted) | Amount (% of Amount Voted) |
|---|---|---|---|---|
| Class 3 - Prepetition Term Loan Claims | 55 *(100%)* | $90,494,321.65 *(100%)* | 0 *(0%)* | 0 *(0%)* |
| Class 4 - Prepetition Notes Claims | 3 *(100%)* | $212,986,587.00 *(100%)* | 0 *(0%)* | 0 *(0%)* |
| Class 5 - General Unsecured Claims | 19 *(90.48%)* | $4,289,206.36 *(99.85%)* | 2 *(9.52%)* | $6,396.49 *(0.15%)* |

18.     The Debtors strongly believe that the Combined Plan and Disclosure Statement is in the best interests of the Debtors, their Estates, and other parties in interest. As shown above and in the Voting Declaration, Holders of Claims in the Voting Classes overwhelmingly agree and voiced their support by voting in favor of the Combined Plan and Disclosure Statement.  In addition, no party objected to confirmation of the Combined Plan and Disclosure Statement.

19.     The Combined Plan and Disclosure Statement represents a significant achievement for the Debtors and is the direct result of extensive, good-faith negotiations with the Committee, the Prepetition Secured Parties, and other parties in interest. The transactions embodied in the Combined Plan and Disclosure Statement will maximize the value of the Estates and maximize recoveries to Holders of Claims as demonstrated by the overwhelming acceptance of the Combined Plan and Disclosure Statement by the Voting Classes and the lack of any objection to the Combined Plan and Disclosure Statement. While certain Non-Voting Classes were deemed to reject the

7

RLF1 33952641v.1

Combined Plan and Disclosure Statement, because the Combined Plan and Disclosure Statement meets the requirements of section 1129(b) as described below, the Court should confirm the Combined Plan and Disclosure Statement notwithstanding such deemed rejection.

## ARGUMENT

### I.    THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD BE APPROVED ON A FINAL BASIS.

#### A.    The Combined Plan and Disclosure Statement Contains Adequate Information.

20.    Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims and interests entitled to vote on the plan. 11 U.S.C. § 1125(b). "Adequate information" is defined in the Bankruptcy Code as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a). The Combined Plan and Disclosure Statement therefore must, as a whole, provide information that is reasonably practicable to permit an informed judgment by Impaired creditors entitled to vote on the Combined Plan and Disclosure Statement. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321-22 (3d Cir. 2003); *see also, In re Phoenix Petrol., Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan."). Essentially, the Combined Plan and Disclosure Statement "must clearly and succinctly inform the average unsecured creditor what it

8

is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

21.     In evaluating whether a disclosure statement provides "adequate information," courts adhere to section 1125's instruction that making this determination is a flexible exercise based on the facts and circumstances of each case and is within the broad discretion of the Court. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of New York v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5907 ("[T]he information required will necessarily be governed by the circumstances of the case.").

22.     In accordance with these principles, the Combined Plan and Disclosure Statement provides, among other things, a summary of the Debtors' Chapter 11 Cases, their assets and liabilities, and an estimate of Distributions to the Holders of Allowed Claims.

23.     Specifically, the Combined Plan and Disclosure Statement contains the pertinent information necessary for Holders of Claims to make an informed decision about whether to vote to accept or reject the Combined Plan and Disclosure Statement, including, among other things, information regarding:

- an overview of the major events that occurred during the course of these Chapter 11 Cases, including the Sales;
- a summary of the classification and treatment of all Classes of creditors and equity interests;
- the provisions governing Distributions under the Combined Plan and Disclosure Statement; and

9

- the means for implementation of the Combined Plan and Disclosure Statement.

24. The Debtors respectfully submit that the Combined Plan and Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code. The Court approved the Combined Plan and Disclosure Statement on a conditional basis on September 4, 2025, as containing adequate information to commence solicitation. No party in interest has requested additional information nor disputed that the Combined Plan and Disclosure Statement contained information sufficient for the Voting Classes to be able to cast an informed vote on the Combined Plan and Disclosure Statement. For the reasons set forth above, the Debtors submit that the Combined Plan and Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code in satisfaction of section 1126(b)(2) and should be approved on a final basis.

## II. THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD BE CONFIRMED.

### A. The Combined Plan and Disclosure Statement Satisfies Each Requirement for Confirmation Under Section 1129(a) of the Bankruptcy Code.

(1) Section 1129(a)(1) — The Combined Plan and Disclosure Statement Complies with the Applicable Provisions of the Bankruptcy Code.

25. Section 1129(a)(1) of the Bankruptcy Code provides that a plan may be confirmed only if "[t]he plan complies with the applicable provisions" of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). The legislative history of section 1129(a)(1) explains that this requirement refers primarily to sections 1122 and 1123(a) of the Bankruptcy Code, which govern, respectively, the classification of claims and interests and the contents of a chapter 11 plan. *See In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008) ("As confirmed by legislative history, 11 U.S.C. § 1129(a)(1), which provides that the plan must 'compl[y] with the applicable provisions of this title,' requires that a plan comply with 11 U.S.C. §§ 1122 and 1123."); *In re TCI 2 Holdings,*

10

*LLC*, 428 B.R. 117, 132 (Bankr. D.N.J. 2010) ("The legislative history reflects that 'the applicable provisions of chapter 11 [refers to] . . . section 1122 and 1123, governing classification and contents of plan.'"); *In re G-1 Holdings Inc.*, 420 B.R. 216, 258 (Bankr. D.N.J. 2009) (reviewing a plan to determine whether it "complies with other applicable provisions of § 1129(a)(1), including §§ 1122 and 1123"); *In re Johns-Manville Corp.*, 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986) (stating that "[o]bjections to confirmation raised under § 1129(a)(1) generally involve the failure of a plan to conform to the requirements of § 1122(a) or § 1123"), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom.*, *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636 (2d Cir. 1988). As explained below, the Combined Plan and Disclosure Statement complies with the requirements of sections 1122, 1123, and 1129 of the Bankruptcy Code, as well as other applicable provisions.

> a.    *The Combined Plan and Disclosure Statement Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code.*

26.    Section 1122(a) of the Bankruptcy Code provides, in pertinent part, that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). Although section 1122(a) of the Bankruptcy Code prohibits the inclusion of dissimilar claims in the same class, it does not require the placement of all similar claims in one class. Courts in the Third Circuit have recognized that plan proponents have significant flexibility in placing similar claims into different classes, provided there is a rational basis to do so. *See In re W.R. Grace & Co.*, 729 F.3d 311, 326 (3d Cir. 2013) ("[W]e will uphold a plan's classification scheme so long as it is reasonable and does not arbitrarily designate classes.") (internal citation omitted); *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158–59 (3d Cir. 1993) (For voting classification

11

to be proper, "each class must represent a voting interest that is sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed.").

27.     The Combined Plan and Disclosure Statement meets these requirements. Article VII of the Combined Plan and Disclosure Statement classifies Claims and Equity Interests into seven separate classes. In particular, Article VII of the Combined Plan and Disclosure Statement segregates into separate classes Other Priority Claims (Class 1), Other Secured Claims (Class 2), Prepetition Term Loan Claims (Class 3), Prepetition Notes Claims (Class 4), General Unsecured Claims (Class 5), Intercompany Claims (Class 6), and Equity Interests (Class 7).[4]

28.     Claims and Equity Interests assigned to each particular Class described above are substantially similar to the other Claims and Equity Interests in such Class. The Combined Plan and Disclosure Statement's classification scheme generally corresponds to the Debtors' corporate and capital structure, thereby taking into account the relative priority among Claims and Equity Interests. In addition, valid business, legal, and factual reasons justify the separate classification of the particular Claims or Equity Interests into the Classes created under the Combined Plan and Disclosure Statement, and no unfair discrimination exists between or among Holders of Claims and Equity Interests. For example, the classification scheme distinguishes Prepetition Term Loan Claims (Class 3) from Prepetition Notes Claims (Class 4) because of the different instruments and collateral underlying the Claims in each Class, and General Unsecured Claims (Class 5) are separately classified because they have differing legal rights than the Debtors' secured creditors.

---

[4]     In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

29.     Accordingly, the Debtors submit that the Combined Plan and Disclosure Statement fully complies with and satisfies section 1122(a) of the Bankruptcy Code. No party has asserted otherwise.

> b.     *The Combined Plan and Disclosure Statement Satisfies Section 1123(a) of the Bankruptcy Code.*

30.     Section 1123(a) of the Bankruptcy Code identifies seven relevant requirements for the contents of a plan. Specifically, that section requires that a plan: (i) designate classes of claims and interests; (ii) specify unimpaired classes of claims and interests; (iii) specify treatment of impaired classes of claims and interests; (iv) provide for equality of treatment within each class; (v) provide adequate means for the plan's implementation; (vi) provide for the prohibition of nonvoting equity securities and provide an appropriate distribution of voting power among the classes of securities; and (vii) contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officers, directors, or trustee. *See* 11 U.S.C. § 1123(a).

31.     <u>Bankruptcy Code Section 1123(a)(1)-(3)</u>. The Combined Plan and Disclosure Statement fully complies with the applicable requirements of section 1123(a) described above. As previously noted with respect to the Combined Plan and Disclosure Statement's compliance with section 1122, Article VII of the Combined Plan and Disclosure Statement designates seven separate Classes of Claims and Equity Interests, as required by section 1123(a)(1) of the Bankruptcy Code. Article VII of the Combined Plan and Disclosure Statement specifies that Classes 1 and 2 are not Impaired under the Combined Plan and Disclosure Statement, as required by section 1123(a)(2) of the Bankruptcy Code, and are deemed to accept the Combined Plan and Disclosure Statement. Article VII also specifies that Claims in Classes 3, 4, and 5 are Impaired and entitled to vote on the Combined Plan and Disclosure Statement, while Claims and Equity

13

Interests in Classes 6 and 7 are Impaired and deemed to reject the Combined Plan and Disclosure Statement. Further, Article VIII of the Combined Plan and Disclosure Statement describes the treatment of each Class in accordance with section 1123(a)(3) of the Bankruptcy Code.

32.     Bankruptcy Code Section 1123(a)(4). As required by section 1123(a)(4) of the Bankruptcy Code, the treatment of each Claim or Equity Interest within a Class is the same as the treatment of each other Claim or Equity Interest in such Class, unless the Holder of a Claim or Equity Interest agrees to less favorable treatment on account of its Claim or Equity Interest.

33.     Bankruptcy Code Section 1123(a)(5). In accordance with the requirements of section 1123(a)(5) of the Bankruptcy Code, Article III.C.5 of the Combined Plan and Disclosure Statement and various other provisions of the Combined Plan and Disclosure Statement provide adequate and proper means for the Combined Plan and Disclosure Statement's implementation.

34.     Specifically, the Combined Plan and Disclosure Statement provides for: (a) Reserves for, among other things, the payment of all reasonably anticipated Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Other Secured Claims under Article III.C.5; (b) the sources of Cash for Liquidation Trust Expenses, Professional Fee Claims, and the vesting of all Liquidation Trust Assets in the Liquidation Trust under Articles IV.B and IX; (c) the appointment of the Liquidation Trustee under Article IX.A; (d) the authorization to undertake all actions necessary to effectuate the Combined Plan and Disclosure Statement under Article XI.A; (e) the cancellation of all mortgages, deeds of trust, Liens, or other security interests under Article XI.C; and (g) the effectuating of certain documents and an exemption from certain taxes and assessments under Articles XI.B and XVI.J.

35.     Additionally, Article XI.D of the Combined Plan and Disclosure Statement provides for the limited substantive consolidation of the Debtors' Estates, but solely for the

14

purposes of this Combined Disclosure Statement and Plan, including voting on the Combined

Disclosure Statement and Plan by the Holders of Claims and making any Distributions to Holders

of Claims. Limited substantive consolidation of the Debtors' Estates was contemplated by the

Global Settlement, the Voting Classes voted to accept the Combined Disclosure Statement and

Plan, and there were no objections to the limited substantive consolidation of the Debtors' Estates.

Based on the foregoing, such limited substantive consolidation is permissible and should be

approved.  *See Kaiser Aluminum*, 2006 WL 616243, at *22 (Bankr. D. Del. Feb. 6, 2006) ("In the

absence of any creditor objection to the deemed substantive consolidation, and in light of the

overwhelming creditor support for the [p]lan, the deemed substantive consolidation . . . is

consensual.").

36.    <u>Bankruptcy Code Section 1123(a)(6)</u>. Section 1123(a)(6) of the Bankruptcy Code

requires that a debtor's corporate constituent documents prohibit the issuance of nonvoting equity

securities. This provision is not applicable to the Combined Plan and Disclosure Statement, as the

Combined Plan and Disclosure Statement contemplates the dissolution of the Debtors and does

not provide for the issuance of equity securities.

37.    <u>Bankruptcy Code Section 1123(a)(7)</u>. Section 1123(a)(7) of the Bankruptcy Code

requires that a plan "contain only provisions that are consistent with the interests of creditors and

equity security holders and with public policy with respect to the manner of selection of any

officer, director, or trustee under the plan." 11 U.S.C. § 1123(a)(7). The Combined Plan and

Disclosure Statement provides for the dissolution and winding down of the Debtors, the

termination of the Debtors' remaining officers and directors and the appointment of the

Liquidation Trustee as the Debtors' authorized representative for all purposes, including, without

15

limitation, under section 1123 of the Bankruptcy Code. The appointment of the Liquidation Trustee and the details regarding such appointment are set forth in the Combined Plan and Disclosure Statement and the Plan Supplement.  Specifically, the Liquidation Trustee was selected by the Committee and consented to by the Debtors and the Prepetition Notes Secured Parties and his identity (and compensation) was disclosed in the Plan Supplement.   No party in interest voiced their opposition to his appointment and, as noted above, all Voting Classes voted overwhelmingly in support of the Combined Plan and Disclosure Statement.

        c.      *The Combined Plan and Disclosure Statement Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code.*

38.      Section 1123(b) of the Bankruptcy Code identifies various discretionary provisions that may be included in a chapter 11 plan. For example, section 1123(b) of the Bankruptcy Code provides that a plan may: (a) impair or leave unimpaired any class of claims or interests; (b) provide for the assumption or rejection of executory contracts and unexpired leases; (c) provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estates; and (d) include any other appropriate provision not inconsistent with the applicable provisions of the Bankruptcy Code. *See* 11 U.S.C. §§ 1123(b)(1)–(3), (6).

39.      As permitted by section 1123(b), the Combined Plan and Disclosure Statement provides for (i) the impairment or unimpairment of Classes of Claims and Equity Interests (*see* Article VII) and (ii) the assumption and rejection of Executory Contracts and Unexpired Leases (*see* Article XIII). The Combined Plan and Disclosure Statement also provides for the abandonment of the Non-Debtor Equity Interests on the Effective Date pursuant to section 554 of the Bankruptcy Code (*see* Article XVI.T).  As noted in the Combined Plan and Disclosure Statement, the Debtors do not believe the Non-Debtor Equity Interests have any value to the Estates and, accordingly, believe that such abandonment is appropriate.

16

40.     Additionally, the Combined Plan and Disclosure Statement provides for a general settlement of all Claims and Equity Interests and controversies resolved pursuant to the Combined Plan and Disclosure Statement. The standards for approval of a settlement under section 1123 of the Bankruptcy Code are generally the same as those under Bankruptcy Rule 9019. *See In re Coram Healthcare Corp.*, 315 B.R. 321, 334–35 (Bankr. D. Del. 2004). The Third Circuit has provided the following four criteria that a bankruptcy court should consider when approving a settlement pursuant to Bankruptcy Rule 9019:

a.     the probability of success in litigation;

b.     the likely difficulties in collection;

c.     the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and

d.     the paramount interest of creditors.

*See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (citing *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986)).

41.     The Debtors satisfy the above factors, as discussed herein. The Global Settlement set forth in Article III.C.5 of the Combined Plan and Disclosure Statement was the result of extensive, good-faith and arm's length negotiations between the Debtors, the Committee, and the Prepetition Secured Parties (the "**Global Settlement Parties**") to ensure that creditors and the Holders of Equity Interests are receiving the greatest value on their Claims or Equity Interests through the Combined Plan and Disclosure Statement. While the Global Settlement contemplates, among other things, releases by the Debtors and the Estates of the Released Parties, neither the Debtors' nor the Committee's investigations revealed any colorable claims subject to such release that would, in the Debtors' or the Committee's view, materially improve recoveries of Holders of General Unsecured Claims or other creditors, particularly in light of the material benefits that the

17

Debtors and the Estates are receiving under the Global Settlement. Such releases and other provisions, including the exculpation and injunction provisions, are discussed in greater detail in Section III below.  Accordingly, the Combined Plan and Disclosure Statement's discretionary general settlement provisions satisfy the requirements of section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.

42.     Accordingly, the Combined Plan and Disclosure Statement complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code (as well as with the other applicable provisions of the Bankruptcy Code) and thus satisfies the requirements of section 1129(a)(1) of the Bankruptcy Code.

(2)     Section 1129(a)(2) — The Debtors Have Complied with the Applicable Provisions of Title 11.

43.     Section 1129(a)(2) of the Bankruptcy Code requires that the proponent of a chapter 11 plan comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(2). The legislative history of section 1129(a)(2) indicates that its principal purpose is to ensure that the proponent complies with the disclosure and solicitation requirements set forth in sections 1125 and 1126 of the Bankruptcy Code. *See* H.R. Rep. No. 95-595, at 412 ("[Section 1129(a)(2)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."). As discussed below, the Debtors, as the proponents of the Combined Plan and Disclosure Statement, have complied with the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code.

a.     *The Debtors Complied with Sections 1125 and 1126 of the Bankruptcy Code.*

44.     Section 1125 prohibits the solicitation of acceptances or rejections of a plan from holders of claims or interests "unless, at the time of or before such solicitation, there is transmitted

18

to such holder the plan or a summary of the plan, and a written disclosure statement approved . . . by the court as containing adequate information." 11 U.S.C. § 1125(b). In these Chapter 11 Cases, the Court entered the Conditional Approval and Procedures Order which, among other things, conditionally approved the Combined Plan and Disclosure Statement for solicitation purposes. Additionally, the Court considered and, in the Conditional Approval and Procedures Order approved, (a) procedures for the solicitation, voting, and tabulation of votes to accept or reject the Combined Plan and Disclosure Statement, (b) the form of Ballots and Solicitation Packages to be distributed to all Holders of Claims and Equity Interests, and (c) the form and manner of service of the Confirmation Hearing Notice.

45.    Thereafter, the Debtors and their agents transmitted Solicitation Packages to Holders of Claims that were entitled to vote to accept or reject the Combined Plan and Disclosure Statement in accordance with section 1126 of the Bankruptcy Code. These packages contained: the Conditional Approval and Procedures Order (without exhibits); (ii) the Confirmation Hearing Notice; (iii) a QR code that provides electronic access to the Debtors' website page containing the Combined Plan and Disclosure Statement; (iv) a letter from the Committee recommending that the Holders of General Unsecured Claims vote to accept the Combined Plan and Disclosure Statement; and (v) an appropriate Ballot with a pre-addressed stamped return envelope. These Solicitation Packages were distributed promptly after the entry of the Conditional Approval and Procedures Order and in accordance with the Bankruptcy Code and the Court's instructions. In addition, the Debtors caused a modified version of the Combined Hearing Notice to be published in the national edition of the New York Times on September 8, 2025 in accordance with the Conditional Approval and Procedures Order.

19

46.     Following the distribution of the Solicitation Packages and the publication of the Confirmation Hearing Notice, the Ballots of all Holders of Claims that were entitled to vote and in fact voted were duly tabulated, in accordance with the rules and procedures provided in the Conditional Approval and Procedures Order. *See* Voting Declaration, Ex. A. As set forth in the Voting Declaration, the Combined Plan and Disclosure Statement has been accepted by at least two-thirds in amount and one-half in number of Claims held by creditors that voted in each Voting Class. Accordingly, the Combined Plan and Disclosure Statement complies with the requirements of section 1129(a)(2) of the Bankruptcy Code.

(3)     <u>Section 1129(a)(3) — The Combined Plan and Disclosure Statement Has Been Proposed in Good Faith.</u>

47.     Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). In the Third Circuit, the "good faith" requirement means that a "plan be 'proposed with honesty, good intentions, and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code.'" *In re Zenith Elecs. Corp.*, 241 B.R. 92, 107 (Bankr. D. Del. 1999) (*quoting In re Sound Radio, Inc.*, 93 B.R. 849, 853 (Bankr. D.N.J. 1988)); *see also In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 347 (Bankr. D. Del. 1998) ("[C]ourts have held a plan is to be considered in good faith 'if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Code.'"), *aff'd sub nom.*, *Solow v. PPI Enters.(U.S.) (In re PPI Enters.(U.S.))*, 324 F.3d 197 (3d Cir. 2003). Courts in this Circuit also consider the totality of the circumstances surrounding a plan to determine if it has been proposed in good faith. *See Azar v. THGH Liquidating LLC (In re THGH Liquidating LLC)*, No. 19-11589 (JTD), 2020 WL 5409002, at *6 (D. Del. Sept. 9, 2020) ("[G]ood faith [under

20

section 1129(a)(3)] is to be determined by the totality of the circumstances.") (internal citations omitted).

48.     The Debtors have proposed the Combined Plan and Disclosure Statement in good faith and not by any means forbidden by law. The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the record of the Conditional Approval Hearing, the record of the Confirmation Hearing, the DelConte Declaration, and all other proceedings held in these Chapter 11 Cases. The Combined Plan and Disclosure Statement is designed to effectuate the objectives and purposes of the Bankruptcy Code by maximizing recoveries to parties in interest. As set forth in the DelConte Declaration, the Combined Plan and Disclosure Statement is a result of arms-length negotiations among the Global Settlement Parties who worked collaboratively to file the Combined Plan and Disclosure Statement in the belief that it will maximize the value of the ultimate recoveries to all creditor groups on a fair and equitable basis. The overwhelming support of creditors for the Combined Plan and Disclosure Statement provides independent evidence of the Debtors' good faith in proposing the Combined Plan and Disclosure Statement.

49.     As further described in the Combined Plan and Disclosure Statement, the Debtors believe that creditors will receive greater and more expeditious Distributions under the Combined Plan and Disclosure Statement than they would receive through a chapter 7 liquidation. *See* liquidation analysis attached as Exhibit 1 (the "**Liquidation Analysis**") to the Combined Plan and Disclosure Statement. The Distributions contemplated under the Combined Plan and Disclosure Statement could not occur in a chapter 7 liquidation because there would be no Global Settlement between the Global Settlement Parties, which is the source of the Reserves and the potential recovery for Holders of General Unsecured Claims. Moreover, the additional administrative expenses involved with the appointment of a trustee or trustees and attorneys, accountants, and

21

other professionals to assist such trustees would decrease the net distributable value available to creditors, thereby reducing the assets available for distribution to creditors. *See id.*

50.     The overall fairness of the Combined Plan and Disclosure Statement and the acknowledgment by the Debtors' creditors that the Combined Plan and Disclosure Statement has been proposed in good faith and for proper purposes is demonstrated by the fact that the Committee fully supports the Combined Plan and Disclosure Statement. *See In re Eagle-Picher Industries, Inc.*, 203 B.R. 256, 274 (S.D. Ohio 1996) (finding that a plan of reorganization was proposed in good faith when, among other things, it was based on extensive arms-length negotiations among the plan proponents and other parties in interest). In fact, the Committee has recommended that all Holders of Allowed Claims in Class 5 vote to accept the Combined Plan and Disclosure Statement and included a letter setting forth its basis for such recommendation as part of the Solicitation Packages. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code have been fully satisfied.

       (4)     <u>Section 1129(a)(4) — All Payments to Be Made By the Debtors in Connection With These Cases Are Subject to the Approval of the Court.</u>

51.     Under section 1129(a)(4) of the Bankruptcy Code, the Court must find that "[a]ny payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case" be approved by the Court or subject to the Court's approval, as reasonable. 11 U.S.C. § 1129(a)(4).

52.     The only category of Claims that falls within the ambit of section 1129(a)(4) in these Chapter 11 Cases is the Professional Fee Claims. As set forth in Article V.B of the Combined Plan and Disclosure Statement, all Professional Fee Claims will only be paid after they have been approved by this Court, and Professionals must file their final requests for payment of their Professional Fee Claims no later than forty-five (45) days after the Effective Date. Accordingly,

22

the Debtors submit that the Combined Plan and Disclosure Statement satisfies the requirements of section 1129(a)(4).

(5)   Section 1129(a)(5) — The Combined Plan and Disclosure Statement Discloses the Identity of Post-Confirmation Management and the Compensation Structure.

53.     Section 1129(a)(5)(A)(i)–(ii) of the Bankruptcy Code requires that a plan proponent disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor," and requires a finding that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy." 11 U.S.C. §§1129(a)(5)(A)(i)– (ii). From and after the Effective Date, the Liquidation Trustee will manage the Liquidation Trust and the Liquidation Trust Assets and will be the Debtors' authorized representative for all purposes, including, without limitation, under section 1123 of the Bankruptcy Code. Therefore, the requirements of section 1129(a)(5)(A), to the extent applicable, have been satisfied. Further, section 1129(a)(5)(B) requires that a plan proponent disclose the "[identities] of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider." 11 U.S.C. § 1129(a)(5)(B). The Liquidation Trust Agreement, attached as Exhibit A to Plan Supplement, discloses the identity of Steven Balasiano as the initial Liquidation Trustee and the nature of his compensation for his role as the Liquidation Trustee. Moreover, all of the Debtors' remaining officers and directors will be discharged of their duties and terminated on the Effective Date as set forth in Article XVI.U of the Combined Plan and Disclosure Statement. Accordingly, the Debtors have satisfied section 1129(a)(5)(B) of the Bankruptcy Code.

23

      (6)    <u>Section 1129(a)(6) — The Combined Plan and Disclosure Statement Does Not Provide for Any Rate Change Subject to Regulatory Approval.</u>

54.    Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over the debtor after confirmation has approved any rate change provided for in the plan. 11 U.S.C. § 1129(a)(6). This section is not applicable to the Combined Plan and Disclosure Statement.

      (7)    <u>Section 1129(a)(7) — The Combined Plan and Disclosure Statement is in the Best Interests of Creditors.</u>

55.    Section 1129(a)(7) of the Bankruptcy Code, commonly known as the "best interests test," requires that, with respect to each impaired class of claims or interests, each individual holder of a claim or interest has either accepted the plan or will receive or retain property having a present value of not less than that which such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(7)(A)(i)–(ii). Compliance with the best interests test can generally be satisfied by a liquidation analysis showing that an impaired class will receive no less under the plan than a liquidation under chapter 7. *In re Smith*, 357 B.R. 60, 67 (Bankr. M.D.N.C. 2006) ("In order to show that a payment under a plan is equal to the value that the creditor would receive if the debtor were liquidated, there must be a liquidation analysis of some type that is based on evidence and not mere assumptions or assertions.") (internal citations omitted). The best interests of creditors test must be applied to each holder of an impaired claim or equity interest that voted to reject the combined plan and disclosure statement, regardless of whether the class in which such claim or equity interest is placed, as a whole, accepts the Combined Plan and Disclosure Statement. *See Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *see also In re Cypresswood*

*Land Partners, I*, 409 B.R. 396, 428 (Bankr. S.D. Tex. 2009) ("This provision is known as the 'best-interest-of-creditors-test' because it ensures that reorganization is in the best interest of individual claimholders who have not voted in favor of the plan.").

56.     Under the Combined Plan and Disclosure Statement, Classes 1 and 2 are Unimpaired, and therefore the best interests test is satisfied with respect to each Claim in each such Class. Furthermore, as illustrated by the Liquidation Analysis, pursuant to the Combined Plan and Disclosure Statement, Holders of Claims in Classes 3, 5, 6, and 7 will receive as much as or more than what they would receive in a hypothetical chapter 7. Only Class 4 would receive more in a hypothetical chapter 7 because there would be no Global Settlement, which is funded primarily from the recoveries of that the Holders of Claims in Class 4 would otherwise be entitled to receive. However, Class 4 has unanimously voted to accept the Combined Plan and Disclosure Statement (and is a Global Settlement Party), so the best interests test is satisfied. Accordingly, the Debtors submit that section 1129(a)(7) of the Bankruptcy Code is satisfied.

(8)     Section 1129(a)(8) — The Combined Plan and Disclosure Statement Has Not Been Accepted By All Classes of Creditors and Equity Interest Holders but Can Nonetheless Be Confirmed.

57.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan. If any class of claims or interests rejects the plan, the plan must satisfy the "cramdown" requirements with respect to the claims or interests in that class. *See* 11 U.S.C. § 1129(b). Holders of Claims and Equity Interests in Classes 6 and 7 are deemed to have rejected the Combined Plan and Disclosure Statement and thus were not entitled to vote. However, while the Combined Plan and Disclosure Statement does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to the Impaired Classes that were deemed to reject the Combined Plan and Disclosure Statement, the Combined Plan and Disclosure

25

Statement is confirmable nonetheless because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code, as discussed below, as at least one Impaired Class of Claims has voted to accept the Combined Plan and Disclosure Statement, and the Combined Plan and Disclosure Statement does not discriminate unfairly and is fair and equitable with respect to the Classes deemed to reject.

> (9) <u>Section 1129(a)(9) — The Combined Plan and Disclosure Statement Provides for the Payment of Priority Claims.</u>

58.     Section 1129(a)(9) of the Bankruptcy Code requires that, "[e]xcept to the extent that the holder of a particular claim has agreed to a different treatment of such claim," a plan must provide that (i) all holders of allowed administrative expense claims will be paid in full in cash on the effective date of the plan and (ii) all holders of allowed priority claims will be paid in full in cash either on the effective date of the plan or (depending on the specific type of claim) over time with interest. 11 U.S.C. § 1129(a)(9).

59.     The Combined Plan and Disclosure Statement satisfies section 1129(a)(9) of the Bankruptcy Code. *First*, Article IV.A of the Combined Plan and Disclosure Statement satisfies section 1129(a)(9)(A) of the Bankruptcy Code because it provides that each Holder of an Allowed Administrative Expense Claim will receive payment in full in Cash of the Allowed amount of such Claim (as determined by settlement or Final Order of the Bankruptcy Court) or such other treatment as may be agreed upon by such Holder on the Effective Date. *Second*, the Combined Plan and Disclosure Statement satisfies section 1129(a)(9)(B) of the Bankruptcy Code because no Holders of the types of Claims specified by 1129(a)(9)(B) are Impaired under the Combined Plan and Disclosure Statement. *Third*, Article VI.C of the Combined Plan and Disclosure Statement satisfies section 1129(a)(9)(C) of the Bankruptcy Code because it provides that each Holder of an Allowed Priority Tax Claim shall receive payment in full in Cash of the Allowed amount of such Claim (as determined by settlement or Final Order of the Bankruptcy Court) on the Effective Date

26

or as soon thereafter as practicable, or other treatment as may be agreed upon by such Holder. The Combined Plan and Disclosure Statement thus satisfies each of the requirements of section 1129(a)(9) of the Bankruptcy Code.

> (10)   Section 1129(a)(10) — The Combined Plan and Disclosure Statement Has Been Accepted By at Least One Impaired, Non-Insider Class.

60.     Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan, "without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10). Here, while Class 4 is comprised entirely of insiders, Classes 3 and 5, which are Impaired, voted to accept the Combined Plan and Disclosure Statement independent of any insiders' votes. Accordingly, the Combined Plan and Disclosure Statement satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

> (11)   Section 1129(a)(11) — The Combined Plan and Disclosure Statement is Feasible.

61.     Pursuant to section 1129(a)(11) of the Bankruptcy Code, a plan may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, *unless such liquidation or reorganization is proposed in the plan*." 11 U.S.C. § 1129(a)(11) (emphasis added).

62.     This "feasibility" requirement is satisfied where, as here, a chapter 11 plan "offers a reasonable assurance of success." *In re Johns-Manville*, 843 F.2d at 649. "Success need not be guaranteed" for a plan to satisfy the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code; rather, the appropriate inquiry is whether a plan offers a reasonable probability of success. *Id.*; *see also In re Am. Cap. Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012) (explaining

27

that section 1129(a)(11) does not require "a plan's success to be guaranteed," but does require a "realistic and workable framework"); *In re W.R. Grace & Co.*, 475 B.R. 34, 115 (D. Del. 2012) ("[T]he bankruptcy court need not require a guarantee of success, but rather only must find that 'the plan presents a workable scheme of organization and operation from which there may be reasonable expectation of success.'").

63.    Because the Combined Plan and Disclosure Statement proposes a liquidation of all remaining Estate Assets and the distribution of Cash to Holders of Allowed Claims in accordance with the priority scheme of the Bankruptcy Code and the terms of the Combined Plan and Disclosure Statement, a finding is not required as to the likelihood of further liquidations or reorganizations. Additionally, the Debtors, with the assistance of their advisors, have carefully evaluated the Cash that will be required for the payment of all reasonably anticipated Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Other Secured Claims and believe that the Claims Reserve that will be established on the Effective Date will be sufficient to satisfy such Claims. *See* DelConte Decl. ¶ 30.

64.    Further, the economic stakeholders' overwhelming support of the Combined Plan and Disclosure Statement is a clear indication of feasibility. *See In re Indianapolis Downs, LLC*, 486 B.R. 286, 298 (Bankr. D. Del. 2013) ("The first, best indicator of feasibility is the position of the creditors whose economic interests are at stake."); *see also In re S B Bldg. Assocs. Ltd. P'ship*, 621 B.R. 330, 360 (Bankr. D.N.J. 2020) (finding that overwhelming creditor support "is the best evidence of a Plan's feasibility"). Here, the Combined Plan and Disclosure Statement is the result of extensive negotiations between the Global Settlement Parties, which comprise the Debtors' key stakeholders, the Voting Classes overwhelmingly voted to accept the Combined Plan and Disclosure Statement and no  party objected to the Combined Plan and Disclosure Statement.

28

Accordingly, the Combined Plan and Disclosure Statement satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code.

> (12)    <u>Section 1129(a)(12) — The Combined Plan and Disclosure Statement Provides for the Payment of Fees.</u>

65.    Section 1129(a)(12) of the Bankruptcy Code requires that, as a condition precedent to the confirmation of a plan, "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." 11 U.S.C. § 1129(a)(12). The Combined Plan and Disclosure Statement complies with section 1129(a)(12) by providing that all Statutory Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date, and after the Effective Date, the Debtors and the Liquidation Trust shall be jointly and severally liable to pay any and all Statutory Fees when due and payable. (*See* Article IV.D). Accordingly, the Debtors submit that the Combined Plan and Disclosure Statement fully complies with and satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

> (13)    <u>Sections 1129(a)(13) Through 1129(a)(16) Are Inapplicable in the Chapter 11 Cases.</u>

66.    Section 1129(a)(13) of the Bankruptcy Code requires chapter 11 plans to continue all "retiree benefits" (as defined in section 1114 of the Bankruptcy Code). The Debtors have no obligations to pay such "retiree benefits" and, accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Combined Plan and Disclosure Statement. Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code are also inapplicable because none of the Debtors is an "individual" or a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

29

**B.      Section 1129(b) — The Combined Plan and Disclosure Statement Satisfies the "Cramdown" Requirements for Confirmation.**

67.      Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8) of the Bankruptcy Code, a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied. *See* 11 U.S.C. § 1129(b). To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes. *See In re Zenith Elecs. Corp.*, 241 B.R. at 105 (explaining that "[w]here a class of creditors or shareholders has not accepted a plan of reorganization, the court shall nonetheless confirm the plan if it 'does not discriminate unfairly and is fair and equitable'"); *see also Matter of Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 519 (5th Cir. 1998); *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*, 115 F.3d 650, 653 (9th Cir. 1997). No Impaired Class of Claims or Equity Interests has rejected the Combined Plan and Disclosure Statement other than Classes 6 and 7, which are deemed to reject the Combined Plan and Disclosure Statement. The Combined Plan and Disclosure Statement may nevertheless be confirmed over the deemed rejection of Classes 6 and 7.

(1)      The Combined Plan and Disclosure Statement Does Not Discriminate Unfairly.

68.      Section 1129(b)(1) does not prohibit discrimination between classes. Rather, it prohibits discrimination that is unfair. Under section 1129(b) of the Bankruptcy Code, a plan unfairly discriminates where similarly situated classes are treated differently without a reasonable basis for the disparate treatment. *See In re Armstrong World Induss.*, 348 B.R. 111, 121 (D. Del.

30

2006) (noting that the "hallmarks of the various tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination") (internal citation omitted); *accord In re WorldCom Inc.*, No. 02-13533 (AJG), 2003 WL 23861928, at *59 (Bankr. S.D.N.Y. Oct. 31, 2003); *In re Johns-Manville*, 68 B.R. at 636. As between two classes of claims or two classes of equity interests, there is no unfair discrimination if (i) the classes are comprised of dissimilar claims or equity interests or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment. *See, e.g., In re Johns-Manville*, 843 F.2d at 650.

69.     Under the foregoing standards, the Combined Plan and Disclosure Statement does not "discriminate unfairly" with respect to Holders of Intercompany Claims in Class 6 and Equity Interests in Class 7. The Holders of Intercompany Claims in Class 6 and Equity Interests in Class 7 are legally distinct in nature from the Holders of Claims in all the other Classes.  Specifically, the Holders of Intercompany Claims are entirely comprised of the Debtors or non-Debor Affiliates, all of whom have consented, or otherwise did not object, to the treatment of their Claims. Moreover, Class 7 is the only Class of Equity Interests.  Accordingly, given that the Intercompany Claims in Class 6 and the Equity Interests in Class 7 are "dissimilar" from the Claims in all other Classes and the Combined Plan and Disclosure Statement does not provide any distributions to similarly situated Holders of Claims or Equity Interests, the Combined Plan and Disclosure Statement does not discriminate unfairly with respect to Classes 6 and 7.

(2)     The Plan is Fair and Equitable.

70.     A plan is "fair and equitable" with respect to an impaired class of claims or interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule. This requires either that an impaired rejecting class of claims or interests be paid in full or that a class

junior to the impaired accepting class not receive any distribution under a plan on account of its junior claim or interest. *See* 11 U.S.C. 1129(b)(2); *see also In re Armstrong World Indus.*, 348 B.R. at 114 (stating that the absolute priority rule is embodied in section 1129(b) of the Bankruptcy Code). Under the Combined Plan and Disclosure Statement, no Holder of a Claim or Equity Interest junior to an Impaired rejecting Class of Claims or Equity Interests will receive any recovery under the Combined Plan and Disclosure Statement on account of such Claim or Equity Interest.

71.    Accordingly, the Combined Plan and Disclosure Statement satisfies the absolute priority rule, does not unfairly discriminate, and is "fair and equitable" with respect to all Impaired Classes of Claims and Equity Interests and satisfies section 1129(b) of the Bankruptcy Code, and no party has asserted otherwise.

**C.    Section 1129(c) — The Combined Plan and Disclosure Statement is the Only Plan Filed in this Case.**

72.    Section 1129(c) provides that "[t]he court may confirm only one plan, unless the order of confirmation in the case has been revoked under section 1144 of this title." The Combined Plan and Disclosure Statement is the only plan filed in the Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is satisfied.

**D.    Section 1129(d) — The Combined Plan and Disclosure Statement Purpose is Consistent with the Bankruptcy Code.**

73.    Section 1129(d) of the Bankruptcy Code provides that a court may not confirm a plan if the principal purpose of the plan is to avoid taxes or the application of section 5 of the Securities Act of 1933. The Combined Plan and Disclosure Statement meets these requirements because the principal purpose of the Combined Plan and Disclosure Statement is not the avoidance

of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, and there has been no filing by any governmental agency asserting such avoidance.

> **E.      Section 1129(e) — These Chapter 11 Cases are Not "Small Business Cases," as defined in the Bankruptcy Code.**

74.     Section 1129(e) provides that "[i]n a small business case, the court shall confirm a plan that complies with the applicable provisions of this title and that is filed in accordance with section 1121(e) not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with section 1121(e)(3)." The Chapter 11 Cases are not "small business case[s]," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

## III.     THE COMBINED PLAN AND DISCLOSURE STATEMENT'S RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS ARE CONSISTENT WITH SECTION 1123(B) OF THE BANKRUPTCY CODE.

75.     Section 1123(b)(3)(A) of the Bankruptcy Code provides that a plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3)(A). A debtor may release claims under section 1123(b)(3)(A) "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate." *U.S. Bank Nat'l Ass'n v. Wilmington Trust Co.* (*In re Spansion, Inc.*), 426 B.R. 114, 143 (Bankr. D. Del. 2010); *see also In re Wash. Mut., Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("In making its evaluation [whether to approve a settlement], the court must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.'"). A court's evaluation of the propriety of a debtor's release "is often dictated by the specific facts of the case." *In re Wash. Mut.*, 442 B.R. at 345; *In re Tribune Co.*, 464 B.R. 126, 186 (Bankr. D. Del. 2011)(same); *In re Indianapolis Downs*, 486 B.R. at 303 (stating that courts evaluating a debtor's releases weigh "the equities of the particular case after a fact-specific review").

33

76.     In accordance with section 1123(b)(3), the Combined Plan and Disclosure Statement provides for (a) releases by the Debtors (Article XII.B) (the "**Debtor Releases**"); (b) releases by holders of Claims (Article XII.C) (the "**Third-Party Releases**" and together with the Debtor Releases, the "**Releases**"); (c) exculpation of the Exculpated Parties (Article XII.A) (the "**Exculpation**"); (d) an injunction provision that implements the Releases and the Exculpation (Article XII.D) (the "**Release Injunction**"); and (e) an injunction provision that prohibits interference with the Combined Plan and Disclosure Statement (Article XII.E) (the "**Plan Interference Injunction**" and together with the Release Injunction, the "**Injunctions**"). As demonstrated below, the Combined Plan and Disclosure Statement's Releases, Exculpation, and Injunctions are fair, reasonable, and in the best interests of the Debtors and their Estates, and appropriate under the circumstances of the Chapter 11 Cases.

### A.     The Debtor Releases Are Appropriate.

77.     The Combined Plan and Disclosure Statement provides for releases from the Debtors and their Estates of the claims and Causes of Action set forth in Article XII.B of the Combined Plan and Disclosure Statement, including any derivative claims, asserted or assertable on behalf of the Debtors or their Estates, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted intentional fraud, willful misconduct, or gross negligence.

78.     As an exercise of its business judgment, a debtor's decision to release claims against third parties under a plan is afforded deference. *See, e.g., In re Spansion, Inc.*, 426 B.R. 114, 140 (Bankr. D. Del. 2010) ("It is not appropriate to substitute the judgment of the objecting creditors over the business judgment of the Debtors . . . ."). Additionally, under Third Circuit precedent, a release by a debtor is appropriate if, in the debtor's judgment, any claims of the estate

34

being released are of only marginal viability. *See In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000) (approving release by debtor of potential avoidance claims in connection with a prepetition leveraged recapitalization because the claims were "of only marginal viability" and not worth pursuing).

79.     Here, the Debtor Releases are a necessary component of the Global Settlement, which provides considerable benefits to the Debtors' Estates and provides for meaningful recoveries to creditors that would otherwise receive no or a reduced recovery on account of their Claims.  As such, the Debtors' decision to release the claims and Causes of Action subject to the Debtor Releases is clearly a sound exercise of the Debtors' business judgement and, thus, entitled to deference.  Moreover, as demonstrated by the Investigations (as defined below), the claims and Causes of Action subject to the Debtor Releases are of marginal viability, if any.

80.     As is discussed in greater detail in the Combined Plan and Disclosure Statement, RL&F, under the oversight of the Strategic Review Committee of the board of Zen, engaged in an investigation of potential claims and Causes of Action, including Avoidance Actions and breach of fiduciary duty claims, that would be subject to the Debtor Releases (the "**SRC Investigation**"). As a result of the SRC Investigation, as is set forth in greater detail in the Combined Plan and Disclosure Statement, the Debtors concluded that there were no claims or Causes of Action worth pursuing that negated the appropriateness of the Debtor Releases, particularly given the valuable consideration being provided pursuant to the Global Settlement.  In addition, as is discussed in greater detail in the Combined Plan and Disclosure Statement and the *Statement of the Official Committee of Unsecured Creditors in Support of Debtors' Amended Combined Disclosure Statement and Joint Chapter 11 Plan* [Docket No. 387], the Committee also engaged in an independent investigation (the "**Committee Investigation**" and together with the SRC

35

Investigation, the "**<u>Investigations</u>**"), which likewise did not reveal any colorable claims or Causes of Action that would, in the Committee's view, materially improve recoveries of the Holders of General Unsecured Claims if litigated.

81.     In light of the conclusions reached in the Investigations, the Debtors are not releasing any material claims pursuant to the Debtor Releases.  As such, retaining and potentially pursuing any unknown or speculative claims against the Released Parties is not in the best interests of the Debtors, their Estates or Holders of Claims and Equity Interests, as the costs involved likely would outweigh any potential benefits from pursuing such claims and negate the considerable benefits that the Debtors and the Estates will receive under the Global Settlement.  Accordingly, the Debtor Releases are appropriate and should be approved.

82.     When evaluating a debtor's release of claims, some courts in this jurisdiction have also considered the following non-exclusive and disjunctive list of factors (commonly known as the *Zenith* or *Master Mortgage* factors):[5]

> a.    an identity of interest between the debtor and non debtor such that a suit against the non debtor will deplete the estate's resources;
>
> b.    a substantial contribution to the plan by the non debtor;
>
> c.    the necessity of the release to the reorganization;
>
> d.    the overwhelming acceptance of the plan and release by creditors and interest holders; and
>
> e.    the payment of all or substantially all of the claims of the creditors and interest holders under the plan.

*See In re Washington Mut., Inc.*, 442 B.R. at 346 (citing *In re Zenith Elecs. Corp.*, 241 B.R. at 110 and *In re Master Mortg.*, 168 B.R. at 937. No factor is dispositive, nor is a proponent required to

---

[5]     *See In re Indianapolis Downs, LLC*, 486 B.R. at 303 (citing *In re Zenith Elecs. Corp.*, 241 B.R. at 105); *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 937 (Bankr. W.D. Mo. 1994).

establish each factor required for the release to be approved; rather the factors are intended to provide guidance to the court in determining the fairness of the releases. *See In re Wash. Mut., Inc.*, 442 B.R. at 346 ("These factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the [c]ourt's determination of fairness."). The Debtor Releases meet the applicable standard because they are fair, reasonable, and in the best interests of the Debtors' Estates and should be approved.

83.     ***First***, an identity of interest exists between the Debtors and the Released Parties.[6] Each of the Released Parties, as a stakeholder and critical participant in the Combined Plan and Disclosure Statement process, shares a common goal with the Debtors in seeing the Combined Plan and Disclosure Statement succeed and would have been unlikely to participate in the negotiations and compromises that led to the ultimate formation of the Combined Plan and Disclosure Statement without the Debtor Releases. Like the Debtors, these parties seek to confirm the Combined Plan and Disclosure Statement and implement the transactions contemplated thereby.[7]

84.     ***Second***, substantial contributions have been made by the Released Parties. As Delaware bankruptcy courts have recognized, a wide variety of acts may illustrate a substantial contribution to a debtor's chapter 11 case.[8] The Released Parties played an integral role in the

---

[6]     "Released Parties" means each of the following in their capacity as such: (i) the Debtors; (ii) the Prepetition Secured Parties; (iii) each current and former Affiliate of each Entity in clauses (i) and (ii); (iv) the Committee; and (v) the Related Parties of each of the foregoing.

[7]     *See In re Abeinsa Holding, Inc.*, 562 B.R. 265, 284 (Bankr. D. Del. 2016) (finding that "there is an identity of interest between the Debtors and the released parties arising out the shared common goal of confirming and implementing the Plan"); *see also Zenith*, 241 B.R. at 110 (concluding that certain releasees who "were instrumental in formulating the Plan" shared an identity of interest with the debtor "in seeing that the Plan succeed and the company reorganize").

[8]     *See In re W.R. Grace & Co.*, 446 B.R. 96, 138 (Bankr. D. Del. 2011) (finding that parties involved in settlement with the debtor made substantial contribution where, absent the release, settling parties would not have contributed a significant sum necessary to the reorganization).

formation of the Combined Plan and Disclosure Statement and have expended significant time and resources analyzing and negotiating the issues present in these Chapter 11 Cases to reach a value-maximizing chapter 11 plan. Here, the Released Parties have also sacrificed material economic interests to ensure the viability of these Chapter 11 Cases and the implementation of the Combined Plan and Disclosure Statement. For example, the Prepetition Notes Secured Parties, among other things, subordinated their Claim to the JMB DIP Facility and allowed their Cash Collateral to be used to fund the Post-Sale Approved Budget and the Reserves, including the Claims Reserve, which provides sufficient funding to pay Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims and Allowed Other Priority Claims in full. The Prepetition Notes Secured Parties and the Prepetition Term Loan Secured Parties also agreed to cap their recoveries to the amount of the Prepetition Notes Reserve and the Prepetition Term Loan Reserve, respectively, thereby effectively waiving their significant Deficiency Claims and creating the possibility that the Holders of Allowed General Unsecured Claims will receive a meaningful recovery.  Moreover, the Debtors' directors and officers also substantially contributed by, among other things, assisting with the Chapter 11 Cases and the consummation of the Sales to maximize value for the Estates. Without the contributions of the Released Parties, the Combined Plan and Disclosure Statement and the transaction contemplated therein would not be possible.

85.    *Third*, no party in interest has contested the release of any hypothetical claims, and as evidenced by the Voting Declaration and noted herein, parties voting in Classes 3, 4, and 5 have overwhelmingly voted to approve the Combined Plan and Disclosure Statement.  Moreover, the Committee, after conducting the Committee Investigation, supports the Debtor Releases. Given the critical nature of the Debtor Releases and the Combined Plan and Disclosure Statement's overall support, the Debtors submit that the releases are proper.

86.    *Fourth*, the Combined Plan and Disclosure Statement maximizes the value of the Debtors' assets and the Distribution of available proceeds to creditors.  Here, as noted above, the claims and Causes of Action subject to the Debtor Releases are of, minimal, if any, viability.  In contrast, the Combined Plan and Disclosure Statement, which includes the Debtor Releases as part of the Global Settlement, provides the Estates and the Debtors' creditors with meaningful consideration.

## B.    The Third-Party Releases Are Appropriate.

87.    In addition to the Debtor Releases, the Combined Plan and Disclosure Statement provides for releases by certain Holders of Claims. Specifically, Article XII.C of the Combined Plan and Disclosure Statement provides that each Releasing Party[9] shall release any and all claims and Causes of Action such parties could assert against the Released Parties, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted intentional fraud, willful misconduct, or gross negligence.

88.    Courts in the Third Circuit have long recognized that a chapter 11 plan may include a release of non-debtors by other non-debtors when such release is consensual. *See In re Spansion*, 426 B.R. at 144 (stating that "a third party release may be included in a plan if the release is consensual"); *In re Wash. Mut.*, 442 B.R. at 352 (noting that consensual third-party releases are

---

[9]    "Releasing Parties" means each of the following in their capacity as such: (i) the Debtors; (ii) the Prepetition Secured Parties; (iii) the Committee; (iv) each Holder of a Claim who votes to accept the Combined Plan and Disclosure Statement, abstains from voting on the Combined Plan and Disclosure Statement or votes to reject the Combined Plan and Disclosure Statement and, in each case, affirmatively opts in to the releases provided in the Combined Plan and Disclosure Statement; (v) each current and former Affiliate of each Entity in clause (i) through (iv) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Combined Plan and Disclosure Statement under applicable non bankruptcy law; and (vi) each Related Party of each Entity in clause (i) through (iv) for which such Affiliate or Entity is legally entitled to bind such Related Party to the releases contained in the Combined Plan and Disclosure Statement under applicable non bankruptcy law.

39

permissible); *In re Zenith Elecs. Corp.*, 241 B.R. at 111 (approving releases by creditors that voted

in favor of the plan). The determination as to whether a third-party release is consensual depends

on the particular circumstances of the particular case. *See In re Indianapolis Downs*, 486 B.R. at

306.[10]

89.     Approval of the Third-Party Releases under the circumstances of these Chapter 11

Cases are appropriate because they are not binding on any non-consenting parties. The Third-Party

Releases are generally provided by parties participating in the formulation and negotiation of the

Combined Plan and Disclosure Statement or to the extent a party affirmatively opts in to the

release. Thus, the only parties providing the Third-Party Releases are creditors that have

affirmatively acted, or otherwise agreed, to such releases. All parties had ample opportunity to

evaluate and opt in to the Third-Party Releases. The Combined Plan and Disclosure Statement, the

Ballots with an opt in component, and the Confirmation Hearing Notice, each provide recipients

with timely, sufficient, appropriate and adequate notice of the Third-Party Releases.

90.     Additionally, the circumstances of these Chapter 11 Cases warrant the Third-Party

Releases because they are critical to the success of the Combined Plan and Disclosure Statement,

are fair, and are appropriate. Without the efforts of the Released Parties in providing material

concessions, benefits, and commitments to the Debtors, including funding the Reserves,

consenting to the use of cash collateral, and actively participating in Combined Plan and Disclosure

Statement negotiations, the Debtors would not have been able to conduct an orderly and value

---

[10]    While the Supreme Court's decision in *Harrington v. Purdue Pharma L.P.* precludes nonconsensual third-party releases, it does not go beyond this. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024).  Nor does it opine in any way on what constitutes a consensual release, and instead expressly declines to do so. *Id.* at 226 ("Nothing in what we have said should be construed to call into question *consensual* third-party releases offered in connection with a [chapter 11] plan . . . [n]or do we have occasion today to express a view on what qualifies as a consensual release.") (emphasis in original).

maximizing process for the benefit of all stakeholders. The Released Parties have been instrumental in supporting these Chapter 11 Cases and facilitating a smooth administration thereof. Finally, throughout the entirety of the Chapter 11 Cases and all these negotiations, the Debtors' directors and officers steadfastly maintained their duties to maximize value for the benefit of all stakeholders, investing countless hours both pre- and post- petition.

91.    Accordingly, for the reasons set forth above, the Third-Party Releases are an integral and necessary part of the Combined Plan and Disclosure Statement and are consensual, and therefore should be approved.

### C.    The Exculpation Provision is Appropriate.

92.    Article XII.A of the Combined Plan and Disclosure Statement provides that the Exculpated Parties[11] shall be exculpated from any Cause of Action arising out of acts or omissions in connection with these Chapter 11 Cases and certain related transactions, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted willful misconduct or gross negligence. It is well established that exculpation is appropriate for fiduciaries of a bankruptcy estate, including the debtors, their directors, officers, and professionals, the creditors' committee, and its members and professionals. *See In re PWS Holding Corp.*, 228 F.3d at 245 (finding that an exculpation provision is "apparently a commonplace provision in Chapter 11 plans" that is consistent with the Bankruptcy Code because it does not affect the liability of these parties, but rather reflects the

---

[11]    "Exculpated Parties" means the following Persons and Entities, each in their respective capacities as such: (a) the Debtors; (b) directors, officers, managers, managing members, and Professionals of the Debtors serving in such capacities at any time between the Petition Date and the Effective Date; and (c) the Committee and its Professionals and members.

41

limited immunity implicitly granted to committee members and professionals under section 1103(c) of the Bankruptcy Code).

93.     Here, the Exculpation is necessary and appropriate to protect parties who have made substantial contributions to the Chapter 11 Cases from future collateral attacks related to actions taken in good faith in connection with the Chapter 11 Cases. Additionally, the scope of the Exculpation is appropriately limited to Estate fiduciaries and such parties'' acts or omissions in connection with the transactions that occurred during the Chapter 11 Cases, and the Exculpation does not protect the Exculpated Parties from liability resulting from their willful misconduct or gross negligence. Under the circumstances of these Chapter 11 Cases, it is appropriate for the Bankruptcy Court to approve the Exculpation and to find that the Exculpated Parties have acted in good faith and in compliance with the law.

**D.      The Injunction Provision is Appropriate.**

94.     The Injunctions set forth in Article XII.D and E of the Combined Plan and Disclosure Statement are narrowly tailored to, among other things, (i) protect the Estates' assets to ensure that Holders of Claims receive the benefit of the Combined Plan and Disclosure Statement and (ii) implement the Releases and Exculpation. Thus, the Injunctions are a key provision of the Combined Plan and Disclosure Statement because it enforces the Releases and Exculpation that are centrally important to the Combined Plan and Disclosure Statement.

95.     Accordingly, the Debtors respectfully submit that the Injunction provision must also be appropriate.

**IV.     WAIVER OF BANKRUPTCY RULE 3020(E)**

96.     Under the circumstances of the Chapter 11 Cases, there being no objections to the Combined Plan and Disclosure Statement, it is appropriate for the Court to exercise its discretion

42

to order that Bankruptcy Rule 3020(e) is not applicable and permit the Debtors to consummate the Combined Plan and Disclosure Statement and commence its implementation without delay after the entry of the Confirmation Order. The Debtors submit that this relief is in the best interests of the Debtors' Estates and creditors and will not prejudice any parties in interest.

97.     According to the Advisory Committee notes to the 1999 amendments to the Bankruptcy Rules, the purpose of Bankruptcy Rule 3020(e) is to permit a party in interest to request a stay of the confirmation order pending appeal before the plan is implemented and an appeal becomes moot. FRBP 3020(e), Adv. Comm. Notes, 1999 Amend. There are no objections to confirmation of the Combined Plan and Disclosure Statement. As a result, no party will be appealing the Confirmation Order. Therefore, no party in interest will be prejudiced by the consummation of the Combined Plan and Disclosure Statement immediately upon the entry of the Confirmation Order.

98.     For the avoidance of doubt, the Debtors are seeking the authority to consummate and implement the Combined Plan and Disclosure Statement immediately after the entry of the Confirmation Order, but wish to retain the ability to designate the Effective Date in accordance with the Combined Plan and Disclosure Statement at a later date.

## V.      CONCLUSION

99.     For the reasons set forth in this Memorandum, the Debtors respectfully submit that (a) the Combined Disclosure Statement and Plan contains adequate information for all purposes and should be approved by the Court on a final basis; (b) the Combined Plan and Disclosure Statement fully satisfies all applicable requirements of the Bankruptcy Code and should be confirmed by the Court; (c) to the extent not withdrawn, all pending objections to Confirmation should be overruled; and (d) the 14-day stay of the Confirmation Order should be waived.

Dated: October 6, 2025
      Wilmington, Delaware

*/s/ Zachary I. Shapiro*

**LATHAM & WATKINS LLP**

Ray C. Schrock (admitted *pro hac vice*)
Candace M. Arthur (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: ray.schrock@lw.com
      candace.arthur@lw.com

  - and -

Jonathan C. Gordon (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Email: jonathan.gordon@lw.com

**RICHARDS, LAYTON & FINGER, P.A.**

Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
Huiqi Liu (No. 6850)
Clint M. Carlisle (No. 7313)
Colin A. Meehan (No. 7237)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: defranceschi@rlf.com
      shapiro@rlf.com
      liu@rlf.com
      carlisle@rlf.com
      meehan@rlf.com

*Co-Counsel for Debtors and Debtors in Possession*