**UNITED STATES BANKRUPTCY COURT FOR THE**
**DISTRICT OF DELAWARE**

| | : | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **ZEN JV, LLC, *et al,.*[1]** | : | **Case 25-11195 (JKS)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |
| | : | Hearing Date: November 13, 2025 at 1:00 p.m. (ET) |
| | | Objection Deadline: October 30, 2025 at 4:00 p.m. (ET) |
| | : | |

**MOTION FOR AN ORDER AUTHORIZING AND DIRECTING THE IMMEDIATE PAYMENT OF THE ADMINISTRATIVE CLAIM OF**
**MARK NELSON PURSUANT 11 U.S.C. §§ 503(b)(1)(A) AND 507(a)(2)**

Mark Nelson ("Mr. Nelson"), a key transaction employee for Debtors critical to the successful sale of substantially all of Debtors' core assets, including Debtors' MMP Business[2], by and through his undersigned counsel, hereby submits this motion (the "Motion") for entry of an order, attached hereto as **Exhibit A**, for allowance and immediate payment of an Administrative Claim (as defined below) pursuant to 11 U.S.C.§§ 503(b)(1)(A) and 507(a)(2), and for related relief. In support of the Motion, the Declaration of Mark Nelson is attached hereto as **Exhibit B** and Mr. Nelson respectfully represents as follows:

---

[1] The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are: Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions, LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508) (collectively, the "Debtors"). The Debtors' address is 200 N LaSalle Street #900, Chicago, IL 60601.

[2] Capitalized terms not otherwise defined herein are given the meaning assigned in Debtors' Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation[D.I. 336].

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.

2. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Mr. Nelson confirms his consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief requested herein is §§ 503(b)(1)(A) and 507(a)(2) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2002-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

**BACKGROUND**

5. On November 14, 2024, Debtors presented Mr. Nelson with a letter offering and documenting a transaction bonus (the "Transaction Bonus Agreement").

6. The Transaction Bonus Agreement identified Mr. Nelson as a "critical member" of a core team and confirmed that his services were needed "to assist with the successful sale" of Debtors' assets, including "Monster's IAF division (Fastweb & Military.com)." Those assets are part of the Company's MMP Business. The Transaction Bonus Agreement referred to Debtors' sale efforts as "Project A". *See* Exhibit B.

7.  Among other things, the Transaction Bonus Agreement provided that Mr. Nelson was entitled to a deal bonus so long as he (a) completed the tasks asked of him in conjunction with Project A, (b) remained employed by Debtors at the time Project A was successfully concluded in the form of a sale of the assets listed therein to a third party, and (c) remained in good standing and performing throughout this period. *See* Exhibit B.

8.  The Transaction Bonus Agreement obligated Debtors to pay Mr. Nelson a deal bonus of 100% of his base salary USD, to be paid in a lump sum, minus standard withholding taxes, within 30 business days of the successful close of the contemplated transaction (the "Transaction Bonus"). *See* Exhibit B.

9.  Mr. Nelson executed the Transaction Bonus Agreement on November 14, 2024 and returned same to Debtors. Jeffrey Furman, Chief Executive Officer for Monster + CareerBuilder, executed the Transaction Bonus Agreement on behalf of Debtors. *See* Exhibit B.

10. On June 24, 2025, (the "Petition Date"), the Debtors commenced with the court voluntary cases (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code.

11. On June 25, 2025, the next day after the Petition Date, Debtors filed their *Motion of Debtors for Entry of Interim and Final Orders (A) Authorizing Payment of Certain Prepetition Workforce Obligations, (B) Authorizing Continuance of Workforce Programs, (C) Authorizing Payment of Withholding and Payroll-Related Taxes, (D) Authorizing Payment of Prepetition Claims Owing to Administrators, and (E) Granting Related Relief* [D.E. 27] (the "Wages Motion") seeking, *inter alia*, authorization for Debtors to pay, continue, or otherwise honor various prepetition labor-related obligations, taxes, and other claims in their discretion.

12. In the Wages Motion, Debtors informed the Court of their Transaction Award Plan, through which Debtors identified certain key employees that were "necessary and critical to the

success of the sale process" (the "Key Transaction Employees").  The Key Transaction Employees were "at the forefront of the sale process" and Debtors reported to the Court their belief that "continued retention of the Key Transaction Employees is essential to maximizing the value of their assets for the benefit of all stakeholders."

13. Mr. Nelson was a Key Transaction Employee, as evidenced by his Transaction Bonus Agreement and confirmed to him by officers of the Debtors.

14. In their Wages Motion, Debtors were clear that incentivizing the Key Transaction Employees like Mr. Nelson to remain in their employment through the Chapter 11 Cases was of paramount importance.

15. Debtors acknowledged that Key Transaction Employees like Mr. Nelson would provide a tangible benefit to the Debtors' estates, vital to the success of the sale process, the expected transition services required after the sale process concluded, and collection of accounts receivable to supplement the funding of the Chapter 11 Cases.

16. After the Petition Date, Debtors' executives continued to assure and represent to Mr. Nelson that they wanted to honor the Transaction Bonus Agreement and that his Transaction Bonus would be paid. *See* Exhibit B.

17. On July 29, 2025, the Court entered the *Order (I) Authorizing and Approving the Debtors' Entry Into an Asset Purchase Agreement with Valnet US, Inc., (II) Authorizing the Sale of the Purchased Assets Free and Clear of All Encumbrances, (III) Approving the Assumption and Assignment of the Selected Assigned Contracts, and (IV) Granted Related Relief* [D.I. 237], approving the sale of substantially all of the Debtors' assets in its MMP Business for which Mr. Nelson was a Key Transaction Employee.

18. On August 1, 2025, Debtors filed their *Notice of Closing of Sale of Monster Media Business to Iron Corp US Inc.* [D.I. 267], providing notice that the sale of the MMP Business had closed.

19. When Debtors closed on their sale of the MMP Business, Mr. Nelson had fulfilled each condition precedent set out in the Transaction Bonus Agreement entitling him to his Transaction Bonus. Mr. Nelson completed all tasks asked of him in conjunction with the sale, he remained employed at the time the sale closed, and he remained in good standing and performed his job throughout the period between execution of the Transaction Bonus Agreement and through the close of Debtors' sale of its assets. As a result, when the sale closed, Debtors became obligated to pay, and Mr. Nelson was entitled to receive the Transaction Bonus. *See* Exhibit B.

20. In fact, after the auction on July 17, 2025 and in the days leading up to the close of the sale of the MMP Business, Mr. Michael Suhajda, the Chief Financial Officer of the Company, assured Mr. Nelson that he was working to ensure that Debtors would honor the Transaction Awards owed to Mr. Nelson and others on his team and that he was expecting to process Mr. Nelson's Transaction Bonus with the August 1, 2025 payroll. *See* Exhibit B.

21. Instead, shortly after the sale and subsequent closing, on August 4, 2025, the Debtors notified Mr. Nelson that Debtors would not be honoring the Transaction Bonus Agreement and would not pay Mr. Nelson his Transaction Bonus. *See* Exhibit B.

22. The services provided by Mr. Nelson in the course of this employment with Debtors as a Key Transaction Employee who the Debtors specifically incentivized to remain in their employment, increased the value of Debtors' estate. During the sale process, Mr. Nelson solicited an additional bidder for the MMP Business that increased the ultimate sale price. Additionally, his and his team's performance resulted in record-setting metrics for the Company post-petition.

Payment of Mr. Nelson's Transaction Bonus is an actual, necessary cost and expense of preserving Debtors' estate.

23. Pursuant to the terms of the Transaction Bonus Agreement, and as a result of the vital services that Mr. Nelson rendered, which worked to both increase and preserve Debtors' estate through the course of his tenure as a Key Transaction Employee, Mr. Nelson has an administrative expense claim against the Debtors in the amount of $256,069.00 (the "Administrative Claim").

## BASIS FOR AND RELIEF REQUESTED

24. By this Motion, Mr. Nelson seeks entry of the Order, pursuant to sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code approving the Administrative Claim and directing immediate payment of the Administrative Claim by the Debtors, or, in the alternative, the payment of the Administrative Claim in accordance with any Plan of Reorganization that may be entered.

25. Administrative expenses allowed under 11 U.S.C. § 503(b) are permitted allowance and payment priority in bankruptcy cases.

26. Relevant case law in this Court and the Third Circuit supports that the Administrative Claim is a post-petition obligation and should be afforded priority treatment under section 503(b). When considering if a claim should be treated as a priority claim pursuant to 11 U.S.C. § 503(b)(1)(A), this Court has utilized a standard § 503(b) test, holding that "the claim must represent an 'actual, necessary cost [] and expense [] of preserving the estate." *In re M Grp., Inc.*, 268 B.R. 896, 902 (Bankr. D. Del. 2001) (citing 11 U.S.C. § 503(b)(1)(A)).

27. The subsections of 11 U.S.C. § 503(b)(1)(A) delineate a non-exhaustive list of specific types of administrative expense claims. Wages, salaries, and commissions for services

rendered after the commencement of the case that are actual and necessary costs and expenses of preserving the estate may be afforded status as an administrative expense claim. 11 U.S.C. § 503(b)(1)(A)(i).

28. Relying on 11 U.S.C. § 503(b)(1)(A)(i), this Court has recognized retention bonuses as appropriate administrative claims. *See In re Lason, Inc., 309 B.R. 441* (Bankr. D. Del 2004). In *Lason*, this Court applied a proration approach, finding that a former employee was entitled to an administrative expense claim for only the number of days in the post-petition service period, and that the days during the pre-petition service period were to be afforded status as a general unsecured claim. Their reasoning was that administrative expense priority should attach only to post-petition benefits conferred upon the estate. Unlike in *Lason*, Mr. Nelson's Administrative Claim should not be prorated and this Court must, instead, apply the actual and necessary standard set out in 11 U.S.C. § 503(b)(1)(A).

29. In deciding whether a retention bonus should be afforded status as an administrative expense claim, the crucial inquiry is what consideration supports the bonus and whether that consideration was a pre-petition service or a post-petition service. This is consistent with decisions by this Court determining that key employee retention plans that are specifically designed to support asset sales can create valid administrative expense claims when they benefit the estate. *See In re Old BPSUSH Inc.,* 589 B.R. 524 (Bankr. D. Del. 2018). The Transaction Bonus Agreement offered to Mr. Nelson, and similar agreements offered to other Key Transaction Employees, was proffered by Debtors as a comprehensive employee retention plan to ensure retention of key employees whose expertise and services were crucial to the intended sale and the conferred benefit, the consideration supporting the promised bonus, accrued post-petition when the employee's services actually resulted in a successful closing.

30. The services that were provided by Mr. Nelson were a direct driving force behind the successful sale of Debtors' assets. Mr. Nelson was not just incentivized to retain his employment – he was incentivized because Debtors recognized that his expertise and services were necessary to achieve the very sale that this bankruptcy was initiated to effectuate.

31. In fact, Mr. Nelson was the driving force behind creating competition for the sale price of the MMP Business. On the Petition Date, it was publicly announced that the Stalking Horse Bid for the MMP Business was $22,500,000.00. That day, Mr. Nelson suggested to the Chief Financial Officer for the Company that he reach out to one of his business contacts, Veterans United Home Loans ("Veterans United"), regarding the Debtors' intent to sell. Mr. Nelson hoped to help increase the price that the MMP Business would sell for above the Stalking Horse Bid that had already been obtained. Mr. Nelson introduced his contact at Veterans United to parties overseeing the sale. *See* Exhibit B.

32. On July 17, 2025, the day set by this Court for the Auction, the only bidders on the MMP Business were the Stalking Horse Bidder and Veterans United. This resulted in a bidding war that the Stalking Horse Bidder ultimately won at a sales price of $27,250,000.00, which was $4,250,000.00 more than its stalking horse bid. This increase in value to Debtors' estate was the direct result of Mr. Nelson's efforts. *See* Exhibit B.

33. In his role as a Key Transaction Employee, Mr. Nelson also led his team to achieve record setting performance metrics for the Company, including three consecutive months of revenue over $3,000,000.00 each for the first time in Company history. Mr. Nelson was informed that his and his team's performance was anticipated to result in better than anticipated opening AR balances post-sale. *See* Exhibit B.

34. The Transaction Bonus promised to Mr. Nelson was an actual, necessary cost and expense of preserving the Debtors' estate. Mr. Nelson provided necessary services to the Estate. Without the services of Mr. Nelson and his team, Debtors would not have been able to effectively initiate the Chapter 11 Cases, nor continue company operations throughout the sale and auction process and post-closing, all with significant success. Mr. Nelson's value is clearly evidenced by his having been the only party to solicit another bidder for the MMP Business to the auction and sale process, which was by all accounts a successful outcome given the significant increase in sale price that resulted. It is apparent that the Administrative Claim satisfies the section 503(b) requirement that the claim was an actual, necessary expense of preserving the Debtor's bankruptcy estate and should be treated as a priority administrative claim.

35. In this case, Mr. Nelson's role as a Key Transaction Employee for the Debtors was an actual, necessary cost and expense of preserving the Debtors' estate. Mr. Nelson provided necessary post-petition services on behalf of the estate, including, without limitation, helping market Debtors to a potential bidder that became an actual bidder and increased the ultimate sale price, and achieving record-setting performance metrics for the Company over several months. Without the services of Mr. Nelson, the Debtor would not have been able to effectively manage and administer the Company throughout the sale and auction process, nor would the MMP Business have sold for the increased value that was a direct result of Mr. Nelson's contributions. Therefore, the Administrative Claim satisfies the section 503(b) requirement that the claim was an actual, necessary expense of preserving the Debtor's bankruptcy estate.

36. Additionally, the Administrative Claim, should receive priority treatment pursuant to other analogous Third Circuit law decided in cases considering severance packages as administrative expense claims. *See In re The Levinson Steel Co.*, 117 B.R. 194, 196. In *Levinson*

*Steel*, the court considered if the officer's severance plan for a key employee hired shortly before the filing of the bankruptcy for the purposes of assisting with restructuring or re-financing and held that the claim should be wholly treated as a post-petition claim. *Id*. In that case, the court looked at the intent of the parties when negotiating the severance package and the recognition that the officer would likely have a brief tenure, and that that provision was likely a necessary incentive for employment. *Id*. The court also relied on the Third Circuit's *Public Ledger* decision, which held that severance that accrued regardless of length in service should be treated as wages wholly earned under the trustee's management and thus be given priority creditor treatment. *In re Public Ledger*, 161 F.2d 762 (3d Cir. 1947).

37. There is no question that Mr. Nelson's bonus claim accrued as a result of the services he provided to assist, further, and ensure the success of Debtors' sale efforts – that was the driving force behind the Transaction Bonus Agreement. Like termination in lieu of notices claims, Mr. Nelson's bonus claim could only accrue post-petition. The Administrative Claim is similar to a termination in lieu of notice claim. Payment at termination in lieu of notice is typically treated as an administrative expense because the consideration can only occur post-petition. *Former Emples. Of Builders Square Retail Stores v. Hechinger Inv. Co.* (*In re Hechinger Inv. Co.*), 298 F.3d 219, 227 (3d Cir. 2002).

38. Furthermore, the Debtors affirmed and assured Mr. Nelson that the Transaction Bonus would be honored and paid after the filing of the Chapter 11 Cases, to ensure Mr. Nelson continued to provide the employment-related services that made him a Key Transaction Employee and provided necessary post-petition services to Debtors. Mr. Nelson's Administrative Claim should be treated as an administrative claim with priority, without any division between pre-petition and post-petition services.

39. Pursuant to the Bankruptcy Code, the Administrative Claim should be afforded priority. Bankruptcy Code section 507(a)(2) provides priority for administrative expenses subordinate only to domestic support obligations and trustee expenses. "While an administrative expense under § 503(b) must be paid in cash on the effective date of the plan in a chapter 11 proceeding, . . . and must be paid first upon a distribution of the assets in a chapter 7 proceeding, . . . bankruptcy courts have wide latitude in deciding whether to order payment prior to these deadlines." *CIT Commc'ns Fin. Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.)*, 406 F.3d 229, 242 (4th Cir. 2005) Whether to require immediate payment of an allowed administrative expense is a matter left to the discretion of the bankruptcy court. *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005); *In re Global Home Products, LLC*, 2006 Bankr. LEXIS 3608, 2006 WL 3791955, *4 (Bankr. D. Del. Dec. 21, 2006). In the case at hand, given the lack of prejudice to Debtors who were certainly aware of their obligations to Key Transaction Employees as evidenced in the Wages Motion and the time that has passed creating a hardship for Mr. Nelson as a result of Debtors' bad faith towards Mr. Nelson, the Court should order the immediate payment of the Administrative Claim.

40. Courts in this jurisdiction have identified three factors to guide that discretion: (i) the prejudice to the debtor; (ii) the hardship to the claimant; and (iii) potential detriment to other creditors. *Id.*

41. Upon consideration of the circumstances in this case, there is support for this Court's exercise of its discretion to grant immediate payment of the Administrative Claim.

42. First, there is no prejudice to the Debtors. The Debtors have successfully completed the sale process and have proposed a plan which provides for payment of administrative expense claims. The Debtors confirmed in their Wages Motion that they are aware of the potential

aggregate amount to be paid to Key Transaction Employees like Mr. Nelson. Upon information and belief, there are sufficient funds to pay administrative claims. There appears to be no indication that the Debtors are administratively insolvent. Delaying the payment would not serve the interest of Debtors.

43. Second, there is a significant hardship to Mr. Nelson if immediate payment is not granted. Mr. Nelson is an individual that is patiently waiting for the compensation owed to him. He accepted the Transaction Bonus Agreement and once Debtors' bankruptcy filing and the potential that Debtors would not uphold their end of the Transaction Bonus Agreement became known to him, he sought assurances that Debtors would honor their obligation thereunder as a condition for continuing his employment and continuing to provide the very services that made him a Key Transaction Employee and ensured that the sale was successfully completed.

44. Lastly, there is no detriment to other creditors. There are significant other funds available to the Debtor from the sale process for the administration of the Chapter 11 Cases. Moreover, under the Bankruptcy Code, any claims asserted by the Debtors' unsecured creditors would not be entitled to payment prior to Mr. Nelson.

45. Mr. Nelson satisfied the factors to be considered when guiding the Court's discretion to order the immediate payment of his Administrative Claim. Accordingly, the Court should find that the Administrative Claim is a priority administrative claim under Bankruptcy Code sections 503(b)(1)(A) and 507(a)(2) and order the immediate payment of the Administrative Claim. In the alternative, the Court should find that the Administrative Claim is a priority administrative claim under Bankruptcy Code sections 503(b)(1)(A) and 507(a)(2) and order the payment of the Administrative Claim in accordance with any Plan of Reorganization that may be entered.

46. In addition to the authority cited herein supporting a finding that Mr. Nelson's claim for his Transaction Bonus should be given status as an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(A) and afforded the priority prescribed by 11 U.S.C. § 507(a)(2), equity supports ensuring that Mr. Nelson's Administrative Claim is paid and gives this Court the power to craft an order providing for the same. Debtors specifically bargained to receive the value of Mr. Nelson's services, post-petition, in order to preserve – and in fact, increase – the value of the estate. It would be inequitable to permit Debtors to now avoid their obligation to Mr. Nelson with respect to payment of his Transaction Bonus. This Court has the equitable power afforded by 11 U.S.C. § 105 to issue a necessary and appropriate order to implement the provisions of 11 U.S.C. § 503(b) and ensure that Mr. Nelson's Administrative Claim is paid as a result of his post-petition services which ensured a successful sale of the Debtors' assets, including the MMP Business, and therefore preserved Debtors' estate.

## NOTICE

47. Notice of this Motion will be served upon counsel for (i) the Debtors; (ii) the Office of the United States Trustee for the District of Delaware; (iii) the Committee of Unsecured Creditors; and (iv) all parties who have requested notice in the Debtors' case pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, Mr. Nelson submits that no other or further notice is required.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Mr. Nelson respectfully requests that the Bankruptcy Court enter the Order, substantially in the form attached hereto as **Exhibit A,** granting the relief requested herein and such other and further relief as the Bankruptcy Court may deem just and proper.

                                        **BIELLI & KLAUDER, LLC**

Dated: October 14, 2025                  */s/ David M. Klauder*
Wilmington, Delaware                    David M. Klauder (No. 5769)
                                           1204 N. King Street
                                           Wilmington, DE 19801
                                           Phone: (302) 803-4600
                                           Email: dklauder@bk-legal.com

                                           OF COUNSEL:

                                           Patrick M. Sneed, Esq.
                                           Davis, Pickren, Seydel & Sneed LLP
                                           2300 Marquis Two Tower
                                           285 Peachtree Center Ave NE
                                           Atlanta, Georgia 30303
                                           (404) 588-0505
                                           psneed@dpsslegal.com

                                           *Counsel to Mark Nelson*