**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ZEN JV, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-11195 (JKS)<br><br>(Jointly Administered)<br><br>**Hearing Date: December 10, 2026 at 11:00 a.m. (ET)**<br>**Objection Deadline: November 25, 2026 at 4:00 p.m. (ET)** |

**LIQUIDATION TRUSTEE'S OBJECTION TO PROOF OF CLAIM FILED BY WISCONSIN DEPARTMENT OF REVENUE**

Steven Balasiano, solely in his capacity as the liquidation trustee (the "Liquidation Trustee")[2] of the Zen JV Liquidation Trust (the "Liquidation Trust"), hereby objects (this "Objection") to proof of claim number 68 (the "Claim") filed against Debtor CareerBuilder, LLC ("CareerBuilder") by the Wisconsin Department of Revenue (the "Claimant"), seeking entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") disallowing certain portions of the Claim and reclassifying certain portions of the Claim as a nonpriority unsecured claim. In support of this Objection, the Liquidation Trustee submits the *Declaration of Steven Balasiano in Support of the Liquidation Trustee's Objection to Proof of Claim Filed by Wisconsin Department of Revenue* attached hereto as **Exhibit B** (the "Balasiano Declaration"). In further support of this Objection, the Liquidation Trustee respectfully states as follows:

---

1 The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number (to the extent applicable), are: Zen JV, LLC (0225); Monster Worldwide LLC (6555); FastWeb, LLC; Monster Government Solutions, LLC (5762); Camaro Acquisition, LLC; CareerBuilder, LLC (6495); CareerBuilder Government Solutions, LLC (6426); Luceo Solutions, LLC (4426); CareerBuilder France Holding, LLC (9339); and Military Advantage, LLC (9508).

2 Capitalized terms used but not otherwise defined in this Objection shall have the meanings ascribed to them in the Plan (as defined below).

## Preliminary Statement

1. Claimant asserts a priority unsecured claim in the amount of $3,668,628.52 against the estate of CareerBuilder for purported prepetition Wisconsin sales taxes and related interest ("Wisconsin Sales Tax") arising from periods dating back as far as 2017. Claimant also asserts a nonpriority unsecured claim against CareerBuilder in the amount of $513,051.17 for related penalties.

2. Prior to the Petition Date (defined below), CareerBuilder historically paid sales tax in several states and engaged third-party tax professionals to assist with analyzing its sales tax liabilities in each state that it operated. Based on those analyses, CareerBuilder determined that its sales in Wisconsin were not taxable and thus did not pay Wisconsin Sales Tax for the period of 2017–2024.[3]

3. Prior to the Petition Date, Claimant alleged that CareerBuilder was, in fact, liable for Wisconsin Sales Tax for the period of 2017–2024 for sales related to job advertising services provided by CareerBuilder to organizations seeking to hire employees (collectively "Customers"). CareerBuilder disputed Claimant's calculation of its purported Wisconsin Sales Tax liabilities as it included amounts for sales of services which are not taxable under applicable Wisconsin law. While CareerBuilder and Claimant discussed a potential resolution of the dispute, the parties did not reach an agreement on the totality of CareerBuilder's purported Wisconsin Sales Tax liabilities prior to the Petition Date, resulting in Claimant filing the Claim against CareerBuilder's estate. As set forth herein, certain portions of the Claim should be disallowed and reclassified for three reasons.

[3] In November 2024, CareerBuilder determined that certain services it provided to customers were taxable under Wisconsin Sales Tax law. Accordingly, CareerBuilder filed Wisconsin Sales Tax returns on a monthly basis for such services from November 2024 through July 2025 and paid $31,832.50 in connection with those returns.

4. First, $1,385,699.67 of the Priority Tax Claim (as defined herein) relates to taxes and related interest arising from non-taxable services under Wisconsin law and should be disallowed. This amount is for purported past due Wisconsin Sales Tax related to certain advertising services provided by CareerBuilder to its customers, including CareerBuilder posting job listings, sending recruitment emails, and providing dynamic job recommendations (collectively, "Non-Taxable Services"). The Non-Taxable Services fall outside of the taxable specific enumerated categories of taxable services identified in Wis. Stat. § 77.52(2), and thus CareerBuilder owes no amounts arising from the Non-Taxable Services.

5. Second, the $513,051.17 general unsecured claim for penalties and the $360,398.58 priority claim for penalty interest should be disallowed in their entirety. Pursuant to applicable Wisconsin law, Claimant is required to show CareerBuilder's failure to file tax returns was the result of willful neglect to impose penalties on CareerBuilder. Claimant has not made, and cannot make, such a showing. At minimum, however, the penalty interest should be reclassified as a non-priority general unsecured claim. Section 507(a)(8)(G) of the Bankruptcy Code grants priority status to a penalty only to the extent it is "related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss." 11 U.S.C. § 507(a)(8)(G). The penalty interest is punitive, not compensatory, and thus is not entitled to priority status under the Bankruptcy Code.

6. Third, $1,585,928.35 of the Priority Tax Claim relates to excise taxes and related interest for returns that became due prior to June 24, 2022 (the "Stale Amount") and thus should be reclassified as a nonpriority general unsecured claim. Under Section 507(a)(8)(E) of the Bankruptcy Code, an excise tax is entitled to priority only if it arises from a transaction occurring before the Petition Date for which a return, if required, was last due (including extensions) within

three years before the Petition Date, or, if no return was required, from a transaction occurring within the three years immediately preceding the Petition Date. The Stale Amount falls outside these periods and thus should be reclassified as a general unsecured claim.

7. For these reasons, which are further discussed below, the Liquidation Trustee requests that the Court disallow and reclassify certain portions of the Claim as set forth herein.

## Jurisdiction, Venue and Statutory Bases

8. This Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Liquidation Trustee consents to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

9. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

10. The statutory and legal bases for the relief requested herein are sections 502 and 505[4] of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3007 and 9014 of the Federal Rules of Bankruptcy Procedure.

---

[4] This Court has jurisdiction over this matter pursuant to section 505(a) of the Bankruptcy Code. *See In re Venture Stores, Inc.*, 54 F. App'x 721, 723 (3d Cir. 2002) ("11 U.S.C. § 505(a) of the Bankruptcy Code grants broad jurisdiction to determine the amount or legality of a debtor's tax liability."); *In re Custom Distrib. Servs., Inc.*, 224 F.3d 235, 239–40 (3d Cir. 2000) (noting that the Third Circuit has "consistently interpreted § 505(a) as a jurisdictional statute that confers on the bankruptcy court authority to determine certain tax claims").

## Case Background

11. On June 24, 2025 (the "Petition Date"), Zen JV, LLC and its affiliated debtors (collectively, the "Debtors") in these Chapter 11 Cases each commenced a voluntary case under chapter 11 of the Bankruptcy Code with the Court.

12. On October 7, 2025, the Court entered the *Findings of Fact, Conclusions of Law and Order (I) Approving the Adequacy of the Debtors' Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation on a Final Basis and (II) Confirming the Debtors' Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 429] (the "Confirmation Order") confirming the *Debtors' Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 408] (as amended, the "Plan"). The Plan became effective on October 14, 2025 (the "Effective Date"). *See* Docket No. 458.

13. On the Effective Date, the Zen JV Liquidation Trust was established and Steven Balasiano was appointed as the Liquidation Trustee. *See* Confirmation Order ¶ 9; Plan Arts. IX.A, G.1. Pursuant to the Plan, the Liquidation Trustee is empowered to object to, allow, or otherwise resolve any claim. *See* Plan Art. X.B.

## Claim Background

14. Prior to 2024, CareerBuilder did not pay any amounts for Wisconsin Sales Tax as it determined that its sales during this time were not taxable under applicable Wisconsin tax law. In May 2017, at the request of Claimant, CareerBuilder filed sales tax returns in Wisconsin for the years 2010–2016 reporting no taxable sales for that period. Shortly thereafter, Claimant sent CareerBuilder an email, a copy of which is attached to the Balasiano Declaration as **Exhibit 1,** in

which Claimant agreed to close CareerBuilder's Wisconsin Sales Tax account after CareerBuilder confirmed it had no liabilities for Wisconsin Sales Tax.

15. Following such correspondence, CareerBuilder did not file Wisconsin Sales Tax returns for the years 2017–2024.

16. In 2020, CareerBuilder, with the assistance of third-party tax professionals, analyzed its state sales tax liabilities for the years 2017–2019. In connection therewith, CareerBuilder ultimately determined it owed past due sales taxes in certain states, but not in Wisconsin. CareerBuilder subsequently entered into voluntary disclosure agreements with those states to resolve its past due sales taxes.

17. In October 2022, Claimant initiated a sales tax audit for CareerBuilder for the period of 2017–2021 to assess its compliance with Wisconsin Sales Tax law. CareerBuilder fully cooperated with Claimant's audit which was subsequently expanded to include the period of 2022–2024. In connection with the audit, CareerBuilder provided information to Claimant regarding the job advertising services provided to Customers, including database access services, job postings, recruitment emails, and dynamic job recommendations.

18. In connection with the audit, CareerBuilder asserted that all services provided to customers such as posting job listings, sending recruitment emails, and providing dynamic job recommendations were not taxable services under Wisconsin Sales Tax law. Generally, these services involved CareerBuilder posting written advertisements on its website advertising its Customers' vacant positions (*i.e.*, job postings) and sending emails and notifications to job seekers regarding such vacant positions (*i.e.*, recruitment emails and dynamic job recommendations). In short, these were simply advertising services.

19. Prior to the Petition Date, CareerBuilder and Claimant were making progress

toward consensually resolving CareerBuilder's purported Wisconsin Sales Tax liabilities, however, the parties discontinued communications after the Petition Date.[5]

20. On July 15, 2025, CareerBuilder filed its Form 206E/F [Docket No. 166] ("Schedule E/F"). Schedule E/F listed a nonpriority unsecured claim for the Claimant in the amount of $2,215,175.40 for Wisconsin Sales Tax.

21. On December 5, 2025, Claimant filed the Claim against CareerBuilder, a copy of which is attached to the Balasiano Declaration as **Exhibit 2**, in the total amount of $4,181,679.69. Through the Claim, Claimant asserts (i) a priority unsecured claim in the amount of $3,668,628.52 pursuant to section 507(a)(8) of the Bankruptcy Code for Wisconsin sales tax and related interest for the years 2017–2025 (the "Priority Tax Claim") and (ii) a nonpriority unsecured claim in the amount of $513,051.17 for related penalties (the "General Unsecured Penalty Claim").

22. The Priority Tax Claim is comprised of the following sales tax amounts and respective interest amounts:

| Priority Tax Claim | | |
|---|---|---|
| Audit Period[6] | Sales Tax Amounts | Interest Amounts |
| 1/1/2017 – 7/31/2017 | $146,139.13 | $204,530.72 |
| 8/1/2017 – 12/31/2021 | $1,536,806.40 | $1,301,873.71 |
| 1/1/2022 – 12/31/2024 | $366,697.87 | $110,513.28 |
| 5/1/2025 – 5/31/2025 | $1,110.44 | $0.00 |

[5] Following the Effective Date, the Liquidation Trustee's professionals attempted to re-engage Claimant in an effort to consensually resolve CareerBuilder's purported Wisconsin Sales Tax liabilities, however, Claimant has refused to discuss the Claim with the Liquidation Trustee's professionals outside of its own formal internal tax appeal process.

[6] The documentation attached to the Claim provides purported amounts due for Wisconsin Sales Tax and interest in connection with audits for these time periods. The Liquidation Trustee would require additional information from Claimant to more accurately assess the relevant time periods for such taxes.

| | | |
|---|---|---|
| 6/1/2025 – 6/30/2025 | $956.97 | $0.00 |
| **TOTAL** | $2,051,710.81 | $1,616,917.71 |

23. Approximately $1,385,699.67 of the Priority Tax Claim relates to taxes and related interest arising from Non-Taxable Services (the "Non-Taxable Amount") and such amount should be disallowed in its entirety, as discussed further herein.

24. In addition to the General Unsecured Penalty Claim, approximately $360,398.58 of the Priority Tax Claim is attributable to penalty interest (the "Penalty Interest"). As discussed herein, both the General Unsecured Penalty Claim and Penalty Interest should be disallowed in their entirety.

25. Approximately $1,585,928.35 of the Priority Tax Claim arises from Wisconsin Sales Tax and related interest for which returns were last due prior to June 24, 2022. As discussed herein, the Stale Amount should be reclassified as a nonpriority unsecured claim.

**Basis for Objection to Claim**

26. Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities and (b) the claim is otherwise allowable. 11 U.S.C. §§ 101(5) and 101(10). Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Once an objection to a claim is filed, the Court, after notice and a hearing, shall determine the allowed amount of the claim. See 11 U.S.C. § 502(b).

27. Section 502(b)(1) of the Bankruptcy Code provides, in part, that a claim may not be allowed to the extent that it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). While a properly filed proof of

claim is *prima facie* evidence of the claim's allowed amount, when an objecting party rebuts a claim's *prima facie* validity, the claimant bears the burden of proving the claim's validity by a preponderance of the evidence. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992); *see also In re Int'l Match Corp.*, 69 F.2d 73, 76 (2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability can be seen to exist). The burden of persuasion with respect to the claim is always on the claimant. *See id.* at 174.

28. Section 505 of the Bankruptcy Code permits the Court to "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a).

**I. <u>The Portion of the Claim Attributable to Non-Taxable Services Should be Disallowed</u>**

29. The "basic federal rule" in bankruptcy is that state law governs the substance of claims, subject to any qualifying or contrary provisions of the Bankruptcy Code. *See Butner v. United States*, 440 U.S. 48, 57 (1979). Here, Wisconsin law governs the substance of the Claim as it is not preempted by any qualifying or contrary provisions of the Bankruptcy Code. *See id.; In re Laptops Etc. Corp.*, 164 B.R. 506, 514 (Bankr. D. Md. 1993) ("When a tax claim rooted in state law is contested, the bankruptcy court in deciding whether or not to allow or disallow a claim against the debtor's estate . . . must generally first pass on the applicability of the tax in accordance with the laws of the taxing sovereign.").

30. Pursuant to Wisconsin law, only certain specific categories of services are taxable. The categories of services which are taxable are explicitly enumerated under paragraph (a) of Wis. Stat. § 77.52(2),

> "[f]or the privilege of selling . . . the ***services described under par. (a)*** at retail in this state . . . a tax is imposed upon all persons

> selling . . . the services at the rate of [5%] of the sales price from the sale . . . of the services."

Wis. Stat. § 77.52(2) (emphasis added). Categories of services which are not specifically listed in § 77.52(2)(a) are not taxable. *See Healthcare Servs. Grp., Inc. v. Wisconsin Dep't of Revenue*, 916 N.W.2d 635 (Wis. Ct. App. 2018); *Verizon Connect Nwf, Inc., Petitioner v. Wisconsin Department of Revenue, Respondent*, 2023 WL 9690706, at *6 ("Under Wisconsin law, a service is not subject to Wisconsin sales and use taxes unless the service is specifically listed in the law as a taxable service."). In *Healthcare Servs.*, the Court of Appeals of Wisconsin analyzed the Wisconsin Tax Appeals Commission's reasoning in its *Manpower Inc. v. DOR*, Wis. Tax Rep. (CCH) ¶ 401-223 at 36,413 (WTAC 2009) decision, which concluded that "temporary help services" were not one of the specific categories of taxable services listed in § 77.52(2)(a) and were therefore presumptively non-taxable. *Id.* at 641. In *Healthcare Servs.*, the court found that the laundry-related services at issue were taxable because Wis. Stat. § 77.52(2)(a) unambiguously includes the category of "laundry, dry cleaning, pressing, and dyeing services," at § 77.52(2)(a)6. *Id.* at 643.

31. As set forth in greater detail herein, the Non-Taxable Services are comprised of job postings, recruitment emails, and dynamic job recommendations. These are advertising services, which are not taxable under Wisconsin law. Wis. Stat. § 77.54(59) (providing, "the sales price from the sales of and the storage, use, or other consumption of advertising and promotional direct mail" is tax exempt). The Non-Taxable Services unambiguously fall outside the scope of Wis. Stat. § 77.52(2)(a). Further, even if ambiguity existed, which it does not, such ambiguity must be resolved in favor of CareerBuilder. *See Wisconsin Dep't of Revenue v. Milwaukee Ref. Corp.*, 80 Wis. 2d 44, 48–49 (1977) ("[A] tax cannot be imposed without clear and express

language for that purpose, and where ambiguity and doubt exist, it must be resolved in favor of the person upon whom it is sought to impose the tax.”).

32. Further, the Non-Taxable Services are not goods of any kind, including “specified digital goods” or “additional digital goods” taxable under Wis. Stat. §§ 77.51(1a) and 77.52(1)(d). When a Customer purchased a job posting, recruitment email, or dynamic job recommendation, it paid CareerBuilder to disseminate the Customer’s own message (an announcement of its vacant position) to an audience of third-party job seekers. The Customer did not receive any product. It supplied the substance of the advertisement itself and paid CareerBuilder for exposure: placement of that advertisement on CareerBuilder’s website and delivery of notices about it to prospective applicants. To the extent any content was transferred electronically, it was transferred to job seekers, who paid nothing for it, not to the Customers who paid CareerBuilder. The Non-Taxable Services therefore cannot constitute “specified digital goods” or “additional digital goods” under Wis. Stat. §§ 77.51(1a) and 77.52(1)(d), each of which presupposes a product transferred electronically to an end user who purchases it.

33. Nor do the Non-Taxable Services resemble the “news or information products” taxable under § 77.51(1a). A CareerBuilder customer purchasing a job posting is not buying information; it is paying to broadcast information it already possesses. The true object of each transaction was the promotion of the customer’s hiring needs to the public, which is precisely the function of the classified advertisements that employers have long purchased from newspapers and other publications. Again, Wisconsin does not tax the sale of advertising space or the dissemination of advertising, and nothing in the Wisconsin Sales Tax statutes and regulations suggests that the result changes because the advertisement appears on a website or in an email. *See* Wis. Stat. § 77.51–69; Wis. Admin. Code § 11.70(3) (“Charges for the following are not

subject to Wisconsin sales or use tax . . . (f) obtaining media space and time . . . (n) advertising and promotional direct mail.”).

34. For the reasons stated above, the Non-Taxable Amount should be disallowed.

**II. <u>The Penalties Should Be Disallowed</u>**

35. Both the General Unsecured Penalty Claim and Penalty Interest (together, the “<u>Penalties</u>”) should be disallowed in their entirety. The Penalty Interest is a penalty arising under Wis. Stat. § 77.60(2), which allows Wisconsin to apply an increased punitive interest rate of 1.5% per month to any past due amounts for Wisconsin Sales Tax.[7] The General Unsecured Penalty Claim arises under Wis. Stat. § 77.60(4), which, under certain conditions, permits Wisconsin to apply a percentage-based penalty to past due amounts for Wisconsin Sales Tax. The statute provides, in relevant part, as follows:

> in case of failure to file any return required . . . upon a showing by the department under s. 73.16(4), there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is not for more than one month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.

Wis. Stat. § 77.60(4).

36. Penalties assessed under both Wis. Stat. §§ 77.60(2) and (4) are expressly subject to Wis. Stat. § 73.16(4), which requires Claimant to show that the penalties arose from the taxpayer’s willful neglect. That statute provides, in relevant part, as follows:

> The department shall not impose a penalty on a taxpayer under . . . 77.60(2), (3), and (4) . . . unless the department shows that the taxpayer’s action or inaction was due to the taxpayer’s willful neglect and not to reasonable cause.

[7] Wis. Stat. § 77.60(2) provides in relevant part, “upon a showing by the department under s. 73.16(4) . . . . delinquent sales and use taxes shall bear interest at the rate of 1.5 percent per month until paid.”

Wis. Stat. § 73.16(4).

37. It is well established that the burden of proof is a substantive aspect of a claim, and although Congress has established certain particular burdens of proof in the Bankruptcy Code, "the [Bankruptcy] Code makes no provision for altering the burden on a tax claim[.]" *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 22 (2000). Accordingly, Claimant has the burden to show that the Penalties were the result of CareerBuilder's willful neglect. *See id.* at 26 ("[T]he burden of proof on a tax claim in bankruptcy remains where the substantive tax law puts it."); *see also In re Refco Pub. Commodity Pool, L.P.*, 554 B.R. 736, 747 (Bankr. D. Del. 2016) (disallowing a tax-related penalty claim as debtor's failure to file the tax returns at issue was not the result of carelessness or recklessness (*i.e.*, willful neglect)).

38. Claimant does not allege, nor provide any facts demonstrating that CareerBuilder's failure to file Wisconsin Sales Tax returns for the years 2017–2025 was due to willful neglect. Rather, CareerBuilder had reasonable cause not to file Wisconsin Sales Tax returns for such years as (i) it relied, in good faith, on communications from Claimant conveying that its Wisconsin Sales Tax account was closed; (ii) it relied, in good faith, on advice from third-party tax professionals that its sales were not taxable in Wisconsin; and (iii) after Claimant initiated the audit, CareerBuilder worked in good faith with Claimant to properly quantify its purported past due Wisconsin Sales Tax liabilities, if any. Because Claimant has not met, and cannot meet its burden to demonstrate willful neglect under the statute, the Penalties should be disallowed in their entirety.

39. Even if Claimant could establish willful neglect, which it cannot, the Penalty Interest is not entitled to priority status. Section 507(a)(8)(G) of the Bankruptcy Code grants priority status to a penalty only to the extent it is "related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss." 11 U.S.C. § 507(a)(8)(G). Penalties

that are punitive rather than compensatory receive no priority and share only as general unsecured claims. The Wisconsin Legislature has itself classified the Penalty Interest as a penalty: § 73.16(4) prohibits DOR from "impos[ing] a penalty on a taxpayer under . . . 77.60(2)" absent a showing of willful neglect. Wis. Stat. § 73.16(4). That label is consistent with the provision's function. Wisconsin law separately compensates the State for the time value of unpaid tax through the ordinary interest rate of 12% per annum under Wis. Stat. § 77.60(1)(a), and the Priority Tax Claim already includes that interest. The enhanced rate under § 77.60(2) applies only upon a showing of culpable conduct, and it exceeds what is needed to make the State whole. The increment above the ordinary rate therefore compensates for no loss. It exists to punish willful neglect.

## III. <u>The Stale Amount Should be Reclassified as a General Unsecured Claim</u>

40. Under section 507(a)(8)(E) of the Bankruptcy Code, excise tax claims are only entitled to priority of payment if the returns for such taxes were last due within three years of the Petition Date. Section 507(a)(8) of the Bankruptcy Code provides in relevant part,

> Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for:
>
> … (E) an excise tax on –
>
> (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, *after three years before the date of the filing of the petition* . . . .

11 U.S.C. § 507(a)(8)(E) (emphasis added).

41. Although the Bankruptcy Code does not define the term "excise tax," it is widely recognized to be a broad term that encompasses, among other things, "a tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a ***privilege***[.]" *In re Groetken*, 843 F.2d 1007, 1013 (7th Cir. 1988) (emphasis added). As noted above, Wis. Stat. § 77.52(2) explicitly imposes a tax on the "***privilege*** of selling . . . services . . . at retail," and, thus,

is an excise tax. *See Groetken*, 843 F.2d at 1013–14 (holding that "a tax upon the privilege of retailing . . . is unquestionably an excise tax" and falls within section 507(a)(8)(E)'s scope). As such, all of the taxes at issue, including the Stale Amount, are excise taxes, the priority of which is governed by 11 U.S.C. § 507(a)(8)(E).

42. Additionally, interest is generally entitled to the same priority as the underlying tax. *See In re TOC Assocs.*, 181 B.R. 205, 208 (Bankr. E.D. Pa. 1995) ("Had any interest matured on the claim prepetition, it would have been entitled to the same priority as the underlying tax."); S.Rep. No. 95–1106, 95th Cong., 2nd Sess., 20 (1982) ("Interest which accrued before the Title 11 petition receives the same priority as the tax claim itself. . . . If the tax is only a general unsecured claim, the interest on the tax is a portion of the same claim and therefore receives the same treatment.").

43. Pursuant to 11 U.S.C. § 507(a)(8)(E), Claimant is only entitled to priority treatment for excise taxes (and related interest) on transactions occurring before the Petition Date for which a return, if required, was last due after June 24, 2022 (three years before the Petition Date).

44. Pursuant to Wis. Stat. § 77.58 and Wis. Adm. Code § Tax 11.93, Wisconsin Sales Tax returns are due either monthly, quarterly, or annually depending on circumstances. Even if due annually, CareerBuilder's Wisconsin Sales Tax returns for taxes arising in the years 2017–2021 were, at the latest, last due on January 31 of the respective following years (*e.g.*, the 2021 tax return was last due January 31, 2022). Thus, the returns for the excise taxes comprising the Stale Amount became due prior to June 24, 2022. Accordingly, the Stale Amount is not entitled to priority under 11 U.S.C. § 507(a)(8)(E) and should be reclassified as a nonpriority unsecured claim.

45. In sum, for the reasons set forth above:

a. the $1,385,699.67 Non-Taxable Amount should be disallowed in its entirety;

b. the $513,051.17 General Unsecured Penalty Claim should be disallowed in its entirety;

c. the $360,398.58 Penalty Interest should be disallowed in its entirety or, in the event this Court allows such amount, it should be reclassified as a nonpriority general unsecured claim; and

d. the $1,585,928.35 Stale Amount should be reclassified as a nonpriority general unsecured claim.

Taken together, the Claim should be reduced and classified as (i) a nonpriority general unsecured claim in the amount of $1,585,928.35, and (ii) a priority unsecured claim in the amount of $336,601.92, for a total aggregate Claim amount of $1,922,530.27.

**Reservation of Rights**

46. The Liquidation Trustee hereby reserves its rights and those of the Debtors' estates to object further to the Claim on any additional factual or legal grounds. Without limiting the generality of the foregoing, the Liquidation Trustee specifically reserves the right to amend the Objection, file additional papers in support hereof or take other appropriate actions, including to: (a) respond to any allegation or defense that may be raised in a response by or on behalf of Claimant or any other party in interest; (b) object further to any claim for which Claimant provides (or attempts to provide) additional documentation or substantiation; and (c) object further to any claim based on additional information that may be discovered on further review by the Liquidation Trustee or through discovery.

## **Notice**

47. Notice of this Objection will be given to: (i) the U.S. Trustee; (ii) Claimant; and (iii) all parties entitled to notice pursuant to Bankruptcy Rule 2002. The Liquidation Trustee submits that, under the circumstances, no other or further notice is required.

## **Conclusion**

WHEREFORE, for the reasons stated herein, the Liquidation Trustee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Objection and such other and further relief as the Court deems just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: November 4, 2026
Wilmington, Delaware

**COLE SCHOTZ P.C.**
*/s/ Melissa M. Hartlipp*
Justin R. Alberto (No. 5126)
Melissa M. Hartlipp (No. 7063)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 652-3131
jalberto@coleschotz.com
mhartlipp@coleschotz.com

-and-

Sarah A. Carnes (admitted *pro hac vice*)
Jonathan R. Friedman (admitted *pro hac vice*)
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Telephone: (212) 752-8000
scarnes@coleschotz.com
jfriedman@coleschotz.com

*Counsel to the Liquidation Trustee of the Zen JV Liquidation Trust*